**GIBBONS P.C.**
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey  07102
Telephone:  (973) 596-4500
Facsimile:   (973) 596-0545
E-mail:  kgiannelli@gibbonslaw.com
          mconlan@gibbonslaw.com
          btheisen@gibbonslaw.com

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Joint Administration Requested) |

**DEBTORS' APPLICATION FOR AN ORDER APPOINTING DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS PURSUANT TO 28 U.S.C. § 156(c), *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (the "**Debtors**" or the

"**Company**"), by and through their undersigned proposed counsel, hereby apply to the Court (the

"**Application**"), pursuant to section 156(c) of title 28 of the United States Code, Rule 2002 of the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") seeking entry of an order, in substantially the form attached hereto as **Exhibit C** (the "**Proposed Order**"): (a) authorizing and approving the retention and appointment of Donlin, Recano & Company, Inc. ("**DRC**") as claims and noticing agent for the Office of the Clerk (the "**Clerk**") of the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**"); and (b) providing any additional relief required to effectuate the foregoing. In support of this Application, the Debtors rely on the *Declaration of Vincent Colistra in Support of First Day Motions* (the "**First Day Declaration**") filed substantially concurrently herewith and the declaration of Nellwyn Voorhies (the "**Voorhies Declaration**"), attached hereto as **Exhibit A** and incorporated by reference herein. In further support of the Application, the Debtors respectfully represent as follows:

## I. JURISDICTION

1. The United States Bankruptcy Court for the District of New Jersey has jurisdiction over the Chapter 11 Cases (defined below) and the Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of the Cases and the Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory and other predicates for the relief requested herein are 28 U.S.C. § 156(c), and Bankruptcy Rule 2002.

## II. BACKGROUND

3. On the date hereof (the "**Petition Date**"), each of the above-captioned Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby initiating the above-captioned chapter 11 cases (the "**Chapter 11 Cases**" or "**Cases**"). The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner and no committee has been appointed in these Chapter 11 Cases.

4.  The detailed factual background relating to the Debtors and the commencement of the Cases is set forth in the First Day Declaration, which is fully incorporated herein by reference.

### III.  RELIEF REQUESTED

5.  This Application is made for entry of the Proposed Order appointing DRC to act as the claims and noticing agent to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtors' Chapter 11 Cases.  The Debtors submit, based on all engagement proposals obtained and reviewed, that DRC's rates are competitive and reasonable given DRC's quality of services and expertise.  The terms of retention are set forth in the Standard Claims Administration and Noticing Agreement, dated February 6, 2019 (the "Engagement Agreement") annexed hereto as **Exhibit B**.

### IV.  QUALIFICATIONS

6.  DRC is a bankruptcy administrator specializing in claims management and legal administration services.  DRC provides comprehensive chapter 11 services, including noticing, claims processing, balloting, and other related services critical to the effective administration of chapter 11 cases.

7.  Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be thousands of entities to be noticed.  In view of the number of anticipated claimants and the complexity of the Debtors' business, the Debtors submit that the appointment of a claims and noticing agent is both necessary and in the best interests of both the Debtors' estates and their creditors.

8.  DRC is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, and facilitating other administrative aspects of chapter 11 cases. DRC has provided identical or substantially similar services in other chapter 11 cases filed in this

District and elsewhere, including, among others: *In re Bestwall LLC*, Case No.17-31795 (Bankr. D.N.C. 2017, *In re Gump's Holdings LLC,* Case No. BK-S-14684 (Bankr. D. Nev 2018),*In re EBH Topco, LLC*, Case No. 18-11212 (BLS) (Bankr. D. Del. 2018); *In re PZ Wind Down, Inc.*, Case No. 17-12890 (CSS) (Bankr. D. Del. 2017); *In re Velocity Holding Company, Inc.*, Case No. 17-12442 (KJC) (Bankr. D. Del. 2017); *In re Mac Holding LLC*, Case No. 17-12226 (MFW) (Bankr. D. Del. 2017).

9. By appointing DRC as the claims and noticing agent in the Cases, the distribution of notices and the processing of claims will be expedited, and the Clerk's office will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

### V. SERVICES TO BE RENDERED

10. This Application pertains only to the work to be performed by DRC under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and any work to be performed by DRC outside of this scope is not covered by this Application or by any Order granting approval hereof. By separate application, the Debtors will seek to retain DRC as their administrative advisor under section 327(a) of the Bankruptcy Code. As it relates to this Application, DRC will perform the following tasks in its role as claims and noticing agent, as well as all quality control relating thereto:

   a. Prepare and serve required notices and documents in the Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court including: (i) notice of the commencement of the Cases and the initial meeting of creditors under Bankruptcy Code § 341(a); (ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' chapter 11 plan, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any chapter 11 plan; and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the Cases.

   b. Maintain copies of all proofs of claim filed in the Cases.

