

## MULTIPLE SALE AUCTION AGREEMENT

THIS MULTIPLE SALE AUCTION AGREEMENT ("Agreement") is made and entered into this 26th day of February, 2019, by and between NEW ENGLAND MOTOR FREIGHT, INC, a New Jersey Corporation of I-71 North Avenue East, Elizabeth, NJ, 17201 , ("NEMF"), Debtor in Possession in the jointly administered chapter 11 case bearing Case No. 19-12809-JKS ("Bankruptcy Case") filed in the U.S. Bankruptcy Court, District of New Jersey ("Bankruptcy Court") and TAYLOR & MARTIN, INC., a Nebraska Corporation ("T&M").

### RECITALS

A.    NEMF is a national contract carrier which owns or leases, among other things, approximately 1306 semi-tractors, 114 straight trucks, and other motor vehicles; approximately 4336 trailers; miscellaneous items of personal property consisting of storage trailers, yard hostlers, converter dollies, personal vehicles, forklifts, pallet jacks, parts, shop supplies; and, other miscellaneous equipment and dock and office equipment (all collectively referred to as "Equipment") and has engaged T&M to sell its Equipment pursuant to the terms of this Agreement; and,

B.    T&M is in the business of, among other things, the auction of Equipment and has agreed to provide auctioneering services to NEMF on multiple dates in accordance with the terms set forth herein;

### AGREEMENT

NOW, THEREFORE, for good and valuable consideration, together with the mutual terms and covenants set forth herein, it is agreed as follows:

1.  *Recitals:* The foregoing recitals are incorporated into this Agreement by reference as if specifically set forth herein.

2.  *Public Auction, Location and Date:* NEMF does hereby grant T&M with the exclusive right to sell by auction all items of Equipment including, but not limited to, the Equipment identified on Schedule "A" attached hereto. The Equipment will be auctioned at NEMF terminal facilities identified on Schedule "B" attached hereto and such other terminal facilities as agreed by the parties. The auction sales shall be conducted throughout the months of May through July, 2019 as determined by T&M which timeframes may be reasonably extended by T&M due to circumstances beyond TM's control. Equipment may also be sold from remote or leased locations in connection with any one or more of the live auction events.

NEMF shall, at its expense, provide suitable facilities at each auction site according to T&M's specifications, which shall include settlement office areas, telephone and fax lines and systems, full utilities, restrooms and concession areas. NEMF shall provide T&M with the use of all terminal space at each auction site to enable T&M to display and auction all Equipment which is scheduled to be sold and to provide parking for buyers of the Equipment. T&M will have continuous access to each terminal location from the date of this agreement is approved by the Bankruptcy Court until not less than 4 weeks after each auction sale.

3.  *Auctioneer Responsibilities:*

A.  *Equipment Preparation, Agreed Repairs.* T&M agrees, at NEMF'S expense, to prepare certain rolling stock Equipment for sale which shall include washing, detailing, and interior cab cleaning of all semi-tractors and straight trucks; and, exterior washing of 2005 and newer trailers, all of which shall be on a per unit cost basis according to Schedule C attached hereto ("Preparation Costs"). T&M is not required to de-grease the Equipment. In addition, T&M shall not be required to perform any body work, mechanical repairs, replacement of equipment parts or any other expenses in order to enhance the marketability of the Equipment in the absence of further written authorization by each of the parties ("Agreed Repairs").

B.  *Marketing.* T&M shall provide, at T&M's expense, promotional support for the sale of the Equipment prior to the auction in a manner consistent with T&M's past business experience and practices, which shall consist of advertisements in national, state and/or local trade journals, in-house mailings to potential buyers from T&M customer lists or acquired lists, and/or other general advertisements which T&M determines are necessary to promote the auction in a commercially reasonable manner. T&M shall also provide on-line internet bidding

nationally and internationally through TMILive and in doing so, will charge a 2.5% internet fee on purchases by each registrant. However, T&M shall not be liable or responsible for any interruptions, termination or corruption of any audio feed, video feed or of any other internet registration, bidding or other online related service that occurs before, during or in connection with the auction sale, regardless of the cause of fault attributable to the interruption, termination or corruption of such services.

