**GIBBONS P.C.**
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
E-mail: kgiannelli@gibbonslaw.com
mconlan@gibbonslaw.com
btheisen@gibbonslaw.com

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Jointly Administered) |

**MOTION OF DEBTORS FOR ORDER PURSUANT
TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULES 2002(a)(3) AND
9019 AUTHORIZING THE ESTABLISHMENT OF PROCEDURES TO
COMPROMISE AND SETTLE CERTAIN ACCOUNTS RECEIVABLE
AND OFFSET CERTAIN CUSTOMER CLAIMS RELATING THERETO**

New England Motor Freight, Inc. and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), as debtors and debtors in possession (the "**Debtors**"), hereby file this motion for entry of an order pursuant to sections 105(a) and 363(b) of

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

title 11 of the United States Code (as amended, the "**Bankruptcy Code**") and rules 2002(a)(3) and 9019 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), establishing certain procedures to compromise and settle certain accounts receivable and offset certain customer claims relating thereto (the "**Motion**"). In further support of the Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1. Historically, the Debtors have relied on the collection of accounts receivable ("**A/R**") to ensure that they maintain the liquidity necessary to operate their businesses and preserve the value of their assets. The Debtors' timely collection of their unencumbered A/R is particularly important in the Chapter 11 Cases in light of the Debtors' projected use of A/R collections to finance remaining operations in order to allow the Debtors to liquidate their remaining assets.

2. Collection efforts naturally have been hampered to some extent by the commencement of the Chapter 11 Cases. However, the Debtors have also encountered difficulty collecting A/R from customers who believe that they are entitled, or may become entitled, to certain credits, setoffs and/or deductions (the "**Credits**") with the Debtors. Credits against the Debtors' A/R generally fall under two categories: (a) claims by the Debtors' "interline" partner carriers[2] ("**Interline Claims**") and (b) claims for lost/damaged freight ("**Freight Claims**"). While, as a technical matter, such customers' resistance to remit payments due to the Debtors might constitute a violation of the automatic stay of section 362 of the Bankruptcy Code, as a practical matter, for the Debtors to pursue continuous and ongoing collection efforts and enforcements of

---

[2] The Debtors maintain cooperative relationships with other regional carriers, which allow the respective parties to service an expanded geographic area. For example, the Debtors may utilize a carrier in Florida to make deliveries to the Debtors' customers located in the Southeast, and that same carrier would then utilize the Debtors to make deliveries to its customers located in the Northeast. The Debtors refer to these partner carriers as "interlines." At any given time, the Debtors are likely to have both accounts payable and accounts receivable with the interlines.

2

the stay would cost excessive time and money—both of which are in short supply in these Chapter 11 Cases.

3.      To facilitate the expedient recovery and monetization of A/R, the Debtors believe that it may be necessary in certain instances to offset, compromise or agree to accept less than the full amount due with respect to such A/R claims.  By this Motion, the Debtors are seeking to establish certain A/R Settlement Procedures (defined below) that, if adopted, would allow the Debtors to settle and compromise issues relating to A/R or Credits with their customers without the need for seeking additional Court authorization, subject to oversight from key parties in interest in these cases.  This is particularly important since there are a substantial number of A/R claims outstanding, most of which have relatively small balances. The Debtors respectfully submit that adoption of the A/R Settlement Procedures will spare their estates the expense, delay and uncertainty that would be associated with seeking Court approval of each customer settlement they may seek to enter into in the Chapter 11 Cases, while preserving the ability of key parties in interest to challenge the reasonableness of any material settlements of A/R and Credits.

## JURISDICTION

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of New Jersey, dated September 18, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.       The statutory predicates for the relief sought herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 2002(a)(3), 6004(h) and 9019.

**BACKGROUND**

6. On February 11, 2019 (the "**Petition Date**"), each of the above-captioned Debtors filed voluntary petitions for relief under chapter 11of the Bankruptcy Code with the intent to commence an orderly wind-down and liquidation of their businesses and assets through the Chapter 11 Cases. The Debtors are in possession of their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner.

