**GIBBONS P.C.**
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
E-mail: kgiannelli@gibbonslaw.com
          mconlan@gibbonslaw.com
          btheisen@gibbonslaw.com

Counsel to the Debtors
and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., et al.,<br><br>              Debtors.[1] | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Jointly Administered) |

**DEBTORS' MOTION FOR ORDERS (I)(A) APPROVING BIDDING PROCEDURES AND AUCTION AND (B) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF; (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' EASTERN FREIGHT WAYS, INC. AND CARRIER INDUSTRIES, INC.'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF**

The above-referenced debtors and debtors in possession (collectively, the **"Debtors"**),

file this motion (this "**Motion**") for entry of orders (I)(A) approving bidding procedures and

related auction and (B) scheduling a sale hearing and approving notice thereof (the **"Bidding**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

**Procedures Order"**); (II) authorizing the sale of substantially all of Debtors' Eastern Freight Ways, Inc. (**"Eastern"**) and Carrier Industries, Inc.'s (**"Carrier"**) assets (collectively, the **"Assets"**) free and clear of all liens, claims, encumbrances, and other interests; (III) authorizing the assumption and assignment of certain executory contracts and unexpired leases and establishing procedures to determine cure amounts and establishing deadlines for objections with respect thereto; and (IV) granting related relief (the **"Approval Order"**). In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of New Jersey, dated September 18, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory predicates for the relief requested herein are sections 105(a), 363, 364, 365, 503, 507 and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the **"Bankruptcy Code"**) and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (as amended, the **"Bankruptcy Rules"**), and Rules 6004-1, 6004-2 and 6004-3 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (as amended, the **"Local Rules"**).

## BACKGROUND

3.      On February 11, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with the Court for relief under chapter 11 of the Bankruptcy Code with the intent to commence an orderly wind-down and liquidation of their businesses and assets through the chapter 11 cases (the **"Chapter 11 Cases"**). The Debtors are in possession of their assets as

2

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party

has requested the appointment of a trustee or examiner.

4.     Factual background relating to the Debtors' businesses, capital structure, and the

circumstances leading to the commencement of the Chapter 11 Cases is set forth in detail in the

First Day Declaration of Vincent Colistra (the **"First Day Declaration"**) which was filed on the

Petition Date [Docket No. 22] and is incorporated herein by reference.

## FACTS SPECIFIC TO THE RELIEF REQUESTED

5.     As discussed in detail in the First Day Declaration, the Debtors commenced the

Chapter 11 Cases with the goal of liquidating all of their assets and maximizing value for all

constituents.  Although the Debtors have commenced the liquidation process, both Eastern and

Carrier continue to operate their respective businesses.  The Debtors, in their business judgment,

have determined that a going concern sale of Eastern and Carrier through an open bidding and

auction process is the best way to maximize the value of the Assets.

6.     Eastern is a truckload carrier, based in South Brunswick, New Jersey.  Eastern

was established in 1994 to provide premium truckload services to customers in the Northeast and

Mid-Atlantic regions.  The company has established a reputation for excellent response time,

guaranteed equipment availability, and outstanding on-time performance.  All of its vehicles are

equipped with the latest satellite technology for enhanced communication, shipment, tracking

and increased efficiency.  Eastern operates principally within short-to-medium haul traffic lanes.

The majority of Eastern's dispatches are for overnight or same-day delivery.

7.      Carrier is a dedicated contract carriage services company, providing all aspects

of supply chain management and logistical planning.

8.     Although the Debtors have marketed the Assets of Eastern and Carrier in the past,

given the circumstances leading to the filing of the Chapter 11 Cases, the Assets were not

formally marketed prior to the Petition Date.  The Debtors are in the process of finalizing a confidential offering memorandum, setting up a data room and have already commenced the process of reaching out to potentially interested parties in order to move the sale process forward on an expedited timeline.

9.      In sum, the Debtors believe that the Sale process set forth herein will allow the continued operations of Eastern and Carrier as a going concern under new ownership post-closing.  Given the challenges facing the Debtors leading up to the commencement of the Chapter 11 Cases, the proposed process presents the best option for maximizing the value of these Debtors' estates and stakeholder recoveries.

## **<u>SUMMARY OF RELIEF REQUESTED</u>**

10.     The Debtors believe that the solicitation of bids and a sale of the Assets on the timeline proposed herein allow the Debtors to maximize value for all stakeholders while minimizing administrative expenses. During this process, the Debtors will engage with interested parties, and attempt to attract interested parties that will participate in a competitive auction process contemplated by the Bidding Procedures (defined below). The Debtors propose that the hearing to approve the Bidding Procedures be held on **<u>April 8, 2019</u>** (the **"Bid Procedures Hearing"**), with objections to the Bidding Procedures, if any, to be filed on or before **April 3, 2019 at 4:00 p.m.** prevailing Eastern time (the **"Bid Procedures Objection Deadline"**). The Debtors propose that the bid deadline be set for **<u>May 9, 2019 at 4:00 p.m.</u>** prevailing Eastern time (the **"Bid Deadline"**), and that the auction of the Debtors' Assets (the **"Auction"**), if required, be scheduled for **<u>May 14, 2019 at 10:00 a.m.</u>** prevailing Eastern time. The Debtors propose that the Court hold the hearing to approve the sale and enter the Approval Order (the **"Sale Hearing"**) on **<u>May 16, 2019</u>** with objections to the relief requested in the Approval Order (other than with respect to the conduct of the Auction), if any, to be filed on or before **<u>May 6,</u>**

**2019 at 4:00 p.m.** prevailing Eastern time and objections to the conduct of the Auction, if any, to be filed prior to the commencement of the Sale Hearing.

11.    In accordance with Local Rule 6004-1(a)(3), the material terms of the proposed sale pursuant to the Template Asset Purchase Agreement are as follows:[2]

(1)    **Sellers**.  Eastern Freight Ways, Inc. and Carrier Industries, Inc.

(2)    **Property to be Sold**.  *See* attached form Template Asset Purchase Agreement at Article 2.1.

(3)    **Date, Time and Place of Sale**.  If the Debtors receive one or more Qualified Bids, the Debtors will conduct an Auction on **May 14, 2019 at 10:00 a.m.** prevailing Eastern time at the offices of Gibbons P.C., One Gateway Center, Newark, N.J. 07102, or at such other place and time as the Debtors shall notify all Qualified Bidders and other invitees.  The Debtors propose that the Sale Hearing be scheduled for **May 16, 2019**.

(4)    **Purchase Price**.  There is no minimum consideration for the Assets provided for in the Template Asset Purchase Agreement.

(5)    **Conditions of the Sale**.  The closing of the transactions contemplated by the Template Asset Purchase Agreement are set forth in Article III.

(6)    **Deadline for Approval or Closing of Sale**.  Closing must occur by May 31, 2019.

(7)    **Deposit and Forfeiture of Deposit**.  The Debtors will require contemporaneously with the execution and submission of a Bid that such Bidder deposit ten (10)

---

[2] The following summary of the material terms of the proposed sale and "special provisions" of the Template Asset Purchase Agreement and Approval Order are provided in accordance with Local Rule 6004-1 and are qualified in their entirety by reference to the provisions of the Template Asset Purchase Agreement and Approval Order.  In the event of any inconsistencies between these summaries and the actual provisions of the Template Asset Purchase Agreement and Approval Order, the terms of the Template Asset Purchase Agreement and Sale Order shall govern in all respects.  Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in either the Template Asset Purchase Agreement or Approval Order.

percent of the purchase price in an escrow account established by the Debtors.  As set forth in Article 2.6 of the Template Asset Purchase Agreement, if the agreement is terminated for any reason, then the deposit shall be forfeited to Debtors or returned to Bidder as provided in Article VIII of the Template Asset Purchase Agreement and Bidding Procedures Order.

