UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
ACTING UNITED STATES TRUSTEE, REGION 3
Mitchell B. Hausman, Esq.
Peter J. D'Auria, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
Email:  Peter.J.D'Auria@usdoj.gov
Email:  Mitchell.B.Hausman@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| New England Motor Freight, Inc., *et al.*, | : | Case No. 19-12809(JKS) |
|  | : | (Jointly Administered) |
|  | : |  |
|  | : | Hearing Date: April 8, 2019 at 11:00 a.m. |
| Debtors[1]. | : |  |
|  | : | Honorable John K. Sherwood |

**UNITED STATES TRUSTEE'S OBJECTION TO
(I) THE DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING THEIR
KEY EMPLOYEE RETENTION PLAN, and
(II) THE ORDER AUTHORIZING THE WIDHRAWAL OF THE DEBTORS' MOTION
FOR ENTRY OF ORDER APPROVING THEIR KEY RETENTION PLAN
FILED MARCH 19, 2019 [DKT. NO. 274] AND
<u>THE FILING OF A REDACTED VERSION OF THAT MOTION</u>**

The Acting United States Trustee, by and through counsel, and in furtherance of his

duties and responsibilities set forth in 28 U.S.C. §§ 586(a)(3) and (5), hereby asserts this

---

[1] The Debtors in these jointly administered cases are: New England Motor Freight, Inc., (19-12809(JKS)); Eastern Freight Ways, Inc., (19-12812(JKS)); Apex Logistics, Inc., (19-12815(JKS)); Hollywood Avenue Solar, LLC, (19-12818(JKS)); Carrier Industries, Inc., (19-12820(JKS)); NEMF Logistics, LLC., (19-12821(JKS)); Jans Leasing Corp., (19-12824(JKS)); NEMF World Transport, Inc., (19-12826(JKS)); Myar, LLC, (19-12827(JKS)); MyJon, LLC, (19-12828(JKS)); United Express Solar, LLC, (19-12830(JKS)).

objection (the "Objection") to the Debtors' Motion for Entry of an Order Approving Their Key Employee Retention Plan, and respectfully states as follows:

1. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§1334 and 157(b)(2). Venue is proper pursuant to 28 U.S.C. §1409.

2. Pursuant to 28 U.S.C. § 586, the UST is charged with the administrative oversight of cases commenced pursuant to Title 11, United States Code. Such oversight is part of the UST's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

3. Pursuant to 11 U.S.C.§ 307, the UST has standing to be heard with regard to this matter.

## BACKGROUND AND RELEVANT FACTS

*The Filing of the Cases:*

4. On February 11, 2019, (the "Petition Date"), New England Motor Freight, Inc., (19-12809(JKS)), Eastern Freight Ways, Inc., (19-12812(JKS)), Apex Logistics, Inc., (19-12815 (JKS)), Hollywood Avenue Solar, LLC, (19-12818(JKS)), Carrier Industries, Inc., (19-12820 (JKS)), NEMF Logistics, LLC., (19-12821(JKS)), Jans Leasing Corp., (19-12824(JKS)), NEMF World Transport, Inc., (19-12826(JKS)), Myar, LLC, (19-12827(JKS)), MyJon, LLC, (19-12828(JKS)), and United Express Solar, LLC, (19-12830(JKS)) (the "Debtors") each filed a

voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code" or "Code").

5. On February 21, 2019, the UST appointed the Official Committee of Unsecured Creditors. *See* Docket Entry 114.

*The Filing of the Motion(s) and Attendant Pleadings:*

6. On March 19, 2019, the Debtors filed the Debtors' Motion for Entry of an Order Approving Their Key Employee Retention Plan (docket entry 274) (the "First KERP Motion"). On that same date, the Debtors filed an accompanying Application for Order Shortening Time.

7. On March 20, 2019, the Debtors filed the Debtors' Motion for Entry of an Order Approving Their Key Employee Retention Plan (docket entry 293) (the "Second KERP Motion").

