CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, New Jersey 07052
Telephone: (973) 325-1500
Facsimile: (973) 325-1501
Frank Peretore, Esq. (fperetore@csglaw.com)
Michael R. Caruso, Esq. (mcaruso@csglaw.com)
*Attorneys for Wells Fargo Equipment Finance, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW ENGLAND MOTOR FREIGHT, INC., et al., | Case No. 19-12809 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**WELLS FARGO EQUIPMENT FINANCE, INC.'S LIMITED OBJECTION AND RESERVATION OF RIGHTS TO DEBTORS' MOTION FOR ORDERS (I)(A) APPROVING BIDDING PROCEDURES AND AUCTION AND (B) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF; (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' EASTERN FREIGHT WAYS, INC. AND CARRIER INDUSTRIES, INC.'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF**

Wells Fargo Equipment Finance, Inc. ("**Wells Fargo**,") a secured creditor of the Debtors in the above-captioned cases, by and through its undersigned counsel, submits this limited objection and reservation of rights (the "**Limited Objection**") to the Debtors' *Motion for Orders (I)(A) Approving Bidding Procedures and Auction and (B) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing the Sale of Substantially All of Debtors' Eastern*

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

*Freight Ways, Inc. and Carrier Industries, Inc.'s Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Dkt. 335](the "**Motion**").[2] In support of its Limited Objection, Wells Fargo respectfully represents as follows:

## PRELIMINARY STATEMENT

1. Wells Fargo has claims against the Debtors in the approximate amount of $4.4 million, which claims are secured and cross-collateralized by over 187 vehicles in addition to various other miscellaneous equipment collateral. Wells Fargo files this Limited Objection for two reasons.

2. First, Debtors cannot sell Wells Fargo's collateral without either Wells Fargo's consent or full satisfaction of the face amount of its secured, cross-collateralized debt. Wells Fargo does not consent to the Eastern sale at this time because Debtors in the Motion fail to sufficiently address whether Wells Fargo will be paid in full. Furthermore, the proposed bidding procedures are silent on the statutory right of Wells Fargo to submit a credit bid for all or a portion of the face amount of its claims as to the assets included in the Eastern sale upon which Wells Fargo holds valid, perfected security interests and liens. As a result, the proposed bidding procedures fail to protect Wells Fargo's rights and interests to participate in the Eastern sale process. This failure is particularly damaging in relation to sixteen (16) flatbed trailer vehicles (the "**16 Units**")[3] to be included in the Eastern sale, upon which Wells Fargo holds valid, perfected security interests and liens on, among certain other Wells Fargo collateral as more fully described below.

---

[2] Capitalized terms not otherwise defined herein shall have the same meaning as in the Motion.

[3] Each of the 16 Units are identified as year 2015 Great Dane Trailer, Mount Joy model, serial #s 1GRDM9620FH7244-83 to 98.

3. By way of background on the 16 Units, before the Petition Date, NEMF executed a security agreement that pledged the 16 Units as collateral for Wells Fargo's loan to NEMF (Schedule Number 225069-702). Debtors did <u>not</u> title any of the 16 Units to NEMF. Instead, Debtors erroneously titled each of the 16 Units to Eastern rather than to NEMF. As a corrective measure, upon discovery of the titling error, Wells Fargo obtained a security agreement from Eastern relating to the 16 Units in addition to its existing security agreement from NEMF relating to the 16 Units. Currently, Eastern uses the 16 Units in its operations. Debtors have elected, at this time, to include the 16 Units in the going-concern sale of Eastern rather than in the NEMF auction sales to be conducted by Taylor & Martin, Inc. Each Certificate of Title for each of the 16 Units remains in the name of Eastern as owner with Wells Fargo noted as lienholder. Wells Fargo's loan documents are cross-collateralized and cross-guaranteed as between NEMF and Eastern. Wells Fargo's statutory right to submit a credit bid on any or all of its collateral offered in the Eastern sale (including, but not limited to, the 16 Units) must be preserved and expressly acknowledged in the bidding procedures and proposed Order accompanying the Motion.

