Richard J. Albuquerque, Esquire
D'ARCY JOHNSON DAY
Attorneys for Creditor, Michael Singley
3120 Fire Road
Suite 100
Egg Harbor Township, NJ 08234
Phone: (609) 641-6200
Facsimile: (609) 641-2677
Email: RA@DJD.LAW

HEARING DATE: April 30, 2019
TIME: 10:00 A.M.

UNITED STATES BANKRUPTCY COURT
DISCTRICT OF NEW JERSEY

In Re:

NEW ENGLAND MOTOR FREIGHT, INC., ET AL1,

Debtor,

CHAPTER 11
Case No. 19-12809-JKS

# MEMORANDUM OF LAW IN SUPPORT OF MICHAEL SINGLEY'S MOTION FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

Michael Singley seeks an Order, pursuant to 11 U.S.C. §§361 and 362, for relief from the automatic stay, to enable him to continue his Superior Court of New Jersey personal injury action against Debtors New England Motor Freight, Inc. and Jans Leasing Corp. (hereinafter "NEMF" and "JANS").

## JURISDICTION

This Court has jurisdiction over this Motion because it pertains to the automatic stay in a bankruptcy proceeding under title 11, United States Code (the "Code"). Venue of this Motion in this Court is proper because Debtors' bankruptcy proceeding is pending before the Court. See 28

---

1 The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

1

U.S.C. §1409 (a).

## STATEMENT OF FACTS

Mr. Singley is a resident of the town of Wildwood, Cape May County, and State of New Jersey. At all times relevant, NEMF and JANS operated a trucking business, with a principal place of business at 1-71 North Avenue, Elizabeth, New Jersey.

On March 15, 2017, Mr. Singley was cause to suffer personal injuries as a result of a motor vehicle accident when he was traveling north on State Highway 55 in Vineland, New Jersey. NEMF and JANS was the owner of a certain tractor trailer, involved in the aforesaid motor vehicle accident (hereinafter "vehicle"). At the time of the accident, the Vehicle was driven by David Wood, who was an employee of NEMF.

On or about January 24, 2019, Mr. Singley commenced an action New Jersey Superior Court, Atlantic County, and seeking compensation from NEMF, Mr. Singley and other defendants for personal injuries as a result of the aforesaid motor vehicle accident ("Superior Court Action"). NEMF, JANS and David Wood have not filed an Answer to the Complaint.

On or about February 11, 2019, Debtors filed for bankruptcy in this Court, triggering a stay of the Superior Court Action as against NEMF and JANS. Upon being notified of the bankruptcy filing, the Judge presiding over the Superior Court Action stayed the entire case. Debtors subsequently filed an adversary proceeding (#19-12809) and motion seeking to extend the automatic stay to cover Mr. Wood, as well as other similarly situations driver employed by Debtors. [Adv. Pro. Dkt. No. 1].

Based upon Debtors' representations [Adv. Pro. Dkt. No. 3, Thiesen Decl. Ex. E] NEMF

2

and JANS is a "motor carrier" as defined by 49 USCA §13102 (14). As a "motor carrier," NEMF and JANS are required to be registered with Federal Motor Carrier Safety Administration ("FMCSA"). See 49 USCA §§13901 and 13902; 49 CFR 1.87. Among other requirements of registration, a motor carrier must maintain and file proof of "minimum levels of financial responsibility." See 49 USCA § 13906(a); 49 CFR 387.5, 387.7 and 397.9. "Financial responsibility means the financial reserves (e.g., insurance policies or surety bonds) sufficient to satisfy liability amounts set forth in [48 CFR Part 387, Subpart A] covering public liability." 49 CFR 387.5.

"Public liability means liability for bodily injury or property damage and includes liability for environmental restoration." 49 CFR 387.5.

