UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-1**

**GIBBONS P.C.**
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
E-mail: kgiannelli@gibbonslaw.com
        mconlan@gibbonslaw.com
        btheisen@gibbonslaw.com

*Counsel to the Debtors*
*and Debtors-in-Possession*

**FILED**
JEANNE A. NAUGHTON, CLERK

APR - 8 2019

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

In re:

NEW ENGLAND MOTOR FREIGHT, INC., *et al.*,

Debtors. [1]

Chapter 11

Case No. 19-12809 (JKS)

(Jointly Administered)

## ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL ASSETS OF DEBTORS' EASTERN FREIGHT WAYS, INC. AND CARRIER INDUSTRIES, INC.; (II) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE OF ASSETS; AND (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF

The relief set forth on the following pages, numbered two (2) through and including

fifteen (15), is hereby **ORDERED**.

4/8/19

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

#41158920 v3

Page:       2
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially
            All Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (II)
            Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III)
            Approving Form and Manner of Notice Thereof

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, 365, 503, 506, 507 and 552 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 6004-1, 6004-2 and 6004-3 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "**Local Rules**"), for entry of an order (this "**Bidding Procedures Order**"): (i) approving bidding procedures in connection with the sale of substantially all Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (ii) scheduling an auction and a hearing to consider the sale of Assets, (iii) approving the form and manner of notice thereof; and (iv) granting related relief; and the Court having considered the Motion and all exhibits, objections, and other papers filed in connection therewith; and the Court having determined that the relief provided herein is in the best interest of the Debtors, their estates, creditors and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion, and the full record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby:

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Motion.

Page:       3
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially
            All Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (II)
            Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III)
            Approving Form and Manner of Notice Thereof

**FOUND AND DETERMINED THAT:[3]**

A.      This Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

C.      The Debtors' proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of the Debtors' Assets, and the Bidding Procedures to be employed in connection therewith.

D.      The Debtors have articulated good and sufficient business reasons for this Court to approve the Bidding Procedures, including: (i) the scheduling of a Bid Deadline, Auction, and Sale Hearing for the sale of the Debtors' Assets; and (ii) the establishment of procedures to fix the Cure Amounts to be paid under section 365 of the Bankruptcy Code in connection with the assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases.

---

[3] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when applicable.

Page:      4
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially
           All Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (II)
           Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III)
           Approving Form and Manner of Notice Thereof

E.       The Debtors have demonstrated a compelling and sound justification for authorizing the sale of the Assets and the Debtors' option to accept a Stalking Horse Bid and grant the Stalking Horse Bidder the Break-Up Fee and/or Expense Reimbursement (as such terms are defined herein) are reasonably calculated to enable the Debtors to maximize the value of the Assets by setting the floor for bids and contributing to a robust auction process, for the benefit of the Debtors' estates, creditors, and other parties in interest.

F.       The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Debtors' assets.

G.       The entry of this Bidding Procedures Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.       The Motion is **GRANTED** as set forth herein.

2.       All objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.       The Bidding Procedures, which are attached hereto as **<u>Exhibit 1</u>** and incorporated herein by reference, are hereby approved in all respects and except as provided herein in respect to a potential Stalking Horse Bid, shall govern all bidders and bids, including those that may be submitted by Qualified Bidders at the Auction.

-4-

Page:       5
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:   Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially
           All Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (II)
           Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III)
           Approving Form and Manner of Notice Thereof

4.      Qualified Bidders seeking to submit bids for the purchased Assets must do so in accordance with the terms of the Bidding Procedures and this Bidding Procedures Order.

5.      Notwithstanding anything to the contrary in the Motion, Bidding Procedures, any other orders entered by the Court in the Chapter 11 Cases, or otherwise, the Debtors, without the necessity of a further hearing or authorization of the Court, in their discretion, shall be authorized (but not required) to accept a stalking horse bid (the "**Stalking Horse Bid**") and enter into a purchase agreement (the "**Stalking Horse  Purchase Agreement**") with such bidder (the "**Stalking Horse Bidder**") if the Debtors determine, in their discretion, that entry into such a Stalking Horse Purchase Agreement on such terms and conditions that the Debtors, in the Debtors' discretion, reasonably determine are in the best interests of their estates; provided, however, that the deadline for reaching agreement on the terms of any such Stalking Horse Purchase Agreement is April 12, 2019 (subject to the Debtors' right to extend such deadline for a reasonable period thereafter without further order of the Court).

6.      Subject to the terms of this Order and the Bidding Procedures, the Debtors may, in their discretion, in connection with accepting a Stalking Horse Bid offer Stalking Horse Bidder certain bid protections, subject to the procedures set forth herein.

7.      Upon entry into a Stalking Horse Agreement, the Debtors shall contact chambers to ascertain the Court's availability for an expedited hearing (the "**Expedited Hearing**"), should one become necessary pursuant to the terms of this Order.

Page:       6
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially
            All Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (II)
            Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III)
            Approving Form and Manner of Notice Thereof

      8.     If the Debtors designate a Stalking Horse Bidder, the Debtors shall within

two (2) business days thereof file a notice of such determination with the Bankruptcy Court,

which notice shall (i) identify the Stalking Horse Bidder, (ii) set forth the amount of any Break-

Up Fee and/or Expense Reimbursement proposed to the Stalking Horse Bidder, (iii) include a

copy of the Stalking Horse Bidder's Qualified Bidder Purchase Agreement, which competing

Qualified Bidders must then use as the basis to submit their Qualified Bids, (iv) include

modifications to the Bidding Procedures and Auction procedures, if necessary, to account for the

Stalking Horse Bid, and (v) identify the deadline, which shall be at least three (3) business days

after the Debtors filed and serve the notice, by which objections to the proposed designation, bid

protections and/or revised bidding procedures must be filed (the "**Stalking Horse Bid**

**Protections Objection Deadline**") (unless the Court accepts objections at the Expedited

Hearing).

      9.     Stalking Horse and Bid Protection Objections shall (a) be in writing

(unless the Court accepts objections at the Expedited Hearing), (b) comply with the Bankruptcy

Code, Bankruptcy Rules and Local Rules, (c) state with specificity the legal and factual bases

thereof, and (d) be filed on or before the Stalking Horse and Bid Protections Objection Deadline.

If no timely objection is filed, then the Debtors entry into such Stalking Horse Agreement and

the provision of bid protections through such agreement shall be deemed authorized and

approved without further order of the Court and without the need for the Expedited Hearing

(which shall be taken off the Court's calendar).  If a timely objection is filed, then the Court will

Page:        7
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:    19-12809 (JKS)
Caption:    Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially
            All Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (II)
            Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III)
            Approving Form and Manner of Notice Thereof

conduct the Expedited Hearing to consider whether to authorize the Debtors to enter into the

Stalking Horse Agreement and provide any proposed Bid Protections.

     10.    The sale process shall generally occur in accordance with the following

timeline:

| Action | Deadline |
|---|---|
| Stalking Horse Bid Deadline | April 12, 2019 (subject to extension by the Debtors) |
| Sale Objection Deadline and Cure/Assignment Objection Deadline | May 6, 2019 at 4:00 p.m. (prevailing Eastern Time) |
| General Bid Deadline | May 9, 2019 at 4:00 p.m. (prevailing Eastern Time) |
| Auction Date | May 14, 2019 at 10:00 a.m. (prevailing Eastern Time) at the law offices of Gibbons P.C. |
| Sale Hearing | May 16, 2019 at __:___ __.m. (prevailing Eastern Time) |
| Sale Closing Date | May 31, 2019 |

     11.    No bid shall be deemed to be a Qualified Bid (as defined in the Bidding

Procedures) or otherwise considered for any purposes unless such bid meets the requirements set

forth in the Bidding Procedures (which determination shall be made after consulting with the

Page:       8
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially
            All Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (II)
            Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III)
            Approving Form and Manner of Notice Thereof

Official Committee of Unsecured Creditors), provided, however, that the Debtors, in consultation with the Official Committee of Unsecured Creditors, may waive one or more defects and cause a bid to be deemed a Qualified Bid.

