**GIBBONS P.C.**
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
E-mail: kgiannelli@gibbonslaw.com
mconlan@gibbonslaw.com
btheisen@gibbonslaw.com
*Counsel to the Debtors and
Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Jointly Administered)<br><br>**Related Docket Nos.: 266, 378, 436, and 440** |

**DEBTORS' OMNIBUS OBJECTION TO MOTIONS FOR RELIEF FROM**
**AUTOMATIC STAY FILED BY AUTO LIABILITY PLAINTIFFS**

The above-captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned counsel, submit this omnibus objection (the "Objection") to the following motions for relief from the automatic stay (collectively, the "Motions for Relief from Stay"):

- Jalil Walters and Rasheeda Carter Motion [Dkt. No. 266];

- Daniel Rinaldi Motion [Dkt. No. 378];

- New Jersey Manufacturers Insurance Company Motion [Dkt. No 436]; and

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

- Michael Singley Motion [Dkt. No. 440].

The Movants are plaintiffs in lawsuits seeking damages against the Debtors (and in many cases their employees or former employees) for certain automobile-related claims allegedly occurring in the course of the drivers' employment with the Debtors (the "Auto Liability Claims"). In support of this Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT AND BACKGROUND

As a threshold matter, the Motions for Relief from Stay are inextricably intertwined with the Debtors' own *Motion for an Order (I) Preliminarily Enjoining Certain Actions Against Non-Debtors or, (II) In the Alternative, Declaring that the Automatic Stay Applies to Such Actions and (III) Granting a Temporary Restraining Order Pending a Full Hearing on the Motion* [Adv. Pro. No. 19-01119 (JKS), Dkt. 3], and the Debtors hereby incorporate by reference the arguments set forth in the motion, supporting declarations, exhibits and submissions filed in that adversary proceeding (collectively, the "Temporary Injunction Motion")[2] into this Objection to the Motions for Relief from Stay. For the reasons set forth herein and in the Temporary Injunction Motion, the Motions for Relief should be denied.

The automatic stay is the single most important bankruptcy protection a debtor enjoys. As a stay of actions against a debtor's property, it prevents the dismemberment of the estate and facilitates two basic policies underlying the Bankruptcy Code: (i) the equitable treatment of creditors and other parties-in-interest; and (ii) providing the debtor the time and opportunity to administer the case. Moreover, the ultimate beneficiaries of the automatic stay are not only the debtor, but creditors and other parties-in-interest. Here, the Movants have failed to demonstrate an entitlement to relief from the automatic stay at this time. Without an omnibus process to handle

---

[2] A copy of the Temporary Injunction Motion is attached hereto as **Exhibit A**.

2

Auto Liability Claims, the Debtors' estates risk additional liability. Further, from administrative standpoint the granting of stay relief without a procedure in place will undoubtedly result in a flood of additional lift stay motions, which will necessitate the estates spending tens of thousands of dollars in unnecessary attorneys fees. Ultimately, because there is no immediate need for relief and <u>Movants are not offering to waive their rights to recover estate property</u>, the balance of harms tilts heavily against stay relief. Thus, the Motions for Relief from Stay are unsupported by evidence necessary to carry Movants' *prima facie* burdens of proof under 11 U.S.C. § 362(d)(1), and should be denied.

## **ARGUMENT**

### I. **The Movants have Failed to Satisfy Their Initial Burden to Demonstrate "Cause" to Lift the Automatic Stay.**

1. The automatic stay is "one of the most fundamental protections provided [to a debtor] by the bankruptcy laws." *Midlantic Nat'l Bank. v. N. J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1983); *Izzarelli v. Rexene (In re Rexene)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). Significantly, the stay also protects creditors. *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1992).[3] When determining if "cause" exists, courts "generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant." *Prince v. CMS Wireless* LLC, 2012 U.S. Dist. LEXIS 39335 (E.D. Tex. Mar. 22, 2012) (internal citations and quotations omitted). To that end, "[c]ause may exist whenever the stay harms the creditor and lifting the stay will not unjustly harm the debtor or other creditors." *Id.*

---

[3] *See also* H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 49 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840-41, 5963. The legislative history of Bankruptcy Code section 362 indicates that Congress intended that the scope of the automatic stay be sweeping in order to effectuate its protective purposes on behalf of both debtors and creditors.

