| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** |
| Caption in Compliance with D.N.J. LBR 9004-1 |
| **GIBBONS P.C.** <br> Karen A. Giannelli, Esq. <br> Mark B. Conlan, Esq. <br> Brett S. Theisen, Esq. <br> One Gateway Center <br> Newark, New Jersey  07102 <br> Telephone:  (973) 596-4500 <br> Facsimile:   (973) 596-0545 <br> E-mail:  kgiannelli@gibbonslaw.com <br>      mconlan@gibbonslaw.com <br>      btheisen@gibbonslaw.com <br><br> *Counsel to the Debtors and Debtors-in-Possession* |
| In re: <br><br> **NEW ENGLAND MOTOR FREIGHT, INC., *et al.*,[1]** <br>         Debtors. |

Chapter 11

Honorable John K. Sherwood

Case No. 19-12809

(Jointly Administered)

### DECLARATION OF VINCENT COLISTRA IN SUPPORT OF DEBTORS' DESIGNATION OF ESTES EXPRESS LINES AS STALKING HORSE BIDDER AND GRANT OF BID PROTECTIONS

I, VINCENT COLISTRA, pursuant to 28 U.S.C. §1746, declare as follows:

1. I am the Chief Restructuring Officer (the "CRO") for the above-captioned Debtors (the "Debtors" or "Company").

2. My firm, Phoenix Management Services, LLC. ("Phoenix") was retained by the Debtors in December 2018 to assist in their debt consolidation and restructuring efforts.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

Subsequently, on February 6, 2019, the Debtors hired me as CRO to oversee the bankruptcy proceedings, through Phoenix's wholly owned subsidiary, Phoenix Executive Services LLC, which was approved by the Court on February 13, 2019.  I am a Senior Managing Director of Phoenix, which I joined in 1997 and became a shareholder in 1998.  I have managed and participated in over 60 engagements since joining Phoenix that involved developing and implementing solutions in complex corporate restructurings and reorganizations (both out of Court and through Bankruptcy proceedings), operational and financial turnarounds, re-financing, the raising of senior debt, second lien debt, subordinated debt with warrants, as well as representing strategic and financial buyers and sellers of businesses in both the public and private sector.

3. In my capacity as CRO for the Debtors, I am familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records and have first-hand knowledge of the same.  In reaching certain of the opinions set forth herein, I have relied also on the advice, analysis, and facts provided to me by my staff, the Debtors' employees, and my legal advisors.  In my experience as a CRO, I ordinarily rely on all of the foregoing sources of information in the course of managing a company's affairs and in forming opinions necessary to make determinations in furtherance of such management obligations.

4. I submit this Declaration in support of the Debtors' *Notice of (I) Stalking Horse Designation; (II) Filing of Stalking Horse APA with Bid Protections; and (III) Filing of Amended Bidding Procedures,* which is filed contemporaneously herewith.

I. The Asset Purchase Agreement by and between among NEMF, Eastern, Carrier and Estes dated April 17, 2019 (the "Stalking Horse APA") provides for the purchase of substantially all assets of Debtors' Eastern Freight Ways, Inc. ("Eastern"), Carrier Industries, Inc.

("Carrier") and certain rolling stock owned by New England Motor Freight, Inc. ("NEMF") (collectively, the "Assets").

5. The Debtors entry into the Stalking Horse APA is in the best interests of the Debtors, the Debtors' estates, creditors of the Debtors' estates, and other parties in interest.

6. I believe the Stalking Horse APA represents the highest or otherwise best transaction available to the Debtors at the present time. The sale is in the best interests of the Debtors and their estates because it provides a greater recovery for the Debtors' estates than would be available by any other alternative.

7. In addition, the proposed bidding protections (i.e., the break-up fee of $450,000 and expense reimbursement of $75,000) were (a) necessary to induce Estes to negotiate and agree to the term of the Stalking Horse APA and continue to commit significant capital through at least the conclusion of the auction, without any assurance the Debtors' marketing efforts will not yield a higher or otherwise better offer, and (b) consistent with bid protections offered in comparable transactions. Without the grant of bid protections, Estes has expressed that it will not be willing to serve as the stalking horse bidder.

8. Moreover, the proposed bidding protections represent fair consideration for the substantial benefit the Stalking Horse APA confers upon the Debtors and their estates by negotiating and agreeing to the terms of the Stalking Horse APA and setting a floor on the purchase price for the Assets. In addition to setting a floor on the purchase price, the designation of Estes as the stalking horse bidder will set a floor in terms transaction structure.

9. Based upon the foregoing, it is my opinion that the designation of the Stalking Horse APA and Estates as stalking horse purchaser is in the best interests of the Debtors, their estates, creditors and all parties in interest.

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

/s/ Vincent Colistra_____
VINCENT COLISTRA
Chief Restructuring Officer

Dated:   April 17, 2019