| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY<br>**Caption in compliance with D.N.J. LBR 9004-1**<br><br>**GIBBONS P.C.**<br>Karen A. Giannelli, Esq.<br>Mark B. Conlan, Esq.<br>Brett S. Theisen, Esq.<br>One Gateway Center<br>Newark, New Jersey 07102<br>Telephone: (973) 596-4500<br>Facsimile: (973) 596-0545<br>E-mail: kgiannelli@gibbonslaw.com<br>        mconlan@gibbonslaw.com<br>        btheisen@gibbonslaw.com<br><br>*Counsel to the Debtors*<br>*and Debtors-in-Possession* | **FILED**<br>JEANNE A. NAUGHTON, CLERK<br><br>**MAY 16 2019**<br><br>U.S. BANKRUPTCY COURT<br>NEWARK, N.J.<br>BY _____ DEPUTY |

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., *et al.*,<br><br>　　　　Debtors. [1] | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Jointly Administered) |

**ORDER (A) AUTHORIZING AND APPROVING (1) THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' EASTERN FREIGHT WAYS, INC. AND CARRIER INDUSTRIES, INC.'S ASSETS AND CERTAIN ASSETS OF NEW ENGLAND MOTOR FREIGHT, INC. FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; AND (2) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (B) GRANTING RELATED RELIEF**

　　　　The relief set forth on the following pages, numbered two (2) through and including forty-two (42), is hereby **ORDERED**.

　　　　　　5|16|19　　　　　　_/s/ JKS_

---

[1]　　The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

Page:     2
Debtors:  New England Motor Freight, Inc., *et al.*
Case No.: 19-12809 (JKS)
Caption:  Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
          Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
          New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
          and Other Interests; and (2) the Assumption and Assignment of Certain Executory
          Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
          Relief.

Upon the motion (the "Motion"), of New England Motor Freight, Inc. ("NEMF") and its

affiliated debtors, as debtors and debtors in possession (the "Debtors" or the "Sellers") in the

above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105(a), 363, 365,

and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004,

6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for (i)

entry of an order (the "Bidding Procedures Order") (a) establishing bidding and auction procedures

(as amended at D.I. No. 477, the "Bidding Procedures") related to the sale of Eastern Freight Ways,

Inc.'s and Carrier Industries, Inc.'s assets as well as NEMF's right, title and interest in and to

certain trucks, trailers and other rolling stock (the "Sale"); (b) scheduling an auction (the

"Auction") and a hearing for such Sale; (c) establishing certain notice procedures for determining

cure costs for executory contracts and unexpired leases to be assumed and assigned in connection

with such Sale (the "Assumption and Assignment Procedures"); and (d) granting certain related

relief; and (ii) entry of an order (this "Sale Order") (a) approving the Sale of Eastern Freight Ways,

Inc.'s and Carrier Industries, Inc.'s assets and NEMF's right, title and interest in and to certain

trucks, trailers and other rolling stock, free and clear of all Interests (as defined below); (b)

authorizing the assumption and assignment of certain executory contracts and unexpired leases;

and (c) granting certain related relief; after holding a hearing on April 8, 2019 (the "Bidding

Procedures Hearing"), this Court entered the Bidding Procedures Order on April 8, 2019 [D.I.

427]; and the Bidding Procedures Order having authorized the Debtors to accept a stalking horse

bid and enter into an asset purchase agreement with a stalking horse bidder; and New England

Page:       3
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

Motor Freight, Inc., Eastern Freight Ways, Inc. and Carrier Industries, Inc., on the one hand and

Estes Express Lines (the "Purchaser"), on the other, having entered into an Asset Purchase

Agreement dated April 17, 2019 (as it may be amended, modified, or supplemented in accordance

with the terms hereof and thereof the "Asset Purchase Agreement") (attached hereto as Exhibit A)

with the Asset Purchase Agreement to serve as a stalking horse bid and the Purchaser to serve as

a stalking horse bidder as authorized by the Bidding Procedures Order and Bidding Procedures;

and the Asset Purchase Agreement providing for a break-up fee in favor of the Purchaser in the

amount of $450,000 (the "Break-Up Fee") and an expense reimbursement in favor of the Purchaser

in the amount of $75,000 (the "Expense Reimbursement"); and the Debtors, in compliance with

the Bidding Procedures Order, having filed a Notice of (I) Stalking Horse Designation; (II) Filing

of Stalking Horse APA with Bid Protections; and (III) Filing of Amended Bidding Procedures on

April 18, 2019 [DI 477] providing notice that the Asset Purchase Agreement was to serve as a

stalking horse bid under the Bidding Procedures, that the Purchaser was to serve as a stalking horse

bidder under the Bidding Procedures, providing specific notice of the Break-Up Fee and the

Expense Reimbursement, providing notice of proposed changes to the Bidding Procedures to

account for the stalking horse bid and providing parties in interest with an opportunity to object to

the Asset Purchase Agreement serving as a stalking horse bid for purposes of the Bidding

Procedures, the Break-Up Fee and Expense Reimbursement and the proposed amendments to the

Bidding Procedures; and no objection to the Asset Purchase Agreement serving as a stalking horse

bid for purposes of the Bidding Procedures, the Break-Up Fee and Expense Reimbursement or the

Page:      4
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

proposed amendments to the Bidding Procedures having been filed by the deadline for doing so,

and, as provided for in the Bidding Procedures Order, upon no objections being filed, the Asset

Purchase Agreement having been deemed a stalking horse bid for purpose of the Bidding

Procedures, and the Break-Up Fee, Expense Reimbursement and the amendments to the Bidding

Procedures having been approved; and the Bidding Procedures Order and the Bidding Procedures

having established a deadline of May 9, 2019 for the submission of Qualified Bids[2] (the "Bid

Deadline"); and no Qualified Bids, other than the Asset Purchase Agreement, having been

submitted by the Bid Deadline; and the Debtors having filed a Notice of Cancellation of Auction

and Selection of Stalking Horse Bidder on May 10, 2019 [DI No. 560] cancelling the auction

scheduled for May 14, 2019 and designating the Purchaser or its designee (the "Purchaser

Designee") as the Successful Bidder and the Asset Purchase Agreement as the Successful Bid and

announcing that the Debtors will seek approval of the sale of the Acquired Assets to the Purchaser

under the Asset Purchase Agreement at the Sale Hearing; and this Court having conducted a

hearing on the Motion (the "Sale Hearing"); and all parties in interest having been heard, or having

had the opportunity to be heard, regarding the Motion, the Asset Purchase Agreement, and this

Sale Order; and this Court having reviewed and considered the Motion and all objections thereto,

and the arguments of counsel made, and the evidence adduced, at the Bidding Procedures Hearing

---

[2] Capitalized terms used, but not otherwise defined, herein shall have the meaning ascribed to such terms in the Asset Purchase Agreement, the Motion and/or Bankruptcy Code, as applicable.

Page:      5
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

and the Sale Hearing; and upon the entire record of the Bidding Procedures Hearing and the Sale

Hearing, and after due deliberation thereon, and good cause appearing therefor:

**THE COURT HEREBY FINDS THAT:**[4]

**<u>Jurisdiction, Final Order and Statutory Predicates</u>**

A.       On February 11, 2019 (the "<u>Petition Date</u>"), each of the Debtors filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the District of New Jersey (the "<u>Court</u>").

B.       This Court has core jurisdiction to hear and determine the Motion under 28 U.S.C.

§§ 157(b) and 1334.  Venue of the Chapter 11 Cases and the Motion in this district is proper under

28 U.S.C. §§ 1408 and 1409.

C.       This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under

Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable

by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the

implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

---

[4]       The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the
extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent
any of the following conclusions of law constitute findings of fact, they are adopted as such.

Page:      6
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

D.      The statutory predicates for the relief sought in the Motion are sections 105(a), 363, 365 and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and the applicable Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

### Notice of the Sale, Auction and the Cure Costs

E.      Actual written notice (and publication notice) of the Sale Hearing, the Auction, the Motion, the Sale, and the assumption, assignment and/or transfer of the Assigned Contracts, and a reasonable opportunity to object or be heard with respect thereto and to the entry of this Sale Order has been afforded to all known interested Persons and entities entitled to receive such notice, including, but not limited to, the following parties: (i) counsel to the Committee; (ii) counsel to the Sellers; (iii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis; (iv) the United States Trustee for the District of New Jersey (the "United States Trustee"); (v) all entities (or counsel therefore) known to have asserted any lien, charge, claim or encumbrance on the Acquired Assets; (vi) all federal, state and local regulatory or taxing authorities that are reasonably ascertainable by the Debtors to have a known interest in the Acquired Assets; (vii) known non-debtor counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Successful Bidder; (viii) those parties who expressed a bona fide interest in acquiring the assets in the six (6) months preceding the date of the Motion; and (ix) those parties who have requested notice pursuant to Bankruptcy Rule 2002.

6

Page:      7
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

F.    The Debtors published notice of the Sale, the Bidding Procedures, the Asset

Purchase Agreement, the time and place of the proposed Auction, the time and place of the Sale

Hearing and the time for filing an objection to the Motion on the website maintained by the

Debtors' Claims and Noticing Agent appointed in these Chapter 11 cases as well as the National

Edition of the New York Times (as evidenced by the Affidavit of Publication set forth at DI 442).

With no objection to the Break-Up Fee and Expense Reimbursement having been filed by the

deadline for doing so, and, as provided for in the Bidding Procedures Order, upon no objections

being filed, the Asset Purchase Agreement having been deemed a stalking horse bid for purpose

of the Bidding Procedures, the Bankruptcy Court has previously approved the Break-Up Fee and

Expense Reimbursement, which are not subject to appeal or reconsideration as required under the

Asset Purchase Agreement.

G.    In accordance with the provisions of the Bidding Procedures Order, the Debtors

have served notice (as supplemented, the "Assumption and Assignment Notice") of the Executory

Contract List upon all of the counterparties to the Assigned Contracts setting forth: (i) the

contract(s) and/or lease(s) that may be assumed by the Debtors and assigned to the Purchaser; (ii)

the name and address of the non-Debtor counterparty thereto; (iii) the amount, if any, determined

by the Debtors to be necessary to be paid to cure and compensate for any existing default in

accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Costs"); and

(iv) the deadlines by which any such counterparty must file an objection to the proposed

assumption and assignment of any Assigned Contract.

Page:      8
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

H.     The service of such Assumption and Assignment Notice (i) was good, sufficient

and appropriate under the circumstances of the Chapter 11 Cases, (ii) provided such counterparties

with a full and fair opportunity to object to such assumption, assignment, or transfer and to the

proposed Cure Costs set forth in the Assumption and Assignment Notice; and (iii) was in

compliance with the Bidding Procedures Order and applicable provisions of the Bankruptcy Rules

and Local Rules.  Accordingly, no other or further notice need be given in connection with such

assumption, assignment, or transfer or with respect to the amount of Cure Costs.

I.      As evidenced by the affidavits of service previously filed with this Court and as

approved under the Bidding Procedures Order:  (i) due, proper, timely, adequate and sufficient

notice of the Motion, the Auction, the Sale Hearing, the assumption and assignment of the

Assigned Contracts, and the Sale has been provided to all parties-in-interest; (ii) such notice was,

and is, good, sufficient and appropriate under the circumstances of the Chapter 11 Cases, provided

a fair and reasonable opportunity for parties-in-interest to object, and to be heard, with respect

thereto, and was provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy

Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014, and the applicable Local Rules;

and (iii) no other or further notice with respect to such matters is necessary or shall be required.

### **Business Judgment**

J.      The Debtors have demonstrated good, sufficient and sound business purposes and

justifications for, and compelling circumstances to promptly consummate, the Sale and other

transactions contemplated by the Asset Purchase Agreement and any ancillary agreements (the

Page:    9
Debtors:  New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:  Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
and Other Interests; and (2) the Assumption and Assignment of Certain Executory
Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
Relief.

---

"Ancillary Agreements"),[5] including, without limitation, the assumption, assignment, and/or

transfer of the Assigned Contracts (collectively, the "Transactions") pursuant to sections 363 and

365 of the Bankruptcy Code, prior to and outside of a plan of reorganization, and such action is an

appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors,

their estates, and their creditors. Such business reasons include, but are not limited to, the facts

that: (i) there is substantial risk of diminution of the value of the Acquired Assets if the Sale is not

consummated promptly; (ii) the Asset Purchase Agreement constitutes the highest or otherwise

best offer for the Acquired Assets; (iii) the Asset Purchase Agreement and the Closing will present

the best opportunity to realize the value of the Debtors and avoid decline and devaluation of the

Debtors' businesses; and (iv) unless the Sale is concluded expeditiously as provided for in this

Sale Order and pursuant to the Asset Purchase Agreement, potential creditor recoveries may be

substantially diminished.

### Good Faith of the Purchaser; No Collusion

K.    The Debtors have exercised their respective fiduciary duties in evaluating the

Transactions and have independently determined that the Transactions are in the best interests of

the Debtors, their estates, and their creditors. None of the Purchaser, the Purchaser Designee, nor

---

[5]    For avoidance of doubt, Ancillary Agreements shall include that certain Transition Services Agreement
which may be executed by and among NEMF, Eastern, Carrier and the Purchaser or Purchaser Designee
incidental to the closing of the Transactions contemplated by the Asset Purchase Agreement.

Page:       10
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
            Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
            New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
            and Other Interests; and (2) the Assumption and Assignment of Certain Executory
            Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
            Relief.

any of their respective representatives or Affiliates have exercised control over the Debtors, or the

manner in which the Transactions were approved and authorized by the Debtors.

      L.    The Purchaser and the Purchaser Designee, as applicable, are purchasing the

Acquired Assets in good faith, and each is a good faith purchaser, within the meaning of section

363(m) of the Bankruptcy Code, and each is therefore entitled to, and granted pursuant to

paragraphs 28-31 below, the full rights, benefits, privileges, and protections of that provision, and

each has otherwise proceeded in good faith in all respects in connection with the Transactions in

that, *inter alia*: (i) the Purchaser recognized that the Debtors were free to deal with any other party

interested in acquiring some or all of the Acquired Assets; (ii) the Purchaser complied with the

provisions in the Bidding Procedures Order; (iii) the Purchaser agreed to subject its bid to the

competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all payments to be

made by the Purchaser and other agreements or arrangements entered into by the Purchaser in

connection with the Sale have been disclosed; (v) neither the Purchaser nor the Purchaser Designee

has violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vi) the

negotiation and execution of the Asset Purchase Agreement and Ancillary Agreements were at

arms' length and in good faith.

      M.    None of the Debtors, the Purchaser, or the Purchaser Designee, or any of their

respective representatives, has engaged in any conduct that would cause or permit the Asset

Purchase Agreement or any of the Ancillary Agreements, or the consummation of the

Transactions, to be avoidable or avoided, or for costs or damages to be imposed, under section

Page:      11
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner

with any Person in connection therewith.

### Highest and Best Offer

N.    The Debtors have complied in all material respects with, the Bidding Procedures

Order.  The Debtors and their professionals have, under the circumstances, adequately and

appropriately marketed the Acquired Assets in compliance with the Bidding Procedures and the

Bidding Procedures Order.  The auction process set forth in the Bidding Procedures Order afforded

a full, fair and reasonable opportunity for any Person or entity to make a higher or otherwise better

offer to purchase the Acquired Assets.  The Auction was duly noticed and a reasonable opportunity

has been given to any interested party to make a higher or otherwise better offer for the Acquired

Assets.

O.    The Asset Purchase Agreement constitutes the highest and best offer for the

Acquired Assets, and will provide a greater recovery for the Debtors' estates than would be

provided by any other available alternative.  The Debtors' determination that the Asset Purchase

Agreement is the highest and best offer for the Acquired Assets constitutes a valid and sound

exercise of the Debtors' business judgment.

P.    The Asset Purchase Agreement represents a fair and reasonable offer to purchase

the Acquired Assets under the circumstances of the Chapter 11 Cases.  No other Person or entity

or group of entities has offered to purchase the Acquired Assets for greater economic value to the

Debtors' estates than the Purchaser.

11

Page:       12
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

Q.      Approval of the Motion and the Asset Purchase Agreement, and the prompt

consummation of the Transactions contemplated thereby, is in the best interests of the Debtors,

their creditors, their estates and other parties-in-interest.

### No Fraudulent Transfer; Not a Successor

R.      The Asset Purchase Agreement and Ancillary Agreements were not entered into,

and the Transactions are not being consummated, for the purpose of hindering, delaying or

defrauding creditors of the Debtors under applicable Law, and none of the parties to the Asset

Purchase Agreement or any of the Ancillary Agreements are consummating the Transactions with

any fraudulent or otherwise improper purpose.  The Purchase Price for the Acquired Assets

constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent

Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act and (iii)

reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of

the United States, any state, territory or possession or the District of Columbia.

S.      Except as expressly set forth in the Asset Purchase Agreement with respect to the

Assumed Liabilities, the Purchaser and the Purchaser Designee shall have no liability,

responsibility, or obligations of any kind or nature whatsoever for any Interest (as defined below)

of or against the Debtors, or otherwise related to the Acquired Assets, by reason of the transfer of

the Acquired Assets to the Purchaser or such Purchaser Designee.  The Purchaser and the Purchaser

Designee shall not be deemed, as a result of any action taken in connection with the Transactions,

to: (1) be a successor (or other such similarly situated party) to any of the Debtors (other than with

Page:       13
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
            Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
            New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
            and Other Interests; and (2) the Assumption and Assignment of Certain Executory
            Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
            Relief.

respect to the Assumed Liabilities as expressly stated in the Asset Purchase Agreement); or

(2) have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors. The

Purchaser and the Purchaser Designee are not acquiring or assuming any Interest, except as

expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities.

### Validity of Transfer

T.      Subject to the entry of this Sale Order, the Debtors have full corporate power and

authority to (i) perform all of their obligations under the Asset Purchase Agreement and the

Ancillary Agreements, and the Debtors' prior execution and delivery thereof and performance

thereunder is hereby ratified in full, and (ii) consummate the Transactions. The Asset Purchase

Agreement and Ancillary Agreements, and the Transactions contemplated thereby, have been duly

and validly authorized by all necessary corporate action. No further consents or approvals are

required for the Debtors to consummate the Transactions or otherwise perform their respective

obligations under the Asset Purchase Agreement or the Ancillary Agreements, except in each case

as otherwise expressly set forth in the Asset Purchase Agreement or applicable Ancillary

Agreements.

U.      As of the Closing Date, the transfer of the Acquired Assets to the Purchaser or the

Purchaser Designee, including, without limitation, the assumption, assignment and transfer of the

Assigned Contracts, will be a legal, valid, and effective transfer thereof, and vests the Purchaser

and the Purchaser Designee, as applicable, with all right, title, and interest of the Debtors in and to

Page:      14
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

the Acquired Assets, free and clear of all Interests accruing or arising any time prior to the Closing

Date, except as expressly set forth in the Asset Purchase Agreement.

### Section 363(f) Is Satisfied

V.      The Purchaser and the Purchaser Designee would not have entered into the Asset

Purchase Agreement and would not consummate the Transactions contemplated thereby if the sale

of the Acquired Assets, including the assumption, assignment and transfer of the Assigned

Contracts, to the Purchaser or the Purchaser Designee, as applicable, were not free and clear of all

Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase

Agreement), or if the Purchaser or the Purchaser Designee, any of their respective subsidiaries or

Affiliates, or any of their respective representatives, would, or in the future could, be liable for any

of such Interests.

W.      The Debtors may sell or otherwise transfer the Acquired Assets free and clear of all

Interests because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of

the Bankruptcy Code has been satisfied.  Those holders of Interests against the Debtors, their

estates or any of the Acquired Assets who did not object, or who withdrew their objections, to the

Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the

Bankruptcy Code and their Interests, if any, shall attach to the proceeds of the Sale attributable to

the Acquired Assets in which such creditor alleges or asserts an Interest, in accordance with the

provisions of paragraph 14 herein.  Those holders of such Interests who did object fall within one

or more of the other subsections of section 363(f) and are adequately protected by: (i) having their

Page:       15
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

Interests, if any, attach to the proceeds of the Sale attributable to the Acquired Assets in which

such creditor alleges or asserts an Interest, in the same order of priority, with the same validity,

force and effect, that such creditor had immediately prior to consummation of the Sale, subject to

any claims and defenses the Debtors and their estates and the Committee may possess with respect

thereto, and (ii) the provisions of this Sale Order, including, without limitation, paragraphs 12 and

36.

X.       As used in this Sale Order, the term "Interest" includes, in addition to the types of

claims described below, all of the following, in each case to the extent against or with respect to

any of the Debtors or in, on, or against or with respect to any of the Acquired Assets: liens (as

defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory,

judicial or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code), debts (as

defined in section 101(12) of the Bankruptcy Code), reclamation claims, encumbrances,

covenants, obligations, charges, indentures, Liabilities (including Liabilities arising under any

environmental laws), demands, guarantees, actions, causes of action, suits, defenses, deposits,

credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of

first refusal, rights of setoff or recoupment, or interests of any kind or nature whatsoever, whether

known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent,

liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the

commencement of the Chapter 11 Cases, whether imposed by agreement, understanding, Law,

equity or otherwise, including, but not limited to, (i) Interests that purport to give to any Person a

15

Page:      16
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

right or option to effect a setoff against or any forfeiture, modification or termination of the

Debtors' interests in the Acquired Assets, or any similar rights; (ii) Interests arising under all

mortgages, deeds of trust, security interests, conditional sale or other title retention agreements,

pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or

nature, (iii) Interests that are or constitute, or that arise in connection with or with respect to, any

Excluded Liability; (iv) Interests that arise from or in connection with any bulk sales or similar

law, and (v) Interests arising under or in connection with any acts, or failures to act, of any of the

Debtors or any of the Debtors' predecessors, Affiliates, or subsidiaries, or any of their respective

representatives, including, but not limited to, Interests arising under any doctrines of successor,

transferee, or vicarious liability, violation of the Securities Act of 1933, the Securities Exchange

Act of 1934, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding

or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

Y.      To the greatest extent permitted by applicable law, except as expressly set forth in

the Asset Purchase Agreement, the transfer of the Acquired Assets, including the assumption,

assignment and/or transfer of the Assigned Contracts, to the Purchaser or the Purchaser Designee,

as applicable, shall not subject the Purchaser or the Purchaser Designee, or their respective

subsidiaries or Affiliates (other than the Debtors), or any of their respective representatives to, or

subject any Acquired Asset to or provide recourse for, any Liability or encumbrance whatsoever

with respect to the operation or condition of the business or any of the Acquired Assets prior to

the closing or with respect to any facts, acts, actions, omissions, circumstances or conditions

Page:       17
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
            Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
            New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
            and Other Interests; and (2) the Assumption and Assignment of Certain Executory
            Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
            Relief.

existing, occurring or accruing with respect thereto prior to the Closing Date, including, without

limitation, any Liability or encumbrance arising from any of the following: (i) any employment or

labor agreements, consulting agreements, severance arrangements, change in control agreements

or other similar agreements to which any Debtor is or was a party, (ii) any pension, welfare,

compensation or other employee benefit plans, agreements, practices, and programs, including

without limitation, any pension plan of the Debtors, (iii) the cessation of the Debtors' operations,

dismissal of employees, or termination of employment or labor agreements or pension, welfare,

compensation or other employee benefit plans, agreements, practices and programs and any

obligations with respect thereto that arise from the Employee Retirement Income Security Act of

1974, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age

Discrimination and Employment Act of 1967, the Americans with Disabilities Act of 1990, the

Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus

Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act,

(iv) workmen's compensation, occupational disease or unemployment or temporary disability

insurance claims, (v) environmental liabilities, debts, claims or obligations which may be asserted

on any basis, including, without limitation, under the Comprehensive Environmental Response,

Compensation and Liability Act or any environmental laws, (vi) products liability or warranties,

(vii) any bulk sales or similar law, (viii) any litigation by or against the Debtors and (ix) the Laws

of the United States, any state, territory or possession thereof, or the District of Columbia, based,

in whole or in part, directly or indirectly, in any theory of law or equity, including, without

17

Page:      18
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

limitation, any theory of antitrust, products liability, or successor, vicarious or transferee liability.

