

**John Schneider**
Associate

1251 Avenue of the Americas
New York, New York 10020
**T**: 646.414.6843
**E**: jschneider@lowenstein.com

May 23, 2019

**VIA CM/ECF AND EMAIL**
Honorable John K. Sherwood
United States Bankruptcy Court
District of New Jersey
50 Walnut Street
Courtroom 3D
Newark, NJ 07102

      Re:    *In re New England Motor Freight, Inc., et al.*
               Case No. 19-12809 (JKS)
               <u>The Disputed Security Interest in the Great Dane Trucks</u>

Dear Judge Sherwood:

      This firm is co-counsel to The Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed by the Office of the United States Trustee for the District of New Jersey in the Chapter 11 bankruptcy cases of the above-captioned debtors and debtors in possession (the "<u>Debtors</u>").[1] On May 16, 2019, the United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>") entered an *Order (A) Authorizing And Approving (I) The Sale Of Substantially All of Debtors' Eastern Freight Ways, Inc. And Carrier Industries, Inc.'s Assets and Certain Assets of New England Motor Freight, Inc. Free and Clear of All Liens, Claims, Encumbrances And Other Interests; And (II) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; And (B) Granting Related Relief* (the "<u>Sale Order</u>").[2]

      In connection with the Sale Order, all parties in interest were notified of an ongoing dispute between the Committee and Wells Fargo Equipment Finance, Inc. ("<u>Wells Fargo</u>," and together, the "<u>Parties</u>") concerning Wells Fargo's purported security interest in sixteen (16) Great Dane tractor trailers (the "<u>Trucks</u>"). The Committee's position is that Wells Fargo failed to properly perfect its security interest in each of the Trucks under applicable New Jersey law and therefore, the $157,804.28 in allocable sale proceeds for those Trucks should be retained by

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); Mylon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF

Honorable John K. Sherwood
May 24, 2019
Page 2

the Debtors' estate. Conversely, Wells Fargo's belief is that it holds a properly perfected security interest in each of the Trucks and is entitled to the sale proceeds as a secured creditor.

Given the stark contrast between their positions, the Parties have reached an impasse and the dispute remains unresolved. Therefore, the Parties respectfully request that the Court determine whether Wells Fargo properly perfected its security interest in the Trucks. In conjunction with this request, and in support of its position, the Committee submits this letter brief for the Court's review in lieu of a more formal memorandum of law as discussed with the Court at the May 16, 2019 hearing in this matter and agreed to by the parties.

## SUMMARY
## OF THE COMMITTEE'S POSITION

The Committee submits that the New Jersey Motor Vehicle Certificate of Ownership Law (the "MVL") clearly mandates that whenever a purchase money or non-purchase money security interest is granted in a new or used motor vehicle, the Certificate of Origin (defined below) or the Title (defined below) must be presented to the New Jersey Motor Vehicle Commission (the "MVC") so that it may make a record of the transaction and issue a new Title.

Separately, and in addition to the above presentment requirement, when the security interest is granted as part of a non-purchase money loan, a financing statement must be recorded with the MVC. The financing statement must be completed by the purchaser and must disclose the names of the purchaser and the lender and the date that the security interest is became effective.

A security interest is not properly perfected under the MVL unless the parties comply with the recording requirements as plainly stated in the statute. When a Title is issued, even in error, and a purchaser subsequently grants a security interest in the motor vehicle, the lender must still ensure that the Certificate of Origin or Title are recorded with the MVC. In addition, when the transaction involves a non-purchase money loan, as the case is here, a financing statement must be recorded with the MVC to properly perfect the lender's security interest.

