

**CHIESA SHAHINIAN & GIANTOMASI PC**

ONE BOLAND DRIVE
WEST ORANGE, NJ 07052

csglaw.com

**MICHAEL R. CARUSO**
mcaruso@csglaw.com
(O) 973.530.2109
(F) 973.530.2309

May 23, 2019

**By ECF & Federal Express**

Hon. John K. Sherwood, U.S.B.J.
United States Bankruptcy Court
District of New Jersey
50 Walnut Street, Courtroom 3D
Newark, New Jersey 07102

      **Re:** *In re New England Motor Freight, Inc., et al.*
           Case No. 19-12809 (JKS)
           <u>Hearing on March 29, 2019 at 2:00 p.m. [ECF No. 583]</u>

Dear Judge Sherwood:

      On behalf of Wells Fargo Equipment Finance, Inc. ("**WF**"), a secured creditor in the chapter 11 cases referenced above, please accept this letter in lieu of a more formal brief in advance of the hearing scheduled for March 29, 2019 at 2:00 p.m. The hearing relates to an informal challenge by the Official Committee of Unsecured Creditors (the "**Committee**") as to whether WF holds valid and duly perfected first priority liens on the sixteen (16) Great Dane flatbed trailers (the "**16 Units**"). In support of addressing this issue in the affirmative, WF shall rely on the accompanying *Joint Statement Of Material Facts And Documents Not In Dispute* (the "**Joint Statement**").[1]

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as in the Joint Statement. For the sake of brevity, the facts recited in the Joint Statement are not repeated here at length but are cross-referenced.

Hon. John K. Sherwood, U.S.B.J.
May 23, 2019
Page 2

## PRELIMINARY STATEMENT

As a matter of law, and based on the undisputed facts set forth in the accompanying *Joint Statement*, the Committee may not attack WF's liens. WF's liens are valid and duly perfected under applicable non-bankruptcy law, specifically New Jersey's Motor Vehicle Certificate Ownership Law, N.J.S.A. 39:10-1 et seq., as supplemented by New Jersey's adoption of the Article 9 of the Uniform Commercial Code, N.J.S.A. 12A:9-101 et seq. See In re Manufacturer's Credit Co., 441 F. 2d 1313 (3d Cir. 1971)(A security interest is perfected in New Jersey by the "notation of an encumbrance on a certificate of title"). This was true five years before the Petition Date. As such, the Committee must first demonstrate that they have a procedural basis for seeking to invalidate the valid pre-petition liens; something they have not, and cannot do. Indeed, there is no procedural mechanism or substantive basis for the Committee or Debtors to attempt to void WF's liens on the 16 Units.

## ARGUMENT

### I. The Committee Lacks Legal Standing To Invalidate WF's Liens On The 16 Units.

The Third Circuit's decision in The Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 580 (3d Cir.2003) recognized that the Bankruptcy Court, as a court of equity, has the power to authorize a creditor's committee to sue derivatively to recover property for the benefit of the estate. Although Cybergenics did not specifically lay out the procedures that should be followed in allowing creditors derivative standing, the Third Circuit expressed its agreement with the approaches taken by the Second and Seventh Circuits. In re G–I Holdings, Inc., 313 B.R. 612, 628 & n. 16 (Bankr.D.N.J.2004) (citing In re Valley Media, Inc.,

Hon. John K. Sherwood, U.S.B.J.
May 23, 2019
Page 3

2003 WL 21956410, *2 (Bankr.D.Del. Aug.14, 2003)). Under these guidelines generally, derivative standing requires: (1) a colorable claim, (2) that the trustee unjustifiably refused to pursue the claim, and (3) the permission of the bankruptcy court to initiate the action. In re Valley Media, Inc., 2003 WL 21956410, *2 (citing In re Commodore Int'l Ltd., 262 F.3d 96, 100 (2d Cir.2001) and Fogel v. Zell, 221 F.3d 955, 966 (7th Cir.2000)). It is the creditor's burden in the first instance to demonstrate that it has satisfied these prerequisites for derivative standing. In re G–I Holdings, Inc., 313 B.R. at 628.

