**GREENBERG TRAURIG, LLP**
Alan J. Brody, Esq.
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
(973) 443-3543 (Telephone)
(973) 295-1333 (Facsimile)

-and-

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
Mark F. Liscio, Esq.
Scott D. Talmadge, Esq.
601 Lexington Avenue, 31st Floor
New York, New York 10022
(212) 277-4000 (Telephone)

*Co-Counsel to JPMorgan Chase, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Jointly Administered)<br><br>**Hearing Date and Time:**<br>**June 4, 2019 at 10:00 a.m.** |
|---|---|

**LIMITED OBJECTION TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING ENTERING INTO INSURANCE PREMIUM FINANCING AGREEMENT**

JPMorgan Chase Bank, N.A. ("**Chase**"), a secured creditor of the debtors in the above-captioned cases (the "**Debtors**"), by and through its undersigned co-counsel, Greenberg Traurig,

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. ("**NEMF**") (7697); Eastern Freight Ways, Inc. ("**Eastern**") (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. ("**Apex**") (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. ("**Carrier**") (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

LLP and Freshfields Bruckhaus Deringer US LLP, hereby files this limited objection (the "**Objection**") to the application of Debtor Eastern Freight Ways, Inc. ("**Eastern**"), for an order authorizing and approving Eastern to enter into an insurance premium financing agreement [Dkt. No. 570] (the "**Motion**"), and respectfully represents as follows:

1. By its Motion, the Eastern seeks *nunc pro tunc* approval to finance and pay up to $1,810,037 for a month and half (1 ½) of insurance, which, notwithstanding it's alleged necessity, lapsed in mid-April. Moreover, without assurance of refund for any unused portion of such premium, upon information and belief, Eastern, without Court order, has already paid $548,261 as a down payment. This is a considerable sum to pay off the backs of Eastern's creditors.

## BACKGROUND

2. These Chapter 11 cases were commencing by the filing of voluntary Chapter 11 petitions on February 11, 2019 (the "**Petition Date**").

**A.    Term Loans**

3. Prior to the Petition Date, NEMF and Chase entered into that certain Master Lease Agreement effectively dated April 23, 2014 ("**Master Lease Agreement**") pursuant to which Chase extended eight (8) separate term loans to NEMF ("**NEMF Term Loans**"). Each of the NEMF Term Loans is evidenced by a separate financing lease agreement (the "**NEMF Schedules**" and collectively with the Master Lease Agreement, the "**Term Loan Documents**").[2]

4. NEMF utilized the proceeds of the NEMF Term Loans to finance NEMF's acquisition of various freightliners, tractors, trailers and forklifts used by NEMF and its affiliate Debtors in their day-to-day business operations (the "**NEMF Collateral**"). To secure NEMF's obligations under the Term Loan Documents, NEMF granted to Chase, a first-priority security

---

[2] The Term Loan Documents are too voluminous to attach to this Limited Objection but have been provided to respective counsel for the Debtors, the Committee and are otherwise available upon request.

2

interest in and to the NEMF Collateral. Most of the NEMF Collateral is comprised of vehicles for which Chase perfected its security interest by noting its lien on the vehicle titles. *See* N.J.S.A. 12A:9-311(a)(2); N.J.S.A. 39:10-11(J) (stating that security interest in vehicle is perfected by notation on title). The NEMF Collateral is also comprised of forklifts for which Chase perfected its security interest by filing a UCC-1 financing statement in the appropriate jurisdiction.

5.    Pursuant to each NEMF Schedule, the NEMF Collateral financed by the NEMF Term Loans cross-collateralized all of the NEMF's obligations owing to Chase. According to paragraph 7 of each NEMF Schedule, the NEMF Collateral served "[a]s collateral security for payment and performance of all Secured Obligations (defined in Paragraph 8 below) and to induce Lessor [Chase] to extend credit from time to time to Lessee [NEMF] (under the Lease or otherwise), Lessee hereby grants to Lessor a first priority security interest in all of Lessee's right, title and interest in the Equipment, whether now existing or hereafter acquired, and in all Proceeds...."

6.    According to paragraph 8 of each NEMF Schedule, "Secured Obligations" is defined as:

> (a) all payments and other obligations of Lessee [NEMF] under or in connection with this Schedule, and (b) all payments and other obligations of Lessee (whether now existing or hereafter incurred) under or in connection with the Master Lease and all presented and future Lease Schedules thereto, and (c) all other leases, indebtedness, liabilities and/or obligations of any kind arising under or from any note, open account, overdraft, credit card, lease, Rate Management Transaction, letter of credit application, endorsement, surety agreement, guaranty, acceptance, foreign exchange contract or any monetary obligation (whether now existing or hereafter incurred, absolute or contingent, direct or indirect) of Lessee to Lessor [Chase].

7.    As of the Petition Date, NEMF was indebted to Chase for amounts in excess of $3.9 million in connection with the Term Loan Documents. By email dated May 1, 2019, the Official Committee of Unsecured Creditors (the "**Committee**"), by and through its counsel, Lowenstein

Sandler LLP, confirmed that the Committee has no Challenge to Chase's liens on the rolling stock of NEMF.

