**GIBBONS P.C.**
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
E-mail:  kgiannelli@gibbonslaw.com
         mconlan@gibbonslaw.com
         btheisen@gibbonslaw.com

Counsel to the Debtors
and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Jointly Administered) |

### DEBTORS' MOTION FOR ORDER (I) AUTHORIZING THE PRIVATE SALE OF CERTAIN VEHICLES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) APPROVING THE PURCHASE AGREEMENT; (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF TWO MOTOR VEHICLE LEASE AGREEMENTS; AND (IV) GRANTING RELATED RELIEF

The above-referenced debtors and debtors in possession (collectively, the **"Debtors"**), file this motion (this "**Motion**") for entry of an order (i) authorizing the private sale (the "**Sale**") of nine vehicles (collectively, the "**Property**") on an "as is, where is" basis, free and clear of any and all liens, claims, encumbrances, and other interests to Myron P. Shevell (the "**Purchaser**" or

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

"**Mr. Shevell**") pursuant to the terms and conditions of the Asset Purchase and Sale Agreement, dated as of May 8, 2019 (as may be amended, supplemented, or otherwise modified from time to time, the "**Purchase Agreement**"), by and between New England Motor Freight, Inc. (the "**Seller**") and the Purchaser, a copy of which is attached as Exhibit 1 to the Proposed Order, (ii) authorizing and approving the terms of the Purchase Agreement, (iii) authorizing the assumption and assignment of two motor vehicle lease agreements to Mr. Shevell, and (iv) granting certain related relief. In support of the relief requested herein, the Debtors rely on the Declaration of Vincent Colistra, attached hereto as Exhibit A, and respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of New Jersey, dated September 18, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief requested herein are sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the **"Bankruptcy Code"**) and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the **"Bankruptcy Rules"**), and Rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (as amended, the **"Local Rules"**).

## BACKGROUND

3. On February 11, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with the Court for relief under chapter 11 of the Bankruptcy Code with the intent to commence an orderly wind-down and liquidation of their businesses and assets through the chapter 11 cases (the **"Chapter 11 Cases"**). The Debtors are in possession of their assets as

2

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner.

4. Factual background relating to the Debtors' businesses, capital structure, and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in detail in the First Day Declaration of Vincent Colistra (the **"First Day Declaration"**) which was filed on the Petition Date [Docket No. 22] and is incorporated herein by reference.

## FACTS SPECIFIC TO THE RELIEF REQUESTED

5. The Property consists of nine motor vehicles located around the country that is owned by Seller, as more fully set forth in detail on Exhibit A to the Purchase Agreement. Further, New England Motor Freight, Inc. currently leases two motor vehicles (the **"Leased Property"**) through lease agreements with Audi Freehold and Mercedes-Benz Financial Services (copies of which are attached hereto as Exhibit B). The lease with Audi is a thirty-eight month lease that commenced on November 30, 2018 and the lease with Mercedes-Benz is set to terminate on March 22, 2020.

6. Recently, Purchaser (who is an Insider of the Debtors as such term is defined in the Bankruptcy Code) initiated contact with Mr. Colistra concerning the potential purchase of the Property and the assignment of the Leased Property. Although Purchaser is an Insider, based on Purchaser's agreement (i) to purchase the Property at the upper end of the appraised value provided to the Debtors by Taylor & Martin, and (ii) to cover the costs of advertising the Property up to a cap of $3,000 to determine whether any third party is interested in purchasing any of the Property (aside from the Leased Property) in amount in excess of Purchaser, the Debtors agreed to the sale of the Property to Purchaser on the terms and conditions set forth in the Purchase Agreement as well as the assignment of the Leased Property. With respect to the Leased Property, the Shevell family has been paying the rental payments associated with the

respective leases. Due to the fact that the Debtors are liquidating and the Leased Property is of no benefit to the Debtors' estates, the Debtors have agreed to assign the leases associated with the Leased Property to Mr. Shevell in order to remove this liability from the Debtors' estates.

7. To the extent the Debtors receive all cash, "as is, where is" third-party bids in connection with any of the Property during the advertising period, the Debtors will contact Purchaser to determine whether Purchaser wants to top such bid(s). If Purchaser declines, such third-party bidder(s) will be declared the successful bidder for such item of Property and the Debtors will proceed to close with such third-party bidder(s). If Purchaser submits a bid in excess of any third-party bid(s) received by the Debtors, the Debtors will go back to such third-party bidder(s) to determine whether they want to increase their bid(s) and will continue to go back and forth with all interested parties until such time as the highest and otherwise best value is obtained for each item of the Property.

