**GIBBONS P.C.**
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey  07102
Telephone:  (973) 596-4500
Facsimile:   (973) 596-0545
E-mail:  kgiannelli@gibbonslaw.com
         mconlan@gibbonslaw.com
         btheisen@gibbonslaw.com

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Jointly Administered) |

**DEBTORS' MOTION FOR ORDER (I) AUTHORIZING THE PRIVATE SALE OF CERTAIN REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) APPROVING THE PURCHASE AGREEMENT; AND (III) GRANTING RELATED RELIEF**

The above-referenced debtors and debtors in possession (collectively, the **"Debtors"**), file this motion (this "**Motion**") for entry of an order (i) authorizing the private sale (the "**Sale**") of certain commercial/industrial real property located at 11700 NW 36th Avenue, Miami, FL 33167 along with certain improvements and fixtures (collectively, the "**Property**") on an "as is, where

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

is" basis, free and clear of any and all liens, claims, encumbrances, and other interests to 11700 Holdings, Inc. by way of an assignment from ATI Container Services, LLC (the "**Purchaser**") pursuant to the terms and conditions of the **Purchase and Sale Agreement**, dated as of June 12, 2019 (as may be amended, supplemented, or otherwise modified from time to time, the "**Purchase Agreement**"), by and between New England Motor Freight, Inc. (the "**Seller**") and the Purchaser, a copy of which is attached as Exhibit 1 to the Proposed Order (which is attached hereto as Exhibit A), (ii) authorizing and approving the terms of the Purchase Agreement, and (iii) granting certain related relief. In support of the relief requested herein, the Debtors rely on the Declaration of Gian Rodriguez, a Managing Principal of Cushman & Wakefield of Florida, LLC attached hereto as Exhibit B, and respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of New Jersey, dated September 18, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended, the "**Bankruptcy Code**") and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (as amended, the "**Local Rules**").

## BACKGROUND

3. On February 11, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with the Court for relief under chapter 11 of the Bankruptcy Code with the intent to commence an orderly wind-down and liquidation of their businesses and assets through the chapter

2

11 cases (the **"Chapter 11 Cases"**). The Debtors are in possession of their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner.

4. Factual background relating to the Debtors' businesses, capital structure, and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in detail in the First Day Declaration of Vincent Colistra (the **"First Day Declaration"**) which was filed on the Petition Date [Docket No. 22] and is incorporated herein by reference.

## FACTS SPECIFIC TO THE RELIEF REQUESTED

5. The Property is a commercial/industrial facility located in Miami, Florida that is leased by the Debtors to a third-party lessee and is not integral to the Debtors' business operations. With the original lease term over and the tenant in possession on a month to month basis, the Debtors retained Cushman & Wakefield of Florida, LLC ("**C&W**" or "**Broker**") to market the Property for sale.

6. Towards that end, on April 1, 2019, the Debtors filed their application to retain C&W as broker on the terms and conditions set forth in the March 1, 2019 Listing Agreement for Sale (the "**Listing Agreement**") [Docket No. 376]. Upon the successful closing of the Sale, C&W is entitled to a six (6%) percent commission on the total sale price of the Property, which commission is to be paid at closing.

7. Since the date of C&W's retention, the Property has been widely shown to various interested parties and listed through several widely-used commercial real estate services. As a result of these efforts, which also included the preparation and targeted circulation of detailed marketing brochures for the Property, solicitation campaign to area real estate brokers, a marketing sign installed on the Property, and other marketing efforts, the Debtors received four qualified offers for the Property, the highest of which was received from the Purchaser for a purchase price

3

of $3,515,000 (the "**Purchase Price**"). Recognizing that the Sale would bring value in excess of C&W's appraised value to the estate, the Debtor, New England Motor Freight, Inc. executed the Purchase Agreement with Purchaser.

