**LOWENSTEIN SANDLER LLP**
Mary E. Seymour, Esq.
Joseph J. DiPasquale, Esq.
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500 / Fax: (973) 597-2400
E-mail: mseymour@lowenstein.com
E-mail: jdipasquale@lowenstein.com

-and –

**ELLIOTT GREENLEAF, P.C.**
Rafael X. Zahralddin-Aravena, Esq. *(pro hac vice)*
Jonathan M. Stemerman, Esq. *(pro hac vice)*
1105 Market Street, Suite 1700
Wilmington, DE 19801
Telephone: (302) 384-9400 / Fax: (302) 384-9399
E-mail: rxza@elliottgreenleaf.com
E-mail: jms@elliottgreenleaf.com
*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW ENGLAND MOTOR FREIGHT, INC, *et al.*[1] | Case No.: 19-12809 (JKS) |
| Debtors. | (Jointly Administered) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**OBJECTION TO DEBTORS' MOTION FOR ORDER APPROVING SETTLEMENT**
**WITH TD BANK, N.A. PURSUANT TO 11 U.S.C. §§ 105(a), 362,**
**AND 363(b) AND BANKRUPTCY RULES 4001(a), 6004 AND 9019**

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors in possession (the "**Debtors**"), by and through its undersigned

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

36527/2
07/18/2019 204677971.2

counsel, submits this objection (the "**Objection**") to the *Debtors' Motion for Order Approving Settlement with TD Bank, N.A. Pursuant to 11 U.S.C. §§ 105(a), 362, and 363(b) and Bankruptcy Rules 4001(a), 6004 and 9019* [D.I. No. 713] (the "**Settlement Motion**"). In support of this Objection, the Committee states as follows:

## BACKGROUND

1. On February 11, 2019 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey.

2. The Debtors continue to operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

3. On February 21, 2019, the Office of the United States Trustee appointed the Committee as the statutory fiduciary for the Debtors' body of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code.

4. On July 2, 2019, the Debtors filed the Settlement Motion. The Settlement Motion seeks Court approval of the Debtors' proposed settlement of claims between the Debtors and TD Bank[2] (the "**TD Settlement**"). *See* Settlement Motion ¶20.

5. Pursuant to the terms of the TD Settlement, TD Bank has agreed to release and pay over $900,000 from the Deposit Accounts to NEMF, which will be available for NEMF for its use without restriction (the "**Settlement Amount**"). *Id.* at ¶21.

6. As of the Petition Date, the Debtors maintained four deposit accounts with TD Bank that had an aggregate balance of $2,985,249.35. *Id.* at ¶5. TD Bank substantively released its

---

[2] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Settlement Motion.

-2-

administrative freeze on one of the four Deposit Accounts that was a designated 401k deposit account with a balance of $142,465.67, thereby reducing its setoff claim balance to $2,842,783.68. *Id.* at ¶¶16 and 17. TD Bank was thereafter authorized to set off $1,421,391.84 from the three remaining Deposit Accounts pursuant to the Partial Stay Order entered on April 3, 2019 [D.I. 387][3], leaving an aggregate balance of approximately $533,524.28, less the proposed Settlement Amount. *Id.* at ¶18.

7. The TD Settlement also provides that TD Bank shall be authorized to set off the remaining balances in the Deposit Accounts in the amount of approximately $533,524.24 as of July 2, 2019, plus any interest that may accrue after July 2, 2019 through the date of setoff, and apply such funds against NEMF's reimbursement obligations under the LC Agreement. *Id.* at ¶21. TD Bank will also be allowed to keep the $1,421,391.84 that was the subject of the Partial Stay Order. *Id.* at ¶23.

