| | |
|---|---|
| **GIBBONS P.C.** | **LOWENSTEIN SANDLER LLP** |
| Karen A. Giannelli, Esq. | Mary E. Seymour, Esq. |
| Mark B. Conlan, Esq. | Joseph J. DiPasquale, Esq. |
| Brett S. Theisen, Esq. | One Lowenstein Drive |
| One Gateway Center | Roseland, NJ 07068 |
| Newark, New Jersey 07102 | Telephone: (973) 597-2500 |
| Telephone: (973) 596-4500 | Facsimile: (973) 597-2400 |
| Facsimile: (973) 596-0545 | E-mail: mseymour@lowenstein.com |
| E-mail: kgiannelli@gibbonslaw.com | E-mail: jdipasquale@lowenstein.com |
| mconlan@gibbonslaw.com | -and – |
| btheisen@gibbonslaw.com | **ELLIOTT GREENLEAF, P.C.** |
| | Rafael X. Zahralddin-Aravena, Esq. *(pro hac vice)* |
| *Counsel to the Debtors* | Jonathan M. Stemerman, Esq. *(pro hac vice)* |
| *and Debtors-in-Possession* | Sarah Denis, Esq. *(pro hac vice)* |
| | 1105 Market Street, Suite 1700 |
| | Wilmington, DE 19801 |
| | Phone: (302) 384-9400 |
| | Facsimile: (302) 384-9399 |
| | E-mail: rxza@elliottgreenleaf.com |
| | E-mail: jms@elliottgreenleaf.com |
| | E-mail: sxd@elliottgreenleaf.com |
| | |
| | *Co-Counsel to the Official Committee* |
| | *of Unsecured Creditors* |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Jointly Administered) |

**JOINT OBJECTION OF THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE MOTION OF EAST RIVER ENERGY, INC. FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO SECTION 503(b)(9)**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

2741606.1 115719-100281

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") and the Official Committee of Unsecured Creditors (the "**Committee**"), hereby jointly submit their objection to the Motion of East River Energy, Inc. for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. Section 503(b)(9) [ECF No. 702] ("**Objection**") pursuant to Sections 105 and 503(b)(9) of title 11, United States Code, 11 U.S.C. §§ 101 - 1532 (as amended, the "**Bankruptcy Code**"), Fed. R. Bankr. P. 3007, and Local Bankruptcy Rule 3007-1; and in support thereof, the Debtors respectfully state:

## I.     *Background*

1.     On February 11, 2019 (the "**Petition Date**"), each of the above-captioned Debtors filed voluntary petitions for relief under chapter 11, title 11, United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") with the intent to commence an orderly wind-down and liquidation of their business and assets through the Chapter 11 Cases.

2.     On February 21, 2019, the office of the United States Trustee appointed the Committee as the statutory fiduciary for the Debtors' body of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code.

3.     On March 15, 2019, East River Energy, Inc. ("**East River**") filed a proof of claim in the amount of $150,860.04, identified on the Court's Claims Register as Claim No. 7-1 (the "**East River Claim**"), in which it asserted an administrative expense claim in the amount $133,439.42 under 11 U.S.C. § 507(a)(2) (the "**503(b)(9) Claim**").

4.     Pursuant to the May 1, 2019 *Order Establishing Bar Dates and Procedures and Approving the Form and Manner of Notice Thereof* [ECF No. 519] ("**Bar Date Order**"), the Court fixed June 18, 2019 at 5:00 p.m. ("**Claim Bar Date**") as the deadline for filing proofs of claim, including claims arising under Bankruptcy Code Section 503(b)(9).

2

5. On June 28, 2019, East River filed its *Motion for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. Section 503(b)(9)* [ECF No. 702] (the "**503(b)(9) Motion**"). A copy of the East River Claim is attached to the 503(b)(9) Motion as Exhibit A.

6. The first invoice attached to the East River Claim, Invoice No. 888283, is a January 14, 2019 invoice in the total amount of $17,420.62. The delivery slip affixed to that invoice shows that East River delivered 7,000 gallons of diesel fuel to the Debtors on January 14, 2019, eight days *before* the start of the 20 day administrative look-back period in Bankruptcy Code Section 503(b)(9). East River's 503(b)(9) Motion does not seek administrative priority treatment for the amount of that invoice. The Debtors and the Committee agree.

