UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-1**

**Order Filed on July 25, 2019 by
Clerk U.S. Bankruptcy Court
District of New Jersey**

**GIBBONS P.C.**
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey  07102
Telephone:  (973) 596-4500
Facsimile:   (973) 596-0545
E-mail:  kgiannelli@gibbonslaw.com
          mconlan@gibbonslaw.com
          btheisen@gibbonslaw.com

*Counsel to the Debtors
and Debtors-in-Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| NEW ENGLAND MOTOR FREIGHT, INC., *et al.*, | Case No. 19-12809 (JKS) |
| Debtors. [1] | (Jointly Administered) |

**ORDER (I) AUTHORIZING THE PRIVATE SALE OF CERTAIN REAL PROPERTY FREE
AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II)
APPROVING THE PURCHASE AGREEMENT; AND (III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through and including five

(5), is hereby **ORDERED**.

**DATED: July 25, 2019**

Honorable John K. Sherwood
United States Bankruptcy Court

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:
New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex
Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305);
Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

Page:      2
Debtors:  New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (I) Authorizing the Private Sale of Certain Real Property Free and Clear of
           Liens, Claims, Encumbrances, and Other Interests; (II) Approving the Purchase
           Agreement; and (III) Granting Related Relief

Upon the motion (the "Motion")[2], of New England Motor Freight, Inc. and its affiliated debtors, as debtors and debtors in possession (the "Debtors" or the "Sellers") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (i) authorizing the private sale (the "Sale") of certain commercial/industrial real property located at 11700 NW 36th Avenue, Miami, FL 33167 along with certain improvements and fixtures (collectively, the "Property") on an "as is, where is" basis, free and clear of any and all liens, claims, encumbrances, and other interests to 11700 Holdings, LLC by way of an assignment from ATI Container Services, LLC (the "Purchaser") pursuant to the terms and conditions of the Purchase and Sale Agreement, dated as of June 12, 2019 (as may be amended, supplemented, or otherwise modified from time to time, the "Purchase Agreement"), by and between New England Motor Freight, Inc. (the "Seller") and the Purchaser, a copy of which is attached as Exhibit 1 hereto, (ii) authorizing and approving the terms of the Purchase Agreement, and (iii) granting certain related relief; and this Court having reviewed and considered the Motion; and it appearing that the relief requested in the Motion is in the best interest of the Debtors' estates, their creditors, and other parties in interest; and it further appearing that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause therefore,

---

[2] Capitalized terms not defined herein, shall have the meanings ascribed to them in the Motion.

2723295.2 115719-100281

Page:      3
Debtors:   New England Motor Freight, Inc., *et al.*
Case No.:  19-12809 (JKS)
Caption:   Order (I) Authorizing the Private Sale of Certain Real Property Free and Clear of
           Liens, Claims, Encumbrances, and Other Interests; (II) Approving the Purchase
           Agreement; and (III) Granting Related Relief

## IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion and the relief requested therein are granted and approved, and the transactions contemplated thereby and by the Purchase Agreement are approved as set forth in this Order.

2.      The Purchase Agreement and the transactions contemplated thereby, including payment of the brokerage fee, shall be, and hereby are, approved.

3.      The Debtors shall be, and hereby are, authorized to sell the Property to the Purchaser upon the terms and conditions set forth in the Purchase Agreement free and clear of any liens, claims, or encumbrances on the Property; <u>provided,</u> that any liens, claims or encumbrances on the Property shall attach to the proceeds of the Sale with the same priority, validity, force and effect as they attached to the Property immediately before the closing date of the sale (the "<u>Closing Date</u>").

4.      Pursuant to 11 U.S.C. § 363(m), the Purchaser shall be, and hereby is, deemed to have purchased the Property in "good faith."

5.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, resolved, or otherwise settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

6.      Pursuant to Bankruptcy Rule 6004(h) this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry.  Accordingly, the Debtors are authorized and empowered to close the Sale and other transactions immediately upon entry of this Sale Order.

2723295.2 115719-100281

Page:       4
Debtors:    New England Motor Freight, Inc., *et al*.
Case No.:   19-12809 (JKS)
Caption:    Order (I) Authorizing the Private Sale of Certain Real Property Free and Clear of
            Liens, Claims, Encumbrances, and Other Interests; (II) Approving the Purchase
            Agreement; and (III) Granting Related Relief

7.      Nothing in this Sale Order shall modify or waive any closing conditions or termination rights in the Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

8.      The Purchase Agreement and any ancillary agreements may be modified, amended or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, without further notice to or order of this Court; <u>provided</u> that any such modification, amendment or supplement shall not have a material adverse effect on the Purchaser or the Debtors' estates unless approved by order of this Court.

9.      This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the Purchase Agreement, any ancillary agreements, and any amendments thereto and any waivers and consents given thereunder.

10.     Nothing in this Sale Order or the Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of  the Property after the date of entry of this Sale Order.  Nothing in this Sale Order or the Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

2723295.2 115719-100281

Page:       5
Debtors:    New England Motor Freight, Inc., *et al.*
Case No.:   19-12809 (JKS)
Caption:    Order (I) Authorizing the Private Sale of Certain Real Property Free and Clear of
            Liens, Claims, Encumbrances, and Other Interests; (II) Approving the Purchase
            Agreement; and (III) Granting Related Relief

11.      To the extent that this Sale Order is inconsistent with any prior order or pleading

with respect to the Motion, the terms of this Sale Order shall govern.  To the extent there are any

inconsistencies between the terms of this Sale Order, on the one hand, and the Purchase Agreement

or any ancillary agreement, on the other hand, the terms of this Sale Order shall govern.

2723295.2 115719-100281

## EXHIBIT 1

**Purchase and Sale Agreement**

2723295.2 115719-100281

11700 NW 36th Avenue
Miami, Florida 33167

# PURCHASE AND SALE AGREEMENT

by and between

## NEW ENGLAND MOTOR FREIGHT, INC., a New Jersey corporation, Debtor in Possession

as Seller

and

## ATI CONTAINER SERVICES, LLC, a Florida limited liability company

as Purchaser

Dated:  June 12, 2019

i

# TABLE OF CONTENTS

Page

SECTION 1. PURCHASE AND SALE ................................................................. 1
    1.1    Purchase and Sale ........................................................... 1

SECTION 2. PURCHASE PRICE ..................................................................... 1
    2.1    Purchase Price ................................................................. 1

SECTION 3. EARNEST MONEY ..................................................................... 2
    3.1    Earnest Money ................................................................. 2

SECTION 4. DELIVERIES, TITLE, EVALUATIONS AND REPRESENTATIONS ....... 3
    4.1    Delivery Obligations ......................................................... 3
    4.2    Title ................................................................................ 4
    4.3    Title Commitment ........................................................... 4
    4.4    Evaluations .................................................................... 6
    4.5    Purchaser's Representations and Warranties ...................... 9
    4.6    Seller's Representations and Warranties ............................ 10

SECTION 5. NO REPRESENTATIONS OR WARRANTIES BY
    SELLER; ACCEPTANCE OF PROPERTY .................................. 11
        5.1    "As Is" Purchase .............................................. 11

SECTION 6. CLOSING ................................................................................. 11
    6.1    Closing ......................................................................... 11
    6.2    Possession ................................................................... 11
    6.3    Proration ...................................................................... 13
    6.4    Closing Costs ................................................................ 14
    6.5    Sellers Obligations at the Closing .................................... 14
    6.6    Purchaser's Obligations at the Closing ............................. 15
    6.7    Insurance ..................................................................... 15
    6.8    Possession.................................................................... 15

SECTION 7. RISK OF LOSS    15
    7.1 Condemnation ................................................................. 15
    7.2 Casualty ......................................................................... 16
    7.3 Uniform Vendor and Purchaser Risk Act ............................ 16

SECTION 8. DEFAULT ................................................................................. 16
    8.1 Breach by Seller .............................................................. 16
    8.2 Breach by Purchaser ........................................................ 16

SECTION 9. FUTURE OPERATIONS .............................................................. 17
    9.1 Maintenance and Contracts ............................................. 17

2730212.3 115719-100281

Page

SECTION 10. ESCROW AGENT ............................................................. 17
        10.1 Escrow Agent ............................................................. 17

SECTION 11. MISCELLANEOUS ............................................................. 18
        11.1 Notices ............................................................. 18
        11.2 Brokerage ............................................................. 19
        11.3 Title to Personal Property ............................................................. 19
        11.4 Governing Law and Venue ............................................................. 19
        11.5 Waiver of Jury Trial ............................................................. 19
        11.6 Entire Agreement ............................................................. 20
        11.7 Amendment ............................................................. 20
        11.8 Headings ............................................................. 20
        11.9 Time of Essence ............................................................. 20
        11.10 Successors and Assigns; Assignment ............................................................. 20
        11.11 Invalid Provision ............................................................. 21
        11.12 Attorney's Fees ............................................................. 21
        11.13 Multiple Counterparts ............................................................. 21
        11.14 Exhibits ............................................................. 21
        11.15 Construction ............................................................. 21
        11.16 No Recordation ............................................................. 21
        11.17 Merger Provision ............................................................. 22
        11.18 Joint Preparation ............................................................. 22
        11.19 Damages ............................................................. 22
        11.20 Limitation of Liability ............................................................. 22

**Exhibits**
    A    Legal Description of the Land
    B    Existing Leases
    C    Title Exceptions
    D    Form of FIRPTA Affidavit
    E    Form of Taxpayer I.D. Certificate

2730212.3 115719-100281

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "Agreement"), dated as of the 12th day of June, 2019, (the "Effective Date") is made by and between **NEW ENGLAND MOTOR FREIGHT, INC., debtor in possession**, with its principal place of business at 1-71 North Avenue East, Elizabeth, New Jersey 07201 (hereinafter the "Seller"), and **ATI CONTAINER SERVICES, LLC, a Florida limited liability company**, with its principal place of business at 11700 NW 36th Avenue, Miami, Florida 33167 (hereinafter the "Purchaser").

