**GIBBONS P.C.**
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey  07102
Telephone:  (973) 596-4500
Facsimile:   (973) 596-0545
E-mail:  kgiannelli@gibbonslaw.com
            mconlan@gibbonslaw.com
            btheisen@gibbonslaw.com

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Joint Administration Requested)<br><br>**Hearing Date: September 5, 2019, at 10:00 a.m.** |

**DEBTORS' MOTION FOR ENTRY OF ORDER**
**(A) EXTENDING THE EXCLUSIVE  PERIODS WITHIN WHICH TO**
**FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCE THEREOF, AND**
**(B) FOR AUTHORIZATION TO FILE A COMBINED CHAPTER 11 PLAN OF**
**LIQUIDATION AND DISCLOSURE STATEMENT**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**")**,** by and through their undersigned counsel, file this motion (the "Motion") for entry of an order substantially in the form attached hereto (the "**Proposed Order**") (a) extending the exclusive periods during which only the Debtors may file a chapter 11 plan and solicit acceptances thereof

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 (the "**Bankruptcy Code**") and Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and (b) for authorization to file a combined plan of liquidation and disclosure statement. In support of this Motion, the Debtors respectfully state as follows:

## INTRODUCTION

Section 1121(b) of the Bankruptcy Code provides for an initial period of one hundred twenty (120) days after the commencement of a chapter 11 case during which the Debtors have the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**"). Furthermore, section 1121(c)(3) of the Bankruptcy Code provides that if the Debtors file a plan within the Exclusive Filing Period, the Debtors have an exclusive period of one hundred eighty (180) days from the commencement of the chapter 11 case to solicit acceptances of and confirm such a plan (the "**Exclusive Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive Periods**"). The initial Exclusive Filing Period in these cases ran through June 11, 2019, while the initial Exclusive Solicitation Period ran through August 10, 2019. On June 7, 2019, the Court entered an order [Dkt. No. 661] extending the Exclusive Periods for 90 days, respectively, such that the Exclusive Filing Period currently extends through and including September 9, 2019, and the Exclusive Solicitation Period currently extends through and including November 8, 2019. The order also granted co-exclusivity to the Official Committee of Unsecured Creditors.

Section 1121(d) of the Bankruptcy Code permits the Court to extend the Exclusive Periods "for cause." By this Motion, the Debtors request that (i) the Exclusive Filing Period be extended by an additional ninety (90) days, through and including December 9, 2019,[2] and (ii) the Exclusive Solicitation Period also be extended by an additional ninety (90) days, through and including

---

[2] The extended 90-day period actually expires on a Sunday, December 8, 2019.

2

February 6, 2020, pursuant to section 1121(d) of the Bankruptcy Code. For the reasons set forth herein, the Debtors submit that ample "cause" exists to grant such extensions.

Section 105 of the Bankruptcy Code expressly authorizes a court to "issue an order . . . that . . . provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan" where the court deems a combined hearing to be "appropriate to ensure that the case is handled expeditiously and economically." 11 U.S.C. § 105(d)(2)(B)(vi). By this Motion, the Debtors request entry of an order authorizing the Debtors to file a combined chapter 11 plan of liquidation and disclosure statement.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. §157(b)(2).

2. The statutory predicates in support of the relief requested are 11 U.S.C. §§ 105 and 1121(d), and Bankruptcy Rule 9006(b).

## BACKGROUND

3. On February 11, 2019 (the "**Petition Date**"), each of the above-captioned Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "**Bankruptcy Code**") with the intent to commence an orderly wind-down and liquidation of the majority of their assets and to conduct a 363 auction process for certain of their operations as a going concern under Chapter 11 (the "**Chapter 11 Cases**"). The Debtors continue in possession of their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party

has requested the appointment of a trustee or examiner.

4.  On February 21, 2019, Region 3 of the Office of the United States Trustee (the "**U.S. Trustee**") appointed a seven-member Official Committee of Unsecured Creditors (the "**Committee**").

