David V. Fontana, Esquire
Lisa Bittle Tancredi, Esquire (*pro hac vice*)
Keith M. Lusby, Esquire (*pro hac vice*)
GEBHARDT & SMITH LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
E-mail:  dfont@gebsmith.com
Tel: 410-385-5053
*Counsel for T.D. Bank, N.A.*

Norman N. Kinel, Esquire
SQUIRE PATTON BOGGS (US) LLP
30 Rockefeller Plaza, 23rd Floor
New York, NY 10112
Email: norman.kinel@squirepb.com
Tel:  212 872-9800
*Counsel to East West Bank*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW ENGLAND MOTOR FREIGHT, INC., *et al.*, | Case No. 19-12809 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**OBJECTION OF T.D. BANK, N.A. AND EAST WEST BANK TO**
**EXTENSION OF EXCLUSIVE PERIODS FOR FILING A PLAN**
**AND SOLICITING ACCEPTANCES THEREOF**

T.D. Bank, N.A. ("TD") and East West Bank ("EWB"), by their undersigned counsel,

hereby submit their objection to any the further extension of any exclusive, or "co-exclusive"

---

[1] The debtors in these chapter 11 cases (collectively, the "Debtors") and the last four digits of each Debtor's taxpayer identification number are as follows:  New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

periods to file a plan and solicit acceptances thereof.  In support of their objection, TD and EWB

respectfully state as follow:

**I.**

**PRELIMINARY STATEMENT[2]**

Since the filing of the Debtors' voluntary petitions, the sole purpose of these Cases was the

liquidation of the Debtors' assets.  NEMF's fleet of rolling stock was consolidated and moved to

various locations and sold at auction.   Unfortunately, the sales of encumbered rolling stock

generally resulted in sale proceeds **below the low estimate** provided by the auctioneer retained by

the Debtors.  Eastern and Carrier's assets (and the balance of NEMF's rolling stock) were sold as

going concerns and the Debtors are no longer operating.  The liquidation of the Debtors' assets

has resulted in multiple millions of dollars of unsecured deficiency claims for the Lenders and

enormous administrative expenses incurred by the professionals retained by the Debtors and the

Committee.  Inexplicably, although the filing of a liquidating chapter 11 plan in the Cases should

not have been difficult given the lack of any unusual complexity, to date, nearly eight (8) months

after the Cases were filed, **no plan of liquidation has been filed**.

For nearly four months now, the Debtors and the Committee have enjoyed a Court-ordered

"co-exclusive" right to file a chapter 11 plan and solicit acceptances thereof.  Those orders took

away the Debtors' right to be the sole proponents of a plan and instead restricted the Debtors to

filing a joint plan with the Committee.  That path became nothing more than an expensive path to

nowhere and must come to an end.

---

[2] Capitalized terms used in this preliminary statement which are undefined shall have the meanings ascribed to them below.

*First*, the Bankruptcy Code does not provide for "co-exclusivity." Accordingly, eliminating the Debtors' sole right to propose a plan effectuated a termination of the exclusive periods of Section 1121 that cannot be reinstated under applicable case law.

*Second*, "cause" clearly does not exist to further extend the "co-exclusive" periods (or the Debtors' exclusive period, if it had not been bargained away). **"Co-exclusivity" has in fact impeded progress towards a confirmable plan** and is contrary to the Bankruptcy Code's underlying principles of fairness to all creditors. Accordingly, it is respectfully submitted that the Court should decline to further extend the "co-exclusive" periods.

*Finally*, those parties in interest who have been actively involved in the Cases long-ago recognized that they have been and continue to be run in what can only be described in a dysfunctional and highly **cost-inefficient manner**. Behind the scenes, the Debtors and the Committee have been at odds on nearly all issues in these simple cases. Stated simply, they do not communicate or get along. As such, absent an immediate, yet unlikely "sea change" in the path on which the Cases are presently—with all of the attendant wasted time and expense—it appears that the best path forward for the Cases would be to convert them to chapter 7.

## II.

### JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are Sections 105(a) and 1121 of the Bankruptcy Code.

# III.

# BACKGROUND

2.     On February 11, 2019 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Cases").  The Debtors are managing their remaining assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Cases.

3.     Effective February 21, 2019, Region 3 of the Office of the United States Trustee appointed a five-member Official Committee of Unsecured Creditors (the "Committee").

### a.    The Debtors Have Liquidated Nearly All Of Their Assets

4.     The Debtors have completed the liquidation of nearly all their assets, with the exception of an asset related to a life insurance policy.  The liquidation efforts resulted in two buckets of funds—(1) proceeds of the sale of the assets of New England Motor Freight, Inc. ("NEMF"), and (2) proceeds of the sale of Eastern Freight Ways, Inc. ("Eastern") and Carrier Industries, Inc. ("Carrier") as going concerns.  The sale of the Eastern and Carrier businesses closed on May 31, 2019, over four months ago.  NEMF's personal property, including rolling stock, was sold at a series of public auctions that ended on or about July 23, 2019, more than two months ago.  NEMF sold its only owned real property, located in Miami, Florida, by order entered on July 26, 2019, more than two months ago.  *See* Dkt. No. 761.  The Debtors have also liquidated nearly all of their accounts receivable and rejected their numerous real property leases.

### b.    The Lenders Are The Largest Constituency of Unsecured Creditors

5.     TD and EWB are two of ten lenders who, prior to the Petition Date, provided various letter of credit and equipment loan facilities to the Debtors (collectively, the "Lenders").

6.      From the outset of these cases, it was obvious that the Lenders would ultimately be the largest unsecured creditors in the Cases, once their collateral was liquidated and the proceeds of sale were applied to their undersecured claims.

7.      The Lenders' aggregate deficiency claims on account of the equipment loans and letters of credit exceed approximately **$55 million**.[3] Of the Lenders, TD and EWB hold the largest unsecured deficiency claims, aggregating approximately $17.6 million (at least approximately $8.8 for TD and approximately $8.8 million for EWB).

