David V. Fontana, Esquire
Lisa Bittle Tancredi, Esquire (*pro hac vice*)
Keith M. Lusby, Esquire (*pro hac vice*)
GEBHARDT & SMITH LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
E-mail:  dfont@gebsmith.com
Tel: 410-385-5053
*Counsel for T.D. Bank, N.A.*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| NEW ENGLAND MOTOR FREIGHT, INC., *et al.*, | Case No. 19-12809 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**OBJECTION OF T.D. BANK, N.A. TO THE DEBTORS' AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINT MOTION FOR ORDER APPROVING GLOBAL SETTLEMENT WITH THE DEBTORS' EQUITY HOLDERS AND AFFILIATES PURSUANT TO 11 U.S.C. §§ 105(A), 502 AND BANKRUPTCY RULE 9019 [D.E. 946]**

T.D. Bank, N.A. ("**TD**"), by its undersigned counsel, hereby submits this objection to the Debtors' and Official Committee of Unsecured Creditors' Joint Motion for Order Approving Global Settlement with the Debtors' Equity Holders and Affiliates Pursuant to 11 U.S.C. §§ 105(a), 502 and Bankruptcy Rule 9019 [D.E. 946] (the "**Motion**").  In support of its objection, TD respectfully states as follow:

---

[1] The debtors in these chapter 11 cases (collectively, the "Debtors") and the last four digits of each Debtor's taxpayer identification number are as follows:  New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

**I.**

**Introduction**

The Debtors and the Committee seek approval of a settlement that would provide broad, nonconsensual third party releases of more than eighty-four equity holders and affiliates of the Debtors.  Seven of the proposed releasees have relationships with TD Bank pursuant to which they owe TD in excess of $14 million. These relationships include but are not limited to real estate loan facilities, swap agreements, assignments, forbearance agreements and deposit relationships.  While the drafters of the proposed settlement attempted to exclude from the release some of the obligations owed to TD, the proposed settlement would unfairly and inequitably release other claims that TD holds against these non-Debtor entities, without just compensation and without TD's consent.

The United States Court of Appeals for the Third Circuit has not opined as to whether nonconsensual third party releases are permissible in a plan outside of the asbestos context.  Even in those circuits which permit nonconsensual third party releases, permission is only granted in extraordinary circumstances that are not present here—primarily, where the release is absolutely necessary to a plan of reorganization because the released parties are making a financial contribution to the plan critical to its feasibility.  Here, there is no reorganization; these are liquidating cases.  It is also unclear as to whether the seven released parties currently indebted to TD are making any financial contribution to the Debtors and their estates.

In determining whether to approve a nonconsensual, third-party release, courts also consider whether: (1) the debtor and the released parties enjoy such an identity of interest that a suit against the released party is effectively a suit against the debtor; and (2) the creditors affected by the release will be paid substantially in full.   Neither factor is present here.  An identity of interest between the Debtors and the released parties is lacking.  TD is not being paid in full as a

result of the proposed settlement.  TD is owed in excess of $9.3 million by New England Motor

Freight and $16 million by Eastern Motor Carrier and will be paid only a fraction of that amount.

And, seven of the released parties owe TD in excess of $14 million in addition to the claims that

TD holds against the Debtors.

The Motion should be denied.

## II.
## Factual Background

1.    **The Proposed Settlement Contemplates Nonconsensual  Third Party Releases of Non-Debtor Persons and Entities Obligated to TD.**

The Motion seeks approval of an "Equity Holders and Affiliates Settlement" (the

"**Proposed Settlement**").  As part of the Proposed Settlement, more than eighty-four (84) persons

and entities would not only receive releases by the estates, but they would also receive third-party

releases from all of the Debtors' creditors (the "**Release**").

Seven non-debtor entities included in the Release, Armarach L.P. ("**Armerach LP**"), Elk

East, LLC ("**Elk East**"), Meri Properties, LLC ("**Meri**"), Old Beth, LLC ("**Old Beth**"), Pleasant

Hill Road, LLC ("**Pleasant Hill**"), Schuyler Road LLC ("**Schuyler**"), Northeast Commerce Center

I, LLC ("**Commerce I**" and together with Armarach, Elk East, Meri, Old Beth, Pleasant Hill and

Schuyler, collectively, the "**Real Property Obligors**") are obligated to TD on account of various

loans, credit facilities and deposit relationships, including but not limited to the following:

    a.    **Armerach**:

        i.    A $3,280,000 loan facility (the "**Armerach Loan**") evidenced by a promissory note, loan agreement and other loan documents dated March 9, 2000, pursuant to which Armerach is the borrower and New England Motor Freight, Inc., Carrier Industries, Inc., Eastern Freight Ways, Inc. and Apex Logistics, Inc. (collectively, the "**Armerach Guarantors**") guaranteed certain obligations of Armerach including certain environmental indemnity obligations.  The Armerach Loan is secured by real property and improvements located in Lower Allen Township, Pennsylvania (the

3

"**Armerach Facility**") pursuant to an Open End Mortgage and Security Agreement and Assignment of Leases and Rents recorded at the Recorder of Deeds of Cumberland County, Pennsylvania at Book 1599, Page 1077 and Book 640, page 87, respectively.  As of July 19, 2019, the outstanding principal balance of the Armerach Loan was more than $178,000.

ii. New England Motor Freight, Inc. used the Armerach Facility as part of its operations pursuant to a real property lease.  The New England Motor Freight, Inc. real property lease was assigned to TD as security for the Armerach Loan.

