**GIBBONS P.C.**
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
E-mail: kgiannelli@gibbonslaw.com
mconlan@gibbonslaw.com
btheisen@gibbonslaw.com
*Counsel to the Debtors
and Debtors-in-Possession*

**LOWENSTEIN SANDLER LLP**
Joseph J. DiPasquale, Esq.
Mary E. Seymour, Esq.
John P. Schneider, Esq.
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500
E-mail: mseymour@lownstein.com
jdipasquale@lowenstein.com
jschneider@lowenstein.com
- and -

**ELLIOTT GREENLEAF, P.C.**
Rafael X. Zahralddin-Aravena, Esq.
Jonathan M. Stemerman, Esq.
Sarah Denis, Esq.
1105 North Market Street, Suite 1700
Wilmington, DE 19801
Telephone: (302)384-9400
Email: rxza@elliottgreenleaf.com
jms@elliottgreenleaf.com
sxd@elliottgreenleaf.com
*Counsel to the Official Committee of
Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Joint Administration) |

**DEBTORS' AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
THIRD MOTION FOR ORDER APPROVING LENDER SETTLEMENT PURSUANT
TO 11 U.S.C. §§ 105(a), 502, 503, and 506 AND BANKRUPTCY RULES 4001(a) AND 9019**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

1

The above-captioned debtors and debtors in possession (the "**Debtors**") and the Official Committee of Unsecured Creditors (the "**Committee**") by and through their undersigned counsel, submit this motion (the "**Motion**") for entry of an order, substantially in the form submitted herewith, approving and authorizing the Debtors' and the Committee's stipulation (the ("**Stipulation**")  with East West Bank ("**EWB**") (, the "(**Settling Lender"**), and collectively with the Debtors and Committee, the "**Settling Party**"), pursuant to sections 105(a) 502, 503, and 506 of the United States Bankruptcy Code (the "**Bankruptcy Code**") and Rules 3003, 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and D.N.J. LBR 9019-3; and in further support of the Motion, the Debtors and the Committee respectfully represent as follows:

**I.    JURISDICTION, VENUE, AND STATUTORY PREDICATES**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O).

2. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## II.    BACKGROUND

4.    On February 11, 2019 (the "**Petition Date**"), each of the above-captioned Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "**Bankruptcy Code**") with the intent to commence an orderly wind-down and liquidation of the majority of their assets and to conduct a 363 auction process for certain of their operations as a going concern under Chapter 11 (the "**Chapter 11 Cases**").  The Debtors continue in possession of their assets as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner.

5.    On February 21, 2019, Region 3 of the Office of the United States Trustee (the "**U.S. Trustee**") appointed a five-member Official Committee of Unsecured Creditors (the "**Committee**").

6.    Debtor New England Motor Freight, Inc. ("**NEMF**") was founded in 1918 in Elizabeth, New Jersey and was a leading less than truckload carrier with a focus in the Mid-Atlantic, Midwest and Northeast United States.  The other Debtors were also engaged in a broad range of transportation services, with annual gross revenues of approximately $370 million in recent years.  The Debtors are headquartered at 1-71 North Avenue East, Elizabeth, NJ  07201-2859.  Prior to the Petition Date, the Debtors operated from 36 leased trucking terminals located throughout the Mid-Atlantic, the Northeast and Midwest, and three additional leased locations in West Palm Beach, FL, New Brunswick, NY and Jordan, NY, used primarily for office, administrative staff and for the operations of Debtor, Eastern Freight Ways, Inc. ("**Eastern**").

7.    On April 5, 2019, each of the Debtors filed their respective Schedules of Assets and Liabilities and Statement of Financial Affairs.

3

8.  On April 8, 2019, the Court entered an order authorizing the sale at auction of substantially all of Debtor NEMF's personal property assets, including over 1,000 semi-tractors and 4,000 trailers, pursuant to section 363 of the Bankruptcy Code [ECF No. 434] (the "**NEMF Sale Order**").  The sales commenced on May 30, 2019 and the last auction was held on July 12, 2019.

