# EXHIBIT C

**AUTO LIABILITY CLAIMS PROTOCOL SETTLEMENT AGREEMENT**

# AUTO LIABILITY CLAIMS PROTOCOL SETTLEMENT AGREEMENT
(To Be Approved by FRBP Rule 9019(b) Pursuant to the Plan)

The parties, New England Motor Freight, Inc. and its affiliated debtors (collectively, the "Debtors"), the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases (the "Committee"), United States Fire Insurance Company ("U.S. Fire"), and Protective Insurance Company ("Protective") (together with the Debtors, and the Committee are each a "Party" to this Agreement, and together, these entities are collectively referred to as the "Parties") enter into this Settlement Agreement (the "Agreement"), which, subject to the approval of the Bankruptcy Court presiding over the Debtors' chapter 11 cases, sets forth the terms and conditions of their agreement to resolve certain pending legal proceedings and disputes between them.

## RECITALS

**A.** On February 11, 2019 (the "Petition Date"), debtors New England Motor Freight, Inc. and certain affiliates[1] each filed a petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). These bankruptcy cases (collectively, the "Bankruptcy Cases") are jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure as *In re:, New England Motor Freight, Inc. et al.*, Case No. 19-12809-JKS.

**B.** The Debtors have continued in the possession of their properties and have continued to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**C.** No request has been made for the appointment of a trustee or an examiner in these cases. On February 21, 2019, the Committee was appointed by the Office of the United States Trustee.

**D.** On March 14, 2019, the Debtors commenced an adversary proceeding styled *New England Motor Freight, Inc., et al. v. State Farm Mutual Automobile Insurance Company, a/s/o Riquet Simplice, et. al.*, Adv. Pro. No. 19-01119 in the United States Bankruptcy Court for the District of New Jersey (the "Auto Liability Injunction Action"). The purpose of the Auto Liability Injunction Action was to (i) seek a preliminary injunction under 11 U.S.C. §§ 105(a) and 362(a) enjoining the continuation or commencement of any action against any of the Debtors' employees and/or former employees who may be individually liable for Auto Liability Claims (collectively, the "Drivers"), and/or (ii) extend the automatic stay to protect the Debtors' estates on account of possible indemnity claims the Drivers may possess against the Debtors if judgment is entered against a Driver in any Auto Liability Action.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

1

**E.** On April 16, 2019, the Court entered a temporary restraining order in the Auto Liability Injunction Action staying the Auto Liability Actions (the "TRO"), and directed the parties to meet and confer regarding a consensual protocol to govern the orderly resolution of all Auto Liability Claims. The Court subsequently extended the TRO, with the consent of the parties—including the Insurers and an ad hoc group of counsel representing Holders of Auto Liability Claims—while those discussions continued, including through the General Bar Date on June 18, 2019, and the Special Administrative Claims Bar Date applicable to certain Auto Liability Claims (defined below) arising after the Petition Date. The TRO is presently in effect through November 5, 2019 [Adv. Proc. No. 19-01119, Docket No. 46].

**F.** On October 21, 2019 the Debtors and the Committee filed the *Debtors' and Official Committee of Unsecured Creditors' Joint Combined Plan of Liquidation and Disclosure Statement* [Docket No. 932] (as amended, the "Plan"), and on November 8, 2019 the Debtors and the Committee filed an amended Plan [Docket No. __]. The Debtors and the Committee anticipate that a hearing to consider conditional approval of the Plan and solicitation procedures will be scheduled in November 2019. The Debtors and the Committee anticipate that a hearing to consider confirmation of the Plan will be scheduled in January 2020.

**F.** Protective and U.S. Fire (together, the "Insurers" and each an "Insurer") are parties to various insurance contracts with the Debtors (the specific policies are identified on Exhibit A) (the "Excess Indemnity Contracts") that may apply to certain claims for personal injury or property damage relating to or arising out of the Debtors' commercial trucking and transportation operations ("Auto Liability Claims").

