**EXHIBIT D**

**EQUITY HOLDERS AND AFFILIATES SETTLEMENT AGREEMENT**

2763683.2 115719-100281

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this "Agreement") is made and entered into this 25th day of October, 2019, by and between:

A.       New England Motor Freight, Inc., Eastern Freight Ways, Inc., NEMF World Transport, Inc., Apex Logistics, Inc., Jans Leasing Corp., Carrier Industries, Inc., Myar, LLC, MyJon, LLC, Hollywood Avenue Solar, LLC, United Express Solar, LLC, NEMF Logistics, LLC (collectively the "Debtors") on behalf of themselves, their estates, and any successors;

B.       The Official Committee of Unsecured Creditors appointed in the Debtors' Chapter 11 bankruptcy cases (the "Committee") on behalf of itself and any successors; and

C.       The Debtors' equity holders, officers, directors, lessors, and affiliates (collectively, the "Equity Holders and Affiliates") as identified in Schedule 1 hereto.

D.       The Debtors and the Committee will be filing a joint plan of liquidation with the Bankruptcy Court (the "Joint Plan"), which will incorporate the terms and provisions of this Agreement. The Joint Plan will also effectuate the transfer of certain assets being purchased or acquired pursuant to this Agreement.

## RECITALS

1.       Each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 11, 2019 in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). The Debtors' chapter 11 cases are being jointly administered under Case No. 19-12809 (JKS) (the "Chapter 11 Cases").

2.       The Committee was appointed by the Office of the United States Trustee in the Chapter 11 Cases.

3.       The Committee was designated and authorized by the Debtors to undertake the identification, investigation, presentment, and potential resolution of any and all claims and causes of action that could be asserted against the Equity Holders and Affiliates. The Committee worked with the Debtors and the Debtors' Chief Restructuring Officer to obtain information necessary to complete its investigation and regularly updated the Debtors on its efforts and negotiations.

4.       The Committee was further authorized by the Debtors to explore the best manner in which to both monetize and maximize the value of several promissory notes evidencing amounts owed to the Debtors by the Shevell Family 2016 Dynasty Trust relating to split dollar insurance policies (the "Insurance Promissory Notes").

5.       The Committee conducted an extensive investigation of potential claims and causes of action against the Equity Holders and Affiliates. The Committee presented these alleged claims and causes of action to the Equity Holders and Affiliates.

6.    The Equity Holders and Affiliates dispute the factual and legal basis for each of the asserted claims and causes of action presented by the Committee.

7.    Thereafter, and over a period of several months, the Committee and the Equity Holders and Affiliates exchanged information and engaged in extensive negotiations in an attempt to resolve the asserted claims and causes of action presented by the Committee.

8.    As part of those negotiations, the Equity Holders and Affiliates expressed a desire to assist the Committee and the Debtors with the cost of liquidating the Debtors' assets and in maximizing the value of the Insurance Promissory Notes for the benefit of the Debtors' estates and their creditors.

9.    The extensive and protracted negotiations between the parties resulted in the Committee, the Debtors, and the Equity Holders and Affiliates reaching a global agreement and settlement for the resolution of any and all asserted claims and causes of action, the cash monetization of the Insurance Promissory Notes, relinquishment and waiver of claims, and other financial assistance and contributions by the Equity Holders and Affiliates to the Debtors and their estates, as set forth herein.

10.    Without admitting liability, the Equity Holders and Affiliates, the Debtors, and the Committee, to avoid the cost and expense of litigation and to resolve and settle fully any and all asserted and potential claims and causes of action, are entering into this Agreement upon the terms set forth herein.

NOW, THEREFORE, WITNESSETH: that in consideration of the mutual promises and covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party, the parties hereto covenant and agree as follows:

<u>Agreements</u>

1.    <u>Incorporation of Recitals</u>. Each of the preceding recitals is a material part of this Agreement and is incorporated into this Agreement by reference as if more fully set forth herein.

2.    <u>Settlement</u>. The Equity Holders and Affiliates shall remit to the Debtors and the Debtors' estates cash and non-cash contributions and consideration comprised of cash in the total sum of $6,100,000 (the "Cash Payment"), relinquishment of certain Lease Rejection Claims (as defined below), the assumption of debt, and the relinquishment of any and all other claims. The Cash Payment shall be paid in the following manner:

> a.  An initial cash payment in the amount of $2,000,000 (the "Initial Payment") shall be paid into an escrow account with Whiteford, Taylor & Preston LLP within five (5) business days after the entry of a final non-appealable order of the Bankruptcy Court approving this Agreement. The date on which the Bankruptcy Court order becomes a final non-appealable order shall be the date upon which the time for appeal and motion for reconsideration expires with no such appeal or motion for reconsideration having been sought. The Escrow Agreement is attached hereto as Exhibit A.

b. The remaining balance of $4,100,000 of the Cash Payment (the "Final Payment") shall be paid on the date of transfer of the Insurance Promissory Notes to the Equity Holders and Affiliates (or their designee), and conditioned upon the entry of a final order of the Bankruptcy Court confirming the Joint Plan. The Initial Payment shall be released from escrow and paid to the Debtors or Liquidating Trustee, as applicable, at the time that the Final Payment is paid to the Debtors or Liquidating Trustee, as applicable, subject to the use of funds provision contained in Section 2(c) below.

c. $500,000 of the Cash Payment shall be a contribution earmarked for the Liquidating Trust and used for the purposes of implementing the Joint Plan, claims reconciliation and claim objections, the pursuit of avoidance actions, and any other actions necessary to complete the administration of the Debtors' Chapter 11 Cases.

d. The Equity Holders and Affiliates will, in their sole discretion, but without affecting in any way the distribution of the Cash Payment agreed to and provided for under the Joint Plan, determine and designate the allocation of the cash and non-cash contributions and consideration among the settlement and release of asserted claims and causes of action against the Equity Holders and Affiliates, the assets being transferred by the Debtors or the Liquidating Trustee, as applicable, to the Equity Holders and Affiliates pursuant to this Agreement, and the obligations being assumed by the Equity Holders and Affiliates pursuant to this Agreement.

