RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Joseph L. Schwartz, Esq. (JS-5525)
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey  07962-1981
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
jschwartz@riker.com

*Counsel to United States Fire Insurance Company*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Jointly Administered) |

**OBJECTION OF UNITED STATES FIRE INSURANCE COMPANY TO MOTION OF CREDITORS BYRON E. NAJERA-OSORIO, XIOMARA MENDOZA-LOPEZ AND ABEL TROCHEZ FOR LEAVE TO FILE A LATE PROOF OF CLAIM**

United States Fire Insurance Company ("U.S. Fire"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the Motion of Creditors Byron E. Najera Osorio, Xiomara Mendoza-Lopez and Abel Trochez (collectively, the "Claimants") for Leave to File a Late Proof of Claim (the "Motion").  In support of the Objection, U.S. Fire respectfully states as follows:

### PRELIMINARY STATEMENT[1]

By the Claimants' own admission, through their counsel, the Claimants had multiple communications with the Debtors both prior to and after the Petition Date and knew about the Debtors' bankruptcy case.  Further, the Claimants readily admit that they received actual notice

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed herein.

of the bar date prior to its expiration, yet failed to file proofs of claim, and then waited approximately another six (6) months to file the Motion. As a result, the Claimants cannot meet the requirements for "excusable neglect" set forth by the United States Supreme Court for the filing of an untimely claim.

For those reasons, and for the reasons set forth herein, the Motion must be denied.

## BACKGROUND

**A.    The U.S. Fire Excess Indemnity Contract.**

1.    Prior to the Petition Date (defined herein), New England Motor Freight, Inc., along with the other debtors (collectively the "Debtors"), provided logistics services, including trucking services, in fifteen states. In connection with their business operations, the Debtors procured excess insurance coverage from both U.S. Fire and from Protective Insurance Co. ("Protective", and together with U.S. Fire, the "Auto Insurers"), relating to different policy years, for, *inter alia,* bodily injury and property damage claims caused by the negligence of the Debtors' drivers.

2.    Specifically, in or about April 2018, U.S. Fire and the Debtors entered into an Excess Indemnity Contract (the "Excess Indemnity Contract"), wherein U.S. Fire provided excess indemnity insurance coverage to the Debtors for the period from April 10, 2018 through April 10, 2019 (the "U.S. Fire Policy Year"). Under the Excess Indemnity Contract, U.S. Fire is required to indemnify the Debtors for, among other things, certain bodily injury and property damage caused by the Debtors and/or their employees for third party claims in excess of the Debtors' self-insured retention of $500,000 (the "SIR").[2]

---

[2] The Debtors also entered into substantially identical excess indemnity contracts with Protective for claims occurring during prior years.

**B.      The U.S. Fire Surety Bonds, the Debtors' Indemnity and Collateral Agreement.**

3.      In addition to the Excess Indemnity Contract, in or about April 2018, U.S. Fire issued three (3) separate Motor Carrier Public Liability Surety Bonds Under Sections 29 and 30 of the Motor Carrier Act of 1980 to certain of the Debtors (collectively, the "Surety Bonds"). The Surety Bonds require U.S. Fire to provide coverage for, *inter alia*, certain public liability, property damage and environmental restoration claims resulting from final judgments against certain of the Debtors that fall within the SIR.

4.      In connection with U.S. Fire's issuance of the Surety Bonds, U.S. Fire also entered into a General Agreement of Indemnity dated April 10, 2018 (the "General Agreement of Indemnity") and a Collateral Agreement dated April 10, 2018 (the "Collateral Agreement") with the Debtors, which required the Debtors to indemnify U.S. Fire for, among other things, any payments made by U.S. Fire under the Surety Bonds.

5.      In connection with the Collateral Agreement, and as collateral for the Debtors' indemnification obligations under the General Indemnity Agreement, in or about April 2018, the Debtors caused a $2,450,000 letter of credit (the "LC") to be issued in favor of U.S. Fire.

6.      After receiving notice that the LC was set to expire in or about early April 2019, U.S. Fire drew down on the LC, and deposited the sum of $2,450,000 of LC proceeds in escrow.

**C.      The Bankruptcy Case.**

7.      On February 11, 2019 (the "Petition Date"), the Debtors filed their chapter 11 bankruptcy cases with the Court.  Since the Petition Date, the Debtors have remained in possession of their assets and affairs as debtors-in-possession, pursuant to 11 U.S.C. §§ 1107 and 1108.

8. On February 21, 2019, the Office of the United States Trustee appointed an Official Unsecured Creditors' Committee (the "Committee") in the Debtors' cases, pursuant to 11 U.S.C. § 1102.