  c. Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

  d. Maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in sections 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

  e. Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

  f. Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

  g. For *all* notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses; (iii) the manner of service; and (iv) the date served;

  h. Process all proofs of claim received, including those received by the Clerk, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

  i. Maintain the official claims register for each Debtor (the "**Claims Registers**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*); (vi) the applicable Debtor; and (vii) any disposition of the claim;

  j. Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

  k. Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

  l. Relocate, by messenger or overnight delivery, all of the court-filed proofs

of claim to the offices of DRC, not less than weekly;

  m. Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

  n. Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

  o. Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtors or the Court, including through the use of a case website and/or call center;

  p. If the Cases are converted to chapter 7, contact the Clerk within three (3) days of the notice to DRC of entry of the order converting the case;

  q. Thirty (30) days prior to the close of the Cases, to the extent practicable, request that the Debtors submit to the Court a proposed Order dismissing DRC and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of the Cases;

  r. Within seven (7) days of notice to DRC of entry of an order closing the Cases, provide to the Court the final version of the Claims Register as of the date immediately before the close of the Cases; and

  s. At the close of the Cases, (i) box and transport all original documents, in proper format, as provided by the Clerk's Office, to (A) the Philadelphia Federal Records Center, 14470 Townsend Road, Philadelphia, PA 19154 or (B) any other location requested by the Clerk, and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

11. The Claims Registers shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained by DRC.

12. DRC shall not employ any past or present employee of the Debtors for work that involves the Debtors' Cases.

13. The Debtors respectfully request that the undisputed fees and expenses incurred by DRC in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and Bankruptcy Code section 503(b)(1)(A) and be paid in the ordinary course of business without further application to

or order of the Court. DRC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

## VI. COMPENSATION

14. Prior to the Petition Date, the Debtors provided DRC a retainer in the amount of $20,000, of which $10,103 was applied to prepetition services. DRC seeks to first apply the retainer to all prepetition invoices, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during the Cases as security for the payment of fees and expenses under the Engagement Agreement. Following the termination of the Engagement Agreement, DRC will return to the Debtors any amount of the retainer that remains.

15. Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from DRC's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims agent in these Cases.

## VII. DISINTERESTEDNESS

16. In connection with its retention as claims and noticing agent, DRC represents in the Voorhies Declaration, among other things, that:

    a. DRC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in the Cases;

    b. By accepting employment in the Cases, DRC waives any right to receive compensation from the United States government in its capacity as the claims and noticing agent in the Cases;

    c. In its capacity as the claims and noticing agent in the Cases, DRC will not be an agent of the United States and will not act on behalf of the United States;

    d. DRC will not employ any past or present employees of the Debtors in connection with its work as the notice and claims agent in the Cases; and

    e. DRC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

17. To the extent that there is any inconsistency between this Application, the Retention Order, and the Engagement Agreement, the Retention Order shall govern.

18. This Application complies with the Claims Agent Protocol and conforms to the standard section 156(c) application in use in this Court.

## VIII.  NOTICE

19. Notice of this Motion has been given to:

   a. the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102;

   b. the Internal Revenue Service, 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-5016;

   c. the New Jersey Division of Taxation Compliance and Enforcement - Bankruptcy Unit, 50 Barrack Street, 9th Floor, Trenton, NJ 08695;

   d. the Office of the Attorney General of the State of New Jersey, Division of Law, Richard J. Hughes Justice Complex, 25 Market Street, Trenton, NJ 08625;

   e. the Office of the United States Attorney, Peter Rodino Federal Building, 970 Broad Street, Suite 700, Newark, NJ 07102;

   f. Capital One; East West Bank; JP Morgan Chase; Santander Bank; and TD Bank;

   g. the Debtors' prepetition secured creditors,

   h. the applicable taxing authorities;

   i. the Debtors' equity interest holders;

   j. the Debtors' thirty largest unsecured creditors on a consolidated basis; and

   k. all parties that have requested to receive notice pursuant to Bankruptcy Rule 2002.

In light of the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

WHEREFORE, for the reasons set forth herein, in the Voorhies Declaration, and in the First Day Declaration, the Debtors respectfully request that this Court enter the Proposed Order, authorizing DRC to act as claims and noticing agent for the maintenance and processing of claims and the distribution of notices.

Dated:  February 11, 2019                    Respectfully submitted,

**GIBBONS P.C.**

By: /s/ Karen A. Giannelli
    Karen A. Giannelli, Esq.
    Mark B. Conlan, Esq.
    Brett S. Theisen, Esq.
    One Gateway Center
    Newark, New Jersey  07102
    Telephone:  (973) 596-4500
    Facsimile:   (973) 596-0545
    E-mail:
    kgiannelli@gibbonslaw.com
    mconlan@gibbonslaw.com
    btheisen@gibbonslaw.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*