C.   *Management of Sale.*   T&M shall conduct the sale on an absolute auction basis in a commercially reasonable manner, which shall be staffed by informed sales personnel, ringmen, and transaction closing personnel in order to properly display, sell, close, and account for all transactions relating to the Equipment. All Equipment shall be on display prior to the sale to allow visual inspection by potential buyers. T&M shall be responsible to prepare financial settlements in connection with each sale and to remit the Net Auction Proceeds, as defined herein, to NEMF in accordance with terms of this Agreement. T&M will also collect and remit all applicable sales tax due in connection with each sales transaction in those jurisdictions that require the collection of sales taxes by Auctioneers. In all other cases, the payment of sales taxes and other fees required by law shall be the responsibility of the buyer. T&M shall also provide an on-site full-time translator to assist Hispanic bidders.

4.   *Additional Consignor Responsibilities.*

A.   *Compensation.*   T&M shall be compensated for the sale of all Equipment hereunder based upon a buyer's premium of ten percent (10%) that will be charged and collected from each buyer based upon the final sale amount of each item of Equipment (the "Buyer Premiums"). T&M shall be further compensated for the sale of all shop, dock and office Equipment; and, all other non-rolling stock Equipment based upon a commission of fifteen (15%) of the gross auction proceeds received from the sale of all such non-rolling stock Equipment. (the "Commissions"). NEMF shall further reimburse T&M for any out-of-pocket costs incurred by T&M that are the responsibility of NEMF pursuant to the terms of this Agreement, which include, but are not necessarily limited to, Preparation Costs, Agreed Repairs, Transportation Costs and Withdrawal Commissions, as defined herein. The additional out-of-pocket costs may include, by illustration and not by limitation, the cost of obtaining marketable titles and assistance with the marshaling of Equipment. All reimbursable costs payable to T&M shall be deducted from the gross sales proceeds pursuant to Paragraph 5 below.

B.   *Titles/Releases of Liens.*   NEMF shall deliver a copy of each Certificate of Title to each item of Equipment listed on Schedule A to T&M upon the execution of this agreement. NEMF shall thereafter deliver properly executed and endorsed Certificates of Title, free and clear of all liens, encumbrances and claims of third parties, on a date mutually agreed by the parties but in no event later than thirty (30) days prior to the first auction date. In the event lessors or creditors of NEMF possessing liens or security interests in the Equipment are unwilling or unable to release such interests prior to the thirty day deadline specified above, then NEMF shall be responsible to coordinate and structure payoffs of the Equipment with NEMF's lessors and creditors no later than the date of the final advertising deadline specified by T&M in order to enable T&M to deliver good and marketable title, free and clear of all liens and security interests, to buyers of the Equipment. T&M is further authorized to secure arrangements with lessors or creditors having a lien or security interest in the Equipment to pay a portion of the net proceeds, up to the amount that NEMF agrees is due and owing to such lessors or secured creditors, if necessary, to obtain a release of the liens on the Certificates of Title. All titles shall be accompanied by any other documents which T&M determines are necessary in order to transfer marketable title, free and clear of all liens, security interests, and claims of any third parties, to each buyer of the Equipment. In the event any certificate of title has not been properly executed and endorsed, then NEMF does hereby appoint the president or any manager of T&M as its attorney-in-fact for purposes of executing and endorsing each such certificate of title in order to transfer good and marketable title to each buyer.

C.   *Certificate of Title and Documents.*   As the seller of Equipment, NEMF represents and warrants to T&M that it is either the lawful owner of the Equipment or has, as of the date of each auction, shall have the right to sell the Equipment, free and clear of all liens and that good and marketable title to such Equipment will be conveyed to each buyer. NEMF, at its cost and expense, shall warrant and defend such free and clear title to such Equipment on behalf of each buyer and T&M against the claims and demands of any persons claiming to have an interest in any such Equipment. NEMF will further indemnify and hold T&M harmless from and against any such claims. NEMF does further warrant that none of the Equipment has any form of salvage or rebuilder history or requires any form of salvage title unless otherwise specifically identified in writing on Schedule A.

5.   *Payment/Accounting:*   T&M shall be responsible for the collection of the auction proceeds tendered by the highest bidder in connection with the sale of each item of Equipment. T&M shall remit the Net Auction Proceeds received in connection with each sale together with an accounting of each sale of the Equipment to NEMF within ten (10) banking days after each auction event. For purposes of this paragraph, the term "Net Auction Proceeds" represents the gross auction proceeds that are received from the sale of all of the Equipment at each auction event (excluding sales tax, Buyer Premiums and internet fees) less Commissions, Preparation Costs, Agreed Repairs, Transportation Costs, Withdrawal Commissions and any other out-of-pocket costs incurred by T&M which are the responsibility of NEMF in connection with this Agreement.