7. The Debtors offer a broad range of transportation services. Debtor New England Motor Freight, Inc. ("**NEMF**") was founded in 1918 in Elizabeth, New Jersey and is a leading less-than-truckload ("**LTL**") carrier with a focus in the Mid-Atlantic, Midwest and Northeast United States. NEMF also offers LTL services to its customers across the United States and Canada through a number of partnerships and interline carrier arrangements with other LTL providers. In addition to the LTL business, the Debtors provide truckload ("**TL**") services through Debtor Eastern Freight Ways, Inc. ("**Eastern**"). Debtor Jans Leasing Corp. ("**Jans Leasing**") is a trucking equipment lessor; Debtor Carrier Industries, Inc. ("**Carrier**") offers dedicated third party logistics services; Debtor Apex Logistics, Inc. ("**Apex**") offers transportation brokerage services, and Debtor NEMF World Transport, Inc. ("**NEWT**") provides non-vessel operation common carrier operations between the United States and Puerto Rico. Debtor NEMF Logistics, LLC ("**Logistics**") is a third-party logistics company specializing in logistics management services, including warehousing, software, brokerage and support. Debtors Myar, LLC ("**Myar**") and MyJon, LLC ("**MyJon**") are both dormant and had no economic actively in 2018. Debtors Hollywood Avenue Solar, LLC ("**Hollywood Solar**") and United Express Solar, LLC ("**United**

4

**Solar**") were formed to acquire solar arrays for terminals in South Plainfield and Pennsauken, New Jersey, respectively, at which the Debtors operate.

8. MyJon, Hollywood Solar and United Solar are wholly-owned subsidiaries of NEMF. Myar is a wholly-owned subsidiary of Eastern. The remaining Debtors are all sister entities owned solely by The Shevell Dynasty Trust, or by the Shevell Dynasty Trust and Myron P. Shevell.

9. As of the Petition Date, the Debtors employ approximately 3,450 full-time and part-time employees. Approximately 1,900 of the employees are members of International Association of Machinists and Aerospace Workers, AFL-CIO (the "**Union**") and are covered by a series of collective bargaining agreements with the Union.

10. In 2017, the Debtors' businesses generated consolidated gross revenues of approximately $373 million. For 2018, the Debtors estimate that their businesses will generate consolidated revenues of approximately $370 million.[3]

11. The Debtors' principal place of business and corporate headquarters is located at 1-71 North Avenue East, Elizabeth, New Jersey, 07201-2859. The Debtors operate from 36 trucking terminals located throughout the Mid-Atlantic, the Northeast and Midwest, and two additional locations in New Brunswick, NJ and Jordan, NY, which are used primarily for administrative staff and for Eastern operations. The only real property owned by the Debtors is located in Miami, Florida (the "**Miami Property**"), and is leased to an unrelated third-party trucking company.

12. Additional information regarding the Debtors' businesses, the events leading to the Chapter 11 Cases, and the facts and circumstances supporting the relief requested herein are set

---

[3] The Debtors' books for fiscal year ending December 29, 2018 are not yet final. All references to 2018 financials herein are based on the Debtors' preliminary results and remain subject to change.

forth in the First Day Declaration of Vincent Colistra (the "**First Day Declaration**") [Docket No. 22], which was filed on the Petition Date and is incorporated herein by reference.

## RELIEF REQUESTED

13.    The Debtors seek entry of an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 2002(a)(3) and 9019, establishing the following procedures to permit the Debtors to compromise and settle A/R and offset any Claims related thereto on an expedited basis (the "**A/R Settlement Procedures**").  The A/R Settlement Procedures establish "tiered" notice requirements based upon the magnitude of the proposed settlement:

(a)    With respect to compromises in which the Debtors agree to reduce the amount to be collected on account of a customer's A/R (due to the setoff of Credits or otherwise) by an amount that is equal to or less than (i) $10,000, or (ii) 15% of the aggregate face amount of such A/R, as reflected on the Debtors' books and records, the Debtors shall be authorized to enter into such compromises without advance notice or the prior approval of this Court, provided, however, that the Debtors shall provide to counsel to the Committee and the U.S. Trustee, on a monthly basis, a schedule listing all such compromises reached during the prior month as set forth below.