      (8)    **Request for Tax Determination Under Section 1146(b)**.  The proposed Sale is not being effectuate pursuant to a plan.  Thus, section 1146(b) of the Bankruptcy Code is not applicable.

      (9)    **Retention/Access to Books and Records**.  *See* attached form Template Asset Purchase Agreement at Article 6.4.

      (10)    **Assumption and Assignment of Executory Contracts and Leases**.  The Template Asset Purchase Agreement provides for bidders to designate executory contracts and unexpired leases that such bidders want assumed and assigned in connection with the Sale.

      (11)    **Credit Bidding**.  The proposed Sale does not involve a credit bid.

In accordance with Local Rule 6004-1(b), the Template Asset Purchase Agreement and/or the Approval Order, as applicable, include the following "special provisions":

**Sale to Insider.**  The proposed Sale is not to an insider.

**Agreements with Management or Key Employees.**  At the present time, there is no agreement with management or key employees.

**Waiver, Release or Satisfaction of any Claim.**  The Template Asset Purchase Agreement does not include a waiver, release or satisfaction of any claim.

**Agreement to Limit Marketing or Not Solicit Competing Offers.**  None.

**Sale or Limitation of Right to Pursue Avoidance Actions.**  None.

**Limitation on Successor Liability.**  The Approval Order provides that except as set forth in the Template Asset Purchase Agreement, there shall not be any form of successor liability.

**Sale Free and Clear.**  The Sale is free and clear of all Liabilities and Liens.

**Relief from Bankruptcy Rules 6004(h) and 6006(d).**  The Debtors seek a waiver of any applicable stay imposed by the Bankruptcy Rules.

## RELIEF REQUESTED

12.    By this Motion, the Debtors seek the entry of two orders:

(a)    the Bidding Procedures Order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004, (i) approving the Bidding Procedures attached to the Bidding Procedures Order as Exhibit 1 (the **"Bidding Procedures"**), (ii) approving the notice attached to the Bidding Procedures Order as Exhibit 2 (the **"Notice of Auction and Sale Hearing"**) of the deadline to bid on the Debtors' Assets, (iii) setting the time, date and place of the Auction if one or more Qualified Bids (defined below) are presented in a manner that conforms to the Bidding Procedures, (iv) scheduling the Sale Hearing on **May 16**, **2019**, to consider the entry of the Approval Order; and (v) approving the notice attached to the Bidding Procedures Order as Exhibit 3 (the **"Notice of Assumption and Assignment"**) of the Debtors' intent to assume, assign, and/or transfer to the Successful Bidder or Back-Up Bidder, the contracts commitments, leases, licenses, permits, purchase orders and any other executory contracts and unexpired leases (collectively, the **"Executory Contracts and Unexpired Leases"**) and the corresponding cure amounts required to be paid in connection with such assumption, assignment and/or transfer;

(b)    following the Sale Hearing, the Debtors request the entry of the Approval Order pursuant to Sections 105(a) and 363(b), (f), and (m) of the Bankruptcy Code and Bankruptcy Rule 6004, (i) approving the sale of substantially all of the Debtors' Assets to the party holding the highest or otherwise best bid for the Assets (the **"Successful Bidder"**) free and clear of all liens, claims, encumbrances, and other interests (other than certain specified assumed liabilities), (ii) authorizing the Debtors to assume and assign to the Successful Bidder the Executory Contracts and Unexpired Leases; and (iii) granting related and ancillary relief.

13.     The Debtors further request that the sale process occur in accordance with the

following timeline:[3]

| Action | Proposed Deadline |
|---|---|
| Bid Procedures Objection Deadline | April 3, 2019 |
| Bid Procedures Hearing | April 8, 2019 |
| Sale Objection Deadline and Cure/Assignment Objection Deadline | May 6, 2019 |
| Stalking Horse Bid Deadline/General Bid Deadline | April 12, 2019 for a Stalking Horse Bid<br><br>May 9, 2019 for all other Bids |
| Auction | May 14, 2019 |
| Sale Hearing | May 16, 2019 |
| Sale Closing Date | May 31, 2019 |

## I.     THE PROPOSED BIDDING PROCEDURES AND AUCTION

14.     Given the desire to sell the Assets expeditiously and minimize administrative

expenses, on the one hand, and the Debtors desire to ensure a fair and transparent opportunity for

all potentially interested parties to participate in the sale process, on the other hand, the Debtors

propose that the Bidding Procedures, and related notice and other procedures set forth herein be

implemented in connection with the marketing and sale of the Assets.

15.     In addition, the Debtors seek the authority, subject to the terms of the Bidding

Procedures Order, without the necessity of a further hearing or authorization of the Court in the

Debtors' discretion, to accept a stalking horse bid from a potential bidder (the **"Stalking Horse

Bid"**) and enter into a purchase agreement (the **"Stalking Horse Purchase Agreement"**) with

such potential bidder (the **"Stalking Horse Bidder"**) if the Debtors determine, in the Debtors'

---

[3] The Debtors, in the exercise of their business judgment, reserve the right to change these sale-related dates in order to maximize the value of the sale of the Assets.

discretion, that entry into such a Stalking Horse Purchase Agreement on such terms and conditions that the Debtors, in the Debtors' discretion, reasonably determine are in the best interests of their estates.

16.     As is customary, to enable the Debtors to enter into a Stalking Horse Purchase Agreement, the Debtors foresee that it may be necessary to afford a Stalking Horse Bidder certain bid protections such as a break-up fee and expense reimbursement. To that end, the Debtors seek authority, in their discretion, and without the necessity of a further hearing or authorization of the Court: (i) to agree to pay the Stalking Horse Bidder a break-up fee (the **"Break-Up Fee"**) of up to five percent (3%) of its Stalking Horse Bid as set forth in its Stalking Horse Purchase Agreement and reimbursement of its reasonable and documented out-of-pocket expenses and disbursements not to exceed $75,000 (**"Expense Reimbursement"** and collectively with the Break-Up Fee, the **"Bid Protections"**), incurred in connection with its due diligence or Stalking Horse Bid if the Stalking Horse Bidder does not become the Successful Bidder at the Auction and (ii) to amend or modify the Bidding Procedures as is necessary to facilitate such Stalking Horse Bid.  The Debtors further request that any such Bid Protections which are granted to a Stalking Horse Bidder within the parameters permitted by the Bidding Procedures Order be allowed as administrative expense claims in the Chapter 11 Cases under section 364(c)(1) of the Bankruptcy Code with priority over all expenses of the kind specified in Section 503(b) and 507(b) of the Bankruptcy Code and which shall be payable in cash to a Stalking Horse Bidder from the proceeds of a sale to a Successful Bidder (other than the Stalking Horse Bidder) within seven (7) days of the Debtors' receipt of such proceeds.

17.     If the Debtors designate a Stalking Horse Bidder, the Debtors shall within two business (2) days thereof file a notice of such determination with the Court, which notice shall

(i) identify the Stalking Horse Bidder, (ii) set forth the amount of any Break-Up Fee and/or Expense Reimbursement granted to the Stalking Horse Bidder, (iii) include a copy of the Stalking Horse Asset Purchase Agreement, which competing Qualified Bidders (defined below) must then use as the basis to submit their Qualified Bids (defined below), and (iv) shall include modifications to the Bidding Procedures, if any, necessary to account for the Stalking Horse Bid.