8. On March 22, 2019, the Court entered the Order Authorizing the Withdrawal of the Debtors' Motion for Entry of Order Approving Their Key Retention Plan Filed on March 19, 2019 [DKT. NO. 274] and the Filing of a Redacted Version of That Motion (docket entry 303) (the "Seal Order").

9. Docket entry 274, where the First KERP Motion was filed, is dark and no longer serves as a link to a document.

*Facts and Circumstances Regarding The Seal Order:*

10. The preamble paragraph of the Seal Order states that it was entered "[u]pon consideration of the motion (the "[Seal Motion]") of the above captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order pursuant to sections 105(a) and 107(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9018 of the

3

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")." *See*, *Seal Order*. The Entry of the Seal Order is linked to "Related Doc 292" within the docket text.

11. No such Seal Motion filed by the Debtors appears at any docket entry 292. There is no docket entry 292 on the docket of these cases. The link within the docket text of the Seal Order is the only location that docket number 292 appears; an attempt to click on that link contained in the docket text "Related Doc 292" leads to a screen that says "[t]he document is not available."

12. A review of the preamble paragraph of the Seal Order indicates that it was entered upon the Court's consideration of the Seal Motion, but that Seal Motion was not filed on the docket, and an attempt to see the Seal Motion through the docket text of the Seal Order indicates that it is not available. With that, the basis for the Seal Order remains undisclosed to date.

13. The ordered paragraph of the Seal Order provides that the First KERP Motion "shall be permanently deleted from the court's electronic filing system and the Debtors are authorized to file a redacted version of the Debtors' Motion for Entry of Order Approving Their Key Employee Retention Plan." With that, the Seal Order (i) permanently sealed the First KERP Motion, and (ii) authorized the sealing (by way of redaction) of the Second KERP Motion.

***Facts and Circumstances Related to the Proposed KERP:***

14. The First KERP Motion contained a declaration of Vincent Colistra (the "First Colistra Declaration"). An attempt to click on the link to the First Colistra Declaration within the docket text of the First KERP Motion leads to a screen that says "[t]he document is not available."

15. The Second KERP Motion also contains a declaration of Vincent Colistra (the "Blank Colistra Declaration"). The only word contained in the Blank Colistra Declaration, below the title of the document, is the word "REDACTED."

16. The Second KERP Motion states that "[t]he Debtors have identified certain non-insider employees to receive retention payments under the KERP," and that "[t]he terms of the KERP are attached as Schedule 1 to the [Blank Colistra Declaration], which is being filed under seal." *Second KERP Motion*, ¶ 22. The Second KERP Motion further states that "The Terms of the KERP [were] negotiated with each KERP Participant. The CRO[2] and Phoenix also worked closely with the Debtors to ensure that the KERP [was] competitive within the industry, and that the incentives set for the *executives* participating in the KEIP were appropriate." *Id*. at ¶ 27 (emphasis added).

17. The Second KERP Motion states that in support thereof "the Debtors rely upon, and incorporate by reference, the statements contained in the [Blank Colistra Declaration]," which (including the Schedules thereto) is filed under seal. *Id*. at pg. 2. The Blank Colistra Declaration, other than the word "REDACTED," is a blank document.

18. With regard to the KERP Participants, the Second KERP Motion states as follows:

> The KERP Participants include employees from various functions, including, but not limited to, sales, Finance and Accounting, IT, maintenance and security, insurance claims processing, scheduling, customer service, training and operations. Certain of the KERP Participants have the title of "Vice President", however, under the Debtors' by-laws, none of the KERP Participants are officers of the Debtors.

---

[2] Capitalized terms not defined herein shall have the meaning as ascribed in the Second KERP Motion.