4. Second, the conditions for Wells Fargo consent to the Eastern Sale are as follows: (I) the proposed Order and bidding procedures must be amended to properly reflect the statutory right of Wells Fargo to submit a credit bid on any of its collateral in the Eastern sale; <u>and</u>, (II) Debtors must <u>either</u>: (a) remove and exclude the 16 Units from the Eastern sale, include them in one or more of the NEMF auction sales, and pay Wells Fargo in full on the Eastern debt (in the total outstanding amount of $977,771 as of the Petition Date) from Eastern sale proceeds at the time of closing; <u>or</u>, (b) keep the 16 Units in the Eastern sale but auction them as a separate lot, and in a manner that segregates their purchase price from the purchase price of all other Eastern assets, for no less than their estimated fair market value of $336,000 in the aggregate (with Wells

Fargo's right to submit a credit bid preserved) and with 100% of the net sale proceeds of the 16 Units allocable to reduce the NEMF debt (in the total outstanding amount of $3,425,765 as of the Petition Date) instead of the Eastern debt, which Eastern debt shall be paid in full from Eastern sale proceeds at the time of closing exclusive of the net proceeds of the 16 Units.

5. Wells Fargo respectfully requests that this Court condition approval of the bidding procedures upon certain modifications (as described herein) to ensure that the Eastern sale maximizes the value of Debtors' assets while also fully protecting the rights of Wells Fargo, among other secured creditors, to participate in that sale process.

## BACKGROUND

### *The Parties' Prepetition Relationship*

6. Before the Petition Date, Wells Fargo provided commercial financing to NEMF for its purchase and acquisition of approximately 173 vehicles (including the 16 Units referenced above among other vans, trailers, tractors, flatbeds, and forklifts) as well as other miscellaneous equipment units (individually and collectively, the "**NEMF Collateral**").

7. In connection with NEMF's commercial financing, NEMF and Wells Fargo entered into a Master Loan and Security Agreement, together with eleven (11) separate Schedules (Numbered 225069-700 through -710) and certain related loan documents (collectively, the "**NEMF Loan Documents**"). The outstanding balance due under the NEMF Loan Documents is approximately $3,425,765 as of the Petition Date. The NEMF debt associated with the 16 Units is approximately $174,804 in the aggregate and their estimated fair market value is approximately $336,000 in the aggregate.

8. Additionally, before the Petition Date, Wells Fargo provided commercial financing to Eastern for its purchase and acquisition of fourteen (14) tractors (individually and collectively, the "**Eastern Collateral**" and, together with the NEMF Collateral, the

"**Collateral**").

9. In connection with Eastern's commercial financing, Eastern and Wells Fargo entered into a Master Loan and Security Agreement, together with two (2) separate Schedules (Numbered 424769-700 and 424769-701) and certain related loan documents (collectively, the "**Eastern Loan Documents**", and together with the NEMF Loan Documents, the "**Loan Documents**").[4] The outstanding balance due under the Eastern Loan Documents is approximately $977,771 as of the Petition Date.

10. The Loan Documents include Eastern's unconditional Continuing Guaranty agreement for all debts, liabilities, and obligations of NEMF to Wells Fargo. Likewise, the Loan Documents include NEMF's unconditional Continuing Guaranty agreement for all debts, liabilities, and obligations of Eastern to Wells Fargo.

11. The Loan Documents grant security interests in and to the Collateral "[t]o secure the payment and performance of each and every debt, liability and obligation of every type and description which Borrower [*i.e.*, NEMF or Eastern, as applicable] may now or at any time hereafter owe to Lender." Accordingly, the NEMF Loan Documents and the Eastern Loan Documents are cross-collateralized as a result of the secondary obligations of NEMF and Eastern under their respective Continuing Guaranty agreements.

12. Wells Fargo holds valid and duly perfected purchase money security interests in and to, and prepetition liens on, each Certificate of Title[5] with respect to each vehicle comprising the Collateral. Wells Fargo is noted as the lienholder on each Certificate of Title for each vehicle comprising the Collateral, inclusive of the 16 Units. Each piece of Collateral, whether owned by

---

[4] The Loan Documents are too voluminous to attach to this Limited Objection but have been provided to respective counsel for Debtors, the Committee and are otherwise available upon request.

[5] The Certificates of Title are too voluminous to attach to this Limited Objection but have been provided to respective counsel for Debtors, the Committee and are otherwise available upon request.