Proof of the required financial responsibility must be filed with the FMSCA, <u>see</u> 49 CFR 387.301T, maintained at the motor carrier's principal place of business and consists of:

"(1) 'Endorsement(s) for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980" (Form MCS-90)' issued by an insurer(s);

(2) 'A Motor carrier Surety Bond for Public Liability Under Section 30 of the Motor Carrier Act of 1980' (Form MCS-82) issued by a surety; or

(3) "A written decision, order, or authorization of the Federal Motor Carrier Safety Administration authorizing a motor carrier to self-insured under §387.309, provided the motor carrier maintains a satisfactory safety rating as determined by the Federal Motor Carrier Safety Administration under part 385 of this chapter."

Depending upon the gross weight of the vehicle operated, and the type of commodity

transported, the minimum levels of financial responsibility are either $750,000; $1,000,000; or $5,000,000. See 49 CFR 387.9. A recent Motor Carrier Report from the FMCSA regarding NEMF and JANS are not exempt from carrying insurance or a surety bond (i.e., it is not self-insured); has a minimum financial responsibility for bodily injury and property damages ("BIPD") of $1,000,000; is required to have a surety bond; a surety bond is on file; and, as of the date of the report, has BIPD financial responsibility coverage of $1,000,000.

On page seven of the aforementioned report, it states NEMF and JANS maintained $1,000,000 surety bond with Protective Insurance Company for the period of April 10, 2012 through May 4, 2018 (Policy/Surety Number: B13114).

Thus, there is a surety bond against which Mr. Singley could potentially recover should he obtain a judgment against Mr. Wood and/or NEMF or JANS.

## ARGUMENT

### POINT I

### MR. SINGLEY'S CLAIM CANNOT BE LIQUIDATED IN THIS COURT

Mr. Singley seeks relief from the automatic stay as to NEMF and JANS and Mr. Wood (if applicable) in order to have his claim against them, and others, finally determined. Mr. Singley's claim against NEMF and JANS is based on a pre-petition tort, and is therefore, general and unsecured. See, e.g. In re New York Med. Grp. P.C., 265 B.R. 408, 411 (Bankr. S.D.N.Y. 2001). Ordinarily, a creditor holding a general unsecured claim files his/her proof of claim in the bankruptcy court, see 11 U.S.C. § 502(a). "Objections are resolved in the Bankruptcy Court, and the claims objection process usually results in the liquidation of the allowed amount of the

4

claim." In re New York Med. Grp., P.C., 265 B.R. at 412.

Although the same proof of claim filing requirements apply to creditors holding pre-petition tort claims, the objection and liquidation processes differ. See id. However, the objection to a personal injury claim is a non-core matter, and the Bankruptcy Court lacks jurisdiction to liquidate a personal injury claim. See 28 U.S.C. §157(b)(2)(B); In re United States Lines, Inc., No. 97 CIV. 6727 (MBM), 1998 WL 382023, at *4 (S.D.N.Y. July 9, 1998) aff'd, 216 F. 3d 228 (2d Cir. 2000).

The procedure governing liquidation of a personal injury claim is set out in 28 U.S.C. §157(b)(5): "[t]he District court shall order that personal injury tort and wrongful claims shall be tried in the District Court in which the bankruptcy case is pending, or in the District court in the district in which the claim arose, as determined by the District Court in which the bankruptcy case is pending."

"Although 157(b)(5) expressly directs the Court to transfer the venue of the personal injury litigation to one of two Federal Courts, the District Court may also abstain in favor of a non-bankruptcy forum." In re New York Med. Grp., P.C., 265 B.R. 408, 412 (Bankr. S.D.N.Y. 2001) citing In re Pan Am. Corp., 950 F. 2d 839, 843 (2nd Cir. 1991).

As stated by the Court In re New York Med. Group., P.C.:

> "The Bankruptcy Court cannot exercise the authority granted to the District Court under §157(b)(5). In re Unitd States Lines, Inc. 216 F.3d at 234. Nevertheless, the Bankruptcy Court's decision to grant stay relief is akin to abstention under §157(b)(5) since both leave the case to be tried in the appropriate non-bankruptcy court. The two powers are distinct, however, and can be reconciled. Thus, while the Bankruptcy Court has the power to grant relief from the automatic stay to permit the commencement or continuation of personal injury

5

litigation in a State or Federal Court, see United States Lines, Inc., 1998 WL 382023, at *2, its decision does not affect the debtor's right to move in the District Court under §157(b)(5) to transfer the litigation in accordance with that provision. Pieklik v. Hudgins (In re Hudgins), 102 B.R.495, 497 (Bankr. E.D. Va. 1989); accord In re Thomas, 211 B.R. 838, 841-43 (Bankr. D.S.C. 1997)."