12.    The Debtors may sell the Assets by conducting an Auction in accordance with the Bidding Procedures. If Qualified Bids are timely received by the Debtors in accordance with the Bidding Procedures, the Auction shall take place on **May 14, 2019 at 10:00 a.m.** prevailing Eastern time at the offices of Gibbons P.C., One Gateway Center, Newark, N.J. 07102, or at such other place and time as the Debtors shall notify all Qualified Bidders and other invitees. If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held.

13.    Each Qualified Bidder participating at the Auction will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the sale. The Auction will be conducted openly. Bidding at the Auction shall be transcribed or videotaped.

14.    The Sale Hearing shall be held before this Court on **May 16, 2019, at** *10* : *00* *A* **.m. (prevailing Eastern time)**, or as soon thereafter as counsel and interested parties may be heard.

15.    On or before three (3) business days after entry of the Bidding Procedures Order, or as soon thereafter as such parties can be identified, the Debtors will cause a notice in substantially the form annexed hereto as **Exhibit 2** (the "**Notice of Auction and Sale Hearing**"),

Page:      9
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially
           All Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (II)
           Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III)
           Approving Form and Manner of Notice Thereof

and a copy of this Bidding Procedures Order, to be sent, by first-class mail, postage prepaid, to the following: (i) the Office of the United States Trustee; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) all parties who are known to assert a security interest, lien, or claim in any of the Assets, if any; (iv) all non-Debtor parties to the Executory Contracts and Unexpired Leases and any parties who are known to claim interests therein; (v) all applicable federal, state, and local taxing authorities; (vi) all applicable county and state consumer protection agencies; (vii) all applicable state attorneys general; (viii) all other government agencies required to receive notice under the Bankruptcy Rules (including all permitting agencies); (ix) the Debtors' 30 largest unsecured creditors on a consolidated basis; (x) the Debtors' insurance providers; (xi) all known parties that have expressed interest to the Debtors, within six (6) months prior to the Petition Date and/or since the Petition Date, in purchasing some or all of the Debtors' assets; and (xii) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002. In addition to the foregoing, electronic notification of this Motion, the Bidding Procedures Order and the Notice of Auction and Sale Hearing also will be posted on the Court's electronic case filing (ECF) website.

16.    On or before three (3) business days after entry of this Bidding Procedures Order, the Debtors will (i) serve the Notice of Auction and Sale Hearing on all creditors appearing on the Debtors' creditor matrix (to the extent not already served pursuant to paragraph 13); and (ii) subject to applicable submission deadlines and cost considerations.

Page:       10
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially
            All Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (II)
            Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III)
            Approving Form and Manner of Notice Thereof

17.     On or before three (3) business days after entry of this Bidding Procedures Order, the Debtors will serve, by first class mail or hand delivery on all non-Debtor parties to the Executory Contracts and Unexpired Leases, a notice of potential assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases in substantially the form annexed hereto as **Exhibit 3** (the "**Notice of Assumption and Assignment**"). The Notice of Assumption and Assignment shall identify the calculation of the cure amounts that the Debtors believe must be paid to cure all defaults under the Assigned Contracts (the "**Cure Amounts**"). If the Debtors, the Successful Bidder, or the Back Up Bidder, as the case may be, identify additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned to the Successful Bidder or that were not set forth in the original Notice of Assumption and Assignment, the Debtors will promptly send a supplemental notice (a "**Supplemental Notice of Assumption and Assignment**") to the applicable counterparties to such additional executory contracts and unexpired leases.[4]

18.     Unless the non-Debtor party to an Executory Contract or Unexpired Lease files an objection (the "**Cure Amount/Assignment Objection**") to its scheduled Cure Amount and/or (ii) the proposed assumption, assignment and/or transfer of such Executory Contract or

---

[4] The inclusion of any contract or unexpired lease of nonresidential real property on any Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment shall not be an admission by the Debtors or their estates that any such contract or unexpired lease so included is an executory contract. Nor shall the inclusion of any contract or unexpired lease on any Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment constitute an admission of liability by the Debtors or their estates or effectuate the assumption or assignment of such contract or lease, absent entry of an order of the Court approving the assumption and/or assignment of such contract or lease of nonresidential real property in conjunction or as part of the Approval Order.

Page:        11
Debtors:  New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:  Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially
          All Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (II)
          Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III)
          Approving Form and Manner of Notice Thereof

Unexpired Lease by **May 6, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the
"**Cure/Assignment Objection Deadline**") and serves a copy of the Cure Amount/Assignment
Objection so as to be received no later than the Cure/Assignment Objection Deadline on
(i) counsel for the Debtors, Gibbons P.C., One Gateway Center, Newark, N.J. 07102 (Attn:
Karen Giannelli, Esq. (kgiannelli@gibbonslaw.com); and (ii) counsel for the Official Committee
of Unsecured Creditors, Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068
(Attn: Mary E. Seymour, Esq (mseymour@lowenstein.com) and Elliott Greenleaf, P.C. (Attn:
Rafael X. Zahralddin-Aravena, Esq. (rxza@elliottgreenleaf.com) (collectively, the "**Objection
Notice Parties**"), then such non-Debtor party shall (i) be forever barred from objecting to the
Cure Amount and from asserting any additional cure or other amounts with respect to such
Executory Contract or Unexpired Lease and the Debtors shall be entitled to rely solely upon the
Cure Amount and (ii) subject to the procedures for objecting to adequate assurance of future
performance as set forth below, be deemed to have consented to the assumption, assignment
and/or transfer of such Executory Contract or Unexpired Lease to the Successful Bidder or Back-
Up Bidder and shall be forever barred and estopped from asserting or claiming against the
Debtors, the Successful Bidder or Back-Up Bidder or any other assignee of the relevant
Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or
additional conditions to assumption, assignment and/or transfer must be satisfied, under such
Executory Contract or Unexpired Lease.

Page:      12
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially
           All Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (II)
           Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III)
           Approving Form and Manner of Notice Thereof

19.     Cure Objections shall set forth the cure amount being claimed by the objecting party (the "**Claimed Cure Amount**"), the specific types and dates of the alleged defaults, pecuniary losses and conditions to assignment, and the support therefor and for all other objections to assumption and assignment.  Upon receipt of a Cure Amount/Assignment Objection, the Debtors, with the approval of the Successful Bidder, may resolve any Cure Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court.  In the event that the Debtors, the Successful Bidder or the Back-Up Bidder (as applicable), and any objecting party are unable to consensually resolve any Cure Objection prior to the Sale Hearing, the Debtors shall request that the Court resolve such Cure Objection at the Sale Hearing or at such later date as is set by the Court.

20.     The Successful Bidder or the Back-Up Bidder, as the case may be, may determine to add or exclude any Executory Contract or Unexpired Lease from the list of Executory Contracts and Unexpired Leases to be assumed and assigned under the Purchase Agreement or Stalking Horse Purchase Agreement no later than one (1) business day prior to the Sale Hearing, or, if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such contract is greater than the Cure Amount proposed by the Debtors, no later than five (5) business days following the Court's determination.