3

2.  If stay relief is granted to the Movants (who represent only a small fraction of creditors asserting Auto Liability Claims—there are approximately 73 active lawsuits and many more pre-litigation claims), it will open the floodgates to dozens of additional lift stay motions, thereby undermining the Debtors' ability to preserve and maximize the value of the estates for all creditors through an orderly liquidation and wind-down, and to minimize the exposure to additional liabilities. In the Temporary Injunction Motion, the Debtors seek a short "breathing spell" to formulate a uniform, fair and orderly process that will allow the Debtors to transition the defense of the Auto Liability Claims over to the excess indemnity Carriers, Protective and United Fire, in a manner that will not create additional obligations or liability for the estates. Continuing the automatic stay as to the Auto Liability Claims will not harm the Movants, but will provide a critical benefit to the estates.

3.  The Motions for Relief from Stay are predicated on relief under 11 U.S.C. § 362(d)(1), which enables a party in interest to request relief from the automatic stay upon a showing of "cause." Every party seeking relief from the automatic stay under § 362(d)(1) must carry the initial burden of showing that it is entitled to relief before the debtor is obligated to go forward with its proof. *E.g., Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990); *Rexene*, 141 B.R. at 577. Otherwise, a debtor would be forced to prove a negative—that cause does not exist. *Rexene*, 141 B.R. at 577 (citation omitted). Thus, where the movant fails to make a *prima facie* case of cause, a court should deny relief from the automatic stay without requiring any showing by the debtor that it is entitled to continued protection. *Sonnax*, 907 F.2d at 1295.

4.  The Movants fail to submit any evidence, attaching only copies of pleadings and declarations parroting statutory requirements for stay relief, noting the existence of pending personal injury actions, and making unsubstantiated statements about the *Sonnax* factors, and the unspecified

4

2723705.1 115719-100281

harm they would suffer from a short continuation of the stay. Failure to prove a *prima facie* case requires denial of the requested relief, and accordingly the Motions for Relief from Stay must be denied for failure to prove *a prima facie* case. *See In re Aleris Int'l, Inc.,* 456 B.R. 35, 46-47 (Bankr. D. Del. 2011) (quoting *In re Sonnax Indus., Inc.,* 907 F.2d 1280, 1285 (2d. Cir. 1990)) ("If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.").

5. The Movants gloss over the *Sonnax* factors,[4] asserting without any real analysis that many of the factors are met. [See, e.g., Dkt. 378-5 at 8-9]. To the contrary, the applicable factors weigh against stay relief under these circumstances. First, considering the vast number of pending actions and potential actions, judicial economy is not served by a piecemeal lift-stay process; rather, the process for continuing the prosecution of Auto Liability Claims against the Debtors should be formulated under this Court's oversight. Without an orderly procedure and agreement between and among the Debtors and their Carriers as to that process, the Debtors' estates will face additional liability and administrative expense in addressing a flood of individual lift-stay requests. Next, notwithstanding Mr. Rubenstein's continued employment in his pre-petition role as in-house counsel, the stark reality is that this is a liquidation case and at some point

---

[4] The Second Circuit has recognized the following factors to consider in connection with a request for stay relief to continue pending litigation:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax Indus., Inc.,* 907 F.2d at 1286 (citing *In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984)).

5

Mr. Rubenstein's position will be eliminated. Moreover, in cases handled by outside counsel, the Debtors will incur administrative expense costs. Finally, at the present time, the Carriers have not assumed full responsibility for defending the Auto Liability Claims.[5] All of the foregoing factors clearly prejudice the interests of other creditors.

6. The Movants further fail to show that "[the] balance of hardships from not obtaining relief tips significantly in its favor." *See In re Aleris,* 456 B.R. at 47. "The three prongs of the balancing test are (1) whether any great prejudice to either the bankrupt estate or the debtor will result from lifting the stay, (2) whether the hardship to the non-bankrupt party by the maintenance of the stay considerably outweighs the hardship to the debtor if the stay is lifted, and (3) whether it is probable that the creditor will prevail on the merits of its case against the debtor." *Id.* at 47-48 (citation omitted).

*The Debtors Will Suffer Great Prejudice From Lifting the Stay*

7. With respect to the first factor, the Movants assert that the stay should be lifted because insurance coverage exists—thus implying no prejudice to the Debtors. [*See, e.g.,* Dkt. 378 at 9-10; Dkt. 440 at 4]. However, as explained in the Temporary Injunction Motion, the terms of the Debtors' Excess Indemnity Contracts[6] and MCS-82 bonds require the Debtors to shoulder the costs of defense and administration of claims, and to pay all amounts under the $500,000 Self-Retention. [E.g., Temporary Injunction Mot., (Reply), Adv. Pro. No. 19-01119, Dkt. 14]. Thus, the existence of a limited fund for the eventual payment of any liquidated judgment within the Self-Retention does not obviate the immediate harm to the Debtors' estates if the stay is lifted. Moreover, many courts have held that the automatic stay is properly extended to actions against non-debtors where the debtor appeared to be the real defendant, an adverse judgment would have serious consequences for the debtor's estate, and where

---

[5] The Debtors, however, have been engaged in discussions with the Carriers and hope to formulate an agreed procedure for transitioning the defense obligations to the Carriers as soon as practicable.