For the avoidance of doubt, the Liabilities and encumbrances set forth in this paragraph are

included in the defined term "Interests" for all purposes of this Sale Order.

### Assumption, Assignment and/or Transfer of the Assigned Contracts

Z.      The assumption, assignment and/or transfer of the Assigned Contracts to the

Purchaser and the Purchaser Designee, as applicable, pursuant to the terms of this Sale Order is

integral to the Asset Purchase Agreement and is in the best interests of the Debtors and their estates,

creditors and other parties in interest, and represents the reasonable exercise of sound and prudent

business judgment by the Debtors.

AA.     To the extent necessary or required by applicable Law, the Debtors or Purchaser

(as set forth in the Asset Purchase Agreement) have or will have as of the Closing Date: (i) cured,

or provided adequate assurance of cure, of any default existing prior to the Closing Date with

respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A)

of the Bankruptcy Code, and (ii) provided compensation, or adequate assurance of compensation,

to any party for any actual pecuniary loss to such party resulting from such default, within the

meaning of section 365(b)(1)(B) of the Bankruptcy Code.  The respective amounts set forth in the

Executory Contract List attached to the Debtors' Assumption and Assignment Notice (or any

Supplemental Notice of Assumption and Assignment served in accordance with the Assumption

and Assignment Procedures) are the sole amounts necessary under sections 365(b)(1)(A) and

Page:      19
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

365(f)(2)(A) of the Bankruptcy Code to cure all such monetary defaults and pay all actual pecuniary losses under the Assigned Contracts.

      BB.    The promise of the Purchaser or the Purchaser Designee, as applicable, to perform the obligations first arising under the Assigned Contracts after their assumption and assignment to the Purchaser or the Purchaser Designee, as applicable, constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparties to such Assigned Contracts. Any objections to the foregoing, the determination of any Cure Costs, or otherwise related to or in connection with the assumption, assignment or transfer of any of the Assigned Contracts to the Purchaser or the Purchaser Designee are hereby overruled on the merits or otherwise treated as set forth below. Those non-Debtor parties to Assigned Contracts who did not object to the assumption, assignment or transfer of their applicable Assigned Contract, or to their applicable Cure Costs, are deemed to have consented thereto for all purposes of this Sale Order.

### Compelling Circumstances for an Immediate Sale

      CC.    To maximize the value of the Acquired Assets and preserve the viability of the business to which the Acquired Assets relate, it is essential that the Sale of the Acquired Assets occur within the time constraints set forth in the Asset Purchase Agreement. Time is of the essence in consummating the Sale. The Sale must be approved and consummated promptly in order to preserve the value of the Acquired Assets. Accordingly, there is cause to lift the stay contemplated

Page:       20
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

by Bankruptcy Rules 6004 and 6006 with regard to the Transactions contemplated by this Sale

Order, the Asset Purchase Agreement and the Ancillary Agreements.

DD.    Given all of the circumstances of the Chapter 11 Cases and the adequacy and fair

value of the Purchase Price under the Asset Purchase Agreement, the proposed transfer of the

Acquired Assets to the Purchaser or Purchaser Designee, as applicable, constitutes a reasonable

and sound exercise of the Debtors' business judgment, is in the best interests of the Debtors, their

estates, and their creditors, and should be approved.

EE.    The consummation of the Transactions is legal, valid and properly authorized under

all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105,

363 and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have

been complied with in respect of the Transactions.

FF.    The Sale does not constitute a *de facto* plan of reorganization or liquidation or an

element of such a plan for any of the Debtors, as it does not and does not propose to: (i) impair or

restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting

rights with respect to any future plan proposed by the Debtors; (iii) circumvent chapter 11 plan

safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or

(iv) classify claims or equity interests, compromise controversies or extend debt maturities.

Page:      21
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**

**THAT:**

## General Provisions

1.      The Motion and the relief requested therein are granted and approved, and the

Transactions contemplated thereby and by the Asset Purchase Agreement and Ancillary

Agreements are approved, in each case as set forth in this Sale Order.

2.      This Court's findings of fact and conclusions of law set forth in the Bidding

Procedures Order are incorporated herein by reference.

3.      All objections to the Motion or the relief requested therein that have not been

withdrawn, waived, resolved, or otherwise settled as announced to this Court at the Sale Hearing

or by stipulation filed with this Court, and, except as set forth herein and on the Court's record at

the Sale Hearing, all reservations of rights included therein, are hereby denied and overruled on

the merits.

## Approval of Asset Purchase Agreement; Binding Nature

4.      The Asset Purchase Agreement and the Ancillary Agreements, and all of the terms

and conditions thereof, are hereby approved.

5.      The offer for the Acquired Assets, as embodied in the Asset Purchase Agreement,

was deemed a Qualified Bid (as defined in the Bidding Procedures Order) and is the highest and

best offer for the Acquired Assets (thereby providing a greater recovery for the Debtors' estates

Page:       22
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
            Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
            New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
            and Other Interests; and (2) the Assumption and Assignment of Certain Executory
            Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
            Relief.

than would be provided by any other available alternative), and the Asset Purchase Agreement and

the Ancillary Agreements and all of the terms and conditions thereof, and the Transactions

contemplated thereby, are hereby approved in all respects.

6.      The consideration provided by the Purchaser for the Acquired Assets under the

Asset Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute

reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and any

other applicable Law, and the Transactions may not be avoided, or costs or damages imposed or

awarded, under section 363(n) or any other provision of the Bankruptcy Code.

7.      Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtors are

authorized and empowered to, and shall, take any and all actions necessary or appropriate to (a)

consummate the Sale and the other Transactions pursuant to and in accordance with the terms and

conditions of the Asset Purchase Agreement and the Ancillary Agreements, and (b) execute and

deliver, perform under, consummate, implement, and take any and all other acts or actions as may

be reasonably necessary or appropriate to the performance of their respective obligations as

contemplated by the Asset Purchase Agreement and the Ancillary Agreements, in each case

without further notice to or order of this Court. The Transactions authorized herein shall be of full

force and effect, regardless of any Debtor's lack or purported lack of good standing in any

jurisdiction in which such Debtor is formed or authorized to transact business.

8.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all

creditors, all holders of equity interests in any Debtor, all holders of any Claim(s) (whether known

Page:       23
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
            Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
            New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
            and Other Interests; and (2) the Assumption and Assignment of Certain Executory
            Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
            Relief.

or unknown) against any Debtor, any holders of Interests against, in or on all or any portion of the

Acquired Assets, all non-Debtor parties to the Assigned Contracts, the Purchaser, the Purchaser

Designee and all successors and assigns of the foregoing, including, without limitation, any trustee,

if any, subsequently appointed in the Chapter 11 Cases or upon a conversion to chapter 7 under

the Bankruptcy Code of any of the Chapter 11 Cases.

### Transfer of Acquired Assets Free and Clear of Interests; Injunction

9.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy

Code, the Debtors are authorized and directed to transfer the Acquired Assets, including but not

limited to the Assigned Contracts, to the Purchaser or the Purchaser Designee, as applicable, on

the Closing Date in accordance with the Asset Purchase Agreement and the Ancillary Agreements.

Upon and as of the Closing Date, such transfer shall constitute a legal, valid, binding and effective

transfer of such Acquired Assets and the Purchaser or the Purchaser Designee, as applicable, shall

take title to and possession of such Acquired Assets free and clear of all Interests (except as

expressly set forth in the Asset Purchase Agreement).

10.     All such Interests shall attach solely to the proceeds of the Sale with the same

validity, priority, force and effect that they now have as against the Acquired Assets, subject to

any claims and defenses the Debtors and their estates and the Committee may possess with respect

thereto.  This Sale Order shall be effective as a determination that, on and as of the closing, all

Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase

Agreement) have been unconditionally released, discharged and terminated in, on or against the

Page:      24
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

Acquired Assets. The provisions of this Sale Order authorizing and approving the transfer of the

Acquired Assets free and clear of Interests shall be self-executing, and neither the Debtors nor the

Purchaser (or the Purchaser Designee) shall be required to execute or file releases, termination

statements, assignments, consents, or other instruments in order to effectuate, consummate and

implement the provisions of this Sale Order.

11.     Upon the closing, the liens on the Acquired Assets of the Debtors granted under

any prepetition credit documents to secure the prepetition credit agreement indebtedness shall be

deemed released solely with respect to the Acquired Assets, as applicable, and the Debtors shall

take all actions required under the Asset Purchase Agreement to confirm the removal of any such

liens.

12.     Each of the Secured Lenders are hereby directed to deliver to Gibbons P.C.

(Attention:  Lawrence A. Goldman, Esq.) all titles to the (i) NEMF Rolling Stock as set forth in

the Asset Purchase Agreement and (ii) the rolling stock comprising the Acquired Assets under the

Asset Purchase Agreement, with the release of liens endorsed on the titles, along with any release

of lien documentation necessary to transfer such titles, including without limitation, release of lien

letters in form and substance required by the State of New Jersey Motor Vehicle Commission or

other applicable State motor vehicle agency (collectively, the "Title Documents"), no later than

May 21, 2019.  Gibbons P.C. shall hold the Title Documents in escrow for the benefit of each

respective Secured Lender and shall only be authorized to release the Title Documents to the

Purchaser or the Purchaser Designee after the Purchaser or Purchaser Designee makes the payment

Page:        25
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

of the Purchase Price under the Asset Purchase Agreement, and the release of liens by the affected

Secured Lender shall be contingent upon the successful closing of the Sale and the payment of the

Secured Lender Principal Payments (as such term is defined herein) (the "Lien Release

Conditions).   As used herein, "Secured Lender" includes the following (and their respective

affiliates and predecessors): (i) JPMorgan Chase Bank, N.A., (ii) TD Bank, N.A., (iii) East West

Bank, (iv) Santander Bank, (v) Capital One, N.A., (vi) Wells Fargo Equipment Finance, Inc., (vii)

Fifth Third Bank, (viii) Mercedes-Benz Financial Services, USA LLC, and (ix) Webster Capital

Finance, Inc.

        13.    In the event that any Title Documents required from a Secured Lender in order to

release liens or transfer title in accordance with the requirements of the State of New Jersey Motor

Vehicle Commission ("NJMVC") or other State motor vehicle agency has not been provided in

accordance with the preceding paragraph or otherwise, provided that the Lien Release Conditions

have been satisfied, Phoenix Management Services, LLC ("Phoenix"), acting through Vincent J.

Colistra or Albert J. Mink, is hereby authorized, on behalf of each Secured Lender, but only with

respect to the NEMF Rolling Stock and the rolling stock comprising the Acquired Assets, to

execute and deliver release of lien letters or other instruments required by the NJMVC or other

State motor vehicle agency in order to comply with the release of lien requirements of the NJMVC

or other State motor vehicle agency requirements.  Such authorization is the following:

        a.     Execution and delivery of release of lien letters on Phoenix official letterhead in

substantially the same form as the specimen letter attached hereto as Exhibit B identifying the

Page:      26
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

specific vehicle(s) by year, make, model and Vehicle Identification Number ("VIN"), which

vehicles may be identified  by way of a list appended to the applicable letter; and

> b.  The release of any Secured Lender lien on any original certificates of title and noted as
>
> "paid" by Phoenix by any one of its authorized individuals identified above.

14.  For the avoidance of doubt, the liens granted under any prepetition credit documents

shall attach to the proceeds of the Sale (including, without limitation, any claims arising from or

related to the Asset Purchase Agreement and any proceeds thereof, and any other damages or other

amounts recovered by the Debtors in connection with the enforcement of the Sale, this Sale Order,

or the Bidding Procedures Order) with the same validity, priority, force and effect that they now

have against the Acquired Assets subject to any claims and defenses the Debtors and their estates

and the Committee may possess with respect thereto.

15.     Except as expressly permitted by the Asset Purchase Agreement or this Sale Order,

all Persons and entities holding Interests (other than the Permitted Encumbrances and Assumed

Liabilities) are hereby forever barred, estopped and permanently enjoined from asserting their

respective Interests against the Purchaser and the Purchaser Designee, any of their respective

subsidiaries and Affiliates, and any of their respective representatives, and each of their respective

property and assets, including, without limitation, the Acquired Assets.  On and after the Closing

Date, the Purchaser or the Purchaser Designee, as applicable, shall be authorized to execute and

file such documents, and to take all other actions as may be necessary, on behalf of each holder of

an Interest to release, discharge and terminate such Interests in, on and against the Acquired Assets

Page:      27
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

as provided for herein, as such Interests may have been recorded or may otherwise exist. On and after the Closing Date, and without limiting the foregoing, the Purchaser or the Purchaser Designee, as applicable, shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, lien on title certificate, notice filing, or financing statement recorded to attach, perfect or otherwise notice any Interest that is extinguished or otherwise released pursuant to this Sale Order. This Sale Order constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code and applicable motor vehicle registration statutes for the Purchaser or the Purchaser Designee to file UCC termination statements or other lien releases with respect to all security interests in or liens on the Acquired Assets.

16.    On and after the Closing, the Persons holding an Interest shall execute such documents and take all other actions as may be reasonably necessary to release their respective Interests in the Acquired Assets, as such Interests may have been recorded or otherwise filed. The Purchaser or the Purchaser Designee, as applicable, may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county or other jurisdiction in which any Debtor is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge and terminate any of the Interests as set forth in this Sale Order as of the Closing Date. All persons and entities that are in possession

Page:      28
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

of any portion of the Acquired Assets on the Closing Date shall promptly surrender possession

thereof to the Purchaser or the Purchaser Designee at the closing.

17.    The transfer of the Acquired Assets to the Purchaser or the Purchaser Designee

pursuant to the Asset Purchase Agreement and Ancillary Agreements does not require any

consents other than specifically provided for in the Asset Purchase Agreement.

18.    This Sale Order is and shall be binding upon and govern the acts of all Persons and

entities (including, without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, and secretaries of state, federal and local officials) who may be

required by operation of law, the duties of their office, or contract to accept, file, register or

otherwise record or release any documents or instruments, or who may be required to report or

insure any title or state of title in or to any lease.  Each of the foregoing Persons and entities shall

accept for filing any and all of the documents and instruments necessary and appropriate to release,

discharge and terminate any of the Interests or to otherwise consummate the Transactions

contemplated by this Sale Order, the Asset Purchase Agreement or any Ancillary Agreement.

### Assigned Contracts; Cure Costs

19.    Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to

and conditioned upon closing, the Debtors' assumption, and assignment and transfer to the

Purchaser or Purchaser Designee, of the Assigned Contracts is hereby authorized and approved in

full subject to the terms set forth below.  The Debtors or Purchaser shall as set forth in the Asset

Page:      29
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

Purchase Agreement, on or prior to the Closing, pay the Cure Costs (or reserve the Undisputed

Cure Costs as set forth below) and cure any and all other defaults and breaches under the Assigned

Contracts so that such Contracts may be assumed by the Debtors and assigned to Purchaser or

Purchaser Designee on the Closing Date in accordance with this Sale Order, the Asset Purchase

Agreement and the Ancillary Agreements.  To the extent any Debtor is responsible for any Cure

Costs pursuant to the terms of the Asset Purchase Agreement or Ancillary Agreements, the

Purchaser may, upon prior written notice to the Debtors and in its sole discretion, (i) pay such

amount(s) on behalf of the Debtors, in which case the Debtors shall have no further responsibility

therefor, and (ii) offset such amount(s) against any amount(s) Purchaser may owe the Debtors

(including by deducting such amounts, at the closing, from the Purchase Price).

       20.      Upon and as of the closing, the Debtors are authorized and empowered to, and shall,

assume, assign and/or transfer each of the Assigned Contracts to the Purchaser or the Purchaser

Designee, as applicable, free and clear of all Interests (except as expressly set forth in the Asset

Purchase Agreement).  The payment of the applicable Cure Costs (if any), or the reservation by

the Debtors of an amount of cash that is equal to the lesser of (i) the amount of any cure or other

compensation asserted by the applicable non-Debtor counterparty as required under section 365 of

the Bankruptcy Code or (ii) the amount approved by order of this Court to reserve for such payment

(such lesser amount, the "Alleged Cure Claim") shall, pursuant to section 365 of the Bankruptcy

Code and other applicable Law, (a) effect a cure, or provide adequate assurance of cure, of all

defaults existing thereunder as of the Closing Date and (b) compensate, or provide adequate

Page:      30
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

---

assurance of compensation, for any actual pecuniary loss to such non-Debtor party resulting from

such default. Accordingly, on and as of the Closing Date, other than such payment or reservation,

none of the Debtors, the Purchaser or the Purchaser Designee shall have any further liabilities or

obligations to the non-Debtor parties to the Assigned Contracts with respect to, and the non-Debtor

parties to the Assigned Contracts shall be forever enjoined and barred from seeking, any additional

amounts or asserting claims (as defined in section 101(5) of the Bankruptcy Code) that arose,

accrued or were incurred at any time on or prior to the Closing Date on account of the cure or

compensation obligations arising under section 365 of the Bankruptcy Code. The Purchaser or the

Purchaser Designee, as applicable, has provided adequate assurance of future performance under

the relevant Assigned Contracts within the meaning of section 365(f) of the Bankruptcy Code.

        21.     To the extent any provision in any Assigned Contract assumed or assumed and

assigned (as applicable) pursuant to this Sale Order (including, without limitation, any "change of

control" provision) (a) prohibits, restricts or conditions, or purports to prohibit, restrict or

condition, such assumption or assignment, or (b) is modified, breached or terminated, or deemed

modified, breached or terminated by any of the following: (i) the commencement of the Chapter

11 Cases, (ii) the insolvency or financial condition of any Debtor at any time before the closing of

the Chapter 11 Cases, (iii) any Debtor's assumption or assumption and assignment (as applicable)

of such Assigned Contract, or (iv) the consummation of the Transactions, then such provision shall

be deemed modified so as to not entitle the non-Debtor party thereto to prohibit, restrict or

condition such assumption or assignment, to modify or terminate such Assigned Contract, or to

Page:      31
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

exercise any other default-related rights or remedies with respect thereto, including, without

limitation, any such provision that purports to allow the non-Debtor party thereto to recapture such

Assigned Contracts, impose any penalty thereunder, condition any renewal or extension thereof,

impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or

other charges in connection therewith.    All such provisions constitute unenforceable anti-

assignment provisions that are void and of no force and effect pursuant to sections 365(b), 365(e)

and 365(f) of the Bankruptcy Code.

        22.     All requirements and conditions under sections 363 and 365 of the Bankruptcy

Code for the assumption by the Debtors and assignment to the Purchaser or the Purchaser

Designee, as applicable, of the Assigned Contracts have been satisfied.    Upon the closing, in

accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser or the Purchaser

Designee, as applicable, shall be fully and irrevocably vested with all right, title and interest of the

Debtors in and under the Assigned Contracts, and each Assigned Contract shall be fully

enforceable by the Purchaser or the Purchaser Designee, as applicable, in accordance with its

respective terms and conditions, except as limited or modified by the provisions of this Sale Order.

Upon and as of the closing, the Purchaser or the Purchaser Designee, as applicable, shall be deemed

to be substituted for the Debtors as a party to the applicable Assigned Contracts and, accordingly,

the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further

liability under the Assigned Contracts.

Page:     32
Debtors:  New England Motor Freight, Inc., *et al.*
Case No.: 19-12809 (JKS)
Caption:  Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
          Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
          New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
          and Other Interests; and (2) the Assumption and Assignment of Certain Executory
          Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
          Relief.

23.     Upon the payment of the applicable Cure Costs or reservation of the Alleged Cure Claim, if any, the Assigned Contracts will remain in full force and effect, and no default shall exist, or be deemed to exist, under the Assigned Contracts as of the Closing Date nor shall there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default. The right of the Purchaser to exclude a contact as an Assigned Contract following entry of this order in the event a cure objection is resolved providing for a cure amount that exceeds the Debtors' proposed cure amount is hereby approved.

24.     All non-Debtor counterparties to the Assigned Contracts shall be deemed to have consented to such assumption and assignment under section 365(c)(1)(B) of the Bankruptcy Code and the Purchaser or Purchaser Designee shall enjoy all of the Debtors' rights, benefits and privileges under each such Assigned Contract as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

25.     Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

26.     The failure of the Debtors, the Purchaser or the Purchaser Designee, as applicable, to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of its respective rights to enforce every term and condition of the Assigned Contracts.

Page:      33
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

## Additional Injunction; No Successor Liability

27.     Effective upon the Closing Date and except as expressly set forth in the Asset

Purchase Agreement, all Persons and entities are forever prohibited and permanently enjoined

from (i) commencing or continuing in any manner any action or other proceeding, the employment

of process, or any act (whether in law or equity, in any judicial, administrative, arbitral or other

proceeding), to collect, recover or offset any Interest; (ii) enforcing, attaching, collecting or

recovering in any manner any judgment, award, decree or order with respect to an Interest,

(iii) creating, perfecting or enforcing any Interest, or (iv) asserting any setoff, right of subrogation

or recoupment of any kind with respect to an Interest, in each case as against the Purchaser or the

Purchaser Designee, any of their respective subsidiaries or Affiliates, or any of their respective

representatives, or any of their respective property or assets, including the Acquired Assets.

28.     To the greatest extent permitted by applicable law, the Transactions contemplated

by the Asset Purchase Agreement and the Ancillary Agreements do not cause there to be, and there

is not (i) a consolidation, merger, or *de facto* merger of the Purchaser or any Purchaser Designee,

on the one hand, with or into the Debtors or the Debtors' estates, on the other hand, or vice versa;

(ii) a substantial continuity between the Purchaser or any Purchaser Designee, on the one hand,

and the Debtors or the Debtors' estates, on the other hand, (iii) a common identity between the

Purchaser or any Purchaser Designee, on the one hand, and the Debtors or the Debtors' estates, on

the other hand, or (iv) a mere continuation of the Debtors or their estates, on the one hand, with

the Purchaser or any Purchaser Designee, on the other hand.

Page:      34
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

29.    To the greatest extent permitted by applicable law, except as expressly set forth in

the Asset Purchase Agreement, the transfer of the Acquired Assets, including, without limitation,

the assumption, assignment and transfer of any Assigned Contract, to the Purchaser or any

Purchaser Designee shall not cause or result in, or be deemed to cause or result in, the Purchaser

or the Purchaser Designee, any of their respective subsidiaries or Affiliates (other than the

Debtors), or any of their respective representatives, having any liability, obligation, or

responsibility for, or any Acquired Assets being subject to or being recourse for, any Interest

whatsoever, whether arising under any doctrines of successor, transferee or vicarious liability,

breach of fiduciary duty, aiding or abetting breach of fiduciary duty or otherwise, whether at Law

or in equity, directly or indirectly, and whether by payment, setoff, recoupment, or otherwise.

30.    For the avoidance of doubt, notwithstanding the consummation of the Transactions

and the employment by the Purchaser or Purchaser Designee of certain Persons previously

employed by the Debtors, (i) the Purchaser and Purchaser Designees shall not have any obligations

or liabilities to any employee of the Debtors or in respect of any employee benefits owing to any

employee of the Debtors by the Debtors or by any plan or program administered by the Debtors or

for the benefit of the Debtors' employees, and (ii) any obligations of the Purchaser and Purchaser

Designees to any such Person shall be expressly limited to (i) those obligations expressly agreed

upon by the Purchaser or Purchaser Designee (if any) with such Person, and (ii) those obligations

explicitly assumed by the Purchaser or Purchaser Designee (if any) under the Asset Purchase

Agreement.

34

Page:        35
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
and Other Interests; and (2) the Assumption and Assignment of Certain Executory
Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
Relief.

## Good Faith

31.     The Transactions contemplated by this Sale Order, the Asset Purchase Agreement
and the Ancillary Agreements are undertaken by the Purchaser and the Purchaser Designee without
collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and
accordingly, the reversal or modification on appeal of the authorization provided herein to
consummate the Sale and other Transactions shall not alter, affect, limit, or otherwise impair the
validity of the Sale or such other Transactions (including the assumption, assignment and/or
transfer of the Assigned Contracts), unless such authorization and consummation are duly stayed
pending such appeal.  Each of the Purchaser and Purchaser Designee is a good faith purchaser
within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and
hereby granted, the full rights, benefits, privileges and protections of section 363(m) of the
Bankruptcy Code.