## THE NEW JERSEY
## MOTOR VEHICLE CERTIFICATE OF OWNERSHIP LAW

**a. The perfection of a Motor Vehicle security interest in New Jersey**

The requirements for the perfection of a security interest in a motor vehicle sold in the State of New Jersey are spelled out in N.J.S.A. 39:10-11(j):

> The notation of the name and business or residence address of a secured party or his assignee, [other than a security interest in a new or used motor vehicle bought with the proceeds of a *purchase money* loan], on the certificate of origin or the certificate of ownership, as provided in N.J.S.A. 39:10-8 [new vehicles] and N.J.S.A. 39:10-9 [used vehicles], and the presentation to the

> director . . . of the certificate of origin or the certificate of ownership so noted, **and the compliance with subsections C and D of N.J.S.A. 39:10-11**, shall be in lieu of all filing requirements imposed by [the New Jersey Uniform Commercial Code (the "UCC")] and **shall constitute the perfection of a security in the motor vehicle**[.] (emphasis added).

Because of the various cross-references contained in N.J.S.A. 39:10-11, there are different requirements which govern the perfection of *purchase money* security interests and *non-purchase money* security interests.[3]

**b. The cash purchase of a Motor Vehicle**

When a new motor vehicle is sold and delivered in the State of New Jersey by a manufacturer to a purchaser, the manufacturer must execute, deliver, and assign a certificate of origin (the "Certificate of Origin")[4] to the purchaser.[5] The Certificate of Origin "shall" include the name of both the manufacturer and purchaser. If a pre-owned motor vehicle is sold by a manufacturer to a purchaser, the manufacturer must execute, deliver, and assign a different document, known as the certificate of ownership (colloquially referred to as a "Title")[6] to the purchaser.[7]

The purchaser of a motor vehicle, whether new or used, is required to submit either the Certificate of Origin or the Title to the MVC within ten (10) days of the purchase.[8] The MVC "shall" make a record of the transaction and "shall" issue a new Title to the purchaser.[9]

---

[3] A security interest is a 'purchase money security interest' to the extent that it is: (a) taken or retained by the seller of the collateral to secure all or part of its price; or (b) taken by a person who by making advances ... gives value to enable the debtor to acquire rights in ... the collateral if such value is in fact so used." *In re Coomer*, 8 B.R. 351, 353 (Bankr. E.D. Tenn. 1980). The Official Comments contained in N.J.S.A. 12A:9-103 (the UCC) state that a:

> [A] security interest does not qualify as a purchase-money security interest if a debtor acquires property on unsecured credit and subsequently creates the security interest to secure the purchase price.

[4] A manufacturer's Certificate of Origin is "the original written instrument or document required to be executed and delivered by the manufacturer to his agent or a dealer, or a person purchasing direct from the manufacturer, certifying the origin of the vehicle." N.J.S.A. 39:10-2.

[5] N.J.S.A. 39:10-8.

[6] A Title is "the document issued in conformance with [the New Jersey Vehicle Certificate of Ownership Law (the "MVL")], certifying ownership of a motor vehicle, other than [a] manufacturer's . . . [Certificate of Origin]."

[7] N.J.S.A. 39:10-8.

[8] N.J.S.A. 39:10-11(A).

[9] *Id.*

Honorable John K. Sherwood
May 24, 2019
Page 4

### c. Purchase money security interest in a Motor Vehicle

If, in connection with the sale of a new motor vehicle, a security interest is taken or retained by a lender who provided a *purchase money* loan for the vehicle, the original Certificate of Origin, which "shall" include the names of the manufacturer, purchaser, and lender, need not be provided to the purchaser and may instead be delivered directly to the MVC for the issuance of Title to the lender.[10]

If the sale involves a pre-owned motor vehicle and a security interest is taken or retained by a lender who provided a *purchase money* loan for the vehicle, the Title "shall" include the name and address of the lender. Unlike with *new* motor vehicle financing, there is no provision which permits direct submission of a pre-owned vehicle Title.

In either instance, Title must be delivered to the MVC and the MVC "shall" make a record of the transaction and issue a new Title to the purchaser.