Here, the Committee has not satisfied the prerequisites for derivative standing. The Committee has not sought permission of the Bankruptcy Court to seek to void or invalidate WF's liens on the 16 Units. Debtors have not unjustifiably refused to pursue such claims. Indeed, as explained below, there are no colorable claims to pursue with respect to WF's liens on the 16 Units. The fundamental reason is because, with respect to the 16 Units, all Certificates of Origin and all Certificates of Title note WF's liens since 2014, five years before the Petition Date. The reach back periods expired several years ago for any purported claim that WF's liens constitute either preferential transfers or fraudulent transfers. There is no procedural mechanism or substantive basis for the Committee or Debtors to attempt to void or invalidate WF's liens on the 16 Units.

Instead of formally seeking derivative standing, the Committee seeks to informally challenge WF's liens by exploiting an administrative titling error made by the New Jersey Motor Vehicle Commission and, in doing so, the Committee argues form over substance. The titling error is that the Certificates of Origin denote NEMF as the owner of the 16 Units while the Certificates of Title denote Eastern as the owner of the 16 Units. Either way, it does not matter, because WF is denoted on both sets of documents as the first and only lienholder. The Committee argues that WF's

Hon. John K. Sherwood, U.S.B.J.
May 23, 2019
Page 4

liens should not have been documented on the titles, WF is unperfected, and thus WF's liens should be vitiated. The Committee does not dispute that WF's liens are on the titles and are also on the Certificates of Origin.

The Committee's arguments are time barred. WF's liens were documented on the 16 titles five years before the Petition Date. The ninety day preference period is clearly inapplicable and even the two and four year statutes of limitations for bankruptcy and state fraudulent transfer claims have long ago expired. See 11 U.S.C. 548; see also N.J.S.A. 25:2-31. As a matter of law, and based on the undisputed facts set forth in the accompanying Joint Statement, WF's liens are valid and duly perfected under applicable non-bankruptcy law, specifically New Jersey's Motor Vehicle Certificate Ownership Law, N.J.S.A. 39:10-1 et seq. ("**MVL**"), as supplemented by New Jersey's adoption of the Article 9 of the Uniform Commercial Code, N.J.S.A. 12A:9-101 et seq. ("**Art. 9 UCC**")

**II.    WF's liens are valid and perfected under New Jersey's Motor Vehicle Certificate Ownership Law, N.J.S.A. 39:10-1 et seq.**

"In New Jersey, encumbrances on motor vehicles must be noted on the certificate of title issued by the Department of Motor Vehicles in order to be perfected against a subsequent lien. N.J.S.A. 39:10-8 through 11 (1973). The notation of an encumbrance on a certificate of title is the only method by which a security interest in a motor vehicle can be perfected in New Jersey." In re Manufacturer's Credit Co., 441 F. 2d 1313 (3d Cir. 1971). Here, it is undisputed that WF's liens are noted on the Certificates of Title issued by the Department of Motor Vehicles ("**DMV**") (see *Joint Statement* ¶6, Ex. E). It is undisputed that WF's liens are noted on the Certificates of Origin presented to the DMV by the manufacturer, Great Dane (Id. ¶5, Ex. D). There are no competing liens as against the 16 Units. WF's liens attached to the titles of the 16 Units five years ago in 2014 at the time WF advanced a single purchase money loan for the acquisition and purchase of the 16

Hon. John K. Sherwood, U.S.B.J.
May 23, 2019
Page 5

Units new from the manufacturer, Great Dane (Id. ¶¶ 3-5). Only one loan was made by WF relative to the 16 Units. NEMF and Eastern are both obligated on the same underlying debt related to the 16 Units, by virtue of the NEMF Loan Schedule and by virtue of the Eastern Continuing Guaranty. The NEMF Loan Schedule is a security agreement granting WF a lien on each of the 16 Units one day before issuance of the Certificates of Title on April 17, 2014. The Eastern Security Agreement was executed approximately a month after issuance of the Certificates of Title likewise granting WF a lien on each of the 16 Units.