**B.    The Letters of Credit.**

8.    In addition to the Term Loan Documents, Chase previously issued three letters of credit on behalf of NEMF (collectively, the "**Letters of Credit**") pursuant to a Continuing Agreement for Standby Letters of Credit dated April 27, 2009 (the "**LC Agreement**") and an Advised Line of Credit Note dated April 11, 2013, as modified by the Note Modification Agreement dated September 11, 2018 (the "**LC Note**" and together with the LC Agreement, the "**LC Documentation**" and collectively with the Term Loan Documents, the "**Loan Documents**"). All obligations due to Chase pursuant to the Loan Documents are secured by the NEMF Collateral and the Debtors' cash deposited at Chase.

9.    On February 20, 2019, Chase received notice that the beneficiary under an issued Letter of Credit had requested a full draw under that Letter of Credit in the amount of $2,450,000.00. As required, Chase honored this draw request in full. On March 5, 2019, Chase received notice that the beneficiary under an issued Letter of Credit had requested a full draw in the amount of $7,850,000.00. As required, Chase honored this draw request in full.

10.    To date, Chase has not received payment from NEMF with respect to the drawn Letters of Credit, resulting in an outstanding liability of $10,300,000 *plus* fees, costs and expenses owing to Chase.

**C.    Eastern and Carrier Guaranty Agreements.**

11.    Eastern, whose assets are to be sold as part of the Sale, is party to a Continuing Guaranty Agreement, dated June 12, 2009, pursuant to which Eastern guaranteed all of the debts, obligations, indebtedness and liabilities of every kind of NEMF owed to Chase (the "**Eastern**

4

**Guaranty Agreement"**). Pursuant to the Eastern Guaranty Agreement, Eastern granted a security interest in its deposit accounts maintained at Chase and authorized Chase to setoff and apply all funds in the deposit accounts maintained at Chase with respect to all debts, obligations, indebtedness and liabilities of every kind and character of NEMF and Eastern due to Chase.

12. Carrier, whose assets are to be sold as part of the Sale, is party to a Continuing Guaranty Agreement, dated June 12, 2009, pursuant to which Carrier guaranteed all of the debts, obligations, indebtedness and liabilities of every kind of NEMF owed to Chase (the "**Carrier Guaranty Agreement**" and together with the Eastern Guaranty Agreement, the "**Guaranty Agreements**"). Pursuant to the Carrier Guaranty Agreement, Carrier granted a security interest in its deposit accounts maintained at Chase and authorized Chase to setoff and apply all funds in the deposit accounts maintained at Chase with respect to all debts, obligations, indebtedness and liabilities of every kind and character of NEMF and Carrier due to Chase.

## OBJECTION

13. Chase understands the necessity of the Debtor to maintain proper insurance with respect to the Debtors' business operations and vehicles. However, Chase is quite concerned to learn at this late stage that (a) Eastern's insurance lapsed as of April 10, 2019, and (b) Eastern has agreed to insurance that will cost the estate a one-year total premium of $1,810,037, notwithstanding Eastern has ceased operations and the sale of substantially all of its assets is scheduled to close on May 31, 2019, only three (3) days from the date Objection. Moreover, Chase has been advised by the Debtors'' professionals that Eastern has already paid out $548,261 to the insurance premium financing company on May 13, 2019.

14. Accordingly, the Motion raises significant issues which must first be sufficiently answered before Eastern is permitted to spend up to $1,810,037 for a month and half of insurance:

- Why did Eastern allow for its insurance to lapse?

- Eastern had no authority to pay a $548,261 down payment, which considerable sum was outside Eastern's ordinary course of business, without a Court order.

- Chase has been advised by Eastern's professionals that, the estimated *pro-rata* premium for the fifty-one (51) day period of April 10, 2019 through May 31, 2010 (the scheduled closing date of the Easter/Carrier sale) is $408,622, consisting of a *pro-rata* premium of $252,909 and a penalty payment of $155,713—this is an extraordinary amount for the creditors of Eastern's estate to bear for a mere fifty one (51) days of insurance that Eastern allowed to lapse:

- There is no assurance that the estate will be refunded for the unused portion of the insurance premiums (including the $548,261 down payment) upon closing on May 31.

- Inasmuch as Eastern is no longer operating and the sale of its assets, including rolling stock, will close on May 31, payment of further insurance premiums seems unnecessary.

15. Absent satisfactory explanations for these critical and costly issues, Chase objects to the Motion.

### RESERVATION OF RIGHTS

16. Chase is hopeful that its concerns outlined above will be resolved prior to the hearing on June 4, 2019. In the interim, however, Chase expressly reserves all rights relating to, among other things and without limitation, the relief sought by the Debtors in the Motion. Chase further reserves its right to amend, modify or supplement this Objection, including responding to

the filing of any additional documents or exhibits by Debtors, the Committee and/or any party-in-interest, and to raise additional arguments at tor prior to the hearing on the Motion.

## CONCLUSION

**WHEREFORE,** Chase respectfully requests that this Court (a) deny the relief requested in the Motion, at this time, without prejudice, (b) grant such other and further relief as this Court deems just and proper.

Dated: May 28, 2019

                                              Respectfully submitted,

*/s/Alan J. Brody*
Alan J. Brody, Esq.
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Telephone: (973) 443-3543
Facsimile: (973) 296-1333

FRESHFIELDS BRUCKHAUS DERINGER
US LLP
Mark F. Liscio, Esq.
Scott D. Talmadge, Esq.
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000

Co-Counsel for JP Morgan Chase Bank, N.A.

*43617479v2*