8. Pursuant to the terms and conditions of the Purchase Agreement, and subject to this Court's approval, the Debtors propose to sell to the Purchaser (or successful bidder(s)) the Property on an "as is, where is basis" free and clear of all liens, claims, encumbrances and other interests. The material terms and conditions of the Purchase Agreement are as follows:

| | |
|---|---|
| **Legal Description of Property: Purchase Agreement at Exhibit A.** | The Purchaser (or successful bidder(s)) agrees to buy and the Seller agrees to sell the vehicles set forth on Exhibit A to the purchase agreement. |
| **Purchase Price: Purchase Agreement at Exhibit A.** | $282,000 |
| **Deposit** | None. |
| **Closing Conditions: Purchase Agreement at 5.1 and 5.2.** | Orders/Closing. The obligation of Seller and Buyer to consummate the transactions described herein shall be contingent upon (a) entry of an order by the Bankruptcy Court |

4

| | |
|---|---|
| | pursuant to sections 363(f) and 365 of the Bankruptcy Code (1) authorizing Seller to sell the Vehicles to Buyer free and clear of all liens, claims, and interests, and (2) prohibiting any person from asserting against Buyer any claim or cause of action that is property of the Seller (the "Sale Order"); and (b) the Sale Order is not stayed in whole or in part by its terms, by operation of law, or by any subsequent order of the Bankruptcy Court or any other court of competent jurisdiction.<br><br>Additional Conditions to Obligations of Seller. The obligation of Seller to consummate the transactions described herein shall be contingent upon (a) the payment at Closing by Buyer of the Purchase Price set forth in Section 2.2 above (subject to the adjustments provided for in this Agreement); and (b) the execution and delivery by Buyer of the documents and instruments required of Buyer under this Agreement. |
| **Closing: Purchase Agreement at 6.1, 6.2 and 6.3** | Time of Closing. Except to the extent otherwise agreed to in writing by Buyer and Seller, the Closing shall take place on or before the fifth (5th) business day following the satisfaction of all conditions set forth in Section 4.1 of this Agreement (the "Closing Date").<br><br>Seller Deliveries. At Closing, Seller shall deliver to Buyer the following:<br><br>    6.2.1   A Bill of Sale (the "Bill of Sale") for the Vehicles, in such form as is acceptable to both Seller and Buyer, duly executed and acknowledged by Seller.<br><br>    6.2.2   An original certificate of title for each vehicle purchased by Buyer, duly endorsed by Seller.<br><br>    6.2.3   Such other instruments and/or documents reasonably requested by Buyer to effectuate this |

5

| | |
|---|---|
| | Agreement and the transactions contemplated thereby.<br><br>6.3 <u>Buyer Deliveries</u>. At Closing, Buyer shall deliver to Seller the following:<br><br>6.3.1   Payment of the Purchase Price (subject to the adjustments provided for in this Agreement) by wire transfer, or such other means approved by Seller, to Seller or to such other person or persons as Seller shall designate in writing.<br><br>6.3.2   Such other instruments and documents reasonably requested by Seller to effectuate this Agreement and the transactions contemplated thereby. |
| *"As Is, Where Is" Transaction: Purchase Agreement at 4.2.* | <u>Purchase "As Is, Where Is"</u>.  Buyer acknowledges and agrees that Buyer is familiar with the Vehicles and has examined, or had the opportunity to examine, all matters concerning the Vehicles which Buyer deems material to the transaction contemplated by this Agreement, the condition of or title to the Vehicles. Buyer further acknowledges and agrees that Buyer is acquiring the Vehicles in their "AS IS, WHERE IS" condition as of the Closing Date WITH ALL FAULTS, IF ANY, AND WITHOUT ANY WARRANTY, EXPRESS OR IMPLIED. |
| **Brokers** | None. |
| **Relief from Bankruptcy Rule 6004(h)** | The Proposed Order provides that the provisions of Bankruptcy Rule 6004(h) shall be waived. |
| **Sale Free and Clear** | Although the Debtors are unaware of any encumbrances on the Property, the Proposed |

6

|  | Order provides that the Property shall be transferred to the Purchaser (or successful bidder(s)) free and clear of all liens, claims, encumbrances, and interests of any kind or nature to the fullest extent permitted by section 363 of the Bankruptcy Code. |
|---|---|
| **Request for Tax Determination Under Section 1146** | None. |
| **Credit Bidding** | The proposed Sale does not involve a credit bid. |
| **Sale to Insider** | The proposed Sale is to an Insider. |

## RELIEF REQUESTED

9. By this Motion, the Debtors pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1, request the Court enter an order (a) authorizing the Sale pursuant to the Purchase Agreement, (b) authorizing and approving the Purchase Agreement, (c) authorizing the assumption and assignment of the leases associated with the Leased Property, and (d) granting related relief.