8.  Pursuant to the terms and conditions of the Purchase Agreement, and subject to this Court's approval, the Debtors propose to sell to the Purchaser the Property on an "as is, where is basis" free and clear of all liens, claims, encumbrances and other interests. The material terms and conditions of the Purchase Agreement are as follows:

| **Legal Description and Address of Property: Purchase Agreement at 1.1 and Exhibit A.** | Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell, transfer and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, all of the Seller's, right, title and interest in and to the following described property (herein collectively called the "Property"): <br><br> (a) Land. Seller's interest as fee owner of that certain parcel of land (the "Land"), consisting of approximately 2.43 +/- acres and improvements thereon with a street address of 11700 NW 36th Avenue, Hialeah, Florida 33167, being more particularly described on *Exhibit A* attached hereto and made a part hereof; <br><br> (b) Improvements. Truck terminal with a 15,158 +/- s.f. cross dock, office and building, together with all existing improvements on the Land ("Improvements"); <br><br> (c) Personal Property. The fixtures, furnishings, equipment and other personal property (excluding cash), if any, owned by Seller, located in or on, and used exclusively in connection with the operation of, the Improvements, [and identified on Schedule X] ("Personal Property"). |

4

| | |
|---|---|
| **Purchase Price: Purchase Agreement at 2.1.** | $3,515,000 |
| **Deposit: Purchase Agreement at 3.1.** | (i) within one (1) business day following execution of this Agreement FIFTY THOUSAND DOLLARS ($50,000.00); (ii) upon conclusion of the Evaluation Period, as defined below, an additional ONE HUNDRED THOUSAND DOLLARS ($100,000.00) (which amounts and any additional funds delivered by Purchaser to Escrow Agent pursuant to this Section 3, together with all interest accrued thereon, if any, is herein called the "Earnest Money") to be invested by Escrow Agent in an interest-bearing account. |
| **Closing Conditions: Purchase Agreement at 6.2** | (a) Seller's obligation to consummate the transaction contemplated by this Agreement on the Closing Date shall be strictly conditioned upon and subject to the satisfaction or performance of the following terms and conditions, any one or more of which may be waived by Seller in its sole discretion, in whole in part, on or as of the Closing Date as such may be extended in accordance herewith:<br><br>(1) The Bankruptcy Court shall have entered an Order (the "Sale Order") approving Seller's entry into this Agreement and the transactions contemplated by this Agreement and the Bankruptcy Court shall have provided all other authorizations required for the sale of the Property by Seller to Purchaser ("Bankruptcy Court Approval").<br><br>(2) Seller shall have received all required corporate authorizations for Seller's entry into this Agreement and the transactions contemplated by this Agreement including without limitation the sale of the Property by Seller to Purchaser.<br><br>(3) Purchaser shall have paid the Purchase Price in full, delivered all of the documents and other items required pursuant |

to Section 6.6 and shall not be in default of any of its material obligations hereunder beyond any applicable notice and grace period; and

(4) All of the representations and warranties of Purchaser set forth in this Agreement shall be true and correct at and as of the Closing Date in all material respects as though such representations and warranties were made at and as of the Closing Date.

If any condition specified in this Section 6.2(a) is not satisfied on or before the Closing Date (as may be extended as provided in this Agreement), Seller may, at its option, and in its sole and absolute discretion, (a) waive any such condition and proceed to Closing or (b) terminate this Agreement by written notice thereof to Purchaser, in which case the Earnest Money shall be returned to Purchaser and the parties shall have no further rights or obligations under this Agreement except for those expressly surviving termination; provided, however, if the failure of the condition is due to a breach by Purchaser under this Section 6.2, Seller may pursue its remedy under Section 8.2.