8. The Settlement Motion also sets forth the significant consideration the Debtors are required to give TD Bank on account of the Settlement Amount:

> In exchange for the $900,000 Settlement Payment, the Debtors and their estates have agreed to release TD Bank, its affiliates and each of their officers, directors, employees, attorneys, and agents (collectively, the "**Released Parties**") from any and all claims (whether affirmative claims or defenses), causes of action, suits and damages (including claims for attorneys' fees and costs) which any of the Debtors or their estates, jointly or severally, ever had or may now have against the Released Parties for any matter arising from or related to the Letters of Credit, the LC Agreement, TD Bank's declaration of a default under the LC Agreement, TD Bank's notices of non-renewal sent to the beneficiaries of the Letters of Credit, TD Bank's administrative freeze of the Debtors' Deposit accounts (including the 401k Account) and the set off of funds in the TD Bank accounts authorized by the orders of this court (the "**TD Bank Release**").

*Id.* at ¶22.

---

[3] The setoff allowed pursuant to the Partial Stay Order was subject to the Debtors' and the Committee's right to seek disgorgement of any funds setoff pursuant to that order.

9.  Additionally, the Debtors assert in the Settlement Motion that the TD Settlement will eliminate continued litigation with TD Bank over the use of cash collateral and will avoid unnecessary and costly litigation in connection with the Setoff Motion, including discovery practice and litigation in connection with potential lender liability claims. *Id.* at ¶24.

10. The potential liability lender claims referenced in the Settlement Motion are based on TD Bank's prepetition actions, including its January 25, 2019 letter by which it declared itself as "insecure" with respect to its loans and purported to accelerate all amounts due under five letters of credit in the aggregate amount of $9,283,000, and placed an administrative freeze on approximately $2.8 Million Dollars in the Debtors' four Deposit Accounts, all of which contributed to the Debtors' bankruptcy. *Id.* at ¶¶6 and 7. *See also*, *Declaration of Vincent Colistra in Support of Debtors' Chapter 11 Petitions and First Day Motions* [ECF No. 22] (the "First Day Declaration") ¶¶ 41 and 42.

11. The Settlement Motion also provides that "after applying the amounts setoff against the Deposit Accounts (*i.e.* approximately $533,524.28 plus interest pursuant to this Motion, plus $1,421,391.84 pursuant to the Partial Stay Order, **TD Bank shall retain its right to assert all of its deficiency claims, including but not limited to those in connection with the Letters of Credit and the LC Agreement**, which the Debtors are free to challenge." *Id.* at ¶23 (emphasis added). The Settlement Motion, therefore, provides TD Bank with a claim that includes the $900,000 Settlement Amount, which effectively renders the TD Settlement illusory and comes at the expense of other general unsecured creditors.

12. The TD Settlement also provides TD Bank with an extremely broad release of claims, which appears to include any and all avoidance claims under chapter 5 of the Bankruptcy Code. While the Committee may not object to a settlement that provides for payment of the Settlement

-4-

Amount and a limited release in favor of TD Bank, it does not support the TD Settlement (or any settlement for that matter) that provides TD Bank with the right to assert a general unsecured claim for the Settlement Amount (or for any amount that it pays to the Debtors), as it effectively reduces the funds that are being paid to the Debtors and also reduces the potential amount available for distribution to general unsecured creditors. Under the TD Settlement, the right granted to TD Bank to assert a general unsecured claim for the Settlement Amount will reduce the potential funds available to general unsecured creditors by nearly a million dollars.  The Committee has previously expressed this concern to the Debtors prior to the filing of the Settlement Motion and believed at the time that the Committee's concerns were being addressed. The Committee was subsequently advised that the settlement was completed and the right of TD Bank to assert an unsecured claim for the Settlement Amount would not be removed. Further, the Committee's concerns with the overly broad release in favor of TD Bank was also ignored.  The language in the Settlement Motion is contrary to the Committee's understanding of the proposed settlement.

13.    Accordingly, the Committee objects to the Settlement Motion and seeks clarification that TD Bank is not entitled to a general unsecured claim based on payment of the Settlement Amount before the Court approves the TD Settlement.  Furthermore, the TD Settlement also inappropriately eliminates the Committee's right to object to any claim filed by TD Bank by limiting the right to object solely to the Debtors.  Pursuant to Section 502 of the Bankruptcy Code, any party in interest can object to a filed claim and there is absolutely no basis to prohibit the Committee's rights to object to claims here. Further, the Settlement Motion grants a de facto full release to TD Bank which is not supported by the facts here.