7. The remaining invoices submitted with the East River Claim total $133,439.42. That amount reflects invoices for Ultra Low Sulfur Clear Diesel in the amount of $100,939.31, as well as state and federal taxes and fees in the total amount of $32,500.11. By the 503(b)(9) Motion, East River is seeking to have both the fuel and tax components of the 503(b)(9) Claim allowed and paid as administrative expense claims pursuant to Section 503(b)(9).

**II.    *The Debtors and the Committee Dispute that East River is Entitled to a Section 503(b)(9) Administrative Expense Claim for a Substantial Portion of the East River Claim.***

8. Section 503(b)(9) of the Bankruptcy Code provides that:

> [a]fter notice and a hearing, there shall be allowed administrative expenses … including … the value of any goods received by the debtor within 20 days before the date of commencement of a case under [the Bankruptcy Code] in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9). In order for an administrative claim under Section 503(b)(9) to be allowed, the claimant must demonstrate, by a preponderance of the evidence, that "(1) the vendor sold 'goods' to the debtor; (2) the goods were received by the debtor within twenty days prior to filing;

3

and (3) the goods were sold to the debtor in the ordinary course of business." *In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 133 (Bankr. D. Del. 2009).

9. Here, a substantial portion of East River's alleged administrative expense claim, is a claim for various federal, state and local taxes which do not constitute "goods". Specifically, the invoices attached to the East River Claim specifically reflect that $32,500.11 of that claim relate to taxes and not "goods." Courts have generally adopted the definition of "goods" set forth in U.C.C. § 2-105(1) for purposes of interpreting Section 503(b)(9), and that definition states that "'[g]oods' mean all things … which are moveable at the time of identification to the contract for sale." *Goody's*, 401 B.R. at 134.

10. Further, in evaluating section 503(b)(9) claims, courts have stripped those parts of the claim that do not constitute goods from the allowed amount of the section 503(b)(9) claim. *See In re Plastech Engineered Prods.*, 397 B.R. 828, 837 (Bankr. E.D. Mich. 2008) (finding that separate line item service charges set forth on invoices do not qualify for administrative expense priority). As the court in *Plastech* acknowledged, the only relevant determination under section 503(b)(9) is the value of the "goods," irrespective of whether the contract also called for the delivery sale of services or contained other charges. In the instant case, the relevant invoices clearly delineate which charges relate to "goods" and which charges relate to taxes (which are clearly not goods). The Debtors and Committee submit that to the extent the Court is inclined to grant East River an allowed administrative expense claim at this time, that claim should be limited to $100,939.31, which reflects the value of the fuel actually received by the Debtors within 20 days before the Petition Date, and classify the remaining $32,500.11 tax component of the East River Claim as a general unsecured claim. *Plastech*, 397 B.R. at 839; *see also, In re*

*Pilgrim's Pride Corp.*, 421 B.R. 231, 237 (Bankr. N.D. Tex. 2009) (sustaining objection to 503(b)(9) claim for freight services).

    **III.**    ***East River is Not Entitled to Payment of its Claim Earlier than the Bankruptcy Code Provides.***

    11.    East River has failed to establish that cause exists for the immediate payment of the East River Claim or payment any earlier than what is required by the Bankruptcy Code. Section 503(b)(9) of the Bankruptcy Code states, in relevant part:

> After notice and a hearing, there shall be allowed administrative expenses ... including ... the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9). While all other claims under Section 503 of the Bankruptcy Code are for expenses arising during the post-petition period, only Bankruptcy Code Section 503(b)(9) specifically grants administrative expense status to a select group of prepetition claims.

    12.    Section 503(b)(9) of the Bankruptcy Code does not specify a time for payment of administrative expenses. The only relevant provision is Bankruptcy Code Section 1129(a)(9), which states that administrative expense claims must be paid in full no later than the effective date of a plan of reorganization. With no specific Bankruptcy Code provision dictating the time of payment for a claim arising under Section 503(b)(9), it is well accepted that the determination of the timing of payment of administrative expenses is a matter within the discretion of the court. *See In re NE OPCO, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013); *In re Global Home Prods.*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006); *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005); *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002).