**WHEREAS**, Seller is the owner of that certain parcel of real property situated in Miami-Dade County, Florida, which parcel Seller is desirous of selling and Purchaser is desirous of purchasing on the terms and conditions contained within this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants and representations herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree as follows:

## SECTION 1. PURCHASE AND SALE

1.1   **Purchase and Sale**. Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell, transfer and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, all of the Seller's, right, title and interest in and to the following described property (herein collectively called the "Property"):

(a)   Land. Seller's interest as fee owner of that certain parcel of land (the "Land"), consisting of approximately 2.43 +/- acres and improvements thereon with a street address of 11700 NW 36th Avenue, Miami, Florida 33167, being more particularly described on *Exhibit A* attached hereto and made a part hereof;

(b)   Improvements. Truck terminal with a 15,158 +/- s.f. cross dock, office and building, together with all existing improvements on the Land ("Improvements");

(c)   Personal Property. The fixtures, furnishings, equipment and other personal property (excluding cash), if any, owned by Seller, located in or on, and used exclusively in connection with the operation of, the Improvements, [and identified on Schedule X] ("Personal Property").

## SECTION 2. PURCHASE PRICE

2.1   **Purchase Price**. The purchase price for the Property shall be THREE MILLION FIVE HUNDRED FIFTEEN THOUSAND DOLLARS ($3,515,000.00) (the "Purchase Price") and shall be paid in cash by Purchaser to Seller at the Closing (as defined in Section 6.1) by electronic wire transfer of immediately available funds in

1

accordance with wire transfer instructions to be provided by Seller, with a credit given to Purchaser for the amount of the Earnest Money (as hereinafter defined). Any payment made by wire transfer shall not be deemed to have been made until confirmed as received by Seller's bank and credited to Seller's account or Escrow Agent's bank and credited to Escrow Agent's account, as appropriate.

## SECTION 3.   EARNEST MONEY; ADDITIONAL DEPOSIT

### 3.1   Earnest Money.

(a)   Buyer shall deliver to:

Law Office of Joseph P. Castiglione, P.A.,
6175 NW 153 Street, #229
Miami Lakes, FL  33014
Phone:   786-206-2477 (Office), 786-206-2478 (Facsimile)
E-Mail:   castiglionej@gmail.com,
Attn: Joseph P. Castiglione, Esq.

("Escrow Agent") by electronic wire transfer of immediately available funds, the following amounts: (i) within one (1) business day following execution of this Agreement FIFTY THOUSAND DOLLARS ($50,000.00); (ii) upon conclusion of the Evaluation Period, as defined below, an additional ONE HUNDRED THOUSAND DOLLARS ($100,000.00) (which amounts and any additional funds delivered by Purchaser to Escrow Agent pursuant to this Section 3, together with all interest accrued thereon, if any, is herein called the "Earnest Money") to be invested by Escrow Agent in an interest-bearing account. If Purchaser fails to timely deposit the Earnest Money (and any additions thereto when and as hereinafter provided) this Agreement may, at Seller's sole option, be immediately terminated pursuant to Section 8.2.

(b)   If the sale of the Property is consummated under this Agreement, the Earnest Money shall be paid to Seller and applied to the payment of the Purchase Price at Closing.

(c)   If Purchaser terminates this Agreement in accordance with any right to terminate granted to Purchaser by the terms of this Agreement, the Earnest Money shall be immediately returned to Purchaser, and the parties shall have no further rights or obligations under this Agreement except for those expressly surviving termination.

(d)   If Seller terminates this Agreement in accordance with Section 8.2, the Earnest Money shall be immediately released by Escrow Agent to Seller as provided in Section 8.2, and the parties shall have no further rights or obligations under this Agreement except for those expressly surviving termination.

(e)   If Purchaser does not terminate this Agreement in accordance with any right to terminate granted to Purchaser hereunder or prior to the expiration of the Evaluation Period pursuant to Section 4, the Earnest Money shall be nonrefundable, but shall be applicable in full towards the Purchase Price at Closing.

2

## SECTION 4.  DELIVERIES, TITLE, EVALUATIONS AND REPRESENTATIONS

   4.1   **Delivery Obligations**.

       (a)   Title Commitment and Survey. Purchaser shall obtain, at its sole cost, and deliver a copy to Seller, a commitment for an Owner's Policy of Title Insurance with respect to the Property issued by Escrow Agent through its title company, Law Office of Joseph P. Castiglione, P.A. agent of Old Republic National Title Insurance Company (the "Title Commitment"), within ten (10) business days after the Effective Date, and legible copies of any restrictive covenants, easements, and other items listed as title exceptions therein. Purchaser may also obtain, at its sole cost and expense, and deliver a copy to Seller, a survey of the Property (the "Survey") which may overlay all improvements, easements and matters referred to in the Title Commitment.

       (b)   Documents. Within ten (10) business days after receipt of a written request by Purchaser, Seller shall deliver to Purchaser copies of any of the following documents regarding the Property Seller has in its possession: (i) real estate tax records for the last two (2) years; (ii) any surveys; (iii) any environmental reports; and (iv) any notices of violations of any law, governmental regulation or order of any governmental agency received by Seller during its ownership and in Seller's possession. Nothing herein shall require Seller to provide any reports or materials of any kind except for the above listed items, nor any draft or internal reports, memoranda or assessments intended for internal purposes, confidential materials and materials protected by attorney-client privilege or other privilege.

Purchaser acknowledges that Seller is furnishing to Purchaser the documents referred to above in subparagraphs (i) through (v) (the "Documents") as a matter of general disclosure to Purchaser and that Seller makes no representation or warranty, express or implied, as to the accuracy, reliability or completeness of the Documents or any other documents or reports provided by Seller to Purchaser under the terms of this Agreement. In no event shall Seller have any liability to Purchaser if any information contained in the Documents is inaccurate or incomplete in any respect. Purchaser shall maintain as confidential any and all material obtained about the Property and shall not disclose such information to any third party including, without limitation, any governmental entity. Purchaser shall have the right to disclose such information to prospective lenders and involved third parties who require information to assist Purchaser in Purchaser's due diligence investigations of the Property, provided that Purchaser shall instruct such involved third parties to comply with the confidentiality provisions in this Section 4.1(b). Purchaser agrees that it will be responsible for any failure to comply with the confidentiality provisions of this Agreement by any third party to which Purchaser discloses such information in accordance with the terms hereof. If escrow fails to close for any reason, the Documents shall be promptly returned to Seller. Notwithstanding anything to the contrary contained herein, the foregoing covenants made by Purchaser to keep confidential such Documents and other information concerning the Property (collectively, the "Confidential Information") shall expressly not include any disclosure or dissemination of portions of the Confidential Information to the extent legally compelled to do so or otherwise required by law, statute, court order or subpoena. The obligations of Purchaser set forth in this subsection shall survive the termination of this Agreement.

Final Execution Version
2730212.3 115719-100281

4.2    **Title**. The Property is sold and is to be conveyed free and clear from all liens, restrictions and encumbrances, subject to:

(a)    All present and future zoning and building laws, ordinances and regulations of the State, County and municipality in which the Property lies;

(b)    The lien of real property taxes for the current tax year, subject to apportionment as hereinafter provided;

(c)    Any and all existing leases in effect on the Property as described in *Exhibit B* attached hereto; and

(d)    All matters set out in the Title Commitment.

4.3    **Title Commitment**.

(a)    Upon issuance of the Title Commitment, a copy shall be delivered to Seller and appended to this Agreement as *Exhibit C*. In the event any exceptions appear in the Title Commitment that are not in accordance with this Agreement, Purchaser shall, not later than ten (10) business days after receipt of the Title Commitment (time being of the essence) (the "Title Approval Period"), notify Seller in writing of such facts, the reasons therefor and the curative steps that would remove the basis for Purchaser's objection ("Purchaser's Title Objections"). Upon the expiration of the Title Approval Period, except for Purchaser's Title Objections, and any matters not then of record or otherwise known to Purchaser, Purchaser shall be deemed to have accepted the form and substance of the Survey, all matters shown or addressed thereon, all then existing conditions of title to the Land and Improvements which are a matter of record including, without limitation, any then recorded easement, right of way, encroachments, conflict, discrepancies, overlapping of improvements, liens, encumbrances, restrictions, conditions, covenants, exceptions or other matter with respect thereto and all items shown or addressed in the Title Commitment (collectively, the "Approved Title Matters"). If Purchaser fails to notify Seller of Purchaser's Title Objections by the end of the Title Approval Period, Purchaser shall be deemed to have waived its right to assert Purchaser's Title Objections.