5.  Debtor New England Motor Freight, Inc. ("**NEMF**") was founded in 1918 in Elizabeth, New Jersey and was a leading less than truckload ("**LTL**") carrier with a focus in the Mid-Atlantic, Midwest and Northeast United States. The other Debtors were also engaged in a broad range of transportation services, with annual gross revenues of approximately $370 million in recent years. The Debtors are headquartered at 1-71 North Avenue East, Elizabeth, NJ 07201-2859. Prior to the Petition Date, the Debtors operated from 36 leased trucking terminals located throughout the Mid-Atlantic, the Northeast and Midwest, and three additional leased locations in West Palm Beach, FL, New Brunswick, NY and Jordan, NY, used primarily for office, administrative staff and for the operations of Debtor, Eastern Freight Ways, Inc. ("**Eastern**").

6.  Additional information regarding the Debtors' business operations, their capital and debt structure and the events leading to the Chapter 11 Cases are set forth in the Declaration of Vincent Colistra in Support of Debtors' Chapter 11 Petitions and First Day Motions [Dkt. No. 22, the "**First Day Declaration**"].

7.  Shortly after the Petition Date, the Debtors terminated the vast majority of their 3,450 full and part-time employees, of which 1,900 were members of the International Association of Machinists and Aerospace Workers AFL-CIO (the "**Union**"). A robust severance and healthcare package for the terminated union employees, negotiated with the Union on the eve of the Chapter 11 filings and thereafter offered to all terminated non-union employees, was approved by the Court on March 1, 2019 [Dkt. No. 155]. This settlement was enhanced before being filed

with the Court by further negotiations with attorneys who filed a WARN Act Class Action Complaint shortly after the Petition Date. [*See* Adv. No. 19-1073].

8. On April 5, 2019, each of the Debtors filed their respective Schedules of Assets and Liabilities and Statement of Financial Affairs (collectively, the "**Schedules**").

9. On April 8, 2019, the Court entered an order authorizing the sale at auction of substantially all of Debtor NEMF's personal property assets, including over 1,000 semi-tractors and 4,000 trailers, pursuant to section 363 of the Bankruptcy Code [Dkt. No. 434] (the "**Truck Auction Sales**").

10. On April 16, 2019, the Court granted the Debtors' motion to reject 50 real property leases as of various lease surrender dates which conform to the Debtors' projected wind-down of operations and/or auction sales at such locations [Dkt. Nos. 472, 478].

11. On May 1, 2019, the Court entered an order establishing June 18, 2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for creditors to submit general unsecured claims against the Debtors [Dkt. No. 519].

12. On May 16, 2019, the Court entered an order authorizing the going concern sale of Eastern and Carrier pursuant to section 363 of the Bankruptcy Code [Dkt No. 583] (the "**Going Concern Sale**") to Estes Express Lines. The Going Concern Sale closed on May 31, 2019. On July 26, 2018, the Court entered an order authorizing the sale of the Debtors' only real property, a trucking terminal located in Miami, Florida. [Dkt. No. 761].

13. On June 7, 2019, the Court entered an order [D.I. 661] extending the Exclusive Periods for 90 days, respectively, such that the Exclusive Filing Period currently extends through and including September 9, 2019, and the Exclusive Solicitation Period currently extends through and including November 8, 2019. In that order, the Court also granted the Committee the co-

5

exclusive right with the Debtors to file a plan of liquidation, solicit acceptances thereto and seek confirmation thereof, but directed that during the Exclusive Periods such plan may only be filed by the Committee jointly with the Debtors.

14. The Truck Auction Sales commenced on May 30, 2019 and the last auction was held on July 12, 2019.

15. As of the date of this Motion, substantially all of the Debtors assets have been liquidated.[3]

16. The Debtors and the Committee intend to file a joint chapter 11 plan by September 9, 2019; however, out of an abundance of caution and because the plan may require one or more amendments due to the ongoing liquidation process, the Debtors have filed this Motion seeking a second extension of the Exclusive Periods. In the event a joint plan is not filed by September 9, 2019, the Committee reserves the right to seek revocation of the Proposed Order granting the Motion.