**c.      The Committee Is Not Fairly Representative Of Creditors**

8.      To understand the dynamics of these bankruptcy Cases, it is important to know some facts about the Committee. Of the five creditors on the Committee, four of them are NEMF trade creditors. The fifth member of the Committee is a pension fund. The Committee members hold, collectively, unsecured claims in the approximate amount of only $4 million. While some Lenders had requested that they be appointed to the Committee at the Committee's formation meeting, the Office of the United States Trustee did not appoint any Lenders to the Committee, notwithstanding that it was clear from the outset of the Cases that all of the Lenders were likely undersecured creditors.

9.      Importantly, upon information and belief, not a single member of the Committee is a creditor of the Eastern or Carrier estates. While the members of the Committee owe fiduciary duties to the unsecured creditors of all of the Debtors, it has become clear to TD and EWB that the creditors of the Eastern and Carrier estates have no effective representation on the Committee.

---

[3] Upon information and belief the aggregate deficiency claims of the Lenders on their equipment loans is approximately $33 million and the aggregate deficiency claims related to letters of credit issued by certain of the Lenders for the benefit of the Debtors is approximately $22 million. These estimates are provided without prejudice to any Lenders' individual claims, the sum of which may exceed $55 million. Based on this estimate, **TD and EWB combined hold approximately 32% of the outstanding Lender unsecured debt in these cases**.

This is significant, because the NEMF estate and the Eastern/Carrier estates have distinct, non-identical sets of assets and creditors and their estates are not, nor should they be substantively consolidated.

      **d.**      **The Debtors Do Not Currently Have The Exclusive Right To File A Plan**

      10.      The original exclusive period during which only the Debtors could file a chapter 11 plan ended on June 11, 2019. The Debtors sought their first extension of their exclusive periods for filing a plan (the "<u>Filing Period</u>") and soliciting acceptances thereof (the "<u>Solicitation Period</u>") by motion on May 17, 2019. *See* Dkt. 591. The order entered by the Court, however, was not the one attached to the motion and in fact, **did not extend the Debtors' exclusive right to file a plan**. Instead, the order, entered on June 7, 2019, granted a so-called "co-exclusive right" to the Debtors and the Committee, such that the only plan that could be filed would be a plan filed jointly by the Debtors and the Committee. *See* Dkt 661. The first "co-exclusive" Filing Period expired on September 9, 2019. *Id.*

      11.      The Debtors filed a second motion to extend the exclusive periods (the "<u>Second Exclusivity Motion</u>") on August 14, 2019, noting in the motion that "substantially all of the Debtors' assets have been liquidated." *See* Dkt. No. 788. The Second Exclusivity Motion was granted by "Interim Order" and without a hearing on September 9, 2019, extending the co-exclusive Filing Period to September 19, 2019 and the co-exclusive Solicitation Period through November 18, 2019. See Dkt. No. 886. The "co-exclusive" periods were further extended, again without a hearing, pursuant to a "Second Interim Order," dated September 19, 2019, which extended the co-exclusive Filing Period through October 8, 2019 and the co-exclusive Solicitation Period through December 9, 2019. *See* Dkt. No. 886. **Notwithstanding these multiple**

extensions of the Co-Exclusive Filing Period and the fact that nearly all of the Debtors assets

were liquidated months ago, to date, <u>no plan has been filed in these cases</u>.

 e. <u>The Extraordinary Amount Of Professional Fees Incurred In the Cases</u>

12. The Debtors employ three (3) law firms, a financial advisory firm and a Chief

Restructuring Officer.  The Committee employs two (2) law firms and a financial advisory firm.

Through August, **these firms have collectively accrued fees and expenses <u>in excess of $8</u>**

**<u>million</u>**, of which approximately $2 million remains unpaid.[4]  For purposes of comparison, the

estates have been reduced to cash aggregating approximately $14.8 million as of September 22,

2019 (before accounting for the unpaid professional fees and those fees and expenses that have not

yet even been disclosed).  This amount, an unliquidated insurance policy and some potential

preference and insider claims, is all that remains to pay creditors.

13. Liquidation of the Debtors' estates in bankruptcy necessarily came at a cost, but

there can be no disputing that **the cost was extraordinarily and disproportionally steep**.[5]  Now

that the liquidation is long-completed, it is essential that all parties and the Court take stock and

determine the most efficient and cost-effective way to complete the administration of these cases.

---

[4] It should be noted that although these cases were liquidating chapter 11 cases from the outset, the Committee's retained professionals have, through August, incurred nearly 50% of the fees of the Debtors' retained professionals. TD and EWB believe that this ratio of professionals fees for the professionals retained by the Debtors and the Committee is highly unusual and that, upon information and belief, it is far more typical for a committee's professionals to incur less than 25% of the fees of the Debtors' professionals, even in highly complex and contentious cases.  These cases were neither highly complex nor were they unusually contentious (insofar as matters before the court which required the Committee's involvement), making it clear (at least to TD and EWB) that the Committee's professionals were undisciplined and duplicated effort throughout the Cases and that their fees should be substantially reduced, with respect to which TD and EWB reserve all rights.  TD and EWB also believe that the fees for the professionals retained by the Debtors must also be reduced due to, among other things, inefficiency and disarray, in large part stemming from their inability to work constructively with the Committee's professionals or proactively engaging with the Lenders.  Further detail with regard to professional fees in the Cases will be presented to the Court at the appropriate time.

[5] TD and EWB reserve all of their rights with respect to the fee applications filed by the various professionals.

f. **There Is Cash To Be Distributed, and Delay Negatively Affects Creditors**

14.    Creditors could put to good use their respective distributive portions of the $14.8

million that is currently sitting in the bank.  All creditors have suffered losses from their dealings

with these Debtors.  Each day of delay in administering these cases, and the resultant delay of

distributions, exacerbates their losses.  At a minimum, creditors such as the Lenders are losing the

time value of their distributions.  Other creditors may be facing liquidity shortages of their own.

It is clearly of paramount interest to creditors that distributions be made as promptly as possible.