iii. Armerach and TD are parties to a Forbearance Agreement dated August 30, 2019 pursuant to which, among other things, Armerach assigned its claims against the Debtors to TD as security for its obligations.

b. **Elk East and Commerce I**:

i. A $13,040,000 loan facility (the **"$13,040,000 Elk East Loan"**) evidenced by a promissory note, loan agreement and other loan documents dated December 12, 2006, pursuant to which Elk East is the borrower and Commerce I guaranteed the obligations of Elk East.  The $13,040,000 Elk East Loan is secured by real property and improvements located in Cecil County, Maryland (the "**Elk East Facility**") pursuant to an Indemnity Deed of Trust and Assignment of Leases and Rents recorded at the Recorder of Deeds of Cecil County, Maryland at Book 2264, Page 211 and Book 2264, page 240, respectively.  As of July 19, 2019, the outstanding principal balance of the $13,040,000 Elk East Loan was more than $6.8 million.

ii. A $2,685,000 loan facility (the "**$2,685,000 Elk East Loan**") evidenced by a promissory note, loan agreement and other loan documents dated October 31, 2007, pursuant to which Elk East is the borrower and Commerce I guaranteed the obligations of Elk East.  The $2,685,000 Elk East Loan is secured by the Elk East Facility pursuant to an Indemnity Deed of Trust and Assignment of Leases and Rents recorded at the Recorder of Deeds of Cecil County, Maryland at Book 2437, Page 037 and Book 2437, page 069, respectively. As of July 19, 2019, the outstanding principal balance of the $2,685,000 Elk East Loan was more than $1.8 million.

iii. Elk East and TD are parties to two interest rate swap agreements dated as of December 14, 2006 and October 31, 2007.  As of July 19, 2019, the swap unwind fees for the two swap agreements were in excess of $1.15 million, subject to market movements until terminated.

iv. New England Motor Freight, Inc. used the Elk East Facility as part of its operations pursuant to a real property lease.  The New England Motor

Freight, Inc. real property lease was assigned to TD as security for the two Elk East loans.

    v. Elk East, Commerce I and TD are parties to a Forbearance Agreement dated August 30, 2019 pursuant to which, among other things, Commerce I assigned its claims against the Debtors to TD as security for its obligations.

c. **Meri**:

    i. A $5,200,000 loan facility (the "**Meri Loan**") evidenced by a promissory note, loan agreement and other loan documents dated July 27, 2005, pursuant to which Meri is the borrower and New England Motor Freight, Inc., Carrier Industries, Inc., Eastern Freight Ways, Inc. and Apex Logistics, Inc. (collectively, the "**Meri Guarantors**") guaranteed certain obligations of Meri including certain environmental indemnity obligations. The Meri Loan is secured by real property and improvements located in Meriden, Connecticut (the "**Meri Facility**") pursuant to an Open End Mortgage Deed and Security Agreement and Assignment of Leases and Rents recorded at the Recorder of Deeds of New Haven County, Connecticut at Book 3604, Page 229 and Book 3604, page 277, respectively. As of July 19, 2019, the outstanding principal balance of the Meri Loan was more than $2.1 million.

    ii. New England Motor Freight, Inc. used the Meri Facility as part of its operations pursuant to a real property lease. The New England Motor Freight, Inc. real property lease was assigned to TD as security for the Meri Loan.

    iii. Meri and TD are parties to a Forbearance Agreement dated August 30, 2019 pursuant to which, among other things, Meri assigned its claims against the Debtors to TD as security for its obligations.

d. **Old Beth**:

    i. A $4,200,000 loan facility (the "**$4,200,000 Old Beth Loan**") evidenced by a promissory note, loan agreement and other loan documents dated May 21, 2002 as later modified, pursuant to which Old Beth is the borrower and New England Motor Freight, Inc., Carrier Industries, Inc., Eastern Freight Ways, Inc. and Apex Logistics, Inc. (collectively, the "**Old Beth Guarantors**") guaranteed certain obligations of Old Beth including certain environmental indemnity obligations. The $4,200,000 Old Beth Loan is secured by real property and improvements located in the Town of Oyster Bay, New York (the "**Old Beth Facility**") pursuant to a Mortgage and Security Agreement and Assignment of Leases and Rents recorded at the Recorder of Deeds of Nassau County, New York at Book 22424, Page 51 and Book 22424, page 38, respectively. As of July 19, 2019, the

5

outstanding principal balance of the $4,200,000 Old Beth Loan was more than $925,000.

ii. A $3,000,000 loan facility (the **"$3,000,000 Old Beth Loan"**) evidenced by a promissory note, loan agreement and other loan documents dated November 29, 2007 to which Old Beth is the borrower. The $3,000,000 Old Beth Loan is secured by the Old Beth Facility pursuant to a Second Mortgage and Security Agreement and Assignment of Leases and Rents recorded at the Recorder of Deeds of Nassau County, New York at Book 32620, Page 661 and Book 32620, page 691, respectively. As of July 19, 2019, the outstanding principal balance of the $3,000,000 Old Beth Loan was more than $1,690,000.

iii. Old Beth and TD are parties to an interest rate swap agreement dated as of November 29, 2007. As of July 19, 2019, the swap unwind fee for the swap agreement was approximately $237,000, subject to market movements until terminated.

iv. New England Motor Freight, Inc. used the Old Beth Facility as part of its operations pursuant to a real property lease. The New England Motor Freight, Inc. real property lease was assigned to TD as security for the two Old Beth loans.