9.  On April 16, 2019, the Court granted the Debtors' motion to reject fifty (50) real property leases as of various lease surrender dates which conform to the Debtors' projected wind-down of operations and/or auction sales at such locations [ECF Nos. 472, 478].

10. On May 1, 2019, the Court entered an order establishing June 18, 2019 at 5:00 p.m. (prevailing Eastern Time) as the deadline for creditors to submit general unsecured claims against the Debtors [ECF No. 519].

11. On May 16, 2019, the Court entered an order authorizing the going concern sale of Eastern and Carrier pursuant to section 363 of the Bankruptcy Code [ECF No. 583] (the "**Going Concern Sale**") to Estes Express Lines.  The Going Concern Sale closed on May 31, 2019.

12. On July 26, 2019, the Court entered an order authorizing the sale of the Debtors' only real property, a trucking terminal located in Miami, Florida.  [ECF No. 761].

13. Accordingly, as of the date of this Motion, substantially all of the Debtors' assets have been liquidated.[2]

---

[2] The Debtors, Committee, and the Debtors' equity holders, officers, directors, lessors, and affiliates (collectively, the "**Equity Holders and Affiliates**") have also reached a global settlement which results in cash and non-cash contributions and consideration being made to or for the benefit of the Debtors' estates, comprised of cash in the total sum of $6,100,000 (the "**Cash Payment**"), relinquishment of certain lease rejection claims, the assumption of debt, and the relinquishment of any and all other claims.  The settlement between the Debtors, the Committee, and Equity Holders and Affiliates has been submitted for approval by a separate 9019 motion [ECF No. 946].

4

14. The *Debtors' And Official Committee Of Unsecured Creditors' Joint Combined Plan Of Liquidation and Disclosure Statement* (the "**Plan**") [ECF No. 932] was filed with the court on October 21, 2019.[3]

15. Pursuant to paragraph 12(h) of the NEMF Sale Order, the Committee was required to provide Santander Bank, N.A.; JPMorgan Chase Bank, N.A., Fifth Third Bank, Wells Fargo Equipment Finance, Inc., Webster Capital Finance, Inc., VFS US LLC, T.D. Bank, N.A., East West Bank, Capital One, N.A., and Mercedes-Benz Financial Services USA LLC (collectively, the "**Lenders**") with written notice of any challenge (each, a "**Challenge**") by the Committee of the Lenders' asserted cross-collateralized security interest against certain of NEMF's property sold at auction (the "**NEMF Sale**").

16. On April 29, 2019, and May 20, 2019, the Committee notified the Lenders in writing of its Challenges. As contemplated by the NEMF Sale Order, the auctions were conducted and NEMF's property was sold, with the payment of sale proceeds to the Lenders, remaining subject to the Committee's right to file an objection (an "**Objection**") to the secured lenders' alleged lien and security interest in NEMF's property. The Debtors, the Committee and East West Bank subsequently extended the Objection deadline as to EWB through September 9, 2019 (the "**Objection Deadline**").[4]

---

[3] On June 7, 2019, the Court entered an order [ECF 661] extending the Exclusive Periods for 90 days, respectively, such that the Exclusive Filing Period currently extends through and including September 9, 2019, and the Exclusive Solicitation Period currently extends through and including November 8, 2019. In that order, the Court also granted the Committee the co-exclusive right with the Debtors to file a plan of liquidation, solicit acceptances thereto and seek confirmation thereof, but directed that during the Exclusive Periods such plan may only be filed by the Committee jointly with the Debtors.

[4] *See*, with respect to EWB, *Stipulation and Consent Order Amending NEMF Sale* Order, entered June 18, 2019 [ECF No. 688] and Second Stipulation and Consent Order Amending NEMF Sale Order, entered August 12, 2019 [ECF No. 785], and with respect to TD Bank, *Third Stipulation and Consent order Amending NEMF Sale Order*, entered September 10, 2019 [ECF No. 848].