**G.** The terms and provisions contained in each of the Excess Indemnity Contracts speak for themselves and govern the obligations of the parties to each such contract. Notwithstanding, the Debtors represent that the terms and conditions are materially the same across all of the Excess Indemnity Contracts. Generally, the Excess Indemnity Contracts provide that a self-insured retention amount of $500,000.00 (the "SIR") applies to each claimed occurrence under the Excess Indemnity Contracts. The Debtors assert that the Insurers are obligated to indemnify one or more of the Debtors for amounts paid by the Debtors on a per occurrence basis above the SIR

**H.** In order to guarantee the Debtors' obligations to the public for the payment of claims within the Self-Retention (and above, up to $1,000,000 "for each accident"), both U.S. Fire and Protective filed surety bonds and certificates with federal and state regulatory agencies and others (the "Surety Bonds"). The Surety Bonds are judgment bonds under which the Insurer "agree[s] to be responsible for the payment of any final judgment or judgments against [one or more of the Debtors] for public liability, property damage, and environmental restoration liability claims", including any final judgment issued against one or more of the Debtors relating to Auto Liability Claims, in the amount of $1,000,000 "for each accident". Surety Bonds, pp. 1-2. The Insurers retain the right and ability to settle and pay such claims prior to judgment without interference or objection by the Debtors. In exchange for the foregoing surety obligations, the Debtors executed various collateral and indemnity agreements with the Insurers providing for the Debtors' indemnification of the Insurers for costs incurred or payments made pursuant to the terms

and conditions of the Surety Bonds because of the Debtors' inability or refusal to make such payments.

  **I.**  As collateral to secure the Debtors' Self-Retention and potential indemnification obligations, the Debtors caused letters of credit to be issued in favor of both Protective and U.S. Fire. After receiving notice by certain lenders that the Debtors' letters of credit with those lenders would not be renewed, both Protective (in the amount of $9,539,000) (the "<u>Protective Auto Liability LC Proceeds</u>") and U.S. Fire (in the amount of $2,450,000) (the "<u>U.S. Fire Auto Liability LC Proceeds</u>," and collectively with the Protective Auto Liability LC Proceeds, the "<u>Auto Liability LC Proceeds</u>") drew down on their respective letters of credit. The Protective Auto Liability LC Proceeds were paid by East West Bank and Santander Bank, and the U.S. Fire Auto Liability LC Proceeds were paid by JPMorgan Chase Bank, N.A. (collectively, the "<u>Payor Banks</u>").

  **J.**  Protective filed timely proofs of claim with each of the Debtors (Claim Nos. 1144, 1146, 1147, 1148, 1149, and 1150, collectively the "<u>Protective POCs</u>") regarding, among other things, Protective's contingent and unliquidated claim against the Debtors to the extent that Protective's losses, costs, and expenses that fall within the SIR exceed the amount of the Protective Auto Liability LC Proceeds.

  **K.**  U.S. Fire filed timely proofs of claim with each of the Debtors (Claim Nos. 937, 938, 939, 940, 941, 942, 943, 944, 945, 946, and 947, collectively the "<u>U.S. Fire POCs</u>") regarding, among other things, U.S. Fire's contingent and unliquidated claim against the Debtors to the extent that U.S. Fire's losses, costs, and expenses that fall within the SIR exceed the amount of the U.S. Fire Auto Liability LC Proceeds.

  **L.**  The Parties believe it is in their respective best interests to resolve, to the extent set forth in this Agreement, certain claims, disputes and issues that exist among them with respect to the Protective POCs, the U.S. Fire POCs, and/or the applicable Excess Indemnity Contracts, Surety Bonds, and/or other collateral and indemnity agreements, in order to avoid the high costs, uncertainty, and delay of any and all possible legal proceedings.

  **M.**  The Parties understand and agree that this Agreement is dependent and contingent upon entry of a final and non-appealable order of the Bankruptcy Court confirming the Plan, which Plan incorporates the terms of this Agreement and that final approval of the Plan by the Bankruptcy Court is a condition precedent to the validity and enforceability of this Agreement and the Parties' performance of their respective duties and obligations set forth herein.

  **NOW, THEREFORE**, after extensive review and negotiations between the Parties, and in consideration of the foregoing recitals and of the mutual agreements, covenants and releases set forth herein, and for other good and valuable consideration, the sufficiency and adequacy of which is acknowledged by the Parties, the Parties hereto agree as follows:

## AGREEMENT

I. **Recitals.** The above recitals are true and correct, incorporated herein as an integral part of this Agreement, and a material inducement for the Parties to enter into this Agreement.