3. <u>Transfer of Insurance Promissory Notes</u>. Upon the entry of a final order of the Bankruptcy Court confirming the Joint Plan and payment in full of the Cash Payment, the Debtors or Liquidating Trustee shall take all actions necessary and deliver all documents necessary to transfer the Insurance Promissory Notes to the Equity Holder and Affiliates (or their designees). The Committee agrees to support and assist in such efforts as may be required. Attached hereto as Exhibit B are the documents to be executed and delivered by the Debtors to effectuate the transfer of the Insurance Promissory Notes.

4. <u>Transfer of Solar Generation Systems and Debt Assumption</u>. Upon the entry of a final order of the Bankruptcy Court approving this Agreement, the Debtors shall take all actions necessary and deliver all documents necessary to transfer ownership of the solar power generation systems located at 1618 Union Avenue, Pennsauken, New Jersey and 3101 Hollywood Avenue, S. Plainfield, New Jersey, together with all rights, claims, and interests of the Debtors relating to the solar power generation systems to the Equity Holders and Affiliates (or their designee). The Committee agrees to support and assist in said transfer as may be required. The Equity Holders and Affiliates (or their designee) shall assume the debt obligations of the Debtors to Public Service Electric and Gas Company ("PSEGC") in the maximum amount of $1,140,815.36, as well as any true-up due to PSEGC relating to the solar power generation systems, such true-up not to exceed $5,000.00. Attached hereto as Exhibit C are the documents to be executed and delivered by the Debtors to effectuate the transfer of the solar generation systems and the assumption of debt described in this Section 4. Upon entry of a final order

approving this Agreement, any amounts due to the Equity Holders and Affiliates from Hollywood Avenue Solar, LLC and United Express Solar, LLC shall be deemed waived, released and discharged, and the Debtors shall file a motion to dismiss the bankruptcy cases of Hollywood Avenue Solar, LLC and United Express Solar, LLC.

5. <u>Lease Rejection Damages Claims</u>. The Equity Holders and Affiliates filed proofs of claim for lease rejection damages in the total amount of $11,827,660.38 (the "Lease Rejection Claims"). The Equity Holders and Affiliates agree to vote the Lease Rejection Claims in favor of the Joint Plan, provided that the Joint Plan incorporates this Agreement and the releases contained herein, and provided further, however, that the Equity Holders and Affiliates shall not be obligated to vote Lease Rejection Claims that have been pledged as collateral (the "Pledged Claims") to certain mortgage lenders if such mortgage lenders do not consent to the voting of the Pledged Claims. The Equity Holders and Affiliates agree to relinquish any and all distributions relating to the Lease Rejection Claims from the Debtors' estates, except for the Pledged Claims. The Equity Holders and Affiliates will relinquish any and all distributions relating to the Pledged Claims only upon the consent of the certain mortgage lenders. In the absence of such relinquishment of the distributions for the Pledged Claims, any distributions relating to the Pledged Claims shall be paid to the applicable claim holder and thereafter remitted to the certain mortgage lenders in accordance with the applicable loan agreements. In such event, simultaneously with the receipt of any distribution, the Equity Holders and Affiliates shall make repayment to the Debtors' estates or the Liquidating Trust, as applicable, in an amount equal to such distributions. For the avoidance of doubt, in the event of a potential repayment to the Debtors' estates, the net economic effect is that the Equity Holders and Affiliates shall not receive any distribution or dividend from the Debtors' estates.

6. <u>Bankruptcy Court Approval</u>. This Agreement is expressly contingent upon approval of the Bankruptcy Court pursuant to Fed. R. Bankr. P. 9019. Within ten (10) calendar days of execution of this Agreement, the Debtors and the Committee shall file a joint motion with the Bankruptcy Court requesting such approval and agree to use their best efforts to obtain approval by the Bankruptcy Court of this Agreement. This Agreement shall be effective only when it has been both fully executed and approved by the entry of a final, non-appealable order of the Bankruptcy Court. The Bankruptcy Court order approving this Agreement shall be in a form and substance acceptable to the Equity Holders and Affiliates, the Debtors, and the Committee.

7. <u>Joint Plan</u>. The terms of this Agreement shall be fully incorporated into the Joint Plan and any related Disclosure Statement and the Joint Plan shall be consistent in all respects with this Agreement, including but not limited to the releases in this Agreement. Any order approving the Joint Plan shall be in a form and substance acceptable to the Equity Holders and Affiliates, the Debtors, and the Committee. Any capitalized terms used but not defined in this Agreement, shall have the meaning given in the Joint Plan.

8. <u>Full and Complete Settlement</u>. By executing this Agreement, the Debtors, the Committee, and the Equity Holders and Affiliates expressly agree, declare, and acknowledge that it is their intention to resolve any and all disputes and potential disputes which may now exist, known or unknown, between them.

9. <u>Release of Equity Holders and Affiliates</u>. Except as expressly set forth in this Agreement, in consideration of the representations, warranties, and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Debtors, the Committee, the Estates, all Creditors, whether or not any such Creditor filed a Proof of Claim against one or more of the Debtors and/or is entitled to receive any Distribution pursuant to the Plan and/or the Auto Liability Protocol, the Debtors' employees, insurers and brokers, the Liquidating Trust, and all other parties in interest in the Chapter 11 Cases, and their respective representatives, agents, predecessors, successors, and assigns (collectively the "Debtors Releasing Parties"), hereby remise, release, and forever acquit and discharge each and all of the Equity Holders and Affiliates, and their officers, directors, shareholders, members, managers, agents, employees, attorneys, and representatives (the "Equity Holder and Affiliates Released Parties"), of and from any and all manner of acts and actions, cause and causes of actions, arbitrations, mediations, conciliations, dues, sums of money, reckonings, bonds, bills, specialties, contracts, controversies, variances, trespasses, damages, judgments, executions, rights, claims, demands, suits, proceedings, debts, accounts, warranties, covenants, liabilities, agreements, and promises of any nature whatsoever in law or in equity, whether known or unknown, whether sounding in tort or contract or any other basis, that the Debtors Releasing Parties have, have had, or may at any time hereafter have against the Equity Holder and Affiliates Released Parties in any capacity, for, upon, or by reason of any matter, cause, or thing whatsoever, in any way relating to one or more of the Debtors, the Estates, the conduct of the Debtors' business, the Chapter 11 Cases, the same subject matter as the Claim held by any Creditor against one or more of the Debtors, or the Combined Plan and Disclosure Statement (other than the rights under the Combined Plan and Disclosure Statement and the Plan Documents); provided, however, that this release shall not extend to and is not intended to release any mortgage directly owed by any of the Equity Holder and Affiliates Released Parties on real property such Equity Holder and Affiliates Released Parties own that was formerly used or occupied by the Debtors in their business operations. This release shall be effective only upon (i) payment in full of the Cash Payment, (ii) the repayment of any distribution in respect of Pledged Claims referenced in Section 5 above, and (iii) the assumption of debt referenced in Section 4 above.