**D.     The Debtors' Schedules.**

9. In their bankruptcy schedules that the Debtors caused to be filed with the Court, the Debtors listed each of the Claimants as creditors in Schedule E/F of the Debtors' bankruptcy schedules. In particular, in their bankruptcy schedules, the Debtors listed the Claimants' claims as being contingent, unliquidated and disputed, and expressly provided notice of the bankruptcy to the Claimants' counsel. See Schedule E/F, Docket No. 411 at 203. See also Rosenstein Certification, Docket No. 1098-2 at Ex. A.

10. As a result of the Debtors' listing of the Claimants as creditors in their schedules, the Claimants, through their counsel, received notice of the Debtors' bankruptcy case.

**E.     The Auto Liability Injunction Lawsuit and the Bar Date.**

11. All prepetition bodily injury and property damage claims against the Debtors were subject to the automatic stay. Nonetheless, on March 14, 2019, the Debtors commenced an adversary proceeding, styled *New England Motor Freight, Inc., et. al. v. State Farm Mutual Automobile Insurance Company, a/s/o Riquet Simplice, et. al.,* Adv. Pro. No. 19-01119 in the United States Bankruptcy Court for the District of New Jersey (the "Auto Liability Injunction Action"). The purpose of the Auto Liability Injunction Action was to: (i) seek a preliminary injunction under 11 U.S.C. §§ 105(a) and 362(a) enjoining the continuation or commencement of any action against any of the Debtors' employees and/or former employees (collectively, the "Drivers") who could have been individually liable for Auto Liability Claims (as defined in the Auto Liability Injunction Action), and/or (ii) extend the automatic stay to protect the Debtors'

estate on account of possible indemnity claims the Drivers potentially possessed against the Debtors if judgment were to be entered against a Driver in any lawsuit.

12. On April 16, 2019, the Court entered a temporary restraining order in the Auto Liability Injunction Action, thereby staying all "Auto Liability Actions" (the "TRO"), and directed the parties to meet and confer regarding a consensual protocol to govern the orderly resolution of all Auto Liability Claims. The Court subsequently extended the TRO a number of times, with the consent of all interested parties, which included the Auto Insurers, the Committee and an ad hoc group of counsel representing holders of Auto Liability Claims.

13. In connection with the Auto Liability Injunction Action, the Debtors, U.S. Fire, Protective, the Committee and the various claimants' counsel engaged in lengthy settlement discussions over a period of many months.

14. In connection with those settlement discussions, on or about April 9, 2019 the Debtors filed a motion [Docket No. 435], on notice to the Claimants' counsel, and on May 1, 2019, the Court entered an Order Establishing Bar Dates and Procedures and Approving the Form and Manner of Notice Thereof (the "Bar Date Order"). See Docket No. 519. Pursuant to the Bar Date Order, the Court established June 18, 2019 as the deadline for the filing of proofs of claim in the Debtors' bankruptcy cases (the "Bar Date"):

> [A]ll persons or entities . . . that assert a claim against the Debtors . . . which arose on or prior to the Petition Date, who do not file a proof of such [c]laim . . . in the manner provided for herein so that it is actually received on or before **June 18, 2019 at 5:00 p.m. (prevailing Eastern Time)** (the "**General Bar Date**"). . . shall not be permitted to (a) vote to accept or reject any plan filed in the chapter 11 cases, (b) participate in any distribution in the chapter 11 cases on account of such [c]laim, or (c) receive further notices regarding such [c]laim.

See id. at ¶ 3.

**F.     The Plan.**

15.     Ultimately, a settlement was reached among the Debtors, U.S. Fire, Protective, the Committee and the various claimants' counsel that had been negotiating a protocol in connection with the Auto Liability Injunction Action.

16.     On November 19, 2019, the Debtors and the Committee filed their Third Amended Joint Combined Plan of Liquidation and Disclosure Statement (the "Plan").  As part of the Plan, the Debtors, U.S. Fire, Protective and the Committee entered into an Auto Liability Claims Protocol Settlement Agreement (the "Protocol").  See Auto Liability Claims Protocol Settlement Agreement, Docket No. 1023-3.  Pursuant to the Protocol, U.S. Fire and Protective retained the right to settle and pay certain bodily injury and property damage claims against one or more of the Debtors relating to auto liability claims that fall within the SIR.  See Third Amended Joint Combined Plan of Liquidation and Disclosure Statement, Docket No. 1023 at 67 and Auto Liability Claims Protocol Settlement Agreement, Docket No. 1023-3 at 3.