6.   *Marshalling/Transportation/Security:*   NEMF shall coordinate and provide all equipment marshalling, transportation and delivered unit count to each auction sale site. NEMF shall be responsible at its cost and risk of loss for all labor, equipment and expenditures necessary to marshal and transport all Equipment to the auction sale sites.

In addition, T&M is authorized upon request to retain a contract carrier for the purpose of transport and delivery of Equipment to any auction site. In doing so, T&M shall not be liable for casualty loss or other loss which occurs to the Equipment in connection with its transportation and delivery

2

which are not due to the active negligence of T&M. Regardless of which party delivers the Equipment to each auction sale site, Risk of loss shall remain with NEMF following delivery for casualty loss to the Equipment including, but not limited to, loss due to acts of theft, vandalism, God, fire, and inclement weather, together with any other loss of any nature which are not attributable to negligent acts or omissions of T&M. The contract carrier shall be responsible for all driver-related liability in connection with the transport of the Equipment to the auction site. NEMF representatives shall be allowed on any auction site at any time during business hours to inspect and monitor the Equipment.

All costs of marshalling, transportation, contract labor and fuel incurred by T&M in connection with the transportation and delivery of any Equipment to, from or around any auction site ("Transportation Costs") shall be remitted to T&M pursuant to Paragraph 5, above.

NEMF may, at its discretion, employ security personnel at any one or more of the auction sale sites at its cost.

7. *TERMS OF THE AUCTION SALE:* EACH PARTY UNDERSTANDS AND AGREES THAT EACH AND EVERY ITEM OF EQUIPMENT OFFERED FOR SALE AND SOLD AT AUCTION WILL BE WITHOUT RESERVE, WITHOUT ANY PRICE GUARANTEE, "AS IS", "WHERE IS", AND WITHOUT WARRANTY, EXPRESSED OR IMPLIED, OF ANY KIND, NATURE OR DESCRIPTION, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY, CONDITION OR FITNESS FOR A PARTICULAR PURPOSE EXCEPT THAT NEMF WARRANTS GOOD AND MARKETABLE LEGAL TITLE, FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES, FOR EACH ITEM OF EQUIPMENT. IN NO EVENT SHALL EITHER NEMF OR T&M BE LIABLE FOR ANY LOSS OF PROFITS OR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING IN ANY MANNER IN CONNECTION WITH THIS AGREEMENT OR ANY SALE OF EQUIPMENT. T&M SHALL PROVIDE ITS CUSTOMARY DISCLAIMER IN ALL OF ITS SALES BROCHURES, CATALOGUES, AND BUYER REGISTRATION AGREEMENTS DISTRIBUTED IN CONNECTION WITH THE AUCTION SALES.

8. *Withdrawal of Equipment from Sale.* If 10% or more of like kind rolling stock Equipment is withdrawn after March 30, 2019 from any auction sale through no fault of T&M, then NEMF shall pay T&M a 10% commission for each item of withdrawn Equipment based upon the like kind value of the Equipment when compared to other Equipment being sold at the scheduled auction. ("Withdrawal Commissions") In addition, NEMF shall reimburse T&M for all Preparation Costs, Agreed Repairs, Transportation Costs and any other reasonable out of pocket expenses incurred by T&M which are the responsibility of NEMF in connection with this Agreement. The foregoing commission together with all of the foregoing costs shall be deducted by T&M from the gross proceeds owing in connection with the sale of all remaining Schedule A items or, alternatively, remitted directly by NEMF in the event all Schedule A items have been withdrawn. Notwithstanding the foregoing, NEMF shall not be permitted to withdraw any of the foregoing rolling stock Equipment unless it has secured and set aside good funds to enable it to promptly comply with the remittance obligations set forth above. This paragraph does not apply to any Equipment that cannot be located by the parties.

9. *Insurance:* NEMF shall obtain and keep in force a policy of combined single limit liability and property damage insurance in an amount not less than $2,000,000.00, and shall continue to self-insure the Equipment in an amount not less than the fair market value of the Equipment subject to this Agreement against losses arising out of the use, possession, control, ownership or sale of the Equipment subject to this Agreement or otherwise in connection with NEMF's responsibilities under the terms of this Agreement, including coverage for theft and vandalism of the Equipment. T&M shall obtain and keep in force during the term or throughout the performance of this Agreement a $2,000,000.00 garage liability policy (including the Umbrella), which insures against liability arising out of any acts, omissions, or other responsibilities of T&M in connection with this Agreement and such insurance shall name NEMF as an additional insured. Each party shall provide the other party with a copy of all applicable certificates evidencing the existence and amounts of such insurance and in the case of T&M, that NEMF has been named as an additional insured.