(b)    With respect to compromises in which the Debtors agree to reduce the amount to be collected on account of a customer's A/R (due to the setoff of Credits or otherwise) by an amount that is between (i) $10,000 and $100,000, and (ii) greater than 15% of the face amount of such A/R, as reflected on the Debtors' books and records:

i.    The Debtors shall provide advance written notice of each such proposed compromise along with a summary of the key terms thereof (the "**Settlement Summary**") to counsel to the Committee and the U.S. Trustee.

ii.    If either (a) the Committee or (b) the U.S. Trustee objects to the proposed compromise within five (5) business days of the Debtors' provision of the Settlement Summary, the Debtors may either: (x) renegotiate the settlement and re-submit a revised Settlement Summary to the Committee and U.S. Trustee reflecting the new terms (in which case the Committee and U.S. Trustee shall have

        three (3) additional business days within which to submit a further objection to the Settlement Summary); or (y) file a motion pursuant to Bankruptcy Rule 9019 with the Court seeking approval of the existing Settlement Summary on no less than seven (7) calendar days' notice to the parties that received the Settlement Summary. If no objections are filed to the Motion, the court may enter an order approving the proposed settlement without a hearing.

    iii.    In the absence of an objection to a notice of the Settlement Summary within the applicable timeframe established above, the Debtors shall be deemed authorized to settle the claim as provided in the Settlement Summary without prior Court approval.

(c)    With respect to compromises in which the Debtors agree to reduce the amount to be collected on account of a customer's A/R (due to the setoff of Credits or otherwise) by an amount that greater than (i) $100,000 <u>and</u> (ii) greater than 15% of the face amount of such A/R, as reflected on the Debtors' books and records:

    i.    The Debtors shall file with the Court a notice of such compromise and a proposed order approving same on not less than seven (7) calendar days' notice, but will not be required to file a motion pursuant to Bankruptcy Rule 9019.

    ii.    Absent an objection to the proposed settlement, the Court may enter an order approving the proposed settlement without further notice or a hearing. If there is an objection to a proposed settlement covered by this paragraph, the Debtors may either: (a) renegotiate the settlement and file a revised notice of compromise with the Court on no less than seven (7) calendar days' notice; or (b) file a motion pursuant to Bankruptcy Rule 9019 with the Court seeking approval of the existing settlement on no less than seven (7) calendar days' prior notice to counsel to the Committee and the U.S. Trustee.

    iii.    Absent an objection to a revised notice of proposed settlement or a motion pursuant to Bankruptcy Rule 9019, as applicable, the Court may enter an order approving the proposed settlement without a hearing

14.    The vast majority of Freight Claims are under $10,000, and will thus fall under tier "(a)" above. The Debtors do not seek authority to use the A/R Settlement Procedures to

compromise and settle any claims held by the Debtors' insiders as defined in 11 U.S.C. § 101(31), affiliates, or equity holders.

15. On a monthly basis, the Debtors will provide reports (the "**Monthly Reports**") of all settlements entered into by the Debtors during such month pursuant to the A/R Settlement Procedures to counsel to the Committee, on a professionals' eyes only basis, and the U.S. Trustee; provided, that no such report will be provided if no such settlements have been entered into during the prior month. The Monthly Reports will set forth the name of the party with whom the Debtors have settled, the face amount of the A/R as reflected in the Debtors' books and records, and the amounts for which the A/R ultimately were settled.

## BASIS FOR RELIEF

16. Compromises are favored by bankruptcy courts. See In re Sassalos, 160 B.R. 646, 653 (D. Or. 1993) (stating that "compromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove a compromise . . . rests in the sound discretion of the judge."). Under Bankruptcy Rule 9019(a), the Court has the authority to approve a settlement if it is fair and equitable and in the best interests of the estate. See In re Louise's Inc., 211 B.R. 798 (D. Del, 1997); Fischer v. Pereira (In re 47-49 Charles St., Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997). In considering whether to approve a compromise or settlement, a court must assess and balance the value of the claim that is being compromised against the value to the estate of accepting the compromise. In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). Among other things, a bankruptcy court should consider: "(1) The balance between the likelihood of success compared to the present and future benefits offered by the settlement; (2) Prospect of complex and protracted litigation if settlement is not approved; ...and (3) The extent to which settlement is the product of arm's length bargaining." Fischer v. Pereira, 209 B.R. at 620 (quoting Nellis v. Shugrue, 165 B.R. 115, 122

(S.D.N.Y. 1994)). With respect to any proposed settlement of A/R that the Debtors seek to enter into under the A/R Settlement Procedures, the Debtors will focus on the merits of the customers' claims for Credits or other adjustments to the applicable A/R, the risk to the Debtors if the A/R dispute were litigated, and the expense the Debtors will likely incur in connection with such litigation.