18.    The Debtors will select the highest or otherwise best Qualified Bid for substantially all of the Assets (which may be the Stalking Horse Bid) to be the starting bid at the Auction.  In no event shall any Qualified Bidder, other than a Stalking Horse Purchaser be entitled to seek a break-up fee, expense reimbursement or any similar bidding protections.

19.    Within three (3) business days after entry of the Bidding Procedures Order, the Debtors (or their agent) will:

(i)      cause the Notice of Auction and Sale Hearing, attached as <u>Exhibit 2</u> to the Bidding Procedures Order, and a copy of the Bidding Procedures Order to be served by first class mail upon: (a) the Office of the United States Trustee for the District of New Jersey (the **"U.S. Trustee"**); (b) counsel to the Official Committee of Unsecured Creditors; (c) all parties who are known to assert a security interest, lien, or claim in any of the Assets, if any; (d) all non-Debtor parties to the Executory Contracts and Unexpired Leases and any parties who are known to claim interests therein; (e) all applicable federal, state, and local taxing authorities; (f) all applicable county and state consumer protection agencies; (g) all applicable state attorneys general; (h) all other government agencies required to receive notice under the Bankruptcy Rules; (i) the 30 largest unsecured creditors of the Debtors; (j) the Debtors' insurance providers; (k) all known parties that have expressed interest to the Debtors' Assets, within six (6) months prior to the Petition Date and/or since the Petition Date, in purchasing some or all of the Debtors' Assets, and (l) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002 collectively, the "**Sale Notice Parties**");

(ii)     serve the Notice of Auction and Sale Hearing on any other party appearing on the Debtors' creditor matrix (to the extent not served as a Sale Notice Party); and

(iii)    provide electronic notification of this Motion, the Bidding Procedures Order and the Notice of Auction and Sale Hearing via the Court's electronic case filing (ECF) website.

20.    The Debtors believe the proposed Bidding Procedures, which are annexed as Exhibit 1 to the Bidding Procedures Order, will maximize value for the benefit of the Debtors' stakeholders. The Bidding Procedures contemplate an auction process pursuant to which bids will be subject to higher or otherwise better offers. The auction process contemplated in the Bidding Procedures takes into account competing offers from bidders to enter into a sale transaction. The following is a summary of the significant terms of the Bidding Procedures:[4]

| Provision | Description of Provision |
|---|---|
| **Participation Requirements** | In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in entering into a Sale for substantially all of the Assets (a **"Potential Bidder"**) must first deliver an executed confidentiality agreement in form and substance satisfactory to the Debtors and their counsel.[5]  Further, in order to qualify to submit a Qualified Bid (as defined below) and participate in the Auction, each Potential Bidder must, if the Debtors so request: (i) deliver to the Debtors the most current audited (if available) and the latest unaudited financial statements and/or such other financial information evidencing the Potential Bidder's ability to close the Sale within the time period prescribed in the Bidding Procedures Order and Template Asset Purchase Agreement.  The Debtors, in their discretion, shall determine whether a Potential Bidder has complied with the foregoing |

---

[4] This summary is provided in accordance with Rule 6004-2(b) of the Local Rules and is qualified in its entirety by reference to the provisions of the Bidding Procedures. Each capitalized term used and not otherwise defined herein shall have the meaning assigned thereto in the Bidding Procedures. To the extent there exists any inconsistency between this summary and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall control.

[5] To the extent any party executed a confidentiality agreement prior to the entry of an order approving these Bidding Procedures, such party does not need to execute another confidentiality agreement in order to comply with the Bidding Procedures or become a Qualified Bidder.

| Provision | Description of Provision |
|---|---|
|  | requirements and has qualified to submit a Qualified Bid and participate in the Auction, and the Debtors shall provide prompt notice of their determination to any such Potential Bidder and counsel for the Official Committee of Unsecured Creditors. |
| **Bid Requirements** | To constitute a Qualified Bid, a bid must, among other things:<br><br>A. Be made in writing;<br><br>B. Be submitted prior to the Bid Deadline;<br><br>C. Be a bid for all or substantially all of the Assets of both Eastern and Carrier;<br><br>D. Designate a list of the executory contracts and unexpired leases with respect to which the Potential Bidder seeks assignment from the Debtors;<br><br>E. Include a binding, definitive and fully executed asset purchase agreement which shall be in form and substance substantially similar to the Form Template Asset Purchase Agreement or Stalking Horse Asset Purchase Agreement, as applicable, and which shall be marked to reflect only those changes required as a condition of such Qualified Bidder's closing the Sale; provided, however, such asset purchase agreement shall not request or entitle such Potential Bidder to any break-up fee, expense reimbursement, or similar type of payment. An asset purchase |

| Provision | Description of Provision |
|---|---|
| | agreement, together with its schedules and exhibits, submitted in accordance with these Bidding Procedures shall be referred to herein as a "**Qualified Bidder Purchase Agreement**"; |
| | F. Provide that the purchase price shall be paid in full in cash at the closing of the Sale; |
| | G. Provide a good faith cash deposit (the "**Good Faith Deposit**") equal to 10% of the Bidder's proposed purchase price. The Good Faith Deposit shall be paid to such Bidder's counsel trust account and counsel for such Bidder shall represent in such Bidder's cover letter or in an email sent to Debtors' counsel that it is in receipt of the Good Faith Deposit and will hold same in accordance with the Bidding Procedures. The Debtors reserve the right to increase, decrease or waive the Good Faith Deposit for one or more Qualified Bidders in their discretion or to accept an alternative form of consideration in lieu of a Good Faith Deposit. At the conclusion of the Auction, the Good Faith Deposit of the Successful Bidder shall be transferred from counsel's trust account to a trust account at Gibbons P.C. in accordance with directions to be provided to such Successful Bidder, together with any additional amount such that the final |

| Provision | Description of Provision |
|---|---|
| | Good Faith Deposit reflects ten (10%) percent of its final bid at Auction. With respect to the Back-Up Bidder, its Good Faith Deposit shall continue to be held by its counsel in a trust account until such time as the Debtors notify the Back-Up Bidder or its counsel that the Good Faith Deposit can be returned to the Back-Up Bidder. To the extent the Successful Bidder fails to close or otherwise breaches its agreement and the Debtors notify the Back-Up Bidder that they intend to proceed with the final Qualified Bid submitted at Auction by the Back-Up Bidder, the Good Faith Deposit of the Back-Up Bidder shall be transferred to a trust account at Gibbons P.C. in accordance with directions to be provided, together with any additional amounts such that the final Good Faith Deposit reflects ten (10) percent of the Back-Up Bidder's final bid at Auction. All other Qualified Bidders shall be entitled to request the return of their Good Faith Deposits from their counsel at the conclusion of the Auction;<br><br>H.  Provide that such bid shall be open and irrevocable until the earlier of: (a) such bid being determined by the Debtors not to be a Qualified Bid; (b) if such bid is not chosen by the Debtors at the Auction to be the Successful Bid or Back-Up Bid (as each such term is defined below), the date of |

| Provision | Description of Provision |
|---|---|
| | entry by the Bankruptcy Court of an order approving the Sale to another Qualified Bidder; (c) if such bid is chosen by the Debtors to be the Successful Bid, the date which is the earlier to occur of: (i) the closing of the Sale to such Successful Bidder, and (ii) five (5) Business Days following the date the order approving the Sale to the Successful Bidder shall have become a final, non-appealable, order ("**Final Order**"); (d) if such bid is chosen by the Debtors to be the Back-Up Bid, the date which is the earlier to occur of: (i) the date of closing on the Sale to the Successful Bidder, and (ii) twenty-five (25) Business Days following the date the order approving the Sale to the Successful Bidder shall have become a Final Order; provided, that if the Successful Bidder shall fail to close on its purchase of the Purchased Assets during the period set forth above, (x) the Back-Up Bid shall continue to remain open and irrevocable, (y) the Back-Up Bidder, at the Debtors' discretion, shall be deemed to be the Successful Bidder, and (z) it shall close on the Sale within ten (10) Business Days of becoming the Successful Bidder; <br><br> I.  (i)  Include  an acknowledgement  and representation  that  the Qualified Bidder has had an opportunity to conduct all due |