*Id*. at ¶ 29.  The Second KERP Motion further states that "the KERP Participants do not take part in the overall management of the Debtors, participate in Board meetings, get involved in corporate governance, nor do they direct or implement company policy."  *Id*. at ¶ 37.  This is the only information provided as to the KERP Participants.  Information as to who they are, the number of them, their job titles, descriptions of their duties and responsibilities, the amount of their bonuses, all remains undisclosed.

19. The Second KERP Motion does not state the dollar amount of the program.  The proposed order filed with the Second KERP Motion provides that "the Debtors are authorized to take all necessary actions to implement the KERP and to make all payments pursuant thereto," without any restriction on amount.  *See*, *Proposed Order annexed to Second KERP Motion*, ¶ 4.

## OBJECTION

***Sealing of Information Critical to the Proposed KERP:***

20. In the bankruptcy context, the right of public access is governed by the Bankruptcy Code: "[e]xcept as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge."  *See* 11 U.S.C. § 107(a).

21. Limited exceptions to the general rule of full public access are contained in the Section 107(b) of the Bankruptcy Code ("Section 107(b)") and Fed. R. Bankr. P. 9018 ("Rule 9018").  Section 107(b) provides as follows:

> On request of a party in interest the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may-
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

6

*See* Section 107(b).

22. Rule 9018 essentially incorporates the substance of Section 107(b), and allows the court, on motion, or on its own initiative to make any order which justice requires to protect the estate or any entity with respect to confidential information. *See* Rule 9018.

23. The burden is on the moving party to show that a request to place documents under seal falls within the parameters of Section 107(b) and Rule 9018 by demonstrating "that the interest in secrecy outweighs the presumption in favor of access." *See In re Continental Airlines,* 150 B.R. 334, 340 (D. Del. 1993). The inquiry then is whether or not the matter sought to be placed under seal fits within any of the categories under Section 107(b) or Rule 9018.

24. Here, the Debtors have not filed a motion to seal, and have not provided sufficient justification to "seal" virtually all information pertinent to the proposed KERP. There has been no evidence submitted that protection is needed based on a trade secret or confidential research, development, or commercial information. The Debtors have failed to establish a compelling need for protection and extraordinary circumstances.

***Statutory Framework for the Payment of Employee Retention Bonuses***
***Pursuant to Section 503:***

25. Section 503 of the Bankruptcy Code governs the allowance of administrative expenses "for actual, necessary costs and expenses of preserving a debtor's bankruptcy estate." Section 503(b)(1)(A). The two general overriding policies of Section 503 are: (i) to preserve the value of the estate for the benefit of its creditors and (ii) to prevent the unjust enrichment of the insiders of the estate at the expense of its creditors. *In re Journal Register Co.*, 407 B.R. 520, 535 (Bankr. S.D.N.Y. 2009) (citing *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98. 101 (2d Cir. 1960)) (additional citations omitted).

26. Section 503(c), added in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), was intended to curtail payments of retention incentives or severance to insiders, including bonuses granted to other employees without factual and circumstantial justification. *See Journal Register*; 407 B.R. at 535; *See also, In re Pilgrim's Pride Corp.,* 401 B.R. 229, 234 (Bankr. N.D. Tex. 2009) ("Section 503(c) was enacted to limit a debtor's ability to favor powerful insiders economically and at estate expenses during a chapter 11 case.") (citing *In re Airway Indus., Inc.,* 354 B.R. 82, 87 n.12 (Bankr. W.D. Pa. 2006)) (additional citations omitted); *In re Global Home Prods., LLC,* 369 B.R. 778, 783-84 (Bankr. D. Del. 2007) (the amendments were added to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process.")