NEMF or Eastern, is security for all obligations owing by both. Collectively, the Debtors' owe Wells Fargo $4,403,536 as of the Petition Date secured by approximately 187 vehicles together with various other miscellaneous equipment Collateral.

*Debtors' Sales of NEMF and Eastern's Assets*

13. On February 28, 2019, Debtors filed a motion (the "**NEMF Sale Motion**") [Dkt. 141] proposing to sell substantially all of NEMF's assets in a series of twelve (12) liquidation auction sales pursuant to Section 363 of the Bankruptcy Code (collectively, the "**NEMF Sales**") to be conducted by auctioneer Taylor & Martin, Inc. At a hearing on April 3, 2019, the Court approved the NEMF Sale Motion although an Order has not been entered yet.

14. On March 25, 2019, Debtors filed the Motion [Dkt 335] proposing a going concern sale of substantially all of the assets of Eastern and an affiliated Debtor (Carrier Industries, Inc.).

15. Upon information and belief, the Eastern sale is expected to close at the end of May 2019, before the occurrence of the first of the NEMF sales. Upon further information and belief, the 16 Units will be among the assets sold in the Eastern sale at Debtors' initial election and subject to the final election of the Stalking Horse Bidder (however, a Stalking Horse Bidder has not been identified as of yet).

16. The Eastern Sale Motion states in relevant part, at page 6, as follows: "The proposed sale does not involve a credit bid." The template asset purchase agreement (attached as an exhibit to the Motion) and the proposed bidding procedures Order are both silent about whether any secured creditor may submit a credit bid for all or a portion of the face amount of its claims as to any assets included in the Eastern sale upon which the secured creditor has valid, perfected security interests and liens.

## LIMITED OBJECTION

### I. Debtors Cannot Sell Wells Fargo's Collateral Without Either Wells Fargo's Consent or Full Satisfaction of the Debt Owed to Wells Fargo.

17. Under section 363 of the Bankruptcy Code, a debtor-in-possession may only sell property "free and clear of any interest" in the property of an entity other than the bankruptcy estate if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. 363(f).

18. Here, because the Loan Documents are cross-collateralized, to the extent that Debtors intend to sell any of the Collateral in a Section 363 sale, the Collateral cannot be sold without either Wells Fargo's consent or a full satisfaction of all of Wells Fargo's outstanding, cross-collateralized debt in the amount of approximately $4.4 million. See Criimi Mae Servs. Ltd. P'ship v. WDH Howell, LLC (In re WDH Howell, LLC), 298 B.R. 527, 531-34 (D.N.J. 2003)("[w]e conclude that a debtor-in-possession cannot sell its property free and clear of all liens under § 363(f)(3) unless the sale price is greater than the aggregate face value of all liens on the property.").

19. In this case, Wells Fargo will consent to the sale of its Eastern Collateral (comprised of 14 tractors all of which are properly titled to Eastern) on three conditions: (i) payment in full on the Eastern debt in the approximate amount of $977,771; (ii) modified

bidding procedures reflecting Wells Faro's right to submit a credit bid[6] on any of its Collateral; and (iii) satisfaction of Wells Fargo's requirements with respect to the 16 Units as more fully described below. Absent satisfaction of these conditions, Wells Fargo does not consent to its Eastern Collateral (*i.e.*, the 14 tractors) being sold for less than Wells Fargo's cross-collateralized debt of $4.4 million.

## II. The Bidding Procedures Must be Modified to Reflect the Statutory Right to Credit Bid and to Address Wells Fargo's Concerns About the 16 Units.

20. Under Third Circuit law, the right of secured creditors to credit bid under section 363(k) of the Bankruptcy Code is well established. "Even if a secured creditor is undersecured as determined in accordance with section 506(a) of the Bankruptcy Code, section 363(k) allows such secured creditor to bid the full face value of its claim and does not limit the credit bid to the claim's economic value." Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.), 432 F.3d 448, 459-60 (3d Cir. 2006) ("It is well settled among district and bankruptcy courts that creditors can bid the full face value of their secured claims under § 363(k)."); see also In re Suncruz Casinos, LLC, 298 B.R. 833, 839 (Bankr. S.D. Fla. 2003) ("The plain language of [section 363(k)] makes clear that the secured creditor may credit bid its entire claim, including any unsecured deficiency portion thereof.") (emphasis in original); In re Midway Invs., Ltd., 187 B.R. 382, 391 n.12 (Bankr. S.D. Fla. 1995) ("[A] secured creditor may bid in the full amount of the creditor's allowed claim, including the secured portion and any unsecured portion thereof") (citing legislative history) (internal quotation marks omitted).