In re New York Med. Grp., P.C., 265 B.R. at 412.

Based upon the foregoing, it is clear that this Court cannot liquidate Mr. Singley's claim against NEMF, JANS and/or Mr. Wood. Since NEMF and JANS have not moved to have Mr. Singley's claim transferred to a District court, the only issue before this Court is whether relief from the automatic stay should be granted and the matter allowed to proceed in New Jersey Superior Court.

## POINT II

### MR SINGLEY IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY

Section 362(d)(1) of the Bankruptcy Code permits a court to modify the stay for "cause." In deciding Mr. Singley's application, this Court must consider the following: "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with the interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

6

(10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties and the balance of harms." In re Sonnax Indus., Inc., 907 F. 2d 1280, 1286 (2d Cir. 1990).

In the present case, the Cape May County Superior Court is a forum that can award complete relief to all parties involved (Factor #1), and thus, relief from the automatic stay will promote judicial economy (Factor #10). In addition, the Superior Court action will not interfere with the bankruptcy case (Factor #2). Relief from the automatic stay will not prevent Debtors from confirming a plan of liquidation. In addition, NEMF, JANS, and Mr. Wood are currently represented by Attorney Rubenstein, who is in-house counsel for NEMF and JANS. Mr. Rubenstein handles the vast majority of the Debtors' personal injury cases. It would be more efficient for the Debtors to continue to employ the services of Mr. Rubenstein to defend these cases than to send them to outside defense counsel (who will charge by the hour). However, if Debtors choose not to do so, then they will have made a calculated risk to accept the resulting consequences.

Finally, any claim that Mr. Wood will not defend himself if NEMF and JANS do no provide representation is purely speculative. Mr. Wood faces personal liability for his actions and thus has great incentive to mount a defense to Mr. Singley's claims. Regardless, the fact that Mr. Wood may choose not to defend himself is not a reason to prevent Mr. Singley from pursuing his claims.

There is also no prejudice to the interests of the other creditors (Factor #7). Presuming

there are surety bonds to cover NEMF and JANS self-insured retention under the excess policy, when combined with the excess policy coverage, Mr. Singly would be able to withdraw his proof of claim if any judgment he obtains is paid via the bond and/or excess insurance.

Regardless, there are 72 other personal injury actions pending against the Debtors – all of which have to be liquidated. Even if there are no surety bonds, all of these plaintiffs (including Mr. Singley) have a right to have his claim liquidated and share in the monies distributed to other unsecured creditors. Since there is an alleged self-retention, Debtors are going to have to hold money in reserve to account for potential unsecured claims of plaintiffs such are Mr. Singley, regardless of the forum in which such claims are decided.

In the event that a judgment, assessment and/or recovery is rendered or obtained against NEMF and JANS in favor of Mr. Singley in the Superior Court Action, and to the extent that it is not paid by surety bond, insurance or other jointly and severally liable defendant. Mr. Singley agrees to amend his proof of claim to reflect an unsecured claim for said amount. Mr. Singly further agrees that he shall not attempt to enforce all or any part of said judgment, assessment and/or recovery against NEMF and JANS in the Superior Court Action with the exception of the proof of claim. If such judgment, assessment and/or recovery is fully paid (or there is a settlement), Mr. Singley shall withdraw his proof of claim.

Dated: April 10, 2019

D'ARCY JOHNSON DAY
Attorneys for Michael Singley
BY: /s/ Richard J. Albuquerque
    RICHARD J. ALBUQUERQUE, ESQ.
    3120 Fire Road, Suite 100
    Egg Harbor Township, NJ 08234
    609-641-6200