21.     Promptly after the conclusion of the Auction, the Debtors will serve a notice identifying the Successful Bidder and Back-Up Bidder (the "**Notice**") to the non-Debtor

-12-

Page:        13
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially
            All Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (II)
            Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III)
            Approving Form and Manner of Notice Thereof

parties to the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid and Back-Up Bid.  Objections of any Non-Debtor party to an Executory Contract or Unexpired Lease related solely to the identity of and adequate assurance of future performance by the Successful Bidder must (x) be in writing; (y) state with specificity the nature of such objection, and (z) be filed with the Court and properly served on the Objection Notice Parties so as to be received by **May 15, 2019** (the **"Adequate Assurance Objection Deadline"**); provided, however, that in the event the Debtors obtain a Stalking Horse Bid and provide notice of the identity of the Stalking Horse Bidder prior to the Sale Objection Deadline, any objection of a Non-Debtor party to an Executory Contract or Unexpired Lease related to the Stalking Horse Bid (including, with respect to the identity of and adequate assurance of future performance provided by the Stalking Horse Bidder) must be filed as a Cure Amount/Assignment Objection by the Cure/Assignment Objection Deadline.

22.    Objections to the sale of the Debtors' Assets, adequate assurance of future performance by the Stalking Horse Bidder or the relief requested in the Motion (other than with respect to the conduct of the Auction or adequate assurance of future performance by the Successful Bidder if the Successful Bidder is not the Stalking Horse Bidder) must: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the clerk of the Bankruptcy Court for the District of New Jersey, on or before **May 6, 2019 at 4:00 p.m. (prevailing Eastern time)** (the "Sale Objection Deadline"), or such later date and time as the Debtors may agree; and (iv) be served so as to be received no later than 4:00 p.m. (prevailing

-13-

Page:      14
Debtors:  New England Motor Freight, Inc., *et al.*
Case No.: 19-12809 (JKS)
Caption:  Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially
          All Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (II)
          Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III)
          Approving Form and Manner of Notice Thereof

Eastern time) on the same day upon the Objection Notice Parties. Objections, if any, to the conduct of the Auction, must be filed and served at least one day prior to the commencement of the Sale Hearing and must otherwise comply with the requirements above. All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

23.    No Qualified Bidder or any other person or entity, other than the Stalking Horse Bidder, if any, shall be entitled to any expense reimbursement, break-up fee, termination or other similar fee or payment in connection with the Sale or any other form of bid protections.

24.    The Notice of Auction and Sale Hearing and the Notice of Assumption, and Assignment to be issued in connection with the proposed sales of the Assets, substantially in the forms annexed hereto as **Exhibit 2** and **Exhibit 3**, respectively, are approved.

25.    The Sale Hearing may be adjourned, from time to time, provided, however, the Debtors shall timely file a notice of such adjournment on the Court's docket.

26.    Except as otherwise provided in this Bidding Procedures Order or the Bidding Procedures, the Debtors further reserve the right as they may reasonably determine to be in the best interests of their estates, subject to conformity with the Bidding Procedures, to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures

Page:       15
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially
           All Assets of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.; (II)
           Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III)
           Approving Form and Manner of Notice Thereof

or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors

and their estates; (v) remove all or a portion of the Assets from the sale; (vi) waive terms and

conditions set forth herein with respect to all Potential Bidders; (vii) impose additional terms and

conditions with respect to all Potential Bidders; (viii) extend the deadlines set forth herein; (ix)

upon prior notice to the Stalking Horse Bidder to the extent practicable under the circumstances,

adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; (x)

modify the Bidding Procedures as the Debtors may determine to be in the best interest of their

estates; or (xi) withdraw the Motion at any time prior to the Sale Hearing with or without

prejudice.

27.    Notwithstanding anything to the contrary in this Order or the Motion, any

payment, obligations, or other relief authorized by this Order shall be subject to the terms,

conditions, and limitations of the order of this Court approving any debtor in possession

financing and cash collateral use, including any budget in connection therewith.

28.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are

waived and Bidding Procedures Order shall be effective immediately upon its entry.

29.    This Court shall retain jurisdiction over any matters related to or arising

from the implementation of this Order.

## EXHIBIT 1

**GIBBONS P.C.**
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey 07102
Telephone:  (973) 596-4500
Facsimile:  (973) 596-0545
E-mail:  kgiannelli@gibbonslaw.com
         mconlan@gibbonslaw.com
         btheisen@gibbonslaw.com

Counsel to the Debtors
and Debtors-in-Possession

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| NEW ENGLAND MOTOR FREIGHT, INC., et al., | Case No. 19-12809 (JKS) |
| Debtors.[1] | (Jointly Administered) |

### BIDDING PROCEDURES

By motion dated March 25, 2019 (the "**Motion**") filed by the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Cases**") [Docket No. 335],[2] the Debtors sought approval of, among other things, the procedures through which they will determine the highest or otherwise best price for the sale of substantially all the assets owned by Debtors' Eastern Freight Ways, Inc., ("**Eastern**") Carrier Industries, Inc.'s ("**Carrier**") and certain rolling stock owned by New England Motor Freight, Inc. ("**NEMF**") (collectively, the "**Assets**") to one or more successful bidders.

On April 8, 2019, the United States Bankruptcy Court for the District of New Jersey (the "**Court**") entered an order (the "**Bidding Procedures Order**") which, among other

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

things, (i) authorized the Debtors to determine and select the highest or otherwise best bid for the Assets (the "**Successful Bid**") through the competitive bidding and auction process set forth below (the "**Bidding Procedures**"); and (ii) scheduled **May 16, 2019 at ___:___ __.m. (Prevailing Eastern time)**, as the date and time that a hearing before the Court to consider the Debtors' request for approval of the Successful Bid will be held (the "**Sale Hearing**"). As set forth below and in the Motion, the Debtors reserve the right to modify the Bidding Procedures in accordance with the Bidding Procedures Order.

The sale will be subject to competitive bidding as set forth herein, and approval of the Court pursuant to sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").

**Additional information regarding the Assets can be obtained by contacting Mark Karbiner, Senior Director, Phoenix Capital Resources, 110 Commons Court, Chadds Ford, PA 19317 (mkarbiner@phoenixcapitalresources.com).**

## I.     Assets to be Sold Free and Clear

The Assets generally constitute substantially all of the assets owned by Debtors, Eastern and Carrier as well as certain rolling stock owned by NEMF. The Debtors are offering bidders the opportunity to bid on substantially all of the Assets (the "**Sale**"). All of the rights, title and interest of the Debtors in and to the Assets to be acquired will be sold free and clear of all pledges, liens, security interest, encumbrances, claims, charges, options, and interests thereon and there against (collectively, "**Claims and Interests**") to the extent permitted by sections 363 and 365 of the Bankruptcy Code, and other applicable law, such Claims and Interests to attach to the net proceeds of the Sale of such Assets, with the same validity and priority as existed immediately prior to the Sale.

The Sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or estates, except to the extent set forth in the purchase agreement between the Debtors and the Successful Bidder.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the marked purchase agreement.

## II.     Due Diligence

The Debtors will afford interested parties that deliver an executed confidentiality agreement in form and substance reasonably acceptable to the Debtors and, at the Debtor's request, financial information that demonstrates such party's ability to submit a bid that complies with the requirements herein and the Bidding Procedures Order (each, a "**Potential**

**Bidder**"), the opportunity to conduct reasonable due diligence, subject to parameters and restrictions that the Debtors may establish in their discretion. The due diligence period shall extend through and include the Bid Deadline (as defined below).