[6] Capitalized terms not defined herein shall have the meanings ascribed to them in the Temporary Injunction Motion.

the debtor could suffer irreparable harm from the economic impacts and collateral estoppel implications of the action. *See In re Am. Film Techs, Inc.,* 175 B.R. 847, 855 (Bankr. D. Del. 1994) (staying wrongful discharge action against present and former directors of the debtor corporation which implicated the debtor's indemnification obligations and exposed the debtor to collateral estoppel prejudice); *In re Continental Airlines, Inc.,* 177 B.R. 475, 479-81 (D. Del. 1993) (upholding the bankruptcy court's extension of the automatic stay to bar the prosecution of stockholder suits against non-debtor officers and directors because the debtor was the "real defendant").[7]

8. The cases noted above squarely apply in this instance. The Debtors are the true target in the litigations that are the subject of the Motions for Relief from Stay. Movants admit as much, and are not suggesting that they would waive any rights to recover from the Debtors in favor of insurance proceeds only.[8] [*See, e.g.,* Dkt. 378 at 10; Dkt. 436 at 3].

*The Movants Will Suffer Minimal Hardship if the Stay Is Maintained*

9. The Movants fail to clearly explain the potential hardship they might suffer if the stay is maintained—or extended to the Protected Drivers and the insurance/indemnity Carriers for a short period of time pending the formulation of a consensual process to transfer the defense and administrative burdens over to the Carriers—and further fail to provide any evidence substantiating any potential hardship. The Debtors are not seeking to cut off any of the Movants' substantive rights. Moreover, because the Debtors are liquidating rather than reorganizing, it is in the Debtors' interest to resolve this issue as soon as practicable, so they can continue working towards a plan of liquidation and distribution.

---

[7] *See also In re Johns-Manville Corp.,* 26 B.R. 420, 428 (Bankr. S.D.N.Y. 1983), *aff'd* 40 B.R. 219 (S.D.N.Y. 1984), *rev'd in part on other grounds,* 41 B.R. 926 (S.D.N.Y 1984) (staying a class action alleging securities law violations against current and former directors where the litigation's "true object is the debtor itself' and an adverse judgment . . . would have serious consequences for the debtor's estate.").

[8] It should be noted that Movants' assertion that "the Debtors are going to have [sic] hold money in reserve to account for potential unsecured claims of [Auto Liability Claim] plaintiffs" has no basis in law. [See Dkt. 378 at 9; *see also* Dkt. 440 at 8]. Movants' claims are contingent, unliquidated and unsecured; if ultimately successful, any claims against the Debtors' estates will receive a distribution pro rata with all other general unsecured claims.

Thus, the Movants fail to show how the continued maintenance of the automatic stay for a reasonably short period of time "considerably outweighs" the hardship to the Debtors, set forth above, if the stay is lifted now. *See In re Aleris Int'l, Inc.,* 456 B.R. at 48. Therefore, the second factor in no way weighs in favor of lifting the automatic stay.

*There Is No Evidence That Movants Will Prevail on the Merits of Their Claims*

10. Finally, the Movants offer no support as to why they might prevail on the merits of their Auto Liability Claims against the Debtors. Therefore, the third factor also clearly weighs against lifting the stay.

## CONCLUSION

For the reasons stated herein and in the Temporary Injunction Motion, the Debtors respectfully request that the Court deny the Motions for Relief from Stay.

Dated: April 15, 2019

Respectfully submitted,

**GIBBONS P.C.**

By: */s/ Brett S. Theisen*
    Karen A. Giannelli, Esq.
    Mark B. Conlan, Esq.
    Brett S. Theisen, Esq.
    One Gateway Center
    Newark, New Jersey 07102
    Telephone: (973) 596-4500
    Facsimile: (973) 596-0545
    E-mail: kgiannelli@gibbonslaw.com
           mconlan@gibbonslaw.com
           btheisen@gibbonslaw.com

*Counsel to the Debtors*
*and Debtors-in-Possession*