## Other Provisions

32.     The Purchaser is hereby authorized, in its discretion, in connection with
consummation of the Transactions to allocate the Acquired Assets, Assumed Liabilities, and
Assigned Contracts among its Affiliates, subsidiaries, designees, assignees, and/or successors in a
manner as it, in its discretion, deems appropriate and such Person shall be entitled to all of the
rights, benefits, privileges and protections of the Purchaser as are accorded to the Purchaser under
this Sale Order, and the Debtors shall, to the extent set forth in the Asset Purchase Agreement and
the Ancillary Agreements, cooperate with and take all actions reasonably requested by Purchaser

35

Page:      36
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

to effectuate any of the foregoing.  In the event that the Purchaser designates any Purchaser

Designee to acquire any Acquired Assets, including, without limitation, any Assigned Contracts,

then any reference to the "Purchaser" in this Sale Order shall be deemed to be a reference to "the

Purchaser and/or such applicable Purchaser Designee," unless the context requires otherwise.

33.      Nothing in this Sale Order, the Asset Purchase Agreement, Ancillary Agreement or

any related document shall constitute or be deemed to constitute a determination of allocation of

the Purchase Price or value with respect to or among any Acquired Asset and/or the Purchase Price

and all parties' rights with respect to allocation of the Acquired Assets and/or the Purchase Price

are reserved; provided, however, the Purchaser may allocate the Purchase Price for tax reporting

purposes as provided in the Asset Purchase Agreement without binding the Debtors, any creditor

(whether secured or unsecured) of the Debtors, any Secured Lender, the Official Committee of

Unsecured Creditors (the "Committee") or any other parties to these Chapter 11 Cases.

34.      Nothing in this Sale Order, the Asset Purchase Agreement, Ancillary Agreement or

any other related document shall affect any parties' rights, including, but not limited to those of

the Debtors, the Committee, Secured Lenders, or any lender/secured creditor, with respect to

determination of the nature, extent and validity of a lien on, or guaranty of, any of the Acquired

Assets, or the amount or extent of the claims that the Secured Lenders have against the Debtors,

as well as with respect to any right of the Debtors' estates, pursuant to Bankruptcy Code section

506(c).

36

Page:       37
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
            Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
            New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
            and Other Interests; and (2) the Assumption and Assignment of Certain Executory
            Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
            Relief.

35.     The Transactions shall be exempt from any transfer tax, stamp tax or similar tax

pursuant to section 1146 (c) of the Bankruptcy Code, to the fullest extent permitted by law.  To

the extent the Purchaser or Purchaser Designee deducts any estimated transfer taxes due and owing

from the Debtors at closing as permitted by the Asset Purchase Agreement and such transfer taxes

are not required to be paid due to the exemptions set forth in this Sale Order or for any other reason,

Purchaser or Purchaser Designee shall promptly reimburse the Debtors on account of any such

deductions with respect to such estimated transfer taxes that are allocable to the Debtors.

36.     Within five business days of the Closing Date or as soon as reasonably practicable

thereafter, the Debtors shall pay to (i) JPMorgan Chase Bank, N.A., the sum of $70,291,

representing the principal loan balance for the NEMF Rolling Stock encumbered by JPMorgan

Chase Bank, N.A. being sold to Purchaser; (ii) TD Bank, N.A., $428,294, with $317,760 being

allocated to its principal loan balance with Eastern and $110,534 being allocated to its principal

loan balance with NEMF; (iii) East West Bank, the sum of $519,257, with $500,619 representing

and allocated to the principal loan balance for the Eastern Rolling Stock encumbered by East West

Bank being sold to the Purchaser and $18,638, representing the and allocated to the principal loan

balance for the NEMF Rolling Stock encumbered by East West Bank being sold to the Purchaser;

(iv) Santander Bank, $2,556,433, with $1,663,002 being allocated to the principal balance of its

loans to Eastern and $236,078 being allocated to the principal balance of its loans to NEMF, and

$657,353 being allocated to the principal balance of a single loan made to Eastern and NEMF as

co-borrowers; (v) Capital One, N.A., $691,014, allocated to and representing the principal loan

Page:      38
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

balance with Eastern; (vi) Wells Fargo Equipment Finance, Inc., $873,440.19, with $845,268.22

being allocated to its principal loan balance with Eastern for thirteen (13) Freightliner Cascadia

trailers and $28,171.97 being allocated to its principal loan balance with NEMF for two (2) vans

(VIN #'s 1GRAP0620FD455933 and 3H3V532C8FT580029); (vii) Fifth Third Bank, $2,592,613

with $2,560,208 being allocated to its principal loan balance with Eastern and $32,405 being

allocated to its principal loan balance with NEMF; (viii) Mercedes-Benz Financial Services, LLC,

$1,247,408, allocated to and representing the principal loan balance with Eastern; and (ix) Webster

Capital Finance, Inc., $76,921, allocated to and representing the principal loan balance with NEMF

(collectively, the payments set forth in (i) through (ix) the, "Secured Lender Principal Payments").

All other remaining cash sale proceeds received from the Purchaser or Purchaser Designee from

the Sale shall be held by the Debtors in a separate segregated escrow account marked "Eastern and

Carrier Sale Proceeds" and shall only be distributed pursuant to (i) a confirmed plan, (ii) a further

order of this Court or (iii) agreement of the Debtors, the Committee, and the Secured Lenders set

forth in this paragraph.  All parties' rights are preserved, and nothing in this Sale Order or any

action taken to consummate the Sale shall be deemed to impair, compromise or bind the parties

with respect to, without limitation, (i) claims of cross-collateralization, (ii) allocation of Sale

proceeds among Eastern, Carrier and NEMF, (iii) valuation of Acquired Assets, (iv) the allocation

of Sale proceeds among the Secured Lenders, (v) deficiency claims, or (vi) any other theory

relating to the rights to Sale proceeds or remaining Sale proceeds.  All claims of the Secured

Lenders against the Debtors and their estates, including any claim for interest or expenses,

Page:      39
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
           Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
           New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
           and Other Interests; and (2) the Assumption and Assignment of Certain Executory
           Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
           Relief.

including any administrative expense claim under 11 U.S.C. § 503, with all parties' rights to object

to said claims, are expressly preserved.  With respect to the $157,804.28 that is allocable to the

principal loan balance of sixteen (16) Great Dane trailers financed by Wells Fargo Equipment

Finance, Inc. (bearing VIN #'s 1GRDM9620FH724489 to -98), such amount shall be held by the

Debtors in a separate segregated account marked "Wells Fargo Disputed Sale Proceeds" and absent

a settlement reached among the Debtors, the Committee, and Wells Fargo Equipment Finance,

Inc., on notice to and opportunity to be heard by the Secured Lenders, the Court shall conduct a

hearing on May 29, 2019 at 2 : 00 p.m. (ET) to determine whether such proceeds should

be distributed within five business days of the Closing Date to Wells Fargo Equipment Finance,

Inc. or to the Debtors' estates for distribution to general unsecured creditors.  In the event a

settlement is reached prior to the hearing, on notice to and opportunity to be heard by the Secured

Lenders, the Debtors shall distribute such proceeds in accordance with the settlement within five

business days of the Closing Date and the hearing to determine the ownership of the proceeds will

be cancelled.

    37.    Nothing contained in any plan of reorganization or liquidation, or order of any type

or kind entered in (a) the Chapter 11 Cases, (b) any subsequent chapter 7 case into which any such

chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Sale

Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the

terms of this Sale Order, including, but not limited to the rights provided to or set forth with respect

to the Debtors, Committee, and Secured Lenders designated herein.  To the extent of any such

Page:       40
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
            Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
            New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
            and Other Interests; and (2) the Assumption and Assignment of Certain Executory
            Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
            Relief.

conflict or derogation, the terms of this Sale Order shall govern. Following closing, the Purchaser

shall have no obligations to the Debtors or their estates except for those expressly stated in the

Asset Purchase Agreement and/or the Ancillary Agreements.

38.     Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order

shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon

entry, and the stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly

waived and shall not apply. Accordingly, the Debtors are authorized and empowered to close the

Sale and other Transactions immediately upon entry of this Sale Order.

39.     Nothing in this Sale Order shall modify or waive any closing conditions or

termination rights in the Asset Purchase Agreement, and all such conditions and rights shall remain

in full force and effect in accordance with their terms.

40.     No bulk sales law (including Article 6 of the Uniform Commercial Code) or any

similar law of any state or other jurisdiction applies in any way to the Transactions.

41.     All payment or reimbursement obligations of the Debtors owed to the Purchaser or

any Purchaser Designee pursuant to the Asset Purchase Agreement or the Ancillary Agreements

shall be paid in the manner provided therein, without further notice to or order of this Court. All

such obligations shall constitute allowed administrative claims against each of the Debtors on a

joint and several basis, with first priority administrative expense status under sections 503(b) and

507(a)(2) of the Bankruptcy Code. Until satisfied in full in cash, all such obligations shall continue

Page:        41
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
            Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
            New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
            and Other Interests; and (2) the Assumption and Assignment of Certain Executory
            Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
            Relief.

to have the protections provided in this Sale Order, and shall not be discharged, modified or

otherwise affected by any reorganization plan for the Debtors.

42.    The failure specifically to include any particular provision of the Asset Purchase

Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it

being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its

entirety.

43.    The Asset Purchase Agreement and Ancillary Agreements may be modified,

amended or supplemented in a writing signed by the parties thereto and in accordance with the

terms thereof, without further notice to or order of this Court; provided that any such modification,

amendment or supplement shall not have a material adverse effect on the Purchaser, the Purchaser

Designee, the Debtors' estates, Committee or the Secured Lenders unless approved by order of

this Court.

44.    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C.

§ 157(b), to, among other things, (i) interpret, implement, and enforce the terms and provisions of

this Sale Order, the Asset Purchase Agreement, the Ancillary Agreements, and any amendments

thereto and any waivers and consents given thereunder, (ii) compel delivery of the Acquired Assets

to the Purchaser or Purchaser Designee; (iii) enforce the injunctions and limitations of liability set

forth in this Sale Order, and (iv) enter any orders under sections 363 and 365 of the Bankruptcy

Code with respect to the Assigned Contracts.

Page:     42
Debtors:  New England Motor Freight, Inc., *et al.*
Case No.: 19-12809 (JKS)
Caption:  Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors'
          Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of
          New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances
          and Other Interests; and (2) the Assumption and Assignment of Certain Executory
          Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related
          Relief.

45.    Nothing in this Sale Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order. Nothing in this Sale Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

46.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

47.    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the provisions of this Sale Order and the terms and conditions of the Asset Purchase Agreement and the Ancillary Agreements.

48.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this Sale Order shall govern. To the extent there are any inconsistencies between the terms of this Sale Order, on the one hand, and the Asset Purchase Agreement or any Ancillary Agreement, on the other hand, the terms of this Sale Order shall govern.

# EXHIBIT A

**Asset Purchase Agreement**

*Execution Version*

**ASSET PURCHASE AGREEMENT**

BY AND AMONG

**NEW ENGLAND MOTOR FREIGHT, INC.,
EASTERN FREIGHT WAYS, INC.,
CARRIER INDUSTRIES, INC.,**

**Debtors in Possession**

AND

**ESTES EXPRESS LINES**

**as Purchaser**

April 17, 2019

## TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ................................................................................................. 1
    1.1    Definitions......................................................................................................... 1

ARTICLE II SALE AND PURCHASE OF ASSETS................................................................ 7
    2.1    Sale and Purchase of Assets............................................................................. 7
    2.2    Excluded Assets ................................................................................................ 9
    2.3    Assumed Liabilities ........................................................................................ 10
    2.4    Excluded Liabilities ........................................................................................ 10
    2.5    Purchase Price; Adjustment ........................................................................... 11
    2.6    Deposit ............................................................................................................ 11

ARTICLE III CLOSING; CONDITIONS TO CLOSING ...................................................... 11
    3.1    Closing............................................................................................................. 11
    3.2    Court Approval Required................................................................................. 12
    3.3    Conditions to Obligations of Purchaser ......................................................... 12
    3.4    Conditions to Obligations of Debtors ............................................................ 13
    3.5    Delivery of Possession of Assets ................................................................... 13

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF DEBTORS ............................ 13
    4.1    Organization, Good Standing and Power........................................................ 14
    4.2    Authority Relative to this Agreement; Execution and Binding Effect ................ 14
    4.3    Governmental and Other Consents ................................................................ 14
    4.4    No Brokers....................................................................................................... 14

ARTICLE V REPRESENTATIONS AND WARRANTIES OF PURCHASER ........................ 14
    5.1    Organization, Good Standing and Power........................................................ 14
    5.2    Authority Relative to this Agreement; Execution and Binding Effect ................ 15
    5.3    No Defaults...................................................................................................... 15
    5.4    Governmental and Other Consents ................................................................ 15
    5.5    Financial Ability .............................................................................................. 15
    5.6    No Brokers....................................................................................................... 15

ARTICLE VI COVENANTS ............................................................................................. 16
    6.1    Operation of Business ..................................................................................... 16
    6.2    Bidding Procedures Order................................................................................ 16
    6.6    Approval Order ................................................................................................ 17
    6.7    Access to Facilities, Personnel, and Information............................................ 18
    6.8    Further Assurances.......................................................................................... 18
    6.9    Tax Matters ..................................................................................................... 18
    6.10   Transaction-Related Documents..................................................................... 19

ARTICLE VII EMPLOYEES............................................................................................. 20
    7.1    Employee Matters ........................................................................................... 20
    7.2    COBRA and Benefits Coverage ..................................................................... 20

7.3    No Third-Party Beneficiaries ................................................................ 20

ARTICLE VIII TERMINATION; EFFECT OF TERMINATION .................................... 21
8.1    Termination ........................................................................................ 21
8.2    Effect of Termination ......................................................................... 21

ARTICLE IX GENERAL PROVISIONS .......................................................... 21
9.1    "As Is", "Where Is", and "With all Faults" Transaction ..................... 21
9.2    Transaction Expenses ......................................................................... 22
9.3    Certain Interpretive Matters and Definitions ..................................... 22
9.4    Termination of Representations and Warranties ................................. 22
9.5    Amendment ......................................................................................... 22
9.6    Waiver ................................................................................................. 23
9.7    Notices ................................................................................................ 23
9.8    Jurisdiction ......................................................................................... 23
9.9    Governing Law ................................................................................... 23
9.10   Damages .............................................................................................. 24
9.11   Time is of the Essence ........................................................................ 24
9.12   Severability ......................................................................................... 24
9.13   Titles and Headings ............................................................................ 24
9.14   Assignment; Successors and Assigns .................................................. 24
9.15   No Third-Party Rights ........................................................................ 24
9.16   Confidentiality Agreement .................................................................. 24
9.17   Entire Agreement ................................................................................ 24
9.18   Execution of this Agreement ............................................................... 24

**SCHEDULES**

2.1(a)        NEMF Rolling Stock
2.1(b)(i)     Sellers' Rolling Stock

**EXHIBITS**

Exhibit A     Purchase Price Allocation

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement") is made and entered into this 17th day of April, 2019, by and among New England Motor Freight, Inc., debtor in possession, a New Jersey corporation ("NEMF"), Eastern Freight Ways, Inc., debtor in possession, a New Jersey corporation ("Eastern") and Carrier Industries, Inc., debtor in possession, a New Jersey corporation (("Carrier") and, together with Eastern, "Sellers"), and Estes Express Lines, a Virginia corporation ("Purchaser").

**WHEREAS**, Eastern is in the business of providing trucking services in the Northeast and Mid-Atlantic regions of the United States and Carrier is in the business of providing third party logistic services (in the aggregate, the "Business");

**WHEREAS**, NEMF was in the business of providing less than truckload services in the Mid-Atlantic, Midwest and Northeast regions of the United States ("NEMF Business");

**WHEREAS**, on February 11, 2019 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101, *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), consolidated as Case 19-12809 (JKS) (the "Chapter 11 Case");

**WHEREAS**, each Seller continues in the possession and control of its assets and properties in accordance with §§1107 and 1108 of the Bankruptcy Code;

**WHEREAS**, NEMF continues to be in possession and control of its rolling stock in accordance with §§1107 and 1108 of the Bankruptcy Code; and

**WHEREAS**, Sellers desire to sell substantially all of their assets that are used in connection with the conduct of the Business, and NEMF desires to sell certain of its rolling stock used in the Business, to Purchaser, pursuant to the terms and conditions of this Agreement, and Purchaser desires to so purchase and acquire such assets from Sellers and NEMF (the "Acquisition"), in accordance with §§363 and 365 of the Bankruptcy Code.

**NOW, THEREFORE**, in consideration of the foregoing premises, the representations, warranties, covenants and agreements contained herein, and certain other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

1.1     **Definitions**.   As used herein, the following terms shall have the following meanings:

"Accounts Receivable" shall mean all accounts receivable of Sellers and other receivables of Sellers in existence as of the Closing Date (whether or not billed).

"Acquired Assets" has the meaning assigned to that term in Section 2.1(b).

"Acquisition" has the meaning assigned to that term in the Recitals.

"Agreement" has the meaning assigned to that term in the Preamble.

"Affiliate" means, with respect to any Person, any other Person who directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. The term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlled" and "controlling" have meanings correlative thereto.

"Allocation Methodology" has the meaning assigned to that term in Section 6.9(b).

"Allocation Schedule" has the meaning assigned to that term in Section 6.9(b).

"Ancillary Agreements" means any certificate, agreement, document or other instrument to be executed and delivered in connection with this Agreement.

"Approval Order" has the meaning assigned to that term in Section 6.6(a).

"Assigned Contracts" has the meaning assigned to that term in Section 2.1.(b)(vi).

"Assumed Liabilities" has the meaning assigned to that term in Section 2.3.

"Avoidance Actions" means all avoidance claims or causes of action under the Bankruptcy Code or applicable Law (including, without limitation, any preference or fraudulent conveyance).

"Bankruptcy Code" has the meaning assigned to that term in the Recitals.

"Bankruptcy Court" has the meaning assigned to that term in the Recitals.

"Bankruptcy Petition" means a voluntary bankruptcy petition filed by a Debtor with the Bankruptcy Court on the Petition Date.

"Bidding Procedures" means the bidding procedures attached as exhibit 1 to the Bidding Procedures Order, as amended and modified in accordance with ordered paragraph 8 of the Bidding Procedures Order.

"Bidding Procedures Order" means the Order entered in the Chapter 11 Case on April 8, 2019 [docket entry number 427].

"Business" has the meaning assigned to that term in the Recitals.

"Business Day" means any day on which commercial banking institutions are open for business in New Jersey.

"Carrier" has the meaning assigned to that term in the Preamble.

2

"Causes of Action" shall mean any and all causes of action, defenses, and counterclaims accruing to a Debtor or that is property of the Estate, based upon facts, circumstances and transactions that occurred prior to the Closing Date, and shall include, without limitation, (i) Causes of Action against past and present vendors or customers of a Seller, and (ii) Causes of Action against the directors, officers or other insiders of a Seller, (iii) Avoidance Actions, and (iv) Causes of Action against any administrative or other agent, lender or secured party related to any credit facility existing at any time whether prior to or after the filing of the Bankruptcy Petition.

"Chapter 11 Case" has the meaning assigned to that term in the Recitals.

"Claims" has the meaning assigned to that term in Section 6.6(a)(ii).

"Closing" has the meaning assigned to that term in Section 3.1.

"Closing Accounts Receivable" has the meaning assigned to that term in Section 2.5(b).

"Closing Date" has the meaning assigned to that term in Section 3.1.

"COBRA Continuation Coverage" has the meaning assigned to that term in Section 7.2.

"Code" means the Internal Revenue Code of 1986, as amended.

"Commercial Tort Claims" has the meaning given to it in Section 9-102(13) of the Uniform Commercial Code as in effect in the State of New Jersey.

"Confidentiality Agreement" has the meaning assigned to that term in Section 9.16.

"Contracts" means all agreements, contracts, leases, consensual obligations, promises or undertakings, other than Employee Benefit Plans.

"Cure Amounts" means all amounts, costs and expenses required by the Bankruptcy Court to cure all defaults under the Assigned Contracts so that they may be assumed and assigned to Purchaser pursuant to §§363 and 365 of the Bankruptcy Code.

"Debtor" shall mean a Seller and/or NEMF.

"Deposit" has the meaning assigned to that term in Section 2.6.

"Eastern" has the meaning assigned to that term in the Preamble.

"Employee" means an individual who, as of the applicable date, is employed by, or engaged to provide services to, any Seller in connection with the Business.

"Employee Benefit Plans" shall mean (i) all "employee benefit plans" (as defined in §3(3) of ERISA), including any employee pension benefit plans; (ii) all employment, consulting, non-competition, employee non-solicitation, employee loan or other compensation agreements, and (iii) all bonus or other incentive compensation, equity or equity-based compensation, stock purchase, deferred compensation, change in control, severance, leave of absence, vacation, salary continuation, medical, life insurance or other death benefit, educational assistance, training,

3

service award, dependent care, pension, welfare benefit or other material employee or fringe benefit plans, policies, agreements or arrangements, whether written or unwritten, qualified or unqualified, funded or unfunded and all underlying insurance policies, trusts and other funding vehicles, in each case currently maintained by or as to which a Seller and/or NEMF has or could reasonably be expected to have any obligation or liability, contingent or otherwise, thereunder for current or former employees, directors or individual consultants of such Seller and/or NEMF.

"ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time, and regulations and formal guidance issued thereunder.

"Estate" shall mean the estate of a Debtor created by §541 of the Bankruptcy Code upon the filing of the Bankruptcy Petition.

"Excluded Assets" has the meaning assigned to that term in Section 2.2.

"Excluded Liabilities" has the meaning assigned to that term in Section 2.4.

"Final Order" means an order of the Bankruptcy Court that has not been appealed, reversed, modified, amended or stayed and the time to appeal from or to seek review or rehearing of such order has expired.

"Governmental Authorization" means any consent, franchise, license, registration, permit, order or approval issued, granted, given or otherwise made available by or under the authority of any Governmental Body or pursuant to any Law, including, as the context may require, any declarations or filings with, or expiration of waiting periods imposed by, any such Governmental Body.

"Governmental Body" means any (i) nation, state, county, city, town, borough, village, district or other jurisdiction, (ii) federal, state, local, municipal, foreign or other government, (iii) governmental or quasi-governmental body of any nature (including any agency, branch, department, board, commission, court, tribunal or other entity exercising governmental or quasi-governmental powers), (iv) multinational organization or body, (v) body exercising, or entitled or purporting to exercise, any administrative, executive, judicial, legislative, police, regulatory or taxing authority or power, or (vi) official of any of the foregoing.

"Income Tax" means any Tax imposed on or determined in whole or in part with reference to income, gross receipts, profits or similar measure, including any interest, penalty or other addition with respect thereto.

"Intellectual Property" means all trademarks, trade names, corporate names, company names, business names, product or brand names, service marks, patents, copyrights (including but not limited to moral rights), and any applications for or registrations of any of the foregoing, works of authorship, know-how, logos, proprietary information, protocols, schematics, specifications, software, software code (in any form, including source code and executable or object code), subroutines, techniques, user interfaces, URLs, domain names, web sites, works of authorship and other forms of technology (whether or not embodied in any tangible form and including all tangible embodiments of the foregoing, such as instruction manuals, laboratory notebooks, prototypes, samples, studies and summaries) inventions, trade secrets and any other intellectual property or

4

intangible property that are used in the Business as presently conducted and any rights relating to any of the foregoing.

"Inventory" means all supplies, goods, materials, work in process, inventory and stock in trade owned by a Seller for use or sale in the ordinary course of Business, but specifically excluding (1) goods which belong to sublessees, licensees or concessionaires of such Seller, and (2) goods held by such Seller on memo, on consignment, or as bailee.

"Law" means any applicable federal, state, local, municipal, foreign, international, multinational or other constitution, law, ordinance, principle of common law, code, regulation, statute or treaty.