### d. Non-purchase money security interest in a Motor Vehicle

If, in connection with the sale of a new or used motor vehicle, a security interest is taken or retained by a lender and no money is advanced for the purchase of the motor vehicle itself (*e.g.,* the loan is a refinance or the security interest is granted in the motor vehicle as collateral for a separate transaction), 39:10-11(C) of the MVL imposes additional requirements upon a lender to properly perfect its security interest:

> whenever a security interest is created in a motor vehicle . . . there **shall be filed** with the director the [Title to] the motor vehicle, **together with a financing statement** on a form prescribed by the director. The director **shall** make and file a record of the transaction and **shall** issue a [Title], recording the name and address of the secured party or his assignee thereon, and **shall** deliver it to the secured party[.] A copy of the [Title] so issued **shall** be delivered to the buyer. The director **shall** collect a fee of $20 for his services in issuing a [Title] and a copy thereof and for making a record of and filing the record of the transaction[.] (emphasis added).

The financing statement[11] required to be filed in connection with any non-purchase money vehicle financing must show the date of the security agreement and the names and addresses of the parties thereto.[12]

---

[10] N.J.S.A. 39:10-8.
[11] A copy of the MVC's financing statement, which specifically requires the date of the respective security agreement, is attached hereto as Exhibit "A."
[12] "Security agreent" is defined under the MVL as "an agreement which creates or provides for a security interest in a motor vehicle." N.J.S.A. 39:10-2.

# WELLS FARGO FAILED TO PERFECT ITS SECURITY INTEREST

On April 16, 2014, Wells Fargo and New England Motor Freight, Inc. ("NEMF") entered into a loan and security agreement ("Loan 1"), whereby Wells Fargo agreed to make a purchase money loan to NEMF for the purchase of the Trucks. In connection with Loan 1, the manufacturer executed and delivered the Certificate of Origin to the MVC. The Certificate of Origin noted Wells Fargo's security interest in the Trucks. Through inadvertence or error, the MVC issued a Title for each of the Trucks which referenced Wells Fargo as the lienholder and Eastern Freight Ways, Inc. ("Eastern") as the owner thereof.

On May 22, 2014, Eastern entered into a loan and security agreement ("Loan 2") with Wells Fargo. No new loan, financing, or refinancing was ever made by Wells Fargo in connection with Loan 2. Thus, the transaction involved a non-purchase money security interest. Because a Title had already been issued for each of the Trucks, the transaction involved used motor vehicles.

Under New Jersey law, for Wells Fargo to perfect its security interest in the Trucks, whether new or pre-owned at the time of Loan 2, Wells Fargo was required to cause the Title to be recorded with the MVC so that the MVC could record the transaction and issue a new Title to Wells Fargo.[13] Wells Fargo never took this step and plainly failed to perfect its security interest in the Trucks.

However, while Wells Fargo does not dispute these facts, it instead takes the position that it did not need to re-record the Title with the MVC and that the issuance of the Title in Eastern's name and its subsequent entry into Loan 2 were sufficient to perfect its security interest in the Trucks. Stated differently, Wells Fargo argues that the order in which it obtained each Title and entered into the security agreement is not relevant. This argument is unavailing.

Under Loan 1, NEMF granted a security interest in the Trucks to Wells Fargo. Wells Fargo was permitted to direct the Certificate of Origin to the MVC for the issuance of a Title in NEMF's name. By mistake, the Title was issued in Eastern's name. Because Eastern and Wells Fargo did not enter into Loan 2 until a later date, and no security interest had yet been granted by Eastern, Wells Fargo did not hold a properly perfected security interest in the Trucks at the time that they were delivered to Eastern. Because it was aware that it did not hold a valid security interest in the Trucks, Wells Fargo subsequently entered into Loan 2 with Eastern.