In the Third Circuit case, Manufacturer's Credit Co. supra, the lender made a purchase money loan in 1965 to finance the purchase and acquisition of twenty new buses. In doing so, the lender "filed with the Director [of Motor Vehicles] the manufacturer's [ ] Statements of Origin of the 20 buses and an application for issuance of Certificate of Ownership for each of them, in compliance with New Jersey's Motor Vehicle Certificate of Ownership Law, N.J.S.A. 39:10-8." (Id. 1314). A year later, in 1966, the lender made a separate non-purchase money loan on the same buses. The Third Circuit held that, although the lender was perfected under N.J.S.A. 39:10-8 with respect to the initial purchase money loan, N.J.S.A. 39:10-11 required the lender to make a further filing with the Director of the subsequent non-purchase money loan on same buses in order to perfect a security interest in the buses as to the second loan. The Third Circuit's decision hinged on the factual finding of two separate loan transactions, one in 1965 for $778,000 and the other in 1966 for $375,000, each related to the twenty buses. The Third Circuit explained:

> "the separateness of the 1965 and 1966 transactions is evidenced by these factors: (1) the 1965 loan was collateralized by 20 buses and the 1966 loan was collateralized by the same 20 buses and 20 additional buses; (2) the interest rate on the 1965 loan was 5% while that on the 1966 loan was 6%; and (3) the schedules for repayments of the 1965 and 1966 loans were different— 84 months for the 1965 loan and 25 months for the 1966 loan."

Hon. John K. Sherwood, U.S.B.J.
May 23, 2019
Page 6

Id. at 1319. The Court rejected the lender's argument that the subsequent loan's liens should be deemed perfected based on the proper perfection of the initial loan's liens. The Court held that the bank could not escape the necessity of a further filing with the Director for the subsequent non-purchase money loan on the same buses.

Here, as in Manufacturer's Credit Co. supra., WF made a purchase money loan for new vehicles. WF's purchase money loan and liens were perfected under N.J.S.A. 39:10-8 upon the manufacturer's tender and delivery of Certificates of Origin to the Director noting WF as the secured party with a first lien. Unlike Manufacturers Credit Corp., however, no subsequent loan was made by WF relative to the 16 Units. Therefore, N.J.S.A. 39:10-11 is inapplicable to WF's single purchase money loan and liens on the 16 Units. The Eastern Security Agreement does not constitute "Loan 2" or a separate financing transaction as the Committee has wrongly characterized. It is undisputed that WF never advanced any new loan monies or financing relative to the 16 Units after the $387,136 purchase money loan in April 2014. The Eastern Security Agreement was a corrective measure for Eastern to grant a lien on each of the 16 Units in response to the DMV's administrative error in denoting Eastern as the title owner instead of NEMF.

In this case, and unlike Manufacturers, only N.J.S.A. 39:10-8 applies[2], in lieu of NJ.S.A. 39:10-11, because WF made only one purchase money loan for the acquisition and financing of the

---

[2] N.J.S.A. 39:10-8., titled "Certificate of origin of new motor vehicle; security interests" provides:

> **When a new motor vehicle is sold in this State, the manufacturer,** his agent or a de**aler shall execute and deliver** to the purchaser an assignment of **the certificate of origin**, with the genuine names and business or residence addresses of both stated thereon, and certified to have been executed with full knowledge of the contents and with the consent of both purchaser and seller. **If, in connection with such sale, a security interest** is taken or retained by the seller to secure all or a part of the purchase price of the motor vehicle, or **is taken by a person who by making an advance** or incurring an obligation **gives value to enable the purchaser to acquire rights in the motor vehicle,** the original certificate of origin need not be delivered to

Hon. John K. Sherwood, U.S.B.J.
May 23, 2019
Page 7

new 16 Units directly from the manufacturer. By its express terms, N.J.S.A. 39:10-11(C)[3] carves out N.J.S.A. 39:10-8 from its application, and thus, for a new vehicle it is unnecessary for a financing statement to be filed with the DMV to perfect the lien. Since a financing statement need not be filed, subsection "D" of N.J.S.A. 39:10-11 does not apply either, as that section merely defines what should be included in the financing statement required under N.J.S.A. 39:10-11(C). It is indisputable that the single loan transaction at issue here involved a purchase money loan for new vehicles governed by N.J.S.A. 39:10-8. There is no requirement for the filing of a financing statement or any representation as to the date of the security agreement when N.J.S.A. 39:10–8 applies in lieu of N.J.S.A. 39:10-11, by virtue of the carve out exception in N.J.S.A. 39:10-11 (C).