## BASIS FOR RELIEF REQUESTED

10. For the reasons set forth herein, the Debtors believe that the approval of a private sale of the Property (subject to advertising and a bidding process if competing bids are received) to the Purchaser (or successful bidder(s)) pursuant to the terms and conditions of the Purchase Agreement is not only appropriate, but is in the best interests of the Debtors, their estates and creditors. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the

7

Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In pertinent part, Bankruptcy Rule 6004 states that "all sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). With respect to the notice required in connection with a private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that, "[T]he notice of a proposed use, sale or lease of property . . . shall include . . . the terms and conditions of any private sale and the deadline for filing objections. The notice of a proposed use, sale or lease of property, including real estate, is sufficient if it generally describes the property." Fed. R. Bankr. P. 2002(c)(1).

11.    Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., In re Abbotts Dairies of Pa., Inc.,* 788 F.2d 143, 147 (3d Cir. 1986); *In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 175-76 (D. Del. 1991) (holding that the following non-exclusive list of factors may be considered by a court in determining whether there is a sound business purpose for an asset sale: "the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the effect of the proposed disposition of [sic] the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value"). *See also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (*citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)) (noting that the Court defers to the trustee's judgment so long as there is a legitimate business justification); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b)

8

application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1). Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, No. 89 C 593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

12. The "sound business reason" test requires a trustee or debtor in possession to establish four elements: (1) that a sound business purpose justifies the sale of assets outside the ordinary course of business; (2) that accurate and reasonable notice has been provided to interested persons; (3) that the trustee or the debtor in possession has obtained a fair and reasonable price; and (4) that the trustee or debtor in possession acted in good faith. *Abbotts Dairies,* 788 F.2d 143; *Del. & Hudson Ry.*, 124 B.R. at 176; *In re Titusville Country Club,* 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *see also Stephens Indus. Inc. v. McClung,* 789 F.2d 386, 390 (6th Cir. 1986); *Lionel*, 722 F.2d at 1071.

13. This fundamental analysis does not change if the proposed sale is private, rather than an in-person public auction. *See, e.g.*, *In re Ancor Exploration Co.*, 30 B.R. 802, 808

(Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)."). The bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property." *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991), *vacated on other grounds*, 165 B.R. 1 (D.P.R. 1992); *accord, In re Canyon P'ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985). Here, the proposed private sale of the Property to the Purchaser (or successful bidder(s)) meets all of these requirements and should be approved

### A. PROCEEDING BY PRIVATE SALE REFLECTS AN EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT

14. There is a sound business justification for the Debtors' preference to proceed with a private sale to the Purchaser, rather than conducting an in-person public auction sale of the Property. The Debtors submit that an order granting the relief requested herein is a matter within the sound discretion of the Court and would be consistent with the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). As a result of the Purchaser's interest in the Property, and its willingness to provide fair and reasonable consideration based on that interest at the highest appraised value provided to the Debtors by Taylor & Martin, the Debtors believe that their estates and creditors would benefit from the approval of the Sale without the added time, energy, and expenses associated with an in-person public auction; provided, however, the Debtors will advertise the Property and accept third-party bid(s), if any such bid(s) are submitted. Moreover, the Debtors' estates will benefit by closing the Sale as soon as possible since the Property is not generating any significant revenue and the Debtors are in the process of winding down their businesses.

15. Indeed, if the Debtors were forced to conduct an in-person public auction for the Property, the Debtors would not be guaranteed the commitment of the Purchaser to purchase the Property, much less at the price set by the Purchase Agreement. Further, the Debtors would incur additional expense in having to consolidate the Property for public auction.

16. The Debtors believe that a private sale of the Property to the Purchaser under the terms and conditions of the Purchase Agreement and subject to advertising is more likely to close in a timely and efficient manner than an in-person public auction because, in the Debtors' informed business judgment, the agreement provides them with a strong indication that the Purchaser is motivated to close the contemplated transaction in such a manner. Given the Purchaser's strong desire to close on an expedited basis so that he can obtain access to the Property as soon as practicable, the Debtors believe that the Sale represents the best opportunity to extract immediate and meaningful value from the Property in the amount of the Purchase Price.