(b) Purchaser's obligation to consummate the transaction contemplated by this Agreement on the Closing Date shall be subject to the satisfaction or performance of the following terms and conditions, any one or more of which may be waived by Purchaser in its sole discretion, in whole in part, on or as of the Closing Date as such may be extended in accordance herewith:

(1) Seller shall have delivered all of the documents and other items required pursuant to Section 6.5 and shall not be in default of any of its material obligations hereunder beyond any applicable notice and grace period; and

6

| | |
|---|---|
| | (2) All of the representations and warranties of Seller set forth in this Agreement shall be true and correct at and as of the Closing Date in all material respects as though such representations and warranties were made at and as of the Closing Date.<br><br>If any condition specified in this Section 6.2(b) is not satisfied on or before the Closing Date (as may be extended as provided in this Agreement), Purchaser may, at its option, and in its sole and absolute discretion, (a) waive any such condition and proceed to Closing or (b) terminate this Agreement by written notice thereof to Seller, in which case the Earnest Money shall be returned to Purchaser and the parties shall have no further rights or obligations under this Agreement except for those expressly surviving termination; provided, however, if the failure of the condition is due to a breach by Seller under this Section 6.2(b), Purchaser may pursue its remedy under Section 8.1. |
| **Closing: Purchase Agreement at 6.1.** | The closing of the purchase and sale transaction contemplated herein (the "Closing") shall occur on the first business day which is thirty (30) days following (and excluding) the later to occur of: (x) the date that Seller receives the Bankruptcy Court Approval (as hereafter defined), or (y) the expiration of the Evaluation Period, unless the Closing is adjourned as and when permitted in accordance with the express provisions of this Agreement (such date of the Closing, as the same may be adjourned as provided above, being herein referred to as the "Closing Date"). Seller and Purchaser agree to complete Closing by depositing all funds and documents with Escrow Agent, pursuant to mutually acceptable escrow instructions. On the Closing Date, all documents to be recorded shall be exchanged (or in the event of an escrow closing |

| | |
|---|---|
| | delivered to the Title Company for recording) and all other closing documents and funds shall be deemed to be simultaneously delivered. In the event that Purchaser does not close for any reason, then Seller may terminate this Contract and the Earnest Money shall be forfeit. |
| *"As Is, Where Is" Transaction: Purchase Agreement at 5.1.* | Purchaser represents that, upon completion of its inspections of the Property as contemplated under Section 4.4.1., Purchaser will have made all investigations as it deems necessary or appropriate and will be relying solely upon its inspection and investigations of the Property for all purposes whatsoever, including but not limited to, the determination of the condition of the structures, improvements, soils, subsurfaces, drainage, surface and groundwater quality, and all other physical characteristics; governmental laws and regulations; access; encroachments; acreage and other survey matters; and the character and suitability of the Property. In addition, Purchaser acknowledges that the Property is being purchased and will be conveyed "as is" "where is" with all faults and defects, whether patent or latent, as of the date of Closing. Other than what is specifically contained in Section 4, there have been no representations, warranties, guarantees, statements or information, express or implied, pertaining to the Property, its condition, or any other matters whatsoever made to or furnished to Purchaser by Seller or any employee or agent of Seller. |
| **Real Estate Brokers** | At the close of escrow, a brokerage fee equal to 6% of the Purchase Price shall be paid out of escrow to the Broker. |
| **Relief from Bankruptcy Rule 6004(h)** | The Proposed Order provides that the provisions of Bankruptcy Rule 6004(h) shall be waived. |
| **Sale Free and Clear** | Although the Debtors are unaware of any encumbrances on the Property, the Proposed Order provides that the Property shall be transferred to the Purchaser free and clear of |

|  | all liens, claims, encumbrances, and interests of any kind or nature to the fullest extent permitted by section 363 of the Bankruptcy Code. |
|---|---|
| **Request for Tax Determination Under Section 1146** | The form of order contains an exemption pursuant to section 1146 of the Bankruptcy Code, to the fullest extent permitted by law. |
| **Credit Bidding** | The proposed Sale does not involve a credit bid. |
| **Sale to Insider** | The proposed Sale is not to an Insider. |

## RELIEF REQUESTED

9. By this Motion, the Debtors pursuant to sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014, and Local Rule 6004-1, request the Court enter an order (a) authorizing the Sale pursuant to the Purchase Agreement, (b) authorizing and approving the Purchase Agreement and (c) granting related relief.