14. Given the Committee's concerns with the terms of the TD Settlement, the Committee requests a continuance of the hearing on the Settlement Motion so that it can conduct the appropriate discovery as to the actions of TD Bank (and other parties) that led to the administrative freeze on the Debtors' Deposit Accounts and the deterioration of the Debtors. Of particular concern to the Committee and the estates are the series of events that resulted in the non-renewal of letters of credit which supported the Debtors' critical insurance needed to operate its trucking business. In his presentation to creditors at the Committee formation meeting, as well as in the First Day Declaration, the Debtors' CRO has detailed how the administrative freeze on the Debtors' Deposit Accounts at TD Bank, as well as the non-renewal of letters of credit supporting the insurance necessary to continue operations, were direct causes of the shutdown of the Debtors' operations. In addition to arguably being the immediate cause of the bankruptcy filing, this abrupt end to the Debtors' operations had serious consequences, including but not limited to, significant WARN ACT liability that has decimated any potential recovery for unsecured creditors in these cases.

## **OBJECTION**

15. By this Objection, the Committee opposes the terms of the TD Settlement that would allow TD Bank to assert a deficiency claim based on the payment of Settlement Amount, which if allowed, would render the settlement illusory and effectively deplete the amount potentially available to unsecured creditors by $900,000. This result would be contrary to the understanding of the Committee during the negotiations with the movants regarding the proposed settlement with TD Bank, and renders the Settlement Amount illusory from the perspective of the Committee. The Committee also objects to the overly broad scope of the release to be granted to TD Bank as it eliminates the ability of the Committee to pursue claims against TD Bank, as well

as the right to object to claims asserted by TD Bank, including the proposed deficiency claim, which was never agreed to by the Committee.  Clearly, the Debtors and TD Bank were aware of the Committee's concerns with the scope of the release as the Proposed Order submitted with the Settlement Motion specifically states that the proposed release in favor of TD Bank and other undisclosed parties and entities is binding on the Committee, and further states that the Committee shall have no right to assert any claim or cause of action that is subject to the release.

16. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Fed. R. Bankr. P. 9019(a). The movant bears the burden of proving the proposed settlement is in the best interest of the estate and the Debtor.  *See In re McDermott*, 2008 WL 877964, at *4 (Bankr. D.N.J. Mar. 27, 2008) (citing *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 804 (E.D. Pa. 1986).  The court must determine whether the settlement is fair and equitable, and in the best interests of the estate. *See In re TCI 2 Holdings, LLC,* 428 B.R. 117, 136 (Bankr. D.N.J. 2010).  Importantly, the court must also determine whether the settlement is "fair and equitable" to those not party to the settlement.  *Will v. Northwestern Univ. (In re Nutraquest)*, 434 F.3d 639, 645 (3d Cir. 2006) (citation omitted).  Additionally, the court must assess and balance the value of the claim that is being compromised against the value to the estate and the acceptance of the compromise proposal.  *In re Martin,* 91 F.3d at 393; *see also In re Petersburg Regency LLC,* 540 B.R. 508, 535 (Bankr. D.N.J. 2015).

17. The Third Circuit recognizes four criteria that a bankruptcy court should consider when determining whether approval of a settlement is warranted: (1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

of creditors appearing. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Regarding the fourth factor articulated in *In re Martin*, 91 F.3d at 393, "courts must consider the effect of the settlement on all parties to the proceeding – the entire creditor body – and not individual creditor interests." *In re Biolitec, Inc.,* 528 B.R. 261, 270 (Bankr. D.N.J. 2014).].

18. The TD Settlement is not in the best interest of the estates' creditors because the terms of the settlement provide that TD Bank can assert a deficiency claim, including for the full amount of the Settlement Amount. TD Bank's deficiency claim would constitute an unsecured claim that would effectively reduce the amount available for distribution to general unsecured creditors by $900,000[4].