13. In general, courts have held that bankruptcy courts may deviate from the general rule and grant immediate payment of such administrative expenses after considering three factors: (1) the prejudice to the debtors, (2) the hardship to the claimant, and (3) potential detriment to other creditors. *Garden Ridge Corp.*, 323 B.R. at 143; *Global Home Prods.*, 2006 WL 3791955 at *4; see also *In re Bookbinders' Rest., Inc.*, 2006 WL 3858020 at *13-14 (Bankr. E.D. Pa. Dec. 28, 2006) (holding that when Congress enacted Section 503(b)(9) it did not intend to alter the existing practice of leaving the timing of payment of an allowed administrative expense claim to the discretion of the court). Other courts have recognized that the immediate payment of administrative expense claims is "exceptional" and "a creditor must show that 'there is a necessity to pay and not merely that the Debtor has the ability to pay'." *In re Cont'l Airlines, Inc.*, 146 B.R. 520, 531 (Bankr. D. Del. 1992) (quoting *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 179 (Bankr. S.D.N.Y. 1989)); *see also Bookbinders' Rest.*, 2006 WL 3858020, at *4 (rejecting argument that creditor was entitled to immediate payment of its administrative expense without a further hearing even though the debtor's monthly operating reports showed that it had sufficient cash to make the payments).

14. In the instant case, East River has failed to present any evidence as to why its disputed 503(b)(9) Claim should be paid immediately, ahead of all other creditors in these cases, or why it should receive "special" expedited review when others similarly situated do not enjoy similar treatment of their claims. Rather, East River has asserted only that the administrative solvency of the Debtors' estates is a sufficient basis to compel the immediate payment of the 503(b)(9) Claims.[2] This argument, however, ignores the substantial prejudice to the Debtors' estates that will result from subjecting the Debtors to a potential flood of piecemeal requests for

---

[2] Presently, the Debtors and the Committee still need to complete their analysis before making a determination that each of the Debtors' eleven (11) estates will have sufficient assets to satisfy all administrative claims in full.

immediate payment by approximately fifty (50) 503(b)(9) creditors. If the relief requested were granted, there is no question that other claimants will most likely rely on the relief granted to East River to seek the immediate payment for their claims. The Debtors would then be required immediately to expend time and resources analyzing the validity of a cascade of claims, and divert funds from their limited cash resources to assess and respond to those claims. As the court noted in *HQ Global Holdings, Inc.*, in making a determination of the timing of payment of a 503(b)(9) claim, "one of the chief factors courts consider is … the need to prevent a race to a debtor's assets." *In re HQ Global Holdings, Inc.,* 282 B.R. 169 (Bankr. D. Del. 2002). Just such a race would result here, and the concomitant diversion of the Debtors' resources would harm the Debtors' and their estates and is unnecessary at this stage of the Debtors' Chapter 11 Cases, both as a practical matter and as a matter of law.[3]

15.     East River has also failed to present any evidence that it will suffer prejudice if its disputed 503(b)(9) claim is not paid other than the timeframe set forth by the Bankruptcy Code. The immediate or early payment of administrative expense claims is an extraordinary remedy and requires a claimant to show that the survival of its business is at risk absent such payment. *See Global Home Prods.*, 2006 WL 3791955 at *5 (noting the relatively large revenue of the creditor as justification for denying the motion for immediate payment because such relief was not necessary to keep the claimant in business). Here, East River has not demonstrated prejudice sufficient to justify the Court requiring the Debtors to make immediate payment on the claim. Furthermore, the Debtors and Committee believe that it is highly unlikely that the

---

[3] The Debtors, in consultation with the Committee, require sufficient time to review and reconcile not only the 503(b)(9) claim asserted by East River, but all other 503(b)(9) claims that were timely asserted by the recently passed Claim Bar Date. Moreover, the Debtors, in consultation with the Committee, need to perform a preliminary analysis of the structure of a plan of liquidation, including, if necessary, the allocation of the sale proceeds, and chapter 11 expenses among the various Debtors' estates to ensure payment of any administrative claims prior to confirmation will not prejudice other creditors.

operations of East River will be affected by the outstanding invoices of one client, but even if that were the case, East River has failed to provide specific evidence of harm to its business that would justify immediate payment. As such, payment of the claim at this juncture of the Chapter 11 Cases is unwarranted.