(b)    Notwithstanding anything to the contrary contained herein, Seller shall have no obligation to take any steps or bring any action or proceeding or otherwise to incur any effort or expense whatsoever to eliminate or modify any of Purchaser's Title Objections (other than discharging the lien or any mortgage granted by Seller); provided, however, Seller, at its sole option, may attempt to eliminate or modify all or a portion of Purchaser's Title Objections to Purchaser's reasonable satisfaction prior to the Closing Date or within such additional period of time. In the event Seller is unable or unwilling to attempt to eliminate or modify all of Purchaser's Title Objections to the reasonable satisfaction of Purchaser, Seller shall provide written notice to Purchaser of those objections Seller will not attempt or be able to cure ("Seller's Notice") within twenty (20) business days following receipt of "Purchaser's Title Objections". If Seller notifies Purchaser that Seller will not or cannot remove Purchaser's Title Objections (nothing contained herein shall obligate Seller to remove any Purchaser's Title Objections), then Purchaser's Title Objections

4

shall become Permitted Encumbrances, without abatement in the Purchase Price or claim against Seller, unless Purchaser terminates this Agreement in accordance with this Section 4.3(b). If Seller elects to remove or modify any of Purchaser's Title Objections, then at Seller's option the Closing Date will be extended for the time reasonably required to enable Seller to remove or modify Purchaser's Title Objections. Purchaser may (as its sole and exclusive remedy) terminate this Agreement by delivering notice thereof in writing to Seller by the earlier to occur of (i) the Closing Date (as the same may be adjourned as provided in this Agreement), or (ii) five (5) business days after Seller's Notice, time being of the essence to the giving of Purchaser's notice. If Purchaser shall duly give such termination notice, then this Agreement shall thereupon terminate, and upon such termination, Purchaser shall be entitled to the return of the Earnest Money, and the parties shall have no further rights or obligations under this Agreement except for those expressly surviving termination.

(c)      The "Permitted Encumbrances" as used herein include: (i) the matters set forth in Section 4.2, (ii) all of the Approved Title Matters, (iii) any of Purchaser's Title Objections that remains uncured, for whatever reason, at the earlier to occur of (A) Closing hereunder (as the same may be adjourned as provided in this Agreement), or (B) five (5) business days after Seller's Notice, and (iv) liens for real property taxes, assessments, and water and sewer meter charges which are not due and payable as of the Closing Date or which are apportioned pursuant to Section 6.3. The term "Permitted Encumbrances" shall not include any Monetary Liens (as hereafter defined).

(d)      Purchaser may, at or prior to Closing, notify Seller in writing of any exception to title that is not in accordance with this Agreement and which (i) is first raised by the Title Company after the issuance of the Title Commitment and following the expiration of the Title Approval Period but before the Closing and (ii) was not otherwise known to Purchaser prior to the expiration of the Title Approval Period; provided the Purchaser must notify Seller of such new objection to title within two (2) business days after receipt of such exception. If Purchaser sends such notice to Seller, Purchaser and Seller shall have the same rights and obligations with respect to such notice as apply to Purchaser's Title Objections under Sections 4.3 (b) and (c) hereof.

(e)      A Monetary Lien shall be deemed to have been removed if payment is bonded or if any major title insurer is willing to insure Purchaser against loss by reason thereof, based on Seller's bond, indemnity, escrow or other acceptable arrangement. "Monetary Liens" mean all judgments, mortgages, UCC-1 financing statements, collateral assignments of rents and leases, contractor's liens, past due real estate taxes and other past due governmental assessments and penalties and fines attributable to Seller which constitute liens against the Property.

(f)      In no event shall Seller be liable to Purchaser for damages if Seller is unable or unwilling to cure any title objections as provided herein, any right to claim such damages being expressly waived by Purchaser. Seller shall be deemed to have met its obligations with respect to title if any major title insurer is willing to insure title to the Property in the amount of the Purchase Price at regular rates at Purchaser's sole cost, subject to the Permitted Encumbrances.

Final Execution Version
2730212.3 115719-100281

4.4    **Evaluation/Financing Period**.

    4.4.1 Physical Evaluations.

        (a)      Commencing on the Effective Date, and for the period of thirty (30) calendar days thereafter (the "Evaluation Period"), Purchaser shall have the right at its sole cost and expense to perform or cause to be performed any noninvasive environmental examinations and inspections of the Land and Improvements of Purchaser's choice, including but not limited to a "Phase I" environmental investigation if Purchaser elects to conduct same (collectively, the "Physical Evaluations"). Seller shall provide Purchaser with access to the Land and Improvements during the Evaluation Period and will reasonably cooperate with Purchaser at no cost to Seller. Such Physical Evaluations will be conducted in a manner not to cause any damage to the Land or Improvements and shall be kept confidential. Purchaser shall promptly provide Seller with a copy of any report generated during the Evaluation Period. Purchaser shall not perform any soil borings, water samplings or undertake any other invasive testing on the Property unless Purchaser provides Seller with a detailed scope of the proposed work, which Seller may either approve or reject in Seller's sole and absolute discretion.

        (b) Purchaser shall promptly repair and restore the Property to its condition existing immediately prior to Purchaser's Physical Evaluations at Purchaser's sole cost and expense. Purchaser shall be liable for all damage or injury to any person or property resulting from, relating to or arising out of any such inspection, testing, investigation or survey, whether occasioned by the acts of Purchaser or any of its employees, agents, representatives or contractors, and Purchaser shall satisfy any lien which may arise or be filed against Seller or the Property in connection with any such inspection, testing, investigation or survey. Purchaser shall indemnify, defend and hold harmless Seller and its agents, employees, officers, directors, and shareholders from all suits, actions, proceedings, losses, damages, liens, expenses and costs, including without limitation, reasonable counsel fees (collectively "Claims and Damages"), arising out of or in any way related to any such inspection, testing, investigation or survey or lien filed against Seller or the Property in connection therewith. The obligations set forth in this subsection (b) shall survive the termination of this Agreement.

        (c)      Prior to any entry onto the Property by Purchaser or its agents, Purchaser shall procure and maintain, so long as this Agreement has not been terminated, at Purchaser's sole cost and expense, a commercial general liability policy of insurance issued by an insurer authorized to do business in New Jersey reasonably approved by Seller with policy limits for Purchaser and its affiliates of no less than Two Million Dollars ($2,000,000.00), and for third party agents and consultants of no less than Two Million Dollars ($2,000,000.00), combined single limit, insuring (on an occurrence basis) against injuries and damages to persons and property related to Purchaser's and its agents' activities on the Property, which policy must include a contractual liability endorsement evidencing coverage of Purchaser's obligation to indemnify Seller as hereafter provided, with Seller named as an additional insured. Purchaser shall deliver to Seller proof of such coverage reasonably acceptable to Seller, prior to entry onto the Property by Purchaser or its agents.

Final Execution Version
2730212.3 115719-100281

(d)    Except as specifically provided in this Agreement, Seller makes no representations or warranties as to the truth, accuracy, completeness, methodology of preparation or otherwise concerning any environmental reports, or any other materials, data or other information supplied to Purchaser in connection with Purchaser's inspection or evaluation of the Property (e.g., that such materials are complete, accurate or that such materials are all of such materials as are in Seller's possession).  It is the parties' express understanding and agreement that such materials are provided only for Purchaser's convenience in making its own examinations and evaluations prior to the expiration of the Evaluation Period, and, in doing so, Purchaser shall rely exclusively on its own independent investigation and evaluations and not on any materials supplied by Seller. Purchaser expressly disclaims any intent to rely on any such materials provided to it by Seller in connection with its evaluations and agrees that it shall rely solely on its own independently developed or verified information. Purchaser shall keep all environmental reports, materials, data or other information confidential and Purchaser shall not disclose any of the Evaluation Data to any third-party other than a retained agent of Purchaser or as required by Court Order.  The obligations by Purchaser set forth in this subsection shall survive the termination of this Agreement.

(e)    Purchaser, its affiliates, lenders, investors, employees, attorneys, accountants and its other professionals or agents have undertaken, and during the Evaluation Period will undertake and complete, such investigations of the Property as Purchaser deems necessary or desirable to satisfy itself as to the condition of the Property, and will rely solely upon same and not upon any information provided by or on behalf of Seller or its agents or employees with respect thereto, except as otherwise expressly provided herein.  Purchaser acknowledges and agrees:

(1)    The Property is being acquired "AS IS, WITH ALL FAULTS, KNOWN OR UNKNOWN", without representation or warranty of any kind except as expressly set forth herein, and in its present condition subject to reasonable wear and tear, casualty and condemnation between the date hereof and the Closing (except as otherwise expressly provided herein);

(2)    Upon Closing, Purchaser shall assume the risk that adverse matters, including but not limited to, construction defects and adverse physical and environmental conditions, may not have been revealed by Purchaser's investigations, and, Purchaser, upon Closing, shall be deemed to have waived, relinquished and released Seller (and the members, managers, officers, directors, shareholders, employees and agents of Seller and its affiliates) from and against any and all Claims and Damages of any and every kind or character, known or unknown, which Purchaser might assert or allege against Seller (and the members, managers, officers, directors, shareholders, employees, agents and attorneys of Seller and its affiliates) at any time by reason of or arising out of any latent or patent construction defects or physical conditions, violations of any applicable laws (including without limitation, Uniform Federal Accessibility Standards) and the presence of any hazardous or toxic substances, mold, fungi, chemicals or wastes in, on or under any portion of the Property, whether or not revealed to Purchaser by Seller or in the course of Purchaser's inspections and investigations of the Property in connection with its due diligence, which waiver and release shall survive the Closing hereunder;