## RELIEF REQUESTED

17. By this Motion, the Debtors request the Court enter the Proposed Order, pursuant to sections 105 and 1121(d) of the Bankruptcy Code and Bankruptcy Rule 9006(d), extending (i) the Exclusive Filing Period by ninety (90) days, through and including December 9, 2019;[4] (ii) the Exclusive Solicitation Period by ninety (90) days, through and including February 6, 2020; and (iii) for authorization to file a combined plan of liquidation and disclosure statement.

18. The Debtors further request that entry of the Proposed Order be without prejudice to the Debtors' rights to seek additional extensions of the Exclusive Periods and the Committee's

---

[3] The only material asset remaining to be liquidated is a promissory note related to certain life insurance policies on one of the Debtors' owners. The Debtors are continuing to explore and analyze options to market and sell this asset.

[4] The extended 90 day period actually expires on a Sunday, December 8, 2019.

right to object to same.

## BASIS FOR RELIEF REQUESTED

### I. EXTENSION OF EXCLUSIVE PERIOD

19. The exclusive periods under section 1121(b) and (c) of the Bankruptcy Code are intended to afford the Debtors a full and fair opportunity to formulate and propose a chapter 11 plan and to solicit acceptances thereof without the disruption that might be caused by the filing of competing chapter 11 plans by non-Debtor parties. To this end, where the exclusive periods prove to be unfeasible timeframes, section 1121(d)(1) of the Bankruptcy Code allows the Court to extend such exclusive periods for "cause."

20. Specifically, section 1121(d) of the Bankruptcy Code and Bankruptcy Rule 9006(b) provide, on request of the Debtors, this Court may extend, for cause, the Exclusivity Periods. Although the Bankruptcy Code does not define "cause" for an extension, courts have looked to the legislative history of § 1121(d) for guidance. *See In re Gibson & Cushman Dredging Corp.,* 101 B.R. 405, 409 (E.D.N.Y. 1989); *see also In re Amko Plastics, Inc.,* 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). In so doing, courts have observed that the purpose of the Exclusive Periods:

> [I]s to make a chapter 11 filing attractive enough to encourage ailing businesses to seek reorganization without unduly delaying creditors. If the chapter 11 provisions did not enable the debtor to remain in control for at least some period of time, debtors would likely avoid the provisions of chapter 11 reorganization until it would no longer be an effective remedy.

*Matter of Newark Airport/Hotel Ltd. P'ship*, 156 B.R. 444, 451 (Bankr. D.N.J. 1993) (citations omitted), *aff'd sub nom.*, *FGH Realty Credit Corp. v. Newark Airport/Hotel Ltd. P'ship*, 155 B.R. 93 (D.N.J. 1993); *In re Burns & Roe Enters., Inc.*, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) ("[T]he point of exclusivity is to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated."); *In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) (noting that section 1121(d) of the Bankruptcy Code

"grants great latitude to the Bankruptcy Judge in deciding, on a case-specific basis, whether to modify the exclusivity period on a showing of 'cause.'"); *Geriatrics Nursing Home, Inc. v. First Fidelity Bank, N.A.*, 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to negotiate its plan unimpaired by completion . . . is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business.").

21. Furthermore, Congress did not intend that the Exclusive Periods be a hard and fast rule; rather, Congress intended that the Exclusive Periods be of adequate length, given the circumstances, for the debtor to formulate, negotiate and draft a consensual plan without the dislocation and disruption to the business that would occur with the filing of competing plans of reorganization. Congress recognized that often 120-day exclusivity period will not afford a debtor sufficient time to formulate and negotiate a plan:

> The court is given the power, though, to increase … the 120-day period depending on the circumstances of the case. For example, if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement.

22. H.R. Rep. No. 95-595, at 232 (1977) (footnotes omitted). Indeed, Congress intended courts to have flexibility in dealing with extensions of exclusivity. *See In re Amko Plastics*, 197 B.R. at 77. "The hallmark of … [section 1121(d)] is flexibility." *In re Perkins*, 71 B.R. 294, 297 (W.D. Tenn. 1987).