# IV.

# LEGAL STANDARDS

a. **The Purpose Of The Exclusive Periods**

15.    Under the former Bankruptcy Act, only Chapter XI debtors could file a plan.

Creditors could not file a competing plan and had few remedies other than to move to convert the

case.  Congress recognized that this was undesirable when it enacted the Bankruptcy Code, and

the legislative history observes:

> By contrast, Chapter XI gives the debtor the exclusive right to propose a plan.
> Creditors are excluded.  The exclusive right gives the debtor undue bargaining
> leverage, because by delay he can force a settlement out of otherwise unwilling
> creditors, and they have little recourse except to move for the conversion of the case
> to Chapter X.  That is contrary to their interest as it is to the debtor's, and thus it is
> rarely done.  The debtor is in full control, often to the unfair disadvantage of
> creditors.
>
> Proposed Chapter 11 recognizes the need for the debtor to remain in control to some
> degree, or else debtors will avoid the reorganization provisions in the bill until it
> would be too late for them to be an effective remedy.  At the same time, the bill
> recognizes the legitimate interests of creditors, whose money is in the enterprise as
> much as the debtor's, to have a say in the future of the company.  The bill gives the
> debtor an exclusive right to propose a plan for 120 days.  In most cases, 120 days
> will give the debtor adequate time to negotiate a settlement, without unduly
> delaying creditors.  The court is given the power, though, to increase or reduce the
> 120-day period depending on the circumstances of the case.  For example, if an
> unusually large company were to seek reorganization under Chapter 11, the court

8

would probably need to extend the time in order to allow the debtor to reach an agreement.  If, on the other hand, a debtor delayed in arriving at an agreement, the court could shorten the period and permit creditors to formulate and propose a reorganization plan.  Again, the bill allows the flexibility for individual cases that is unavailable today.

H.R. REP. 95-595, 231-32, 1978 U.S.C.C.A.N. 5963, 6191.

16.     Thus, Section 1121 of the Bankruptcy Code was enacted to afford a debtor a finite, exclusive period to file a plan of reorganization and obtain acceptances of it, of 120 and 180 days after the petition date, respectively.  11 U.S.C. §1121(b).  The stated legislative purpose of exclusivity is "to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated."  H.R. REP. 103-835, 36, 1994 U.S.C.C.A.N. 3340, 3344.

### b.    Only The Debtor Is Entitled To The Benefit Of The Exclusive Periods

17.     Only a debtor is entitled to an exclusive period to file a plan and solicit acceptances under the plain language of the Bankruptcy Code.  Unlike numerous other sections of the Bankruptcy Code that use "debtor" and "trustee" interchangeably, Section 1121 specifies that it is the **debtor** that has the benefit of an exclusive period.  *See* Section 1121(b) ("only the *debtor* may file a plan until 120 days after the date of the order for relief…") (emphasis added); Section 1121(c) (opening the field to any party in interest only if a trustee is appointed or "the *debtor* has not filed a plan before 120 days after the date of the order for relief…" and "the *debtor* has not filed a plan that has been accepted, before 180 days after the date of the order for relief…") (emphasis added). Any party in interest may move to extend the exclusive periods, but if the request is granted, the exclusive period continues to remain the exclusive right **of the debtor**.

18.     There is no provision in the Bankruptcy Code, nor does binding precedent support the concept of "co-exclusivity."

c.      **The Standard For Extension of the Exclusive Periods**

19.     The exclusive periods may be extended for "cause."  11 U.S.C §1121(d)(1).  The

"cause" necessary to extend the exclusive periods is not defined by the Bankruptcy Code, and the

United States Court of Appeals for the Third Circuit has not yet addressed the issue of what

constitutes "cause" in a reported opinion.  However, lower courts generally consider the following

nine factors in assessing the existence of "cause":

> (a) the size and complexity of the case;
>
> (b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
>
> (c) the existence of good faith progress toward reorganization;
>
> (d) the fact that the debtor is paying its bills as they become due;
>
> (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;
>
> (f) whether the debtor has made progress in negotiations with its creditors;
>
> (g) the amount of time which has elapsed in the case;
>
> (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
>
> (i) whether an unresolved contingency exists.

*In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (footnote omitted)

and cases cited therein; *see also, e.g.*, *In re R.G. Pharmacy, Inc.*, 374 B.R. 484 (Bankr. D. Conn.

2007); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002).

20.     While these factors provide guidance as to whether "cause" exists, the gravamen of

the inquiry is whether terminating exclusivity would move the case forward materially, to a degree

that would not otherwise be the case.  *In re Adelphia Commc'ns Corp.,* 352 B.R. at 590 ("I agree

that the case law factors might not, in every case, by themselves be determinative. . . . I'd say that

the test is better expressed as determining whether terminating exclusivity would move the case forward materially, to a degree that wouldn't otherwise be the case." (footnotes omitted)).  In contrast, "undue extension can result in excessively prolonged and costly delay, to the detriment of the creditors."  H.R. REP. 103-835, 36, 1994 U.S.C.C.A.N. 3340, 3344.

21.    The party seeking the extension bears the burden of proof on the issue of whether "cause" exists to do so.  *See, e.g.*, *In re Lichtin/Wade, L.L.C.,* 478 B.R. 204, 209 (Bankr. E.D.N.C. 2012); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002).  With each request for a further extension of exclusivity, the burden grows heavier.  *In re Dow Corning Corp.,* 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997) ("[T]he Debtor's burden gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts; and a creditor's burden to terminate gets lighter with the passage of time.").  This is the Debtor's fifth request for an extension.

## V.

## ARGUMENT

### a.    "Co-Exclusivity" Ended Exclusivity

22.    The Bankruptcy Code affords the right to file a plan and disclosure statement solely to a debtor for a certain period of time.  The right is given to a debtor, and not to any other party. This is because the purpose of the exclusivity period is to afford "the *debtor* the opportunity to negotiate the settlement of its debts by proposing and soliciting support for its plan of reorganization without interference—in the form of competing plans—from its creditors . . . ." *In re Geriatrics Nursing Home, Inc.,* 187 B.R. 128, 131–32 (D.N.J. 1995) (emphasis added).