v. Old Beth and TD are parties to a Forbearance Agreement dated August 30, 2019 pursuant to which, among other things, Commerce I assigned its claims against the Debtors to TD as security for its obligations.

e. **Pleasant Hill**:

i. A $1,320,000 loan facility (the "**Pleasant Hill Loan**") evidenced by a promissory note, loan agreement and other loan documents dated June 1, 2005, and later modified, pursuant to which Pleasant Hill is the borrower and New England Motor Freight, Inc., Carrier Industries, Inc., Eastern Freight Ways, Inc. and Apex Logistics, Inc. (collectively, the "**Pleasant Hill Guarantors**") guaranteed certain obligations of Pleasant Hill including certain environmental indemnity obligations. The Pleasant Hill Loan is secured by real property and improvements located in Scarborough, Maine (the "**Pleasant Hill Facility**") pursuant to a Mortgage and Security Agreement and Assignment of Leases and Rents recorded at the Recorder of Deeds of Cumberland County, Maine at Book 20763, Page 229 and Book 20763, page 259, respectively. As of July 19, 2019, the outstanding principal balance of the Pleasant Hill Loan was more than $420,000.

ii. According to the Debtors, the Debtors did not use the Pleasant Hill Facility for their operations.

      iii.  Meri and TD are parties to a Forbearance Agreement dated August 30, 2019.

   f.  **Schuyler Road**:

      i.  A $1,500,000 loan facility (the "**Schuyler Road Loan**") evidenced by a promissory note, loan agreement and other loan documents dated December 19, 2003, pursuant to which Schuyler Road is the borrower and New England Motor Freight, Inc., Carrier Industries, Inc., Eastern Freight Ways, Inc. and Apex Logistics, Inc. (collectively, the "**Schuyler Road Guarantors**") guaranteed certain obligations of Schuyler Road including certain environmental indemnity obligations. The Schuyler Road Loan is secured by real property and improvements located in Cicero, New York (the "**Schuyler Road Facility**") pursuant to a Mortgage and Security Agreement and Assignment of Leases and Rents recorded at the Recorder of Deeds of Onondaga County, New York at Book 13825, Page 071 and Book 13825, page 100, respectively. As of July 19, 2019, the outstanding principal balance of the Schuyler Road Loan was more than $479,000.

      ii.  New England Motor Freight, Inc. used the Schuyler road Facility as part of its operations pursuant to a real property lease. The New England Motor Freight, Inc. real property lease was assigned to TD as security for the Schuyler Road Loan.

      iii.  Schuyler Road and TD are parties to a Forbearance Agreement dated August 30, 2019 pursuant to which, among other things, Schuyler Road assigned its claims against the Debtors to TD as security for its obligations.

It is not known what, if any, consideration the Real Property Obligors would contribute to the Proposed Settlement.

**2.**    **The Scope of the Nonconsensual Third-Party Releases Is Extraordinarily Broad.**

Among other things, the Proposed Settlement would cause all of the Debtors' creditors, including TD, to release the non-Debtor parties, including the Real Property Obligors, from:

any and all manner of acts and actions, cause and causes of actions, arbitrations, mediations, conciliations, dues, sums of money, reckonings, bonds, bills, contracts, controversies, variances, trespasses, damages, judgments, executions, rights, claims, demands, suits, proceedings, debts, accounts, warranties, covenants, liabilities, agreements and promises of any nature whatsoever in law or in equity, whether known or unknown, whether sounding in tort or contract or any other basis, *that the [Debtors' creditors] have, have had, or may at any time hereafter have against the [Real Property Obligors] in any capacity, for, upon, or by reason of*

> ***any matter, cause, or thing whatsoever, in any way relating to one or more of the Debtors, the Estates, the conduct of the Debtors' business, the Chapter 11 Cases, the same subject matter as the Claim held by any Creditor against one or more of the Debtors, or the Combined Plan and Disclosure Statement*** (other than the rights under the Combined Plan and Disclosure Statement and the Plan Documents); ***provided, however, that this release shall not extend to and is not intended to release any mortgage directly owed by any of the [Real Property Obligors] on real property such [Real Property Obligors] own that was formerly used or occupied by the Debtors in their business operations.***

(emphasis added).

Read literally, the foregoing would release all of the claims TD has against Pleasant Hill because, according to the Debtors, the Pleasant Hill Facility was not used in their operations. It would also release all of the claims that TD has against the other Real Property Obligors except for those claims under any mortgage documents.  The forbearance agreements, assignments of claims, indemnity deeds of trust, assignments of leases and rents, assignments of claims, environmental indemnities and promissory notes would all be released.

And, the released claims would not necessarily have to relate to the Debtors because of the comma that is highlighted in the excerpt from the Release below:

> any and all manner of … claims . . . that the [Debtors' creditors] have, have had, or may at any time hereafter have against the [Real Property Obligors] in any capacity, for, upon, or by reason of any matter, cause, or thing whatsoever**,** in any way relating to one or more of the Debtors, the Estates, the conduct of the Debtors' business, the Chapter 11 Cases . . .

(emphasis added).  The highlighted comma should, at a minimum, be deleted.

### III.
### Law and Argument

TD objects to approval of the Proposed Settlement because, for the reasons that follow, the Release does not pass muster under the Bankruptcy Code and applicable law:

- As has been recognized by the Fifth, Ninth, and Tenth Circuit Courts of Appeals, the Bankruptcy Code does not authorize nonconsensual, third-party releases such as the Release.