17. On October 21, 2019, the Debtors and the Committee filed the *Debtors' and Official Committee of Unsecured Creditors' Motion for Order Approving Lender Settlements Pursuant to 11 U.S.C. §§ 105(a), 502, 503, and 506 and Bankruptcy Rules 4001(a) and 9019 to All Parties in Interest* [ECF No. 931] ("**First Lender 9019 Motion**") seeking approval of proposed settlements with Santander Bank, N.A., Fifth Third Bank, Wells Fargo Equipment Finance, Inc. and VFS US LLC. The First Lender 9019 Motion was set for hearing on November 12, 2019 at 10:00 a.m. and has been adjourned to November 19, 2019 at 10:00 a.m.

18. On October 29, 2019, the Debtors and the Committee filed the *Debtors' and Official Committee of Unsecured Creditors' Second Motion for Order Approving Lender Settlements Pursuant to 11 U.S.C. §§ 105(a), 502, 503, and 506 and Bankruptcy Rules 4001(a) and 9019* [ECF No. 945] ("**Second Lender 9019 Motion**") seeking approval of proposed settlements with JPMorgan Chase Bank, N.A., Capital One, N.A. and Mercedes-Benz Financial Services USA LLC. The Second Lender 9019 Motion is set for hearing on November 19, 2019 at 10:00 a.m. The Settling Parties will be filing a motion to expedite the hearing on the Motion so that it can be heard at the November 19, 2019 hearing.

19. During the course of the liquidation of the Debtors' assets, disputes arose between the Settling Parties relating to, among other things, the (a) allowance of certain administrative expenses and professional fees incurred by the Debtors and the Committee; (b) entitlement to $5,958,117 held in escrow from the Eastern Sale (the "**Eastern Escrow Funds**"); (c) allowance of an alleged $6,235,745 administrative claim asserted by the NEMF estate against the Eastern and Carrier estates, which the Settling Lenders disputed (the "**NEMF Administrative Claim**"); (d) allocation of certain proceeds of a pending settlement with statutory insiders of the Debtors in the aggregate amount of $6,100,000 (the "**Insider Settlement Proceeds**"); (e) continued

6

administration of the estates, including but not limited to the proposed establishment of and transfer of assets to a liquidating trust ( the "**Liquidating Trust**"); (f) administration of and the pursuit of preference claims and claims resolution proceedings; and (g) the terms of a proposed plan of liquidation (the "**Plan of Liquidation**") (collectively, the "**Disputed Issues**");

20. The Settling Parties, together with their respective undersigned counsel, engaged in good faith, arms-length settlement discussions relating to the Disputed Issues. The Debtors, the Committee, and the Settling Lenders have reached a global resolution of the Disputed Issues and separate agreements were reached with each of the Settling Lenders, the most salient terms of which are reflected below and are incorporated into the Stipulations between the Debtors, the Committee, and the Settling Lender, attached hereto as **Exhibit A**.[5] The Settling Parties' desire to mutually, amicably, and finally resolve the Disputed Issues between the Settling Parties on the terms set forth in the Stipulations.

## III.   RELIEF REQUESTED

21. By this Motion, the Settling Parties request entry of an order, in the form submitted herewith (the "**Proposed Order**"), approving the Stipulation entered into with the Settling Lender resolving the Disputed Issues.

### A.   The Settlements

22. The terms of the Stipulation with the Settling Parties provide as follows:

   **a.** The Settling Lender shall support confirmation of the Plan of Liquidation previously filed by the Committee and the Debtors provided that such plan (and any disclosure statement, exhibits, documents, amendments, and supplements related thereto) is amended so that it fully conforms to and does not contradict each of the terms and conditions set forth in the Settling Lender's Stipulation and is otherwise in a form reasonably acceptable to the

---

[5] The Committee and the Debtors are continuing to negotiate a potential settlement with Webster Capital Finance, Inc and T.D. Bank, N.A..