II. **Rules of Construction.** The following rules of construction govern and apply to the interpretation and construction of this Agreement:

   a. Use of the term "Debtor" or "Debtors" includes the Debtor(s) current and former agents, employees, officers and directors, successors and assigns, as applicable, and each in such capacity.

   b. Use of the term "Protective" includes Protective's current and former agents, employees, officers and directors, all successors and assigns of Protective, as applicable, and each in such capacity.

   c. Use of the term "U.S. Fire" includes U.S. Fire's current and former agents, including but not limited to DMC Insurance, employees, officers and directors, all successors and assigns of U.S. Fire's, as applicable, and each in such capacity.

   d. "Liquidating Trust" shall mean the liquidating trust established by the Plan and described in Article VII of the Plan and in the Liquidating Trust Agreement establishing and delineating the terms and conditions of the Liquidating Trust, a copy of which shall be provided in a supplement to the Plan.

   e. "Liquidating Trustee" shall mean the person or entity designated pursuant to Article VII of the Plan to act in accordance with the terms and authority granted under the Plan and the Bankruptcy Court's order confirming the Plan. The initial Liquidating Trustee will be Kevin P. Clancy.

   f. Capitalized terms in this Agreement and in the exhibits hereto that are not otherwise defined herein shall have the meanings ascribed to them in the Plan. In the event of any inconsistency, the Plan shall control.

   g. The headings of the sections of this Agreement are intended only as a guide and are not intended, and should not be construed, as controlling, enlarging, restricting, explaining or modifying, in any manner, the language or meaning of those sections or subsections.

III. **Effective Date.** This Agreement shall be effective on the date upon which Plan is confirmed pursuant to a confirmation order entered by the Bankruptcy Court, which order includes approval of this Agreement (the "Settlement Effective Date").

IV. **Reservation of Existing Contractual Rights and Continuing Effect.** The Debtors and the Insurers reserve all of their rights under the Excess Indemnity Contracts, the Surety Bonds, and/or any and all collateral and/or indemnity agreements between the Debtors and an Insurer relating in any way to one or more Excess Indemnity Contracts or Surety Bonds. Pursuant to the Plan, except

as set forth herein, the Excess Indemnity Contracts, the Surety Bonds, and any other collateral and/or indemnity agreements related thereto shall continue in effect after the Effective Date pursuant to their respective terms and conditions and shall be treated as if assumed. For the avoidance of doubt, notwithstanding that such Excess Indemnity Contracts, Surety Bonds, and other collateral and/or indemnity agreements shall be treated as if assumed, no Insurer shall be entitled to assert and/or receive any distribution from the Liquidating Trust or the Consolidated Eastern Debtors on account of any asserted claims, including Administrative Expense Claims, except as expressly set forth herein or in the Plan.

V. **Insurers' Assumption of Administration.** In furtherance of the Insurers' existing rights under the Excess Indemnity Contracts to assume the administration of Auto Liability Claims and/or any litigation resulting therefrom in whole or part, upon the Effective Date, the Insurers shall assume from the Debtors the sole right and obligation to administer all Auto Liability Claims (including those that involve amounts below the Self-Retention), including the obligation to investigate, defend (including the selection of counsel and all other matters involving litigation), and settle such claims, but only with respect to those Auto Liability Claims arising prior to the Petition Date. Auto Liability Claims arising after the Petition date shall be treated as Administrative Expense Claims under the Plan. The Debtors, the Debtors' Estates, the Liquidating Trust, and the Liquidating Trustee shall cooperate with the Insurers in all matters following the assumption of administration under this Agreement. The Insurers agree that their obligations under the Excess Indemnity Contracts, Surety Bonds, or any other collateral and/or indemnity agreements shall remain in full force and effect. The Insurers shall not disclaim coverage under the Excess Indemnity Contracts based solely upon the Debtors' failure to pay the Self-Retention, except as otherwise provided for in the Excess Indemnity Contracts, Surety Bonds, or any other collateral and/or indemnity agreements or under applicable law. Nothing contained herein is intended to increase or enhance the Insurers' existing contractual obligations in accordance with the terms of the Excess Indemnity Contracts, Surety Bonds, or any other collateral and/or indemnity agreements in any manner.