10. <u>Release of Debtors, Debtors' Estates and the Committee</u>. Except as expressly set forth in this Agreement, in consideration of the representations, warranties, and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Equity Holders and Affiliates hereby waive and release any and all claims that they have or may have against the Debtors, the Debtors' estates, the Committee and their respective members, officers, directors, shareholders, agents, employees, attorneys, and representatives (collectively the "Debtors Released Parties") of and from any and all manner of acts and actions, cause and causes of actions, arbitrations, mediations, conciliations, dues, sums of money, reckonings, bonds, bills, specialties, contracts, controversies, variances, trespasses, damages, judgments, executions, rights, claims, demands, suits, proceedings, debts, accounts, warranties, covenants, liabilities, agreements, and promises of any nature whatsoever in law or in equity, whether known or unknown, whether sounding in tort or contract or any other basis, including but not limited to any matter relating directly or indirectly to all claims which the Equity Holders and Affiliates have, have had, or may at any time hereafter have against the

Debtor Released Parties; provided, however, that this release shall not release or impair any rights under insurance policies, including coverage or indemnification, related to the Debtors to which any of the Equity Holders or Affiliates may be entitled under any such insurance policies.

11.     No Admission.  The parties hereto agree that the claims released hereby are disputed claims, and neither their execution of this Agreement nor any payment of any sums in connection with this Agreement are to be construed as an admission of liability on the part of any party, and that the parties, in fact, expressly deny liability to each other and each intends merely to avoid litigation and to buy its peace without further expense.  This Agreement shall not be offered as evidence by the parties in any action or proceeding, except as may be necessary enforce its terms or for the Debtors or the Committee to seek approval of this Agreement by the Bankruptcy Court.

12.     Further Assurances.  The parties agree to take such other and further actions, and to execute and deliver such other documents as may be reasonably required to implement the terms and provisions of this Agreement.

13.     Binding Nature.  Upon approval by a final, non-appealable order of the Bankruptcy Court, this Agreement shall be binding upon and inure to the benefit of the parties and their respective representatives, predecessors, successors, and assigns.

14.     Jurisdiction and Governing Law.  The laws of the State of New Jersey shall govern the rights and obligations of the parties to this Agreement, any interpretations and enforceability thereof, any documents prepared and any and all issues relating to the transaction contemplated herein.  Any disputes under this Agreement shall be determined by the Bankruptcy Court and the parties agree that the Bankruptcy Court shall be the sole venue for adjudicating any such dispute.

15.     Final Agreement.  This Agreement sets forth the final and entire agreement and understanding of the parties, superseding all prior representations, understandings, and agreements not expressly incorporated herein; and terms and conditions not set forth in this Agreement are not a part of this Agreement or the understanding of the parties hereto.

16.     No Modification.  This Agreement may not be supplemented, changed, waived, discharged, terminated, modified, or amended, except by written instrument executed by all parties to this Agreement.

17.     Severability.  In the event that one or more provisions or portions of a provision contained in this Agreement shall be held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions or parts of the provisions contained herein shall be construed to the extent allowable and shall remain effective and binding and shall not be affected or impaired thereby.

18.     Counterparts.  This Agreement may be executed in separate identical actual or electronic counterparts (including scanned .pdf signatures), each of which (when all parties have

executed and delivered to one another such counterparts) shall be deemed for all purposes to constitute an original, but all of which shall collectively constitute one agreement.

19.    Authority.  The undersigned represent and warrant that they have the full and complete authority to enter into this Agreement on behalf of the persons represented below for which they are executing this Agreement.

20.    Actions to Enforce.  Should any action be brought by one of the parties to enforce any provision of this Agreement, the non-prevailing party to such action shall reimburse the prevailing party for all reasonable attorneys' fees and court costs and other expenses incurred by the prevailing party in said action to enforce.

IN WITNESS WHEREOF, this Agreement has been executed as of the day and year first above-mentioned, with the specific intention that this Agreement shall constitute an instrument under seal.

<div style="margin-left:40%">

NEW ENGLAND MOTOR FREIGHT, INC.
EASTERN FREIGHT WAYS, INC.
NEMF WORLD TRANSPORT, INC.
APEX LOGISTICS, INC.
JANS LEASING CORP.
CARRIER INDUSTRIES, INC.
MYAR, LLC
MYJON, LLC
HOLLYWOOD AVENUE SOLAR, LLC
UNITED EXPRESS SOLAR, LLC
NEMF LOGISTICS, LLC

By: _____ (SEAL)
Vincent J. Colistra, Chief Restructuring Officer


THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS


By:_____(SEAL)
Dawn Bowers, Landstar Transportation Logistics,
Inc., Committee Chairperson

</div>

executed and delivered to one another such counterparts) shall be deemed for all purposes to constitute an original, but all of which shall collectively constitute one agreement.

19. <u>Authority</u>. The undersigned represent and warrant that they have the full and complete authority to enter into this Agreement on behalf of the persons represented below for which they are executing this Agreement.

20. <u>Actions to Enforce</u>. Should any action be brought by one of the parties to enforce any provision of this Agreement, the non-prevailing party to such action shall reimburse the prevailing party for all reasonable attorneys' fees and court costs and other expenses incurred by the prevailing party in said action to enforce.