17.     As is set forth in the Plan and the Protocol, pursuant to the Protocol, U.S. Fire agreed to, among other things, pay certain bodily injury and property damage claims that accrued during its policy year from the $2,450,000 of LC proceeds.  See Third Amended Joint Combined Plan of Liquidation and Disclosure Statement, Docket No. 1023 at 37 and Auto Liability Claims Protocol Settlement Agreement, Docket No. 1023-3 at 6-7.

18.     On January 15, 2020, the Court entered an Order confirming the Plan (the "Confirmation Order").  See Docket No. 1123.

**G.     The Claimants' Claims.**

19.     According to the Claimants, on April 25, 2018, the Claimants were involved in a motor vehicle accident with another vehicle operated by one of the Drivers.  Shortly thereafter,

6

and continuing over a period of months, the Claimants' counsel communicated with the Debtors' in-house claims agent on multiple occasions regarding the Claimants' alleged bodily injury and property damage claims. See Rosenstein Certification, Docket No. 1098-2 at ¶¶ 4-8.

20. Not only did the Claimants' counsel receive notice of the Debtors' bankruptcy filing through a mailing from the Debtors' claims agent at the inception of the bankruptcy cases, but, as the Claimants readily admit, the Debtors expressly advised the Claimants' counsel of the Debtors' chapter 11 bankruptcy case on March 11, 2019. See id. at ¶ 12.

21. Additionally, not only did the Claimants' counsel receive notice from the Debtors' claims agent of the Debtors' motion to establish a bar date for filing proofs of claim in April 2019, but, by the Claimants own admission, the Claimants' counsel received notice of the Bar Date by, at the latest, June 3, 2019. Id. at ¶¶ 10-13.

22. Notwithstanding the foregoing, the Claimants sat on their rights and never filed proofs of claim by the Bar Date. Further, the Claimants never even filed their Motion until approximately six (6) months after the Bar Date, on January 8, 2020, approximately one week before entry of the Confirmation Order.

## **OBJECTION**

23. Fed. R. Bankr. P. 3002(c)(6) provides:

> On motion filed by a creditor before or after the expiration of the time to file a proof of claim, the court may extend the time by not more than 60 days from the date of the order granting the motion. The motion may be granted if the court finds that:
>
> **(A)**     the notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim **because the debtor failed to timely file the list of creditors' names and addresses required by Rule 1007(a).**

Id. (emphasis added).

24. Here, the Debtors listed the Claimants' claims and the correct address of the Claimants' counsel in Schedule E/F of their bankruptcy schedules. The Debtors' claims agent thereafter sent notices of the bankruptcy to all creditors, including the Claimants' counsel. Accordingly, Fed. R. Bankr. P. 3002(c)(6) is inapplicable.

25. In the Motion, the Claimants readily admit that the Claimants learned of the Debtors' bankruptcy case on March 11, 2019, over three (3) months before the Bar Date Order was entered. See Rosenstein Certification, Docket No. 1098-2 at ¶ 10.

26. The Claimants thereafter received notice through the Debtors' claims agent of the Debtors' motion to establish a bar date in April 2019 and of the Bar Date Order. In fact, the Claimants' counsel admits to receiving notice of the Bar Date at the latest on June 3, 2019, more than two weeks before the bar date expired. See id. at ¶ 13.

27. The Claimants, citing City of New York v. New York, New Haven & Hartford R.R., 344 U.S. 293, 297 (1953), now assert that, although they may have had notice of the Debtors' bankruptcy cases, "reasonable notice," as described in Fed. R. Bankr. P. 2002, was required before their claim could be forever barred. See Id. at 297. However, in Dollinger v. Poskanzer, 146 B.R. 125 (D.N.J. 1992), the United States District Court for the District of New Jersey explained that "the rationale upon which [cases] [like] [New York] rests has been obviated by passage of the Bankruptcy Reform Act of 1978." Id. at 132-33. Importantly, the District Court in Poskanzer found, under the Bankruptcy Reform Act of 1978, "bar dates are not discretionary." Id. at 133.

28. Fed. R. Bankr. P. 3003(c)(2) provides that, "[a]ny creditor . . . whose claim . . . is not scheduled or scheduled as disputed, contingent, or unliquidated **shall** file a proof of claim . . . within the time prescribed by subdivision (c)(3) of this rule." Id. (emphasis added). Fed. R.

Bankr. P. 3003(c)(3) states that, upon a showing of "cause," the court may extend the time within which proofs of claim or interest may be filed. See Fed. R. Bankr. P. 3003(c)(3).

29. In support of their request to file proofs of claim out of time, the Claimants contend that their failure to file a timely proof of claim was purportedly due to "excusable neglect" and thus, pursuant to Fed. R. Bankr. P. 9006(b)(1), they should be permitted to file their claim out of time. Fed. R. Bankr. P. 9006(b)(1) provides:

> (1) In General. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court **for cause shown** may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1) (emphasis added).