NEMF further agrees to indemnify and hold T&M harmless from and against any and all casualty loss to the Equipment including, but not limited to, loss due to acts of God, fire, and weather as well as any other losses of any nature which are not attributable to the negligent acts or omissions of T&M. T&M agrees to indemnify and hold NEMF harmless from and against any damages or claims which arise from the negligent acts or omissions of T&M.

10. *Waiver of Subrogation:* NEMF and T&M each hereby mutually release and relieve the other from all claims and liabilities arising from or caused by any hazard or loss covered by insurance in connection with the performance of this Agreement, regardless of the cause of the damage or loss; provided that this release shall apply only to the extent that such loss is covered by insurance.

11. *Negation of Partnership:* Nothing contained in this Agreement is intended to create any partnership, joint venture or association between the parties hereto or in any way makes either party a co-principal with the other party with reference to the property or the agreements referenced herein and any inferences to the contrary are hereby expressly negated.

12. *Prohibition of Creditor/Consignor Bids:* NEMF, its lessors and secured creditors may attend the auction sale but may not submit bids, directly, indirectly or through any third party for any item of Equipment.

13. *Governing Law:* The terms and provisions of this Agreement shall be governed by the laws of the State of Nebraska and to applicable federal law; however, the parties agree that neither party shall be entitled to receive an award of attorney fees

3

in connection with any dispute or litigation which arises in connection with this agreement.

14. *No Third Party Beneficiary:* Except as expressly set forth to the contrary in this Agreement, each of the Parties agree that no individual and/or entity is intended to have, nor shall such individual and/or entity be deemed to have any rights or remedies as a third party beneficiary to, or under this Agreement or otherwise and each of the Parties acknowledge and agree that any benefit conferred to any such individual and/or entity is, and shall be deemed for all purposes to be merely incidental.

15. *Approval by Bankruptcy Court:* This Agreement is subject to approval by the Bankruptcy Court, without requirement of bond, in connection with the Bankruptcy Case and approved retention by the Bankruptcy Court of T&M as auctioneer for NEMF. Notwithstanding the foregoing, NEMF has requested, and T&M has agreed, to begin pre-auction inspection, specification and organization of the Equipment together with other related tasks in order to be able to meet the auction sale timeframes set forth in paragraph 2 above. In the event this agreement is not approved by the Bankruptcy Court, then T&M shall be reimbursed by NEMF for all out of pocket costs associated with the rendition of such services including employee travel and lodging expenses; per diem customarily paid by T&M to its employees for the time in the field; and, reimbursement at a rate of $500 per day per employee for the services of each T&M field employee. NEMF acknowledges that the foregoing services will constitute a necessary expense as well as a direct and valuable benefit to the administration of the Bankruptcy Case.

16. *Miscellaneous Provisions:* (a) This Agreement sets forth the entire understanding and agreement between the parties hereto and merges and supersedes all prior discussions and agreements, and may not be amended except by further mutual written agreement. (b) No party shall be bound by any warranty or representation (expressed or implied) other than as expressly set forth in this Agreement. (c) The waiver of any right arising from a breach of any term or condition of this Agreement shall not be deemed a waiver of any right arising from any future breach of the same or any other term or condition. (d) This Agreement shall inure to and be binding upon the successors and assigns of the parties hereto. (e) This Agreement is effective as of the date identified on Page 1. (f) "Facsimile signatures" and "Electronic signatures", as the terms are commonly used with reference to facsimile machines and computers used in transmitting documents, signatures, photocopies, etc., will be and hereby are declared by all parties to this agreement to be the same as an original signature to this agreement. A facsimile or electronic duplicate of this agreement, including the signature portion thereof, will be treated and relied upon by all parties hereto as an original agreement and an authentic signature with the same legal effect as though the facsimile or electronic transmission was an original document to which a genuine signature has been affixed. This Agreement may be executed in counterparts.

The parties have duly executed this Multiple Sale Auction Agreement as of the date and year first above written.

TAYLOR & MARTIN, INC. – AUCTIONEERS

By _____
Stacy Tracy, Its President; and

By _____
Benjamin J. Reynolds, Its Auctioneer

NEW ENGLAND MOTOR FREIGHT, INC.
Debtor-In-Possession

By _____
Vincent J. Colistra, CRO (Title)

4