17. This Court has the authority to grant the relief requested in this Motion pursuant to Bankruptcy Rule 9019(b), as well as sections 105(a) and 363(b) of the Bankruptcy Code.[4] Bankruptcy Rule 9019(b) provides that the Court may authorize the Debtor to settle certain classes of controversies without requiring separate notice and a hearing with respect to each such with respect to each separate controversy.

18. In addition, section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." See 11 U.S.C. § 105(a). Pursuant to section 363(b)(1) of the Bankruptcy Code, a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To obtain court approval of a use of property under section 363(b), a debtor needs only to show a legitimate business justification for the proposed action. See, e.g., Myers v. Martin (In re Martin), 91 F.3d 89, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification) (internal citation omitted); Computer Sales Int'l, Inc. v. Fed. Mogul Global, Inc. (In re Fed. Mogul Global, Inc.), 293 B.R. 124, 126 (D. Del. 2003) ("As applied in the Third Circuit, a court should approve a

---

[4] In connection with the settlements, the Debtors also seek relief from the automatic stay provisions of section 362 of the Bankruptcy Code, to the extent required, to permit the Debtors to consent to the setoff of prepetition amounts by the Debtors to a vendor or customer against prepetition amounts owed by such vendor or customer to the Debtors.

debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction."); In re Delaware and Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" test for use of property under section 363(b) of the Bankruptcy Code).

19. Here, the establishment of the A/R Settlement Procedures is supported by a legitimate business justification and is in the best interests of the Debtors' estates and creditors. Specifically, the A/R Settlement Procedures will: (a) facilitate the Debtors' prompt collection of unencumbered A/R, which is necessary to ensure that the Debtors continue to have access to cash; and (b) minimize the administrative expense and procedural burdens associated with obtaining approval of numerous settlements of A/R, while preserving fundamental checks on the reasonableness of such settlements.

20. In furtherance of the relief requested herein, the Debtors also request that, pursuant to Bankruptcy Rule 2002(a)(3), the Court find that cause exists to limit notice, as described above, of any settlement entered into pursuant to the A/R Settlement Procedures. Limiting notice will enable the Debtors to promptly and efficiently enter into the settlements contemplated by the A/R Settlement Procedures.

21. Bankruptcy Rule 6004(h) provides that an order authorizing use of a debtor's property, other than cash collateral, is stayed for a period of 14 days after entry of the order unless the court orders otherwise. The Debtors respectfully submit that cause exists for the Court to waive Bankruptcy Rule 6004(h), to the extent applicable, due to the Debtors' need to promptly begin settling A/R disputes pursuant to the A/R Settlement Procedures in order to expedite their collection of A/R.

22. Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of the Debtors, their estates and their creditors, and therefore should be granted in all respects.

## NOTICE

23. Notice of this Application has been provided to: (a) the Office of the United States Trustee for Region Three; (b) the Official Committee of Unsecured Creditors; (c) the Debtors' prepetition secured lenders; and (d) those parties requesting notice pursuant to Bankruptcy Rule 2002 in accordance with Local Rule 2002-1(b) (collectively, the "**Notice Parties**").

24. In light of the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

## NO PRIOR REQUEST

25. No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter the annexed Proposed Order (a) granting the relief requested in the Motion and (b) granting such other and further relief as the Court deems just and proper.

Dated:  March 22, 2019                            Respectfully submitted,

**GIBBONS P.C.**

By: */s/ Brett S. Theisen*
    Karen A. Giannelli, Esq.
    Mark B. Conlan, Esq.
    Brett S. Theisen, Esq.
    One Gateway Center
    Newark, New Jersey  07102
    Telephone:  (973) 596-4500
    Facsimile:   (973) 596-0545
    E-mail:  kgiannelli@gibbonslaw.com
           mconlan@gibbonslaw.com

btheisen@gibbonslaw.com

*Counsel to the Debtors*
*and Debtors-in-Possession*

12