| Provision | Description of Provision |
|---|---|
| | diligence regarding the Assets prior to submitting its bid and that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or assets in making its bid, and (ii) confirms the Qualified Bidder's completion of all due diligence required by such Qualified Bidder in connection with the Sale and does not include any due diligence contingencies;<br><br>J.  Does not contain any financing contingencies or any other contingencies not set forth in the Stalking Horse Asset Purchase Agreement or Form Template Purchase Agreement, as applicable;<br><br>K.  Provide evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) evidencing the authority of the Qualified Bidder to make a binding and irrevocable Qualified Bid and to consummate the Sale if such Qualified Bidder is the Successful Bidder or Back-Up Bidder, as such bid may be improved prior to or at the Auction;<br><br>L.  Confirm that the Sale will close no later than May 31, 2019;<br><br>M.  If the Qualified Bidder was formed in whole or part for the purpose of acquiring all or part of the Assets, provides |

| Provision | Description of Provision |
|---|---|
| | evidence which is reasonably satisfactory to the Debtors, in their discretion, regarding the major equity holder or sponsor of such Qualified Bidder demonstrating that such Qualified Bidder has, or will have access to, the financial resources needed to consummate the Sale if it becomes the Successful Bidder, and that the use of such resources to consummate the Sale has been authorized and approved by such entity's board of directors (or comparable governing body), provided, that the Debtors reserve the right to limit or waive this requirement for one or more Qualified Bidders in their discretion;<br><br>N. Certifies that the Qualified Bidder has not, and is not, engaged in any collusion with respect to its bid or the Sale; except that the Debtors may facilitate a submission of a Qualified Bid by one or more unrelated Qualified Bidders or one or more entities may elect to jointly submit a Qualified Bid;<br><br>O. Is not conditioned on the receipt of any third-party approvals or consents (excluding required Bankruptcy Court approval and required governmental, licensing or regulatory approval or consent, if any) other than third party approvals or consents that are deemed |

| Provision | Description of Provision |
|---|---|
| | reasonable, as determined by the Debtors, in their discretion; <br><br> P.  Sets forth the representatives that are authorized to appear and act on behalf of such Qualified Bidder in connection with the proposed transaction and the Auction. |
| **Bid Deadline** | **April, 12, 2019 for a Stalking Horse Bid or May 9, 2019 at 4:00 p.m. prevailing Eastern Time for all other Bids.** |
| **Bidding Increments** | After the Bid Deadline, the Debtors shall determine which Qualified Bid or combination of Qualified Bids represent the then-highest or otherwise best bid for the Assets (the "**Starting Qualified Bid**"). Prior to the commencement of the Auction, to the extent practicable, the Debtors shall distribute copies of the Starting Qualified Bid to each Qualified Bidder, which Starting Qualified Bid shall constitute the Baseline Bid.  Bidding shall commence at the Baseline Bid. The first overbid at the Auction (the "**Minimum Initial Overbid**") shall be the amount of the Baseline Bid plus (i) the amount of any of the Break-Up Fee and Expense Reimbursement which would be due to any Stalking Horse Bidder if it is not the Successful Bidder if one is so designated by the Debtors, plus (ii) $100,000. Thereafter, a Qualified Bidder may increase its Qualified Bid in any amount as long as each subsequent bid (each, a "**Subsequent Overbid**") exceeds the previous highest bid by at least $100,000 of additional cash consideration |
| **Modification of the Bidding Procedures** | All Qualified Bids, the Auction, and the Bidding Procedures are subject to modification and/or additional terms and conditions as are announced by the Debtors  and that are not inconsistent with the Bidding Procedures Order. |

| Provision | Description of Provision |
|---|---|
|  | The Debtors reserve the right to modify the Bidding Procedures as they may reasonably determine to be in the best interests of their estates. |
| **Closing with Alternative Backup Bidders** | At the conclusion of the Auction, the Debtors shall announce the bid or combination of bids made pursuant to the Bidding Procedures Order that represents, in the Debtors' discretion, the highest or otherwise best offer for the Assets (the "**Successful Bid**"). Prior to the entry of the Sale Order, the Debtors shall announce the identity of the Qualified Bidder or combination of Qualified Bidders who submitted the Successful Bid at the Auction (the "**Successful Bidder**").<br><br>Following the entry of the Sale Order, if the Successful Bidder fails to consummate the transaction for any reason, the bid of the Qualified Bidder or combination of Qualified Bidders (the "**Back-Up Bidder**") that submits the next highest or otherwise best bid or combination of bids (the "**Back-Up Bid**") will be deemed the new Successful Bid, and the Debtors will be authorized, but not required, to consummate the transaction with the Back-Up Bidder without further order of the Court. |
| **Bid Protections** | None, unless a Stalking Horse Bid is accepted and acceptable protections are agreed upon by the Debtors. |
| **Good Faith Deposits** | The Debtors shall return the Good Faith Deposits of all Qualified Bidders, other than the Successful Bidder and the Back-Up Bidder, within five (5) business days following entry by the Bankruptcy Court of an order authorizing the Sale to the Successful Bidder. Subject to Article X, the Good Faith Deposit of the Successful Bidder shall be applied to, and deducted from, the Successful Bidder's obligations under the Successful Bid at the closing of the Sale. The Good Faith Deposit of the Back-Up Bidder shall be returned to the |

| Provision | Description of Provision |
|---|---|
| | Back-Up Bidder within five (5) business days or as soon as practicable thereafter following the date its bid is no longer required to be open and irrevocable as set forth in <u>Article V(I)</u>. If the Back-Up Bidder is subsequently designated by the Debtors as the Successful Bidder as a result of the failure of the Successful Bidder to close on the Sale within the time period set forth in <u>Article V(I)</u>, the Back-Up Bidder shall be deemed to be the Successful Bidder and the Debtors and the Back-Up Bidder shall close the Sale within ten (10) business days of the Back-Up Bidder becoming the Successful Bidder. Subject to <u>Article X</u>, the Good Faith Deposit of the Back-Up Bidder shall be held by the Debtors until such closing and applied to its obligations at the closing of the Sale. The Debtors reserve all of their rights regarding the return of all Good Faith Deposits, and the failure by the Debtors to timely return any deposit(s) shall not serve as a claim for breach of any bid(s) or create any default in favor of any bidder(s). |
| **Stalking Horse** | As set forth in the Bidding Procedures and Bidding Procedures Order, the Debtors, in the exercise of their discretion, has the option, but is not required to, designate a Stalking Horse Bidder and grant the Stalking Horse Purchaser the Bid Protections. If the Debtors designate a Stalking Horse Bidder, the Debtors shall within two (2) business days thereof file a notice of such determination with the Bankruptcy Court, which notice shall (i) identify the Stalking Horse Bidder, (ii) set forth the amount of any Break-Up Fee and/or Expense Reimbursement granted to the Stalking Horse Bidder, (iii) include a copy of the Stalking Horse Bidder's Asset Purchase Agreement, which competing Qualified Bidders must then use as the basis to submit their Qualified Bids, and (iv) shall include modifications to the bidding and auction procedures necessary to account for the |

| Provision | Description of Provision |
|---|---|
| | Stalking Horse Bidder's Qualified Bid. Notwithstanding that it may contain terms and conditions which may be inconsistent with the above requirements for a Qualified Bid or other provisions of the Bidding Procedures, if the Debtors accept a Stalking Horse Bid, in the Debtors' discretion, such Stalking Horse Bid shall be deemed to constitute a Qualified Bid and such Stalking Horse Bidder shall be deemed to be a Qualified Bidder |
| **Auction** | If the Debtors receive only one (1) Bid that is a Qualified Bid, the Debtors, in their discretion, shall (i) notify all Potential Bidders and the Bankruptcy Court in writing that (a) the Auction is cancelled and (b) such Qualified Bid is the Successful Bid, and (ii) the Debtors shall seek authority at the Sale Hearing to consummate the Sale transactions with such Qualified Bidder contemplated by its Qualified Bidder Purchase Agreement. If the Debtors receive two (2) or more Qualified Bids, the Debtors will conduct an auction (the "**Auction**"). |