27. Section 503(c)(1) of the Bankruptcy Code prohibits any transfer:

> made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtors' business, absent a finding by the court based on evidence in the record that
>
>> (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
>>
>> (B) the services provided by the person are essential to the survival of the business; and
>>
>> (C) either –
>>
>>> (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
>>>
>>> (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the

>    amount of any similar transfer or obligation made to or incurred
>    for the benefit of such insider for any purpose during the calendar
>    year before the year in which such transfer is made or obligation is
>    incurred;

*11 U.S.C. § 503(c)(1).*

28. A transfer to an insider to induce the insider to remain with the debtor's business must satisfy the requirements under subdivisions (A), (B), and (C) of Section 503(c)(1) of the Bankruptcy Code to be subject to this subdivision's exception. 4 *Collier on Bankruptcy* ¶ 503.17 (15th ed. rev. 2007); *See also, In re Dana Corp.,* 358 B.R. 567, 575 (Bankr. S.D.N.Y. 2007) ("*Dana II*") (summarizing the requirements under Section 503(c)(1) of the Bankruptcy Code).

29. As outlined above, the Debtors' proposed KERP includes *executives* and *vice president(s)*. The Debtors state that none of the KERP Participants are officers under the Debtors' by-laws. *Second KERP Motion*, ¶ 29. The Debtors then argue that "the KERP Participants do not take part in the overall management of the Debtors, participate in Board meetings, get involved in corporate governance, nor do they direct or implement company policy." *Id*. at ¶ 37. And with that, the Second KERP Motion then asserts the legal conclusion that none of the KERP Participants are "insiders." Given the complete lack of disclosure of any details about the KERP Participants, including who they are, what their job titles are, what their roles are, or descriptions of their duties and responsibilities, it cannot be concluded that the "*executives*" and/or "*vice president(s)*" included in the KERP are not insiders as defined by the Bankruptcy Code.

30. With respect to a corporation, an "insider" includes a director, officer, person in control of a debtor, a partnership in which the debtor is a general partner, a general partner of the debtor, or a relative of any of the foregoing. *11 U.S.C. § 101(31)(B).* Given the lack of information provided in the Second KERP Motion, it appears that the "*executives*" and "*vice*

9

*president(s)*" included in the KERP may very well be statutory insiders, irrespective of what may or may not have been recorded in the Debtors' by-laws.

31. Section 503(c)(1) establishes specific evidentiary standards that must be met before a bankruptcy court may authorize payments made to an insider for the purpose of inducing such person to remain with a debtor's business or payments made on account of severance. *Dana I*, 351 B.R. at 100; 11 U.S.C. § 503(c)(1). These amendments make it abundantly clear that if a proposed transfer falls within Section 503(c)(1) or (c)(2) (governing severance payments), then the business judgment rule does not apply, irrespective of whether a sound business purpose may actually exist. *Id.* The effect of Section 503(c) of the Bankruptcy Code was to put in place "a set of challenging standards" and "high hurdles" for debtors to overcome before retention bonuses could be paid. *See*, *In re Borders Group, Inc.*, 453 B.R. 459, 470, 471 (Bankr. S.D.N.Y.) (citing *Global Home Prods.*, 369 B.R. at 785).

32. The Debtors have not established the requirements of Section 503(c)(1)(A) and (B), that these employees have bona fide job offers from other business, and that the services they are providing are essential to the survival of the business. Absent a showing that the Debtors have satisfied all the requirements of Section 503(c)(1), to the extent the KERP Participants includes insiders, the Second KERP Motion should not be approved.

33. Additionally, section 503(c)(3) also prohibits "other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers or consultants hired after the date of the filing of the petition." Without a showing that the proposed bonus plan with respect to each of the other non-insider KERP Participants (assuming

there are other non-insider KERP Participants) are appropriately justified, the Second KERP Motion should not be approved.

WHEREFORE, the Acting United States Trustee respectfully asserts that the Second KERP Motion, as presented, must be denied, and requests that the Court grant such other relief as may be appropriate and just.

Respectfully submitted,

ANDREW R. VARA
ACTING UNITED STATES TRUSTEE
REGION 3

By:   */s/ Peter J. D'Auria*
  Peter J. D'Auria
  Trial Attorney

Dated: April 4, 2019