---

[6] In this regard, Wells Fargo submits that the following language be incorporated into the bidding procedures and proposed Order:

**Right to Credit Bid**. Any creditor that has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of the face value of such Secured Creditor's claim within the meaning of section 363(k) of the Bankruptcy Code; *provided*, that a Secured Creditor shall have the right to credit bid its claim only with respect to collateral by which the Secured Creditor is secured, and such Secured Creditor shall be deemed a Qualified Bidder.

21. As referenced above, Wells Fargo's consent to the Eastern sale is conditioned on the following: (I) the proposed Order and bidding procedures must be amended to properly reflect the statutory right of Wells Fargo to submit a credit bid on any of its Collateral; and, (II) Debtors must either: (a) remove and exclude the 16 Units from the Eastern sale, include them in one or more of the NEMF auction sales, and pay Wells Fargo in full on the Eastern debt (in the total outstanding amount of $977,771 as of the Petition Date) from Eastern sale proceeds at the time of closing exclusive of the net proceeds of the 16 Units; or, (b) keep the 16 Units in the Eastern sale but auction them as a separate lot, and in a manner that segregates their purchase price from the purchase price of all other Eastern assets, for no less than their estimated fair market value of $336,000 in the aggregate (with Wells Fargo's right to submit a credit bid preserved) and with 100% of the net sale proceeds of the 16 Units allocable to reduce the NEMF debt (in the total outstanding amount of $3,425,765 as of the Petition Date) instead of the Eastern debt, which Eastern debt shall be paid in full from Eastern sale proceeds at the time of closing exclusive of the net proceeds of the 16 Units.

22. Following all sales, it is highly likely that Wells Fargo will have more of a deficiency under its NEMF debt than under its Eastern debt. Preserving Wells Fargo's right to credit bid mitigates the risk of an even greater deficiency. Furthermore, by virtue of Wells Fargo's cross-collateralization, the equity in the 16 Units must be preserved and allocated to reduce the NEMF debt once the Eastern debt is paid in full (assuming, of course, that the 16 Units remain in the Eastern Sale rather than in the NEMF Sales). Otherwise, the equity in the 16 Units will have been forfeited and wasted in derogation of the cross-collateralization, "default" and "remedies" provisions of Wells Fargo's Loan Documents.

## **RESERVATION OF RIGHTS**

23. Wells Fargo is hopeful that its concerns as outlined above will be resolved prior to the hearing on the Motion, in the form of a revised proposed Order incorporating language consistent with ¶¶ 4, 21 and fn. 6 herein. In the interim, however, Wells Fargo expressly reserves all rights relating to, among other things and without limitation, the sale of its Collateral, any proceeds thereof generated through the Eastern sale, and whether the Eastern Sale satisfies the requirements of section 363 of the Bankruptcy Code. Wells Fargo further reserves its right to amend, modify or supplement this Limited Objection, including responding to the filing of any additional documents or exhibits by Debtors, the Committee and/or any party-in-interest; and to raise additional arguments at or prior to the hearing on the Motion.

## **CONCLUSION**

WHEREFORE, for each of the reasons set forth above, Wells Fargo respectfully requests that the Court enter an Order (i) denying the Motion absent changes to the proposed form of Order and bidding procedures to comport with this Limited Objection and (ii) granting such other or further relief as may be appropriate.

Dated: April 7, 2019

        Respectfully submitted,

        CHIESA SHAHINIAN & GIANTOMASI PC

By: */s/ Michael R. Caruso*
    Michael R. Caruso
    One Boland Drive
    West Orange, NJ 07052
    Tel: 973-530-2109
    Fax: 973-530-2309
    Email:mcaruso@csglaw.com

    *Attorneys for Wells Fargo Equipment Finance, Inc.*