Neither the Debtors nor its advisors shall be obligated to furnish any information of any kind whatsoever relating to the Assets, assumed liabilities, the Debtors' contracts, or the Debtors to any person or entity (i) that is not a Potential Bidder or Qualified Bidder (as defined below), (ii) that is not in compliance with the requirements set forth herein and in the Bidding Procedures Order or (iii) after the Bid Deadline (as defined below).[3]

## III.    Bid Deadline

All Potential Bidders must deliver bids for the Assets (each a "**Bid**"), so as to be received on or before 4:00 p.m. (prevailing Eastern Time), on May 9, 2019 (the "**Bid Deadline**"), unless otherwise extended by the Debtors, to counsel for the Debtors, Gibbons P.C., One Gateway Center, Newark, N.J. 07102 (Attn: Karen Giannelli, Esq. and Lawrence A. Goldman, Esq. (kgiannelli@gibbonslaw.com, lgoldman@gibbonslaw.com) and (b) the Debtors, c/o Phoenix Capital Resources, 110 Commons Court, Chadds Ford, PA 19137 (Attn: Mark Karbiner (mkarbiner@phoenixcapitalresources.com) (collectively, the "**Notice Parties**"). The Debtors will timely provide counsel to the Official Committee of Unsecured Creditors, copies of all Bids received prior to the Bid Deadline.

## IV.    Qualified Bidder Requirement

Notwithstanding that it may contain terms and conditions which may be inconsistent with those set forth herein, in the event the Debtors, in the Debtors' discretion elect to accept a Stalking Horse Bid, for purposes of these Bidding Procedures, any Stalking Horse Bid shall be deemed to constitute a Qualified Bid and any Stalking Horse Bidder shall be deemed to be a Qualified Bidder.

In order to qualify to submit a Qualified Bid (as defined below) and participate in the Auction, each Potential Bidder must: (i) deliver to the Notice Parties financial information evidencing the Potential Bidder's ability to perform under its proposed transaction to the sole satisfaction of the Debtors' professionals, including the ability to (a) close the Sale within the time period prescribed in the Bidding Procedures Order and Template Form Purchase Agreement and (b) provide adequate assurance of future performance to counterparties to Executory Contracts and Unexpired Leases to be assumed and assigned to the Potential Bidder. In addition, if the Potential Bidder is an entity formed in whole or part for the purpose of acquiring all or part of the Assets, the Potential Bidder must deliver to the Notice Parties relevant financial information as may be requested by the Debtors, in the Debtors' Discretion, regarding the major equity holders or financial sponsors of such entity evidencing, to the reasonable satisfaction of the Debtors after consultation with the Committee, the Potential

---

[3] To the extent any party executed a confidentiality agreement prior to the entry of an order approving these Bidding Procedures, such party does not need to execute another confidentiality agreement in order to comply with the Bidding Procedures or to become a Qualified Bidder.

Bidder's ability to (x) close the Sale within the time period prescribed in the Bidding Procedures Order and Template Form Purchase Agreement and (y) provide adequate assurance of future performance to counterparties to Executory Contracts and Unexpired Leases to be assumed and assigned to the Potential Bidder.

The Debtors, in their discretion, shall determine whether a Potential Bidder has complied with the foregoing requirements and has qualified to submit a Qualified Bid and participate in the Auction (each such Potential Bidder, a "**Qualified Bidder**"), and the Debtors shall provide prompt written notice of their determination to any such Potential Bidder, with copies to counsel to the Committee.

The Debtors, in their discretion, may request additional information from a Potential Bidder or Qualified Bidder at any time prior to the Auction Date in order to evaluate such bidder's ability to bid at the Auction over and above its initial offer in its Qualified Bid, consummate the Sale, and fulfill its obligations in connection therewith. Each Potential Bidder or Qualified Bidder shall be obligated to provide such additional information within two (2) business days of receiving such requests as a condition to participating further in the Auction and Sale processes; provided, however, that additional information requests made by the Debtors during the Auction in connection with a Qualified Bidder's ability to continue to bid at the Auction over and above its initial offer in its Qualified Bid shall, in the Debtors' discretion, be satisfied prior to such Qualified Bidder submitting any further bids at the Auction.

## V.      Requirements of a Qualified Bid

To constitute a Qualified Bid, a bid must, among other things:

A.   Be made in writing;

B.   Be submitted prior to the Bid Deadline;

C.   Be a bid for all or substantially all of the Assets of both Eastern and Carrier;

D.   Designate a list of the executory contracts and unexpired leases with respect to which the Potential Bidder seeks assignment from the Debtors;

E.   Include a binding, definitive and fully executed asset purchase agreement which shall be in form and substance substantially similar to the Form Template Asset Purchase Agreement or Stalking Horse Asset Purchase Agreement, as applicable, and which shall be marked to reflect only those changes required as a condition of such Qualified Bidder's closing the Sale; provided, however, such asset purchase agreement shall not request or entitle such Potential Bidder to any break-up fee, expense reimbursement, or similar type of payment. An asset purchase agreement, together with its schedules and exhibits, submitted in accordance with these Bidding Procedures shall be referred to herein as a "**Qualified Bidder Purchase Agreement**";

F.  Provide that the purchase price shall be paid in full in cash at the closing of the Sale;

G.  Provide a good faith cash deposit (the "**Good Faith Deposit**") equal to 10% of the Bidder's proposed purchase price. The Good Faith Deposit shall be paid to such Bidder's counsel trust account and counsel for such Bidder shall represent in such Bidder's cover letter or in an email sent to Debtors' counsel that it is in receipt of the Good Faith Deposit and will hold same in accordance with the Bidding Procedures. The Debtors reserve the right to increase, decrease or waive the Good Faith Deposit for one or more Qualified Bidders in their discretion or to accept an alternative form of consideration in lieu of a Good Faith Deposit. At the conclusion of the Auction, the Good Faith Deposit of the Successful Bidder shall be transferred from counsel's trust account to a trust account at Gibbons P.C. in accordance with directions to be provided to such Successful Bidder, together with any additional amount such that the final Good Faith Deposit reflects ten (10%) percent of its final bid at Auction. With respect to the Back-Up Bidder, its Good Faith Deposit shall continue to be held by its counsel in a trust account until such time as the Debtors notify the Back-Up Bidder or its counsel that the Good Faith Deposit can be returned to the Back-Up Bidder. To the extent the Successful Bidder fails to close or otherwise breaches its agreement and the Debtors notify the Back-Up Bidder that they intend to proceed with the final Qualified Bid submitted at Auction by the Back-Up Bidder, the Good Faith Deposit of the Back-Up Bidder shall be transferred to a trust account at Gibbons P.C. in accordance with directions to be provided, together with any additional amounts such that the final Good Faith Deposit reflects ten (10) percent of the Back-Up Bidder's final bid at Auction. All other Qualified Bidders shall be entitled to request the return of their Good Faith Deposits from their counsel at the conclusion of the Auction;

H.  Provide that such bid shall be open and irrevocable until the earlier of: (a) such bid being determined by the Debtors not to be a Qualified Bid; (b) if such bid is not chosen by the Debtors at the Auction to be the Successful Bid or Back-Up Bid (as each such term is defined below), the date of entry by the Bankruptcy Court of an order approving the Sale to another Qualified Bidder; (c) if such bid is chosen by the Debtors to be the Successful Bid, the date which is the earlier to occur of: (i) the closing of the Sale to such Successful Bidder, and (ii) five (5) Business Days following the date the order approving the Sale to the Successful Bidder shall have become a final, non-appealable, order ("**Final Order**"); (d) if such bid is chosen by the Debtors to be the Back-Up Bid, the date which is the earlier to occur of: (i) the date of closing on the Sale to the Successful Bidder, and (ii) twenty-five (25) Business Days following the date the order approving the Sale to the Successful Bidder shall have become a Final Order; provided, that if the Successful Bidder shall fail to close on its purchase of the Purchased Assets during the period set forth above, (x) the Back-Up Bid shall continue to remain open and irrevocable, (y) the Back-Up Bidder, at the Debtors' discretion, shall be deemed to be the Successful Bidder, and (z) it shall close on the Sale within ten (10) Business Days of becoming the Successful Bidder;