"Liability" means any and all obligations, liabilities, debts and commitments, whether known or unknown, asserted or unasserted, fixed, absolute or contingent, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, due or to become due, whenever or however arising (including, without limitation, whether arising out of any contract or tort based on negligence, strict liability, or otherwise) and whether or not the same would be required by GAAP to be reflected as a liability in financial statements or disclosed in the notes thereto.

"Lien" means any mortgage, deed of trust, lien, pledge, charge, title defect, security interest, pledge, leasehold interest or other legal or equitable encumbrance of any kind.

"Material Adverse Change" means any change, event, occurrence, fact, circumstance, or effect as shall have arisen after the date of this Agreement and prior to the Closing that would reasonably be expected to have, individually or in the aggregate, a materially adverse effect on (i) the operations, financial condition, business, assets or properties of Sellers, taken as a whole, or (ii) the ability of any of the parties hereto to consummate the transactions contemplated by this Agreement; provided, however, that any change, circumstance, or effect that arises out of, results from or relates to the commencement or conduct of the Chapter 11 Case shall not be considered in determining whether a Material Adverse Change has occurred and, in addition, no change, event, effect, condition, circumstance or occurrence related to any of the following shall be deemed to constitute, and none of the following shall be taken into account in determining whether there has been, a Material Adverse Change: (i) national or international business, economic, political or social conditions, including the engagement by the United States of America in hostilities, affecting (directly or indirectly) the industry in which the Sellers operate, whether or not pursuant to the declaration of a national emergency or war, or the occurrence of any military or terrorist attack upon the United States of America, except to the extent that such change has a disproportionate adverse effect on the Sellers relative to the adverse effect that such changes have on other companies in the industry in which the Sellers operate; (ii) financial, banking or securities markets (including any disruption thereof or any decline in the price of securities generally or any market or index), except to the extent that such change has a disproportionate adverse effect on the Sellers relative to the adverse effect that such changes have on other companies in the industry in which the Sellers operate; (iii) any change in GAAP or Law, except to the extent that such change has a disproportionate adverse effect on the Sellers relative to the adverse effect that such changes have on other companies in the industry in which the Sellers operate; (iv) compliance with this Agreement or any related agreement, including the taking of any action required hereby or thereby or the failure to take any action that is not permitted hereby or thereby; (v) any change

5

directly attributable to the announcement of this Agreement, including by reason of the identity of Purchaser or any of its Affiliates or any communication by Purchaser or any of its Affiliates of their plans or intentions regarding the operation of the Business; or (vi) in the case of Sellers, any failure to meet or exceed any projection or forecast provided to or reviewed by the Purchaser (provided that the underlying causes of any failure to meet such projection or forecast, to the extent not otherwise excluded from the definition of "Material Adverse Change", shall not be disregarded and may be considered in determining whether a "Material Adverse Change" has occurred).

"NEMF" has the meaning assigned to that term in the Preamble.

"NEMF Business" has the meaning assigned to that term in the Recitals.

"NEMF Rolling Stock" has the meaning assigned to that term in Section 2.1(a).

"Notice of Stalking Horse Bid" has the meaning assigned to that term in Section 6.3.

"Permitted Liens" means (i) Liens for Taxes, assessments and other governmental levies, fees or charges that are not yet due and payable and for which (and only to the extent that) adequate reserves (as determined in accordance with GAAP, consistently applied) have been established on the financial statements with respect thereto, (ii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation, (iii) Liens which constitute mechanics', carriers', workmens', repairmens', agricultural or other like Liens arising or incurred in the ordinary course of business for which amounts are not delinquent, and (iv) Liens created by Purchaser, and (v) any Lien that constitutes an Assumed Liability.

"Person" means any individual, corporation, partnership, joint venture, trust, association, limited liability company, unincorporated organization, other entity, or governmental body or subdivision, agency, commission or authority thereof.

"Personal Property" has the meaning assigned to that term in Section 2.1(b)(ii).

"Petition Date" has the meaning assigned to that term in the Recitals.

"Purchase Price" has the meaning assigned to that term in Section 2.5(a).

"Purchaser" has the meaning assigned to that term in the Preamble.

 "Rights in Transaction-Related Privileges" has the meaning assigned to such term in Section 2.2(m).

"Sellers" has the meaning assigned to that term in the Preamble.

"Target Accounts Receivable" means $2,000,000 (excluding any receivable due from HH Brown).

"Tax" or "Taxes" means any federal, state, local, or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, custom duties, capital stock, franchise, profits, withholding, social security (or

6

similar excises), unemployment, disability, ad valorem, real property, personal property, sales, use, transfer, registration, unclaimed property, escheat, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not, by any governmental authority responsible for imposition of any such tax (domestic or foreign).

"Tax Clearance Certificate" has the meaning assigned to that term in Section 6.9(c).

"Tax Purchase Price" has the meaning assigned to that term in Section 6.9(b).

"Transaction-Related Documents" has the meaning assigned to such term in Section 2.2(m).

"Transactions" has the meaning assigned to that term in Section 2.4.

"Transferred Employee" has the meaning assigned to that term in Section 7.1.

"Transfer Tax" means any sales, use, transfer, stamp, conveyance, value added or other similar Taxes, duties, excises or governmental charges imposed by any Tax authority, domestic or foreign, and all recording or filing fees (excluding vehicle registration fees), notarial fees and other similar costs; provided, however, that the term "Transfer Tax" shall not include any Income Tax.

"WARN Act" means each of the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §2101 et seq. or the Millville Dallas Airmotive Plant Job Loss Notification Act (New Jersey WARN Act) and any applicable similar state or local law which imposes obligations in circumstances of mass termination of employment.

## ARTICLE II
## SALE AND PURCHASE OF ASSETS

2.1    **Sale and Purchase of Assets**.

(a)    On the terms and subject to the conditions set forth in this Agreement, on the Closing Date, Purchaser shall purchase from NEMF, and NEMF shall sell, assign, transfer, convey and deliver to Purchaser, all of NEMF's right, title and interest in and to the trucks, trailers and other rolling stock identified on *Schedule 2.1(a)* (the "NEMF Rolling Stock"), as those assets exist on the Closing Date, free and clear of any Lien other than Permitted Liens.

(b)    On the terms and subject to the conditions set forth in this Agreement, on the Closing Date, Purchaser shall purchase from each Seller, and each Seller shall sell, assign, transfer, convey and deliver to Purchaser, all of such Seller's right, title and interest in and to all assets, properties, rights, interests, benefits and privileges of whatever kind or nature, both tangible and intangible, real and personal, wherever located, whether owned or leased, that are used by such Seller in connection with the operation of the Business (except for the Excluded Assets), to the extent transferable under applicable Law, the Bankruptcy Code or otherwise, as those assets, properties, rights, interests, benefits and privileges exist on the Closing Date, free and clear of any Lien other than Permitted Liens. Without limiting the foregoing, the assets, properties, rights, interests, benefits and privileges sold, assigned, transferred, conveyed and

7

delivered by each Debtor hereunder (collectively with the NEMF Rolling Stock, the "Acquired Assets") shall include all of such Debtors' right, title and interest in and to the following (except to the extent any of the following are included within Excluded Assets):

(i)    all of such Seller's forklifts, trucks, trailers and other rolling stock identified on *Schedule 2.1(b)(i)*;

(ii)    all of such Seller's supplies, materials, machinery, non-rolling stock equipment (including equipment that is subject to a capital lease, but only to the extent that Purchaser assumes such capital lease as an Assigned Contract), spare parts, tools, furniture, fixtures, furnishings, leasehold improvements, goods, and other tangible personal property owned by such Seller, including, but not limited to, any owned computer hardware and software (collectively, "Personal Property");

(iii)    all of such Seller's Inventory;

(iv)    all of such Seller's books and records relating to the Acquired Assets, property records, mailing lists, and customer and vendor lists;

(v)    all of such Seller's rights in Intellectual Property;

(vi)    all of such Seller's Contracts, agreements, licenses, leases, warranties, commitments, and purchase and sale orders with respect to Personal Property, Intellectual Property or otherwise that are designated by Purchaser to be assumed and assigned on the Closing Date in accordance with the Bidding Procedures Order and provided further that Purchaser shall have provided adequate assurance of future performance under §365(b)(1)(C) of the Bankruptcy Code with respect to any designated contract (collectively, "Assigned Contracts") (with such Assigned Contracts to be identified and designated in the form of a written Schedule to be provided by Purchaser), together with the right to receive income in respect of such Assigned Contracts on and after the Closing Date.  As contemplated by ordered paragraph 20 of the Bidding Procedures Order, Purchaser shall have no later than one (1) Business Day prior to the hearing to approve the sale contemplated by the Agreement to add or exclude any Contract from the Assigned Contracts to be assumed and assigned under this Section 2.1(b)(vi) or, if the Bankruptcy Court determines at any hearing on a Cure Amount/Assignment Objection (as defined in the Bidding Procedures Order) that the applicable cure amount associated with such Contract is greater than the Cure Amount proposed by the Debtors, the Purchaser shall have five (5) business days following the Bankruptcy Court's determination to exclude such Contract as an Assigned Contract;

(vii)    all of such Seller's Governmental Authorizations and all of such Seller's pending applications therefor or renewals thereof, but excluding Governmental Authorizations or pending applications therefor required for the continued operation of an Excluded Asset;

(viii)    all of such Seller's Accounts Receivable;

(ix)    copies of all personnel records (including all personnel, human resources and other records) of Sellers relating to the Transferred Employees; and

8

(x)    all goodwill relating to the Acquired Assets and/or the Business.

2.2    **Excluded Assets**.    Notwithstanding the provisions of Section 2.1 or any other provision of this Agreement, the Acquired Assets do not include, and no Debtor shall transfer to Purchaser, any of the following assets, properties, rights, interests, benefits and privileges (collectively, the "Excluded Assets"):

(a)    all cash, bank deposits, securities and cash equivalents, including for this purpose (i) all cash and cash equivalents if credited to a Seller's bank account(s) prior to the Closing Date, and (ii) all deposits and other prepaid amounts arising outside of the ordinary course of a Seller's business, including without limitation all such amounts held by a Seller's landlords, utility providers, vendors, attorneys, accountants, investment bankers, restructuring advisors, notice and claims agents, public relations advisors, and other professional advisors;

(b)    all Contracts of the Sellers other than the Assigned Contracts;

(c)    all of such Seller's prepaid expenses, advances and deposits, including (i) prepaid expenses, advances and deposits allocable to the Assigned Contracts that relate to the period prior to the Closing Date, and (ii) any deposits, security retainers paid to professionals or other prepaid amounts referred to in Section 2.2(a) above or Section 2.2(g) below;

(d)    all of such Seller's rights with respect to Employee Benefit Plans and all Contracts, agreements, licenses, leases, warranties, commitments, and purchase and sale orders and the rights associated therewith, other than the Assigned Contracts assumed as provided in Section 2.1(g);

(e)    all shares of capital stock or other equity interests in any Person held by any Seller, and all corporate minute books and records of internal corporate proceedings, stock transfer ledgers, blank stock certificates, corporate seals, tax and accounting records, work papers and other records relating to the organization or maintenance of the legal existence of a Seller;

(f)    any accounting records, tax records, financial records and any books, records or other information related solely and exclusively to the other Excluded Assets;

(g)    all records that a Seller is required by law to retain;

(h)    all refunds, credits or deposits of Taxes with respect to the period prior to the Closing Date, including without limitation any refunds, credits or deposits of Taxes arising as a result of Seller's operation of the Business or ownership, operation, utilization or maintenance of the Acquired Assets prior to the Closing Date;

(i)    all Causes of Action;

(j)    all rights to receive mail and other communications addressed to a Seller that do not relate to the Acquired Assets or the Assumed Liabilities;

(k)    the corporate franchise of any Seller and any and all prepaid expenses and deposits in respect of franchise Taxes and the like;

9

(l)       all property, rights and assets relating to an Excluded Asset or arising from and relating to the defense, release, compromise, discharge or satisfaction of any of the Liabilities which are not Assumed Liabilities;

(m)      all documents, emails and other communications relating to the negotiation of the transactions contemplated hereby or any preparations or planning with respect thereto, including without limitation all such materials consisting of memoranda, research, analysis, planning, due diligence reports, quality of earnings reports, agreements with financial advisors, investment bankers, accountants or legal counsel, whether or not subject to any attorney-client privilege, work product privilege, or any other privilege (the "Transaction-Related Documents"), and any Seller's right to exercise or waive any attorney-client privilege, work product privilege or other privilege with respect to the transactions contemplated hereby or any of the Transaction-Related Documents (the "Rights in Transaction-Related Privileges");

(n)       all rights of Debtors arising under this Agreement, the Ancillary Agreements, and under any other agreement between Debtors and Purchaser entered into in connection with this Agreement;

(o)       all good faith or other bid deposits submitted by any third party under the terms of the Bidding Procedures Order;

(p)       all insurance policies of any of the Sellers and/or their subsidiaries for directors', managers', and officers' liability and all rights of any nature with respect thereto, including all insurance recoveries, prepaid premiums, and unearned premiums thereunder and rights to assert claims with respect to any such insurance recoveries;

(q)       all Commercial Tort Claims of the Sellers;

(r)       all claims of a Debtor against another Debtor;

(s)       all of NEMF's right, title and interest in and to all assets, properties, rights, interests, benefits and privileges of whatever kind or nature, both tangible and intangible, real and personal, wherever located, whether owned or leased, that are or were used by NEMF in connection with the NEMF Business, except the NEMF Rolling Stock.

2.3     **Assumed Liabilities**. Upon the terms and subject to the conditions set forth herein, at the Closing, Purchaser shall only assume and shall only timely perform and discharge in accordance with their respective terms the following: (a) all Cure Amounts with respect to the Assigned Contracts, (b) all Liabilities with respect to the Assigned Contracts, solely to the extent such Liabilities relate to the period after the Closing, and (c) all Liabilities (including for any Tax) that arise after Closing with respect to Purchaser's ownership or operation of the Acquired Assets after the Closing (collectively "Assumed Liabilities"). For the avoidance of doubt, Assumed Liabilities shall not include any Liabilities of NEMF of any kind whatsoever.

2.4     **Excluded Liabilities**. Notwithstanding anything to the contrary contained in any other provision of this Agreement, Purchaser, by its execution and delivery of this Agreement and the Ancillary Agreements and its performance of the transactions contemplated by this Agreement and the Ancillary Agreements (the "Transactions"), shall not assume, pay or otherwise be

10

responsible for any Liability other than the Assumed Liabilities (the "Excluded Liabilities"). The Excluded Liabilities shall be the sole responsibility of the Debtors, and shall be paid, satisfied, honored and discharged by the Debtors.

2.5    **Purchase Price; Adjustment**.

(a)    Subject to the adjustment contemplated by Section 2.5(b) below, the aggregate consideration payable to Debtors for the sale and transfer of the Acquired Assets shall be (a) Fifteen Million Dollars ($15,000,000 (the "Purchase Price"), and (b) the assumption by Purchaser of the Assumed Liabilities. At the Closing, Purchaser shall deliver the Purchase Price (less the Deposit) to Debtors, by wire transfer of immediately available funds to one or more accounts designated in writing by Debtors.

(b)    On the Business Day prior to the Closing, Sellers shall deliver to Purchaser a statement setting forth the aggregate amount of the Seller's Accounts Receivable (the "Closing Accounts Receivable"), such statement being subject to Purchaser's review and approval. If the amount of the Closing Accounts Receivable is less than the Target Accounts Receivable, the Purchase Price shall be reduced on a dollar-for-dollar basis. If the amount of the Closing Accounts Receivable is greater than the Target Accounts Receivable, the Purchase Price shall be increased on a dollar-for-dollar basis.

2.6    **Deposit**. Contemporaneously with the execution of this Agreement by Purchaser, Purchaser shall deposit, in accordance with the good faith deposit provisions of the Bidding Procedures Order, One Million Five Hundred Thousand Dollars ($1,500,000) (the "Deposit") by cashier's check or wire transfer. The Deposit shall be credited against the Purchase Price at the Closing if Purchaser is the successful bidder for the Acquired Assets. If this Agreement is terminated for any reason, then the Deposit shall be forfeited to Debtors or returned to Purchaser as provided in Article VIII and the Bidding Procedures Order.

2.7    **Withholding**. Purchaser shall be entitled to deduct and withhold from any amounts payable or otherwise deliverable pursuant to this Agreement such amounts as may be required to be deducted or withheld therefrom under the Code or under any provision of state, local or foreign Law. Prior to withholding an amount hereunder, the Purchaser shall notify the payee in writing of the amount to be withheld. To the extent such amounts are so deducted or withheld, the amount of such consideration shall be treated for all purposes under this Agreement as having been paid to the Person to whom such amounts would otherwise have been paid.

**ARTICLE III**
**CLOSING; CONDITIONS TO CLOSING**

3.1    **Closing**. Subject to the terms and conditions of this Agreement, the closing (the "Closing") of the sale and purchase of the Acquired Assets and the assumption of the Assumed Liabilities shall take place at a time and place specified in the Approval Order. The time and date upon which the Closing occurs is referred to herein as the "Closing Date". Transactions at the Closing shall be deemed to take place simultaneously and none shall be deemed to have taken place until all shall have taken place.

3.2    **Court Approval Required**. Purchaser and Debtors acknowledge and agree that the Bankruptcy Court's entry of the Approval Order shall be required in order to consummate the Transactions, and that the requirement that the Approval Order be entered is a condition that cannot be waived by any party.

3.3    **Conditions to Obligations of Purchaser**.    The obligation of Purchaser to consummate the transactions contemplated by this Agreement is subject to the satisfaction, at or before the Closing, of each of the following conditions, any of which conditions may, except for the condition set forth in Section 3.2, be waived by Purchaser in its sole discretion:

(a)    Representations and Warranties. The representations and warranties of Debtors set forth in Article IV of this Agreement shall be true and correct in all material respects (except for those representations and warranties qualified by materiality, which shall be true and correct in all respects) on the date hereof and on and as of the Closing Date, as though made on and as of the Closing Date (except for representations and warranties made as of a specified date, which shall be true and correct only as of the specified date).

(b)    Agreements and Covenants. Debtors shall have performed and complied with each agreement, covenant and obligation required to be performed or complied with by them under this Agreement at or before the Closing in all material respects.

(c)    Deliveries at Closing. Debtors shall cause Purchaser to receive duly executed assignments, trademark domain name assignments, bills of sale or certificates of title, non-foreign person affidavits in accordance with Section 1.1445-2(b) of the Treasury Regulations, each dated as of the Closing Date, in form and substance reasonably satisfactory to Purchaser, for the transfer to Purchaser of all of such Debtor's right, title and interest in and to the applicable Acquired Assets free and clear of any Lien other than Permitted Liens.

(d)    Lease for North Brunswick Property. Purchaser and the owner of the real property commonly known as 212 Black Horse Lane, North Brunswick, NJ 08852, together with all buildings, structures, fixtures and improvements of all kinds situated thereon shall have entered a lease for a portion of such facility in form and substance satisfactory to Purchaser.

(e)    Consents.    All consents, authorizations, or approvals required to be obtained from any Governmental Authority shall have been obtained and be in full force and effect.

(f)    No Material Adverse Change. A Material Adverse Change shall not have occurred with respect to the Business or the Acquired Assets (taken as a whole).

(g)    Break-Up Fee and Expense Reimbursement. Both the Break-Up Fee and the Expense Reimbursement shall have been approved by the Bankruptcy Court and not subject to appeal or reconsideration.

(h)    Bidding Procedures. The Bidding Procedures as set forth in the Notice of Stalking Horse Bid, shall have been approved by the Bankruptcy Court and not subject to appeal or reconsideration.

(i)    Approval Order. The Bankruptcy Court shall have entered the Approval Order which shall be reasonably satisfactory to Purchaser and contain certain findings and rulings including, without limitation, the following: (i) approving the sale of the Acquired Assets to Purchaser free and clear of all Liens and Claims, (ii) approving the assumption and assignment of the Assigned Contracts to Purchaser, (iii) providing for the waiver of the fourteen (14) day automatic stay contained in Federal Rule of Bankruptcy Procedure 6004(h), (iv) finding that Purchaser is a "good faith purchaser" within the meaning of Section 363(m) of the Bankruptcy Code and is thereby entitled to the protection afforded a good faith, arms-length purchaser, (v) finding that the Purchase Price is fair and reasonable; (vi) finding that this Agreement was negotiated at arms-length; and (vii) finding that the sale of the Acquired Assets hereunder was conducted in a "non-collusive manner" within the meaning of Section 363(n) of the Bankruptcy Code, and the Approval Order shall have become a final, non-appealable order.

3.4    **Conditions to Obligations of Debtors**. The obligation of each Debtor to consummate the transactions contemplated by this Agreement is subject to the satisfaction, at or before the Closing, of each of the following conditions, any of which conditions may, except for the condition set forth in Section 3.2, be waived by any Debtor in its sole discretion:

(a)    Representations and Warranties. The representations and warranties of Purchaser set forth in Article V of this Agreement shall be true and correct in all material respects (except for those representations and warranties qualified by materiality, which shall be true and correct in all respects) on the date hereof and on and as of the Closing Date, as though made on and as of the Closing Date (except for representations and warranties made as of a specified date, which shall be true and correct only as of the specified date).

(b)    Agreements and Covenants. Purchaser shall have performed and complied with each agreement, covenant and obligation required to be performed or complied with by it under this Agreement at or before the Closing in all material respects.

(c)    Deliveries at Closing. Debtors shall have received from Purchaser all fully executed instruments or documents as any Debtor may reasonably request to fully effect the transfer of the Acquired Assets and assumption of the Assumed Liabilities and to otherwise consummate the Transactions.

(d)    Consents. All consents, authorizations, or approvals required to be obtained from any Governmental Authority shall have been obtained and be in full force.

3.5    **Delivery of Possession of Assets**. Right to possession of all Acquired Assets shall transfer to Purchaser at the Closing. Purchaser shall bear all risk of loss with respect to the Acquired Assets from and after the Closing.

**ARTICLE IV**
**REPRESENTATIONS AND WARRANTIES OF DEBTORS**

Each Debtor represents and warrants to Purchaser, with respect to itself only, severally and not jointly, that the statements contained in this Article IV are true and correct as of the date hereof and will be true and correct on the Closing Date.

13

4.1    **Organization, Good Standing and Power**.  Such Debtor is legally formed and in good standing under the laws of the State of its incorporation.  Subject to the applicable provisions of the Bankruptcy Code, such Debtor has the power to own its properties and carry on its business as now being conducted and is qualified to do business and is in good standing in each jurisdiction in which the failure to be so qualified and in good standing would result in a Material Adverse Change.

4.2    **Authority Relative to this Agreement; Execution and Binding Effect**.  Such Debtor has full power and authority to execute and deliver this Agreement and the Ancillary Agreements and, subject to receipt of any necessary Bankruptcy Court approval in accordance with the Bankruptcy Code, to consummate the Transactions applicable to such Debtor.  The execution and delivery of this Agreement and the Ancillary Agreements and the consummation of the Transactions have been duly and validly approved and adopted by the board of directors of such Debtor, and, except for Bankruptcy Court approval, no other proceedings or approvals on the part of such Debtor are necessary to approve this Agreement and the Ancillary Agreements and to consummate the Transactions.  This Agreement has been duly and validly executed and delivered by such Debtor. Assuming due authorization, execution and delivery by Purchaser, this Agreement constitutes, and each of the Ancillary Agreements at the Closing will constitute, the valid and binding obligation of such Debtor, enforceable against such Debtor in accordance with their terms, except as such enforcement may be limited by (a) the effect of bankruptcy, insolvency, reorganization, receivership, conservatorship, arrangement, moratorium or other laws affecting or relating to the rights of creditors generally, or (b) the rules governing the availability of specific performance, injunctive relief or other equitable remedies and general principles of equity, regardless of whether considered in a proceeding in equity or at law.

4.3    **Governmental and Other Consents**.  Except for the receipt of any necessary Bankruptcy Court approval in accordance with the Bankruptcy Code, no consent, notice, authorization or approval of, or exemption by, or filing with or notifications to any Governmental Authority or any other Person, whether pursuant to contract or otherwise, is required in connection with the execution and delivery by such Debtor of this Agreement and the Ancillary Agreements and the consummation of the Transactions.