However, because Loan 2 was not a purchase money loan and instead was a corrective agreement to perfect Wells Fargo's security interest in the Trucks, in addition to causing the Title to be recorded with the MVC, Wells Fargo was also required to cause the financing statement to be recorded. Obviously, a security agreement entered into after the issuance of a Title could not possibly satisfy the requirements of the MVL, which require that the recorded financing statement include the date of the security agreement. This interpretation is also supported by

---

[13] *See, e.g. Muir v. Jefferson Credit Corp.,* 108 N.J.Super. 586, 590 (1970) (Under the MVL, "perfection consists of (1) the nation of the secured party on the [Title] . . . and (2) **the presentation to the director of the [Title]** so noted[.]). (Emphasis added).

Honorable John K. Sherwood
May 24, 2019
Page 6

other provisions of the MVL. For instance, under N.J.S.A. 39:10-14(B), upon the request of any person, the MVC:

> **shall** issue a certificate showing names and addresses of the parties to any contract . . . or other instrument, or to any financing statement, the name and address of the holder of the lien or liens under such contract . . . or other instrument or of the secured party, **the date thereof or of the financing statement**[.]

After entering into Loan 2, Wells Fargo was clearly required to record (or re-record) the Title and corresponding financing statement with the MVC. Because Wells Fargo failed to take these actions, its security interest in the Trucks was never perfected under the MVL and the Trucks remain fully unencumbered assets of the Debtors' estates. And even if Wells Fargo were to argue that this result is inequitable, the New Jersey Legislature's use of the phrase "shall" throughout the statute is demonstrative of its intent that lenders, such as Wells Fargo, are required to fully comply with the letter of the law.[14]

The purpose of these requirements is clear: without recording (or re-recording) the Certificates of Title in Eastern's name, a searcher would not have notice that: (a) these vehicles are Eastern's assets; and (b) these assets are encumbered.[15] Similarly, without the date of the financing statement, the public would not know if a separately recorded lien on the assets would have priority. In this case, a searcher would not have known that *Eastern* was the owner of the Trucks and that, as to *Eastern*, the Trucks were encumbered.[16]

In closing, Wells Fargo's arguments are unavailing in the face of the MVL's plain statutory requirements. Wells Fargo was required to cause the Title to be re-recorded with the MVC after it entered into the security agreement with Eastern. Moreover, because the security agreement contemplated in Loan 2 was not part of a purchase money transaction, Wells Fargo was also required to cause a financing statement to be filed with the MVC. In each instance, Wells Fargo failed to follow the statutory directives of the MVL for the proper perfection of its security interest in the Trucks. Accordingly, the Committee respectfully requests that the Court direct the $157,804.28 in allocable sale proceeds for the Trucks be retained by Eastern's estate distributed to general unsecured creditors.

---

[14] Under New Jersey law, a primary purposes of statutory interpretation "is to determine and effectuate the Legislature's intent." Any inquiry must begin with "the plain language of the statute, giving the terms used therein their ordinary and accepted meaning." Where "the Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close[.]" Hence, a court may not "rewrite a plainly-written enactment of the Legislature or presume that the Legislature intended something other than that expressed by way of plain language." Use of "shall" in a statute also mirrors common usage; ordinarily "shall" is mandatory.

[15] *See Pinkerton's Inc. v. John A. Roebling Steel Corp.*, 186 N.J. Super. 10, 14 (Law. Div. 1982) ("The primary purpose of a financing statement is to put a searcher on notice that an underlying security agreement may be outstanding.") (citation omitted)..

[16] *See In re Stebow Const. Co.*, Inc., 73 B.R. 459 (Bankr. D.N.J. 1987) (holding that the creditor's security interest was not perfected because the creditor's financing statement, which identified debtor by an occasionally used unregistered trade name, rather than by corporate name including words construction company, was "seriously misleading.").