### III. WF's liens are valid and perfected under New Jersey's adoption of the Article 9 of the Uniform Commercial Code, N.J.S.A. 12A:9-101 et seq.

In addition to New Jersey's Motor Vehicle Certificate Ownership Law, the perfection of WF's security interests and liens is governed by New Jersey's adoption of the Article 9 of the

---

the buyer at time of sale, and **the original certificate of origin, with the name and business address of the secured party noted, may be delivered directly to the Motor Vehicle Commission for issuance of a certificate of title in the name of the purchaser**. The name and the business or residence address of the secured party or his assignee shall be noted on the manufacturer's certificate of origin.

(Emphasis supplied).

[3] N.J.S.A. 39:10-11, titled "Submitting evidence of purchase; recording; certificate of ownership; fee; creation of security interest; penalty", provides:

C. **Except as hereinafter in this section otherwise expressly provided, whenever a security interest is created in a motor vehicle, other than a security interest which is required to be noted on the certificate of origin** or the certificate of ownership, **as provided in R.S. 39:10-8** and R.S. 39:10-9, **there shall be filed with the director the certificate of ownership of the motor vehicle, together with a financing statement on a form prescribed by the director**. The director shall make and file a record of the transaction and shall issue a certificate of ownership, recording the name and address of the secured party or his assignee thereon, and shall deliver it to the secured party or his assignee. A copy of the certificate of ownership so issued shall be delivered to the buyer.

(Emphasis supplied).

Hon. John K. Sherwood, U.S.B.J.
May 23, 2019
Page 8

Uniform Commercial Code, N.J.S.A. 12A:9-101 et seq. The Motor Vehicle Law expressly incorporates Article 9 of the U.C.C. because N.J.S.A. 39:10-11(J) provides as follows:

> J. **The notation of the name and business or residence address of a secured party** or his assignee, **on the certificate of origin** or on the certificate of ownership, **as provided in R.S. 39:10-8** and R.S. 39:10-9, **and the presentation to the director, in accordance with R.S. 39:10-11, of the certificate of origin** or certificate of ownership **so noted**, and the compliance with the requirements of subsections C. and D. of R.S. 39:10-11 shall be in lieu of all filing requirements imposed by chapter 9 of Title 12A of the New Jersey Statutes and **shall constitute the perfection of a security interest in the motor vehicle, and the rights and remedies of the debtors and the secured parties in respect to such security interest shall**, except as otherwise expressly provided in this chapter, **be subject to and governed by chapter 9 of Title 12A of the New Jersey Statutes**.

N.J.S.A. 39:10-11(J)(Emphasis supplied).

Here, numerous sections of Article 9 of the UCC reinforce the validity and perfection of WF's liens, notwithstanding the administrative titling error by DMV. For example, WF's compliance with the requirements of the MVL is the equivalent to the filing of a financing statement under U.C.C. Article 9. See e.g., N.J.S.A. 12A:9-311(b) ("Compliance with the requirements of a statute [N.J.S.A. 39:10-1 et seq.] is equivalent to the filing of a financing statement under this chapter."). Given that U.C.C. Art. 9 makes a filing with the DMV the equivalent of the filing of a UCC-1 with the Secretary of State, even if the DMV should have rejected the filing, but did not reject it, the filing is effective. See N.J.S.A. 12A:9-516, Official Comment 9 ("an otherwise effective financing statement generally remains so even though the information in the financing statement becomes incorrect"). See also In re Montague, 409 B.R. 685 Bankr. D. Vet. 2009), amended by 417 B.R. 214 (finance statement effective despite misstating debtor's address).