**B. THE PURCHASE PRICE IS FAIR AND REASONABLE**

17. The Debtors believe that the Purchase Price is a fair and reasonable price for the Property. The Purchase Price under the Purchase Agreement was the result of arm's length negotiations and was based upon the highest appraised value for the Property provided to the Debtors by Taylor & Martin. The Debtors have carefully considered and analyzed the Purchaser's offer as set forth in the Purchase Agreement and have concluded that a sale of the Property pursuant to the Purchase Agreement (subject to advertising) will result in obtaining maximum value for the Property and is in the best interests of their estates and creditors. In consideration of the foregoing, the Debtors believe that the Purchase Price provides fair and reasonable value for the Property.

**C.   THE SALE IS PROPOSED IN GOOD FAITH**

18.   The Debtors submit that the Sale transaction contemplated herein and in the Purchase Agreement has been proposed in good faith, as the agreement was the product of good faith, arm's length negotiations between the Debtors, on the one hand, and the Purchaser, on the other, and was negotiated with the active involvement of the Debtors' officers and professionals. The Debtors believe and submit that the Sale is not the product of collusion or bad faith. Further, no evidence suggests that the Purchase Agreement is anything but the product of arm's length negotiations between the Debtors, the Purchaser and their respective professionals.

**D.   ADEQUATE AND REASONABLE NOTICE OF SALE HAS BEEN PROVIDED**

19.   The Debtors intend to provide adequate notice of the proposed Sale to all parties in interest, as required by the applicable procedural rules. *See* Fed. R. Bankr. P. 2002(c)(1) (notice must contain "the terms and conditions of any private sale and the time fixed for filing objections."); *see also Del. & Hudson Ry.*, 124 B.R. at 180 (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement). Further, the Debtors intend to advertise the Property, with the costs of such advertising being paid by the Purchaser up to a cap of $3,000 to determine whether any third party bidder is interested in submitting a competing bid.  Such third party bidders, if any, will have the opportunity to submit other offers during the bidding period and prior to the closing of the Sale to Purchaser. Consistent with their fiduciary duties to their estates, the Debtors will consider any and all such offers received in connection with the Property, so long as such offer is timely received by the Debtors and the third-party bidder(s) demonstrate financial wherewithal to promptly close on the cash sale without the need for additional due diligence.

**E.  THE SALE SHOULD BE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES**

20. In accordance with section 363(f) of the Bankruptcy Code, a debtor in possession may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (a) such a sale is permitted under applicable non-bankruptcy law; (b) the party asserting such a lien, claim, or interest consents to such sale; (c) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f).

21. Section 363(f) of the Bankruptcy Code allows a debtor to sell property "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is met:

    (a)    applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

    (b)    the party asserting the lien, claim or interest consents to the sale;

    (c)    the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property;

    (d)    the interest is the subject of a bona fide dispute; or

    (e)    such entity could be compelled to accept a money satisfaction of such claim.

11 U.S.C. § 363(f); *see also In re Elliott*, 94 B.R. 343, 345 (E.D. Pa 1988) (noting that section 363(f) is written in the disjunctive, thereby allowing sales "free and clear" if any one of the subsections is met).

22. As noted above, the Debtors do not believe any prepetition creditor has a lien on the Property. To the extent the Debtors are mistaken, the Debtors believe that the proposed Sale will generate more than sufficient proceeds to satisfy the claims of any creditor who is determined to possess valid liens on the Property and that such creditor(s) will otherwise agree to the Sale. Further, where consent is not obtained, a sale free and clear can proceed pursuant to either sections 363(f)(3) and 363(f)(5) of the Bankruptcy Code because the relevant lien or other encumbrances will attach to the proceeds of the Sale with the same validity, priority, and force and effect as such lien or encumbrance had immediately prior to the closing of the Sale, and/or the Debtors will establish at the sale hearing that the relevant creditors can be compelled to accept a monetary satisfaction of their respective claims. Accordingly, section 363(f) authorizes the Sale of the Property free and clear of all Liens, Claims and other Liabilities.[2]

### F. THE PURCHASER SHOULD BE FOUND TO HAVE ACTED IN GOOD FAITH

23. The Debtors also maintain that the Purchaser, is or would be entitled to the protections afforded by section 363(m) of the Bankruptcy Code.

24. Specifically, section 363(m) of the Bankruptcy Code provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

25. While the Bankruptcy Code does not define "good faith," the Third Circuit in *Abbotts Dairies* held that:

---

[2] The Debtors reserve all rights to argue at a hearing on the Motion that they can satisfy any one of the provisions set forth in section 363(f) of the Bankruptcy Code in connection with the Sale.