## BASIS FOR RELIEF REQUESTED

10. For the reasons set forth herein, the Debtors believe that the approval of a private sale of the Property to the Purchaser pursuant to the terms and conditions of the Purchase Agreement is not only appropriate, but is in the best interests of the Debtors, their estates and creditors. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In pertinent part, Bankruptcy Rule 6004 states that "all sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). With respect to the notice required in

9

connection with a private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that, "[T]he notice of a proposed use, sale or lease of property . . . shall include . . . the terms and conditions of any private sale and the deadline for filing objections. The notice of a proposed use, sale or lease of property, including real estate, is sufficient if it generally describes the property." Fed. R. Bankr. P. 2002(c)(1).

11.     Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., In re Abbotts Dairies of Pa., Inc.,* 788 F.2d 143, 147 (3d Cir. 1986); *In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 175-76 (D. Del. 1991) (holding that the following non-exclusive list of factors may be considered by a court in determining whether there is a sound business purpose for an asset sale: "the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the effect of the proposed disposition of [sic] the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value"). *See also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (*citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)) (noting that the Court defers to the trustee's judgment so long as there is a legitimate business justification); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or

capriciously), courts will generally not entertain objections to the debtor's conduct."). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1). Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, No. 89 C 593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

12. The "sound business reason" test requires a trustee or debtor in possession to establish four elements: (1) that a sound business purpose justifies the sale of assets outside the ordinary course of business; (2) that accurate and reasonable notice has been provided to interested persons; (3) that the trustee or the debtor in possession has obtained a fair and reasonable price; and (4) that the trustee or debtor in possession acted in good faith. *Abbotts Dairies,* 788 F.2d 143; *Del. & Hudson Ry.*, 124 B.R. at 176; *In re Titusville Country Club,* 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *see also Stephens Indus. Inc. v. McClung,* 789 F.2d 386, 390 (6th Cir. 1986); *Lionel*, 722 F.2d at 1071.

13. This fundamental analysis does not change if the proposed sale is private, rather than public. *See, e.g.*, *In re Ancor Exploration Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)."). The bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property." *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991),

*vacated on other grounds*, 165 B.R. 1 (D.P.R. 1992); *accord, In re Canyon P'ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985). Here, the proposed private sale of the Property to the Purchaser meets all of these requirements and should be approved

### A. PROCEEDING BY PRIVATE SALE REFLECTS AN EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT

14. There is a sound business justification for the Debtors' preference to proceed with a private sale to the Purchaser, rather than conducting a public sale of the Property. The Debtors submit that an order granting the relief requested herein is a matter within the sound discretion of the Court and would be consistent with the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). As a result of the Purchaser's interest in the Property, and its willingness to provide fair and reasonable consideration based on that interest (and after a bidding process already conducted by the Broker pursuant to which Purchaser submitted the highest bid), the Debtors believe that their estates and creditors would benefit from the approval of the Sale without the added time, energy, and expenses associated with a public auction. Moreover, the Debtors' estates will benefit by closing the Sale as soon as possible since the Property is not generating any significant revenue and the Debtors are in the process of winding down their businesses.

15. Indeed, if the Debtors were forced to conduct a public auction for the Property, the Debtors would not be guaranteed the commitment of the Purchaser to purchase the Property, much less at the price to be provided through the proposed private sale and related Purchase Agreement.