19. Further, the Committee never agreed to relinquish its rights to object to any such claim, or to a full release of claims against TD Bank, including claims related to the actions of TD Bank pre-petition. Such a broad release is inappropriate, particularly here, where no discovery has taken place on the underlying actions of TD Bank which could result in subordination of TD Bank's claims or other yet to be discovered claims on behalf of the Debtors' estates. This is particularly important here, where the Debtors propounded discovery on TD Bank, but did not move forward with the discovery process prior to entering into the settlement with TD Bank and the Proposed Order specifically withdraws those discovery requests and prohibits further discovery requests from being propounded. Clearly, this impacts the first and third *Martin* factors that the Debtors rely on in support of the TD Settlement as no evidence has

---

[4] The Committee understood that the agreement reached between the Debtors and TD Bank during the negotiations leading up to the filing of the Settlement Motion excluded TD Bank's ability to file a deficiency claim based on payment of the Settlement Amount. After the agreement had been reached, the Committee professionals made repeated attempts to clarify this point and the scope of any release. However, the disputed language of the Settlement Motion is inconsistent with this understanding, the inclusion of which was not done in good faith or in consultation with the Committee's professionals.

been provided in the Settlement Motion as to the probability of success of any litigation against TD Bank or the complexity of such litigation.

20.    Further, the Committee strongly disagrees that TD Bank would be successful in defending against potential lender liability claims that could be asserted against TD Bank for declaring a default under the LC Agreement based on the view that it was "insecure," an action which led in part to the Debtors' bankruptcy filing as emphasized by the Debtors' CRO in the First Day Declaration and in several discussion with the Committee. The damages that could be claimed by the Debtors in regard to the potential lender liability claims pale in comparison to the mere $900,000 Settlement Amount. The value of the Debtors' claims being compromised is further diminished given the language in the Settlement Motion that allows TD Bank to file a deficiency claim based on payment of the Settlement Amount, which would result in a depletion of the amount available for distribution to unsecured creditors by nearly $1 million dollars. This militates against the fourth *Martin* factor as the settlement is not in the best interest of creditors. In fact, the TD Settlement negatively impacts creditors as the Settlement Payment of $900,000 is illusory given TD Bank's right to file a claim against the estate for that very same amount. Therefore, the Committee respectfully requests that the Court deny the Settlement Motion.

21.    Unfortunately, the Debtors and TD Bank have refused to consent to an adjournment of the hearing on the Settlement Motion to allow the Committee and other interested parties (such as other lenders), to convene for a global discussion on resolution of open issues and an exit from chapter 11, unless the Committee filed a formal objection to the Settlement Motion. As a result, the Committee was compelled to file this Objection. The Committee also requests a continuance of the hearing on the Settlement Motion to allow the Committee to pursue discovery in preparation for a contested hearing if the parties cannot reach an agreement or the Debtors and

TD Bank refuse to engage in settlement discussions which allow the Committee full participation in those settlement discussions.

### **RESERVATION OF RIGHTS**

22. The Committee reserves its right to supplement, modify and/or amend this Objection prior to, or at the hearing on the Settlement Motion.

Respectfully submitted,

Dated: July 18, 2019

**LOWENSTEIN SANDLER LLP**

*/s/ Mary E. Seymour*
Mary E. Seymour, Esq.
Joseph J. DiPasquale, Esq.
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400
E-mail: mseymour@lowenstein.com
E-mail: jdipasquale@lowenstein.com

-and-

**ELLIOTT GREENLEAF, P.C.**
Rafael X. Zahralddin-Aravena, Esq.
Jonathan M. Stemerman, Esq.
1105 Market Street, Suite 1700
Wilmington, DE 19801
Phone: (302) 384-9400
Facsimile: (302) 384-9399
E-mail: rxza@elliottgreenleaf.com
E-mail: jms@elliottgreenleaf.com

*Counsel to the Official Committee of Unsecured Creditors*