16. East River also implies that its claim is prejudiced as against other administrative expense claimants that are being paid. *See* 503(b)(9) Motion, ¶ 13. The claimant in *Global Home Products*, raised a similar argument, asserting that the debtors' post-petition payments to "critical vendors" pursuant to an order of the court unfairly discriminated against the claimant's 503(b)(9) claim. 2006 WL 3791955, at *5. After noting that payment of critical vendors was left to the debtors' business judgment, the court found that the claimant would suffer "little prejudice" or hardship if its payment was deferred until after confirmation of a plan. *Id.* The Debtors should obtain a similar result here. As discussed above, the fact that some administrative expense claimants are paid earlier than others is an unfortunate reality in some chapter 11 cases, but it does not warrant accelerating payments to creditors beyond what is required by the Bankruptcy Code. Any perceived prejudice to East River is not sufficient to support its request for immediate payment of its claim at this time. Furthermore, the Bar Date Order already provides a mechanism for asserting 503(b)(9) claims, which East River has done. The Bar Date Order also contemplates that 503(b)(9) claims will be addressed during the claims review/objection process and not on an *ad hoc* basis. To the extent that the Bar Date Order is unclear, common sense, judicial economy and preservation of limited estate resources dictate that the proper mechanism for adjudicating 503(b)(9) claims is through the claims reconciliation process.

8

17. Finally, an order granting the immediate payment of the claim would deprive the Debtors' estates of liquidity when the Debtors are already operating under extremely tight budgetary constraints. Despite East River's belief that the Debtors' estates are flush with cash, that is simply not the case. The Debtors are entering a critical time in these Chapter 11 Cases as they work with the Committee and their various creditor constituencies to formulate a consensual plan of liquidation. With the recent passing of the Claim Bar Date, the Debtors and Committee need more time to review and analyze the universe of potential unpaid administrative expense claims (including 503(b)(9) claims). East River should not be allowed to race to the front of the line while all other administrative creditors wait patiently on account of their claims. Accordingly, East River's request for immediate payment of its disputed claim should be denied.

**Conclusion**

East River has failed to establish that it is entitled to an administrative expense claim under Section 503(b)(9) for a substantial portion of its claim or that it will suffer a hardship if the claim is not immediately paid. Conversely, the Debtors have established that the immediate payment of the claim will severely prejudice them, and will also harm their creditors. For these reasons, the Debtors and Committee submit that the Court should exercise its discretion to deny East River's request for immediate payment of the claim as well as limit the amount of such claim to the amount of "goods" received by the Debtors within twenty (20) days of the Petition.

Dated: July 23, 2019
Newark, New Jersey

| **GIBBONS P.C.** | **LOWENSTEIN SANDLER LLP** |
|---|---|
| By: /s/ *Mark B. Conlan* <br> Karen A. Giannelli, Esq. <br> Mark B. Conlan, Esq. <br> Brett S. Theisen, Esq. <br> One Gateway Center <br> Newark, New Jersey  07102 <br> Telephone:  (973) 596-4500 <br> Facsimile:   (973) 596-0545 <br> E-mail:  kgiannelli@gibbonslaw.com <br> mconlan@gibbonslaw.com <br> btheisen@gibbonslaw.com <br><br> *Counsel to the Debtors and Debtors-in-Possession* | By: /s/ *Joseph J. DiPasquale* <br> Mary E. Seymour, Esq. <br> Joseph J. DiPasquale, Esq. <br> One Lowenstein Drive <br> Roseland, NJ 07068 <br> Telephone: (973) 597-2500 <br> Facsimile: (973) 597-2400 <br> E-mail: mseymour@lowenstein.com <br> E-mail: jdipasquale@lowenstein.com <br> -and- <br> **ELLIOTT GREENLEAF, P.C.** <br> Rafael X. Zahralddin, Esq. (*pro hac vice*) <br> Jonathan M. Stemerman, Esq. (*pro hac vice*) <br> Sarah Denis, Esq. (*pro hac vice*) <br> 1105 Market Street, Suite 1700 <br> Wilmington, DE 19801 <br> Phone: (302) 384-9400 <br> Facsimile: (302) 384-9399 <br> E-mail: rxza@elliottgreenleaf.com <br> E-mail: jms@elliottgreenleaf.com <br> E-mail: sxd@elliottgreenleaf.com <br><br> *Co-Counsel to the Official Committee of Unsecured Creditors* |