7

(3)     Except as otherwise expressly provided herein, Purchaser has not relied on any representations or warranties, and Seller has not made and is unwilling to make any representations or warranties, in either case express or implied as to the Property including, but not limited to (i) the real estate tax liability, assessment or valuation of the Property; (ii) the compliance of the Property with applicable building codes, rent control laws or zoning ordinances and the ability to obtain a variance in respect to any non-compliance, if any, with said zoning ordinances; (iii) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source; (iv) the use of the Property, including but not limited to the conversion of the Property to cooperative or condominium form of ownership; (v) the condition and operating state of the Property including without limitation, any and all personal property, machinery, equipment or appliances on or in the Property, and the structural and physical condition of any improvements on the Property or their suitability for rehabilitation or renovation; (vi) the current or future income or expenses of the Property; (vii) the state of title to the Property; (viii) the presence or absence of violations of any statutes or laws or any federal, state, regional, county or municipal ordinances, regulations, orders or requirements; or (ix) the presence or absence in, on or under the Property of any hazardous or toxic substance, chemicals or wastes (including without limitation, mold, radon, asbestos or lead-based paint). Seller has not made, does not make and is unwilling to make any representations or warranties as to the condition, income, expenses, leases, tenants, use, operation, zoning or building code compliance, rent control compliance, presence or absence of any hazardous or toxic substances, chemicals or wastes (including asbestos, mold, radon and lead-based paint), or any other matter or thing affecting or relating to the Property or title thereto or the transactions contemplated hereby, except as otherwise expressly provided herein. Purchaser acknowledges and represents that no such representations or warranties have been made except as otherwise expressly provided herein. Purchaser is familiar with and experienced in the inspection, purchase and operation of commercial or industrial real property; and

(4)     The acceptance of the Special Warranty Deed by Purchaser shall be deemed full compliance by Seller of all of Seller's obligations under this Agreement except for those obligations of Seller which are expressly stated to survive Closing, if any.

4.4.2   <u>Termination</u>. If such Physical Evaluations reveal any physical or environmental condition which is unacceptable to Purchaser in its sole discretion, or if Purchaser is unable to secure necessary financing, Purchaser may (as its sole and exclusive remedy) terminate this Agreement by delivering notice thereof in writing to Seller on or before the expiration of the Evaluation Period, time being of the essence to the giving of Purchaser's notice. If Purchaser shall duly give such termination notice, then this Agreement shall terminate, and upon such termination, Purchaser shall be entitled to the return of the Earnest Money, and the parties shall have no further rights or obligations under this Agreement except for those expressly surviving termination and except that Purchaser shall return all reports and documents furnished to Purchaser by Seller, or obtained by Purchaser during the Evaluation Period, to Seller within two (2) business days of such termination. If Purchaser does not notify Seller of such termination in writing prior to the expiration of the Evaluation Period, time being of the essence to the giving of such notice, all

8

such evaluations, inspections, tests, and investigations of the Property, financing, and all conditions relating to the Property (subject to Section 7), shall be deemed satisfactory to Purchaser, and Purchaser shall have no further right to terminate this Agreement pursuant to this Section 4.4.2, and the Earnest Money shall thereupon be nonrefundable.

4.5 **Purchaser's Representations and Warranties**. Purchaser represents and warrants to Seller that:

(a) Purchaser is a limited liability company duly organized and validly existing under the laws of the State of Florida and has the power and authority to enter into this Agreement and to execute and deliver this Agreement and to perform all duties and obligations imposed upon it hereunder; and

(b) neither the execution nor the delivery of this Agreement, nor the consummation of the purchase and sale transaction contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement conflict with or will result in the breach of any of the terms, conditions or provisions of any agreement or instrument to which Purchaser or his assignee is a party or by which Purchaser or his assignee or any of Purchaser's or his assignee's assets is bound;

(c) there are no proceedings at law or in equity before any court, grand jury, administrative agency or other investigative agency, bureau or instrumentality of any kind pending or, to Purchaser's knowledge, threatened, against or affecting Purchaser that (i) involve the validity or enforceability of this Agreement or any other instrument or document to be delivered by Purchaser pursuant hereto or (ii) enjoin or prevent or threaten to enjoin or prevent the performance of Purchaser's obligations hereunder;

(d) Purchaser is currently (i) in compliance with and shall at all times during the term of this Agreement remain in compliance with the OFAC regulations and any statute, executive order (including Executive Order 13224, dated September 24, 2001 and entitled "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism"), or regulation relating thereto, and (ii) not listed on, and shall not during the term of this Agreement be listed on, the Specially Designated Nationals and Blocked Persons List maintained by OFAC or on any other similar list maintained by OFAC or other governmental authority pursuant to any authorizing statute, executive order, or regulation;

(e) except to the limited extent, if any, specifically and expressly set forth in this Agreement, Purchaser shall accept the Property "AS IS, WITH ALL FAULTS, KNOWN OR UNKNOWN" at Closing, and Purchaser has not relied upon and will not rely upon, and Seller is not liable for or bound by any, express or implied, warranties, guarantees, statements, representations or information pertaining to the Property or relating thereto made or furnished by Seller or any of its advisors, or any of their agents, representatives, contractors, employees, attorneys or brokers, to whomever made or given, directly or indirectly, verbally or in writing, unless specifically and expressly set forth in this Agreement; and

9

(f)    that financing is not a condition to Purchaser's obligations under this Agreement, and that Seller has not offered or agreed to provide any financing to Purchaser.

The Purchaser's representations and warranties set forth in this Section 4.5 shall survive the Closing. As a condition precedent to Seller's obligation to close the purchase and sale transaction contemplated in this Agreement, Purchaser's representations and warranties contained herein must remain and be true and correct as of the Closing Date. Prior to the Closing Date, Purchaser shall notify Seller in writing of any facts, conditions or circumstances which render any of the representations and warranties set forth in this Section 4.5 in any way inaccurate, incomplete, incorrect or misleading.

4.5.1. Release of Seller. From and after Closing, Purchaser waives, releases, and forever discharges Seller, its directors, officers, members, shareholders, employees and agents, and their respective heirs successors, personal representatives and assigns (collectively the "Released Parties"), of and from any and all suits, legal or administrative proceedings, claims, demands, actual damages, punitive damages, losses, costs, liabilities, interest, attorneys' fees and expenses of whatever kind and nature, in law or in equity, known or unknown (collectively the "Liabilities"), that Purchaser ever had, now has, or in the future may have, against any of the Released Parties.

4.6    **Seller's Representations and Warranties**. Seller represents and warrants to Purchaser that:

(a)    Seller is a corporation duly organized and validly existing in the State of New Jersey, and a debtor in possession, having filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. sec 101-1532 (as amended) in the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court"), in the case *In re: New England Motor Freight, Inc., et al.* pending before the Honorable Judge John Sherwood, under Case No.19-12809-JKS ("Bankruptcy Case"), and has the power to enter into this Agreement and to execute and deliver this Agreement subject to Bankruptcy Court Approval (as hereafter defined) and all necessary corporate authorizations, and Seller shall use commercially reasonable efforts to obtain all necessary corporate and Bankruptcy Court authorizations required in connection with the execution, delivery and performance of this Agreement, but nothing herein shall require Seller to make any efforts to obtain any such authorizations until after the expiration of the Evaluation Period.

The Seller's representations and warranties set forth in this Section 4.6 shall terminate at Closing. Purchaser expressly understands and agrees that Seller is a debtor in possession and, from and after Closing, Purchaser waives any and all rights it may have to pursue any remedy or recover any damages on account of any Seller Default including a breach of a misrepresentation or warranty, regardless of whether Purchaser had knowledge of any such Seller Default prior to Closing. As a condition precedent to Purchaser's obligation to close on the purchase and sale transaction contemplated in this Agreement, Seller's representations and

10

warranties contained herein must remain and be true and correct as of the Closing Date.

**SECTION 5.    NO REPRESENTATIONS OR WARRANTIES BY SELLER; ACCEPTANCE OF PROPERTY**

5.1        **"As Is" Purchase**. Purchaser represents that, upon completion of its inspections of the Property as contemplated under Section 4.4.1., Purchaser will have made all investigations as it deems necessary or appropriate and will be relying solely upon its inspection and investigations of the Property for all purposes whatsoever, including but not limited to, the determination of the condition of the structures, improvements, soils, subsurfaces, drainage, surface and groundwater quality, and all other physical characteristics; governmental laws and regulations; access; encroachments; acreage and other survey matters; and the character and suitability of the Property. In addition, Purchaser acknowledges that the Property is being purchased and will be conveyed "as is" "where is" with all faults and defects, whether patent or latent, as of the date of Closing. Other than what is specifically contained in Section 4, there have been no representations, warranties, guarantees, statements or information, express or implied, pertaining to the Property, its condition, or any other matters whatsoever made to or furnished to Purchaser by Seller or any employee or agent of Seller.