23. In considering requests for extension, bankruptcy courts have identified the following factors, among others, as relevant in determining whether cause exists to extend the exclusive periods set forth in section 1121: (a) the size and complexity of the case; (b) the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (c) the existence of good faith progress towards reorganization; (d) whether the debtor

is generally making required post-petition payments as they become due and is effectively managing its business and preserving the value of its assets; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiations with its creditors; (g) the amount of time that has elapsed in the case; (h) whether the debtor is seeking an extension of exclusivity to pressure creditors into accepting a plan that they find unacceptable; and (i) whether an unresolved contingency exists. *See Cont'l Cas. Co. v. Burns & Roe Enters., Inc.*, 2005 U.S. Dist. LEXIS 26247, at *11-12 (D.N.J. 2005)*; In re Cent. Jersey Airport Servs.*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002). Not all of the above factors are necessary and relevant in determining whether to grant an extension of the exclusivity periods. *See e.g. In re Express One Int'l Inc.*, 194 B.R. 98,100-101 (Bankr. E.D. Tex. 1996) (identifying only four of the factors as relevant in determining whether cause exists to support an extension); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C 1986) (holding that cause existed to extend exclusivity based on only three factors).

24.     Courts in this and other circuits routinely grant debtors' requests for extensions of the exclusive periods, including in Chapter 11 liquidation cases. *See, e.g., In re Dots, LLC*, No. 14-11016 (Bankr. D.N.J. May 13, 2014) (granting debtors' first 120-day extension of exclusivity periods); *In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2012 WL 5376862 (Bankr. D. Del. Oct. 30, 2012) (extending exclusivity in chapter 11 liquidation case); *In re Borders Grp., Inc.*, 460 B.R. 818, 824 (Bankr. S.D.N.Y. 2011) (extending exclusive periods for 120 days and rejecting creditors' committee argument that extension was not warranted because debtors were seeking to sell substantially all of their assets and liquidate); *In re Great Atl. & Pac. Tea Co.*, No. 10-24549 (Bankr. S.D.N.Y. Mar. 10, 2011) (granting initial extension of approximately 140 days); *In re S-*

9

*Tran Holdings, Inc.*, No. 05-11391 (Bankr. D. Del. Mar. 3, 2008) (extending exclusivity filing and solicitation periods in chapter 11 liquidation case).

25. As explained below, the application of the above factors to the facts and circumstances of the Chapter 11 Cases demonstrates that sufficient cause exists to extend the Debtors' Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

### A. The Size and Complexity of the Case

26. These Chapter 11 Cases involve eleven Debtor entities with thousands of former employees, approximately $126 million in debt obligations as of the Petition Date, and a number of operational intricacies. Accordingly, the size and complexity of the Chapter 11 Cases weighs in favor of extending the Exclusive Periods.

### B. Necessity of Sufficient Time to Formulate a Plan

27. The Debtors have been under the protection of Chapter 11 for approximately 6 months, and during this relatively short period of time have made significant and material progress in administering the orderly wind-down and liquidation of their business. The Debtors require additional time to complete the liquidation of the remaining assets, to continue ongoing plan discussions with their creditors, and to formulate the terms of a chapter 11 plan of orderly liquidation and distribution of the proceeds of the Debtors' assets to creditors in accordance with the Bankruptcy Code's priority scheme. The requested extensions will provide the Debtors with a full and fair opportunity to resolve open case issues, including the formulation of a protocol to address hundreds of pre- and post-petition tort claims related to the Debtors' trucking operations through a litigation trust, together with the affected claimants and insurers. Additionally, the Debtors need time to address the alleged cross-collateralization claims of certain of their ten (10) equipment lenders, as well as other competing claims to the proceeds of the Debtors' assets.

2745104.2 115719-100281

Accordingly, the Debtors submit that this factor weighs in favor of the requested extension of the Exclusive Periods.