23.    The orders entered in these cases "extending" the exclusive periods are unusual, as they grant "co-exclusivity," rather than "exclusivity."  The orders granting and extending "co-

exclusivity" provided that, during the applicable periods, the Debtors were only permitted to file a plan *jointly* with the Committee.  In so doing, the Debtors lost the right under Section 1121 to be the sole proponents of a plan.  Because the Debtors may not propose a plan absent the consent of the Committee, the Debtors could not pursue a plan without the interference of creditors (*i.e.*, the Committee), defeating the purpose of the exclusive periods.  In fact, the Debtors had even less of an ability to dictate their own affairs than if the Court had simply terminated exclusivity—at **least under those circumstances the Debtors could have proposed their own plan of reorganization**.

24.     No provision in the Bankruptcy Code supports the concept of "co-exclusivity." Accordingly, by granting the Debtors' request for "co-exclusivity", this Court effectively terminated "exclusivity."

25.     The undersigned has located two reported decision in which bankruptcy courts addressed the concept of shared exclusivity; one approved it, and the other rejected it.  *Compare In re Borders Grp., Inc.,* 460 B.R. 818, 827 (Bankr. S.D.N.Y. 2011) (rejecting shared exclusivity arrangement) *with In re United Press Int'l, Inc.,* 60 B.R. 265 n.11 and 12 (Bankr. D.D.C. 1986) (approving shared exclusivity arrangement).

26.     For the reasons set forth above, TD and EWB believe that the better-reasoned course is to reject shared exclusivity.  Regardless, each case is different.  The Court in *Borders*, in rejecting shared exclusivity, noted that "an order entered in one case cannot be transported or translated to another case..." 460 B.R. at 827.  The arrangement approved by *United Press* was far different from the "co-exclusivity" that has been implemented here.   Under the "shared" exclusivity of *United Press*, the debtor and two other parties each were each authorized to file their own, separate plans.   An arrangement that preserves the ability of a debtor to file its own

12

independent plan is different than the "co-exclusivity" concept used here, where **the Committee can (and apparently has) effectively prevented the Debtors from filing any plan at all unless the Debtors and the Lenders acquiesce to the Committee's terms**.  And indeed, that has been the result of co-exclusivity in these cases.

       **b.**       **"Co-exclusivity" Defeats the Principle of Fairness to All Creditors**

27.      Nor does "co-exclusivity" fulfill the policies and purposes of the Bankruptcy Code.  A bedrock principle of the Bankruptcy Code is fairness to all creditors of a debtor.  The Bankruptcy Code is replete with mechanisms designed to ensure that all creditors are treated fairly.  The automatic stay stops the "race to the courthouse."  The avoidance powers prevent some creditors from getting preferred treatment over others.  The exclusive periods, and termination thereof, also serve the policy of fairness to all creditors.

28.      Congress made it clear that once the exclusive periods have terminated, "any party in interest may propose a plan."  *See* H.R. REP. 95-595, 95th Cong., 1st Sess. 406 (1977); S. Rep. No. 95-989, 95th Cong., 2nd Sess. 118 (1978).  As if to emphasize that "any" means "all," the legislative history continues:  "This includes the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, and an indenture trustee.  The list is not exhaustive."  *Id*.  Once exclusivity ends, Congress intended that all creditors be afforded a seat at the bargaining table with respect to a plan, not just a few.

29.      The effect of "co-exclusivity," however, is to allow some creditors (here, the Committee) to participate in the plan negotiation process, while excluding others (here, the Lenders and creditors of Eastern and Carrier).  Neither the plain language of the statute nor the purpose of the exclusivity periods contemplate such an inequitable result.  The Court should not permit this unfairness to continue.  The Court should not extend "co-exclusivity" in these cases.

c.    <u>**Even If Co-Exclusivity Were Defensible, It Has Failed In These Cases**</u>

30.    "Co-exclusivity" has failed to advance these cases; indeed, the opposite is true.  One

reason for this failure is, as stated above, that the Committee is not and has never been fairly

representative of all of the Debtors' creditors.

31.    The Eastern/Carrier estates have a creditor body that is quite distinct from that of

NEMF, yet no creditors of Eastern or Carrier sit on the Committee.  The Lenders are believed to

make up a larger percentage of the claims against the Eastern/Carrier estates than they do against

NEMF.  Therefore, the Lenders believe that they will receive a greater percentage recovery from

the Eastern/Carrier estates than they will from the NEMF estate.  Recall, however, that **none of**

**the Lenders sit on the Committee**.

32.    Not surprisingly, there is an unresolved issue as to whether certain funds—in a

material amount—ultimately belong to the Eastern/Carrier estates, or in the alternative, to the

NEMF estate.  This is an issue as to which the Committee should take no position; as a fiduciary

for all creditors (including those in the Eastern/Carrier estates), the Committee ought not advocate

a position in favor of NEMF creditors to the detriment of Eastern/Carrier creditors.  Despite this

conflict of interest, the Committee has taken an active role to attempt to steer the funds to the

NEMF estate—a result that will most benefit the Committee members themselves, to the prejudice

of the Eastern/Carrier creditors and the Lenders.

33.    Moreover, the Debtors and the Committee have been unable to formulate a plan to

which anyone can agree.  For reasons that remain unclear, the Committee (rather than the Debtors)

drafted a purported plan, but it did not "fill in the blanks" as to many of the material terms, resulting

in a document more akin to "Swiss cheese" than a confirmable plan.  The draft was silent as to the

treatment of the Lenders under the plan.  In its negotiations with the Lenders, the Committee

14

essentially offered them a single option—in exchange for agreement on certain, but certainly not all, terms important to the Lenders, the Committee would have *carte blanche* to fill in the holes of its plan and do whatever else it wanted in the cases.  Notably, one term that was left up in the air was the Lenders' treatment under a plan.  The Lenders were to simply accept whatever treatment the Committee deigned to bestow upon them.  Perhaps most egregiously, however, **the Lenders were also required to agree not to lodge any objections to confirmation <u>or to the allowance and payment of professional fees</u>**.