-  Even in those circuits that hold that such releases are not *per se* barred by the Bankruptcy Code, the Release would not be approved.  Approval of these types of third-party releases is generally limited to circumstances where the release is necessary to the debtor's reorganization efforts.  Here, the Debtors are liquidating and many of the released parties, including the Real Estate Obligors, do not appear to be making any financial contribution to the liquidating plan.

Because the Release cannot be approved, the Court should deny the Motion.  *See, e.g.*, *Matter of Zale Corp.*, 62 F.3d 746 (5th Cir. 1995) (reversing order granting 9019 motion because proposed compromise contained an improper injunction against third-party claims prohibited by Bankruptcy Code).

1.     **The Release Improperly Binds Non-Consenting Creditors To The Release.**

Section 524(e) of the Bankruptcy Code provides that, except with respect to certain asbestos claims, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  11 U.S.C. § 524(e).  Interpreting Section 524(e), several Circuit Courts of Appeals have concluded that a creditor or other interested party cannot be forced through the Chapter 11 process to release non-debtor parties absent the releasing party's consent.  *See, e.g.*, *Resorts Int'l, Inc. v. Lowenschuss,* 67 F.3d 1394, 1401–02 (9th Cir.1995); *In re Zale Corp.,* 62 F.3d 746, 760 (5th Cir.1995); *In re W. Real Estate Fund, Inc.,* 922 F.2d 592 (10th Cir.1990) *modified sub nom. Abel v. W., 932 F.2d 898 (10th Cir.1991).* Other courts have concluded that, while third-party releases are not *per se* prohibited by the Bankruptcy

Code, they are appropriate only in certain extraordinary circumstances. *See, e.g.*, *In re Metromedia Fiber Network, Inc.,* 416 F.3d 136, 143 (2d Cir. 2005).

The seminal case on third-party releases in this circuit is *In re Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000). The Court in *Continental Airlines*, however, expressly declined to address whether a non-consenting creditor may be bound by a third-party release. *See id.*; *see also In re One2One Communications, LLC*, 2016 WL 3398580, No. 13-1675, at n.8 (D. N.J. 2016) ("In the wake of *Continental* and its ilk, it remains unresolved in the Third Circuit whether a court has the authority to grant nonconsensual releases of non-debtor claims against other non-debtor third-parties").

Notwithstanding the lack of clarity from the Third Circuit, courts in this circuit have frequently followed the lead of the Fifth, Ninth, and Tenth Circuits in prohibiting non-debtor, nonconsensual releases. *See, e.g.*, *In re Washington Mut. Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011) (holding that, to be enforceable "any such release must be based on consent of the releasing party (by contract or the mechanism of voting in favor of the plan)"); *In re Indianapolis Downs, LLC*, 486 B.R. 286 (Bankr. D. Del. 2013) (approving release because plan did provide mechanism to opt out of release and thus release was consensual); *In re Coram Healthcare Corp.,* 315 B.R. 321, 335 (Bankr. D. Del. 2004) ("However . . . . the provision of a plan of reorganization which purports to grant a release of claims by third parties against a non-debtor cannot be approved. . . . [T]he Court do[es] not have the power to grant a release of the Noteholders on behalf of third parties . . . ."); *In re Elsinore Shore Assocs.*, 91 B.R. 238, 251 (Bankr. D.N.J. 1988) (proposed Chapter 11 plan could not be confirmed because it required creditors to release claims against third-party non-debtors).

For this reason alone, the Proposed Settlement should not be approved.  The Proposed

Settlement requires that the Release be incorporated into the Debtors' and Committee's proposed

plan of liquidation.  The current version of the plan contains the Release. [D.E. 983 at p. 124].  If

the plan is confirmed, the Release will bind all creditors, whether they voted for the plan or not.

Under these circumstances, the Release is not consensual and may not be approved.  *See In re*

*Washington Mut. Inc.*, 442 B.R. 314 (where plan provided that releases were enforceable even

against those voting against the plan, plan contained impermissible, nonconsensual third-party

release that could not be approved).

**2.      These Liquidated Cases Do Not Present The Type of "Extraordinary" Or "Unusual" Circumstances Warranting a Nonconsensual, Third-Party Release.**

**a.      A Nonconsensual, Third-Party Release Is Rarely Approved Even In Those Jurisdictions Which Do Not Contain A *Per Se* Prohibition Against Them.**

As the United States Court of Appeals for the Second Circuit observed in *In re Metromedia*

*Fiber Network, Inc.,* not only do nonconsensual third-party releases lack support in the text of the

Bankruptcy Code, they are rife with the potential for abuse:

> First, the only explicit authorization in the Code for nondebtor releases is 11 U.S.C. § 524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims. . . . Second, a nondebtor release is a device that lends itself to abuse. By it, a nondebtor can shield itself from liability to third parties. In form, it is a release; in effect, it may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Code. The potential for abuse is heightened when releases afford blanket immunity

416 F.3d 136, 142 (2d Cir. 2005).

Accordingly, even in those circuits that permit non-debtor, nonconsensual releases, courts

have observed that such releases are the exception, and not the rule, and should be approved

sparingly and reserved for extraordinary cases.  *See, e.g.*, *In re Continental Airlines*, 203 F.3d at

212-13 (noting that third-party releases are reserved for "extraordinary cases"); *In re Exide Techs.,*

11

303 B.R. 48, 72 (Bankr. D. Del. 2003) ("[N]onconsensual releases by a non-debtor of other non-debtor third parties are to be granted only in extraordinary cases."); *In re Dow Corning Corp.,* 280 F.3d 648, 658 (6th Cir. 2002) (noting that an injunction against a non-consenting creditor is a "dramatic remedy to be used cautiously" and such an injunction is only appropriate in "unusual circumstances").