    Settling Lender (a "**Conforming Joint Plan**"). The Settling Lender shall not object to the Court's confirmation of a Conforming Joint Plan, and shall affirmatively vote in favor of a Conforming Joint Plan which includes, among other things, the provisions of the Settling Lender's Stipulation; provided, however, that each of the Settling Lenders reserves its right to vote against and object to a Conforming Joint Plan that contains terms adverse to the Settling Lender that are not specifically provided for or addressed in the Settling Lender's Stipulation.

b. The Objection Deadline previously expired without any Objection having been filed and without any claims or Challenges having been asserted against EWB, such that any and all such potential claims, Challenges or Objections have been irrevocably waived.

c. The Debtors' estates shall be substantively consolidated into the "**Eastern Consolidated Estates**" (which shall be comprised of the substantively consolidated estates of Eastern and Carrier) and the "**NEMF Consolidated Estates**" (which shall be comprised of the substantively consolidated estates of NEMF, NEMF World Transport, Inc., Apex Logistics, Inc., Jan Leasing Corp., Myar, LLC, MyJon, LLC and NEMF Logistics, LLC).

d. The dispute over the NEMF Administrative Claim shall be resolved by payment of 75% of the NEMF Administrative claim ($4,676,809) to the NEMF Consolidated Estates from the Eastern Escrow Funds, with the balance of $1,281,308 of the Eastern Escrow Funds being retained by the Eastern Consolidated Estates for the benefit of the Eastern Consolidated Estates and their creditors.

e. The dispute over the $6,100,000 Insider Settlement Proceeds shall be resolved by allocating the Insider Settlement Proceeds as follows: (a) $500,000 shall be distributed to the Liquidating Trust for payment of its reasonable and necessary expenses as more fully set forth below (the "**Trust Allocation**"), (b) $1,400,000 shall be distributed to the Eastern Consolidated Estates for the benefit of the Eastern Consolidated Estates and their creditors, and (c) $4,200,000 shall be distributed to the NEMF Consolidated Estates for the benefit of the NEMF Consolidated Estates and their creditors.

f. The Settling Lender shall support, as part of a Conforming Joint Plan, the establishment of the Liquidating Trust on terms acceptable to the Settling Lender, which terms shall include the following:

    (i)    Kevin Clancy shall be appointed as the initial trustee of the Liquidating Trust (the "**Liquidation Trustee**"), and shall be paid a monthly fee of no more than $25,000 for each full month in which he

8

serves in such capacity and which monthly fee shall not be increased;

(ii) all of the professional fees and expenses of the Liquidating Trust, including but not limited to the fees and expenses of the Liquidation Trustee, shall be paid only from the Trust Allocation and from no other source and shall not exceed, in the aggregate, $500,000;

(iii) to the extent that any portion of the Trust Allocation remains after completion of the administration of the Liquidating Trust, such amount shall be included in the final distribution to be made to creditors by the Liquidating Trustee from the Liquidating Trust;

(iv) no assets (including any cash presently in any bank account) of the Eastern Consolidated Estates shall be transferred to the Liquidating Trust, and all such assets shall be administered outside of the Liquidating Trust for distribution solely to creditors holding Allowed Claims (as defined in the Conforming Joint Plan) against the Eastern Consolidated Estates;

(v) all reasonable fees and expenses incurred in administering the Eastern Consolidated Estates subsequent to confirmation of the Conforming Joint Plan shall be paid solely from the Trust Allocation;

(vi) any preference actions initiated on behalf of the Liquidating Trust shall be pursued on a pure contingency fee basis;

(vii) prior to the effective date of the Conforming Joint Plan, the Debtors' professionals shall perform all claims reconciliation work and shall use best efforts to file and prosecute all necessary and appropriate objections to claims with respect to the Eastern Consolidated Estates; and

(viii) the Liquidating Trustee shall use best efforts to make a final distribution from the Eastern Consolidated Estates to creditors holding Allowed Claims (as defined in the Plan of Liquidation) against the Eastern Consolidated Estates within forty-five (45) days after the effective date of the Conforming Joint Plan.

**g.** The Committee's and Debtors' retained professionals will provide timely reporting to the Settling Lender for all professional fees incurred from the period commencing October 1, 2019 through the effective date of the Conforming Joint Plan, with such reporting to be provided by no later than the 15th day of the month following the month during which such fees were incurred. The Settling Lender's rights to object to fees and expenses incurred from October 1, 2019 through the effective date of the Conforming Joint Plan (or such date upon which a plan other than the Conforming Joint Plan is confirmed, or such date upon which the cases are converted or

dismissed in the event that the Conforming Joint Plan is not confirmed), shall be fully reserved, notwithstanding resolution of certain administrative expenses and professional fees incurred by the Debtors and the Committee referenced herein in paragraph 19. The Settling Lender agrees that the Consolidated Eastern Estates shall be responsible to pay 16% of all allowed professional fees incurred in the Debtors' cases through the effective date of the Conforming Joint Plan.