VI. **Insurers' Use of Auto Liability LC Proceeds; Mandatory Reporting.** Each Insurer shall be permitted to utilize its respective Auto Liability LC Proceeds only in accordance with the terms of the applicable Excess Indemnity Contract, the Surety Bonds, and/or any other collateral and/or indemnity agreement between the Debtors and such Insurer relating to the applicable Excess Indemnity Contracts and/or Surety Bonds, which shall specifically include, (i) for U.S. Fire, the right to utilize the U.S. Fire Auto Liability LC Proceeds to pay all reasonable and customary sums paid or to be paid by U.S. Fire to its counsel, Riker Danzig Scherer Hyland & Perretti LLP ("Riker Danzig"), in connection with Riker Danzig's representation of U.S. Fire in the Bankruptcy Case, and all reasonable and customary sums paid to DMC Insurance for its fees for time and expenses incurred in the handling of the Auto Liability Claims for U.S. Fire, and (ii) for Protective, the right to utilize the Protective Auto Liability LC Proceeds to pay all reasonable and customary sums paid or to be paid by Protective to its counsel, Turner Law Firm, LLC ("Turner Law"), in connection with Turner Law's representation of Protective in the Bankruptcy Case, and all reasonable and customary sums incurred by Protective or its agents for fees for time and expenses incurred in the handling of the Auto Liability Claims for Protective. The fees and expenses incurred by U.S. Fire, DMC, Protective, or any of their agents shall be comparable to industry standards. Reasonable time and expenses shall include travel time, plus all reasonable actual out-of-pocket expenses.

Following the Effective Date of the Plan (as defined and provided therein), each Insurer shall provide to the Liquidating Trustee for the Debtors' estates on a quarterly basis concerning written report concerning: (i) the Auto Liability Claims being administered and/or defended pursuant to the Auto Liability Protocol; (ii) losses and allocated expenses and fees, as defined above, related to the same; (iii) the Insurer's remaining amount of Auto Liability LC Proceeds; (iv) the Insurer's projected use of Auto Liability LC Proceeds as to each remaining Auto Liability Claim; and (v) any other information as the Liquidating Trustee may reasonably request related to the Auto Liability Claims Protocol and the use of Auto Liability LC Proceeds. The Liquidating Trustee's only basis to challenge or object to an Insurer's use of Auto Liability LC Proceeds shall be unreasonableness with respect to fees and expenses in comparison with industry standards, or gross negligence, willful dishonesty or fraud on the part of an Insurer, which shall be asserted by filing a written objection with the Bankruptcy Court.

VII. **ADR Program.** There will be a mandatory alternative dispute resolution program implemented as part of the Plan, attached hereto as Exhibit B. The Plan shall include appropriate provisions requiring that all claimants participate in the mandatory alternative dispute resolution procedures included in Exhibit B hereto and enjoining such claims from being pursued until such alternative dispute resolution have been followed.

VIII. **Return of Excess Auto Liability LC Proceeds to Liquidating Trust.** After the final resolution of all Auto Liability Claims by the Insurers, the Insurers, consistent with the terms of any applicable contractual obligations and applicable law, shall turn over any excess Auto Liability LC Proceeds to the Liquidating Trust, to be held by the Liquidating Trust in escrow pending a final determination by the Bankruptcy Court as to the ownership of and appropriate disposition of such funds.

IX. **Waiver of Indemnity Claims.** Any Auto Insurer Unsecured Indemnity Claim (as defined in the Plan) against the Debtors, the Liquidating Trust, the Debtors' current and former owners, shareholders, members, managers, agents, employees, officers, directors, landlords (to the extent any such landlord is or was owned or controlled by any current or former owner of any Debtor), successors and assigns, as applicable, and each in such capacity, shall be deemed waived, released, and discharged on the Effective Date of the Plan, and such Insurer shall also not be entitled to any Distribution from the Liquidating Trust Assets or the Assets of the Consolidated Eastern Debtors on account of such Auto Insurer Unsecured Indemnity Claim.