IN WITNESS WHEREOF, this Agreement has been executed as of the day and year first above-mentioned, with the specific intention that this Agreement shall constitute an instrument under seal.

NEW ENGLAND MOTOR FREIGHT, INC.
EASTERN FREIGHT WAYS, INC.
NEMF WORLD TRANSPORT, INC.
APEX LOGISTICS, INC.
JANS LEASING CORP.
CARRIER INDUSTRIES, INC.
MYAR, LLC
MYJON, LLC
HOLLYWOOD AVENUE SOLAR, LLC
UNITED EXPRESS SOLAR, LLC
NEMF LOGISTICS, LLC

By:_____(SEAL)
Vincent J. Colistra, Chief Restructuring Officer

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By:_____(SEAL)
Dawn Bowers, Landstar Transportation Logistics, Inc., Committee Chairperson

EXECUTION VERSION

EQUITY HOLDERS AND AFFILIATES[1]

By: _____(SEAL)
Myron P. Shevell, Authorized Representative

[1] See Schedule 1

## Schedule 1
### Equity Holders and Affiliates

1. MYRON P. SHEVELL
2. NANCY SHEVELL-MCCARTNEY
3. SUSAN SHEVELL
4. ZACHARY COHEN
5. ARLEN BLAKEMAN
6. MERISSA SIMON
7. MATTHEW LOMUTI
8. CRAIG EISENBERG
9. THOMAS CONNERY
10. AS TO THE INDIVIDUALS LISTED IN 1 THROUGH 9 ABOVE, ANY ENTITY WHICH ANY OF THEM OWN OR CONTROL (DIRECTLY OR INDIRECTLY)
11. VINCENT J. COLISTRA
12. SHEVELL FAMILY 2016 DYNASTY TRUST
13. NANCY SHEVELL-MCCARTNEY 2016 TRUST
14. SUSAN COHEN 2016 TRUST
15. JON SHEVELL 2002 TRUST
16. NANCY BLAKEMAN 2002 TRUST
17. SUSAN COHEN 2002 TRUST
18. JON SHEVELL 2000 TRUST
19. NANCY BLAKEMAN 2000 TRUST
20. SUSAN COHEN 2000 TRUST
21. MERISSA COHEN 2000 TRUST
22. ZACHARY COHEN 2000 TRUST
23. ARLEN BLAKEMAN 2000 TRUST
24. MERISSA COHEN 1996 TRUST
25. ZACHARY COHEN 1996 TRUST
26. ARLEN BLAKEMAN 1996 TRUST
27. MYRON P. SHEVELL LIVING TRUST
28. MYRON P. SHEVELL 1990 TRUST
29. 12731 RT 30 CORP.
30. 1362 CLOVER LEAF RD, LLC
31. 15 MIDDLETOWN AVE CORP.
32. 345 WALCOTT ST LLC
33. 3600 GEORGETOWN CORP.
34. 55 DELTA DRIVE LLC
35. 6867 SCHUYLER ROAD LLC
36. 9 DUNHAM ROAD
37. ARLEN FARM CORP.
38. ARMERACH LP
39. BLANCHARD ST

40. BABCO, LLC
41. BURMONT, LLC
42. CAMP HILL TERMINAL, LLC
43. COLUMBUS TERMINAL, LLC (WELLS)
44. CONCORD TERMINAL LLC
45. ELK EAST, LLC
46. FAIR TERMINAL CORP
47. HOLLYWOOD CORP.
48. JON S CORP.
49. JPS HAWKS. INC.
50. LATHCO LLC
51. LEHCO, L.P.
52. MERCOHEN CORP.
53. MERI PROPERTIES
54. MILTON PROPERTIES, LP
55. MYDAN, LLC
56. NANCY SB CORP.
57. NEW TERMINAL CORP.
58. NORTH AVENUE EAST, LLC
59. NORTH RED TRUCK CORP.
60. NORTH TURBO CORP.
61. OLD BETH, LLC
62. OLD BETH II, LLC
63. ORANGE TRUCK CORP.
64. PENNSA CORP
65. PERRY ROAD LLC
66. PLEASANT HILL ROAD
67. RICHMOND TERMINAL, LLC
68. SCHUYLER ROAD LLC
69. SHEVELL INVESTMENT ASSOCIATES INC.
70. SHEVELL LONG BRANCH LLC
71. SPRING TERMINAL CORP.
72. THRU VIEW, LLC
73. TOLEDO TERMINAL, LLC
74. UNITED EXPRESS LINES, INC.
75. WORK STREET, LLC
76. ZACH CORP
77. APEX EXPRESS CORP.
78. PHOENIX MOTOR EXPRESS, INC.
79. ALBANY TERMINAL, LLC
80. NORTHEAST COMMERCE CENTER I, LLC
81. NORTHEAST COMMERCE CENTER II, LLC
82. BURVER, LLC

83. SHEVELL GROUP OF COMPANIES, LLC
84. MPS INVESTMENTS, LLC

# EXHIBIT A

<u>ESCROW AGREEMENT</u>

THIS ESCROW AGREEMENT (this "**Agreement**") is made and entered into as of October 25, 2019, by and between New England Motor Freight, Inc., Eastern Freight Ways, Inc., NEMF World Transport, Inc., Apex Logistics, Inc., Jans Leasing Corp., Carrier Industries, Inc., Myar, LLC, MyJon, LLC, Hollywood Avenue Solar, LLC, United Express Solar, LLC, NEMF Logistics, LLC (collectively the "**Debtors**") on behalf of themselves, their estates, and any successors; the Official Committee of Unsecured Creditors (the "**Committee**") appointed in the Debtors' Chapter 11 bankruptcy cases pending in the U.S. Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") (In re: NEW ENGLAND MOTOR FREIGHT, INC, et al., Case No.: 19-12809 (JKS)) on behalf of itself and any successors; and the Debtors' equity holders, officers, directors, lessors, and affiliates (collectively, the "**Equity Holders and Affiliates**") as identified in **Schedule 1** hereto; and Whiteford, Taylor & Preston, LLP, as escrow agent (the "**Escrow Agent**").