30. In Pioneer Inc. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993), the Supreme Court set forth the analysis required for a finding of "excusable neglect" for filing a proof of claim out of time under Fed. R. Bankr. P. 9006. In so doing, the Supreme Court identified four (4) factors to consider when determining what constitutes "excusable neglect": (1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within reasonable control of the movant; and (4) whether the movant acted in good faith. See id. at 395.

31. Importantly, the Supreme Court also found that clients "must be held accountable for the acts and omissions of their attorneys," determining that the proper focus is whether the neglect was "excusable." Id. at 396-97.

32. In In re Trump Taj Mahal Associates, 156 B.R. 928 (Bankr. D.N.J. 1993), the court held, "[t]he bar date in a Chapter 11 reorganization performs an important purpose; it not only allows the trustee or debtor-in-possession to estimate the debtor's potential liabilities, it is also essential in formulating a viable reorganization plan. Without a final claims deadline, participants in the reorganization process would be hindered by undue caution in their negotiations and in voting on the plan, and . . . the debtors carrying out the provisions of the confirmed plan." Id. at 938.

33. Here, the Claimants argue that there is no prejudice to the Debtors because the Debtors were aware of the Claimants' claims prior to the Petition Date. However, the Debtors listed the Claimants' claims in their schedules, and listed those claims as contingent, unliquidated and disputed, thereby requiring the Claimants to file proofs of claim pursuant to Fed. R. Bankr. P. 3003(2).

34. U.S. Fire worked diligently in arriving at a settlement which ultimately lead to the confirmation of the Debtors' Plan and approval of the Protocol. Given the fact that the LC proceeds are finite, it would be prejudicial to now allow the Claimants to diminish the pool of available funds and potentially prejudice other claimants by filing untimely proofs of claim.

35. Claimants further argue that their delay was not lengthy. However, the Claimants were aware of the Debtors' bankruptcy case from nearly its inception in February 2019, and were certainly aware of the Bar Date and the Bar Date Order, yet failed to file the Motion until January 8, 2020, eleven (11) months after the Petition Date and nearly six (6) months after the Bar Date. This delay was entirely in the Claimants' control, and the Claimants have failed to satisfactorily explain the reason for such a lengthy delay. See In re Interstate Grocery Distributions System, Inc., 267 B.R. 907, 913 (Bankr. D.N.J. 2001) (failure to satisfactorily

explain a 7.5 month delay resulted in denial of finding of "excusable neglect"). While the Supreme Court in Pioneer found that the movant's twenty-day delay was excusable, other courts within this District have found longer periods of delay are not, especially where there is not valid justification for the delay. See Trump Taj Mahal Associates, 156 B.R. at 938 (finding that allowing proofs of claim more than one year after the debtor filed its petition should not be allowed). See also Ethan Michael Inc. v. Union Twp., 392 Fed. Appx. 906, 909 (3d Cir. 2010) (concurring with the District Court's application of the factors set forth in Pioneer Inc. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993) and finding that, under the totality of the circumstances, the length of the delay was unreasonable because the movant sought relief five (5) months after receiving notice of the entry of the Court's order and failed to provide a reasonable justification reason for the delay.). Accordingly, the second and third factors set forth in Pioneer weigh against the Claimants' filing of a proof of claim out of time

36. The Claimants also argue that their late filing is not a result of bad faith since they purportedly "consistently and diligently" communicated with the Debtors and Protective (the wrong carrier), which does not even appear to be true, as the Claimants do not appear to have followed up with the Debtors at all between July 2018 and March 2019. See Rosenstein Cert., Docket No. 1098-2 at ¶¶ 4-9.

37. The Claimants further assert that their pursuit of potential uninsured motorists claims somehow prevented them from timely filing their proofs of claim. These assertions are nonsensical, as the Debtors were not and are not uninsured, and because creditors in general are nonetheless required to file proofs of claim, particularly in cases where they receive notice of the Bar Date.

38. For these reasons, under <u>Pioneer</u>, the Claimants cannot establish excusable neglect.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, U.S. Fire respectfully requests that the Court deny the Motion, and provide U.S. Fire with such other and further relief as the Court deems appropriate.

Dated:   January 28, 2020
         Morristown, New Jersey

                                    RIKER DANZIG SCHERER HYLAND
                                        &amp; PERRETTI LLP

                                        /s/ Joseph L. Schwartz
                                        Joseph L. Schwartz, Esq.

                                      *Counsel for United States Fire Insurance Company*

5105281v2