21. Any bidder that desires to make a bid will deliver written copies of its bid to (a) counsel for the Debtors, Gibbons P.C., One Gateway Center, Newark, N.J. 07102 (Attn: Karen Giannelli, Esq. and Lawrence A Goldman, Esq. (kgiannelli@gibbonslaw.com, lgoldman@gibbonslaw.com) and (b) the Debtors, c/o Phoenix Capital Resources, 110 Commons Court, Chadds Ford, PA 19137 (Attn: Mark Karbiner (mkarbiner@phoenixcapitalresources.com) (collectively, the **"Bid Notice Parties"**), so as to be received not later than 4:00 p.m. prevailing Eastern time on May 9, 2019. As soon as immediately practicable after the Auction, but no later than two (2) business days after conclusion of the Auction, the Debtors shall provide electronic notice of the results of the Auction on the Court's docket.

## II.    NOTICE OF SALE HEARING AND NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

22.    The Debtors request that the Court hold the Sale Hearing on May 16, 2019.  The

Debtors have also requested that the Court establish **May 6, 2019 at 4:00 p.m.** (prevailing

Eastern time) (other than with respect to the conduct of the Auction, with objections to the

conduct of the Auction to be filed prior to the commencement of the Sale Hearing), as the

deadline for objections to the sale of the Assets or the relief requested in the Motion with respect

to the entry of the Approval Order (the "**Sale Objection Deadline**"). Objections to the Motion

and entry of the Approval Order must be in writing, conform to the Bankruptcy Rules and the

Local Rules of the Bankruptcy Court, and be filed with the Bankruptcy Court and served upon

(i) counsel for the Debtors, Gibbons P.C., One Gateway Center, Newark, N.J. 07102 (Attn:

Karen Giannelli, Esq. (kgiannelli@gibbonslaw.com); and (ii) counsel for the Official Committee

of Unsecured Creditors, Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068

(Attn: Mary E. Seymour, Esq (mseymour@lowenstein.com) and Elliott Greenleaf, P.C. (Attn:

Rafael X. Zahralddin-Aravena, Esq. (rxza@elliottgreenleaf.com) (collectively, the "**Objection**

**Notice Parties**") by the Sale Objection Deadline.

23.    In order to facilitate the sale of the Assets and the assumption, assignment, and/or

transfer of the Executory Contracts and Unexpired Leases to the Successful Bidder contemplated

thereunder, within three (3) business days of entry of the Bidding Procedures Order, the Debtors

will serve copies of the Bidding Procedures Order and the Notice of Assumption and Assignment

substantially in the form attached to the Bidding Procedures Order as Exhibit 3 upon all non-

Debtor parties to the Executory Contracts and Unexpired Leases. If the Debtors or Successful

Bidder identifies additional executory contracts or unexpired leases that might be assumed by the

Debtors and assigned to the Successful Bidder or that were not set forth in the original Notice of

Assumption and Assignment, the Debtors will promptly send a supplemental notice (a **"Supplemental Notice of Assumption and Assignment"**) to the applicable counterparties to such additional executory contracts and unexpired leases.

24.    In the Notice of Assumption and Assignment, the Debtors will identify the calculation of the cure amounts that the Debtors believe must be paid to cure all defaults under the Executory Contracts and Unexpired Leases (the **"Cure Amounts"**). If no amount is listed on the Notice of Assumption and Assignment with respect to an Executory Contract or Unexpired Lease, the Debtors believe that there is no Cure Amount applicable to such Executory Contract or Unexpired Lease.

25.    The Debtors request that unless the non-Debtor party to an Executory Contract or Unexpired Lease files an objection (the **"Cure Amount/Assignment Objection"**) to (a) its scheduled Cure Amount and/or (b) to the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease by (i) **May 6, 2019 at 4:00 p.m.** (prevailing Eastern time) (or such later date and time as the Debtors may agree to in writing), or (ii) seven (7) days after service of the relevant Supplemental Notice of Assumption and Assignment only with respect to those non-Debtor parties set forth on the Supplemental Notice of Assumption and Assignment (the **"Cure/Assignment Objection Deadline"**) and serves a copy of the Cure Amount/Assignment Objection so as to be received no later than the Cure/Assignment Objection Deadline by the Objection Notice Parties, then such non-Debtor party shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract or Unexpired Lease and the Debtors shall be entitled to rely solely upon the Cure Amount and (ii) be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease to the Successful

Bidder or Back-Up Bidder and shall be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder, or Back-Up Bidder or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract or Unexpired Lease. Notwithstanding the foregoing, as provided below, each non-Debtor party shall retain the right to object to the assumption, assignment or transfer of its Executory Contract and Unexpired Lease, based solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

26.     Any objection challenging a Cure Amount must set forth the cure amount being claimed by the objecting party (the **"Claimed Cure Amount"**) and include appropriate documentation in support thereof. Upon receipt of a Cure Amount/Assignment Objection, the Debtors request that it be granted the authority, but not direction, to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court. In the event that the Debtors and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection, the Debtors will request that the Court resolve such Cure Amount/Assignment Objection at (a) the Sale Hearing or (b) at such other date as the Court may designate, provided that if the subject Executory Contract or Unexpired Lease is assumed and assigned prior to resolution of any Cure Objection, the Claimed Cure Amount asserted by the objecting party (or such lower amount as may be fixed by the Court) shall be deposited by Successful Bidder to be held in an account maintained by the Debtors or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

27.     The Debtors, the Successful Bidder or the Back-Up Bidder, as the case may be, may determine to exclude any Executory Contract or Unexpired Lease from the list of Executory Contracts and Unexpired Leases to be assumed and assigned under the Purchase Agreement no later than one (1) business day prior to the Sale Hearing, or, if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such contract is greater than the Cure Amount proposed by the Debtors, no later than five (5) business days following the Court's determination. The non-Debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed promptly after such a determination.

28.     Promptly after the conclusion of the Auction, the Debtors will serve a notice identifying the Successful Bidder and Back-Up Bidder (the "**Notice**") to the non-Debtor parties to the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid and Back-Up Bid.  Objections of any Non-Debtor party to an Executory Contract or Unexpired Lease related solely to the identity of and adequate assurance of future performance by the Successful Bidder must (x) be in writing; (y) state with specificity the nature of such objection, and (z) be filed with the Court and properly served on the Objection Notice Parties so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on May 15, 2019 (the "**Adequate Assurance Objection Deadline**"); provided, however, that in the event the Debtors obtain a Stalking Horse Bid and provide notice of the identity of the Stalking Horse Bidder prior to the Sale Objection Deadline, any objection of a Non-Debtor party to an Executory Contract or Unexpired Lease related to the Stalking Horse Bid (including, with respect to the identity of and adequate assurance of future performance provided by the Stalking Horse Bidder) must be filed as a Cure Amount/Assignment Objection by the Cure/Assignment Objection Deadline.