I.  (i) Include an acknowledgement and representation that the Qualified Bidder has had an opportunity to conduct all due diligence regarding the Assets prior to submitting its bid and that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or assets in making its bid, and (ii) confirms the Qualified Bidder's completion of all due diligence required by such Qualified Bidder in connection with the Sale and does not include any due diligence contingencies;

J.  Does not contain any financing contingencies or any other contingencies not set forth in the Stalking Horse Asset Purchase Agreement or Form Template Purchase Agreement, as applicable;

K.  Provide evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) evidencing the authority of the Qualified Bidder to make a binding and irrevocable Qualified Bid and to consummate the Sale if such Qualified Bidder is the Successful Bidder or Back-Up Bidder, as such bid may be improved prior to or at the Auction;

L.  Confirm that the Sale will close no later than May 31, 2019;

M.  If the Qualified Bidder was formed in whole or part for the purpose of acquiring all or part of the Assets, provides evidence which is reasonably satisfactory to the Debtors, in their discretion, regarding the major equity holder or sponsor of such Qualified Bidder demonstrating that such Qualified Bidder has, or will have access to, the financial resources needed to consummate the Sale if it becomes the Successful Bidder, and that the use of such resources to consummate the Sale has been authorized and approved by such entity's board of directors (or comparable governing body), provided, that the Debtors reserve the right to limit or waive this requirement for one or more Qualified Bidders in their discretion;

N.  Certifies that the Qualified Bidder has not, and is not, engaged in any collusion with respect to its bid or the Sale; except that the Debtors may facilitate a submission of a Qualified Bid by one or more unrelated Qualified Bidders or one or more entities may elect to jointly submit a Qualified Bid;

O.  Is not conditioned on the receipt of any third-party approvals or consents (excluding required Bankruptcy Court approval and required governmental, licensing or regulatory approval or consent, if any) other than third party approvals or consents that are deemed reasonable, as determined by the Debtors, in their discretion; and

P.  Sets forth the representatives that are authorized to appear and act on behalf of such Qualified Bidder in connection with the proposed transaction and the Auction.

All Qualified Bids, and the determination of same, will be considered by the Debtors (in consultation with the Official Committee of Unsecured Creditors); bids other than Qualified Bids will not be considered, although the Debtors reserve the right to work with non-conforming bids received by the Bid Deadline in order to resolve open issues until the commencement of the Auction. The Debtors may, in their discretion, evaluate bids on numerous grounds, including, but not limited to, any delay, additional risks (including closing risks) and added costs to the Debtors. For the avoidance of doubt, the presence of any governmental, licensing, regulatory or other approvals or consents in a bid or other contingencies, and the anticipated timing or likelihood of obtaining such approvals or consents or resolving such contingencies, may be grounds for the Debtors, in their discretion, to determine that such bid is not higher or otherwise better than any other Qualified Bid.

## VI.    Receipt of Qualified Bids

If the Debtors receive a bid prior to the Bid Deadline that is not a Qualified Bid, the Debtors (in consultation with the Official Committee of Unsecured Creditors) may, in their discretion, provide a Qualified Bidder with the opportunity to remedy any deficiencies following the Bid Deadline but not later than the commencement of the Auction.

If the Debtors receive only one (1) Bid that is a Qualified Bid, the Debtors, in their discretion, shall (i) notify all Potential Bidders and the Bankruptcy Court in writing that (a) the Auction is cancelled and (b) such Qualified Bid is the Successful Bid, and (ii) the Debtors shall seek authority at the Sale Hearing to consummate the Sale transactions with such Qualified Bidder contemplated by its Qualified Bidder Purchase Agreement.

If the Debtors receive two (2) or more Qualified Bids, the Debtors will conduct an auction (the "**Auction**"). If the Debtors designate a Stalking Horse Bidder, the Debtors shall within two (2) days thereof file a notice of such determination with the Bankruptcy Court, which notice shall (i) identify the Stalking Horse Bidder, (ii) set forth the amount of any Break-Up Fee and/or Expense Reimbursement granted to the Stalking Horse Bidder, (iii) include a copy of the Stalking Horse Bidder's Qualified Bidder Purchase Agreement, which competing Qualified Bidders must then use as the basis to submit their Qualified Bids, and (iv) shall include modifications to the bidding and auction procedures necessary to account for the Stalking Horse Bidder's Qualified Bid.

## VII.    Auction Process

The Auction, if any, will take place at the offices of Gibbons P.C., One Gateway Center, Newark, N.J. 07102, or at such other place and time as the Debtors shall notify all Qualified Bidders and other invitees, on May 14, 2019, commencing at 10:00 a.m. (prevailing Eastern Time).

If the Debtors proceed with the Auction, the following rules and procedures shall apply (subject to Article XII hereof):

A.    Prior to the Auction, the Debtors will select the highest Qualified Bid they have received to serve as the opening bid at the Auction (the "**Baseline Bid**");

B.    Prior to the commencement of the Auction, the Debtors will provide all Qualified Bidders (including by email or facsimile) with a written notice identifying all of the Qualified Bidders and which Qualified Bid has been chosen as the Baseline Bid;

C.    Only a Qualified Bidder, and its representatives and advisors, who has submitted a Qualified Bid shall be eligible to attend and make any subsequent bids at the Auction. Each Qualified Bidder must appear in person or through a duly authorized representative who has the legal authority to bind the Qualified Bidder at the Auction (and who must provide the Debtors with written evidence of such authority prior to the Auction which is reasonably satisfactory to the Debtors), or they shall not be entitled to attend or participate at the Auction;

D.    All Qualified Bids shall be placed on the record at the Auction, which shall be transcribed, videotaped or audiotaped in the discretion of the Debtors;

E.    Each Qualified Bidder will have the right to make additional modifications or improvements to its Qualified Bidder Purchase Agreement any time, prior to, or during, the Auction which are consistent with these Bidding Procedures and the Bidding Procedures Order;

F.    Bidding shall commence at the Baseline Bid. The first overbid at the Auction (the "**Minimum Initial Overbid**") shall be the amount of the Baseline Bid <u>plus</u> (i) the amount of any of the Break-Up Fee and Expense Reimbursement which would be due to any Stalking Horse Bidder if it is not the Successful Bidder if one is so designated by the Debtors, plus (ii) $100,000. Thereafter, a Qualified Bidder may increase its Qualified Bid in any amount as long as each subsequent bid (each, a "<u>Subsequent Overbid</u>") exceeds the previous highest bid by at least $100,000 of additional cash consideration;

G.    Each bid made by a Qualified Bidder at the Auction must continue to meet, satisfy or comply with the requirements of a Qualified Bid, other than those applicable to the submission of an initial Qualified Bid;

H.    The Auction will continue with each Qualified Bidder submitting additional Subsequent Overbids in each round of bidding, after being advised of the terms of the then highest bid and the identity of the Qualified Bidder who made such bid, in each round of bidding. Each Qualified Bidder must bid in each round or it shall be disqualified from further bidding at the Auction;