4.4    **No Brokers**.  No Debtor has incurred or will incur, directly or indirectly, as a result of any action taken or permitted to be taken by or on behalf of such Debtor, any Liability for brokerage or finders' fees or agents' commissions or similar charges in connection with the execution and delivery by such Debtor of this Agreement and the Ancillary Agreements and the consummation of the Transactions.

**ARTICLE V**
**REPRESENTATIONS AND WARRANTIES OF PURCHASER**

Purchaser represents and warrants to Debtor that the statements contained in this Article V are true and correct as of the date hereof and will be true and correct on the Closing Date.

5.1    **Organization, Good Standing and Power**.  Purchaser is legally formed and in good standing under the laws of the state of its incorporation.  Purchaser has the power to own its properties and carry on its business as now being conducted and is qualified to do business and is

14

in good standing in each jurisdiction in which the failure to be so qualified and in good standing would result in a Material Adverse Change.

5.2 **Authority Relative to this Agreement; Execution and Binding Effect**. Purchaser has full power and authority to execute and deliver this Agreement and the Ancillary Agreements and to consummate the Transactions. The execution and delivery of this Agreement and the Ancillary Agreements and the consummation of the Transactions have been duly and validly approved and adopted by all necessary action of Purchaser and no other proceedings or approvals (shareholder or otherwise) on the part of Purchaser are necessary to approve this Agreement and the Ancillary Agreements and to consummate the Transactions. This Agreement has been duly and validly executed and delivered by Purchaser. Assuming due authorization, execution and delivery by each Debtor, this Agreement constitutes, and each of the Ancillary Agreements at the Closing will constitute, the valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with their terms, except as such enforcement may be limited by (a) the effect of bankruptcy, insolvency, reorganization, receivership, conservatorship, arrangement, moratorium or other laws affecting or relating to the rights of creditors generally, or (b) the rules governing the availability of specific performance, injunctive relief or other equitable remedies and general principles of equity, regardless of whether considered in a proceeding in equity or at law.

5.3 **No Defaults**. The execution and delivery by Purchaser of this Agreement and the Ancillary Agreements and the consummation of the Transactions do not and will not (a) with or without the giving of notice or the lapse of time, or both, conflict with, or result in the material breach of or constitute a material default under, or result in the modification, cancellation, lapse or termination of, or limitation, or curtailment under, or materially violate any (i) provision of Law, or (ii) agreement (including without limitation any loan or financing agreement), Contract, lease, power of attorney, commitment, instrument, insurance policy, arrangement, undertaking, order, decree, ruling or injunction to which Purchaser is subject or a party or by which it is bound (or with respect to which its properties or assets are subject or bound); or (b) violate the articles of incorporation or bylaws of Purchaser.

5.4 **Governmental and Other Consents**. Except for the receipt of any necessary Bankruptcy Court approval in accordance with the Bankruptcy Code and any bulk sales filings to be made by Purchaser, no consent, notice, authorization or approval of, or exemption by, or filing with or notifications to any Governmental Authority or any other Person, whether pursuant to contract or otherwise, is required in connection with the execution and delivery by Purchaser of this Agreement and the Ancillary Agreements and the consummation of the Transactions.

5.5 **Financial Ability**. Purchaser has cash available that is sufficient to enable it to pay the Deposit and the Purchase Price, as well as all other amounts (including Cure Amounts) otherwise payable to consummate the Transactions pursuant to and in accordance with this Agreement.

5.6 **No Brokers**. Purchaser has not incurred and will not incur, directly or indirectly, as a result of any action taken or permitted to be taken by or on behalf of Purchaser, any Liability for brokerage or finders' fees or agents' commissions or similar charges in connection with the

execution and delivery by Purchaser of this Agreement and the Ancillary Agreements and the consummation of the transactions contemplated hereby and thereby.

## ARTICLE VI
## COVENANTS

6.1    **Operation of Business**.  Subject to the requirements of, and the obligations imposed upon, each Debtor as debtor-in-possession and pursuant to the Bankruptcy Code and except as otherwise contemplated by this Agreement or the Bidding Procedures Order or as required to comply with debtor-in-possession financing obtained by such Debtor, from the date hereof and until the Transactions shall have been consummated or abandoned as contemplated herein, each Debtor shall operate the Business in the ordinary course (relative to that in effect immediately prior to the execution of the Agreement) and, consistent with such operation and the budget set forth in Debtor's debtor-in-possession credit agreement, and consistent with acting as a debtor-in-possession in a Chapter 11 bankruptcy case, shall use commercially reasonable efforts to maintain the goodwill associated with the Business and the relationships with the employees, customers and suppliers of the Business.  Without limiting the generality of the foregoing, from and after the date hereof until the earlier of the Closing or the termination of this Agreement in accordance with its terms, the Sellers shall not (except as consented to in writing by Purchaser) do any of the following: (a) hire any employees or terminate the services of any existing employees, increase, accelerate or provide for additional compensation, benefits (fringe or otherwise) or other rights to any current or former employee, or agree to do any of the foregoing, except as required by applicable law, and (b) materially modify, change, renew, extend or terminate any Contract or relationship with any customer of the Business, other than renewals or extensions in the ordinary course of business.

6.2    **Bidding Procedures Order**.  The purchase and sale of the Acquired Assets will be subject to competitive bidding in accordance with (and only in accordance with) the terms of the Bidding Procedures Order and the Bidding Procedures.  For the avoidance of doubt, the Purchaser shall constitute a Qualified Bidder and this Agreement a Qualified Bid under the Bidding Procedures.

6.3    **Notice of Stalking Horse Bid**.  Following the execution of this Agreement by the Debtors and the Purchaser, the Debtors shall file and serve a notice on the Bankruptcy Court docket in accordance with ordered paragraph 8 of the Bidding Procedures Order providing notice of this Agreement which shall serve as a Stalking Horse Bid (as defined in the Bidding Procedures Order) and certain amendments or modifications to the Bidding Procedures, in form reasonable satisfactory to Purchaser (the "Notice of Stalking Horse Bid").

6.4    **Break-Up Fee and Expense Reimbursement**.  As provided for in the Bidding Procedures and the Bidding Procedures Order, Purchaser shall be entitled to a Break-Up Fee (as defined in the Bidding Procedures Order) in the amount of $450,000 and an Expense Reimbursement (as defined in the Bidding Procedures Order) in the amount of $75,000. The Notice of Stalking Horse Bid shall provide notice of the Break-Up Fee and the Expense Reimbursement.

16

6.5     **Approval**. The Debtors shall diligently prosecute the approval of the amendments and modifications to the Bidding Procedures included in the Notice of Stalking Horse Bid and the Break-Up Fee and Expense Reimbursement.

6.6     **Approval Order**.

(a)     Prior to the Closing, and subject to the provisions of this Agreement, Purchaser and Debtor shall use their commercially reasonable efforts to obtain entry of an order or orders by the Bankruptcy Court pursuant to §§363 and 365 of the Bankruptcy Code (the "Approval Order"), in form and substance reasonably acceptable to the parties which shall approve this Agreement and the transactions described herein. and which shall contain the following provisions (it being understood that certain of such provisions may be contained in either the findings of fact or conclusions of law to be made by the Bankruptcy Court as part of the Approval Order):

(i)     that each Debtor may sell, transfer and assign the applicable Acquired Assets and assume and assign the applicable Assigned Contracts to Purchaser pursuant to this Agreement and Bankruptcy Code §§105, 363 and 365, as applicable

(ii)     the transfers of the Acquired Assets by each Debtor to Purchaser (A) vest or will vest Purchaser with all right, title and interest of such Debtor in and to the Acquired Assets, and to the fullest extent permitted by 11 U.S.C. § 363(f) and all other applicable laws free and clear of all Liens and claims (including, but not limited to, any "claims" *as* defined in 11 U.S.C. § 10 I (5)), reclamation claims, covenants; restrictions, hypothecations, charges, indentures, loan agreements, causes of action, instruments, contracts, leases, licenses, options, rights of first refusal, offsets, recoupment, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, claims for reimbursement, successor liability, contribution, indemnity or exoneration, assignment, preferences, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, causes of action and claims, and in each case whether secured or unsecured, choate or inchoate, filed or untiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown whether arising prior to, on, or subsequent to the date on which Debtors filed their voluntary petitions under Chapter 11 of the Bankruptcy Code, whether imposed by agreement, understanding, law, equity or otherwise (collectively, "Claims") (other than Permitted Liens), with such Liens and Claims to attach only to the proceeds of sale with the same priority, validity, force and effect as they existed with respect to the Acquired Assets prior to Closing, and (B) constitute transfers for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the State of New Jersey;

(iii)     the transactions contemplated by this Agreement are undertaken by Purchaser and Debtors at arm's length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code, and such parties are entitled to the protections of section 363(m) of the Bankruptcy Code;

(iv)     this Agreement was negotiated at arms-length;

17

(v)    the sale of the Acquired Assets hereunder was conducted in a "non-collusive manner" within the meaning of Section 363(n) of the Bankruptcy Code;

(vi)    a determination that selling the Acquired Assets free and clear of all Liens other than Permitted Liens is in the best interest of each Debtor's Estate; and

(vii)    that Purchaser shall not assume any of the Excluded Liabilities.

(b)    If the Approval Order or any other orders of the Bankruptcy Court relating to this Agreement shall be appealed by any Person (or a petition for certiorari or motion for rehearing or reargument shall be filed with respect thereto), each party hereto agrees to use commercially reasonable efforts to obtain an expedited resolution of such appeal; provided, however, that nothing herein shall preclude the parties hereto from consummating the Transactions if the Approval Order shall have been entered and has not been stayed in which event Purchaser shall be able to assert the benefits of §363(m) of the Bankruptcy Code.

6.7    **Access to Facilities, Personnel, and Information**.

(a)    Prior to the Closing, each Debtor shall permit representatives of Purchaser to have reasonable access during regular business hours and upon reasonable notice, and in a manner so as not to interfere with the normal business operations of such Debtor, to all premises, property, books, records (excluding Tax records), Contracts, and documents of or pertaining to the Business which are under such Debtor's control (provided that any representatives of Purchaser shall be subject to the confidentiality obligations under the Confidentiality Agreement or otherwise agree in writing to be bound by the terms of such Confidentiality Agreement applicable to Purchaser thereunder).

(b)    From the Closing Date through and including the first anniversary of the Closing Date, Purchaser shall grant each Seller, and their respective representatives reasonable access to the books and records transferred to Purchaser pursuant to this Agreement during regular business hours and upon reasonable notice for the purpose of allowing such Seller or its successor, or their respective representatives to perform the duties necessary for the liquidation of each Seller's Estate. To the extent reasonably required by any Seller, Purchaser shall make one or more of the Transferred Employees available to such Seller to assist in such Seller's wind-down of its Estate provided that such access does not unreasonably interfere with the conduct of the Business by Purchaser.

6.8    **Further Assurances**. Purchaser and each Debtor agree to take such further actions and execute such other documents as may be reasonably required to fulfill the conditions to Closing and, after Closing, to fully effect the transactions contemplated by this Agreement and the Ancillary Agreements and further secure to each party the rights intended to be conferred hereby and thereby.

6.9    **Tax Matters**.

(a)    All Transfer Taxes incurred in connection with the purchase and sale of the Acquired Assets shall be borne equally by Debtors, on the one hand, and Purchaser, on the other hand, in each case when due. Debtors shall file, to the extent required by applicable Law,

18

all necessary Tax Returns and other documentation with respect to all such Transfer Taxes. To the extent required by applicable Law, Purchaser will join in the execution of any such Tax Returns or other documentation.

(b)      Purchaser and Debtors agree that the Purchase Price and Assumed Liabilities (together with any other amounts treated as consideration for Income Tax purposes) (the "Tax Purchase Price") shall be allocated among the Acquired Assets in a manner that is in accordance with the allocation methodology set forth on Exhibit A hereto and Section 1060 of the Code and the Treasury Regulations promulgated thereunder (collectively, the "Allocation Methodology"). Purchaser and Debtors shall negotiate in good faith, on or prior to the Closing Date, an allocation of the Tax Purchase Price among the Acquired Assets in accordance with the Allocation Methodology. Purchaser and Debtors shall each file all Tax returns (and IRS Form 8594, if applicable) on the basis of such agreed upon allocation (the "Allocation Schedule"), and no party shall thereafter take a Tax return position inconsistent with such Allocation Schedule unless such inconsistent position shall arise out of or through an audit or other inquiry or examination by the Internal Revenue Service or other Governmental Body responsible for Taxes. Any adjustments to the Purchase Price pursuant to this Agreement shall be allocated in a manner consistent with the Allocation Schedule. Notwithstanding the allocation of the Tax Purchase Price in this Section 6.9(b), nothing in the foregoing shall be determinative of values ascribed to the Acquired Assets or the allocation of the value of the Acquired Assets in any proceeding in the Chapter 11 Case that may be proposed. Debtors reserve the right on their behalf and on behalf of Debtors' estates, to the extent not prohibited by applicable law and accounting rules, for purposes of any proceeding in connection with the Chapter 11 Case, to ascribe values to the Acquired Assets and to allocate the value of the Acquired Assets to Debtors in the event of, or in order to resolve, creditor disputes in the Chapter 11 Case.

(c)      If requested by Purchaser, each Debtor shall notify all of the Taxing authorities in the jurisdictions that impose Taxes on such Debtor or where such Debtor has a duty to file Tax Returns in connection with the transactions contemplated by this Agreement in the form and manner required by such Taxing authorities, if the failure to make such notifications or receive any available tax clearance certificate (a "Tax Clearance Certificate") could subject Purchaser to any Taxes of Debtors. If any Taxing authority asserts that any Debtor is liable for any Tax, such Debtor shall promptly pay or in good faith contest any and all such amounts and shall provide evidence to Purchaser that such liabilities have been paid in full or otherwise satisfied or contested.

6.10    **Transaction-Related Documents**.  In light of the fact that all Transaction-Related Documents are excluded assets, and notwithstanding any other provision hereof, each Seller and its designated representative shall have the right to cause the removal of any and all Transaction-Related Documents which may exist in any of the files of such Seller or on any of its computer systems.  The parties hereto acknowledge that notwithstanding the foregoing, certain Transaction-Related Documents may inadvertently be or remain resident in the files or computer systems of a Seller following the Closing.  Accordingly, Purchaser covenants and agrees that it shall not seek to access, review or copy any of such Transaction-Related Documents which may remain in any of the files of a Seller or on any of its computer systems, including without limitation its back- up, business continuity or archive systems, at any time, and shall promptly delete or destroy any of such Transaction-Related Documents of which it may become aware.  In addition, at the written

19

request of any Seller from time to time for so long as the Chapter 11 Case shall not have been discharged, Purchaser shall permit any Seller and its designated representatives reasonable access to Purchaser's facilities and systems, including without limitation its back-up, business continuity or archive systems, upon reasonable notice and during business hours, as necessary to access Transaction-Related Documents or other Excluded Assets for the limited purpose of removing or destroying any such Transaction-Related Documents or otherwise taking action necessary or appropriate in connection with the Chapter 11 Case, and shall cooperate with any Seller in connection therewith, and each Seller agrees to exercise such right in a manner reasonably designed to protect the confidentiality of Purchaser's information and to minimize interference with the operation of its business.

6.11 **Transition Services**. From the Closing until August 31, 2019, NEMF shall provide (and shall use best efforts to provide through September 30, 2019) to Purchaser (at no cost to Purchaser) access to its NEMIS/AS400 Server to facilitate the transition and integration of the Business after the Closing. During this period, Purchaser (and its representatives) shall be afforded access to NEMF's facility for the purpose of copying and/or downloading applicable files of the Business that will facilitate the migration to Purchaser's own server.

### ARTICLE VII
### EMPLOYEES

7.1 **Employee Matters**. Purchaser may offer employment to the Employees of Sellers, as selected by Purchaser (as applicable, "Transferred Employees"), on such terms and conditions as may be acceptable to the Employees and Purchaser in its sole discretion and need not bear any relationship to terms and provisions applicable to their employment by Sellers; provided, however, Purchaser shall (i) make a sufficient number of employment offers on such terms and conditions as necessary to ensure that the termination by Sellers of Sellers' Employees as of the Closing Date will not trigger obligations, if any, under the WARN Act or (ii) pay all obligations and expenses pursuant to the WARN Act, if any.

7.2 **COBRA and Benefits Coverage**. Effective on the Closing Date, the group health plans maintained by NEMF in which the Employees of Sellers are participants will be terminated. Purchaser will be responsible for providing continued medical coverage pursuant to its group health plans under Part 6, Title I of ERISA and Section 4980B of the Code ("COBRA Continuation Coverage"), for each Employee of Sellers not hired by Purchaser and for each "M&A qualified beneficiary" (within the meaning of Treasury Regulation §54.4980B-9 Q&A-4) applicable to the Acquired Assets. As soon as practicable prior to the Closing, Sellers will provide to Purchaser a list of all M&A qualified beneficiaries who are receiving or eligible to elect COBRA Continuation Coverage on the Closing Date, and Purchaser will issue to them all COBRA Continuation Coverage notices.

7.3 **No Third-Party Beneficiaries**. Sellers and Purchaser acknowledge and agree that all provisions contained in this Article VII, with respect to current or former Employees are included for the sole benefit of Sellers and Purchaser, and that nothing herein, whether express or implied, shall create any third-party beneficiary or other rights (i) in any other Person, including, without limitation, any current or former employees, directors, officers or consultants of Sellers,

20

any participant in any Employee Benefit Plan, or any dependent or beneficiary thereof, or (ii) to continued employment with Purchaser.

## ARTICLE VIII
## TERMINATION; EFFECT OF TERMINATION

8.1    **Termination**. This Agreement may, by notice given prior to or at the Closing, be terminated:

(a)    by mutual consent of Purchaser and Debtors;

(b)    by Debtors or Purchaser in the event the Closing has not occurred (other than through failure of any party seeking to terminate this Agreement to comply fully with its obligations under this Agreement) on or before July 31, 2019;

(c)    by Debtors if, incident to the Bid Procedures Order, Debtors accept and closes on a competing bid for the purchase of all or part of the Acquired Assets;

(d)    by Purchaser if (i) any Debtor shall file a motion to sell all or part of the Acquired Assets to a third party other than Purchaser and shall thereafter consummate such sale, or (ii) any Debtor's Chapter 11 Case is converted to one under Chapter 7 of the Bankruptcy Code; or

(e)    by the non-breaching party upon a material breach of any provision of this Agreement, underlined provided that such breach has not been waived by the non-breaching party and has continued after notice to the breaching party by the non-breaching party without cure for a period of five (5) Business Days (underlined provided that the non-breaching party shall have an immediate right to terminate if the breaching party has willfully breached any provision of this Agreement which breach is not cured).

8.2    **Effect of Termination**. If this Agreement is terminated pursuant to Section 8.1(a), by Debtors pursuant to Section 8.1(c) or if Debtors elect not to sell the Acquired Assets to Purchaser in Purchaser's capacity as Back-up Bidder (as defined in the Bidding Procedures), by either party pursuant to Section 8.1(b), or by Purchaser pursuant to Section 8.1(b), (d) or (e), Purchaser shall have no Liability or obligations under this Agreement and the Deposit shall be returned to Purchaser. If this Agreement is terminated by Debtors pursuant to Section 8.1(e), Purchaser shall forfeit the Deposit, and, in addition, Debtors may exercise whatever remedies may be available to them in equity or at law. In no event shall any termination of this Agreement relieve any party hereto of any Liability for any willful breach of this Agreement by such party. If Debtors receive the Deposit, such receipt shall constitute liquidated damages, which the parties agree is fair and reasonable and shall not be deemed a penalty, and Purchaser and its Affiliates shall be released from any further Liability under this Agreement.

## ARTICLE IX
## GENERAL PROVISIONS

9.1    **"As Is", "Where Is", and "With all Faults" Transaction**. PURCHASER ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY PROVIDED IN

21

ARTICLE IV, DEBTORS MAKE NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE ACQUIRED ASSETS, INCLUDING (A) FINANCIAL PROJECTIONS, REVENUES, PROFITS OR INCOME TO BE DERIVED OR COSTS OR EXPENSES TO BE INCURRED IN CONNECTION WITH THE ACQUIRED ASSETS, (B) THE PHYSICAL CONDITION OF ANY ACQUIRED ASSETS, (C) THE ENVIRONMENTAL CONDITION OR OTHER MATTERS RELATING TO THE PHYSICAL CONDITION OF THE REAL PROPERTY OCCUPIED BY SELLERS, (D) THE ZONING OF THE REAL PROPERTY OCCUPIED BY SELLERS, (E) THE VALUE OF THE ACQUIRED ASSETS OR ANY PORTION THEREOF, (F) THE TRANSFERABILITY OF THE ACQUIRED ASSETS, (G) THE TERMS, AMOUNT, VALIDITY OR ENFORCEABILITY OF ANY ASSUMED LIABILITIES, (H) TITLE TO ANY OF THE ACQUIRED ASSETS OR ANY PORTION THEREOF, (I) THE MERCHANTABILITY OR FITNESS OF THE ACQUIRED ASSETS OR ANY PORTION THEREOF FOR ANY PARTICULAR PURPOSE, OR (J) ANY OTHER MATTER OR THING RELATING TO THE ACQUIRED ASSETS OR ANY PORTION THEREOF. PURCHASER ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF ALL ACQUIRED ASSETS AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE ACQUIRED ASSETS AS PURCHASER DEEMS NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE ACQUIRED ASSETS, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN SECTION IV, PURCHASER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS. ACCORDINGLY, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN SECTION IV, PURCHASER WILL ACCEPT THE ACQUIRED ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

9.2    **Transaction Expenses**.  Except as expressly provided for herein, each party shall pay all fees, costs and expenses incurred by it with respect to this Agreement, whether or not the transactions contemplated by this Agreement are consummated.

9.3    **Certain Interpretive Matters and Definitions**.  Unless the context requires, (a) references to the plural include the singular and references to the singular include the plural, (b) references to any gender includes the other gender, (c) the words "include," "includes" and "including" do not limit the preceding terms or words and shall be deemed to be followed by the words "without limitation", (d) the terms "hereof", "herein", "hereunder", "hereto" and similar terms in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement, and (e) all references to Sections, Articles, or Schedules are to Sections, Articles, Exhibits or Schedules of or to this Agreement.

9.4    **Termination of Representations and Warranties**.  The representations and warranties of the parties set forth in this Agreement shall terminate and be of no further force or effect after the Closing.

9.5    **Amendment**.  This Agreement may be amended or modified in whole or in part at any time by an agreement in writing among the parties.

22

9.6    **Waiver**. The waiver by a party of a breach of any covenant, agreement, condition or undertaking contained herein shall be made only by a written waiver in each case. No waiver of any breach of any covenant, agreement, condition or undertaking contained herein shall operate as a waiver of any prior or subsequent breach of the same covenant, agreement, condition or undertaking or as a waiver of any breach of any other covenant, agreement, condition or undertaking.

9.7    **Notices**. All notices, requests and other communications hereunder will be deemed to have been duly given if delivered personally, by an established overnight delivery company, or by certified or registered mail, postage prepaid, return receipt requested, as follows:

|     |     |     |
|-----|-----|-----|
| (a) | If to any Debtor: | Phoenix Management Services<br>110 Commons Court<br>Chadds Ford, PA 19317<br>Attn: Vincent J. Colistra |
|     | with a copy to: | Gibbons P.C<br>One Gateway Center<br>Newark, New Jersey 07102<br>Attn: Lawrence A. Goldman, Esq. |
| (b) | If to Purchaser: | Estes Express Lines<br>3901 West Broad Street<br>Richmond, VA 23230<br>Attn: Bobby Speight |
|     | with a copy to: | McGuireWoods LLP<br>Gateway Plaza<br>800 East Canal Street<br>Richmond, Virginia 23219<br>Attn: Bryce D. Jewett III |

or to such other address as may hereafter be designated by a party by the giving of notice in accordance with this Section 9.7. All notices, requests or other communications shall be deemed given when actually delivered if delivered personally or by an established overnight delivery company or upon actual receipt if delivered by certified or registered mail, postage prepaid, return receipt requested.