Honorable John K. Sherwood
May 24, 2019
Page 7


Very truly yours,

| **Lowenstein Sandler LLP** | **Elliott Greenleaf, P.C.** |
|---|---|
| *s/ John Schneider* | */s/ Rafael X. Zahralddin-Aravena* |
| Mary E. Seymour, Esq. | Rafael X. Zahralddin-Aravena, Esq. |
| Joseph J. DiPasquale, Esq. | Jonathan M. Stemerman, Esq. |
| John P. Schneider, Esq. | 1105 North Market Street |
| One Lowenstein Drive | Suite 1700 |
| Roseland, NJ 07068 | Wilmington, DE 19801 |
| Telephone: (973) 597-2500 | Telephone: (302) 384-8400 |
| Facsimile: (973) 597-2400 | Facsimile: (302) 384-9399 |
| Email: mseymour@lowenstein.com | Email: rxza@elliottgreenleaf.com |
| jdipasquale@lowenstein.com | jms@elliottgreenleaf.com |
| jschneider@lownestein.com | |

*Counsel to the Official Committee of Unsecured Creditors*

cc:   Lawrence Goldman, Esq. (via email)
      Frank Peretore, Esq. (via email)
      Michael Caruso, Esq. (via email)

# EXHIBIT A

# New Jersey Motor Vehicle Commission

## Procedure to add a lien

All customers that need to add a lien to an existing New Jersey title must file a financing statement (ISM/SS-85C) with the New Jersey MVC. This can be done by visiting any local MVC Agency. If you are an out-of-state lien holder you can apply through the mail. Only out-of-state lien holders can apply through the mail, all NJ lien holders must go to their local agency. All forms and titles **must be original**; no copies of any kind can be accepted. No cash can be accepted through the mail, only checks or money orders made payable to NJMVC.

The following information is needed to add a lien to a vehicle:

1. The original New Jersey Title

2. A check or money order for $85.00 payable to the MVC

3. The completed financing statement form SS-85C. The SS-85C **must be** completed by the owner and co-owner (if applicable) **not the lien holder**. The instruction are as follows:

   - Line 1 – If lien holder is a company, a 15 digit corpcode number is required as well as the companies name. If the applying lien holder does not have a corpcode this can be applied for through the mail or in person at a MVC agency. If the lien holder is an individual, their NJ Driver License number and name is required.

   - Line 2 – Complete address, including street, city, state and zip

   - Line 3 – Date the lien is applied

   - Line 4 – Make, year and body type of the vehicle

   - Line 5 – Full VIN number and model of the vehicle

   - Line 6 – Control number of the NJ title

   - Line 7 – Owner of the vehicle as well as their driver's license or corpcode number, and signature is required. This information is not the same as the lien holder and if there are two owners, such as a co-owner, their information is also needed

   - Line 8 – Owner printed name

   - Line 9 – Owner's address, city, state and zip code

   - Line 10 – Date of which the owner filled out their information

**NOTE**: If two liens are being requested, a 2nd SS-85C is required and the top of the form must have "Second Lien" noted on it. The same directions as the first lien are to be followed but instead of a $85.00 check for a single lien the new amount would be $110.00.

**Motor Vehicle Commission**

# FINANCING STATEMENT

**Please Print or Type Information**    Fee: $85.00

(Original New Jersey Title Must Accompany this Application)

I hereby certify that I have entered into a security agreement affecting the article described below, with

_____
**Driver License Number or Corpcode (Lienholder)**        **(NAME OF LIENHOLDER)**

_____
**Address**            **City**            **State**    **Zip Code**

**Dated** _____

_____
**Make of Vehicle**        **Year**            **Body Type**

_____
**Identification Number**        **Model**

This Statement is presented to the Chief Administrator of the Motor Vehicle Commission of the State of New Jersey together with Certificate of Ownership No._____ pursuant to R.S. 39:10-11C as amended.

_____
**Driver License Number or Corpcode (Owner)**        **Signature of Owner**

_____
**Name of Owner (Print)**

_____
**Address**            **City**            **State**    **Zip Code**

_____
**Date**

Unless this statement, with the certificate of ownership for the article, is presented to the Chief Administrator of the New Jersey Motor Vehicle Commission, or his/her agent, for filing, there shall be the same result of failure to file as provided in Chapter 9 of Title 12A of the New Jersey Statutes.

**OS/SS-85C (R7/09)**