Hon. John K. Sherwood, U.S.B.J.
May 23, 2019
Page 9

Upon DMV's acceptance of the Certificates of Origin and Certificates of Title noting WF's liens, both sets of documents became effective filings sufficient for placing WF's liens against the 16 Units notwithstanding that NEMF is denoted as owner on the Certificates of Origin while Eastern is denoted as owner on the Certificates of Title. Moreover, the failure of the DMV to correct its error does not impair the effectiveness of the filed record. See e.g., N.J.S.A. 12A:9-517, Comment 2 ("The failure of the filing office to index a record correctly does not affect the effectiveness of the filed record"); In re Microband Companies, Inc., 135 B.R. 2, 5-6 (Bankr. S.D.N.Y. 1991)("the filing requirements of Article 9 of the UCC are met by a certificate of title that provides adequate notice to subsequent secured creditors as opposed to invalidating a security interest for minor inaccuracies. We see no reason to hold to the contrary. Accordingly, we hold that, in New Jersey and Maryland, a security interest is perfected and the statutory purpose is satisfied when, as in the case here, the certificates of title put third parties on notice of prior security interests.") (internal citations omitted).

Several courts across various jurisdictions have held that a security interest is perfected when a certificate of title gives clear notice to potential creditors about the existence of a lien on the motor vehicle. See, Yeager Trucking v. Circle Leasing of Colorado Corporation (In re Yeager Trucking), 29 B.R. 131 (Bkrtcy.D.Colo.1983); Equilease Corporation v. Loague (In re Loague), 25 B.R. 940 (Bkrtcy.N.D.Miss.1982); Corble Systems, Inc. v. Coors of the Cumberland, Inc. (In re Coors of the Cumberland, Inc.), 19 B.R. 313 (Bkrtcy.M.D.Tenn.1982). In the seminal case in this area, the First Circuit ruled that a certificate of title containing only minor errors that are not seriously misleading, substantially complies with perfection requirements. In re Circus Time, 641 F.2d 39, 42 (1st Cir. 1981)("[a]bsolute compliance with the requirements of the Certificate of Title

Hon. John K. Sherwood, U.S.B.J.
May 23, 2019
Page 10

Acts is not necessary to perfect a security interest in a vehicle."). It is axiomatic that law from other jurisdictions is particularly persuasive with respect to issues concerning the U.C.C., because "the UC.C. .is to be construed uniformly." N.J. Lawyer's Fund for Client Prot. v. Pace, 374 N.J. Super. 57, 64 (App. Div. 2005); see also Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat'l Bank, 390 N.J. Super. 199, 205 (App. Div. 2007) (explaining that the purpose of the UCC is "to simplify, clarify, and modernize the law governing commercial transactions").

Finally, Article 9 also demonstrates the problems in the Committee's argument that the Eastern Security Agreement granted a lien in used equipment and thus is governed by N.J.S.A. 39:10-11 only. Under Art. 9-317(b) a buyer of goods takes subject to any perfected lien as well as any unperfected lien unless the buyer gives value and takes title without knowledge of the prior security interest. Here, based on the undisputed facts, Eastern took title after NEMF perfected its liens under the Certificates of Origin because a secured creditor is deemed perfected when the manufacturer tenders the Certificate of Origin with the lienholder. N.J.S.A. 39:10-8; 39:10-11(J). Moreover, as noted above, even if NEMF was not perfected, Eastern took title subject to NEMF's liens because as a related entity Eastern was aware of NEMF's security agreement and did not pay value. Thus, the security interests granted by both NEMF and Eastern apply and WF's perfection is valid regardless of the Eastern Security Agreement. Eastern took title subject to the NEMF security agreement and WF is perfected by its notation as lienholder on the titles.

## CONCLUSION

For each of the foregoing reasons, WF respectfully requests the entry of an Order determining the validity and perfection of its purchase money security interests in, and first priority liens on, the 16 Units so that the "Wells Fargo Disputed Sale Proceeds" of $157.804.28 may be

Hon. John K. Sherwood, U.S.B.J.
May 23, 2019
Page 11

released and paid to WF upon closing of the Eastern sale anticipated to occur on or about May 31, 2019. Thank you for Your Honor's time and attention.

    Respectfully submitted,

    CHIESA SHAHINIAN & GIANTOMASI PC

    By: */s/ Michael R. Caruso*
    Michael R. Caruso, Esq.
    One Boland Drive
    West Orange, NJ 07052
    Telephone: (973) 530-2109
    Facsimile: (973) 530-2309
    Email: mcaruso@csglaw.com

    *Attorneys for Wells Fargo Equipment Finance, Inc.*