14

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders

788 F.2d at 147 (citations omitted); *see generally Marin v. Coated Sales, Inc. (In re Coated Sales, Inc.)*, No. 89-3704 (KMW), 1990 WL 212899, at * 2 (S.D.N.Y. Dec. 13, 1990) (holding that a party, to show lack of good faith, must demonstrate "fraud, collusion . . . or an attempt to take grossly unfair advantage of other bidders"); *see also In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (*quoting In re Bel Air Assocs., Ltd.,* 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining facts of each case, concentrating on "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Mach. Corp.,* 572 F.2d 1195, 1198 (7th Cir. 1978)).

As required by section 363(m) of the Bankruptcy Code, both the Debtors and the Purchaser have acted in good faith in negotiating the Sale of the Property. There is no evidence of fraud or collusion in the terms of the Purchase Agreement. To the contrary, as previously discussed, the Sale will be the culmination of meaningful negotiations in which the parties were ably represented by sophisticated advisors. All negotiations have been conducted on an arm's length, good faith basis.

26.    In addition to serving out a copy of the Motion, the Debtors will advertise the Property to be sold in order to determine whether any third parties are interested in making a bid exceeding that of the Purchaser and the costs of such advertising will be paid by Purchaser up to a cap of $3,000. The Debtors submit that such notice is adequate for entry of the proposed order and satisfies the requisite notice provisions required under section 363(b) of the Bankruptcy

15

Code. Under the circumstances, the Purchaser should be afforded the benefits and protections that section 363(m) provides to a good faith purchaser

### G. ASSUMPTION AND ASSIGNMENT OF THE LEASED PROPERTY IS WARRANTED

27. Under Bankruptcy Code section 365(a), a debtor, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor. This subsection provides:

> (b) (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee -
>
> (A)  cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

28. Courts apply the "business judgment" standard in evaluating a debtor's decision to assume or reject an executory contract. *See In re AbittibiBowater, Inc*., 418 B.R. 815, 831 (Bankr. D. Del. 2009). The business judgment test "requires only that the trustee [or debtor-in-possession] demonstrate that [assumption or] rejection of the executory contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co.*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).

29. Assumption and assignment of the two leases associated with the Leased Property is well within the Debtors' exercise of their sound business judgment. In light of the fact that the Debtors are liquidating and have no use for the Leased Property, the assignment will relieve the estates of any remaining obligations under the leases, which they no longer utilize. The Debtors further believe that there is adequate assurance of future performance under both leases in light of the Shevell's family timely payment or rent and Mr. Shevell's financial wherewithal to continue to perform under the leases.

### REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY

30. The Debtors request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay period, *Collier on Bankruptcy* suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 6004.11 (16th ed.). Furthermore, *Collier on Bankruptcy* provides that if an objection is filed and overruled the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.* Promptly closing the Sale is of critical importance to the Purchaser and to the Debtors' efforts to preserve and maximize the value of their estates through, among other things, disposing of Property that is a burden and not generating any revenue. To obtain maximum value for the Property, the Debtors must be able to

proceed quickly and close the Sale to the Purchaser pursuant to the terms of the Purchase Agreement. Accordingly, the Debtors request the Court to waive the 14-day stay period under Bankruptcy Rule 6004(h

## WAIVER OF MEMORANDUM OF LAW

31. The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Debtors rely is incorporated herein and this Motion does not raise any novel issues of law.

## NO PRIOR REQUEST

32. No prior request for the relief sought herein has been made to this Court or to any other court.

## NOTICE

33. Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) counsel to the Official Committee of Unsecured Creditors; (c) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; and (d) all parties known to the Debtors who have an interest in or rights to the Property or Leased Property. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as may be just and proper.

Dated: June 26, 2019                                    Respectfully submitted,

                                            **GIBBONS P.C.**

                                            By: /s/ Karen A. Giannelli
                                                  Karen A. Giannelli, Esq.
                                                  Mark B. Conlan, Esq.
                                                  Brett S. Theisen, Esq.
                                                  One Gateway Center
                                                  Newark, New Jersey 07102
                                                  Telephone: (973) 596-4500
                                                  Facsimile: (973) 596-0545
                                                  E-mail: kgiannelli@gibbonslaw.com
                                                                   mconlan@gibbonslaw.com
                                                                   btheisen@gibbonslaw.com

                                              *Counsel to the Debtors*
                                              *and Debtors-in-Possession*