16. The Debtors believe that a private sale of the Property to the Purchaser under the terms and conditions of the Purchase Agreement is more likely to close in a timely and efficient manner than a public auction because, in the Debtors' informed business judgment, the agreement provides them with a strong indication that the Purchaser is motivated to close the contemplated transaction in such a manner. Given the Purchaser's strong desire to close on an expedited basis

so that it can obtain access to the Property as soon as practicable, the Debtors believe that the Sale represents the best opportunity to extract immediate and meaningful value from the Property in the amount of the Purchase Price.

### B.  THE PURCHASE PRICE IS FAIR AND REASONABLE

17.    The Debtors believe that the Purchase Price is a fair and reasonable price for the Property.  First, the Purchase Price exceeds C&W's estimate concerning the value of the Property. Second, the Purchase Price under the Purchase Agreement was the result of extensive marketing and arm's length negotiations and involved multiple parties submitting competing bids on the Property. The Debtors have carefully considered and analyzed the Purchaser's offer as set forth in the Purchase Agreement and have concluded that a sale of the Property pursuant to the Purchase Agreement will result in obtaining maximum value for the Property and is in the best interests of their estates and creditors. In consideration of the foregoing, the Debtors believe that the Purchase Price provides fair and reasonable value for the Property.

### C.    THE SALE IS PROPOSED IN GOOD FAITH

18.    The Debtors submit that the Sale transaction contemplated herein and in the Purchase Agreement has been proposed in good faith, as the agreement was the product of good faith, arm's length negotiations between the Debtors, on the one hand, and the Purchaser, on the other, and was negotiated with the active involvement of the Debtors' officers and professionals. The Debtors believe and submit that the Sale is not the product of collusion or bad faith. Further, no evidence suggests that the Purchase Agreement is anything but the product of arm's length negotiations between the Debtors, the Purchaser and their respective professionals.

**D.    ADEQUATE AND REASONABLE NOTICE OF SALE HAS BEEN PROVIDED**

19. The Debtors intend to provide adequate notice of the proposed Sale to all parties in interest, as required by the applicable procedural rules. *See* Fed. R. Bankr. P. 2002(c)(1) (notice must contain "the terms and conditions of any private sale and the time fixed for filing objections."); *see also Del. & Hudson Ry.*, 124 B.R. at 180 (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement). The Debtors intend to send copies of this Motion and the Purchase Agreement to all parties that have expressed any interest, or the Debtors believe may have an interest, in purchasing the Property. The notified parties will have the opportunity to submit other offers during the period prior to the objection deadline set forth herein. Consistent with their fiduciary duties to their estates, the Debtors will consider any and all such offers.

**E.    THE SALE SHOULD BE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES**

20. In accordance with section 363(f) of the Bankruptcy Code, a debtor in possession may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (a) such a sale is permitted under applicable non-bankruptcy law; (b) the party asserting such a lien, claim, or interest consents to such sale; (c) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f).

21. Section 363(f) of the Bankruptcy Code allows a debtor to sell property "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is met:

    (a) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

    (b) the party asserting the lien, claim or interest consents to the sale;

    (c) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property;

    (d) the interest is the subject of a bona fide dispute; or

    (e) such entity could be compelled to accept a money satisfaction of such claim.

11 U.S.C. § 363(f); *see also In re Elliott*, 94 B.R. 343, 345 (E.D. Pa 1988) (noting that section 363(f) is written in the disjunctive, thereby allowing sales "free and clear" if any one of the subsections is met).

22. As noted above, the Debtors do not believe any prepetition creditor has a lien on the Property. To the extent the Debtors are mistaken, the Debtors believe that the proposed Sale will generate more than sufficient proceeds to satisfy the claims of any creditor who is determined to possess valid liens on the Property and that such creditor(s) will otherwise agree to the Sale. Further, where consent is not obtained, a sale free and clear can proceed pursuant to either sections 363(f)(3) and 363(f)(5) of the Bankruptcy Code because the relevant lien or other encumbrances will attach to the proceeds of the Sale with the same validity, priority, and force and effect as such lien or encumbrance had immediately prior to the closing of the Sale, and/or the Debtors will establish at the sale hearing that the relevant creditors can be compelled to accept a monetary

satisfaction of their respective claims. Accordingly, section 363(f) authorizes the Sale of the Property free and clear of all Liens, Claims and other Liabilities.[2]

### F. THE PURCHASER SHOULD BE FOUND TO HAVE ACTED IN GOOD FAITH

23. The Debtors also maintain that the Purchaser, is or would be entitled to the protections afforded by section 363(m) of the Bankruptcy Code.