**SECTION 6.    CLOSING**

6.1        **Closing**. The closing of the purchase and sale transaction contemplated herein (the "Closing") shall occur on the first business day which is thirty (30) days following (and excluding) the later to occur of: (x) the date that Seller receives the Bankruptcy Court Approval (as hereafter defined), or (y) the expiration of the Evaluation Period, unless the Closing is adjourned as and when permitted in accordance with the express provisions of this Agreement (such date of the Closing, as the same may be adjourned as provided above, being herein referred to as the "Closing Date").  Seller and Purchaser agree to complete Closing by depositing all funds and documents with Escrow Agent, pursuant to mutually acceptable escrow instructions. On the Closing Date, all documents to be recorded shall be exchanged (or in the event of an escrow closing delivered to the Title Company for recording) and all other closing documents and funds shall be deemed to be simultaneously delivered. In the event that Purchaser does not close for any reason, then Seller may terminate this Contract and the Earnest Money shall be forfeit.

6.2        **Closing Conditions**.

(a)        Seller's obligation to consummate the transaction contemplated by this Agreement on the Closing Date shall be strictly conditioned upon and subject to the satisfaction or performance of the following terms and conditions, any one or more of which may be waived by Seller in its sole discretion, in whole in part, on or as of the Closing Date as such may be extended in accordance herewith:

(1) The Bankruptcy Court shall have entered an Order (the "Sale Order") approving Seller's entry into this Agreement and the transactions contemplated by this Agreement and the Bankruptcy Court shall have provided all

11

other authorizations required for the sale of the Property by Seller to Purchaser ("Bankruptcy Court Approval").

(2)  Seller shall have received all required corporate authorizations for Seller's entry into this Agreement and the transactions contemplated by this Agreement including without limitation the sale of the Property by Seller to Purchaser.

(3) Purchaser shall have paid the Purchase Price in full, delivered all of the documents and other items required pursuant to Section 6.6 and shall not be in default of any of its material obligations hereunder beyond any applicable notice and grace period; and

(4)  All of the representations and warranties of Purchaser set forth in this Agreement shall be true and correct at and as of the Closing Date in all material respects as though such representations and warranties were made at and as of the Closing Date.

If any condition specified in this Section 6.2(a) is not satisfied on or before the Closing Date (as may be extended as provided in this Agreement), Seller may, at its option, and in its sole and absolute discretion, (a) waive any such condition and proceed to Closing or (b) terminate this Agreement by written notice thereof to Purchaser, in which case the Earnest Money shall be returned to Purchaser and the parties shall have no further rights or obligations under this Agreement except for those expressly surviving termination; provided, however, if the failure of the condition is due to a breach by Purchaser under this Section 6.2, Seller may pursue its remedy under Section 8.2.

(b)    Purchaser's obligation to consummate the transaction contemplated by this Agreement on the Closing Date shall be subject to the satisfaction or performance of the following terms and conditions, any one or more of which may be waived by Purchaser in its sole discretion, in whole in part, on or as of the Closing Date as such may be extended in accordance herewith:

(1)    Seller shall have delivered all of the documents and other items required pursuant to Section 6.5 and shall not be in default of any of its material obligations hereunder beyond any applicable notice and grace period; and

(2)    All of the representations and warranties of Seller set forth in this Agreement shall be true and correct at and as of the Closing Date in all material respects as though such representations and warranties were made at and as of the Closing Date.

If any condition specified in this Section 6.2(b) is not satisfied on or before the Closing Date (as may be extended as provided in this Agreement), Purchaser may, at its option, and in its sole and absolute discretion, (a) waive any such condition and proceed to Closing or (b) terminate this Agreement by written notice thereof to Seller, in which case the Earnest Money shall be returned to Purchaser and the parties shall have no further rights or obligations under this Agreement except for those expressly surviving termination; provided, however, if the failure of the condition is due to a

Final Execution Version
2730212.3 115719-100281

breach by Seller under this Section 6.2(b), Purchaser may pursue its remedy under Section 8.1.

6.3    **Proration**. All rents, utilities, fuel, water and sewer meter charges and all other similar expenses with respect to the Property for the month in which the Closing occurs, and real estate taxes and other assessments with respect to the Property for the tax year in which the Closing occurs, shall be prorated as of 11:59 p.m. on the day before the date Seller receives the Purchase Price in immediately available funds, with Purchaser receiving the benefits and burdens of ownership on the Closing Date.

(a)    (1)    If the Closing shall occur before the tax rate or the assessed valuation of the Property is fixed for the then current year, the apportionment of taxes and assessments shall be upon the basis of the tax rate for the preceding year applied to the latest assessed valuation, with no further reconciliations or adjustments to be made when the final rate or valuation rate is received.

(2)    If any certiorari or other proceedings for the reduction of real estate taxes are pending at the Closing Date with respect to the tax year in which the Closing occurs, Purchaser shall take over the prosecution of such action with counsel of Purchaser's choice; provided, however, that Purchaser will not settle or compromise such action without Seller's prior written consent. Any tax refund resulting from such proceeding, net of Seller's and Purchaser's costs of prosecuting the same, shall be apportioned between Seller and Purchaser in the same proportion that real estate taxes for such tax year are apportioned. Seller shall have the sole right to continue the prosecution of any certiorari or other proceedings for the reduction of real estate taxes which relate wholly to a tax year prior to the one in which the Closing Date occurs, and to settle or compromise the same in Seller's sole discretion, and to retain any refund so received.

(b)    If there are any assessments against the Property on the Closing Date, Seller shall pay same if payment with respect thereto was due (to the extent payment is due prior to the Closing Date), prior to the date of this Agreement; but if payment with respect thereto was due (to the extent payment is due after the Closing Date), subsequent to the date of this Agreement, such assessment shall be paid by Purchaser. Purchaser shall assume all obligations and liabilities with respect to any pending special assessments for work that has been ordered by the local jurisdiction but has not yet been completed.

(c)    If the Closing shall occur before the actual amount of utilities, fuel, water or sewer meter charges or other similar expenses with respect to the Property for the month in which the Closing occurs are determined (and unless a meter reading or final bill has been obtained prior to Closing,) the apportionment of such utilities, fuel, water or sewer meter charges or other similar expenses shall be upon the basis of an estimate by Seller of such charges. Subsequent to the Closing, when the actual amount of charges with respect to the Property for the month in which the Closing occurs are determined, the parties agree there will be no further reconciliation or adjustment to said proration.

13

(d)    The agreements of Seller and Purchaser set forth in this <u>Section 6.3</u> shall survive the Closing.

## 6.4    **Closing Costs**.

At closing, Seller shall prorate the current real estate taxes for the property and pay all delinquent real estate taxes, if any, including penalties and interest. The respective parties' costs associated with this transaction shall be as follows:

SELLER – Seller will pay the documentary stamps and any surtax or surcharge due on the deed; costs necessary to clear title at Closing pursuant to Sections 4.2 and 4.3; the recording costs of any instruments by Seller; the cost of discharging any Monetary Lien; and the commission of the Authorized Broker pursuant to <u>Section 11.2</u>.

PURCHASER – Purchaser will pay the costs and expenses of all architectural, engineering and other inspection and feasibility studies and reports incident to Purchaser's inspections of the Property including without limitation any environmental investigations; the documentary stamps and any surtax or surcharge with respect to any loan; the recording costs of any instruments received by Purchaser; and survey, title search and exam fees and the premium of the owner's policy of title insurance and any endorsements thereto.

Any other closing costs shall be allocated between the parties as is customary in Miami-Dade County, State of Florida. Notwithstanding the foregoing, each party shall pay its own attorneys' fees and the fees of any accountants and advisers incurred in connection with the transaction contemplated in this Agreement.  Any fees or charges of Escrow Agent for escrow services shall be borne equally by Seller and Purchaser.  No funds shall be distributed at Closing and the deed shall not be recorded until Purchaser, Seller and Escrow Agent have all executed a mutually agreeable Closing Instruction letter if required by Escrow Agent.

6.5    <u>**Seller's Obligations at the Closing**</u>. At the Closing, Seller shall deliver or cause to be delivered to Purchaser the following:

(a)    <u>Evidence of Authority</u>. Such organizational and authorizing documents of Seller as shall be reasonably required by the Title Company to evidence Seller's authority to consummate the transactions contemplated by this Agreement.

(b)    <u>Special Warranty Deed</u>. A duly executed and acknowledged Special Warranty Deed in recordable form, transferring fee simple title in the Property to Purchaser.

(c)    <u>FIRPTA Affidavit</u>. A duly executed affidavit of Seller substantially in form attached hereto as <u>*Exhibit D*</u> certifying that Seller is not a "foreign person," as that term is defined in Section 1445 of the Internal Revenue Code of 1986, as amended, and in any applicable state laws for the state in which the Property is located.

14

(d)      _Transfer Tax Forms_. All transfer tax forms which Seller is required by law to execute and acknowledge and to deliver to any governmental authority in connection with recordation of the Special Warranty Deed.

(f)      _Closing Statement_. A settlement statement reflecting moneys disbursed and Closing prorations and adjustments executed by Seller (the "Closing Statement").

6.6   **Purchaser's Obligations at the Closing**. At the Closing, Purchaser shall deliver or cause to be delivered to Seller the following:

(a)      _Purchase Price_. The Purchase Price in full by wire transfer of immediately available funds.

(b)      _Evidence of Authority_. Such organizational and authorizing documents of Purchaser as shall be reasonably required by Seller and the Title Company authorizing Purchaser's acquisition of the Property pursuant to this Agreement and the execution of this Agreement and any documents to be executed by Purchaser at the Closing.

(c)      _Closing Statement_. The Closing Statement duly executed.

(d)      _Taxpayer Certification_. A duly executed Taxpayer I.D. Certification in the form attached to this Agreement as _Exhibit E_.