### C. Debtors Have Shown Good Faith Progress in these Chapter 11 Cases

28. The Debtors have made significant progress in liquidating their assets in an orderly fashion in order to maximize their value, including, but not limited to, through the heavily litigated and negotiated Truck Auction Sales of substantially all of NEMF's personal property assets, free and clear of liens, claims and encumbrances (including over 1,000 semi-tractors and over 4,000 trailers) (*see* Dkt. No. 434), as well as the negotiation of the Going Concern Sale of Debtors Eastern and Carrier (*see* Dkt. No. 583). The Debtors are continuing to evaluate their remaining estate assets and liabilities. For example, the Debtors recently retained Deloitte to perform an actuarial valuation of the Debtors' administrative health care liabilities. As such, the Debtors firmly believe that extending the Exclusive Periods will permit them to address the remaining issues arising from the wind-down of the Debtors' extensive business operations in a rational and thoughtful fashion in order to formulate the most cost-effective procedures to be implemented under a Chapter 11 liquidation plan. Therefore, extending the Exclusive Periods will allow the Debtors to maximize value for all parties-in-interest in the Chapter 11 Cases, as well as to assemble the necessary information to formulate and file a Chapter 11 Plan and Disclosure Statement as required by the Bankruptcy Code.

### D. The Debtors Are Meeting Their Post-Petition Obligations

29. The Debtors are using their best efforts to remain current with respect to ordinary course post-petition payments, are complying with all of their post-petition reporting requirements, and are otherwise responsibly administering their businesses and the Chapter 11 Cases for the benefit of all creditors.

### **E. Exclusivity is not Being Used to Pressure Creditors**

30. The Debtors are not seeking to use exclusivity to pressure creditors into accepting a plan they find unacceptable or as a delay tactic. This Motion is the Debtors' second request for an extension of the Exclusive Periods. The Debtors are currently working with the Committee to formulate a joint plan of liquidation that is acceptable to the major constituencies remaining in these Chapter 11 Cases, and this request will not unfairly prejudice or pressure the Debtors' creditors or grant the Debtors any unfair bargaining leverage. Indeed, these complex Chapter 11 Cases have been pending for only six months and, therefore, the Debtors legitimately require additional time to formulate and negotiate a chapter 11 plan. On August 8, 2019, the Debtors held a "summit" meeting with all of their bank lenders and the Committee concerning the major outstanding issues in these cases; the purpose of the meeting was to foster cooperation towards the consensual formulation of a plan. An extension of the Exclusive Periods will allow this process to proceed in an orderly and efficient manner.

31. Throughout the Chapter 11 process, the Debtors have endeavored to establish and maintain a cooperative working relationship with, *inter alia*, the U.S. Trustee, the Committee, their secured lenders and certain tort claimants, and believe those relationship will continue during the extensions requested herein. Importantly, the Debtors are not seeking an extension to delay administration of these Chapter 11 Cases or to exert pressure on their creditors, but rather to resolve issues related to their proposed Chapter 11 plan and to continue an orderly, efficient and cost-effective Chapter 11 liquidation process. Accordingly, the Debtors believe that the requested extensions are warranted and appropriate under the circumstances.

**F.    Additional Factors Exist to Support an Extension of the Exclusive Periods.**

32.    In addition to the factors discussed above, termination of the Exclusive Periods would adversely impact the Debtors' progress in the Chapter 11 Cases as any party in interest would then be free to propose a plan for the Debtors and solicit acceptances thereof, which would foster chaos and unduly complicate these Chapter 11 Cases.  Such a scenario, however unlikely, would also add to the administrative expenses and adversely impact the substantial progress made by the Debtors in the Chapter 11 Cases to date, without any corresponding benefit to the Debtors' estates and creditors.

33.    Accordingly, based on the foregoing, the Debtors respectfully submit that cause exists, pursuant to section 1121(d) of the Bankruptcy Code, for the Court to extend the Exclusive Filing Period through September 9, 2019, and the Exclusive Solicitation Period through November 8, 2019.