34.     Pursuit of these terms was nothing short of delusional; they were impossible for the Lenders (or the Debtors) to accept and inappropriate for Committee counsel to have proposed. The Debtors, being handcuffed to the Committee by "co-exclusivity," were unable to negotiate and propose their own plan.  Likewise, the Lenders—almost certainly the largest constituency of unsecured creditors in these cases—were unable to propose their own plan because "co-exclusivity" did not include them.  The Debtors and the Lenders were unable to propose a joint plan; the Debtors were prohibited from filing such a plan unless the Committee joined it.  The Committee was unlikely to join any plan unless the plan established a litigation trust—to be run by the Committee's professionals—and also allowed and paid the Committee's accrued professional fees in full, without objection or oversight.[6]   "Co-exclusivity" has led to dysfunctionality and worse in the Cases.

---

[6] TD and EWB do not believe that a litigation trust is necessary or desirable.  A plan administrator could fill the role to be served by a trust, without the attendant expense and delay.  TD and EWB also believe that the major tasks that remain to be performed in these cases—i.e., claims reconciliation and the pursuit of preference actions—are more appropriately carried out by the Debtors' professionals (who have intimate knowledge of the Debtors' business affairs and book and records) and a firm which specializes in pursuing preference actions on a contingency fee basis or some other cost-effective means.

#### d.    <u>Exclusivity May Not Be Reinstated</u>

35.    Because the Court has already terminated the Debtors' exclusivity, it may not be reinstated (whether on a co-exclusive basis or otherwise) except, perhaps, on a fully consensual basis.  *See In re Congoleum Corp.*, 362 B.R. 198, 204 (Bankr. D.N.J. 2007) ("[T]he Court lacks the authority to reinstate exclusivity once that period has elapsed.").  *See also In re Perkins*, 71 B.R. 294, 297 (W.D.Tenn.1987) ("[O]nce the exclusive period and extensions thereto have expired, the debtor cannot resurrect his protected status in order to battle competing plans.").

36.    If however the Court determines that exclusivity was not terminated by the establishment of "co-exclusivity," **cause does not exist to further extend either "co-exclusivity" or "exclusivity**."

### a.    <u>The Factors Considered By Courts Weigh Against An Extension of Exclusivity</u>

37.    The gravamen of the inquiry as to whether "cause" exists to further extend exclusivity under Section 1121 is whether exclusivity advances reorganization, or not.  In this case, the answer to this question is clear:  **"co-exclusivity" has thwarted the parties' ability to achieve a confirmable plan**.  In addition, the factors that Courts have applied to determine whether exclusivity should be extended support the denial of a further extension of both "exclusivity" and "co-exclusivity":

(i) <u>The size and complexity of the case</u>.  Because the liquidation of the Debtors' estates is nearly completed, these cases are not of a size or complexity to require a further extension of exclusivity.  Assuming the retained professionals in these cases were to be

awarded all of their accrued fees on a final basis, there may be far less than $15 million dollars left to be distributed.[7]

(ii) <u>The necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information</u>.  Months have passed since substantially all of the assets of the estates were liquidated, yet no plan has been successfully negotiated or filed even though, at bottom, the plan in these cases need be nothing more than a simple, "two-pot" (one for the NEMF estate and one for the estates of Eastern and Carrier) liquidating plan in accordance with the absolute priority rule.  There is no material litigation, no inter-creditor disputes (aside from the issue of the Easter/Carrier sale proceeds division) and few unresolved matters (namely, claims against insiders).  The Debtors and the Committee have squandered precious time in resolving these few remaining issues in the Cases and filing a plan.  For the reasons set forth above, a further extension of "co-exclusivity" is highly unlikely to move things forward, or, even if it does, only at what will likely be an additional dissipation of funds that should be distributed to creditors through the incurrence of additional fees of multiple professionals.  The Court should not grant some creditors the opportunity to file a joint plan with the Debtors, while prohibiting other creditors from also doing so, or from filing a plan of their own.

(iii) <u>The existence of good faith progress toward reorganization</u>.  **There has not been good-faith progress towards reorganization**.  The Debtors' cases are liquidations, there will be no reorganization and there has not even been good faith progress toward what should be a straightforward liquidating plan.

---

[7] TD and EWB reserves all rights in this regard.

(iv) <u>The fact that the debtor is paying its bills as they become due</u>.  This factor is not applicable because this is a liquidation case.  In any event, the Debtors are able to pay their bills because they are in possession of millions of dollars of funds which would otherwise be available for distribution to creditors, and not professionals.

(v) <u>Whether the debtor has demonstrated reasonable prospects for filing a viable plan</u>.  The Debtors and the Committee have demonstrated that **they do not have reasonable prospects for filing a viable plan as long as there is co-exclusivity**.

(vi) <u>Whether the debtor has made progress in negotiations with its creditors</u>.  The Debtors have successfully negotiated many resolutions with creditors.  The Committee, however, generally has not demonstrated an ability to successfully negotiate fair and disinterested compromises.

(vii) <u>The amount of time which has elapsed in the case</u>.  The Debtors have been in chapter 11 for nearly eight (8) months and the liquidation phase of these liquidating cases ended months ago, yet there has been no meaningful progress towards a plan.

(viii) <u>Whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands</u>.  In reality, **an extension of co-exclusivity serves to prevent the Debtors from filing their own plan or from filing a joint plan with one or more of the Lenders.  The Committee, however, is using co-exclusivity to attempt to pressure the Lenders to submit to its demands**.[8]

(vix) <u>Whether an unresolved contingency exists</u>.  While there are surely matters that remain to be addressed (and the Debtors appear to be making good progress in doing so),

---

[8] Because the Debtors and the Committee have been unable to proceed together with the filing of a plan, the Committee may seek to terminate the co-exclusivity arrangement as well so that it can proceed to file its own improper plan, which would be strong grounds for conversion of these cases to chapter 7.

there is no unresolved contingency that is an obstacle to the filing and confirmation of a plan.

f.   **In the Alternative, These Cases Should Be Converted to Chapter 7**

38.   The tasks remaining in these cases are routinely handled by Chapter 7 trustees, at lower rates and costs.  In addition, conversion to Chapter 7 case would avoid the cost and expense of formulating and soliciting acceptances of a plan.  Claims would be reconciled, and assets would be distributed in accordance with the priority scheme set forth in the Bankruptcy Code, as happens every day in thousands of Chapter 7 cases across the country.  Conversion of these cases to Chapter 7 may in fact be the appropriate course for these cases.