> **b.    There Are No Extraordinary Or Unusual Circumstances Present Here Justifying The Release.**
>
> > **i.    The Release Is Not Necessary To Any Reorganization Because The Debtors Are Liquidating And Many Of The Releasees Have Not Contributed Anything To The Plan.**

Although the Third Circuit in *Continental Airlines* expressly declined to reach the issue of whether a third-party release was authorized by the Bankruptcy Code, it nevertheless observed that one of the "hallmarks of permissible nonconsensual releases" is that the release be necessary to the debtor's reorganization. *In re Continental Airlines*, 203 F.3d at 214.

"Necessity," in the context of a third-party release, means that the "plan's proponent must demonstrate that there is a relationship between the debtors' successful reorganization and the nonconsensual  parties' release, and that the releasees have provided a critical financial contribution to the debtors' plan that is necessary to make the plan feasible in exchange for receiving a release of liability." *In re Nickels Midway Pier, LLC*, 2010 WL 2034542 at *13, No. 03-49462 (Bankr. D.N.J. 2010) (citations and quotations omitted).

Neither of the above factors is present here.  The Release is not necessary to any reorganization.  The Debtors have already liquidated substantially all of their assets.  The proposed plan is simply a mechanism to make distributions to creditors in accordance with the absolute priority rule.  The Debtors could make these distributions with or without the Release. Indeed, courts—including this Court in the above-cited *Nickels Midway Pier* case—have frequently

12

rejected third-party releases in liquidating plans because the release was not deemed necessary. *See, e.g.*, *id.* ("Wild Waves has not demonstrated that the success of the Debtor–In–Possession's reorganization bears a relationship to the release of the nonconsensual parties. **The Plan provides for liquidation, which can be successfully accomplished whether or not Wild Waves is released from third parties' claims**." (emphasis added)); *In re Draiman*, 450 B.R. 777, 797 (Bankr. N.D. Ill. 2011) ("The justification for granting third-party releases in a plan of liquidation is far less compelling than in a plan of reorganization."); *In re Berwick Black Cattle Co*., 394 B.R. 448, 461 (Bankr. C.D. Ill. 2008) ("The rationale for granting third-party releases is far less compelling, if it exists at all, in a liquidation than in a reorganization.").

And, many of the released parties—including the Real Property Obligors—are contributing nothing to the proposed plan.  Where a third-party does not make a financial contribution that is critical to the plan's feasibility in exchange for a release, the release is not necessary.  *See In re Genesis Health Ventures, Inc*., 266 B.R. 591, 607 (Bankr. D. Del. 2001) ("The question of necessity requires demonstration that the success of the debtors' reorganization bears a relationship to the release of the nonconsensual  parties, **and that the releasees have provided a critical financial contribution to the debtors' plan that is necessary to make the plan feasible in exchange for receiving a release of liability**. (emphasis added)).

ii.      **The Other Factors Frequently Cited By Courts In Approving Nonconsensual, Third-Party Releases Do Not Support the Releases.**

Courts have also invoked the following five-factor test in determining whether to approve a third-party release:

1. An identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate;

2. Substantial contribution by the non-debtor of assets to the reorganization;

3.  The essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success;

4.  An agreement by a substantial majority of creditors to support the injunction, specifically if the impaired class of classes "overwhelmingly" votes to accept the plan; and

5.  A provision in the plan for payment of all or substantially all of the claims of the class        or        classes        affected        by        the        injunction.

*In re Indianapolis Downs, LLC.,* 486 B.R. 286, 303 (Bankr. D. Del. 2013).  Application of these factors does not support the releases.[2]

There is no identity of interest between the Debtors and the released insiders.  While there may be some common ownership between the Debtors and Real Property Obligors, TD's assertion of a claim against the Real Property Obligors would not effectively constitute a suit against the Debtors or jeopardize the depletion of estate assets.  Nor will TD be paid substantially in full.  To the contrary, TD is owed amounts in excess of $10 million and is projected to receive only a small fraction of such amount.  It is unclear what TD is receiving in exchange for its involuntary release of the Real Property Obligors, but the consideration does not begin to approach the $14 million owed by the Real Property Obligors to TD.

The facts of these cases do not support granting a non-consensual third party release of TD's claims against the Real Property Obligors.

---

[2] For the reasons discussed, *supra*, factors two and three are not applicable.  Factor four is inapplicable at the present time; it is not yet known how creditors will vote with respect to the plan.

**IV.**
**Conclusion**

The Debtors and Committee seek approval of an extraordinary remedy: a nonconsensual, third-party release of the Debtors' various insiders and affiliates, many of whom will likely contribute little or nothing to the Debtors' simple plan of liquidation.  Nonconsensual, third-party releases are so extraordinary that many courts have concluded that they are not authorized by the Bankruptcy Code under any circumstance.  Other courts have authorized them, but only when the release is absolutely necessary to facilitate the debtor's rehabilitation.  That is clearly not the case here where the Debtors are simply distributing assets that have already been liquidated.

As it pertains to TD, the permissibility of the Release is not merely an academic issue; the Real Property Obligors are indebted to TD for significant sums of money, which obligations may be affected (whether intentionally or not) by the Release.  The Release is highly inappropriate, particularly as to TD and the Motion should be denied.