**h.** The Settling Lender shall have allowed secured and unsecured claims against the NEMF Consolidated Estates[6] and the Eastern Consolidated Estates in the amounts set forth in the Settling Lender's Stipulation (collectively, the "**Claim**"). However, the Settling Lender shall receive no more on account of its Claim than the face value of its respective claim against the NEMF Consolidated Estates, plus reasonable attorney's fees, expenses and interest.[7] The Claim shall be allowed pursuant to the Court's Order approving this Motion and included in the Plan as an Allowed Claim (as that term is defined in the Plan).[8]

**i.** The Settling Parties have reconciled the proofs of claim filed by the Settling Lender to account for the proceeds the Settling Lender received on account of the NEMF Sale and Going Concern Sale, as well as with respect to the Settling Lender's asserted administrative expense claim, if any.

**j.** The Stipulation shall be binding on (a) the Parties thereto, including any successors thereof, (b) any trustee appointed or elected in the Debtors' Chapter 11 cases, and/or (c) any trustee appointed in any Chapter 7 case of any of the Debtors.

---

[6] New England Motor Freight, Inc. (7697); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Myar, LLC (4357); MyJon, LLC (7305); and NEMF Logistics, LLC (4666). These entities were either not operating or were consolidated into the NEMF operations because they had de minimis assets or operations.

[7] The Settling Lender shall be permitted to assert the full amount of its Claim for Plan voting and Plan distribution purposes. *See In re Realty Assocs. Sec. Corp.,* 66 F. Supp. 416, 424 (E.D.N.Y. 1946), *aff'd sub nom. Kelby v. Manufacturers Tr. Co.,* 162 F.2d 350 (2d Cir. 1947), *and aff'd in part, modified in part,* 163 F.2d 387 (2d Cir. 1947) ("[T]he holder of a claim upon which several parties are liable may prove its entire claim against the estate of any who become bankrupt and recover dividends calculated on the basis of such entire claim as it existed when the petition was filed, without regard to partial payments made by other obligors until from all sources it has been paid in full."). The Settling Lenders each have guarantees against the Eastern and Carrier estates on behalf of NEMF obligations and can assert the full amount of their proof of claim in NEMF in guarantee claims against the Eastern and Carrier estates without reduction for proceeds or adequate assurance received under the *In re Realty Assocs. Sec. Corp.,* case. *See also Ivanhoe Bldg. & Loan v. Orr,* 295 U.S. 243, 55 Sup. Ct. 685, 79 L. Ed. 1419 (1935).

[8]

## IV.  BASIS FOR RELIEF AND REASONS THEREFOR

23. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." It is well settled that in order to "minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY 9019.03[1] (15th ed. 1993)). Accordingly, when required, "courts are able to craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, affect the result the [Bankruptcy] Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003).

24. Section 502 of the Bankruptcy Code governs the allowance of claims or interests of unsecured claims and section 503 of the Bankruptcy Code governs the allowance of administrative expenses. Bankruptcy Rule 3003(c) governs the filing of proofs of claim in a case filed under Chapter 11 of the Bankruptcy Code. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

25. The decision to approve a compromise of a claim is within the sound discretion of this Court. *In re World Health Alt., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986) ("Approval of the settlement lies within the sound discretion of the Bankruptcy Court."). In approving a settlement, a bankruptcy court need not be convinced that the settlement is the best possible

11

compromise, but rather must conclude that the settlement falls within the reasonable range of litigation possibilities and is at least above "the lowest point in the range of reasonableness." *In re Capmark*, 438 B.R. 471, 515 (Bankr. D. Del. 2010). *See also Official Unsecured Creditors' Comm. of Pa. Truck Lines, Inc. v. Pa. Truck Lines, Inc. (In re Pa. Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993). In determining whether to approve a settlement, bankruptcy courts have determined that the ultimate inquiry is whether the compromise is fair, reasonable and in the best interest of the estate. *Key3Media Grp., Inc. v. Pulver. Corn, Inc. (In re Key3 Media Grp., Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). *See also Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

26. To approve a settlement under Bankruptcy Rule 9019(a), the Court must find that it is "fair, reasonable and in the nest interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). This standard has been further described as follows:

> In undertaking an examination of the settlement, we emphasize that this responsibility of the bankruptcy judge … is not to decide the numerous questions of law and fact raised … but rather to canvas the issues and see whether the settlement "fall[s] below the lowest point in the range of reasonableness.

*Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1982) *cert. denied* 464 U.S. 822 (1983). The United States Supreme Court has found that in determining the fairness of a compromise, a judge should:

> Form an educated estimate of the complexity, expense and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors rolled into a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

12

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 419, 424-25 (1968).

27. The Third Circuit in *In re Martin*, 91 F.3d at 393, applied *TMT Trailer* in the context of a settlement pursuant to FED. R. BANKR. P. 9019(a), and enumerated the following factors to guide a court in its determination of the reasonableness of a settlement: (i) the probability of successful litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending to it; and (iv) the paramount interest of creditors appearing. *See also, In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006).

28. A proposed settlement need not be the best one that could be achieved, but must only fall "within the reasonable range of litigation possibilities." *In re Penn Central Transp. Co.,* 596 F.2d 1102, 1114 (3d Cir. 1979). As another court in this district explained, "the court is not supposed to have a 'mini-trial' on the merits, but should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *In re Jasmine Ltd.*, 258 B.R. 119, 124 (D.N.J. 2000) quoting *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

29. The court should "defer to the [debtor in possession's] judgment so long as there is a legitimate business justification" to support the settlement. *In re Martin*, 91 F.3d at 395 (citations omitted). Settlements should only be rejected if they fall "below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d at 608 (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

30. On the facts *sub judice*, there can be no doubt that the relief sought herein is being pursued in good faith, after a careful analysis of the competing claims, costs and

13

benefits to the estate. The terms of the Stipulations were agreed upon after a careful analysis by the Debtors and the Committee, and rigorous negotiations with the Settling Lenders, to which the Debtors and Committee balanced the risks of litigating their differences with the Settling Lenders, including claims objections and potentially a contested plan confirmation process, against the certainty and plan support that the Stipulations provide.

31.     The Debtors and the Committee submit that the Stipulation is fair and reasonable and in the best interests of the Debtors' estates. The following application of the *Martin* factors demonstrates that the proposed Stipulation falls well within the "range of reasonableness" and, therefore, the Stipulations should be approved. Specifically, the Debtors and the Committee submit the following:

### a. Probability of Success on the Merits

32.     In the event the Stipulation is not approved, it is likely that the Debtors, the Committee and the Settling Lender will need to litigate issues surrounding the Disputed Issues, among other issues  And, while the Debtors and Committee believe that they would ultimately be successful on some or all of these issues, a judicial determination regarding these issues would likely require substantial discovery (including document production and depositions and motion practice, resulting in protracted and time consuming litigation, which would deplete assets of the Debtors' estates. Further, any judgment obtained may be subject to appeal, with no guarantee as to the ultimate outcome.

33.     The uncertainty weighs in favor of compromise under these circumstances. *Moren v. Ray & Bergman, et. al.,* 2007 WL 953115 (9th Cir. Jan. 29, 2007) ("Given the tremendous uncertainty of success at trial, this factor weighs heavily in favor of approval of the compromise"). *See also In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 518 (Bankr. D. Del.

2010) (finding uncertainty weights in favor of settlement).

34. Therefore, the Debtors and the Committee believe that the settlements embodied in the Stipulation is a substantially more favorable result than litigation.

### b. Collection Difficulties

35. The Debtors are not currently seeking any monetary relief against the Settling Lender, but if they were, it is unlikely that collection difficulties would be at issue in this case.