X. **Release of Auto Liability Claims Against the Debtors *et al.*** The Plan shall provide that as of the Effective Date, all Holders of Auto Liability Claims shall be deemed to grant a release of Auto Liability Claims in favor of the Debtors, the Drivers, the Debtors' Estates, all Estate representatives, the Exculpated Parties, the Released Parties and the Liquidating Trust (collectively, the "Auto Liability Claims Released Parties") *provided, however,* that Holders of Auto Liability Claims shall not be deemed to release their rights to include one or more of the Debtors as a "nominal" party to any future litigation against an Insurer in order to seek payment of such Auto Liability Claims from the Insurers and/or the Auto Liability Claims LC Proceeds, pursuant to this Agreement. No Holder of an Auto Liability Claim shall be entitled to receive a Distribution from the Liquidating Trust or the Consolidated Eastern Debtors on account of such Auto Liability Claim. *For the avoidance of doubt, Holders of Auto Liability Claims shall not be*

*deemed to grant any release in favor of the Insurers upon or after the Effective Date, with the Insurers reserving and retaining all rights and defenses.*

XI. **Auto Liability Claims Injunction.** The Plan shall provide that, pursuant to 11 U.S.C. § 105(a), upon the Effective Date, all Holders of Auto Liability Claims shall be enjoined from taking any action, directly or indirectly, for the purpose of collecting, recovering or receiving payment or recovery with respect to an Auto Liability Claim until and unless each such Holders comply with the terms of the ADR Procedures (the "Auto Liability Claims Injunction"). The Auto Liability Claims Injunction shall dissolve automatically with respect to any Auto Liability Claim two (2) business days after the filing of an Unsuccessful Mediation Notice (as described and defined in the ADR Procedures attached hereto) for such Auto Liability Claim. Upon the filing of such Unsuccessful Mediation Notice, the Holder of such Auto Liability Claim shall automatically be deemed to have been granted relief from the automatic stay, the Injunction listed in Article X(C) of the Plan, and this Auto Liability Injunction for the limited purpose, if necessary, of listing one or more of the Debtors as a "nominal" party to any future litigation commenced by such Holder to seek payment of such Auto Liability Claim from the Insurers and/or the Auto Liability Claims LC Proceeds, including any amount within the Self-Retention. For the avoidance of doubt, no Holder of Auto Liability Claim, even after the Auto Liability Injunction is dissolved, shall be entitled to receive any Distribution from the Liquidating Trust Assets or the Assets of the Consolidated Eastern Debtors on account of such Auto Liability Claim. Holders of Auto Liability Claims shall only be entitled to receive payment, if any, on account of such Auto Liability Claim from the applicable Auto Liability Claims LC Proceeds held by such Insurer and/or from such Insurer directly.

XII. **Binding Effect.** This Agreement shall bind and inure to the benefit of each of the Parties hereto and their respective successors in interest.

XIII. **Final Integrated Agreement.** This Agreement constitutes the entire, final and binding understanding among the Parties hereto. No other statement or representation, written or oral, express or implied, has been received or relied upon in the Agreement, and all prior and contemporaneous discussions, statements and negotiations made or which have occurred prior to or simultaneous with the date of this Agreement shall be deemed merged into this Agreement, and of no legal force or effect. No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all the Parties. The Parties hereto agree to execute such other documentation as is necessary to carry out the terms of this Agreement.

XIV. **Voluntary Agreement.** Each Party enters into this Agreement knowingly and voluntarily, in the total absence of any fraud, mistake, duress, coercion, or undue influence and after careful thought and reflection upon this Agreement and, accordingly, by signing this document, each signifies full understanding, agreement and acceptance.

XV. **No Admission.** Each Party expressly recognizes that neither this Agreement, nor any other action taken to comply with this Agreement represents an admission of liability or responsibility on the part of either Party. Neither this Agreement nor any action taken to comply with its provisions shall be construed as, or used as, an admission of any fault, wrongdoing or liability whatsoever in this or any other matter.