WHEREAS, capitalized terms used but not defined herein shall have the meanings assigned to them in that certain Settlement Agreement and Mutual Release, dated as of October 25, 2019, by and among the Debtors, the Committee and the Equity Holders and Affiliates (the "**Settlement Agreement**");

WHEREAS, pursuant to Section 2 of the Settlement Agreement, The Equity Holders and Affiliates shall remit to the Debtors and the Debtors' estates cash and non-cash contributions and consideration comprised of cash in the total sum of $6,100,000.00 (the "**Cash Payment**"), relinquishment of Lease Rejection Claims, the assumption of debt, and the relinquishment of any and all other claims; and

WHEREAS, the Cash Payment shall be paid in the manner set forth in Section 2 of the Settlement Agreement.

NOW THEREFORE, THE PARTIES AGREE AS FOLLOWS:

1.      <u>Appointment of Escrow Agent; Deposit of Escrowed Funds</u>.  The parties hereto desire that Escrow Agent serve as escrow agent, and Escrow Agent is willing to do so, all upon the terms and conditions hereinafter set forth. Simultaneously with the execution hereof by all of the parties hereto, the Equity Holders and Affiliates have deposited with Escrow Agent the sum of Two Million Dollars ($2,000,000.00) (the "**Escrowed Funds**"), the receipt of which is hereby acknowledged by Escrow Agent. The Escrowed Funds shall be held and disbursed by Escrow Agent in accordance with and subject to the terms and conditions of this Agreement and the Settlement Agreement.

2.      <u>Retention of Escrowed Funds</u>.  The Escrow Agent shall not be obligated to keep the Escrowed Funds in an interest-bearing account, but shall retain same in a trust account maintained in a federally-insured bank until released pursuant to this Agreement.

3.    Disposition of Escrowed Funds; Termination of Escrow.

3.1.    Escrow Agent shall hold and maintain the Escrowed Funds until Escrow Agent has received joint written instructions from the Debtors, the Committee, and the Equity Holders and Affiliates (the "**Joint Instructions**") to disburse in accordance with Section 2 of the Settlement Agreement. Upon receipt of Joint Instructions, Escrow Agent shall disburse such portions of the Escrowed Funds to such recipient(s) as may be specified in the Joint Instructions. Notwithstanding the foregoing, and pursuant to Section 2 of the Settlement Agreement, the Escrow Agent shall disburse the Escrowed Funds to the Debtors or Liquidating Trustee, as applicable, at such time that the Equity Holders and Affiliates remit the Final Payment to the Debtors or Liquidating Trustee, as applicable.

3.2.    Absent receipt of Joint Instructions, or in the event any dispute or controversy arises between any of the parties hereto respecting the disposition of the Escrowed Funds, Escrow Agent shall have the right to interplead all such persons to the Bankruptcy Court, and to deposit with such court the Escrowed Funds and all interest earned thereon, if any; thereafter Escrow Agent shall be fully released and discharged from all further obligations hereunder with respect to the funds held under this Agreement. The Debtors, the Committee, and the Equity Holders and Affiliates, jointly and severally, agree to pay all expenses, fees and charges (including reasonable attorney's fees) incurred by Escrow Agent in any such interpleader action.

3.3.    Escrow Agent shall not be required to make a disbursement of the Escrowed Funds, or any part thereof, except upon receipt by Escrow Agent of Joint Instructions at least three (3) days prior to such requested disbursement, and provided that such notice may not be sent to Escrow Agent more than ten (10) days prior to the requested disbursement date.

4. Limitations of Duties of Escrow Agent. The obligations of Escrow Agent under this Agreement are subject to the following terms and conditions:

4.1.    Escrow Agent shall not be under any duty to give the Escrowed Funds held by it hereunder any greater degree of care than it gives its own similar property and shall not be required to invest the Escrowed Funds held hereunder except as directed in this Agreement.

4.2.    This Agreement expressly sets forth all duties of Escrow Agent with respect to any and all matters pertinent hereto. No implied duties or obligations shall be read into this Agreement against Escrow Agent. Escrow Agent shall not be bound by the provisions of any agreement between the Debtors, the Committee, and the Equity Holders and Affiliates, except this Agreement and the joint instructions referenced herein.

4.3.    Escrow Agent shall not be liable, except for its own gross negligence or willful misconduct and, except with respect to claims based upon such gross negligence or willful misconduct that are successfully asserted against Escrow Agent, and the Debtors, the Committee, and the Equity Holders and Affiliates shall jointly and severally indemnify and hold harmless Escrow Agent (and any successor Escrow Agent) from and against any and all losses, liabilities, claims, actions, damages and expenses, including reasonable attorneys' fees and disbursements, arising out of and in connection with this Agreement. Without limiting the foregoing, Escrow

2

Agent shall in no event be liable in connection with its investment or reinvestment of any funds held by it hereunder in good faith, in accordance with the terms hereof, including without limitation any liability for any delays (not resulting from its gross negligence or willful misconduct) in the investment or reinvestment of the Escrowed Funds, or any loss of interest incident to any such delays.

4.4.    Escrow Agent shall be entitled to rely upon any order, judgment, certification, demand, notice, instrument or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any fact stated therein or the propriety or validity or the service thereof. Escrow Agent may act in reliance upon any instrument or signature believed by it to be genuine and may assume that any person purporting to give receipt or advice or make any statement or execute any document in connection with the provisions hereof has been duly authorized to do so.

4.5.    Escrow Agent does not have any interest in the Escrowed Funds deposited hereunder but is serving as escrow holder only and has only possession thereof. Any payments of income from the Escrowed Funds shall be subject to withholding regulations then in force with respect to United States taxes.

4.6.    Escrow Agent makes no representation as to the validity, value, genuineness or the collectability of any security or other document or instrument held by or delivered to it.