29.     The Successful Bidder or Back-Up Bidder, as the case may be, shall work with any objecting parties to resolve any disputes and/or concerns regarding the Successful Bidder or Back-Up Bidder's ability to provide adequate assurance of future performance. If, however, any disputes cannot be resolved, either party may seek a determination from this Court at the Sale Hearing (or such later date as fixed by the Court) solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

## BASIS FOR RELIEF REQUESTED

## I.     AUTHORIZING BIDDING PROCEDURES AND AUCTION

30.     Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

31.     Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., In re Abbotts Dairies of Pa., Inc.,* 788 F.2d 143, 147 (3d Cir. 1986); *In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 175-76 (D. Del. 1991) (holding that the following non-exclusive list of factors may be considered by a court in determining whether there is a sound business purpose for an asset sale: "the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the effect of the proposed disposition of [sic] the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value"). *See also Myers v. Martin (In re Martin)*, 91 F.3d 389,

26

395 (3d Cir. 1996) (*citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th

Cir. 1991)) (noting that the Court defers to the trustee's judgment so long as there is a legitimate

business justification); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722

F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b)

application expressly find from the evidence presented before him at the hearing a good business

reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville

Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the

debtor articulates a reasonable basis for its business decisions (as distinct from a decision made

arbitrarily or capriciously), courts will generally not entertain objections to the debtor's

conduct."). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in

question should be approved under section 363(b)(1). Indeed, when applying the "business

judgment" standard, courts show great deference to a debtor's business decisions. *See Pitt v.

First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, No. 89 C 593, 1989

WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . .

must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or

in gross abuse of the bankrupt's retained discretion.").

32.    The "sound business reason" test requires a trustee or debtor in possession to

establish four elements: (1) that a sound business purpose justifies the sale of assets outside the

ordinary course of business; (2) that accurate and reasonable notice has been provided to

interested persons; (3) that the trustee or the debtor in possession has obtained a fair and

reasonable price; and (4) that the trustee or debtor in possession acted in good faith. *Abbotts

Dairies,* 788 F.2d 143; *Del. & Hudson Ry.*, 124 B.R. at 176; *In re Titusville Country Club,* 128

B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr.

E.D. Pa. 1989); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *see also* *Stephens Indus. Inc. v. McClung,* 789 F.2d 386, 390 (6th Cir. 1986); *Lionel*, 722 F.2d at 1071.

33.     In this case, as set forth more fully herein, the Debtors submit that the decision to proceed with the marketing in accordance with the Bidding Procedures and entry into a sale transaction with respect to the Assets related thereto is based upon sound business judgment and should be approved.   Ample business justification exists to support the decision to sell the Debtors' Assets pursuant to the Bidding Procedures, thereby satisfying the first prong of *Abbotts Dairies*. The sale of the Debtors' Assets presents the best opportunity to maximize value for their estates, and the process for marketing and selling the assets described in the Bidding Procedures presents the best method by which the Debtors can promote a competitive sale process as well as provide interested parties with accurate and reasonable notice of the sale. The Bidding Procedures allow the Debtors to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Debtors will receive the best possible consideration for the Assets.

34.     In addition, the notices described herein and in the Bidding Procedures Order are designed to provide adequate notice to all potentially interested parties. Accordingly, the proposed sale of the Debtors' Assets satisfies the second prong of the *Abbotts Dairies* standard.

35.     The Bidding Procedures are also designed to maximize the value received for the Debtors' Assets. The Debtors respectfully submit that the relief sought by this Motion is reasonably calculated to maximize value for the benefit of the Debtors and their stakeholders. The process proposed by the Debtors allows for a timely Auction while providing bidders ample time and information to submit a bid. The Bidding Procedures are designed to ensure that the

Debtors' Assets will be sold for the highest or otherwise best possible price. The Debtors are permitting prospective purchasers to bid on the Assets, thereby subjecting the proposed sale to a market check through the solicitation of competing bids in a court-supervised auction process. Accordingly, the Debtors and all parties in interest can be assured that the consideration received for the Assets will be fair and reasonable, and therefore the third prong of the *Abbotts Dairies* standard is satisfied. As discussed below, the "good faith" prong of the *Abbotts Dairies* standard is also satisfied here.

### A.    The Bidding Procedures Should be Approved

36.    As noted above, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales.

37.    The Debtors believe that the Bidding Procedures will establish the parameters under which the value of the Assets may be tested at an auction and through the ensuing Sale Hearing. Such procedures will increase the likelihood that the Debtors' creditors will receive the greatest possible consideration for the Assets because they will ensure a competitive and fair bidding process. They also allow the Debtors to undertake an auction in as expeditious and efficient manner as possible, which the Debtors believe is essential to maximizing the value of the Debtors' estates for their creditors.

38.    The Debtors also believe that the proposed Bidding Procedures (including the proposed bid protections) will promote active bidding from seriously interested parties and will dispel any doubt as to the best and highest offer reasonably available for the Debtors' Assets. In particular, the proposed Bidding Procedures will allow the Debtors to conduct an auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders

who demonstrate the ability to close a transaction. Further, the Bidding Procedures provide the Debtors with the opportunity to consider all Qualified Bids and to select, in their reasonable business judgment, and after consultation with their professionals, the highest and best offer(s) for the Assets. Moreover, the Bidding Procedures provide the Debtors with the flexibility to modify the Bidding Procedures, if necessary, to maximize value for the Debtors' estates.

39.    In sum, the Debtors believe that the Bidding Procedures will encourage bidding for the Assets and are consistent with the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.  Accordingly, the proposed Bidding Procedures are reasonable, appropriate, and within the Debtors' sound business judgment.

## B.    The Form and Manner of Notices Should be Approved

40.    Under Bankruptcy Rule 2002(a) and (c), the Debtors are required to notify their creditors of the Auction and the sale, including a disclosure of the date, time, and place of the Auction, the terms and conditions of the sale, the date, time, and place of the Sale Hearing, and the deadline for filing any objections to the relief requested herein. Within three (3) days of entry of the Bidding Procedures Order, the Debtors will serve the Notice of Auction and Sale Hearing by first class mail upon the Sale Notice Parties.

41.    The Debtors submit that the form of Notice of Auction and Sale Hearing, substantially in the form attached as Exhibit 2 to the Bidding Procedures Order, is reasonably calculated to provide timely and adequate notice of the proposed Sale, the Bidding Procedures, the Auction, and the Sale Hearing to the Debtors' creditors and all other parties-in-interest that are entitled to notice, as well as those parties that have expressed a bona fide interest in acquiring the Debtors' Assets. Accordingly, the Debtors request that the Court approve the notice procedures set forth in this Motion, including the form and manner of service of the Notice of

Auction and Sale Hearing, and that no other or further notice of the Sale, the Bidding Procedures

or the Auction is required.

## II.    APPROVAL OF THE SALE IS WARRANTED UNDER SECTION 363 OF THE BANKRUPTCY CODE

42.    The Debtors, exercising their business judgment and in consultation with their

advisors and key constituents, have determined that it is in the best interests of the Debtors, their

estates, creditors, and other parties-in-interest to conduct a sale of the Assets. Based on

applicable precedent, the Court should authorize the Debtors to do so as set forth herein in order

to enable the estates to recover as much as possible the liquidation of the Assets as a going

concern.