I.    The Auction will conclude when the Debtors, in their discretion, determine that they have received the highest or otherwise best offer from a Qualified Bidder (the "**Successful Bid**"). The next highest or otherwise best Qualified Bid submitted at the Auction, as determined by the Debtors, in their discretion, shall be the "**Back-Up Bid**". The Qualified Bidder submitting the Successful Bid shall be the "**Successful Bidder**" and the Qualified Bidder submitting the Back-Up Bid shall be the "**Back-Up Bidder**". In making these decisions, the Debtors,

in their discretion, will consider, without limitation, (i) the amount of the purchase price offered, (ii) the form of consideration offered, (iii) the Qualified Bidder's ability to close the Sale at the amount of its last bid made at the Auction and the timing thereof, (iv) evidence of good faith on the part of the Qualified Bidder, (v) the terms and conditions of the Qualified Bidder Purchase Agreement, (vi) the requirements as to the assumption and assignment of executory contracts, (vii) the ability to provide adequate assurance of future performance to the counterparties to executory contracts being assumed and assigned, (viii) the amount of any obligations the Debtors may have to a Stalking Horse Bidder for a Break-Up Fee or Expense Reimbursement and (ix) the net benefit to the Debtors' estates;

J.     Prior to the conclusion of the Auction or as soon as practicable thereafter, the Debtors and the Successful Bidder shall enter into a definitive agreement based upon the Successful Bidder's Qualified Bidder Purchase Agreement previously submitted by the Successful Bidder and will make all related revisions to the proposed order approving the Sale to the Successful Bidder, in each case to reflect the results of the Auction;

K.     All Qualified Bids shall remain open and irrevocable for the time periods set forth in Article V(I) above;

L.     If, after an order is entered by the Bankruptcy Court at the Sale Hearing approving the Successful Bid, the Successful Bidder shall fail to close the Sale because of a breach on the part of the Successful Bidder (after giving effect to any applicable cure periods or waivers), (x) the Back-Up Bidder shall automatically, and without the need for any action by the Debtors or the Bankruptcy Court, be deemed to be the Successful Bidder, (y) the Back-Up Bid shall be deemed to be the Successful Bid, and (z) the Debtors and Back-Up Bidder shall close the Sale within ten (10) Business Days following the date the Back-Up Bidder becomes the Successful Bidder, without the necessity of obtaining any further order of the Bankruptcy Court; and

M.     The Debtors, in their discretion, reserve the right, in their business judgment, to make one or more adjournments to the Auction or these Bidding Procedures to, among other things: (i) facilitate discussions between the Debtors, on the one hand, and one or more Qualified Bidders, on the other hand, (ii) allow the Debtors and/or Qualified Bidders to consider how they wish to proceed, (iii) give Qualified Bidders the opportunity to provide the Debtors with such additional documentation or information as the Debtors in their business judgment may require to determine such Qualified Bidder's ability to close the Sale, or (iv) facilitate higher or better bids.

**VIII.   Sale Hearing**

A hearing to consider approval of the Sale of the Assets to the Successful Bidder will take place on **May 16, 2019, at __:00 __.m. (prevailing Eastern time)**, before the Honorable Jack Sherwood in the United States Bankruptcy Court District of New Jersey. Following the conclusion of the Auction, with the consent of the Successful Bidder, or as otherwise directed by the Bankruptcy Court, the Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the docket. At the Sale Hearing, the Debtor shall present the Successful Bid to the Bankruptcy Court for approval and seek entry of an order authorizing and approving the Sale (the "**Sale Order**").

**IX.   Certain Additional Matters Concerning Good Faith Deposits**

Subject to Article X, the Good Faith Deposit of the Successful Bidder shall be applied to, and deducted from, the Successful Bidder's obligations under the Successful Bid at the closing of the Sale.  The Good Faith Deposit of the Back-Up Bidder shall be returned to the Back-Up Bidder as set forth in Article V(I). If the Back-Up Bidder is subsequently designated by the Debtors as the Successful Bidder as a result of the failure of the Successful Bidder to close on the Sale, the Back-Up Bidder shall be deemed to be the Successful Bidder and it shall comply with the terms of Article VI.  The Debtors and the Back-Up Bidder shall close the Sale within ten (10) business days of the Back-Up Bidder becoming the Successful Bidder. Subject to Article X, the Good Faith Deposit of the Back-Up Bidder shall be held by the Debtors until such closing and applied to its obligations at the closing of the Sale. The Debtors reserve all of their rights regarding the return of all Good Faith Deposits, and the failure by the Debtors to timely return any deposit(s) shall not serve as a claim for breach of any bid(s) or create any default in favor of any bidder(s).

**X.   Failure to Close**

If the Successful Bidder fails to consummate the transaction in accordance with the terms of the applicable agreement executed by the Successful Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason, the Successful Bidder shall forfeit its Good Faith Deposit to the Debtors and the Debtors shall maintain the right to pursue all additional available remedies, whether legal or equitable and be free to consummate the proposed transaction with the Back-Up Bidder at the highest price bid by the Back-Up Bidder at the Auction, without the need for an additional hearing or Order of the Bankruptcy Court. To the extent the Back-Up Bidder is deemed the Successful Bidder and fails to consummate the transaction in accordance with the terms of the applicable agreement executed by the Back-Up Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason, the Back-Up Bidder shall forfeit its Good Faith Deposit to the Debtors (and its counsel shall immediately turnover such Good Faith Deposit to the Debtors) and the Debtors shall maintain the right to pursue all additional available remedies, whether legal or equitable.

**XI.   Expenses**

Except to the extent provided for in the Stalking Horse Agreement and the Bidding Procedures Order, any Potential Bidders presenting bids shall bear their own expenses in connection with the proposed Sale, whether or not such Sale is ultimately approved.

## XII.    Reservation of Rights

Except as otherwise provided in the Bidding Procedures Order or these Bidding Procedures, the Debtors reserve the right as they may reasonably determine to be in the best interests of their estates to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) remove the Assets from the Sale; (vi) waive terms and conditions set forth herein with respect to all Potential Bidders; (vii) impose additional terms and conditions with respect to all Potential Bidders; (viii) extend the deadlines set forth herein; (ix) on prior notice to the extent practicable under the circumstances, adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; (x) modify the Bidding Procedures, as the Debtors may, in their sole discretion, determine to be in the best interests of their estates; or (xi) withdraw the Motion at any time prior to the Sale Hearing with or without prejudice.

**EXHIBIT 2**

**GIBBONS P.C.**
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
E-mail: kgiannelli@gibbonslaw.com
      mconlan@gibbonslaw.com
      btheisen@gibbonslaw.com

Counsel to the Debtors
and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC.,<br>et al.,<br><br>              Debtors.[1] | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Jointly Administered) |

**NOTICE OF AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE THAT:**

    1.    On March 25, 2019, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion (the "Motion")[2] [Docket No. 335] for entry of orders, among other things (i) approving bidding procedures (the "Bidding Procedures") in connection with the sale (the "Sale") of substantially all assets of Debtors' Eastern Freight Ways, Inc. ("Eastern"), Carrier Industries, Inc. ("Carrier") and certain rolling stock owned by New England Motor Freight, Inc. ("NEMF") (collectively, the "Assets"), (ii) scheduling an auction and a hearing (the "Sale Hearing") to consider approval of the Debtors entering into a Sale, (iii) approving the form and manner of notice thereof and (iv) granting related relief.  The

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2

Motion additionally requests entry of an order or orders (i) authorizing and approving a Sale free and clear of liens, claims, encumbrances and interests, (ii) approving the assumption and assignment of executory contracts and unexpired leases and (iii) granting related relief.

2.      The Debtors are seeking to sell the Assets to the Successful Bidder or Back-Up Bidder.  Approval of the sale of Assets to either the Successful Bidder or Back-Up Bidder may result in, among other things, the assumption, assignment and/or transfer by the Debtors of certain executory contracts and unexpired leases.  If you are a party to an executory contract or lease with one or more of the Debtors, you will receive a separate notice that contains relevant dates and other information that may impact you as a party to an executory contract or lease.