9.8    **Jurisdiction**. The parties agree that the Bankruptcy Court shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement or the implementation or breach hereof.

9.9    **Governing Law**. To the extent not governed by the Bankruptcy Code, this Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, without giving effect to rules governing the conflict of laws.

9.10 **Damages**. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NO PARTY SHALL BE LIABLE FOR INCIDENTAL, EXEMPLARY, SPECIAL, INDIRECT OR PUNITIVE DAMAGES ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT.

9.11 **Time is of the Essence**. Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

9.12 **Severability**. If any provision of this Agreement shall be held invalid, illegal or unenforceable, in whole or in part, the validity, legality, and enforceability of the remaining part of such provision, and the validity, legality and enforceability of all other provisions hereof or thereof, shall not be affected thereby.

9.13 **Titles and Headings**. Titles and headings of sections of this Agreement are for convenience of reference only and shall not affect the construction of any provision of this Agreement.

9.14 **Assignment; Successors and Assigns**. This Agreement and the rights, duties and obligations hereunder may not be assigned by any party without the prior written consent of the other parties, and any attempted assignment without consent shall be void. Subject to this Section 9.14, this Agreement and the provisions hereof shall be binding upon each of the parties, their successors and permitted assigns.

9.15 **No Third-Party Rights**. The parties do not intend to confer any benefit hereunder on any Person other than the parties hereto.

9.16 **Confidentiality Agreement**. The parties acknowledge that the Confidentiality Agreement between Purchaser and Sellers (the "Confidentiality Agreement") shall remain in full force and effect during the term specified therein.

9.17 **Entire Agreement**. This Agreement, the Ancillary Agreements and the Confidentiality Agreement constitute the entire agreement between the parties regarding the subject matter hereof and no extrinsic evidence whatsoever may be introduced in any proceeding involving this Agreement, the Ancillary Agreements or the Confidentiality Agreement.

9.18 **Execution of this Agreement**. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by electronic transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by electronic transmission shall be deemed to be their original signatures for all purposes.

*(Signatures appear on following page)*

24

IN WITNESS WHEREOF, the parties have caused their duly authorized officers to execute this Agreement as of the day and year first written above.

SELLERS:

EASTERN FREIGHT WAYS, INC.,
Debtor in Possession, a New Jersey corporation

By: _____
Name:  Vincent J. Colistra
Title:  Chief Restructuring Officer

CARRIER INDUSTRIES, INC.,
Debtor in Possession, a New Jersey corporation

By: _____
Name:  Vincent J. Colistra
Title:  Chief Restructuring Officer

NEW ENGLAND MOTOR FREIGHT, INC.,
Debtor in Possession, a New Jersey corporation

By: _____
Name:  Vincent J. Colistra
Title:  Chief Restructuring Officer

PURCHASER:

ESTES EXPRESS LINES
a Virginia corporation

By: _____
Name:  Robert W Speight Jr
Title:  Corporate Vice president, Estes Level 2

[SIGNATURE PAGE TO ASSET PURCHASE AGREEMENT]

### SCHEDULE 2.1(a)

### NEMF's Rolling Stock

| Type of Equipment | Unit Number | Description | VIN # | YEAR | MAKE | MODEL |
|---|---|---|---|---|---|---|
| Vans | S93583 | 53 LINE HAUL TRAILER | 3H3V532C9GT042019 | 2016 | HYUNDAI | 53 VAN |
| Vans | 531024 | 53 LINE HAUL TRAILER | 3H3V532C0GT701007 | 2016 | HYUNDAI | 53 VAN |
| Vans | S93550 | 53FT TRAILER | 1GRAP0629DD444765 | 2013 | GREAT DANE | CPL 215053 |
| Vans | S93553 | 53FT TRAILER | 1GRAP0624DD444768 | 2013 | GREAT DANE | CPL 215053 |
| Vans | S93554 | 53FT TRAILER | 1GRAP0626DD444769 | 2013 | GREAT DANE | CPL 215053 |
| Vans | S93555 | 53FT TRAILER | 1GRAP0622DD444770 | 2013 | GREAT DANE | CPL 215053 |
| Vans | S93557 | 53FT TRAILER | 1GRAP0626DD444772 | 2013 | GREAT DANE | CPL 215053 |
| Vans | S93560 | 53FT TRAILER | 1GRAP0621DD444775 | 2013 | GREAT DANE | CPL 215053 |
| Vans | S93563 | 53FT TRAILER | 1GRAP0627DD444778 | 2013 | GREAT DANE | CPL 215053 |
| Vans | S93564 | 53FT TRAILER | 1GRAP0629DD444779 | 2013 | GREAT DANE | CPL 215053 |
| Vans | S93569 | 53FT TRAILER | 1GRAP0622DD444784 | 2013 | GREAT DANE | CPL 215053 |
| Vans | S93570 | 53FT TRAILER | 1GRAP0624DD444785 | 2013 | GREAT DANE | CPL 215053 |
| Vans | 53770 | 53FT TRAILER | 1GRAP0626DD444836 | 2013 | GREAT DANE | CPL 22053 |
| Vans | 53829 | 53FT TRAILER | 1GRAP0620FD455947 | 2015 | GREAT DANE | CCC 02053 |
| Vans | 53857 | 53FT TRAILER | 1GRAP0621FD455875 | 2015 | GREAT DANE | CCC 02053 |
| Vans | K99264 | TRAILER/KAPTIVE | 1GRAA062X4D405796 | 2004 | GREAT DANE | VAN |
| Vans | K97234 | TRAILER/KAPTIVE | 1JJV532W37L029437 | 2007 | WABASH | VAN |
| Vans | K97269 | TRAILER/KAPTIVE | 1JJV532W57L029472 | 2007 | WABASH | VAN |
| Vans | K97304 | TRAILER KAPTIVE BEAM | 1JJV532W68L122549 | 2008 | WABASH | VAN |
| Vans | 531261 | 53 LINE HAUL TRAILER | 1GRAP0629JD123398 | 2018 | GREAT DANE | 53 VAN |
| Vans | 531262 | 53 LINE HAUL TRAILER | 1GRAP0620JD123399 | 2018 | GREAT DANE | 53 VAN |
| Vans | 531263 | 53 LINE HAUL TRAILER | 1GRAP0623JD123400 | 2018 | GREAT DANE | 53 VAN |
| Flatbed | F81517 | TRAILER / FLATBED | 1GRDM9629FH724983 | 2015 | GREAT DANE | FLATBED |
| Flatbed | F81518 | TRAILER / FLATBED | 1GRDM9620FH724984 | 2015 | GREAT DANE | FLATBED |
| Flatbed | F81519 | TRAILER / FLATBED | 1GRDM9622FH724985 | 2015 | GREAT DANE | FLATBED |
| Flatbed | F81520 | TRAILER / FLATBED | 1GRDM9624FH724986 | 2015 | GREAT DANE | FLATBED |
| Flatbed | F81521 | TRAILER / FLATBED | 1GRDM9626FH724987 | 2015 | GREAT DANE | FLATBED |

| Flatbed | F81522 | TRAILER / FLATBED | 1GRDM9628FH724988 | 2015 | GREAT DANE | FLATBED |
|---------|--------|-------------------|-------------------|------|------------|---------|
| Flatbed | F81523 | TRAILER / FLATBED | 1GRDM9629FH724997 | 2015 | GREAT DANE | FLATBED |
| Flatbed | F81524 | TRAILER / FLATBED | 1GRDM9620FH724998 | 2015 | GREAT DANE | FLATBED |
| Flatbed | F81525 | TRAILER / FLATBED | 1GRDM9622FH724999 | 2015 | GREAT DANE | FLATBED |
| Flatbed | F81526 | TRAILER / FLATBED | 1GRDM9628FH725008 | 2015 | GREAT DANE | FLATBED |
| Flatbed | F81527 | TRAILER / FLATBED | 1GRDM962XFH725009 | 2015 | GREAT DANE | FLATBED |
| Flatbed | F81528 | TRAILER / FLATBED | 1GRDM9626FH725010 | 2015 | GREAT DANE | FLATBED |
| Vans | 531075 | 53FT TRAILER | 1GRAP0624HD467960 | 2017 | GREAT DANE | CCC 02053 |
| Vans | 531166 | 53 LINE HAUL TRAILER | 3H3V532C5HT448008 | 2017 | HYUNDAI | 53 VAN |
| Vans | 531150 | 53 LINE HAUL TRAILER | 1GRAP0628JT111488 | 2018 | GREAT DANE | 53 VAN |
| Vans | 531217 | 53 LINE HAUL TRAILER | 1GRAP0620JD123354 | 2018 | GREAT DANE | 53 VAN |
| Vans | 531250 | 53 LINE HAUL TRAILER | 1GRAP0624JD123387 | 2018 | GREAT DANE | 53 VAN |
| Flatbed | F81402 | TRAILER/FLATBED | 1GRDM9621EH722062 | 2014 | GREAT DANE | FLATBED |
| Flatbed | F81403 | TRAILER/FLATBED | 1GRDM9623EH722063 | 2014 | GREAT DANE | FLATBED |
| Flatbed | F81404 | TRAILER/FLATBED | 1GRDM9625EH722064 | 2014 | GREAT DANE | FLATBED |
| Flatbed | F81405 | TRAILER/FLATBED | 1GRDM9627EH722065 | 2014 | GREAT DANE | FLATBED |
| Flatbed | F81406 | TRAILER/FLATBED | 1GRDM9629EH722066 | 2014 | GREAT DANE | FLATBED |
| Flatbed | F81407 | TRAILER/FLATBED | 1GRDM9620EH722067 | 2014 | GREAT DANE | FLATBED |
| Flatbed | F81408 | TRAILER/FLATBED | 1GRDM9622EH722068 | 2014 | GREAT DANE | FLATBED |
| Flatbed | F81409 | TRAILER FLATBED | 1GRDM9625EH722078 | 2014 | GREAT DANE | FLATBED |
| Flatbed | F81401 | TRAILER/FLATBED | 1GRDM962XEH722061 | 2014 | GREAT DANE | FLATBED |
| Vans | 53815 | 53FT TRAILER | 1GRAP0620FD455933 | 2015 | GREAT DANE | CCC02053 |
| Vans | 53924 | 53 LINE HAUL TRAILER | 3H3V532C8FT580029 | 2015 | HYUNDAI | 53 VAN |
| Tractor | 82036 | TRACTOR CARRIER | 1M1AA09Y51W022973 | 2001 | MACK | CH612 |
| Tractor | 82063 | TRACTOR CARRIER | 1M1AA09Y21W023000 | 2001 | MACK | CH612 |
| Tractor | 82083 | TRACTOR CARRIER | 1M1AA09Y81W023020 | 2001 | MACK | CH612 |
| Tractor | 82096 | TRACTOR CARRIER | 1M1AA09Y61W023033 | 2001 | MACK | CH612 |
| Tractor | 82101 | TRACTOR CARRIER | 1M1AA09Y51W023038 | 2001 | MACK | CH612 |
| Tractor | 82103 | TRACTOR CARRIER | 1M1AA09Y31W023040 | 2001 | MACK | CH612 |
| Tractor | 82112 | TRACTOR CARRIER | 1M1AA09YX1W023049 | 2001 | MACK | CH612 |
| Tractor | 82118 | TRACTOR CARRIER | 1M1AA09Y51W023055 | 2001 | MACK | CH612 |
| Tractor | 92011 | TRACTOR CARRIER | 1M1AA14Y51W140017 | 2001 | MACK | CH613 |

Sch. 2.1(a)-2

| Tractor | 92016 | TRACTOR CARRIER | 1M1AA14Y91W140022 | 2001 | MACK | CH613 |
|---------|-------|-----------------|-------------------|------|------|-------|
| Vans | 93051 | TRAILER | 1S12S9535VD416808 | 1997 | STRICK | VAN |
| Vans | 93135 | TRAILER | 1S12S9539VD416892 | 1997 | STRICK | VAN |
| Vans | 98112 | TRAILER | 1S12E9538WD423504 | 1998 | STRICK | VAN |
| Vans | 98175 | TRAILER | 1S12E953XWD423567 | 1998 | STRICK | VAN |
| Vans | 98181 | TRAILER | 1S12E9535WD423573 | 1998 | STRICK | VAN |
| Vans | 98196 | TRAILER | 1S12E9537WD423588 | 1998 | STRICK | VAN |
| Vans | 98198 | TRAILER | 1S12E9535WD423590 | 1998 | STRICK | VAN |
| Vans | A93416 | TRAILER | 11JV532W0WL451826 | 1998 | WABASH | VAN |
| Vans | A93423 | TRAILER | 1JJV532W9WL492889 | 1998 | WABASH | VAN |
| Vans | A93403 | TRAILER | 1DW1A5327XS253028 | 1999 | STOUGHTON | VAN |
| Vans | A93415 | TRAILER | 1DW1A5328XS241986 | 1999 | STOUGHTON | VAN |
| Vans | 98211 | TRAILER | 1S12E9535XD435594 | 1999 | STRICK | VAN |
| Vans | 98221 | TRAILER | 1S12E9534XD435604 | 1999 | STRICK | VAN |
| Vans | 53253 | TRAILER | 1JJV532F5YF638304 | 2000 | FRUE | VAN |
| Vans | 53364 | TRAILER | 1JJV532F3YF638415 | 2000 | FRUE | VAN |
| Vans | K99509 | TRAILER/KAPTIVE | 1S12E9531YD454046 | 2000 | STRICK | VAN |
| Vans | 53499 | TRAILER | 1S12S8539YD465850 | 2000 | STRICK | VAN |
| Vans | 93200 | TRAILER | 1JJV532W8YL663053 | 2000 | WABASH | VAN |
| Vans | 93205 | TRAILER | 1JJV532W7YL663058 | 2000 | WABASH | VAN |
| Vans | 93210 | TRAILER | 1JJV532W0YL663063 | 2000 | WABASH | VAN |
| Vans | 93211 | TRAILER | 1JJV532W2YL663064 | 2000 | WABASH | VAN |
| Vans | 93218 | TRAILER | 1JJV532WXYL663071 | 2000 | WABASH | VAN |
| Vans | 93224 | TRAILER | 1JJV532W0YL663077 | 2000 | WABASH | VAN |
| Vans | 93229 | TRAILER | 1JJV532W4YL663082 | 2000 | WABASH | VAN |
| Vans | 93239 | TRAILER | 1JJV532W7YL663092 | 2000 | WABASH | VAN |
| Vans | 93245 | TRAILER | 1JJV532W8YL663098 | 2000 | WABASH | VAN |
| Vans | 93255 | TRAILER | 1JJV532W7YL663108 | 2000 | WABASH | VAN |
| Vans | 93256 | TRAILER | 1JJV532W9YL663109 | 2000 | WABASH | VAN |
| Vans | 93266 | TRAILER | 1JJV532W1YL663119 | 2000 | WABASH | VAN |
| Vans | 93267 | TRAILER | 1JJV532W8YL663120 | 2000 | WABASH | VAN |
| Vans | 93268 | TRAILER | 1JJV532WXYL663121 | 2000 | WABASH | VAN |
| Vans | 93272 | TRAILER | 1JJV532W7YL663125 | 2000 | WABASH | VAN |
| Vans | 93279 | TRAILER | 1JJV532W4YL663132 | 2000 | WABASH | VAN |
| Vans | 93280 | TRAILER | 1JJV532W6YL663133 | 2000 | WABASH | VAN |
| Vans | 93286 | TRAILER | 1JJV532W7YL663139 | 2000 | WABASH | VAN |
| Vans | 93305 | TRAILER | 1VVSV53281F014291 | 2001 | VANCO | VAN |
| Vans | 93307 | TRAILER | 1VVSV53211F014293 | 2001 | VANCO | VAN |
| Vans | 93308 | TRAILER | 1VVSV53231F014294 | 2001 | VANCO | VAN |
| Vans | 93311 | TRAILER | 1VVSV53291F014297 | 2001 | VANCO | VAN |
| Vans | 53561 | TRAILER | 1S12S85322D474090 | 2002 | STRICK | VAN |

Sch. 2.1(a)-3

| Vans | 53570 | TRAILER | 1GRAA06243D401449 | 2003 | GREAT DANE | VAN |
|------|-------|---------|-------------------|------|------------|-----|
| Vans | 53592 | TRAILER | 1GRAA06283D401471 | 2003 | GREAT DANE | VAN |
| Vans | K98268 | TRAILER/KAPTIVE | 1VVSV53263F015073 | 2003 | VANCO | VAN |
| Vans | K99195 | TRAILER/KAPTIVE | 1VVSV53274F015555 | 2004 | VANCO | VAN |
| Vans | A93427 | TRAILER-EFW | 1S12E95376E511910 | 2006 | STRICK | VAN |
| Vans | A93429 | TRAILER-EFW | 1S12E95306E511912 | 2006 | STRICK | VAN |
| Vans | A93440 | TRAILER EFW | 1S12E95356E511923 | 2006 | STRICK | VAN |
| Vans | A93443 | TRAILER-EFW | 1S12E95306E511926 | 2006 | STRICK | VAN |
| Vans | A93502 | TRAILER | 1S12E95366E511835 | 2006 | STRICK | VAN |
| Vans | A93504 | TRAILER | 1S12E95316E511837 | 2006 | STRICK | VAN |
| Vans | 93350 | TRAILER | 1VVSV53276F016305 | 2006 | VANCO | VAN |
| Vans | 93363 | TRAILER | 1VVSV53256F016318 | 2006 | VANCO | VAN |
| Vans | 93381 | TRAILER | 1VVSV53276F016336 | 2006 | VANCO | VAN |
| Vans | 93388 | TRAILER | 1VVSV53246F016343 | 2006 | VANCO | VAN |
| Vans | K97472 | TRAILER/KAPTIVE | 1JJV532W18L122717 | 2008 | WABASH | VAN |
| Flatbed | F90201 | TRAILER/FLATBED | 1GRDM98233M007138 | 2003 | GREAT DANE | FLATBED |
| Flatbed | F90301 | TRAILER/FLATBED | 1GRDM98283M007121 | 2003 | GREAT DANE | FLATBED |
| Flatbed | F90302 | TRAILER/FLATBED | 1GRDM98263M007134 | 2003 | GREAT DANE | FLATBED |
| Flatbed | F90303 | TRAILER/FLATBED | 1GRDM98233M007124 | 2003 | GREAT DANE | FLATBED |
| Flatbed | F90304 | TRAILER/FLATBED | 1GRDM98203M007128 | 2003 | GREAT DANE | FLATBED |
| Flatbed | F90305 | TRAILER/FLATBED | 1GRDM98263M007148 | 2003 | GREAT DANE | FLATBED |
| Flatbed | F90401 | TRAILER/FLATBED | 1GRDN98224M700400 | 2004 | GREAT DANE | FLATBED |
| Flatbed | F90402 | TRAILER/FLATBED | 1GRDM98214M700405 | 2004 | GREAT DANE | FLATBED |
| Flatbed | F90405 | TRAILER/FLATBED | 1GRDM98204M700430 | 2004 | GREAT DANE | FLATBED |
| Flatbed | F90409 | TRAILER/FLATBED | 1GRDM98224M700414 | 2004 | GREAT DANE | FLATBED |
| Flatbed | F90501 | TRAILER/FLAT BED | 1GRDM02265M701460 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90502 | TRAILER/FLAT BED | 1GRDM02215M701463 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90503 | TRAILER/FLAT BED | 1GRDM02575M701466 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90504 | TRAILER/FLAT BED | 1GRDM02295M701467 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90505 | TRAILER/FLAT BED | 1GRDM02205M701468 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90506 | TRAILER/FLAT BED | 1GRDM02205M701471 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90507 | TRAILER/FLAT BED | 1GRDM02245M701473 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90508 | TRAILER/FLAT BED | 1GRDM02285M701475 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90509 | TRAILER/FLAT BED | 1GRDM02215M701477 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90510 | TRAILER/FLAT BED | 1GRDM02235M701478 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90511 | TRAILER/FLAT BED | 1GRDM02215M701480 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90512 | TRAILER/FLAT BED | 1GRDM02275M701483 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90513 | TRAILER/FLAT BED | 1GRDM02295M701484 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90514 | TRAILER/FLAT BED | 1GRDM02205M701485 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90515 | TRAILER/FLAT BED | 1GRDM02265M701488 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90516 | TRAILER/FLAT BED | 1GRDM02265M701491 | 2005 | GREAT DANE | FLATBED |

| Flatbed | F90517 | TRAILER/FLAT BED | 1GRDN02215M701494 | 2005 | GREAT DANE | FLATBED |
|---------|--------|------------------|-------------------|------|------------|---------|
| Flatbed | F90518 | TRAILER/FLAT BED | 1GRDM02275M701497 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90519 | TRAILER/FLAT BED | 1GRDM02205M701499 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90520 | TRAILER/FLAT BED | 1GEDM02265M702091 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90521 | TRAILER/FLAT BED | 1GRDM02235M701500 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90522 | FLAT BED TRAILER | 1GRDM02275M701502 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90523 | TRAILER/FLAT BED | 1GRDM02245M701506 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90524 | TRAILER/FLAT BED | 1GRDM022X5M701459 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90525 | TRAILER/FLAT BED | 1GRDM02285M701461 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90526 | TRAILER/FLAT BED | 1GRDM02255M701465 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90527 | TRAILER/FLAT BED | 1GRDM02225M701469 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90528 | TRAILER/FLAT BED | 1GRDM02295M701470 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90529 | TRAILER/FLAT BED | 1GRDM022X5M701476 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90530 | TRAILER/FLAT BED | 1GRDM02255M701479 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90531 | TRAILER/FLAT BED | 1GRDM02255M701482 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90532 | TRAILER/FLAT BED | 1GRDM02225M701486 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90533 | TRAILER/FLAT BED | 1GRDM02245M701487 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90534 | TRAILER/FLAT BED | 1GRDM02285M701492 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F90535 | TRAILER/FLAT BED | 1GRDM022X5M701493 | 2005 | GREAT DANE | FLATBED |
| Flatbed | F80601 | TRAILER/FLAT BED | 1TTF4820462016634 | 2006 | TRANSCRAFT | FLATBED |
| Flatbed | F80602 | TRAILER/FLAT BED | 1TTF4820662016635 | 2006 | TRANSCRAFT | FLATBED |
| Flatbed | F80603 | TRAILER/FLAT BED | 1TTF4820862016636 | 2006 | TRANSCRAFT | FLATBED |
| Flatbed | F80604 | TRAILER/FLAT BED | 1TTF4820162016638 | 2006 | TRANSCRAFT | FLATBED |
| Flatbed | F80605 | TRAILER/FLAT BED | 1TTF4820X62016637 | 2006 | TRANSCRAFT | FLATBED |
| Flatbed | F80606 | TRAILER/FLAT BED | 1TTF4820X62016640 | 2006 | TRANSCRAFT | FLATBED |
| Flatbed | F90701 | 49 FLATBED | 1GRDM98267H704754 | 2007 | GREAT DANE | FLATBED |
| Flatbed | F90702 | 49 FLATBED | 1GRDM98287H704755 | 2007 | GREAT DANE | FLATBED |
| Flatbed | F90801 | 49 FLATBED | 1GRDM98208H710065 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90802 | 49 FLATBED | 1GRDM98288H710069 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90803 | 49 FLATBED | 1GRDN982X8H710073 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90804 | 49 FLATBED | 1GRDN98208H710079 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90805 | 49 FLATBED | 1GRDM982X8H710087 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90806 | 49 FLATBED | 1GRDM98238H710089 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90807 | 49 FLATBED | 1GRDM982X8H710090 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90808 | 49 FLATBED | 1GRDM98258H710093 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90809 | 49 FLATBED | 1GRDM98298H710095 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90810 | 49 FLATBED | 1GRDM98208H710096 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90811 | 49 FLATBED | 1GRDN98268H710099 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90812 | 49 FLATBED | 1GRDM98298H710100 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90813 | 49 FLATBED | 1GRDM982X8H710106 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90814 | 49 FLATBED | 1GRDM98218H710057 | 2008 | GREAT DANE | FLATBED |