24. Specifically, section 363(m) of the Bankruptcy Code provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

25. While the Bankruptcy Code does not define "good faith," the Third Circuit in *Abbotts Dairies* held that:

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders

788 F.2d at 147 (citations omitted); *see generally Marin v. Coated Sales, Inc. (In re Coated Sales, Inc.)*, No. 89-3704 (KMW), 1990 WL 212899, at * 2 (S.D.N.Y. Dec. 13, 1990) (holding that a party, to show lack of good faith, must demonstrate "fraud, collusion . . . or an attempt to take grossly unfair advantage of other bidders"); *see also In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (*quoting In re Bel Air Assocs., Ltd.,* 706 F.2d 301, 305 (10th Cir. 1983)); *In re*

---

[2] The Debtors reserve all rights to argue at a hearing on the Motion that they can satisfy any one of the provisions set forth in section 363(f) of the Bankruptcy Code in connection with the Sale.

16

*Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining facts of each case, concentrating on "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Mach. Corp.,* 572 F.2d 1195, 1198 (7th Cir. 1978)).

26. As required by section 363(m) of the Bankruptcy Code, both the Debtors and the Purchaser have acted in good faith in negotiating the Sale of the Property. There is no evidence of fraud or collusion in the terms of the Purchase Agreement. To the contrary, as previously discussed, the Sale will be the culmination of meaningful negotiations in which the parties were ably represented by sophisticated advisors. The Purchaser is not an insider of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code, and all negotiations have been conducted on an arm's length, good faith basis.

27. All known parties with an interest in the Property will receive notice of the Sale and will be provided an opportunity to be heard. The Debtors submit that such notice is adequate for entry of the proposed order and satisfies the requisite notice provisions required under section 363(b) of the Bankruptcy Code. Under the circumstances, the Purchaser should be afforded the benefits and protections that section 363(m) provides to a good faith purchaser.

## REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY

28. The Debtors request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay period, *Collier on Bankruptcy* suggests that the 14-day stay period should be eliminated to allow a sale or

other transaction to close immediately "where there has been no objection to the procedure." 10 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 6004.11 (16th ed.). Furthermore, *Collier on Bankruptcy* provides that if an objection is filed and overruled the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.* Promptly closing the Sale is of critical importance to the Purchaser and to the Debtors' efforts to preserve and maximize the value of their estates through, among other things, disposing of a property that is a burden and not generating any revenue. To obtain maximum value for the Property, the Debtors must be able to proceed quickly and close the Sale to the Purchaser pursuant to the terms of the Purchase Agreement. Accordingly, the Debtors request the Court to waive the 14-day stay period under Bankruptcy Rule 6004(h

## WAIVER OF MEMORANDUM OF LAW

29.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Debtors rely is incorporated herein and this Motion does not raise any novel issues of law.

## NO PRIOR REQUEST

30.     No prior request for the relief sought herein has been made to this Court or to any other court.

## NOTICE

31.     Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) counsel to the Official Committee of Unsecured Creditors; (c) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as may be just and proper.

Dated: June 28, 2019							Respectfully submitted,

**GIBBONS P.C.**

By: /s/ Karen A. Giannelli
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
E-mail: kgiannelli@gibbonslaw.com
mconlan@gibbonslaw.com
btheisen@gibbonslaw.com

*Counsel to the Debtors
and Debtors-in-Possession*