(e)      _Transfer Tax Forms_. Duly executed and acknowledged transfer tax forms described in Section 6.5, if applicable.

6.7   **Insurance**.   Seller's existing liability and property insurance pertaining to the Property shall be cancelled as of the Closing Date, and Seller shall be entitled to receive any premium refund due thereon. As of the Closing Date, Purchaser will obtain its own insurance coverage.

6.8   **Possession**. Purchaser shall be entitled to possession of the Property upon completion of the Closing, subject to the Permitted Encumbrances.

## SECTION 7. **RISK OF LOSS**

7.1   **Condemnation**. If, prior to the Closing, the Property or any part thereof is taken by eminent domain proceedings or by deed in lieu thereof, Purchaser may either at or prior to Closing (a) terminate this Agreement by notice to Seller given within ten (10) days following Seller's notice to Purchaser and thereupon be entitled to an immediate return of the Earnest Money and this Agreement and all rights and obligations of the parties hereunder shall be null and void, except for those rights and obligations which are expressly stated to survive Closing, or (b) consummate the Closing, and Purchaser shall take title to the Property subject to such condemnation proceedings and, in the event of (b), all of Seller's assignable right, title and interest in and to the award of the condemning authority shall be assigned to Purchaser at Closing and there shall be no reduction in the Purchase Price. If Purchaser fails to

15

deliver written notice to Seller of Purchaser's election within the time period specified in this <u>Section 7.1</u>, Purchaser shall be deemed to have elected alternative (b) above. The terms of this <u>Section 7.1</u> shall survive Closing.

7.2    **Casualty**. If the Improvements are damaged or destroyed prior to Closing, this Agreement shall continue in full force and effect, and Seller shall (i) assign to Purchaser at Closing any and all proceeds and claims under any applicable insurance coverage maintained by Seller, and (ii) afford Purchaser a credit at Closing for any applicable insurance deductible, and Purchaser shall take title to the Property subject to such damage and destruction and there shall be no reduction in the Purchase Price.

7.3    **Uniform Vendor and Purchaser Risk Act**. Purchaser and Seller each hereby waives the Uniform Vendor and Purchaser Risk Act (if and to the extent applicable in the State where the Property is located) and agree that the provisions of this <u>Section 7</u> shall govern the respective rights and obligations of Purchaser and Seller with respect to the subject matter of this <u>Section 7</u>.

## SECTION 8. <u>DEFAULT</u>

8.1    **Default by Seller**.

Seller shall be in default under this Agreement ("Seller Default") if: (a) Seller fails to complete Closing as and when required by this Agreement after satisfaction of all conditions precedent to Seller's obligation to consummate the Closing under this Agreement or (b) there exists a material misrepresentation by Seller under this Agreement or Seller is in breach of any of its obligations under this Agreement other than its obligation to complete Closing, and such misrepresentation or breach remains uncured for thirty (30) calendar days after notice from Purchaser to Seller thereof.  In the event of a Seller Default, Purchaser shall be entitled to terminate this Agreement and receive a prompt refund of the Earnest Money. The foregoing remedy is the sole right and remedy available to Purchaser at law or in equity in the event of Seller Default under this Agreement.  Purchaser hereby waives any and all rights it may now or hereafter have to pursue any other remedy or recover any other damages on account of any Seller Default, including, without limitation, loss of bargain, special, punitive, compensatory, consequential or speculative damages.  Purchaser expressly understands and agrees that Seller is a debtor in possession and, from and after Closing, Purchaser waives any and all rights it may have to pursue any remedy or recover any damages on account of any Seller Default including a breach of a misrepresentation or warranty, regardless of whether Purchaser had knowledge of any such Seller Default prior to Closing

8.2    **Default by Purchaser**.

Purchaser shall be in default under this Agreement ("Purchaser Default") if: (a) Purchaser fails to complete Closing as and when required by this Agreement after satisfaction or waiver of all conditions precedent to Purchaser's obligation to consummate the Closing under this Agreement or (b) there exists a material misrepresentation by Purchaser under this Agreement or Purchaser is in breach of any of its obligations under this Agreement other than its obligation to

16

Final Execution Version
2730212.3 115719-100281

complete Closing, and such misrepresentation or breach remains uncured for ten (10) business days after notice from Seller to Purchaser thereof. In the event of a Purchaser Default, Purchaser and Seller agree that it would be impractical and extremely difficult to estimate the damages which Seller may suffer. Accordingly,

Purchaser and Seller further agree that a reasonable estimate of such damages is and shall be an amount equal to the Earnest Money, which includes the accrued interest thereon, and such Earnest Money shall be disbursed to Seller as the full, agreed and liquidated damages for a Purchaser Default. Seller's sole and exclusive remedy in the event of a Purchaser Default shall be to terminate this Agreement and receive the Earnest Money. In the event of any such termination, the parties shall have no further rights and obligations hereunder except for those that expressly survive a termination of this Agreement.

## SECTION 9.  **FUTURE OPERATIONS**

9.1   **Maintenance and Contracts**. From the Effective Date of this Agreement until the Closing or earlier termination of this Agreement:

(a)   Seller reserves the right to continue to lease the Property to a third party, allow the Property to remain vacant or occupy the Property itself. Purchaser acknowledges that Seller does not intend to make any improvements or repairs.

## SECTION 10.  **ESCROW AGENT**

10.1   **Escrow Agent**. The parties each further agree as follows:

(a)   The Escrow Agent is acting as an accommodation to the parties hereto, and shall not be liable for any action taken or omitted except in the event of its negligence or willful misconduct.

(b)   In the event that at any time the Escrow Agent shall be uncertain as to its duties or rights or shall receive instructions, claims or demands from the parties to this Agreement or from third persons with respect to the Earnest Money, which in its opinion are or may be in conflict with the provision of this Agreement, the Escrow Agent shall be entitled to refrain from taking any action until it shall be directed otherwise in writing by both parties, or by final order or judgment of a court of competent jurisdiction. By notice to the parties at any time, the Escrow Agent shall be entitled to deposit the Earnest Money and any interest or earnings thereon with a court of competent jurisdiction within the State of Florida, with a request, by way of interpleader or otherwise, that the rights thereto be determined.

(c)   No modification of this Agreement which shall affect the Escrow Agent or its duties shall be binding upon it without its prior written consent thereto.

(d)   Seller and Purchaser each agrees to indemnify and hold harmless the Escrow Agent and its successors from any liability, obligation, damage, loss, claim, costs or expense (including reasonable attorneys' fees and disbursements)

17

incurred for any reason, other than the negligence or willful misconduct of Escrow Agent, and arising out of or in connection with its acceptance of, or the performance of its duties and obligations under or by reason of the escrow or this escrow agreement.

   (e) The Escrow Agent has executed this Agreement solely to confirm that the Escrow Agent has received the Earnest Money (subject to collection) and that it shall hold the Earnest Money, in escrow, pursuant to the provisions of this Agreement. Escrow Agent agrees to be bound by the terms and conditions of <u>Section 11.4</u> (governing law and venue) and <u>Section 11.5</u> (waiver of jury trial) of this Agreement, and agrees that process may be served upon Escrow Agent in any litigation arising hereunder in the same manner that notices may be delivered to Escrow Agent as provided in <u>Section 11.1</u> of this Agreement, or by any other legal means of service of process.

## SECTION 11.   <u>MISCELLANEOUS</u>

  11.1 **Notices**. All notices, demands and requests which may be given or which are required to be given by either party to the other, and any exercise of a right of termination provided by this Agreement, shall be in writing and shall be deemed given either: (a) on the date personally delivered to the address below, as evidenced by written receipt therefor, whether or not actually received by the person to whom addressed; (b) on the first (1st) business day after being deposited into the custody of a nationally recognized overnight delivery service such as Federal Express, DHL Express, or United Parcel Service, addressed to such party at the address specified below, or (c) by email which notice shall be deemed to be given when sent (and, in the case of email, an original notice or demand shall be deposited into the custody of a nationally recognized overnight delivery service within one day following the date of the email). Attorneys for a party shall be authorized to give notices on behalf of such party. Written adjournments and extensions in time signed by an attorney for a party shall be binding upon that party. For purposes of this <u>Section 11.1</u>, the addresses of the parties for all notices are as follows (unless changed by similar notice in writing given by the particular person whose address is to be changed):

| | |
|---|---|
| **If to Purchaser**: | ATI CONTAINER SERVICES, LLC<br>Attn: Carlos Hermo<br>11700 NW 36th Avenue<br>Miami, Florida 33167<br>Telephone: (305) 206-8717<br>Email: carloshermo@msn.com |
| **With a copy to**: | Law Office of Joseph P. Castiglione, P.A.<br>6175 NW 153 Street, #229<br>Miami Lakes, FL 33014<br>Attention: Joseph P. Castiglione, Esq.<br>Email: castiglionej@gmail.com<br>Telephone: (786) 206-2477 |

18

| **If to Seller:** | New England Motor Freight, Inc. |
| | Attn: Vincent Colistra |
| | Chief Restructuring Officer |
| | 1-71 North Avenue East |
| | Elizabeth, New Jersey 07201 |
| | Telephone: (908) 965-0100 |
| | Email: |

| **With a copy to:** | Gibbons P.C. |
| | One Gateway Center |
| | Newark, NJ 07102 |
| | Attention: Karen A. Giannelli, Esq. |
| | Email: KGiannelli@gibbonslaw.com |
| | Telephone: (973) 596-4505 |
| | Email: KGiannelli@gibbonslaw.com |

11.2    **Brokerage**.  The parties acknowledge that no real estate agent, broker or company has been used in this transaction, other than Cushman & Wakefield (the "Authorized Broker"), and whose commission shall be paid by Seller at Closing.  Seller shall indemnify, hold harmless and defend Purchaser against any claim initiated by any agent, broker or real estate company, other than the Authorized Broker, contacted by or representing Seller for any real estate fee arising out of, related to, or involved in this transaction. Purchaser shall indemnify, hold harmless and defend Seller against any claims initiated by agent, broker or real estate company, other than the Broker, contacted by or representing Purchaser for any real estate fee arising out of, or in any way related to this transaction.  The provisions of this <u>Section 11.2</u> shall survive Closing hereunder or the termination of this Agreement.