**II.    COMBINED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT**

34.    Pursuant to Section 105 of the Bankruptcy Code, a court may "issue an order . . . that . . . provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan" where the court deems a combined hearing to be "appropriate to ensure that the case is handled expeditiously and economically."  11 U.S.C. § 105(d)(2)(B)(vi).

35.    Pursuant to this authority, courts in this district have combined hearings on approval of disclosure statements and confirmation of plans in chapter 11 cases. See *In re EOGH Liquidation, Inc., f/k/a/ East Orange General Hospital, Inc., et al.,* Case No. 15-31232-VFP (Bank. D. N.J. Jul. 13, 2016); *In re North Jersey Community Coordinated Child Care Agency, Inc.*, Case No. 14-20256 (VFP) (Bankr. D.N.J. Sept. 11, 2015); *In re RIH Acquisitions, LLC, et al.*, Case No.

13

13-33485 (GMB) (Bankr. D.N.J. Mar. 10, 2014); *In re Elecs. Expo, LLC*, Case No. 13-16921 (NLW) (Bankr. D.N.J. Jun. 19, 2013); *In re N. Country BBQ Ventures, Inc., et al.*, Case No. 09-44194 (MS) (Bankr. D.N.J. Apr. 5, 2010); *In re Universal Auto. Indus., Inc., et al.*, Case No. 05-27778 (MS) (Bankr. D.N.J. Jul. 28, 2005); *In re Immedica, Inc.*, Case No. 03-11390 (MS) (Bankr. D.N.J. Sep. 26, 2003).

36. The Committee and Debtors are working, in consultation with the Debtors' pre-petition lenders on a combined plan of liquidation and disclosure statement.

37. A combined hearing will streamline and expedite the confirmation process by reducing the administrative expenses associated with a two-stage process, thereby benefiting the Debtors' estates and creditors.

38. In addition, creditors will not be prejudiced by a combined hearing on final approval of the disclosure statement and confirmation of the plan because (i) the disclosure statement will first be submitted for conditional approval, and (ii) notice of any combined hearing and the notice provided in the disclosure statement are will be designed to provide "adequate information" within the meaning of Section 1125 of the Bankruptcy Code, under the circumstances of these Chapter 11 Cases. In other words, the same standard for approval of the disclosure statement will apply whether it is stand-alone, or combined with the plan.

39. Here, the Debtors are no longer operating as going concerns, as substantially all of the Debtors' assets have been sold, as described above.

40. Under these circumstances, the Debtors submit that a combined plan and disclosure statement will also benefit the Debtors' estates and creditors by minimizing ongoing professional fees and other administrative costs, while expediting confirmation of the plan.

41. Accordingly, based on the foregoing, the Debtors respectfully submit that approval

of the filing of a combined plan and disclosure statement is "appropriate to ensure that the Chapter 11 Cases are handled expeditiously and economically."

## WAIVER OF MEMORANDUM OF LAW

42. Because the legal bases upon which the Debtors rely is incorporated herein and the Motion does not raise any novel issues of law, the Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 90131(a)(3).

## NO PRIOR REQUEST

43. Other than the first motion [Dkt. No. 591] to extend the Exclusive Periods through September 9 and December 8, 2019, respectively, no previous request for the relief sought herein has been made to this or to any other court.

## CONCLUSION

**WHEREFORE,** for the reasons stated herein, the Debtors respectfully request that this Court enter the Proposed Order, granting the relief requested in the Motion, without prejudice to seeking further extensions in the event further cause exist, and granting any other and further relief that the Court may deem just and proper.

Dated: August 14, 2019
Newark, New Jersey

Respectfully submitted,

**GIBBONS P.C.**

By: /s/ *Karen A. Giannelli*
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
E-mail: kgiannelli@gibbonslaw.com
mconlan@gibbonslaw.com
btheisen@gibbonslaw.com
*Counsel to the Debtors and Debtors-in-Possession*

15