# VI.

## CONCLUSION

For these and such other reasons that may be raised at a hearing on this objection, the Court

should decline to extend the "co-exclusive" periods and, to the extent they are still in effect,

terminate the Debtors' exclusive periods under Section 1121 of the Bankruptcy Code.


Respectfully submitted,


*/s/ David V. Fontana*
David V. Fontana, Esquire
Lisa Bittle Tancredi, Esquire (*pro hac vice*)
Keith M. Lusby, Esquire (*pro hac vice*)
GEBHARDT & SMITH LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
E-mail:  dfont@gebsmith.com
Tel: 410-385-5053
*Counsel for T.D. Bank, N.A.*

--and--

*/s/ Norman N. Kinel*
Norman N. Kinel, Esquire
SQUIRE PATTON BOGGS (US) LLP
30 Rockefeller Plaza, 23rd Floor
New York, NY 10112
E-mail:  norman.kinel@squirepb.com
Tel: 212-872-9800
*Counsel for East West Bank*

David V. Fontana, Esquire
Lisa Bittle Tancredi, Esquire (*pro hac vice*)
Keith M. Lusby, Esquire (*pro hac vice*)
GEBHARDT & SMITH LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
E-mail: dfont@gebsmith.com
Tel: 410-385-5053
*Counsel for T.D. Bank, N.A.*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW ENGLAND MOTOR FREIGHT, INC., *et al.*, | Case No. 19-12809 (JKS) |
| Debtors.[9] | (Jointly Administered) |

**CERTIFICATION OF SERVICE**

I HEREBY CERTIFY that, on October 1, 2019, the foregoing *Objection of T.D. Bank, N.A. and East West Bank To Extension of Exclusive Periods For Filing A Plan And Soliciting Acceptances Thereof* was served on the following parties via CM/ECF:

Richard Albuquerque on behalf of Creditor MICHAEL SINGLEY
richarda@djdlawyers.com

Morris S. Bauer on behalf of Creditor East River Energy, Inc,
msbauer@nmmlaw.com, rjacome@norris-law.com,relikens@nmmlaw.com

Kenneth L. Baum on behalf of Creditor Clermont Holdings, LLC
kbaum@kenbaumdebtsolutions.com, fpisano@coleschotz.com

---

[9]   The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

JoAnne M. Bonacci on behalf of Creditor RLI Insurance Company
jbonacci@dbplawfirm.com

Leonard R Boyer on behalf of Creditor Nelson Vasquez
lrbnjesq@gmail.com,
mcordova48890@aol.com;r.lr73573@notify.bestcase.com;aocasio768@aol.com

John F. Bracaglia, Jr. on behalf of Interested Party Orange and Rockland Utilities, Inc.
brokaw@centraljerseylaw.com

Gary D. Bressler on behalf of Creditor Mack Trucks, Inc.
gbressler@mdmc-law.com, kdeans@mdmc-law.com;kpatterson@mdmc-
law.com;dprimack@mdmc-law.com;bkleban@mdmc-law.com

Gary D. Bressler on behalf of Creditor VFS US LLC
gbressler@mdmc-law.com, kdeans@mdmc-law.com;kpatterson@mdmc-
law.com;dprimack@mdmc-law.com;bkleban@mdmc-law.com

Gary D. Bressler on behalf of Creditor Volvo Financial
gbressler@mdmc-law.com, kdeans@mdmc-law.com;kpatterson@mdmc-
law.com;dprimack@mdmc-law.com;bkleban@mdmc-law.com

Alan J. Brody on behalf of Creditor JP Morgan Chase
brodya@gtlaw.com, NJLitDock@gtlaw.com

Kate R. Buck on behalf of Creditor Connecticut Light & Power Company, NStar Western
Massachusetts, Yankee Gas Services Company, Colonial Gas Company, KeySpan Energy
Delivery Long Island, Narragansett Electric Company and Niagara Mohawk
kbuck@mccarter.com

Kate R. Buck on behalf of Creditor Potomac Edison Company, Toledo Edison Company and
West Penn Power Company
kbuck@mccarter.com

Deirdre E. Burke on behalf of Creditor Capital One, N.A.
dburke@mccarter.com

Robert A. Burke on behalf of Defendant Jenny Munson Andress, individually and as the
Administratrix of the Estate of Herbert Andress
rburke@macelree.com

Kevin M. Capuzzi on behalf of Interested Party Amazon.com Services, Inc., formerly Amazon
Fulfillment Services, Inc.
kcapuzzi@beneschlaw.com, debankruptcy@beneschlaw.com

Michael R. Caruso on behalf of Creditor Wells Fargo Equipment Finance, Inc.

mcaruso@csglaw.com, ecf@csglaw.com

Donald W Clarke on behalf of Debtor New England Motor Freight, Inc.
dclarke@wjslaw.com, dclarke@ecf.inforuptcy.com

Mark B Conlan on behalf of Debtor New England Motor Freight, Inc.
mconlan@gibbonslaw.com

Mark B Conlan on behalf of Defendant New England Motor Freight, Inc., et al.
mconlan@gibbonslaw.com

Mark B Conlan on behalf of Plaintiff New England Motor Freight, Inc.
mconlan@gibbonslaw.com

Catherine L. Corey on behalf of Creditor East River Energy, Inc,
clcorey@nmmlaw.com

Louis A. Curcio on behalf of Creditor Santander Bank, N.A.
louis.curcio@troutmansanders.com,
John.Murphy@troutmansanders.com;jonathan.forstot@troutmansanders.com;david.pisciotta@tr
outmansanders.com

Joseph J. DiPasquale on behalf of Creditor Committee Official Committee Of Unsecured
Creditors
jdipasquale@lowenstein.com, jkimble@lowenstein.com

Keri P. Ebeck on behalf of Creditor Guttman Energy, Inc.
kebeck@bernsteinlaw.com, jbluemle@bernsteinlaw.com