Respectfully submitted,

*/s/ David V. Fontana*
David V. Fontana, Esquire
Lisa Bittle Tancredi, Esquire (*pro hac vice*)
Keith M. Lusby, Esquire (*pro hac vice*)
GEBHARDT & SMITH LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
E-mail:  dfont@gebsmith.com
Tel: 410-385-5053
*Counsel for T.D. Bank, N.A.*

15

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 12th day of November, 2019, the foregoing objection

was served via CM/ECF on the following parties:

Richard Albuquerque on behalf of Creditor MICHAEL SINGLEY
richarda@djdlawyers.com

Morris S. Bauer on behalf of Creditor East River Energy, Inc,
msbauer@nmmlaw.com, rjacome@norris-law.com,relikens@nmmlaw.com

Kenneth L. Baum on behalf of Creditor Clermont Holdings, LLC
kbaum@kenbaumdebtsolutions.com, fpisano@coleschotz.com

JoAnne M. Bonacci on behalf of Creditor RLI Insurance Company
jbonacci@dbplawfirm.com

Leonard R Boyer on behalf of Creditor Nelson Vasquez
lrbnjesq@gmail.com,
mcordova48890@aol.com;r.lr73573@notify.bestcase.com;aocasio768@aol.com

John F. Bracaglia, Jr. on behalf of Interested Party Orange and Rockland Utilities, Inc.
brokaw@centraljerseylaw.com

Gary D. Bressler on behalf of Creditor Mack Trucks, Inc.
gbressler@mdmc-law.com, kdeans@mdmc-law.com;kpatterson@mdmc-
law.com;dprimack@mdmc-law.com;bkleban@mdmc-law.com

Gary D. Bressler on behalf of Creditor VFS US LLC
gbressler@mdmc-law.com, kdeans@mdmc-law.com;kpatterson@mdmc-
law.com;dprimack@mdmc-law.com;bkleban@mdmc-law.com

Gary D. Bressler on behalf of Creditor Volvo Financial
gbressler@mdmc-law.com, kdeans@mdmc-law.com;kpatterson@mdmc-
law.com;dprimack@mdmc-law.com;bkleban@mdmc-law.com

Alan J. Brody on behalf of Creditor JP Morgan Chase
brodya@gtlaw.com, NJLitDock@gtlaw.com

Kate R. Buck on behalf of Creditor Connecticut Light & Power Company, NStar Western
Massachusetts, Yankee Gas Services Company, Colonial Gas Company, KeySpan Energy
Delivery Long Island, Narragansett Electric Company and Niagara Mohawk
kbuck@mccarter.com

Kate R. Buck on behalf of Creditor Potomac Edison Company, Toledo Edison Company and

West Penn Power Company
kbuck@mccarter.com

Deirdre E. Burke on behalf of Creditor Capital One, N.A.
dburke@mccarter.com

Robert A. Burke on behalf of Defendant Jenny Munson Andress, individually and as the
Administratrix of the Estate of Herbert Andress
rburke@macelree.com

Kevin M. Capuzzi on behalf of Interested Party Amazon.com Services, Inc., formerly Amazon
Fulfillment Services, Inc.
kcapuzzi@beneschlaw.com, debankruptcy@beneschlaw.com

Michael R. Caruso on behalf of Creditor Wells Fargo Equipment Finance, Inc.
mcaruso@csglaw.com, ecf@csglaw.com

Donald W Clarke on behalf of Debtor New England Motor Freight, Inc.
dclarke@wjslaw.com, dclarke@ecf.inforuptcy.com

Mark B Conlan on behalf of Debtor New England Motor Freight, Inc.
mconlan@gibbonslaw.com

Mark B Conlan on behalf of Defendant New England Motor Freight, Inc., et al.
mconlan@gibbonslaw.com

Mark B Conlan on behalf of Plaintiff New England Motor Freight, Inc.
mconlan@gibbonslaw.com

Catherine L. Corey on behalf of Creditor East River Energy, Inc,
clcorey@nmmlaw.com

Louis A. Curcio on behalf of Creditor Santander Bank, N.A.
louis.curcio@troutmansanders.com,
John.Murphy@troutmansanders.com;jonathan.forstot@troutmansanders.com;david.pisciotta@tr
outmansanders.com

Joseph J. DiPasquale on behalf of Creditor Committee Official Committee Of Unsecured
Creditors
jdipasquale@lowenstein.com, jkimble@lowenstein.com

Joseph J. DiPasquale on behalf of Other Prof. CohnReznick Capital Market Securities, LLC
jdipasquale@lowenstein.com, jkimble@lowenstein.com

Keri P. Ebeck on behalf of Creditor Guttman Energy, Inc.
kebeck@bernsteinlaw.com, jbluemle@bernsteinlaw.com

David Edelberg on behalf of Creditor McIntosh Energy Company
dedelberg@cullenanddykman.com, edelbergdr82964@notify.bestcase.com

David V. Fontana on behalf of Creditor TD Bank, N.A.
dfont@gebsmith.com, ltancredi@gebsmith.com;klusby@gebsmith.com

Scott J. Freedman on behalf of Creditor Corcentric, LLC
sfreedman@dilworthlaw.com

Jacob Frumkin on behalf of Interested Party Great Dane LLC
jfrumkin@coleschotz.com

Karen A. Giannelli on behalf of Accountant Withumsmith+Brown
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor Apex Logistics, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor Carrier Industries, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor Eastern Freight Ways, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor Hollywood Avenue Solar, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor Jans Leasing Corp.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor MyJon, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor Myar, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor NEMF Logistics, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor NEMF World Transport, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor New England Motor Freight, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Debtor United Express Solar, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Other Prof. Donlin, Recano & Company, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff Apex Logistics, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff Carrier Industries, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff Eastern Freight Ways, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff Hollywood Avenue Solar, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff Jans Leasing Corp.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff MyJon, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff Myar, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff NEMF Logistics, LLC
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff NEMF World Transport, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff New England Motor Freight, Inc.
kgiannelli@gibbonslaw.com