### c. Complexity, Expense and Delay

36. In the event that the Stipulation is not approved, it is likely that the Debtors, the Committee, and the Settling Lender will litigate the Disputed Issues and judicial determinations regarding the Disputed Issues, including plan confirmation, would likely require substantial discovery (including document production and depositionsand motion practice, resulting in protracted and time consuming litigation, which would deplete assets of the Debtors' estates. The Debtors and the Committee believe that the Disputed Issues are fact-intensive and complex.

37. The Stipulation determines the Settling Lender's claim in these cases and resolve the Disputed Issues. Simply put, the Stipulation will save the Debtors and their estates the costs and expenses of litigating various disputes, which could otherwise consume substantial resources of the Debtors' estates, require substantial time to adjudicate and may ultimately not yield any benefit to the estates.

### d. Interest of Creditors

38. Approval of the Stipulation is in the paramount interest of the creditors of the Debtors' estates. The Debtors' and the Committee's analysis of the risks and benefits of the Stipulation warrants this Court's approval. The Stipulation will also reduce costs associated with the claims process that would have not only produced disputes between the

Settling Lender, the Debtors, and the Committee, but likely other creditors and interested parties. The Stipulation will provide certainty with respect to the Settling Lender's claim against the Debtors' estates and support for a Conforming Joint Plan, all the while avoiding the costs and delay attendant to any potential contested claims or issues with the Plan. The Debtors and their creditors will therefore substantially benefit from the Stipulations.

39. Accordingly, the Debtors and the Committee respectfully submit that the *Martin* factors are met, the settlement embodied in the Stipulation falls well within the lowest "range of reasonableness" and, therefore, the Stipulation should be approved pursuant to sections 105(a), 502 and 503 of the Bankruptcy Code, as well as Bankruptcy Rule 9019.

### V.     WAIVER OF MEMORANDUM OF LAW

40. Because the legal basis upon which the Debtors and the Committee rely is incorporated herein and the Motion does not raise any novel issues of law, the Debtors and the Committee respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3).

### VI.    NO PRIOR REQUEST

41. No other motion for the relief sought herein has been made to this Court or to any other court.

### VII.   NOTICE

42. Notice of this Motion has been provided to the following parties:

    **a.** Counsel for the Settling Lender;

    **b.** Counsel for the Committee;

    **c.** Office of the United States Trustee for Region Three;

    **d.** All other secured creditors; and

e.  All parties that have requested to receive notice pursuant to FED. R. BANKR. P. 2002. In light of the nature of the relief requested herein, the Debtors and the Committee respectfully submit that no other or further notice is required.

WHEREFORE, the Debtors and the Committee respectfully request the entry of an order substantially in the form submitted herewith, granting the relief request in the Motion, approving the Stipulation, and granting such other and further relief as may be just and proper.

Dated:  November 14, 2019                    Respectfully submitted,

**GIBBONS P.C.**

By**:  */s/Brett S. Theisen***
Karen A. Giannelli, Esq.
Mark B. Conlan, Esq.
Brett S. Theisen, Esq.
One Gateway Center
Newark, New Jersey  07102
Telephone: (973) 596-4500
Facsimile:   (973) 596-0545
E-mail:  kgiannelli@gibbonslaw.com
mconlan@gibbonslaw.com
btheisen@gibbonslaw.com
*Counsel to the Debtors and Debtors-in-Possession*

**LOWENSTEIN SANDLER LLP**

By: */s/Joseph J. DiPasquale*
Joseph J. DiPasquale, Esq.
Mary E. Seymour, Esq.
John P. Schneider, Esq.
One Lowenstein Drive
Roseland, NJ  07068
Telephone:  (973) 597-2500
Facsimile:   (973) 597-2400
E-mail:  mseymour@lownstein.com
jdipasquale@lowenstein.com
jschneider@lowenstein.com

- and -

**ELLIOTT GREENLEAF, P.C.**
Rafael X. Zahralddin-Aravena, Esq.
Jonathan M. Stemerman, Esq.
Sarah Denis, Esq.
1105 North Market Street, Suite 1700
Wilmington, DE  19801
Telephone:  (302)384-9400
Facsimile:  (302) 384-9399
Email:  rxza@elliottgreenleaf.com
jms@elliottgreenleaf.com
sxd@elliottgreenleaf.com

*Counsel to the Official Committee of Unsecured Creditors*