**XVI. Mutual Warranties and Representations.** The Parties hereby represent and warrant to each other that as of the date of this Agreement:

a. The Parties have each consulted with or have had the opportunity to consult with an attorney of their choosing, and each of them has carefully read and fully understands the Agreement and its terms and provisions, and each of them is relying upon legal advice in entering into this Agreement voluntarily.

b. The Parties have each made such investigation of the facts and matters pertaining to this Agreement and settlement of the disputes as each of them has deemed necessary.

c. Each Party acknowledges and agrees that it has not relied on any statement or representation of any other Party, person, or entity in determining to enter into this Agreement.

d. Each person executing this Agreement on behalf of a Party hereto has been duly authorized to execute on behalf of the Party and to bind the Party to the terms and provisions (by appropriate appointment, delegation of authority, corporate by-laws or board resolutions if necessary).

e. As to the matters addressed herein, this Agreement is intended to be final and binding upon the Parties hereto, regardless of any mistake of fact or law made by the Parties hereto. The Debtors and Insurers each assume the risk of any mistake of fact or law in relation to this Agreement which has been mutually drafted by the Parties.

f. Each Party represents that it has not assigned or transferred to any third party, any claims or rights that it has or might have relating to any and all claims, contentions or any matters in dispute between or relating to the Parties as of the effective date of the Plan.

**XVII. Retention of Jurisdiction and Tolling.** The Parties agree that the Bankruptcy Court shall retain exclusive jurisdiction for the purpose of enforcing the terms of this Agreement. The Parties agree that the promises and undertakings set forth herein shall be specifically enforceable. The Parties further agree that before filing any motion with the Bankruptcy Court to enforce this Agreement, they shall meet and attempt in good faith to resolve any dispute arising under this Agreement.

**XVIII. Status Quo:** If this Agreement is not approved by the Court, then it shall be null and void and of no force or effect. In such event, each of the Parties shall be returned to the Parties' position *status quo ante,* and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation between the Parties is hereby tolled until the Settlement Effective Date or the date the Court declines to approve the Agreement. Nothing in this Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Agreement is executed as set forth below

XIX. **Successors.** This Agreement shall bind and inure to the benefit of the Parties hereto and their respective successors, predecessors and assigns.

XX. **Severability.** The Parties agree that if any provision of this Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, such provision shall be automatically reformed to embody the essence of that provision to the maximum extent permitted by law, and this Agreement shall be construed, performed and enforced as if the reformed provision had been included in this Agreement at inception. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Agreement that is illegal, invalid or unenforceable.

XXI. **Claims Register.** The Debtors' claims agent, and/or the Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to this Agreement.

XXII. **Choice of Law.** This Agreement shall be governed by and construed under the laws of the State of New Jersey. The Parties irrevocably waive any objection on the grounds of venue, *forum non conveniens* or any similar grounds.

XXIII. **Counterparts.** This Agreement may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which when taken together shall constitute one and the same agreement. Each of the Parties may execute this Agreement by signing any such counterpart, and each such counterpart, including a facsimile or other electronic copy of a signature, shall for all purposes be deemed to be an original. This Agreement shall not be binding until signed by both Parties.

**IN WITNESS WHEREOF,** the below Parties execute this Settlement Agreement as of the dates indicated below:

| | |
|---|---|
| **NEW ENGLAND MOTOR FREIGHT, INC., ET AL.**<br><br>**By:** */s/ Vincent J. Colistra*<br><br>**Name:** Vincent J. Colistra<br>**Title:** Chief Restructuring Officer<br>**Date:** November 8, 2019 | **PROTECTIVE INSURANCE COMPANY**<br><br>**By:**_____<br><br>**Name:** _____<br>**Title:** _____<br>**Date:** _____ |
| **UNITED STATES FIRE INSURANCE COMPANY**<br><br>**By:**_____<br><br>**Name:** _____<br>**Title:** _____<br>**Date:** _____ | **OFFICIAL COMMITTEE OF UNSECURED CREDITORS**<br><br>**By:** */s/ Dawn Bowers*<br><br>**Name:** Dawn Bowers, Landstar Transportation Logistics, Inc.<br>**Title:** Chair of the Committee<br>**Date:** November 8, 2019 |

| NEW ENGLAND MOTOR FREIGHT, INC., ET AL. | PROTECTIVE INSURANCE COMPANY |
|---|---|
| By: _____ <br><br> Name: _____ <br> Title: _____ <br> Date: _____ | By: *Sally Wignall* <br><br> Name: Sally Wignall <br> Title: General Counsel <br> Date: 11/8/19 |
| UNITED STATES FIRE INSURANCE COMPANY | OFFICIAL COMMITTEE OF UNSECURED CREDITORS |
| By: _____ <br><br> Name: _____ <br> Title: _____ <br> Date: _____ | By: _____ <br><br> Name: _____ <br> Title: _____ <br> Date: _____ |