4.7.    Escrow Agent (and any successor Escrow Agent) may at any time resign as such by delivering the Escrowed Funds to any successor Escrow Agent jointly designated by the Debtors, the Committee, and the Equity Holders and Affiliates in writing, or, if the aforementioned parties cannot agree upon a successor within thirty (30) days of a written request to do so, to the United States District Court for Maryland (Northern Division), whereupon Escrow Agent shall be discharged of and from any and all further obligations arising in connection with this Agreement. The resignation of Escrow Agent will take effect on the appointment of a successor (including the aforementioned court).

4.8.    In the event of the death, incapacity or other unavailability of Paul M. Nussbaum, Brent C. Strickland or Edward U. Lee III to act on behalf of Escrow Agent, any partner in the law firm of Whiteford, Taylor & Preston L.L.P. shall have the right, without further act or consent of any of the parties hereto, to execute the duties and obligations of Escrow Agent and shall be entitled to the same protections hereunder.

4.9.    It is understood and acknowledged by the Debtors, the Committee, and the Equity Holders and Affiliates that the Escrow Agent represents the Equity Holders and Affiliates in connection with the Settlement Agreement and related agreements. It is further understood and acknowledged hereto that the Escrow Agent shall be entitled to continue to represent the Equity Holders and Affiliates in any matter, including, without limitation, any matter, claim or dispute between the parties to this Agreement. To the extent that any conflict or potential conflict arises, each party hereto, individually and on behalf of such party's successors and assigns, has waived any objection thereto. Each party has consulted with counsel, and, after discussion and advice from such counsel and with full knowledge of all relevant facts, each party consents to the Escrow

Agent continuing to act as Escrow Agent hereunder. Whiteford, Taylor & Preston L.L.P.'s service as escrow agent hereunder shall not be deemed to prevent or preclude it from serving as any party's counsel in any dispute or negotiation among the parties.

4.10   The Escrow Agent shall, for all purposes of this Agreement, be treated as and considered legally as custodian. The Escrow Agent shall be entitled to rely, and shall be protected in acting or refraining from acting, upon any instruction, document or instrument furnished to it hereunder and believed by it to be genuine. Nothing herein contained shall be deemed to impose upon the Escrow Agent any duty to exercise discretion, it being the intention hereof that the Escrow Agent shall not be obligated to act except upon written instructions as set forth in Section 3.1 of this Agreement. The Escrow Agent shall not be liable for any action (or refraining from any action) taken by it in good faith and believed by it to be authorized or within the rights or powers conferred upon it in this Agreement or the Settlement Agreement. The Escrow Agent may consult with counsel of its choice and shall be fully protected and indemnified in acting or refraining to act in good faith in accordance with the opinion of such counsel.

5.   Acceptance of Escrow; Compensation of Escrow Agent.

5.1.   Escrow Agent hereby agrees to serve as Escrow Agent pursuant to this Agreement.

5.2.   Escrow Agent has agreed to serve hereunder without compensation, provided that Escrow Agent shall be entitled to reimbursement for any legal fees and out-of-pocket expenses reasonably incurred by Escrow Agent and any other sum owing to Escrow Agent by the parties hereto arising out of this Agreement and/or related transactions. The parties hereto jointly and severally agree to pay such expenses arising from the performance by Escrow Agent hereunder.

6.   Tax Matters.   The parties hereto agree to treat the Escrowed Funds as owned by the Equity Holders and Affiliates and not received by the Debtors, in all cases to the extent not disbursed to the Debtors pursuant to the terms of this Agreement and to file all tax returns on a basis consistent with such treatment. All interest, dividends, distributions and other gains earned or realized on the Escrowed Funds (collectively, "Earnings") shall be accounted for by the Escrow Agent separately from the amount initially deposited in the Escrowed Funds and, notwithstanding any provisions of this Agreement, shall be treated as having been received by the Equity Holders and Affiliates for United States federal and state income tax purposes. The Escrow Agent shall deliver an annual information report on IRS Form 1099 to the Equity Holders and Affiliates, the IRS and applicable state taxing authorities on which it reports the Earnings of the Escrowed Funds during such year as the income of the Equity Holders and Affiliates and, whether or not said income has been distributed during such year, as and to the extent required by law. The Escrow Agent shall not report any such income as being taxable to any other party.

7.   Notices.   All notices, consents, requests, instructions, approvals and/or other communications provided for herein shall be in writing and shall be deemed validly given, made or served, if delivered personally against written receipt, or on the second (2nd) business day after

posting in the United States mail, by registered or certified mail, return receipt requested, and addressed to the respective parties as follows:

If intended for Escrow Agent:

>Whiteford, Taylor & Preston, L.L.P.
>7 St. Paul Street, Suite 1400
>Baltimore, Maryland 21202
>Attn: Brent C. Strickland

If intended for the Debtors:

>Gibbons P.C.
>One Gateway Center
>Newark, New Jersey 07102
>Attn: Karen A. Giannelli and Brett S. Theisen

If intended for the Committee:

>Lowenstein Sandler LLP
>One Lowenstein Drive
>Roseland, New Jersey 07068
>Attn: Joseph J. DiPasquale

If intended for the Equity Holders and Affiliates:

>Whiteford, Taylor & Preston, L.L.P.
>7 St. Paul Street, Suite 1400
>Baltimore, Maryland 21202
>Attn: Brent C. Strickland

8.   Miscellaneous.

8.1.   The parties hereto agree that this Agreement shall be legally binding upon them, and their respective personal representatives, successors and assigns. However, the obligations hereunder may not be assigned by any party without the written consent of all parties hereto.

8.2.   This Agreement contains the entire understanding of the parties relating to the subject matter hereof and may not be amended or modified in any way except by an instrument in writing signed by all of the parties hereto.

8.3.   This Agreement shall be governed by and interpreted in accordance with the laws of the State of Maryland.

8.4.    This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together will constitute one in the same agreement.

8.5.    The headings contained in this Agreement are for convenience only and shall not be used to construe or interpret the scope or intent of this Agreement or in any way affect the same.

8.6.    This Agreement is not for the benefit of any person or entity not a specific named party to it, except as otherwise provided herein.