### A.    The Proposed Schedule for the Sale Hearing and Applicable Deadlines is Reasonable and Justified

43.    The Debtors are currently liquidating all of their assets, including the Assets

subject to this Motion.  In order to facilitate distributions to creditors, the sooner the Debtors can

consummate a sale of the Assets, the sooner the Debtors can finalize their liquidation process and

distribute funds to creditors.  Moreover, delays in the sale process described herein may cause

the Debtors to convert to chapter 7 and cease operations – causing their assets to become

virtually worthless.

44.    The Debtors believe that it is crucial that they consummate the Sale on their

proposed timeline to maximize value for the Debtors' estates while minimizing administrative

expenses.  Thus, the Debtors respectfully request that the Court hold the Sale Hearing on May

16, 2019.  The Debtors propose to consummate the Sale immediately following the Sale Hearing.

Thus, time is of the essence to preserve and maximize the value of the Debtors' Assets.

45.    In evaluating proposed expedited sales under section 363 of the Bankruptcy Code,

courts have considered debtors' dwindling cash positions, whether an expedited sale is necessary

to preserve value, and the number of likely potential buyers. *See In re Tempo Tech. Corp.,* 202 B.R. 363, 370 (D. Del. 1996) (upholding a bankruptcy court's authorization of a debtor's sale of assets on an expedited basis where "the expedited sale was necessary to preserve the value of the Debtor's assets," noting the debtor's dwindling liquidity and that there was a single buyer willing to negotiate purchase terms). *See also In re Titusville Country Club*, 128 B.R. 396, 397 (Bankr. W.D. Pa. 1991) (allowing a sale of country club assets on an expedited basis where timing considerations were based on the seasonal nature of the debtor's business).

46.    As set forth in the First Day Declaration, ample business reasons exist for conducting the sale on the timeline set forth herein. As previously described to the Court, the Debtors and their advisors have analyzed exhaustively the Debtors' business and various strategic alternatives and determined that a sale of the Debtors' Assets provides the most likely path to maximize recoveries for the Debtors' estates, their creditors and other parties-in-interest. Moreover, a sale of the assets on the timeline set forth herein will maximize the possibility of a recovery for the Debtors' creditors while minimizing the administrative expenses of the estates by ensuring an appropriate post-petition marketing process to reengage prior interested parties (and attempt to identify new interested parties). If the Debtors are required to delay consummation of a sale of the Assets, the estates would suffer significant detriment from the resulting delay, added post-petition expenses, and would likely be forced to convert these cases to chapter 7 – eliminating any possibility for a value maximizing going-concern sale of the Assets.

B.    __Sale of Assets Should Be Free and Clear of Liens, Claims and Encumbrances__

47.    The Debtors request authority to sell the Assets free and clear of all liens, claims,

encumbrances (other than certain assumed liabilities) and other interests in accordance with

section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances, and other

interests on or in the assets attaching to the consideration received in the same order or priority

and with the same force, validity and effect as such liens, claims, encumbrances, and other

interests had with respect to such Assets prior to the sale.

48.    Section 363(f) of the Bankruptcy Code allows a debtor to sell property "free and

clear of any interest in such property of an entity other than the estate" if one of the following

conditions is met:

> (a)    applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
>
> (b)    the party asserting the lien, claim or interest consents to the sale;
>
> (c)    the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property;
>
> (d)    the interest is the subject of a bona fide dispute; or
>
> (e)    such entity could be compelled to accept a money satisfaction of such claim.

11 U.S.C. § 363(f); *see also In re Elliott*, 94 B.R. 343, 345 (E.D. Pa 1988) (noting that section

363(f) is written in the disjunctive, thereby allowing sales "free and clear" if any one of the

subsections is met).

49.    As noted above, the Debtors do not believe any prepetition creditor other than one

or more lenders who have a security interest in certain rolling stock, has a security interest in the

Assets.  The Debtors believe that the proposed Sale will generate more than sufficient proceeds

to satisfy the claims of the Debtors' existing lenders who are determined to possess valid liens on

the Assets and that they will otherwise agree to the Sale. In addition, all parties known to have

asserted a lien or other encumbrance on the Assets will receive notice of the Sale. To the extent

they have not objected by the Sale Objection Deadline, they will be deemed to have consented to

the Sale free and clear of all Liens, Claims and other Liabilities (except as otherwise provided in

the Stalking Horse Asset Purchase Agreement or other definitive purchase agreement) pursuant

to section 363(f)(2). Further, where consent is not obtained, a sale free and clear can proceed

pursuant to either sections 363(f)(3) and 363(f)(5) of the Bankruptcy Code because the relevant

lien or other encumbrances will attach to the proceeds of the Sale with the same validity, priority,

and force and effect as such lien or encumbrance had immediately prior to the closing of the

Sale, and/or the Debtors will establish at the Sale Hearing that the relevant creditors can be

compelled to accept a monetary satisfaction of their respective claims. Accordingly, section

363(f) authorizes the Sale of the Assets free and clear of all Liens, Claims and other Liabilities

(except as otherwise provided in the Stalking Horse Asset Purchase Agreement or other

definitive purchase agreement).[6]

50.    The Debtors further submit that it is appropriate to sell the Assets free and clear of

successor liability relating to the purchased Assets. Such limitations on successor liability will

ensure that the Successful Bidder is protected from any claims or lawsuits premised on the

theory that the Successful Bidder is a successor in interest to one or more of the Debtors. If such

relief is not granted, the purpose of a "free and clear" sale of assets under section 363 of the

Bankruptcy Code could be frustrated by the potential for claimants to thereafter use the transfer

of assets as a basis to assert claims against the Successful Bidder arising from the Debtors' pre-

sale conduct. Moreover, without such assurances, the Debtors would run the risk that potential

---

[6] The Debtors reserve all rights to argue at a hearing on the Motion that they can satisfy any one of the provisions set forth in section 363(f) of the Bankruptcy Code in connection with the Sale.

bidders may not enter the Auction or, if they did, would do so with reduced bid amounts. Under

section 363(f) of the Bankruptcy Code, potential purchasers are entitled to know that the

Debtors' Assets are not infected with latent claims that will be asserted against the purchaser

after the proposed transaction is completed.

51.     Section 363(f) of the Bankruptcy Code provides for the sale of assets "free and

clear of any interests." Although the term "any interests" is not defined in the Bankruptcy Code,

*Folger Adam Security v. DeMatteis/MacGregor JV*, 209 F.3d 252, 257 (3d Cir. 2000), the Third

Circuit specifically addressed the scope of that term in *In re Trans World Airlines, Inc.*, 322 F.3d

283, 288-89 (3d Cir. 2003). The Third Circuit observed that while some courts have "narrowly

interpreted interests in property to mean only *in rem* interests in property," the trend in modern

cases is toward "a more expansive reading of 'interests in property' which 'encompasses other

obligations that may flow from ownership of the property.'" *Id*. at 289 (citing 3 *Collier on

Bankruptcy* 15th Ed. Rev., ¶ 363.06[1] (L. King, 15th rev. ed. 1988)). As determined by the

Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-582 (4th Cir. 1996), a case

cited with approval and extensively by the Third Circuit in *Folger*, *supra*, the scope of section

363(f) is not limited to *in rem* interests. Thus, the Third Circuit in *Folger* stated that *Leckie* held

that the debtors "could sell their assets under § 363(f) free and clear of successor liability that

otherwise would have arisen under federal statute." *Folger*, 209 F.3d at 258.