3.      Notwithstanding anything to the contrary in the Sale Motion, Bidding Procedures, any other orders entered by the Court, or otherwise, without the necessity of a further hearing or authorization of the Court, the Debtors, in their discretion, shall be authorized (but not required) to accept a stalking horse bid from a Qualified Bidder (the "Stalking Horse Bid") and enter into a purchase agreement (the "Stalking Horse Purchase Agreement") with such Qualified Bidder (the "Stalking Horse Bidder") if the Debtors determine, in their discretion, that entry into such a Stalking Horse Purchase Agreement on such terms and conditions that the Debtors, in the Debtors' discretion, reasonably determines are in the best interests of the estates.  If the Debtors designate a Stalking Horse Bidder, the Debtors shall within two (2) days thereof file a notice of such determination with the Bankruptcy Court, which notice shall (i) identify the Stalking Horse Bidder, (ii) set forth the amount of any Break-Up Fee and/or Expense Reimbursement proposed to the Stalking Horse Bidder, (iii) include a copy of the Stalking Horse Bidder's Qualified Bidder Purchase Agreement, which competing Qualified Bidders must then use as the basis to submit their Qualified Bids, and (iv) shall include modifications to the Bidding Procedures and Auction procedures necessary to account for the Stalking Horse Bid.

4.      On April 8, 2019, the United States Bankruptcy Court for the District of New Jersey entered the Bidding Procedures Order.  Pursuant to the Bidding Procedures Order, if the Debtors receive more than one Qualified Bids (as defined in the Bidding Procedures), the auction for the Assets shall take place on **May 14, 2019, at 10:00 a.m. (prevailing Eastern time)**, at the offices of Gibbons P.C., One Gateway Center, Newark, New Jersey 07102, or at such other place and time as the Debtors shall notify all Qualified Bidders and other invitees.  Only parties that have submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the Bidding Procedures Order as Exhibit 1, by no later than **May 9, 2019, at 4:00 p.m. (prevailing Eastern time)** (the "Bid Deadline"), may participate at the Auction.  Any party that wishes to take part in this process and submit a bid for the Assets must submit its bid prior to the Bid Deadline and in accordance with the Bidding Procedures.  Failure to abide by the Bidding Procedures may result in a bid being rejected.

5.      The Sale Hearing to consider approval of the Sale of the Assets to the Successful Bidder or Back-Up Bidder free and clear of all liens, claims and encumbrances will be held before the Honorable Jack Sherwood in the United States Bankruptcy Court District of New Jersey on **May 16, 2019, at __:__ __.m. (prevailing Eastern time)**, or at such other time thereafter as counsel may be heard.  The Sale Hearing may be adjourned from time to time and notice of such adjournment will be filed on the Court's docket.

1130/32288-001 Current/20644233v8

2716672.2 115719-100281

6.    Objections, if any, to the Sale, or the relief requested in the Motion (other than with respect to cure amounts and adequate assurance which are subject to a separate notice) must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the Clerk of the Bankruptcy Court, on or before **May 6, 2019 at 4:00 p.m. (prevailing Eastern time)**; and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern time) on the same day, upon (i) counsel for the Debtors, Gibbons P.C., One Gateway Center, Newark, N.J. 07102 (Attn: Karen Giannelli, Esq. (kgiannelli@gibbonslaw.com); and (ii) counsel for the Official Committee of Unsecured Creditors, Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068 (Attn: Mary E. Seymour, Esq (mseymour@lowenstein.com) and Elliott Greenleaf, P.C. (Attn: Rafael X. Zahralddin-Aravena, Esq. (rxza@elliottgreenleaf.com) (collectively, the "Bid and Objection Notice Parties").

**7.    UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER HEARING AND NOTICE.**

This Notice and the Sale Hearing is subject to the complete terms and conditions of the Motion, the Bidding Procedures Order, and the Bidding Procedures, which shall control in the event of any conflict and the Debtors encourage parties-in-interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Assets or in obtaining a copy of any related document, subject to any necessary confidentiality agreement, should contact Mark Karbiner, Senior Director, Phoenix Capital Resources, 110 Commons Court, Chadds Ford, PA 19317 (mkarbiner@phoenixcapitalresources.com). In addition, copies of the Motion, the Bidding Procedures Order, and this Notice can be found: (a) on the Court's website and (b) with the Clerk of the Bankruptcy Court In addition, copies of the documents may be viewed on the internet free of charge on the Debtors' Claims Agent's website for the chapter 11 cases (https://www.donlinrecano.com/Clients/nemf/index).

Dated: April 8, 2019          **GIBBONS P.C.**

By:/s/ Karen A. Giannelli
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey  07102
Telephone:  (973) 596-4500
Facsimile:  (973) 596-0545
E-mail:  kgiannelli@gibbonslaw.com
            mconlan@gibbonslaw.com
            btheisen@gibbonslaw.com

*Counsel to the Debtors*
*and Debtors-in-Possession*

1130/32288-001 Current/20644233v8

2716672.2 115719-100281

**Exhibit 3** (to Bidding Procedures Order)

[Notice of Assumption and Assignment]

.

5

**GIBBONS P.C.**
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
E-mail: kgiannelli@gibbonslaw.com
        mconlan@gibbonslaw.com
        btheisen@gibbonslaw.com

Counsel to the Debtors
and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| NEW ENGLAND MOTOR FREIGHT, INC., et al., | Case No. 19-12809 (JKS) |
| | (Jointly Administered) |
| Debtors.[1] | |

## <u>NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.       On April ___, 2019, the United States Bankruptcy Court for the District of New Jersey (the "<u>Bankruptcy Court</u>") entered an order (the "<u>Bidding Procedures Order</u>"),[2] pursuant to sections 105(a), 363, 365, 503, 506, 507 and 552 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure and Local Rule 6004-1, in the chapter 11 cases of the above-captioned debtors and debtors in possession (the "<u>Debtors</u>") approving, among other things, the fixing of cure amounts (the "<u>Cure Amounts</u>") related to the Debtors' assumption, assignment and/or transfer of certain

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

executory contracts, unexpired leases, and other agreements (the "Executory Contracts and Unexpired Leases") listed on **Exhibit A** annexed hereto in connection with the sale (the "Sale") of substantially all assets of Debtors' Eastern Freight Ways, Inc. ("Eastern"), Carrier Industries, Inc. ("Carrier") and certain rolling stock owned by New England Motor Freight, Inc. ("NEMF") (collectively, the "Assets"). The Debtors will assume, assign, and/or transfer the Executory Contracts and Unexpired Leases to the Successful Bidder or Back-Up Bidder for the Assets under the bidding procedures (the "Bidding Procedures") approved by the Bankruptcy Court and attached to the Bidding Procedures Order as Exhibit 1.  A hearing to consider approval of the Sale of the Assets to the Successful Bidder or Back-Up Bidder free and clear of all liens, claims and encumbrances will be held before the Honorable Jack Sherwood in the United States Bankruptcy Court District of New Jersey on **May 16, 2019, at ___:___ ___.m. (prevailing Eastern time)**, or at such other time thereafter as counsel may be heard (the "Sale Hearing").

2.      The Debtors believe that any and all defaults (other than the filing of the Chapter 11 Cases) and actual pecuniary losses under the Executory Contracts and Unexpired Leases can be cured by the payment of the Cure Amounts listed on **Exhibit A** annexed hereto.  If no amount is listed on the Notice of Assumption and Assignment with respect to an Executory Contract or Unexpired Lease, the Debtors believe that there is no Cure Amount applicable to such Executory Contract or Unexpired Lease.