Sch. 2.1(a)-5

| Flatbed | F90815 | 49 FLATBED | 1GRDM98218H710060 | 2008 | GREAT DANE | FLATBED |
|---------|--------|------------|-------------------|------|------------|---------|
| Flatbed | F90816 | 49 FLATBED | 1GRDM98238H710061 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90817 | 49 FLATBED | 1GRDM98258H710062 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90818 | 49 FLATBED | 1GRDM98278H710063 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90819 | 49 FLATBED | 1GRDM98298H710064 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90820 | 49 FLATBED | 1GRDM98228H710066 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90821 | 49 FLATBED | 1GRDM98248H710067 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90822 | 49 FLATBED | 1GRDM98288H710072 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90823 | 49 FLATBED | 1GRDM98238H710075 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90824 | 49 FLATBED | 1GRDM98258H710076 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90825 | 49 FLATBED | 1GRDM98278H710077 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90826 | 49 FLATBED | 1GRDM98208H710082 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90827 | 49 FLATBED | 1GRDM98248H710084 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90828 | 49 FLATBED | 1GRDM98268H710085 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90829 | 49 FLATBED | 1GRDM98218H710088 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90830 | 49 FLATBED | 1GRDM98238H710092 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90831 | 49 FLATBED | 1GRDM98278H710094 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90832 | 49 FLATBED | 1GRDM98228H710097 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90833 | 49 FLATBED | 1GRDM98228H710102 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90834 | 49 FLATBED | 1GRDM98248H710103 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90835 | 49 FLATBED | 1GRDM98268H710104 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90836 | 49 FLATBED | 1GRDM98288H710105 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90837 | 49 FLATBED | 1GRDM98238H710058 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90838 | 49 FLATBED | 1GRDM98258H710059 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90839 | 49 FLATBED | 1GRDM98268H710068 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90840 | 49 FLATBED | 1GRDM98248H710070 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90841 | 49 FLATBED | 1GRDM98268H710071 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90842 | 49 FLATBED | 1GRDM98218H710074 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90843 | 49 FLATBED | 1GRDM98278H710080 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90844 | 49 FLATBED | 1GRDM98298H710081 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90845 | 49 FLATBED | 1GRDM98228H710083 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90846 | 49 FLATBED | 1GRDM98288H710086 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90847 | 49 FLATBED | 1GRDM98218H710091 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90848 | 49 FLATBED | 1GRDM98248H710098 | 2008 | GREAT DANE | FLATBED |
| Flatbed | F90849 | 49 FLATBED | 1GRDM98208H710101 | 2008 | GREAT DANE | FLATBED |
| Pups | 28101 | TRAILER | 1S11S8286SG383026 | 1995 | STRICK | PUP |
| Pups | 28103 | TRAILER | 1S11S8280SG383040 | 1995 | STRICK | PUP |
| Pups | 28104 | TRAILER | 1S11S8287SG383049 | 1995 | STRICK | PUP |
| Pups | 28105 | TRAILER | 1S11S8286SG383074 | 1995 | STRICK | PUP |
| Pups | 28106 | TRAILER | 1S11S8282SG383105 | 1995 | STRICK | PUP |
| Pups | 28500 | TRAILER | 1JJV281W51F740795 | 2001 | WABASH | PUP |

Sch. 2.1(a)-6

| Pups | 28501 | TRAILER | 1JJV281W71F740796 | 2001 | WABASH | PUP |
|------|-------|---------|-------------------|------|--------|-----|
| Pups | 28502 | TRAILER | 1JJV281W91F740797 | 2001 | WABASH | PUP |
| Pups | 28503 | TRAILER | 1JJV281W01F740798 | 2001 | WABASH | PUP |
| Pups | 28504 | TRAILER | 1JJV281W21F740799 | 2001 | WABASH | PUP |
| Pups | 28505 | TRAILER | 1JJV281W51F740800 | 2001 | WABASH | PUP |
| Pups | 28506 | TRAILER | 1JJV281W71F740801 | 2001 | WABASH | PUP |
| Pups | 28515 | TRAILER | 1JJV281W81F740810 | 2001 | WABASH | PUP |
| Pups | 28529 | TRAILER | 1JJV281W81F740824 | 2001 | WABASH | PUP |
| Pups | 28541 | TRAILER | 1JJV281W41F740836 | 2001 | WABASH | PUP |
| Pups | 28544 | TRAILER | 1JJV281WX1F740839 | 2001 | WABASH | PUP |
| Pups | 28556 | TRAILER | 1JJV281W01F740851 | 2001 | WABASH | PUP |
| Pups | 28578 | TRAILER | 1JJV281WX1F740873 | 2001 | WABASH | PUP |
| Pups | 28602 | TRAILER | 1JJV281W21F740897 | 2001 | WABASH | PUP |
| Pups | 28610 | TRAILER | 1JJV281W81F740905 | 2001 | WABASH | PUP |
| Pups | 28633 | TRAILER | 1JJV281W61F740918 | 2001 | WABASH | PUP |
| Dolly | CI010 | CONVERTER DOLLY | 1JJD071W31F741214 | 2001 | WABASH | CONVERTER |
| Dolly | CI019 | CONVERTER DOLLY | 1JJD071W41F741223 | 2001 | WABASH | CONVERTER |
| Dolly | CI022 | CONVERTER DOLLY | 1JJD071WX1F741226 | 2001 | WABASH | CONVERTER |
| Dolly | CI025 | CONVERTER DOLLY | 1JJD071W51F741229 | 2001 | WABASH | CONVERTER |
| Dolly | CI051 | CONVERTER DOLLY | 1JJD071W61F741255 | 2001 | WABASH | CONVERTER |
| Dolly | CI052 | CONVERTER DOLLY | 1JJD071W81F741256 | 2001 | WABASH | CONVERTER |
| Dolly | CI053 | CONVERTER DOLLY | 1JJD071WX1F741257 | 2001 | WABASH | CONVERTER |
| Dolly | CI054 | CONVERTER DOLLY | 1JJD071W11F741258 | 2001 | WABASH | CONVERTER |
| Dolly | CI063 | CONVERTER DOLLY | 1JJD071W21F741267 | 2001 | WABASH | CONVERTER |
| Vans | 93028 | TRAILER | 1S12S953XTD400181 | 1996 | STRICK | VAN |

## SCHEDULE 2.1(b)(i)

### Seller's Rolling Stock

| Type of Equipment | Unit Number | Description | VIN # | YEAR | MAKE | MODEL |
|---|---|---|---|---|---|---|
| Tractor | 40115 | EFW SLEEPER | 1FUJGLD69FLGJ7609 | 2015 | FRGHT | CASCADIA |
| Tractor | 40215 | EFW SLEEPER | 1FUJGLD65FLGJ7610 | 2015 | FRGHT | CASCADIA |
| Tractor | 40315 | EFW SLEEPER | 1FUJGLD67FLGJ7611 | 2015 | FRGHT | CASCADIA |
| Tractor | 40415 | EFW SLEEPER | 1FUJGLD69FLGJ7612 | 2015 | FRGHT | CASCADIA |
| Tractor | 40515 | EFW SLEEPER | 1FUJGLD60FLGJ7613 | 2015 | FRGHT | CASCADIA |
| Tractor | 41117 | EFW SLEEPER | 1FUJGHDV4HLHL2156 | 2017 | FRGHT | CASCADIA |
| Tractor | 41217 | EFW SLEEPER | 1FUJGHDV6HLHL2157 | 2017 | FRGHT | CASCADIA |
| Tractor | 41317 | EFW SLEEPER | 1FUJGHDV8HLHL2158 | 2017 | FRGHT | CASCADIA |
| Tractor | 41416 | TRACTOR EFW SLEEPER | 4V4MC9EH7GN927753 | 2016 | VOLVO | VNM64T630 |
| Tractor | 41417 | EFW SLEEPER | 1FUJGHDVXHLHL2159 | 2017 | FRGHT | CASCADIA |
| Tractor | 41516 | TRACTOR EFW SLEEPER | 4V4MC9EH9GN927754 | 2016 | VOLVO | VNM64T630 |
| Tractor | 41517 | EFW SLEEPER | 1FUJGHDV6HLHL2160 | 2017 | FRGHT | CASCADIA |
| Tractor | 41616 | TRACTOR EFW SLEEPER | 4V4MC9EH0GN927755 | 2016 | VOLVO | VNM64T630 |
| Tractor | 41617 | EFW SLEEPER | 1FUJGHDV8HLHL2161 | 2017 | FRGHT | CASCADIA |
| Tractor | 41716 | TRACTOR EFW SLEEPER | 4V4MC9EH2GN927756 | 2016 | VOLVO | VNM64T630 |
| Tractor | 41717 | EFW SLEEPER | 1FUJGHDVXHLHL2162 | 2017 | FRGHT | CASCADIA |
| Tractor | 41816 | TRACTOR EFW SLEEPER | 4V4MC9EH4GN927757 | 2016 | VOLVO | VNM64T630 |
| Tractor | 41817 | EFW SLEEPER | 1FUJGHDV1HLHL2163 | 2017 | FRGHT | CASCADIA |
| Tractor | 41916 | TRACTOR EFW SLEEPER | 4V4MC9EH6GN927758 | 2016 | VOLVO | VNM64T630 |
| Tractor | 41917 | EFW SLEEPER | 1FUJGHDV3HLHL2164 | 2017 | FRGHT | CASCADIA |
| Tractor | 42016 | TRACTOR EFW SLEEPER | 4V4MC9EH8GN927759 | 2016 | VOLVO | VNM64T630 |
| Tractor | 42017 | EFW SLEEPER | 1FUJGHDV5HLHL2165 | 2017 | FRGHT | CASCADIA |
| Flatbed | F81529 | TRAILER / FLATBED | 1GRDM9626FH725296 | 2015 | GREAT DANE | FLATBED |
| Flatbed | F81530 | TRAILER / FLATBED | 1GRDM9628FH725297 | 2015 | GREAT DANE | FLATBED |
| Flatbed | F81531 | TRAILER / FLATBED | 1GRDM962XFH725298 | 2015 | GREAT DANE | FLATBED |
| Flatbed | F81532 | TRAILER / FLATBED | 1GRDM9628FH725221 | 2015 | GREAT DANE | FLATBED |
| Flatbed | F81533 | TRAILER FLATBED | 1GRDM962XFH725222 | 2015 | GREAT DANE | FLATBED |

| | | | | | | |
|---|---|---|---|---|---|---|
| Flatbed | F81534 | TRAILER FLATBED | 1GRDM9621FH725223 | 2015 | GREAT DANE | FLATBED |
| Flatbed | F81535 | TRAILER / FLATBED | 13N148208F1570802 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81536 | TRAILER / FLATBED | 13N14820XF1570803 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81537 | TRAILER / FLATBED | 13N148201F1570804 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81538 | TRAILER / FLATBED | 13N148203F1570805 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81539 | TRAILER / FLATBED | 13N148205F1570806 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81540 | TRAILER / FLATBED | 13N148207F1570807 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81541 | TRAILER / FLATBED | 13N14820XF1570808 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81542 | TRAILER / FLATBED | 13N148200F1570809 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81543 | TRAILER / FLATBED | 13N148207F1570810 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81544 | TRAILER / FLATBED | 13N148209F1570811 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81545 | TRAILER / FLATBED | 13N148200F1570812 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81546 | TRAILER / FLATBED | 13N148204F1570814 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81547 | TRAILER / FLATBED | 13N148206F1570815 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81548 | TRAILER / FLATBED | 13N148208F1570816 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81549 | TRAILER / FLATBED | 13N14820XF1570817 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81550 | TRAILER / FLATBED | 13N148201F1570818 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81551 | TRAILER / FLATBED | 13N148203F1570819 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81552 | TRAILER / FLATBED | 13N14820XF1570820 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81553 | TRAILER / FLATBED | 13N148201F1570821 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81554 | TRAILER / FLATBED | 13N148203F1570822 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81555 | TRAILER / FLATBED | 13N148205F1570823 | 2015 | FONTAINE | FLAT BED |
| Flatbed | F81601 | TRAILER/FLATBED | 1GRDM9620GH729197 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81602 | TRAILER/FLATBED | 1GRDM9622GH729198 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81603 | TRAILER/FLATBED | 1GRDM9624GH729199 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81604 | TRAILER/FLATBED | 1GRDM9627GH729200 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81605 | TRAILER/FLATBED | 1GRDM9629GH729201 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81606 | TRAILER/FLATBED | 1GRDM9620GH729202 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81607 | TRAILER/FLATBED | 1GRDM9622GH729203 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81608 | TRAILER/FLATBED | 1GRDM9624GH729204 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81609 | TRAILER/FLATBED | 1GRDM9626GH729205 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81610 | TRAILER/FLATBED | 1GRDM9628GH729206 | 2016 | GREAT DANE | FLATBED |

Sch. 2.1(b)(i)-2

| Flatbed | F81611 | TRAILER/FLATBED | 1GRDM962XGH729207 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81612 | TRAILER/FLATBED | 1GRDM9621GH729208 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81613 | TRAILER/FLATBED | 1GRDM9623GH729209 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81614 | TRAILER/FLATBED | 1GRDM962XGH729210 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81615 | TRAILER/FLATBED | 1GRDM9621GH729211 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81616 | TRAILER/FLATBED | 1GRDM9623GH729212 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81617 | TRAILER/FLATBED | 1GRDM9625GH729213 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81618 | TRAILER/FLATBED | 1GRDM9627GH729214 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81619 | TRAILER/FLATBED | 1GRDM9629GH729215 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81620 | TRAILER/FLATBED | 1GRDM9620GH729216 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81621 | TRAILER/FLATBED | 1GRDM9622GH729217 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81622 | TRAILER/FLATBED | 1GRDM9624GH729218 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81623 | TRAILER/FLATBED | 1GRDM9626GH729219 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81624 | TRAILER/FLATBED | 1GRDM9622GH729220 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81625 | TRAILER/FLATBED | 1GRDM9624GH729221 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81626 | TRAILER/FLATBED | 1GRDM9626GH729222 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81627 | TRAILER/FLATBED | 1GRDM9628GH729223 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81628 | TRAILER/FLATBED | 1GRDM962XGH729224 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81629 | TRAILER/FLATBED | 1GRDM9621GH729225 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81630 | TRAILER/FLATBED | 1GRDM9623GH729226 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81631 | TRAILER/FLATBED | 1GRDM9625GH729227 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81632 | TRAILER/FLATBED | 1GRDM9627GH729228 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81633 | TRAILER/FLATBED | 1GRDM9629GH729229 | 2016 | GREAT DANE | FLATBED |

Sch. 2.1(b)(i)-3

| Flatbed | F81634 | TRAILER/FLATBED | 1GRDM9625GH729230 | 2016 | GREAT DANE | FLATBED |
|---------|--------|-----------------|-------------------|------|------------|---------|
| Flatbed | F81635 | TRAILER/FLATBED | 1GRDM9627GH729231 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81636 | TRAILER/FLATBED | 1GRDM9629GH729232 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81637 | TRAILER/FLATBED | 1GRDM9620GH729233 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81638 | TRAILER/FLATBED | 1GRDM9622GH729234 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81639 | TRAILER/FLATBED | 1GRDM9624GH729235 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81640 | TRAILER/FLATBED | 1GRDM9626GH729236 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81641 | TRAILER/FLATBED | 1GRDM9628GH729237 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81642 | TRAILER/FLATBED | 1GRDM962XGH729238 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81643 | TRAILER/FLATBED | 1GRDM9621GH729239 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81644 | TRAILER/FLATBED | 1GRDM9628GH729240 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81645 | TRAILER/FLATBED | 1GRDM962XGH729241 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81646 | TRAILER/FLATBED | 1GRDM9621GH729242 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81647 | TRAILER/FLATBED | 1GRDM9623GH729243 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81648 | TRAILER/FLATBED | 1GRDM9625GH729244 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81649 | TRAILER/FLATBED | 1GRDM9627GH729245 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81650 | TRAILER/FLATBED | 1GRDM9629GH729246 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81651 | TRAILER/FLATBED | 1GRDM9620GH729247 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81652 | TRAILER/FLATBED | 1GRDM9622GH729248 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81653 | TRAILER/FLATBED | 1GRDM9624GH729249 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81654 | TRAILER/FLATBED | 1GRDM9620GH729250 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81655 | TRAILER/FLATBED | 1GRDM9622GH729251 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81656 | TRAILER/FLATBED | 1GRDM9624GH729252 | 2016 | GREAT DANE | FLATBED |

Sch. 2.1(b)(i)-4

| | | | | | | |
|---|---|---|---|---|---|---|
| Flatbed | F81657 | TRAILER/FLATBED | 1GRDM9626GH729253 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81658 | TRAILER/FLATBED | 1GRDM9628GH729254 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81659 | TRAILER/FLATBED | 1GRDM962XGH729255 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81660 | TRAILER/FLATBED | 1GRDM9621GH729256 | 2016 | GREAT DANE | FLATBED |
| Flatbed | F81801 | TRAILER FLATBED | 1GRDM9629JH733353 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81802 | TRAILER FLATBED | 1GRDM9620JH733354 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81803 | TRAILER FLATBED | 1GRDM9622JH733355 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81804 | TRAILER FLATBED | 1GRDM9624JH733356 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81805 | TRAILER FLATBED | 1GRDM9626JH733357 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81806 | TRAILER FLATBED | 1GRDM9623JH733364 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81807 | TRAILER FLATBED | 1GRDM9625JH733365 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81808 | TRAILER FLATBED | 1GRDM9627JH733366 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81809 | TRAILER FLATBED | 1GRDM9629JH733367 | 2018 | GREAT DANE | FLATBED |
| Tractor | 40117 | EFW SLEEPER | 1FUJGHDV1HLHL2146 | 2017 | FRGHT | CASCADIA |
| Tractor | 40217 | EFW SLEEPER | 1FUJGHDV3HLHL2147 | 2017 | FRGHT | CASCADIA |
| Tractor | 40317 | EFW SLEEPER | 1FUJGHDV5HLHL2148 | 2017 | FRGHT | CASCADIA |
| Tractor | 40417 | EFW SLEEPER | 1FUJGHDV7HLHL2149 | 2017 | FRGHT | CASCADIA |
| Tractor | 40517 | EFW SLEEPER | 1FUJGHDV3HLHL2150 | 2017 | FRGHT | CASCADIA |
| Tractor | 40617 | EFW SLEEPER | 1FUJGHDV5HLHL2151 | 2017 | FRGHT | CASCADIA |
| Tractor | 40717 | EFW SLEEPER | 1FUJGHDV7HLHL2152 | 2017 | FRGHT | CASCADIA |
| Tractor | 40817 | EFW SLEEPER | 1FUJGHDV9HLHL2153 | 2017 | FRGHT | CASCADIA |
| Tractor | 40917 | EFW SLEEPER | 1FUJGHDV0HLHL2154 | 2017 | FRGHT | CASCADIA |
| Tractor | 41017 | EFW SLEEPER | 1FUJGHDV2HLHL2155 | 2017 | FRGHT | CASCADIA |
| Tractor | 40118 | EFW SLEEPER | 3AKJHPDV5JSJM9724 | 2018 | FRGHT | CASCADIA |
| Tractor | 41116 | EFW SLEEPER | 1FUJGLD69GLGV2023 | 2016 | FRGHT | CASCADIA |
| Tractor | 41216 | EFW SLEEPER | 1FUJGLD60GLGV2024 | 2016 | FRGHT | CASCADIA |
| Tractor | 41316 | EFW SLEEPER | 1FUJGLD62GLGV2025 | 2016 | FRGHT | CASCADIA |
| Tractor | 42117 | EFW SLEEPER | 1FUJGHDV7HLHL2166 | 2017 | FRGHT | CASCADIA |
| Tractor | 42217 | EFW SLEEPER | 1FUJGHDV9HLHL2167 | 2017 | FRGHT | CASCADIA |
| Tractor | 42317 | EFW SLEEPER | 1FUJGHDV0HLHL2168 | 2017 | FRGHT | CASCADIA |
| Tractor | 42417 | EFW SLEEPER | 1FUJGHDV2HLHL2169 | 2017 | FRGHT | CASCADIA |

Sch. 2.1(b)(i)-5

| Tractor | 42517 | EFW SLEEPER | 1FUJGHDV9HLHL2170 | 2017 | FRGHT | CASCADIA |
|---------|-------|-------------|-------------------|------|-------|----------|
| Tractor | 43916 | EFW SLEEPER | 1FUJGHDV7GLGR2007 | 2016 | FRGHT | CASCADIA |
| Tractor | 44016 | EFW SLEEPER | 1FUJGHDV9GLGR2008 | 2016 | FRGHT | CASCADIA |
| Tractor | 44116 | EFW SLEEPER | 1FUJGHDV0GLGR2009 | 2016 | FRGHT | CASCADIA |
| Tractor | 44316 | EFW SLEEPER | 1FUJGLBGXGLHP2604 | 2016 | FRGHT | CASCADIA |
| Tractor | 44516 | EFW SLEEPER | 1FUJGLBG1GLHP2605 | 2016 | FRGHT | CASCADIA |
| Tractor | 44616 | EFW SLEEPER | 1FUJGLBG5GLHP2607 | 2016 | FRGHT | CASCADIA |
| Tractor | 44916 | EFW SLEEPER | 1FUJGLBG6GLHP2602 | 2016 | FRGHT | CASCADIA |
| Tractor | 45616 | EFW SLEEPER | 1FUJGLBG7GLHP2608 | 2016 | FRGHT | CASCADIA |
| Tractor | 45716 | EFW SLEEPER | 1FUJGLBG8GLHP2603 | 2016 | FRGHT | CASCADIA |
| Tractor | 45816 | EFW SLEEPER | 1FUJGLBG3GLHP2606 | 2016 | FRGHT | CASCADIA |
| Tractor | 45916 | EFW SLEEPER | 1FUJGLBG9GLHP2609 | 2016 | FRGHT | CASCADIA |
| Tractor | 42116 | TRACTOR EFW SLEEPER | 4V4MC9EH4GN927760 | 2016 | VOLVO | VNM64T630 |
| Tractor | 42216 | TRACTOR EFW SLEEPER | 4V4MC9EH6GN927761 | 2016 | VOLVO | VNM64T630 |
| Tractor | 42316 | TRACTOR EFW SLEEPER | 4V4MC9EH8GN927762 | 2016 | VOLVO | VNM64T630 |
| Tractor | 42416 | TRACTOR EFW SLEEPER | 4V4MC9EHXGN927763 | 2016 | VOLVO | VNM64T630 |
| Tractor | 42516 | TRACTOR EFW SLEEPER | 4V4MC9EH1GN927764 | 2016 | VOLVO | VNM64T630 |
| Tractor | 42616 | TRACTOR EFW SLEEPER | 4V4MC9EH3GN927765 | 2016 | VOLVO | VNM64T630 |
| Tractor | 42716 | TRACTOR EFW SLEEPER | 4V4MC9EH5GN927766 | 2016 | VOLVO | VNM64T630 |
| Tractor | 42816 | TRACTOR EFW SLEEPER | 4V4MC9EH7GN927767 | 2016 | VOLVO | VNM64T630 |
| Tractor | 42916 | TRACTOR EFW SLEEPER | 4V4MC9EH9GN927768 | 2016 | VOLVO | VNM64T630 |
| Tractor | 43016 | TRACTOR EFW SLEEPER | 4V4MC9EH0GN927769 | 2016 | VOLVO | VNM64T630 |
| Tractor | 40116 | TRACTOR EFW SLEEPER | 4V4MC9EH4GN927743 | 2016 | VOLVO | VNMTRT |
| Tractor | 40216 | TRACTOR EFW SLEEPER | 4V4MC9EH6GN927744 | 2016 | VOLVO | VNMTRT |
| Tractor | 40316 | TRACTOR EFW SLEEPER | 4V4MC9EH8GN927745 | 2016 | VOLVO | VNMTRT |
| Tractor | 40416 | TRACTOR EFW SLEEPER | 4V4MC9EHXGN927746 | 2016 | VOLVO | VNMTRT |
| Tractor | 40516 | TRACTOR EFW SLEEPER | 4V4MC9EH1GN927747 | 2016 | VOLVO | VNMTRT |
| Tractor | 40615 | TRACTOR EFW SLEEPER | 4V4MC9EH1FN927715 | 2015 | VOLVO | VNMTRT |