11.3    **Title to Personal Property**. The Personal Property is included in this sale subject, however, to any title matters.  Purchaser acknowledges and agrees that other than expressly provided herein, Seller makes no representation in connection with such Personal Property and Seller expressly disclaims any implied warranties of merchantability or fitness for a particular purpose. Although no part of the Purchase Price has been allocated to Personal Property, Purchaser agrees to save, defend, indemnify and hold Seller harmless from and against any and all Claims and Damages arising out of or in connection with any sales or use taxes which may now or hereafter be imposed upon Seller or the Property with respect to the sale of such Personal Property.  The provisions of this <u>Section 11.3</u> shall survive Closing.

11.4    **Governing Law and Venue**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, however, as long

19

Final Execution Version
2730212.3 115719-100281

as Seller is subject to the jurisdiction of the Bankruptcy Court, the parties sole forum for adjudication of any disputes is the Bankruptcy Court.

11.5 **Waiver of Jury Trial**. To the maximum extent permitted by law, Purchaser and Seller knowingly, voluntarily, intentionally and irrevocably waives all rights to trial by jury in respect of any action, proceeding or counterclaim (whether based on contract, tort or otherwise) arising out of or related to any of the provisions of this Agreement, or any course of conduct, course of dealing, statements (whether oral or written), or actions of any party hereto or to any document pertaining to this Agreement or the transaction contemplated hereby. This provision is a material inducement of all parties entering into this Agreement. This Section 11.5 shall survive Closing and any termination of this Agreement.

11.6 **Entire Agreement**. This Agreement embodies the entire agreement between the parties relative to the subject matter hereof, and there are no oral or written agreements between the parties, nor any representations made by either party relative to the subject matter hereof, which are not expressly set forth herein.

11.7 **Amendment**. This Agreement may be amended only by a written instrument executed by the party or parties to be bound thereby.

11.8 **Headings**. The captions and headings used in this Agreement are for convenience only and do not in any way limit, amplify, or otherwise modify the provisions of this Agreement.

11.9 **Time of Essence**. TIME IS OF THE ESSENCE of all terms and provisions of this Agreement including all dates for notices to be provided hereunder, excluding (except as hereafter provided) the obligation to complete Closing hereunder. Notwithstanding the foregoing, if the time period for notice or the performance of any act called for under this Agreement expires on a Saturday, Sunday, or any other day in which either banking institutions in the State of New Jersey or the New York Stock Exchange are authorized or obligated by law or executive order to close, the deadline for notice or performance of the act in question shall be the next succeeding day that is not a Saturday, Sunday or holiday. If Closing is not completed on the Closing Date, subject to any extensions expressly provided in this Agreement, either party can make time of the essence for Closing by notice specifying a time of the essence Closing Date which notice shall be sent at least ten (10) business days in advance of the date specified therein; if Seller and Purchaser both send notices establishing a time of the essence Closing Date and the dates specified are not the same date, then the date first occurring shall control. The parties agree that ten (10) business days' notice shall be sufficient advance notice in all circumstances..

11.10 **Successors and Assigns; Assignment**. This Agreement shall bind and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns. Purchaser may assign this Agreement and all of the Purchaser's rights hereunder without the written consent of Seller (but on at least fifteen (15) days prior notice to Seller) to a person or an entity controlling, controlled by or under common control with Purchaser ("Permitted Assignee"). Purchaser shall deliver to Seller a true and complete copy of the assignment to the Permitted Assignee no later than seven

20

(7) business days prior to Closing; such assignment to contain a surviving representation and warranty from the assignee that it qualifies as the Permitted Assignee under this Agreement. Purchaser shall not otherwise assign this Agreement or Purchaser's rights under this Agreement without the prior written consent of Seller, which consent may be withheld for any reason whatsoever or for no reason in Seller's sole and absolute discretion. Upon any assignment, the assignor's liabilities and obligations hereunder or under any instruments, documents or agreements made pursuant thereto shall be binding upon such assignee, but the assignor shall not be relieved of its liability hereunder.

11.11    **Invalid Provision**. If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement.

11.12    **Attorneys' Fees**.  In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages, as provided herein, reasonable attorneys' fees incurred in such suit.

11.13    **Multiple Counterparts**. This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature. Executed copies hereof may be delivered by PDF or email, and, upon receipt, shall be deemed originals and binding upon the parties hereto.

11.14    **Exhibits**. The exhibits attached to this Agreement and referred to herein are hereby incorporated into this Agreement by this reference and made a part hereof for all purposes.

11.15    **Construction**. Seller and Purchaser acknowledge that each party and its counsel have reviewed and revised this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any amendments or exhibits hereto.

11.16    **No Recordation**. Purchaser acknowledges that neither this Agreement nor any memorandum or affidavit thereof shall be recorded of public record in the county in which the Property is located or any other county (except to the extent Seller must file or produce this Agreement to the Bankruptcy Court or in connection with the Bankruptcy Case). Should Purchaser ever record or attempt to record this Agreement, or a memorandum or affidavit thereof, or any other similar document, then, notwithstanding anything herein to the contrary, said recordation or attempt at recordation shall constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right

21

to terminate this Agreement by filing a notice of said termination in the county in which the Land is located. Purchaser shall indemnify, defend and hold harmless Seller from all Claims and Damages arising out of or in any manner related to breach of the foregoing covenant, which obligation shall survive termination of this Agreement.

11.17    **Merger Provision**. Any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

11.18    **Joint Preparation**. The preparation of this Agreement has been a joint effort of the parties and the resulting documents shall not, solely as a matter of judicial construction, be construed more severely against one of the parties than the other

11.19    **Damages.** In no event shall either party be liable for any loss of bargain, special, punitive, compensatory, consequential or speculative damages in connection with this Agreement.

11.20    **Limitation of Liability**. It is understood and agreed that none of the direct or indirect officers, members, partners, managers, investors, lenders, employees or principals of either party hereto shall have any personal liability or obligation whatsoever for any obligations under this Agreement, and the individual assets of such parties shall not be subject to any claims of any person relating to such obligations.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURES FOLLOW.]**

Final Execution Version
2730212.3 115719-100281

IN WITNESS WHEREOF, the parties hereto have executed this instrument as of the date and year first above written.

SELLER:

NEW ENGLAND MOTOR FREIGHT, INC.
Debtor in Possession

Date of Execution by Seller:

6/12/19

By: _____
Vincent Colistra
Chief Restructuring Officer

PURCHASER:

ATI CONTAINER SERVICES, LLC,
a Florida limited liability company

Date of Execution by Buyer:

_____

THE UNDERSIGNED ESCROW AGENT HEREBY ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT, AND AGREES TO HOLD AND DISPOSE OF THE EARNEST MONEY IN ACCORDANCE WITH THE PROVISIONS OF SECTION 10 OF THIS AGREEMENT. EXECUTED SOLELY FOR THE PURPOSE OF ACCEPTING THE ESCROW ON THE TERMS AND CONDITIONS SET FORTH IN SECTION 10 ABOVE OF THE FOREGOING AGREEMENT.

ESCROW AGENT:

Law Office of Joseph P. Castiglione, P.A.

By: _____

Printed name: Joseph P. Castiglione

Title: Escrow Agent / Attorney At Law

Date of Execution by Escrow Agent:

06/12/19

23

## EXHIBIT A

## LEGAL DESCRIPTION OF LAND

(11700 NW 36th Avenue, Miami, Florida 33167)

(see attached)

REC: 19265PG3137

# EXHIBIT "A"

Lot 30, THIRD ADDITION TO SEABOARD INDUSTRIAL
PARK, SECTION 1-A, according to the Plat recorded in Plat Book
96, Page 6, as recorded in the Public Records of Miami-Dade
County, Florida; said land situate, lying and being in Miami-Dade
County, Florida.

RECORDED IN OFFICIAL RECORDS BOOK
OF DADE COUNTY, FLORIDA.
RECORD VERIFIED
HARVEY RUVIN
CLERK CIRCUIT COURT

## **EXHIBIT B**

## **EXISTING LEASES**

Lease Extension and Access Agreement between
New England Motor Freight, Inc., as Landlord and
ATI Container Services, LLC, as Tenant, dated March 2019

## LEASE EXTENSION AND ACCESS AGREEMENT

**THIS LEASE EXTENSION AND ACCESS AGREEMENT** dated March \_\_\_, 2019 is between **NEW ENGLAND MOTOR FREIGHT, INC.**, debtor in possession, (hereinafter referred to as Landlord), with offices located at 1-71 North Avenue East, Elizabeth, New Jersey 07201 and **ATI CONTAINER SERVICES, LLC**, a Florida limited liability company, with offices located at 11700 N.W. 36th Avenue, Hialeah, Florida 33167, (hereinafter referred to as Tenant).