David Edelberg on behalf of Creditor McIntosh Energy Company
dedelberg@cullenanddykman.com, edelbergdr82964@notify.bestcase.com

David V. Fontana on behalf of Creditor TD Bank, N.A.
dfont@gebsmith.com, ltancredi@gebsmith.com;klusby@gebsmith.com

Scott J. Freedman on behalf of Creditor Corcentric, LLC
sfreedman@dilworthlaw.com

Jacob Frumkin on behalf of Interested Party Great Dane LLC
jfrumkin@coleschotz.com

Karen A. Giannelli on behalf of Debtor Apex Logistics, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor Carrier Industries, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor Eastern Freight Ways, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor Hollywood Avenue Solar, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor Jans Leasing Corp.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor MyJon, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor Myar, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor NEMF Logistics, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor NEMF World Transport, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor New England Motor Freight, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor United Express Solar, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Other Prof. Donlin, Recano & Company, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff Apex Logistics, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff Carrier Industries, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff Eastern Freight Ways, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff Hollywood Avenue Solar, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff Jans Leasing Corp.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff MyJon, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff Myar, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff NEMF Logistics, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff NEMF World Transport, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff New England Motor Freight, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff United Express Solar, LLC
kgiannelli@gibbonslaw.com

Brian Glass on behalf of Interested Party PA Department of Environmental Protection
briaglass@pa.gov, verkanova@pa.gov

Eric Goldstein on behalf of Creditor United HealthCare Services, Inc.
egoldstein@goodwin.com, bankruptcy@goodwin.com;bankruptcyparalegal@goodwin.com

Evan S. Goldstein on behalf of Creditor Webster Capital Finance, Inc.
egoldstein@uks.com

Warren Scott Gottlieb on behalf of Defendant Consolidated Edison Company of New York, Inc.
wgottlieb@golawllp.com

Justin W. Gray on behalf of Creditor Angela Evans
gray@maynardoconnorlaw.com, Sweeney@moscllp.com

Justin W. Gray on behalf of Creditor Anthony McNeil
gray@maynardoconnorlaw.com, Sweeney@moscllp.com

Justin W. Gray on behalf of Creditor Daniel Murtha
gray@maynardoconnorlaw.com, Sweeney@moscllp.com

Justin W. Gray on behalf of Creditor Daniel Rinaldi
gray@maynardoconnorlaw.com, Sweeney@moscllp.com

Justin W. Gray on behalf of Creditor Janice A. Goodall
gray@maynardoconnorlaw.com, Sweeney@moscllp.com

Justin W. Gray on behalf of Defendant Angela Evans, Individually & as Parent & Natural

Guardian of E Evans, an Infant
gray@maynardoconnorlaw.com, Sweeney@moscllp.com

Brian W. Hofmeister on behalf of Creditor Larry L. Banks
bwh@hofmeisterfirm.com

Richard S. Kanowitz on behalf of Unknown Role Type Ad Hoc Group of Tort Claimants
rkanowitz@cooley.com, mklein@cooley.com;jindyke@cooley.com;efiling-
notice@ecf.pacerpro.com

Norman N Kinel on behalf of Interested Party East West Bank
norman.kinel@squirepb.com, sarah.conley@squirepb.com;elliot.smith@squirepb.com

Peter M. Knob on behalf of Creditor Capital One, N.A.
pknob@mccarter.com, lrestivo@mccarter.com

Denise A Kuhn on behalf of Creditor Dept. of Revenue Commonwealth of Pennsylvania,
department of revenue
dkuhn@attorneygeneral.gov

Christopher John Leavell on behalf of Interested Party Class Plaintiffs at al
cleavell@klehr.com, lclark@klehr.com

Christopher John Leavell on behalf of Plaintiff Dan Webster
cleavell@klehr.com, lclark@klehr.com

Christopher John Leavell on behalf of Plaintiff Mary Carlin
cleavell@klehr.com, lclark@klehr.com

Scott W Lichtenstein on behalf of Creditor Berkley Insurance Company
slichtenstein@csglaw.com

Seoung Y. Lim on behalf of Creditor Pantos USA, Inc.
joshualim@kcllawfirm.com,
denisemoreno@kcllawfirm.com,seankwak@kcllawfirm.com,jpark@kcllawfirm.com

Gail C. Lin on behalf of Plaintiff Alice Waters
GL@outtengolden.com,
jxh@outtengolden.com;jar@outtengolden.com;rsr@outtengolden.com;kdeleon@outtengolden.c
om;squinonez@outtengolden.com;tloughran@outtengolden.com

Gail C. Lin on behalf of Plaintiff Rich Richardson
GL@outtengolden.com,
jxh@outtengolden.com;jar@outtengolden.com;rsr@outtengolden.com;kdeleon@outtengolden.c
om;squinonez@outtengolden.com;tloughran@outtengolden.com

Joseph Lubertazzi, Jr. on behalf of Creditor Capital One, N.A.
jlubertazzi@mccarter.com

Christopher Lynch on behalf of Creditor Fifth Third Bank
clynch@reedsmith.com

Kevin Gordon McDonald on behalf of Creditor VW Credit Leasing, Ltd.
kmcdonald@kmllawgroup.com, bkgroup@kmllawgroup.com

Douglas J. McGill on behalf of Creditor Pilot Thomas Logistics LLC
dmcgill@webbermcgill.com, mlynch@webbermcgill.com

Joseph J. McMahon, Jr. on behalf of Creditor Pilot Travel Centers LLC
jmcmahon@ciardilaw.com, jclarke@ciardilaw.com

John R. Morton, Jr. on behalf of Creditor CAB East LLC, serviced by Ford Motor Credit
Company LLC
ecfmail@mortoncraig.com, mortoncraigecf@gmail.com

Robert E. Nies on behalf of Creditor Berkley Insurance Company
rnies@csglaw.com

Melissa A. Pena on behalf of Creditor Webster Capital Finance, Inc.
mapena@norris-law.com, pfreda@nmmlaw.com