Karen A. Giannelli on behalf of Plaintiff United Express Solar, LLC
kgiannelli@gibbonslaw.com

Brian Glass on behalf of Interested Party PA Department of Environmental Protection
briaglass@pa.gov, verkanova@pa.gov

Eric Goldstein on behalf of Creditor United HealthCare Services, Inc.
egoldstein@goodwin.com, bankruptcy@goodwin.com;bankruptcyparalegal@goodwin.com

Evan S. Goldstein on behalf of Creditor Webster Capital Finance, Inc.

egoldstein@uks.com

Warren Scott Gottlieb on behalf of Defendant Consolidated Edison Company of New York, Inc.
wgottlieb@golawllp.com

Justin W. Gray on behalf of Creditor Angela Evans
gray@maynardoconnorlaw.com, Sweeney@moscllp.com

Justin W. Gray on behalf of Creditor Anthony McNeil
gray@maynardoconnorlaw.com, Sweeney@moscllp.com

Justin W. Gray on behalf of Creditor Daniel Murtha
gray@maynardoconnorlaw.com, Sweeney@moscllp.com

Justin W. Gray on behalf of Creditor Daniel Rinaldi
gray@maynardoconnorlaw.com, Sweeney@moscllp.com

Justin W. Gray on behalf of Creditor Janice A. Goodall
gray@maynardoconnorlaw.com, Sweeney@moscllp.com

Justin W. Gray on behalf of Defendant Angela Evans, Individually & as Parent & Natural
Guardian of E Evans, an Infant
gray@maynardoconnorlaw.com, Sweeney@moscllp.com

Brian W. Hofmeister on behalf of Creditor Larry L. Banks
bwh@hofmeisterfirm.com

Richard S. Kanowitz on behalf of Unknown Role Type Ad Hoc Group of Tort Claimants
rkanowitz@cooley.com, mklein@cooley.com;jindyke@cooley.com;efiling-
notice@ecf.pacerpro.com

Norman N Kinel on behalf of Interested Party East West Bank
norman.kinel@squirepb.com, sarah.conley@squirepb.com;elliot.smith@squirepb.com

Peter M. Knob on behalf of Creditor Capital One, N.A.
pknob@mccarter.com, lrestivo@mccarter.com

Denise A Kuhn on behalf of Creditor Dept. of Revenue Commonwealth of Pennsylvania,
department of revenue
dkuhn@attorneygeneral.gov

Christopher John Leavell on behalf of Interested Party Class Plaintiffs at al
cleavell@klehr.com, lclark@klehr.com

Christopher John Leavell on behalf of Plaintiff Dan Webster
cleavell@klehr.com, lclark@klehr.com

Christopher John Leavell on behalf of Plaintiff Mary Carlin
cleavell@klehr.com, lclark@klehr.com

Scott W Lichtenstein on behalf of Creditor Berkley Insurance Company
slichtenstein@csglaw.com

Seoung Y. Lim on behalf of Creditor Pantos USA, Inc.
joshualim@kcllawfirm.com,
denisemoreno@kcllawfirm.com,seankwak@kcllawfirm.com,jpark@kcllawfirm.com

Gail C. Lin on behalf of Plaintiff Alice Waters
GL@outtengolden.com,
jxh@outtengolden.com;jar@outtengolden.com;rsr@outtengolden.com;kdeleon@outtengolden.c
om;squinonez@outtengolden.com;tloughran@outtengolden.com

Gail C. Lin on behalf of Plaintiff Rich Richardson
GL@outtengolden.com,
jxh@outtengolden.com;jar@outtengolden.com;rsr@outtengolden.com;kdeleon@outtengolden.c
om;squinonez@outtengolden.com;tloughran@outtengolden.com

Joseph Lubertazzi, Jr. on behalf of Creditor Capital One, N.A.
jlubertazzi@mccarter.com

Christopher Lynch on behalf of Creditor Fifth Third Bank
clynch@reedsmith.com

Kevin Gordon McDonald on behalf of Creditor VW Credit Leasing, Ltd.
kmcdonald@kmllawgroup.com, bkgroup@kmllawgroup.com

Douglas J. McGill on behalf of Creditor Pilot Thomas Logistics LLC
dmcgill@webbermcgill.com, mlynch@webbermcgill.com

Joseph J. McMahon, Jr. on behalf of Creditor Pilot Travel Centers LLC
jmcmahon@ciardilaw.com, jclarke@ciardilaw.com

John R. Morton, Jr. on behalf of Creditor CAB East LLC, serviced by Ford Motor Credit
Company LLC
ecfmail@mortoncraig.com, mortoncraigecf@gmail.com

Robert E. Nies on behalf of Creditor Berkley Insurance Company
rnies@csglaw.com

Melissa A. Pena on behalf of Creditor Webster Capital Finance, Inc.
mapena@norris-law.com, pfreda@nmmlaw.com

Frank Peretore on behalf of Creditor Wells Fargo Equipment Finance, Inc.
fperetore@csglaw.com

David A. Pisciotta on behalf of Creditor Santander Bank, N.A.
david.pisciotta@troutmansanders.com,
john.murphy@troutman.com;alissa.piccione@troutman.com