| NEW ENGLAND MOTOR FREIGHT, INC., ET AL. | PROTECTIVE INSURANCE COMPANY |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |
| UNITED STATES FIRE INSURANCE COMPANY<br><br>By: *[signature]* <br>Name: G. Patrick Corydon<br>Title: Chief Operating Officer<br>Date: November 11, 2019 | OFFICIAL COMMITTEE OF UNSECURED CREDITORS<br><br>By: _____<br>Name: _____<br>Title: _____<br>Date: _____ |

# Exhibit A

## Excess Indemnity Contracts

- An Excess Indemnity Contract with U.S. Fire for the period April 10, 2018 through April 10, 2019 related to Auto Liability Claims (the "U.S. Fire Contract").

- A Large Fleet Trucking Excess Contract with Protective for the period April 10, 2017 to April 10, 2018 (the "2017-2018 Protective Contract").

- A Large Fleet Trucking Excess Contract with Protective for the period April 10, 2016 to April 10, 2017 (the "2016-2017 Protective Contract").

- A Large Fleet Trucking Excess Contract with Protective for the period April 1, 2015 to April 11, 2017 (the "2015-2017 Protective Contract").

- A Fleet Trucking Excess Contract with Protective for the period April 10, 2014 to April 10, 2016 (the "2014-2016 Protective Contract," and collectively with the 2015-2017 Protective Contract, the 2016-2017 Protective Contract, the 2017-2018 Protective Contract, and the U.S. Fire Contract, the "Excess Indemnity Contracts," and each individually an "Excess Indemnity Contract").

# Exhibit B

## ADR Procedures

### A. Effectiveness of the ADR Procedures

1. The Plan shall provide and any Confirmation Order so order, that the alternative dispute resolution procedures described herein (the "ADR Procedures") shall apply to all Holders of Auto Liability Claims whether or not such Holder has filed a proof of claim against one or more of the Debtors.

2. The Plan shall contain an injunctive provision (the "Auto Liability Claims Injunction") with respect to such Auto Liability Claims prohibiting any Holders of Auto Liability Claims from taking any of the following actions for the purpose of, directly or indirectly, litigating, collecting, recovering, or receiving payment of, on or with respect to any Auto Liability Claims, from or against the Debtors, the Drivers, the Debtors' Estates, all Estate representatives, the Exculpated Parties, and the Released Parties and/or the Liquidating Trust (collectively, the "Auto Liability Claims Released Parties"), or from or against the Auto Insurers, until such Holder participates in the ADR Procedures set forth in the Auto Liability Claims Protocol, including, but not limited to:

    a. commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including a judicial, arbitral, administrative or other proceeding) in any forum against or affecting the Auto Liability Claims Released Parties and/or the Insurers or any property or interests in property of the Auto Liability Claims Released Parties and/or the Insurers; and

    b. proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the ADR Procedures, except in conformity and compliance with the ADR Procedures.

### B. Initial Period of Mandatory Disclosures and Informal Discovery

3. Following the Effective Date, each Holder of an Auto Liability Claim — either individually or through its agents, attorneys and representatives — shall engage with the applicable Insurer in negotiations regarding the potential resolution of the Auto Liability Claim in accordance with the terms of the Auto Liability Claims Protocol. Those negotiations may include, without limitation, the informal exchange of requests for information and other discovery, as well as the assertion of rights, remedies, claims and defenses arising from or relating to the applicable Auto Liability Claim. The Holders of Auto Liability Claims and the Insurers shall engage in cooperative, informal exchanges and requests for information and other discovery, in a good faith effort to resolve the Auto Liability Claims.

### C. Mandatory Mediation

4. If, after ninety (90) days from the Effective Date, an Auto Liability Claim has not been resolved and/or settled through the informal negotiation process, either the applicable Insurer or the Holder of the Auto Liability Claim may file a written request with the Bankruptcy Court for the Auto Liability Claim to be referred to non-binding mediation (a "<u>Mediation Request</u>"). Upon the filing of a Mediation Request by either party, the Auto Liability Claim shall automatically be referred to mandatory, non-binding mediation without further order or action of the Bankruptcy Court.