8.7.    As to any legal questions arising in connection with the performance of Escrow Agent's duties hereunder, Escrow Agent may obtain opinions from outside counsel or from Whiteford, Taylor & Preston L.L.P., and Escrow Agent may rely absolutely upon such opinions and shall be free of liability for acting in reliance thereon. The cost of any such opinion may be paid from the Escrowed Funds and shall be a cost subject to reimbursement jointly and severally by the parties hereto pursuant to the provisions of this Agreement.

(Signatures on the following page)

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

NEW ENGLAND MOTOR FREIGHT, INC.
EASTERN FREIGHT WAYS, INC.
NEMF WORLD TRANSPORT, INC.
APEX LOGISTICS, INC.
JANS LEASING CORP.
CARRIER INDUSTRIES, INC.
MYAR, LLC
MYJON, LLC
HOLLYWOOD AVENUE SOLAR, LLC
UNITED EXPRESS SOLAR, LLC
NEMF LOGISTICS, LLC


By:_____(SEAL)
Vincent J. Colistra, Chief Restructuring Officer


THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS


By:_____(SEAL)
Name: Dawn Bowers, Landstar Transportation
Logistics, Inc., Chair of the Committee


EQUITY HOLDERS AND AFFILIATES


By:_____(SEAL)
Myron P. Shevell, Authorized Representative


ESCROW AGENT:
WHITEFORD, TAYLOR & PRESTON LLP


By:_____(SEAL)
Brent C. Strickland, Partner


See Schedule 1

7

## Schedule 1
### Equity Holders and Affiliates

1. MYRON P. SHEVELL
2. NANCY SHEVELL-MCCARTNEY
3. SUSAN SHEVELL
4. ZACHARY COHEN
5. ARLEN BLAKEMAN
6. MERISSA SIMON
7. MATTHEW LOMUTI
8. CRAIG EISENBERG
9. THOMAS CONNERY
10. AS TO THE INDIVIDUALS LISTED IN 1 THROUGH 9 ABOVE, ANY ENTITY WHICH ANY OF THEM OWN OR CONTROL (DIRECTLY OR INDIRECTLY)
11. VINCENT J. COLISTRA
12. SHEVELL FAMILY 2016 DYNASTY TRUST
13. NANCY SHEVELL-MCCARTNEY 2016 TRUST
14. SUSAN COHEN 2016 TRUST
15. JON SHEVELL 2002 TRUST
16. NANCY BLAKEMAN 2002 TRUST
17. SUSAN COHEN 2002 TRUST
18. JON SHEVELL 2000 TRUST
19. NANCY BLAKEMAN 2000 TRUST
20. SUSAN COHEN 2000 TRUST
21. MERISSA COHEN 2000 TRUST
22. ZACHARY COHEN 2000 TRUST
23. ARLEN BLAKEMAN 2000 TRUST
24. MERISSA COHEN 1996 TRUST
25. ZACHARY COHEN 1996 TRUST
26. ARLEN BLAKEMAN 1996 TRUST
27. MYRON P. SHEVELL LIVING TRUST
28. MYRON P. SHEVELL 1990 TRUST
29. 12731 RT 30 CORP.
30. 1362 CLOVER LEAF RD, LLC
31. 15 MIDDLETOWN AVE CORP.
32. 345 WALCOTT ST LLC
33. 3600 GEORGETOWN CORP.
34. 55 DELTA DRIVE LLC
35. 6867 SCHUYLER ROAD LLC
36. 9 DUNHAM ROAD
37. ARLEN FARM CORP.
38. ARMERACH LP
39. BLANCHARD ST

40. BABCO, LLC
41. BURMONT, LLC
42. CAMP HILL TERMINAL, LLC
43. COLUMBUS TERMINAL, LLC (WELLS)
44. CONCORD TERMINAL LLC
45. ELK EAST, LLC
46. FAIR TERMINAL CORP
47. HOLLYWOOD CORP.
48. JON S CORP.
49. JPS HAWKS. INC.
50. LATHCO LLC
51. LEHCO, L.P.
52. MERCOHEN CORP.
53. MERI PROPERTIES
54. MILTON PROPERTIES, LP
55. MYDAN, LLC
56. NANCY SB CORP.
57. NEW TERMINAL CORP.
58. NORTH AVENUE EAST, LLC
59. NORTH RED TRUCK CORP.
60. NORTH TURBO CORP.
61. OLD BETH, LLC
62. OLD BETH II, LLC
63. ORANGE TRUCK CORP.
64. PENNSA CORP
65. PERRY ROAD LLC
66. PLEASANT HILL ROAD
67. RICHMOND TERMINAL, LLC
68. SCHUYLER ROAD LLC
69. SHEVELL INVESTMENT ASSOCIATES INC.
70. SHEVELL LONG BRANCH LLC
71. SPRING TERMINAL CORP.
72. THRU VIEW, LLC
73. TOLEDO TERMINAL, LLC
74. UNITED EXPRESS LINES, INC.
75. WORK STREET, LLC
76. ZACH CORP
77. APEX EXPRESS CORP.
78. PHOENIX MOTOR EXPRESS, INC.
79. ALBANY TERMINAL, LLC
80. NORTHEAST COMMERCE CENTER I, LLC
81. NORTHEAST COMMERCE CENTER II, LLC
82. BURVER, LLC

83. SHEVELL GROUP OF COMPANIES, LLC
84. MPS INVESTMENTS, LLC

# EXHIBIT B

## ASSIGNMENT OF INSURANCE PROMISSORY NOTES

THIS ASSIGNMENT OF INSURANCE PROMISSORY NOTES (this **"Assignment"**), is made effective as of the 25th day of October, 2019, by and between New England Motor Freight, Inc., a New Jersey corporation (the **"Assignor"**), and _____, a _____ limited liability company (the **"Assignee"**)

WHEREAS, Assignor is executing and delivering this Assignment pursuant to that certain Settlement Agreement and Mutual Release (the **"Agreement"**) made and entered into the ___ day of October, 2019, by and between: the Debtors; The Official Committee of Unsecured Creditors appointed in the Debtors' Chapter 11 bankruptcy cases (the **"Committee"**) on behalf of itself and any successors; and the Debtors' equity holders, officers, directors, lessors, and affiliates (collectively, the **"Equity Holders and Affiliates"**);

WHEREAS, capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Agreement;

WHEREAS, this Assignment is being executed and delivered pursuant to and is subject to the Agreement. In the event of any conflict between this Assignment and the Agreement, the Agreement shall control; and

WHEREAS, Assignee is the designee of the Equity Holders and Affiliates.