52.     Courts have consistently held that a buyer of a debtor's assets pursuant to a

section 363 sale takes such assets free and clear from successor liability relating to the debtor's

business. *See, e.g., In Matter of Motors Liquidation Co.*, No. 15-2844-BK(L), 2016 WL 3766237

(2d Cir. July 13, 2016), *12, *13 ("We agree that successor liability claims can be 'interests'

when they flow from a debtor's ownership of transferred assets" and holding that "a bankruptcy

court may approve a § 363 sale 'free and clear' of successor liability claims if those claims flow

from the debtor's ownership of the sold assets. Such a claim must arise from a (1) right to

payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly

giving rise to the claim"); *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("*[I]n*

*personam* claims, including any potential state successor or transferee liability claims against

New Chrysler, as well as in rem interests, are encompassed by section 363(f) and are therefore

extinguished by the Sale."); *The Ninth Avenue Remedial Group v. Allis-Chalmers Corp.*, 195

B.R. 716, 732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell

assets free and clear of any interest that could be brought against the bankruptcy estate during the

bankruptcy).

53.     For these reasons, the Successful Bidder should not be liable under any theory of

successor liability relating to the purchased Assets, but instead, should hold the purchased Assets

free and clear of all Liens, Claims and other Liabilities (except as otherwise provided in the

Stalking Horse Asset Purchase Agreement or other definitive purchase agreement), including

successor liability claims.

**C.     The Successful Bidder Should be Granted the Protections of Section 363(m)
of the Bankruptcy Code**

54.     As will be set forth in further detail at the Sale Hearing, the Debtors also maintain

that the Successful Bidder arising from the Auction, is or would be entitled to the protections

afforded by section 363(m) of the Bankruptcy Code.

55.     Specifically, section 363(m) of the Bankruptcy Code provides that:

> [t]he reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the

appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

56.    While the Bankruptcy Code does not define "good faith," the Third Circuit in

*Abbotts Dairies* held that:

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders

788 F.2d at 147 (citations omitted); *see generally Marin v. Coated Sales, Inc. (In re Coated Sales, Inc.)*, No. 89-3704 (KMW), 1990 WL 212899, at * 2 (S.D.N.Y. Dec. 13, 1990) (holding that a party, to show lack of good faith, must demonstrate "fraud, collusion . . . or an attempt to take grossly unfair advantage of other bidders"); *see also In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (*quoting In re Bel Air Assocs., Ltd.,* 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining facts of each case, concentrating on "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Mach. Corp.,* 572 F.2d 1195, 1198 (7th Cir. 1978)).

57.    In addition, as will be set forth in further detail at the Sale Hearing, the Debtors will negotiate with the Successful Bidder without collusion, in good faith, and from arm's-length bargaining positions, with give and take on both sides. Further, neither the Debtors nor the Successful Bidder will engage in any conduct that would cause or permit the purchase agreement to be avoided. Under the circumstances, this Court will have a sufficient factual and legal basis to find that the Successful Bidder is entitled to all of the protections of section 363(m) of the Bankruptcy Code.

D.   **The Court Should Approve Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases**

58.   The Debtors respectfully submit that the Court should approve procedures relating to the assumption and assignment of Executory Contracts and Unexpired Leases. In assuming and assigning the Executory Contracts and Unexpired Leases, the Debtors intend to comply with the provisions of Bankruptcy Code Section 365(f)(2). Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The [debtor] may assign an executory contract or unexpired lease of the debtor only if -
>
> (A)   the [debtor] assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)   adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

59.   Under Bankruptcy Code section 365(a), a debtor, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor. This subsection provides:

> (b) (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee -
>
> (A)   cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B)   compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

C) provides adequate assurance of future performance under such
contract or lease.

11 U.S.C. § 365(b)(1).

60.     Section 365(b) of the Bankruptcy Code requires the debtor to cure any defaults

under the contract or provide adequate assurance that it will promptly cure such defaults. If there

has been a default, the debtor must also provide adequate assurance of future performance under

the contract.

61.     With respect to adequate assurance of future performance, the meaning of

adequate assurance of future performance depends on the facts and circumstances of each case,

but should be given practical, pragmatic construction. *See In re Dura Auto. Sys.*, No. 06-11202

(KJC), 2007 Bankr. LEXIS 2764, at *274 (U.S. Bankr. D. Del. Aug. 15, 2007) ("[t]he meaning

of adequate assurance of future performance depends on the facts and circumstances of each

case, but should be given practical, pragmatic construction") (internal quotations omitted).

62.     Among other things, adequate assurance may be provided by demonstrating the

assignee's financial health and experience in managing the type of enterprise or property

assigned. *See, e.g., Dura Auto. Sys.,* No. 06-11202 (KJC), 2007 Bankr. LEXIS at *274; *In re*

*Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance where a

debtor's proposed assignee's "financial resources" and experience as a successful restaurateur

"indicate "that the Landlord is adequately assured that the rent will be paid").

63.     The Debtors will demonstrate facts at the Sale Hearing to show the financial

wherewithal and the Successful Bidder's willingness and ability to perform under the Executory

Contracts and Unexpired Leases. The Sale Hearing will therefore provide the Court and the other

interested parties the opportunity to evaluate and, if necessary, challenge the ability of the

Successful Bidder to provide adequate assurance of future performance under the Executory

Contracts and Unexpired Leases, as required under Bankruptcy Code section 365(b)(1)(C). The Court should therefore authorize the Debtors to assume and assign the Executory Contracts and Unexpired Leases as set forth herein.

64.    The Debtors also request that the Court include in the Approval Order provisions barring non-Debtor parties to Executory Contracts and Unexpired Leases assumed and assigned under such order, from: (i) asserting any default, loss, or liability against the assignee of such contract based on any event or circumstance arising prior to the date of assignment; or (ii) objecting to the assumption and assignment of its Executory Contract or Unexpired Lease, unless the non-Debtor party timely objects to this Motion.

65.    The Debtors believe that the foregoing procedures provide counterparties to affected contracts notice and a reasonable opportunity to protect their individual interests and should be approved.

## III.    REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY

66.    The Debtors request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above and in the First Day Declaration, time is of the essence and it is imperative that the Debtors be able to consummate a sale on the timeline proposed. In order to maximize the value of the Assets and minimize the estates' unnecessary administrative expenses, the Debtors believe a waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d), to the extent that they apply, is in the best interest of the Debtors' estates and stakeholders.

## IV.     <u>WAIVER OF MEMORANDUM OF LAW</u>

67.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Debtors rely is incorporated herein and this Motion does not raise any novel issues of law.

## V.     <u>NO PRIOR REQUEST</u>

68.     No prior request for the relief sought herein has been made to this Court or to any other court.

<u>NOTICE</u>

69.     Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Official Committee of Unsecured Creditors; (d) all known holders of liens upon the Debtors' assets; (e) all known parties that have expressed an interest in purchasing the Debtors' assets; (f) the Internal Revenue Service; (g) the United States Department of Justice; (h) the Securities and Exchange Commission; (i) the New Jersey Division of Taxation Compliance and Enforcement - Bankruptcy Unit; (j) the Office of the Attorney General of the State of New Jersey, Division of Law; (k) the United States Attorney's Office for the District of New Jersey; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Bidding Procedures Order and Approval Order, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated:  March 25, 2019                                    Respectfully submitted,

                                                          **GIBBONS P.C.**

                                                          By:/s/ Karen A. Giannelli
                                                               Karen A. Giannelli, Esq.
                                                               Mark B. Conlan, Esq.
                                                               Brett S. Theisen, Esq.
                                                               One Gateway Center
                                                               Newark, New Jersey  07102
                                                               Telephone:  (973) 596-4500
                                                               Facsimile:   (973) 596-0545
                                                               E-mail:  kgiannelli@gibbonslaw.com
                                                                            mconlan@gibbonslaw.com
                                                                            btheisen@gibbonslaw.com

                                                          *Counsel to the Debtors*
                                                          *and Debtors-in-Possession*