3.      Any objections to (i) the assumption, assignment and/or transfer of an Executory Contract or Unexpired Lease, or (ii) the amount asserted as the Cure Amount (each, a "Cure Amount/Assignment Objection"), must be in writing and set forth with specificity the nature of the objection and the cure amount that the objecting party believes should be paid in connection with the assumption of the Executory Contract or Unexpired Lease (the "Claimed Cure Amount").  In addition, if the Debtors or the Successful Bidder identify additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned to the Successful Bidder or Back-Up Bidder not set forth in this original Notice of Assumption and Assignment, the Debtors shall promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional executory contracts and unexpired leases.

4.      Unless the non-Debtor party to an Executory Contract or Unexpired Lease files an objection (the "Cure Amount/Assignment Objection") to its scheduled Cure Amount and/or (ii) the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease by **May 6, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "Cure/Assignment Objection Deadline") and serves a copy of the Cure Amount/Assignment Objection so as to be received no later than the Cure/Assignment Objection Deadline on  (i) counsel for the Debtors, Gibbons P.C., One Gateway Center, Newark, N.J. 07102 (Attn: Karen Giannelli, Esq. (kgiannelli@gibbonslaw.com); and (ii) counsel for the Official Committee of Unsecured Creditors, Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068 (Attn: Mary E. Seymour, Esq (mseymour@lowenstein.com) and Elliott Greenleaf, P.C. (Attn: Rafael X. Zahralddin-Aravena, Esq. (rxza@elliottgreenleaf.com) (collectively, the "Objection Notice Parties"), then such non-Debtor party shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract or Unexpired Lease and the Debtors shall be entitled to rely solely upon the Cure Amount and (ii) subject to the procedures for objecting to adequate assurance of future

-2-

performance as set forth below, be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease to the Successful Bidder or Back-Up Bidder and shall be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder or Back-Up Bidder or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or additional conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract or Unexpired Lease.

5.    Cure Objections shall set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount"), the specific types and dates of the alleged defaults, pecuniary losses and conditions to assignment, and the support therefor and for all other objections to assumption and assignment.  Upon receipt of a Cure Amount/Assignment Objection, the Debtors, with the approval of the Successful Bidder, may resolve any Cure Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court.  In the event that the Debtors, the Successful Bidder or the Back-Up Bidder (as applicable), and any objecting party are unable to consensually resolve any Cure Objection prior to the Sale Hearing, the Debtors shall request that the Court resolve such Cure Objection at the Sale Hearing or at such later date as is set by the Court.

6.    Promptly after the conclusion of the Auction, the Debtors will serve a notice identifying the Successful Bidder and Back-Up Bidder (the "Notice") to the non-Debtor parties to the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid and Back-Up Bid. Objections of any Non-Debtor party to an Executory Contract or Unexpired Lease related solely to the identity of and adequate assurance of future performance by the Successful Bidder must (x) be in writing; (y) state with specificity the nature of such objection, and (z) be filed with the Court and properly served on the Objection Notice Parties so as to be received prior to **4:00 p.m. (prevailing Eastern Time) on May 15, 2019** (the "Adequate Assurance Objection Deadline"); provided, however, that in the event the Debtors obtain a Stalking Horse Bid and provide notice of the identity of the Stalking Horse Bidder prior to the Sale Objection Deadline, any objection of a Non-Debtor party to an Executory Contract or Unexpired Lease related to the Stalking Horse Bid (including, with respect to the identity of and adequate assurance of future performance provided by the Stalking Horse Bidder) must be filed as a Cure Amount/Assignment Objection by the Cure/Assignment Objection Deadline.

7.    The Successful Bidder or the Back-Up Bidder, as the case may be, may determine to add or exclude any Executory Contract or Unexpired Lease from the list of Executory Contracts and Unexpired Leases to be assumed and assigned under the Purchase Agreement or Stalking Horse Purchase Agreement no later than one (1) business day prior to the Sale Hearing, or, if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such contract is greater than the Cure Amount proposed by the Debtors, no later than five (5) business days following the Court's determination.

8.    If no Cure Amounts are due under an Executory Contract or Unexpired Lease, or if the non-Debtor Party agrees to the Cure Amounts listed on Exhibit A hereto, and the non-Debtor party to the Executory Contract or Unexpired Lease does not otherwise object to the Debtors' assumption, assignment and/or transfer of the Executory Contract or Unexpired Lease, no further action needs to be taken on the part of that non-Debtor party.

2716672.2 115719-100281

9.      Copies of the Bidding Procedures Order and other relevant documents can be found: (a) on the Court's website and (b) with the Clerk of the Bankruptcy Court. In addition, copies of the documents may be viewed on the internet free of charge on the Debtors' Claims Agent's website for the chapter 11 cases (https://www.donlinrecano.com/Clients/nemf/index).

10.      The Debtors' decision to sell, assign and/or transfer to the Successful Bidder or Back-Up Bidder the Executory Contracts and Unexpired Leases is subject to Court approval and the Sale closing. Accordingly, absent such Sale closing, the Executory Contracts and Unexpired Leases shall not be deemed to be sold, assigned and/or transferred, and shall in all respects be subject to further administration under the Bankruptcy Code. The inclusion of any document on the list of Executory Contracts and Unexpired Leases shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved). Nor shall the inclusion of any document constitute an admission of liability by the Debtors or their estates.

Dated: _____, 2019

GIBBONS P.C.

By:/s/ Karen A. Giannelli
    Karen A. Giannelli, Esq.
    Mark B. Conlan, Esq.
    Brett S. Theisen, Esq.
    One Gateway Center
    Newark, New Jersey  07102
    Telephone:  (973) 596-4500
    Facsimile:  (973) 596-0545
    E-mail:  kgiannelli@gibbonslaw.com
             mconlan@gibbonslaw.com
             btheisen@gibbonslaw.com

    *Counsel to the Debtors
    and Debtors-in-Possession*

-4-

2716672.2 115719-100281

**Exhibit A** (to Notice of Assumption and Assignment)

**[Executory Contracts and Unexpired Leases]**

[To be provided]

United States Bankruptcy Court
District of New Jersey

In re:                                                              Case No. 19-12809-JKS
New England Motor Freight, Inc.                                     Chapter 11
        Debtor

## CERTIFICATE OF NOTICE

District/off: 0312-2        User: admin              Page 1 of 1           Date Rcvd: Apr 08, 2019
                           Form ID: pdf903          Total Noticed: 7

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Apr 10, 2019.
db            +New England Motor Freight, Inc.,   1-71 North Ave E,   Elizabeth, NJ 07201-2958
aty           +Brent C. Strickland,   Whiteford, Taylor & Preston L.L.P,   7501 Wisconsin Avenue,Suite 700W,
               Bethesda, MD 20814-6521
aty           +Gibbons, P.C.,   One Gateway Center,   Newark, NJ 07102-5321
aty            Jeffrey L. Nagel,   Gibbons P.C.,   One Pennsylvania Plaza, 37th Floor,
               New York, NY  10119-3701
aty           +Todd M. Brooks,   Whiteford, Taylor & Preston L.L.P.,   7 St. Paul Street, Suite 1500,
               Baltimore, MD 21202-1636
aty           +WASSERMAN, JURISTA & STOLZ, P.C.,   110 Allen Road,   Suite 304,
               Basking Ridge,, NJ 07920-4500
aty           +Whiteford Taylor & Preston,   Seven Saint paul St. Ste 1800,   Baltimore, MD 21202-1639

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                              TOTAL: 0

            ***** BYPASSED RECIPIENTS *****
NONE.                                                                              TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 10, 2019                          Signature:   /s/Joseph Speetjens

---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on April 8, 2019 at the address(es) listed below:
NONE.                                                                              TOTAL: 0