Sch. 2.1(b)(i)-6

| Tractor | 40616 | TRACTOR EFW SLEEPER | 4V4MC9EH3GN927748 | 2016 | VOLVO | VNMRT |
|---------|-------|---------------------|-------------------|------|-------|-------|
| Tractor | 40715 | TRACTOR EFW SLEEPER | 4V4MC9EH3FN927716 | 2015 | VOLVO | VNMTRT |
| Tractor | 40716 | TRACTOR EFW SLEEPER | 4V4MC9EH5GN927749 | 2016 | VOLVO | VNMTRT |
| Tractor | 40815 | TRACTOR EFW SLEEPER | 4V4MC9EH5FN927717 | 2015 | VOLVO | VNMTRT |
| Tractor | 40816 | TRACTOR EFW SLEEPER | 4V4MC9EH1GN927750 | 2016 | VOLVO | VNMTRT |
| Tractor | 40915 | TRACTOR EFW SLEEPER | 4V4MC9EH7FN927718 | 2015 | VOLVO | VNMTRT |
| Tractor | 40916 | TRACTOR EFW SLEEPER | 4V4MC9EH3GN927751 | 2016 | VOLVO | VNMTRT |
| Tractor | 41015 | TRACTOR EFW SLEEPER | 4V4MC9EH9FN927719 | 2015 | VOLVO | VNMTRT |
| Tractor | 41016 | TRACTOR EFW SLEEPER | 4V4MC9EH5GN927752 | 2016 | VOLVO | VNMTRT |
| Tractor | 41115 | TRACTOR EFW SLEEPER | 4V4MC9EH5FN927720 | 2015 | VOLVO | VNMTRT |
| Tractor | 41215 | TRACTOR EFW SLEEPER | 4V4MC9EH7FN927721 | 2015 | VOLVO | VNMTRT |
| Tractor | 41315 | TRACTOR EFW SLEEPER | 4V4MC9EH9FN927722 | 2015 | VOLVO | VNMTRT |
| Tractor | 41415 | TRACTOR EFW SLEEPER | 4V4MC9EH0FN927723 | 2015 | VOLVO | VNMTRT |
| Tractor | 41515 | TRACTOR EFW SLEEPER | 4V4MC9EH2FN927724 | 2015 | VOLVO | VNMTRT |
| Tractor | 41615 | TRACTOR EFW SLEEPER | 4V4MC9EH4FN927725 | 2015 | VOLVO | VNMTRT |
| Tractor | 41715 | TRACTOR EFW SLEEPER | 4V4MC9EH6FN927726 | 2015 | VOLVO | VNMTRT |
| Tractor | 41815 | TRACTOR EFW SLEEPER | 4V4MC9EH8FN927727 | 2015 | VOLVO | VNMTRT |
| Tractor | 41915 | TRACTOR EFW SLEEPER | 4V4MC9EHXFN927728 | 2015 | VOLVO | VNMTRT |
| Tractor | 42015 | TRACTOR EFW SLEEPER | 4V4MC9EH1FN927729 | 2015 | VOLVO | VNMTRT |
| Tractor | 42617 | EFW SLEEPER | 1FUJGHDV0HLHL2171 | 2017 | FRGHT | CASCADIA |
| Tractor | 42717 | EFW SLEEPER | 1FUJGHDV2HLHL2172 | 2017 | FRGHT | CASCADIA |
| Tractor | 42817 | EFW SLEEPER | 1FUJGHDV4HLHL2173 | 2017 | FRGHT | CASCADIA |
| Tractor | 42917 | EFW SLEEPER | 1FUJGHDV6HLHL2174 | 2017 | FRGHT | CASCADIA |
| Tractor | 43017 | EFW SLEEPER | 1FUJGHDV8HLHL2175 | 2017 | FRGHT | CASCADIA |
| Tractor | 43116 | TRACTOR EFW SLEEPER | 4V4MC9EH7GN927770 | 2016 | VOLVO | VNM64T630 |

Sch. 2.1(b)(i)-7

| Tractor | 43216 | TRACTOR EFW SLEEPER | 4V4MC9EH9GN927771 | 2016 | VOLVO | VNM64T630 |
|---|---|---|---|---|---|---|
| Tractor | 43316 | TRACTOR EFW SLEEPER | 4V4MC9EH0GN927772 | 2016 | VOLVO | VNM64T630 |
| Tractor | 43416 | TRACTOR EFW SLEEPER | 4V4MC9EH2GN927773 | 2016 | VOLVO | VNM64T630 |
| Tractor | 43516 | TRACTOR EFW SLEEPER | 4V4MC9EH4GN927774 | 2016 | VOLVO | VNM64T630 |
| Tractor | 43616 | TRACTOR EFW SLEEPER | 4V4MC9EH6GN927775 | 2016 | VOLVO | VNM64T630 |
| Tractor | 43716 | TRACTOR EFW SLEEPER | 4V4MC9EH8GN927776 | 2016 | VOLVO | VNM64T630 |
| Tractor | 43816 | TRACTOR EFW SLEEPER | 4V4MC9EHXGN927777 | 2016 | VOLVO | VNM64T630 |
| Tractor | 44216 | TRACTOR EFW SLEEPER | 1FUJGLBGXGLHP2599 | 2016 | FRGHT | CASCADIA |
| Tractor | 44416 | EFW SLEEPER | 1FUJGLBG2GLHP2595 | 2016 | FRGHT | CASCADIA |
| Tractor | 44716 | EFW SLEEPER | 1FUJGLBG6GLHP2597 | 2016 | FRGHT | CASCADIA |
| Tractor | 44816 | TRACTOR EFW SLEEPER | 1FUJGLBG2GLHP2600 | 2016 | FRGHT | CASCADIA |
| Tractor | 45316 | TRACTOR EFW SLEEPER | 1FUJGLBG4GLHP2601 | 2016 | FRGHT | CASCADIA |
| Tractor | 45416 | EFW SLEEPER | 1FUJGLBG8GLHP2598 | 2016 | FRGHT | CASCADIA |
| Tractor | 45516 | EFW SLEEPER | 1FUJGLBG4GLHP2596 | 2016 | FRGHT | CASCADIA |
| Flatbed | F81810 | TRAILER FLATBED | 1GRDM9623JH123061 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81811 | TRAILER FLATBED | 1GRDM9625JH123062 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81812 | TRAILER FLATBED | 1GRDM9627JH123063 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81813 | TRAILER FLATBED | 1GRDM9629JH123064 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81814 | TRAILER FLATBED | 1GRDM9620JH123065 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81815 | TRAILER FLATBED | 1GRDM9622JH123066 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81816 | TRAILER FLATBED | 1GRDM9624JH123067 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81817 | TRAILER FLATBED | 1GRDM9626JH123068 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81818 | TRAILER FLATBED | 1GRDM9628JH123069 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81819 | TRAILER FLATBED | 1GRDM9624JH123070 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81820 | TRAILER FLATBED | 1GRDM9626JH123071 | 2018 | GREAT DANE | FLATBED |

| | | | | | | |
|---|---|---|---|---|---|---|
| Flatbed | F81821 | TRAILER FLATBED | 1GRDM9628JH123072 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81822 | TRAILER FLATBED | 1GRDM962XJH123073 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81823 | TRAILER FLATBED | 1GRDM9621JH123074 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81824 | TRAILER FLATBED | 1GRDM9623JH123075 | 2018 | GREAT DANE | FLATBED |
| Flatbed | F81825 | TRAILER FLATBED | 1GRDM9625JH123076 | 2018 | GREAT DANE | FLATBED |
| Tractor | 42115 | TRACTOR EFW SLEEPER | 1FUJGHDV5FLGR2568 | 2015 | FRGHT | CASCADIA |
| Tractor | 42215 | TRACTOR EFW SLEEPER | 1FUJGHDV7FLGR2569 | 2015 | FRGHT | CASCADIA |
| Tractor | 42315 | EFW SLEEPER | 1FUJGLD6XFLGT3737 | 2015 | FRGHT | CASCADIA |
| Tractor | 42415 | EFW SLEEPER | 1FUJGLD61FLGT3738 | 2015 | FRGHT | CASCADIA |
| Tractor | 43117 | EFW SLEEPER | 1FUJGHDVXHLHL2176 | 2017 | FRGHT | CASCADIA |
| Tractor | 43317 | EFW SLEEPER | 1FUJGHDV3HLHL2178 | 2017 | FRGHT | CASCADIA |
| Tractor | 43417 | EFW SLEEPER | 1FUJGHDV5HLHL2179 | 2017 | FRGHT | CASCADIA |
| Tractor | 43517 | EFW SLEEPER | 1FUJGHDV1HLHL2180 | 2017 | FRGHT | CASCADIA |
| Tractor | 43617 | EFW SLEEPER | 1FUJGHDV3HLHL2181 | 2017 | FRGHT | CASCADIA |
| Tractor | 43717 | EFW SLEEPER | 1FUJGHDV5HLHL2182 | 2017 | FRGHT | CASCADIA |
| Tractor | 43817 | EFW SLEEPER | 1FUJGHDV7HLHL2183 | 2017 | FRGHT | CASCADIA |
| Tractor | 43917 | EFW SLEEPER | 1FUJGHDV9HLHL2184 | 2017 | FRGHT | CASCADIA |
| Tractor | 44017 | EFW SLEEPER | 1FUJGHDV0HLHL2185 | 2017 | FRGHT | CASCADIA |
| Flatbed* | F81501 | TRAILER/FLATBED | 1GRDM9620FH724483 | 2015 | GREAT DANE | FLATBED |
| Flatbed* | F81502 | TRAILER/FLATBED | 1GRDM9622FH724484 | 2015 | GREAT DANE | FLATBED |
| Flatbed* | F81503 | TRAILER/FLATBED | 1GRDM9624FH724485 | 2015 | GREAT DANE | FLATBED |
| Flatbed* | F81504 | TRAILER FLATBED | 1GRDM9626FH724486 | 2015 | GREAT DANE | FLATBED |
| Flatbed* | F81505 | TRAILER/FLATBED | 1GRDM9628FH724487 | 2015 | GREAT DANE | FLATBED |
| Flatbed* | F81506 | TRAILER/FLATBED | 1GRDM962XFH724488 | 2015 | GREAT DANE | FLATBED |
| Flatbed* | F81507 | TRAILER/FLATBED | 1GRDM9621FH724489 | 2015 | GREAT DANE | FLATBED |
| Flatbed* | F81508 | TRAILER/FLATBED | 1GRDM9628FH724490 | 2015 | GREAT DANE | FLATBED |
| Flatbed* | F81509 | TRAILER/FLATBED | 1GRDM962XFH724491 | 2015 | GREAT DANE | FLATBED |
| Flatbed* | F81510 | TRAILER/FLATBED | 1GRDM9621FH724492 | 2015 | GREAT DANE | FLATBED |

Sch. 2.1(b)(i)-9

| | | | | | | |
|---|---|---|---|---|---|---|
| Flatbed* | F81511 | TRAILER/FLATBED | 1GRDM9623FH724493 | 2015 | GREAT DANE | FLATBED |
| Flatbed* | F81512 | TRAILER/FLATBED | 1GRDM9625FH724494 | 2015 | GREAT DANE | FLATBED |
| Flatbed* | F81513 | TRAILER/FLATBED | 1GRDM9627FH724495 | 2015 | GREAT DANE | FLATBED |
| Flatbed* | F81514 | TRAILER/FLATBED | 1GRDM9629FH724496 | 2015 | GREAT DANE | FLATBED |
| Flatbed* | F81515 | TRAILER/FLATBED | 1GRDM9620FH724497 | 2015 | GREAT DANE | FLATBED |
| Flatbed* | F81516 | TRAILER/FLATBED | 1GRDM9622FH724498 | 2015 | GREAT DANE | FLATBED |
| Tractor | EFWT01 | EFW TRAINER TRUCK | 4V4NC9THX4N352633 | 2004 | VOLVO | VNL |
| Tractor | EFWT02 | EFW TRAINING UNIT | 4V4MC9GH06N424092 | 2006 | VOLVO | VNM64T |
| Tractor | EFWT03 | EFW TRAINING UNIT | 4V4MC9GH96N424074 | 2006 | VOLVO | VNM64T |
| Tractor | EFWT05 | EFW TRAINING | 4V4NC9TH97N428542 | 2007 | VOLVO | JEVIC |

Sch. 2.1(b)(i)-10

**Exhibit A**

**Allocation Schedule Methodology**

The Tax Purchase Price shall be allocated among the Acquired Assets in accordance with the principles set forth below. For purposes hereof, the class references are in accordance with Section 1060 of the Internal Revenue Code and Treasury Regulation Sections 1.1060-1 and 1.338-6. The listing of a class of assets in the table below does not mean that such class of assets is applicable to the transaction.

| Asset Class | Allocation of Tax Purchase Price |
|---|---|
| Class I Assets (cash, demand deposits, etc.) | Actual face amount of Class I assets on the Closing Date. |
| Class II Assets (marketable stock, government securities, etc.) | Fair market value of Class II assets on Closing Date. |
| Class III Assets (accounts receivables, mortgages, etc.) | Actual face amount of Class III assets, after reduction for the reserve for bad debts, on the Closing Date. |
| Class IV Assets (inventory, etc.) | Fair market value of Class IV assets on the Closing Date. |
| Class V Assets (assets other than Class I, II, III, IV, VI, or VII assets) | Fair market value of Class V assets on the Closing Date. |
| Class VI Assets (§197 intangibles other than goodwill and going concern value) | Agreed upon value for Class VI assets on the Closing Date. |
| Class VII Assets (goodwill and going concern value) | Any remaining Tax Purchase Price, after taking into account the allocations to assets in Classes I through VI above. |

**ESTES**

May 14, 2019

*BY FEDERAL EXPRESS AND E-MAIL*

Phoenix Management Services
110 Commons Court
Chadds Ford, PA 19317
Attn: Vincent J. Colistra

   **Re: Schedule of Assigned Contracts**

Mr. Colistra:

   Reference is made to that certain Asset Purchase Agreement (the "Purchase Agreement"), dated April 17, 2019, by and among New England Motor Freight, Inc., a New Jersey corporation, Eastern Freight Ways, Inc., a New Jersey corporation ("Eastern"), Carrier Industries, Inc., a New Jersey corporation ("Carrier" and, together with Eastern, "Sellers"), and Estes Express Lines, a Virginia corporation ("Purchaser"). Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement.

   Pursuant to Section 2.1(b)(vi) of the Purchase Agreement, a schedule identifying the contracts of each Seller that Purchaser has designated as Assigned Contracts is attached hereto as Exhibit A.

                                    Sincerely Yours,
                                    **Estes Express Lines**

                                    By:   _Robert W. Speight_
                                    Name:  Robert. W. Speight, Jr.
                                    Title:   Corporate VP – Estes Level 2

Corporate Office: 3901 West Broad Street, Richmond, VA 23230-3962 • Mailing Address: P.O. Box 25612, Richmond, VA 23260-5612
Phone: (804) 353-1900 • Fax: (804) 353-8001 • Website: www.estes-express.com • An ExpressLINK Carrier
LTL • Expedited • Volume and Truckload • Offshore and International • Supply Chain Management and Warehousing

**ESTES**

cc:   Gibbons P.C. (via Federal Express and E-mail)
      One Gateway Center
      Newark, New Jersey 07102
      Attn: Lawrence A. Goldman, Esq.

      McGuireWoods LLP (via E-mail)
      Gateway Plaza
      800 East Canal St.
      Richmond, VA 23219
      Attn: Bryce D. Jewett III

Corporate Office: 3901 West Broad Street, Richmond, VA 23230-3962 • Mailing Address: P.O. Box 25612, Richmond, VA 23260-5612
Phone: (804) 353-1900 • Fax: (804) 353-8001 • Website: www.estes-express.com • An ExpressLINK Carrier
LTL • Expedited • Volume and Truckload • Offshore and International • Supply Chain Management and Warehousing

**Exhibit A**

**Schedule of Assigned Contracts**

| COUNTERPARTY NAME AND ADDRESS | DESCRIPTION OF CONTRACT | DEBTOR ENTITY NAME |
|---|---|---|
| A&A Ground Maintenance and Landscaping<br><br>127 Ellenel Blvd.<br>Spotswood, NJ 08884 | Ground Maintenance & Landscaping Contract dated 3/1/2019 | Eastern Freight Ways, Inc. |
| AMSCAN Holdings Inc.<br><br>80 Grassland Road<br>Elmsford, NY 10523 | Contract | Carrier Industries, Inc. |
| Boise Cascade LLC<br><br>111 W. Jefferson Street<br>Ste 300, PO Box 50<br>Boise, ID 83728 | Irregular Route Motor Carrier Transportation Contract Short Form dated 4/29/2011 | Eastern Freight Ways, Inc. |
| Carlisle-Syntec<br><br>1285 Ritner Hwy<br>Carlisle, PA 17013 | Rate Matrix dated 6/22/2011 | Eastern Freight Ways, Inc. |
| CertainTeed Gypsum<br><br>PO Box 255<br>Aurora, OH 44202 | Contract | Eastern Freight Ways, Inc. |
| Certified Protection Systems, Inc.<br><br>28 Northfield Ave<br>PO Box 6374<br>Edison, NJ 08818 | Alarm Service Agreement dated 5/28/2003 | Eastern Freight Ways, Inc. |
| CleanNet of New Jersey<br><br>20 Commerce Drive, Suite 126<br>Cranford, NJ 07016 | Cleaning Service Agreement dated 10/28/2016 | Eastern Freight Ways, Inc. |
| Georgia-Pacific, LLC<br><br>133 Peachtree Street 15th Floor NE<br>Atlanta, GA 30303 | Contract Carriage Agreement dated 4/20/2011 | Eastern Freight Ways, Inc. |

| | | |
|---|---|---|
| GMC Hardwood, Inc.<br><br>93 West Street<br>Medfield, MA 02052 | Contract Carrier/Shipper Agreement dated 4/18/2017 | Eastern Freight Ways, Inc. |
| HH Brown Shoe Co. Inc.<br><br>124 W. Putnam Avenue<br>Greenwich, CT 06830 | Rate Quote dated 2/14/19 | Eastern Freight Ways, Inc. |
| Home Depot U.S.A, Inc.<br><br>2455 Paces Ferry Road NW<br>Atlanta, GA 30339 | Schedules on Pricing Terms, Operating Assumptions and Operating Requirements dated 9/17/2018 | Carrier Industries, Inc. |
| Infra-Metal Corp.<br><br>1561 Pine Street NW<br>Atlanta, GA 30318 | Rate Matrix dated 5/8/2017 | Eastern Freight Ways, Inc. |
| Nestle Waters North America<br><br>900 Long Ridge Road<br>Stamford, CT 06902 | Shipper-Carrier Agreement dated 10/3/2014 | Eastern Freight Ways, Inc. |
| Nucor Corporation<br><br>1915 Rexford Road<br>Charlotte, NC 28211 | Master Transportation Agreement dated 7/24/2017 | Eastern Freight Ways, Inc. |
| Pitney Bowes<br><br>PO Box 317887<br>Pittsburgh, PA 15250-7887 | Contract dated 11/28/2016 | Eastern Freight Ways, Inc. |
| Saint-Gobain Corporation<br><br>750 East Swedesford Road<br>PO Box 860<br>Valley Forge, PA 19482-0101 | Freight Brokerage Agreement | Eastern Freight Ways, Inc. |
| Schneider Logistics, Inc.<br><br>3101 S. Packerland Drive<br>Green Bay, WI 54313 | Brokerage Addendum to Master Transportation Services Agreement dated May 20, 2011 | Eastern Freight Ways, Inc. |
| Taiga International Sales<br><br>2-1155 North Service Rd. W.<br>Oakville, ON<br>L6M 3E3, Canada | Freight Supplier Partnership Agreement dated 11/10/2016 | Eastern Freight Ways, Inc. |
| United Gypsum Company & USG Interiors | Transportation Agreement dated 3/9/2011 | Eastern Freight Ways, Inc. |

| 50 West Adams Street Chicago, IL 60661-3676 | | |
| --- | --- | --- |

## EXHIBIT B

### Form of Specimen Letter

OC\1705067.5
01:14552200.2
US-DOCS\73606787.6  OCZ - Ex. B. to Sale Motion (Sale Order) As Filed (2)

2729450.3 115719-100281

**[PHOENIX MANAGEMENT SERVICES, LLC LETTERHEAD]**

[   Date   ]

New Jersey Motor Vehicle Commission

Re:   Release of Certain Liens on Vehicles Owned
      by [New England Motor Freight Company/Eastern Freight Ways, Inc.]

To Whom it May Concern:

Pursuant to authority granted to Phoenix Management Services, LLC ("Phoenix") to release liens from New Jersey certificates of title on behalf of secured lenders holding such liens as more particularly set forth in the Order (A) Authorizing and Approving (1) The Sale of Substantially all of Debtors' Eastern Freight Ways, Inc. and Carrier Industries, Inc.'s Assets and Certain Assets of New England Motor Freight, Inc. Free and Clear of all Liens, Claims, Encumbrances and Other Interests; and (2) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related Relief entered on May __, 2019 in the United States Bankruptcy Court for the District of New Jersey in case entitled *New England Motor Freight, Inc. et. al.*, Case No. 19-12809, you are hereby notified that [Lender] no longer has a security interest(s) or lien(s) in connection with the _____ units shown on Schedule A attached hereto identified by year, make, model and VIN that are owned by [New England Motor Freight, Inc. or Eastern Freight Ways, Inc.], [I-71 North Ave. East, Elizabeth, NJ 07201]. You may contact Phoenix at the above address and telephone number.

PHOENIX MANAGEMENT SERVICES, LLC, on behalf of
[LENDER],

By _____

**ACKNOWLEDGMENT**

STATE OF _____ )
COUNTY OF _____ ) ss

I certify that on _____, 2019 _____ personally came before me and acknowledged under oath, to my satisfaction, that this person:

(a)   is named in and personally signed the attached document as the _____ of Phoenix Management Services, LLC; and

(b)   signed and delivered this document as his act and deed, as an authorized representative of Phoenix Management Services, LLC on behalf of [Name of Lender].

_____
Notary Public

My commission expires _____

United States Bankruptcy Court
District of New Jersey

In re:                                                                Case No. 19-12809-JKS
New England Motor Freight, Inc.                                       Chapter 11
          Debtor

# CERTIFICATE OF NOTICE

District/off: 0312-2          User: admin              Page 1 of 1          Date Rcvd: May 16, 2019
                             Form ID: pdf903          Total Noticed: 8

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
May 18, 2019.
db         +New England Motor Freight, Inc.,   1-71 North Ave E,   Elizabeth, NJ 07201-2958
aty        +Brent C. Strickland,   Whiteford, Taylor & Preston L.L.P,   7501 Wisconsin Avenue,Suite 700W,
            Bethesda, MD 20814-6521
aty        +Gibbons, P.C.,   One Gateway Center,   Newark, NJ 07102-5321
aty         Howard A. Cohen,   Gibbons P.C,   300 Delaware Avenue, Suite 1015,   Wilmington, DE  19801-1671
aty         Jeffrey L. Nagel,   Gibbons P.C.,   One Pennsylvania Plaza, 37th Floor,
            New York, NY  10119-3701
aty        +Todd M. Brooks,   Whiteford, Taylor & Preston L.L.P.,   7 St. Paul Street, Suite 1500,
            Baltimore, MD 21202-1636
aty        +WASSERMAN, JURISTA & STOLZ, P.C.,   110 Allen Road,   Suite 304,
            Basking Ridge,, NJ 07920-4500
aty        +Whiteford Taylor & Preston,   Seven Saint paul St. Ste 1800,   Baltimore, MD 21202-1639

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                        TOTAL: 0

          ***** BYPASSED RECIPIENTS *****
NONE.                                                                                        TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.


**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social
Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required
by the bankruptcy rules and the Judiciary's privacy policies.**

Date: May 18, 2019                          Signature:  /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on May 16, 2019 at the address(es) listed below:
NONE.                                                                                        TOTAL: 0