### WITNESSETH:

**WHEREAS**, Landlord and Tenant entered into a Lease Agreement in April, 2016 ("Lease Agreement") for the Premises located at 11700 NW 36th Avenue, Hialeah, County of Dade, State of Florida ("Leased Premises");

**WHEREAS** 11000 Holdings LLC, Marcela Hermo and Carlos Hermo, in consideration for Landlord entering into the Lease Agreement, provided Guarantees of Payment of all rent and additional rent in connection with the Lease Agreement (the "Guarantees of Payment");

**WHEREAS**, on February 11, 2019, Landlord filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. sec 101-1532 in the United States Bankruptcy Court for the District of New Jersey, in the case *In re: New England Motor Freight, Inc., et al.;*

**WHEREAS**, the Lease Agreement had a three-year term, which naturally expired February 28, 2019, and Tenant has failed to timely exercise its option to renew;

**WHEREAS** Landlord has not been, and is not currently, in default of its obligations under the Lease Agreement;

**WHEREAS**, the Leased Premises has been or shall be listed with a broker for sale; and

WHEREAS, Tenant has requested, and Landlord has agreed, subject to the terms and conditions below, to permit Tenant to continue its occupancy of the Leased Premises, on a month-to-month basis, subject to sale.

NOW, THEREFORE, in consideration of the mutual covenants and premises contained herein, along with such other good and valuable consideration, Landlord and Tenant agree as follows:

1.    Paragraph 1 of the Lease Agreement is modified and/or amended as follows: **TERM:** The term of Lease shall be on a month-to-month basis, having commenced March 1, 2019, whereby Landlord or Tenant may terminate Tenant's occupancy, upon thirty (30) days advanced written notice to the other ("Lease Extension").

2.    Paragraph 2 of the Lease Agreement is modified and/or amended as follows: **RENT:** The monthly base rent, commencing March 1, 2019, which does not include, among other things, sales/use tax and property taxes, all of which are continuing obligations of Tenant, shall be $14,478.64.

3.    Paragraph 21 of the Lease Agreement is modified and/or amended as follows: **NOTICES:** All notices to Landlord shall be addressed by overnight mail to Vincent Colistra, c/o New England Motor Freight, Inc., 1-71 North Avenue East, Elizabeth, New Jersey 07201, with a copy sent simultaneously by email at vcolistra@phoenixmanagment.com.

4.    Paragraph 36 of the Lease Agreement is modified and/or amended as follows: **EARLY TERMINATION:** Deleted.

5.    Paragraph 36 (sic) of the Lease Agreement is modified and/or amended as follows: **RIGHT OF FIRST REFUSAL:** Deleted.

6.    Paragraph 37 of the Lease Agreement is modified and/or amended as follows: **OPTION TO RENEW:** Deleted.

2

7.    Paragraph 38 of the Lease Agreement is modified and/or amended as follows:

**GUARANTY**: In consideration for this Lease Extension, the Guarantees of Payment remain in

full force and effect, and continue to guaranty the rent and additional rent of Tenant.

8.    By way of addition to the Lease Agreement: Tenant shall provide Landlord, its

agents, brokers, realtors, professionals, experts, and prospective purchasers, as well as their

representatives and agents, unfettered access to the Leased Premises during Tenant's occupancy,

at all times of day and night, irrespective of Tenant's operations, to enable Landlord to market

and sell the Leased Premises, which may include but is not limited to physical inspections both

of the improved and unimproved portions of the Leased Premises, video photography, still

photography, and environmental testing.

9.    All other terms, conditions and obligations of the Lease Agreement are ratified,

and shall remain in full force and effect during Tenant's occupancy of the Leased Premises.

**IN WITNESS WHEREOF** the parties have executed this Lease Extension and Access

Agreement the day and year first above written.

NEW ENGLAND MOTOR FREIGHT, INC.    ATI CONTAINER SERVICES, LLC
Landlord    Tenant

By: _____    By: _____
    Print Name:    Print Name: Marcela Hermo
    Title:    Title: Manager

As to Guaranty of Payment:

_____    _____
Marcela Hermo    Carlos Hermo

11000 Holdings, LLC

_____
Marcela Hermo

3

## EXHIBIT C

## TITLE EXCEPTIONS

**TITLE COMMITMENT ONCE OBTAINED SHALL BE EXHIBIT C**

## EXHIBIT D

## FORM OF FIRPTA AFFIDAVIT

TRANSFEROR'S CERTIFICATION OF NON-FOREIGN STATUS

To inform **ATI CONTAINER SERVICES, LLC** ("Transferee"), that withholding of tax under Section 1445 of the Internal Revenue Code of 1986, as amended (collectively, the "Code"), will not be a required transfer of certain real property to Transferee by New England Motor Freight, Inc., a debtor in possession, and a New Jersey corporation, the undersigned hereby certifies the following on behalf of Transferor:

1. Transferor is not a foreign person, foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Code and the Income Tax Regulations promulgated thereunder);

2. Transferor's U.S. taxpayer identification number is as follows:

3. Transferor's office address is as follows:

Transferor understands that this Certification may be disclosed to the Internal Revenue Service by Transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

Transferor understands that Transferee is relying on this Certification in determining whether withholding is required upon said transfer.

Under penalty of perjury I declare that I have examined this Certification and to the best of my knowledge and belief it is true, correct and complete, and I further declare that I have authority to sign this document on behalf of Transferor.

TRANSFEROR:                                        Date:_____, 2019

NEW ENGLAND MOTOR FREIGHT, INC.
Debtor in Possession

By:_____
Its:_____

2730212.3 115719-100281

## EXHIBIT E

### FORM OF TAXPAYER I.D. CERTIFICATE

### TAXPAYER IDENTIFICATION CERTIFICATE

In connection with certain Internal Revenue Service reporting requirements imposed upon Seller, Purchaser hereby certifies that listed below is Purchaser's address and taxpayer identification number, true and correct as of the Closing Date.

Address:

Taxpayer I.D. Number:    _____

## ASSIGNMENT AND ASSUMPTION OF
## PURCHASE AND SALE AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION OF PURCHASE AND SALE AGREEMENT (the "**Assignment**") is made and entered into as of June 25, 2019, by and between **ATI CONTAINER SERVICES, LLC**, a Florida limited liability company, (the "**Assignor**"), and **11700 HOLDINGS, LLC**, a Florida limited liability company, (the "**Assignee**"), both with their principal place of business at 11700 NW 36th Avenue, Miami, Florida 33167.

## INTRODUCTION

A.    Assignor, as Purchaser, entered into that certain Purchase and Sale Agreement (the "**Agreement**") dated June 12, 2019 with NEW ENGLAND MOTOR FREIGHT, INC., a New Jersey corporation, as Seller, ("**Seller**") wherein Seller agreed to sell to Assignor, and Assignor agreed to purchase from Seller, certain real property and improvements thereon with a street address of 11700 NW 36th Avenue, Miami, Florida 33167 (as more particularly described in the Agreement);

B.    Paragraph 11.10 of the Agreement provides for the assignment of Purchaser's rights under the Agreement to an entity controlling, controlled by or under common control with Purchaser without Seller's consent; and

C.    Assignor desires to assign all of its right, title and interest in, to and under the Agreement to Assignee, and Assignee desires to acquire all of Assignor's right, title and interest in, to and under the Agreement and to assume all of Assignor's obligations and duties under the Agreement.

NOW, THEREFORE, in consideration of One Dollar ($1.00), together with the promises and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee, effective as of the date hereof, agree as follows:

## AGREEMENT

1.    The foregoing recitals are incorporated herein by this reference. Capitalized terms used herein shall have the respective meaning ascribed thereto in the Agreement, unless otherwise defined herein.

2.    Assignor hereby assigns to Assignee all of Assignor's right, title and interest in, to and under the Agreement, and Assignee hereby accepts such assignment and assumes and agrees to perform all of Assignor's obligations thereunder and comply with the provisions thereof.

3.    Assignor represents and warrants to Seller that Assignee is owned and controlled by Claudia Marcela Hermo.

2736785.1 115719-100281

4. Notwithstanding the assignment hereunder, Assignor is not relieved of any of its obligations or liabilities hereunder or under the Agreement, and Assignor and Assignee shall be jointly and severally liable under this Assignment and the Agreement effective as of the date hereof.

5. This Assignment shall be binding upon and inure to the benefit of the Assignor and Assignee and their respective heirs, executors, administrators, successors and assigns.

6. Except to the extent modified herein, all of the terms and provisions of the Agreement shall remain in full force and effect, and, as modified hereby, all of the terms and provisions of the Agreement are hereby ratified and confirmed in all respects.

7. This Amendment may be executed in any one or more counterparts, delivery of which may be by facsimile transmission or electronic mail, each of which shall be an original and all of which when taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Assignor and Assignee have executed this Assignment as of the date first above written.

ASSIGNOR:                              ASSIGNEE:

ATI CONTAINER SERVICES, LLC            11700 HOLDINGS, LLC

By: _____           By: _____
Name: Claudia Marcela Hermo            Name: Claudia Marcela Hermo
Title: Manager                         Title: Manager

2

2736785.1 115719-100281