Frank Peretore on behalf of Creditor Wells Fargo Equipment Finance, Inc.
fperetore@csglaw.com

David A. Pisciotta on behalf of Creditor Santander Bank, N.A.
david.pisciotta@troutmansanders.com,
john.murphy@troutman.com;alissa.piccione@troutman.com

Sari Blair Placona on behalf of Creditor Interstate Towing Recovery Incorporated
splacona@msbnj.com

Sari Blair Placona on behalf of Creditor Mercedes Benz Financial Services USA LLC
splacona@msbnj.com

Sari Blair Placona on behalf of Creditor Daryl & Kim Martin
splacona@msbnj.com

Sari Blair Placona on behalf of Creditor Jalil Walters
splacona@msbnj.com

Sari Blair Placona on behalf of Creditor Rasheeda Carter
splacona@msbnj.com

Sari Blair Placona on behalf of Creditor Shauna Jones
splacona@msbnj.com

Sari Blair Placona on behalf of Defendant DARYL MARTIN AND KIM MARTIN
splacona@msbnj.com

Sari Blair Placona on behalf of Defendant Jalil Waters and Rashida Carter
splacona@msbnj.com

Sari Blair Placona on behalf of Defendant Shauna Jones
splacona@msbnj.com

Mark Platt on behalf of Creditor Omnitracs, LLC
mplatt@fbtlaw.com

Stephen B. Ravin on behalf of Creditor Riggins, Inc.
sravin@saul.com, jgillman@saul.com

Rona J. Rosen on behalf of Creditor WARN Act Class Plaintiffs and Putative Class
cbbutler@klehr.com, cbbutler@klehr.com

Beth J. Rotenberg on behalf of Creditor Berkley Insurance Company
brotenberg@csglaw.com, ecf@csglaw.com

Blake D. Roth on behalf of Creditor Bridgestone Americas Tire Operations, LLC
blake.roth@wallerlaw.com,
chris.cronk@wallerlaw.com;deborah.liles@wallerlaw.com;katie.stenberg@wallerlaw.com

Rene S. Roupinian on behalf of Plaintiff Alice Waters
rsr@outtengolden.com

Rene S. Roupinian on behalf of Plaintiff Rich Richardson
rsr@outtengolden.com

Robert K. Scheinbaum on behalf of Creditor New Jersey Manufacturers
rscheinbaum@connellfoley.com

Robert K. Scheinbaum on behalf of Defendant New Jersey Manufacturers Insurance Company
a/s/o Phyllis A. Troy
rscheinbaum@connellfoley.com

John Phillip Schneider on behalf of Creditor Committee Official Committee Of Unsecured
Creditors
JPSchneider@mdmc-law.com

Joseph L. Schwartz on behalf of Creditor Lucky's Energy Service, Inc.
jschwartz@riker.com

Mary E. Seymour on behalf of Creditor Committee Official Committee Of Unsecured Creditors
mseymour@lowenstein.com

Virginia T. Shea on behalf of Creditor VFS US LLC
vshea@mdmc-law.com, mtaranto@mdmc-law.com;kpatterson@mdmc-law.com;gbressler@mdmc-law.com;lmodugno@mdmc-law.com

Virginia T. Shea on behalf of Creditor Volvo Financial
vshea@mdmc-law.com, mtaranto@mdmc-law.com;kpatterson@mdmc-law.com;gbressler@mdmc-law.com;lmodugno@mdmc-law.com

Michael D. Sirota on behalf of Interested Party Great Dane LLC
msirota@coleschotz.com, fpisano@coleschotz.com

Anthony Sodono, III on behalf of Creditor Mercedes Benz Financial Services USA LLC
asodono@msbnj.com

Anthony Sodono, III on behalf of Creditor Jalil Walters
asodono@msbnj.com

Anthony Sodono, III on behalf of Creditor Rasheeda Carter
asodono@msbnj.com

Anthony Sodono, III on behalf of Creditor Shauna Jones
asodono@msbnj.com

Anthony Sodono, III on behalf of Defendant Jalil Waters and Rashida Carter
asodono@msbnj.com

Anthony Sodono, III on behalf of Defendant Shauna Jones
asodono@msbnj.com

Rebecca Ann Solarz on behalf of Creditor VW Credit Leasing, Ltd
rsolarz@kmllawgroup.com

Rick Aaron Steinberg on behalf of Creditor TOTE Maritime
rsteinberg@pricemeese.com

Gavin Stewart on behalf of Creditor VW Credit, Inc.
gavin@stewartlegalgroup.com

Daniel Stolz on behalf of Debtor New England Motor Freight, Inc.
dstolz@wjslaw.com,

dstolz@ecf.inforuptcy.com;msousa@wjslaw.com;btorres@ecf.inforuptcy.com

Douglas T Tabachnik on behalf of Creditor to Rita Alvarado The Rosato Firm, P.C., counsel
dtabachnik@dttlaw.com, rdalba@dttlaw.com

Douglas T Tabachnik on behalf of Defendant Rita Alvarado
dtabachnik@dttlaw.com, rdalba@dttlaw.com

Brett Steven Theisen on behalf of Debtor New England Motor Freight, Inc.
btheisen@gibbonslaw.com

Brett Steven Theisen on behalf of Plaintiff New England Motor Freight, Inc.
btheisen@gibbonslaw.com

Chad J. Toms on behalf of Debtor New England Motor Freight, Inc.
ctoms@wtplaw.com

Andrew R. Turner on behalf of Defendant Protective Insurance Company
courts@turnerlaw.net

Andrew R. Turner on behalf of Interested Party Protective Insurance Company
courts@turnerlaw.net

U.S. Trustee
USTPRegion03.NE.ECF@usdoj.gov

Date:   October 1, 2019          GEBHARDT & SMITH LLP

*/s/ David V. Fontana* _____
David V. Fontana, Esquire
Lisa Bittle Tancredi, Esquire (*pro hac vice*)
Keith M. Lusby, Esquire (*pro hac vice*)
GEBHARDT & SMITH LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
E-mail:  dfont@gebsmith.com
Tel: 410-385-5053

*Attorneys for TD Bank, N.A.*