Sari Blair Placona on behalf of Creditor Interstate Towing Recovery Incorporated
splacona@msbnj.com

Sari Blair Placona on behalf of Creditor Mercedes Benz Financial Services USA LLC
splacona@msbnj.com

Sari Blair Placona on behalf of Creditor Daryl & Kim Martin
splacona@msbnj.com

Sari Blair Placona on behalf of Creditor Jalil Walters
splacona@msbnj.com

Sari Blair Placona on behalf of Creditor Rasheeda Carter
splacona@msbnj.com

Sari Blair Placona on behalf of Creditor Shauna Jones
splacona@msbnj.com

Sari Blair Placona on behalf of Defendant DARYL MARTIN AND KIM MARTIN
splacona@msbnj.com

Sari Blair Placona on behalf of Defendant Jalil Waters and Rashida Carter
splacona@msbnj.com

Sari Blair Placona on behalf of Defendant Shauna Jones
splacona@msbnj.com

Mark Platt on behalf of Creditor Omnitracs, LLC
mplatt@fbtlaw.com

Stephen B. Ravin on behalf of Creditor Riggins, Inc.
sravin@saul.com, jgillman@saul.com

Rona J. Rosen on behalf of Creditor WARN Act Class Plaintiffs and Putative Class
cbbutler@klehr.com, cbbutler@klehr.com

Beth J. Rotenberg on behalf of Creditor Berkley Insurance Company
brotenberg@csglaw.com, ecf@csglaw.com

Blake D. Roth on behalf of Creditor Bridgestone Americas Tire Operations, LLC
blake.roth@wallerlaw.com,
chris.cronk@wallerlaw.com;deborah.liles@wallerlaw.com;katie.stenberg@wallerlaw.com

Rene S. Roupinian on behalf of Plaintiff Alice Waters
rsr@outtengolden.com

Rene S. Roupinian on behalf of Plaintiff Rich Richardson
rsr@outtengolden.com

Robert K. Scheinbaum on behalf of Creditor New Jersey Manufacturers
rscheinbaum@connellfoley.com

Robert K. Scheinbaum on behalf of Defendant New Jersey Manufacturers Insurance Company
a/s/o Phyllis A. Troy
rscheinbaum@connellfoley.com

John Phillip Schneider on behalf of Creditor Committee Official Committee Of Unsecured
Creditors
JPSchneider@mdmc-law.com

Joseph L. Schwartz on behalf of Creditor Lucky's Energy Service, Inc.
jschwartz@riker.com

Mary E. Seymour on behalf of Attorney Lowenstein Sandler LLP
mseymour@lowenstein.com

Mary E. Seymour on behalf of Creditor Committee Official Committee Of Unsecured Creditors
mseymour@lowenstein.com

Virginia T. Shea on behalf of Creditor VFS US LLC
vshea@mdmc-law.com, mtaranto@mdmc-law.com;kpatterson@mdmc-
law.com;gbressler@mdmc-law.com;lmodugno@mdmc-law.com

Virginia T. Shea on behalf of Creditor Volvo Financial
vshea@mdmc-law.com, mtaranto@mdmc-law.com;kpatterson@mdmc-
law.com;gbressler@mdmc-law.com;lmodugno@mdmc-law.com

Michael D. Sirota on behalf of Interested Party Great Dane LLC
msirota@coleschotz.com, fpisano@coleschotz.com

Anthony Sodono, III on behalf of Creditor Mercedes Benz Financial Services USA LLC
asodono@msbnj.com

Anthony Sodono, III on behalf of Creditor Jalil Walters
asodono@msbnj.com

Anthony Sodono, III on behalf of Creditor Rasheeda Carter
asodono@msbnj.com

Anthony Sodono, III on behalf of Creditor Shauna Jones
asodono@msbnj.com

Anthony Sodono, III on behalf of Defendant Jalil Waters and Rashida Carter
asodono@msbnj.com

Anthony Sodono, III on behalf of Defendant Shauna Jones
asodono@msbnj.com

Rebecca Ann Solarz on behalf of Creditor VW Credit Leasing, Ltd
rsolarz@kmllawgroup.com

Rick Aaron Steinberg on behalf of Creditor TOTE Maritime
rsteinberg@pricemeese.com

Gavin Stewart on behalf of Creditor VW Credit, Inc.
gavin@stewartlegalgroup.com

Daniel Stolz on behalf of Debtor New England Motor Freight, Inc.
dstolz@wjslaw.com,
dstolz@ecf.inforuptcy.com;msousa@wjslaw.com;btorres@ecf.inforuptcy.com

Douglas T Tabachnik on behalf of Creditor to Rita Alvarado The Rosato Firm, P.C., counsel
dtabachnik@dttlaw.com, rdalba@dttlaw.com

Douglas T Tabachnik on behalf of Defendant Rita Alvarado
dtabachnik@dttlaw.com, rdalba@dttlaw.com

Brett Steven Theisen on behalf of Debtor New England Motor Freight, Inc.
btheisen@gibbonslaw.com

Brett Steven Theisen on behalf of Plaintiff New England Motor Freight, Inc.
btheisen@gibbonslaw.com

Chad J. Toms on behalf of Debtor New England Motor Freight, Inc.
ctoms@wtplaw.com

Andrew R. Turner on behalf of Defendant Protective Insurance Company
courts@turnerlaw.net

Andrew R. Turner on behalf of Interested Party Protective Insurance Company
courts@turnerlaw.net

U.S. Trustee
USTPRegion03.NE.ECF@usdoj.gov

*/s/ David V. Fontana*
David V. Fontana