5. The mediation shall take place in Newark, New Jersey or in such a location as may be mutually acceptable to the parties and the mediator. After the filing of a Mediation Request, the Holder of the Auto Liability Claim and the applicable Insurer shall cooperate in the selection of a qualified mediator. In the event that the Holder of the Auto Liability Claim and the applicable Insurer are unable to agree on such a selection within ten (10) days, they shall jointly move the Bankruptcy Court to appoint a qualified mediator of its own choosing. Once a mediator is selected or assigned as provided herein, such parties shall schedule and complete mediation within sixty (60) days of such appointment (or such later date to which a Holder of Auto Liability Claim and the applicable Insurer may further stipulate). Following selection or assignment of a mediator, the parties and the mediator shall confer to determine which provisions of Local Bankruptcy Rule 9019-2, if any, shall be applicable to the mediation.

6. The applicable Insurer and the Holder of the Auto Liability Claim shall equally share the cost of the mediator's fees and expenses. Such parties shall agree upon mutually acceptable mediation procedures in consultation with the mediator. All proceedings and writings incident to the mediation shall be privileged and confidential, and shall not be reported or placed in evidence. The ADR Procedures, and any disputes that may arise out of the same, shall be subject to the jurisdiction of the Bankruptcy Court.

### D. Litigation After Unsuccessful Mandatory Mediation

7. Should mediation fail to resolve the Auto Liability Claim, the applicable Insurer and the Holder of the Auto Liability Claim shall file a joint statement with the Bankruptcy Court, with notice to Liquidating Trustee, advising the Court that the mediation did not result in a settlement (an "<u>Unsuccessful Mediation Filing</u>"), and within two (2) business days of the Unsuccessful Mediation Filing the Holder of the Auto Liability Claim shall be permitted to pursue any legally available remedy, so as to liquidate and fix the value of such Auto Liability Claim. Notwithstanding the foregoing, the parties may reserve their respective rights to agree to such additional mediation, arbitration or other alternative dispute resolution procedures as may be mutually acceptable to them.

8. To the extent a Holder of an Auto Liability Claim elects to file a lawsuit to liquidate its Auto Liability Claim after the Unsuccessful Mandatory Mediation, then (i) the statute of limitations for such Holder of the Auto Liability Claim to file a lawsuit to liquidate such Auto Liability Claim in the forum in which the Auto Liability Claim arose shall be extended to sixty (60) days from the date the Insurer and the Holder of the Auto Liability Claim filed their joint

statement of the Unsuccessful Mediation provided, however, that such statute of limitations had not expired prior to the Petition Date; (ii) the Holder of the Auto Liability Claim may name one or more of the Debtors as a "nominal party" in a lawsuit filed after the Unsuccessful Mandatory Mediation, but service of any Summons and Complaint shall be accepted and considered valid once perfected on the applicable Insurer.

### E. Miscellaneous

9. The deadlines and/or provisions contained in these ADR Procedures may be extended and/or modified on consent of the applicable Insurer and the Holder of an Auto Liability Claim.

10. Nothing in these ADR Procedures shall reduce, enlarge, waive, modify or otherwise alter the terms and conditions of the Excess Indemnity Contracts or the parties' rights in connection with the Excess Indemnity Contracts. For the avoidance of doubt, notwithstanding these ADR Procedures, all policy limits, exclusions, terms and conditions, and any other provisions of the Excess Indemnity Contracts and the relevant coverage are expressly reserved.

11. Nothing in these ADR Procedures shall reduce, enlarge, waive, modify or otherwise alter the rights, claims, and defenses of the parties in relation to any Auto Liability Claim or the Excess Indemnity Contracts, any of which may be asserted or raised in further litigation in any court of competent jurisdiction should these ADR Procedures provided herein fail to resolve such Auto Liability Claim.

12. Upon approval of the settlement between the Debtors and the Insurers and inclusion or modification of the ADR Procedures as part of the confirmed Plan, the Insurers shall be authorized to take all actions reasonably required to settle or litigate the pending Auto Liability Claims to conclusion in accordance with these ADR Procedures.

13. These ADR Procedures, and any disputes that may arise out of these ADR Procedures, shall be subject to the jurisdiction of the Bankruptcy Court.