NOW, THEREFORE, FOR VALUE RECEIVED, Assignor hereby sells, assigns and transfers, without recourse, to the Assignee, all of the Assignor's right, title and interest in, to and under those certain promissory notes, agreements and documents (the **"Insurance Promissory Notes"**), including those identified on **Exhibit A** attached hereto and made a part hereof, relating to premium financing of four split dollar life insurance policies (the **"Policies"**) issued by John Hancock Life Insurance Company, policy numbers 94548393, 94717642, 94700739, and 94719010.

TO HAVE AND TO HOLD the same unto the Assignee and to the successors and assigns of the Assignee forever.

AND FURTHER, Assignor, for itself and its successors and assigns, shall at the request of Assignee, execute and deliver such additional documents, instruments, and conveyances; and take such other actions and do such other things, as may be appropriate to carry out the provisions of this Assignment and/or give effect to the transactions contemplated hereby.

**[Signatures on the following page]**

IN WITNESS WHEREOF, the undersigned have caused this Assignment to be executed and delivered as of the date first above written.

**ASSIGNOR:**

WITNESS OR ATTEST:

NEW ENGLAND MOTOR FREIGHT, INC., a New Jersey corporation

By: _____(SEAL)
Vincent J. Colistra, Chief Restructuring Officer

## Exhibit "A"

### To Assignment of Split Dollar Loan Documents

1. Promissory Note dated as of January 1, 2009 from the Nancy Blakeman 2000 Trust and the Susan Cohen 2000 Trust to Assignor;

2. Promissory Note dated as of January 1, 2009 from the Susan Cohen 2000 Trust to Assignor;

3. Promissory Note dated as of January 1, 2009 from the Jon Shevell 2000 Trust to Assignor;

4. Promissory Note dated as of January 1, 2009 from the Myron Shevell 1990 Trust to Assignor;

5. September 4, 2009 grid note;

6. September 4, 2009 grid note;

7. September 4, 2009 grid note;

8. September 4, 2009 grid note;

9. Assignments of Life Insurance Policy as Collateral/Release of Collateral Assignment as to each of the Policies; and

10. [others]

# EXHIBIT C

<div align="center">

BILL OF SALE
AND
GENERAL ASSIGNMENT AND ASSUMPTION

</div>

THIS BILL OF SALE AND GENERAL ASSIGNMENT (this "**Bill of Sale**") is made effective as of the 25th day of October 2019, from New England Motor Freight, Inc., Eastern Freight Ways, Inc., NEMF World Transport, Inc., Apex Logistics, Inc., Jans Leasing Corp., Carrier Industries, Inc., Myar, LLC, MyJon, LLC, Hollywood Avenue Solar, LLC, United Express Solar, LLC, NEMF Logistics, LLC (collectively the "**Debtors**") on behalf of themselves, their estates, and any successors unto _____, a _____ limited liability company (the "**Assignee**").

WHEREAS, Assignor is executing and delivering this Bill of Sale pursuant to that certain Settlement Agreement and Mutual Release (the "**Agreement**") made and entered into the 25th day of October, 2019, by and between: the Debtors; The Official Committee of Unsecured Creditors appointed in the Debtors' Chapter 11 bankruptcy cases (the "**Committee**") on behalf of itself and any successors; and the Debtors' equity holders, officers, directors, lessors, and affiliates (collectively, the "**Equity Holders and Affiliates**");

WHEREAS, Assignee is the designee of the Equity Holders and Affiliates to (i) take and receive all right, title and interest, together with all claims, of the Debtors in and otherwise relating to the solar power generation systems located at (a) 1618 Union Avenue, Pennsauken, New Jersey 08110, and (b) 3101 Hollywood Avenue, S. Plainfield, New Jersey 07080 (the "**Solar Assets**"), and (ii) assume the debt obligations of the Debtors to Public Service Electric and Gas Company relating to the Solar Assets and financing thereon (the "**PSEGC Debt**"); and

WHEREAS, capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Agreement.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtors hereby sell, transfer, convey, assign and deliver to Assignee and its successors and assigns, all of the Debtors' right, title and interest in and otherwise relating to the Solar Assets.

This Bill of Sale is being executed and delivered pursuant to and is subject to the Agreement, including, without limitation, Section 4 thereof. In the event of any conflict between this Bill of Sale and the Agreement, the Agreement shall control.

Assignee hereby assumes the PSEGC Debt in the maximum amount of $1,140,814.00, as well as any true-up due to PSEGC relating to the solar power generation systems, such true-up not to exceed $5,000.00.

The Debtors, and their successors and assigns, shall execute and deliver such further instruments of sale, conveyance, transfer and assignment and take such other actions reasonably requested by Assignee in order to more effectively (i) bargain, sell, transfer, convey, grant, assign, deliver to and vest in Assignee all rights, title and interests in and to the Solar Assets, as

<div align="center">1</div>

specified herein, and (ii) assume the PSEGC Debt, including, without limitation, all burdens, obligations and liabilities to be derived thereunder.

IN WITNESS WHEREOF, the undersigned have caused this Bill of Sale to be executed and delivered as of the date first above written.

NEW ENGLAND MOTOR FREIGHT, INC.
EASTERN FREIGHT WAYS, INC.
NEMF WORLD TRANSPORT, INC.
APEX LOGISTICS, INC.
JANS LEASING CORP.
CARRIER INDUSTRIES, INC.
MYAR, LLC
MYJON, LLC
HOLLYWOOD AVENUE SOLAR, LLC
UNITED EXPRESS SOLAR, LLC
NEMF LOGISTICS, LLC

By:_____(SEAL)
Vincent J. Colistra, Chief Restructuring Officer

[_____]

By:_____(SEAL)
Name:_____
Title:_____

10207861.2

2