RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Joseph L. Schwartz, Esq. (JS-5525)
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey  07962-1981
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
jschwartz@riker.com

*Counsel to United States Fire Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Jointly Administered) |

**OBJECTION OF UNITED STATES FIRE INSURANCE COMPANY TO MOTION OF CREDITORS MELINDA AND DARRELL LONDOS SEEKING AN ORDER DEEMING CLAIM NO. 1319 TIMELY FILED**

United States Fire Insurance Company ("U.S. Fire"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the Motion filed by Melinda and Darrell Londos (the "Claimants") Seeking an Order Deeming Claim No. 1319 Timely Filed or Authorizing the Claimants to File a Late Claim (the "Motion"). In support of the Objection, U.S. Fire respectfully states as follows:

**PRELIMINARY STATEMENT[1]**

June 18, 2019 was the Bar Date established by the Court for filing proofs of claim in the Debtors' bankruptcy case. The Claimants admittedly initially filed a proof of claim in this case five (5) months after the Bar Date. That proof of claim was disallowed and expunged

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed herein.

pursuant to this Court's June 29, 2020 Order Granting the Liquidating Trustee's First Omnibus Objection to Certain Late Filed Claims [Docket No. 1279] as a result of having been filed well after the Bar Date. Now, four (4) months after the Claim was expunged, the Claimants file the Motion, which is nothing more than a bare bones pleading that lacks any explanation or justification for the filing of a very late proof of claim. Additionally, not only have the Claimants filed the Motion approximately sixteen (16) months after the Bar Date, but they file the Motion approximately nine (9) months after the Court entered an Order confirming the Debtors' Plan, which contained a heavily-negotiated and detailed Protocol to deal with and address bodily injury and property damage claims.

The Motion should be denied for a number of reasons. First, approximately nine (9) months ago, on February 18, 2020, the Court entered an Order on a similar motion and allowed a late-filed claim on a very limited basis. At a minimum, pursuant to the "law of the case doctrine," the Claimants are bound by the Court's prior order and decision. More importantly, however, the law is clear that a late-filed proof of claim must be disallowed unless the creditor can demonstrate that the claim was filed late as the result of "excusable neglect." Here, through their bare bones Motion, the Claimants do not even offer an excuse for their late filing, let alone excusable neglect, and therefore fail to meet the Supreme Court's excusable neglect standard for filing late proofs of claim.

For these reasons, and for those set forth herein, U.S. Fire respectfully requests that the Court deny the Motion.

**BACKGROUND**

A.     **The U.S. Fire Excess Indemnity Contract.**

1.     Prior to the Petition Date (defined herein), New England Motor Freight, Inc., along with the other debtors (collectively the "Debtors"), provided logistics services, including trucking services, in fifteen states. In connection with their business operations, the Debtors procured excess insurance coverage from both U.S. Fire and from Protective Insurance Co. ("Protective", and together with U.S. Fire, the "Auto Insurers"), relating to different policy years, for, *inter alia,* bodily injury and property damage claims caused by the negligence of the Debtors' drivers.

2.     Specifically, in or about April 2018, U.S. Fire and the Debtors entered into an Excess Indemnity Contract (the "Excess Indemnity Contract"), wherein U.S. Fire provided excess indemnity insurance coverage to the Debtors for the period from April 10, 2018 through April 10, 2019. Under the Excess Indemnity Contract, U.S. Fire agreed to indemnify the Debtors for, among other things, certain bodily injury and property damage caused by the Debtors and/or their employees for third party claims in excess of the Debtors' self-insured retention of $500,000 (the "SIR").[2]

B.     **The U.S. Fire Surety Bonds, the Debtors' Indemnity and Collateral Agreement.**

3.     In addition to the Excess Indemnity Contract, in or about April 2018, U.S. Fire issued three (3) separate Motor Carrier Public Liability Surety Bonds Under Sections 29 and 30 of the Motor Carrier Act of 1980 to certain of the Debtors (collectively, the "Surety Bonds"). The Surety Bonds require U.S. Fire to provide coverage for, *inter alia*, certain public liability,

---

[2] The Debtors also entered into substantially identical excess indemnity contracts with Protective for claims occurring during prior years.

property damage and environmental restoration claims resulting from final judgments against certain of the Debtors that fall within the SIR.

4. In connection with U.S. Fire's issuance of the Surety Bonds, U.S. Fire also entered into a General Agreement of Indemnity dated April 10, 2018 (the "General Agreement of Indemnity") and a Collateral Agreement dated April 10, 2018 (the "Collateral Agreement") with the Debtors, which required the Debtors to indemnify U.S. Fire for, among other things, any payments made by U.S. Fire under the Surety Bonds.

5. In connection with the Collateral Agreement, and as collateral for the Debtors' indemnification obligations under the General Indemnity Agreement, in or about April 2018, the Debtors caused a $2,450,000 letter of credit (the "LC") to be issued in favor of U.S. Fire.

6. After receiving notice that the LC was set to expire in or about early April 2019, U.S. Fire drew down on the LC, and deposited the sum of $2,450,000 of LC proceeds in escrow (the "LC Proceeds").

**C.     The Bankruptcy Case.**

7. On February 11, 2019 (the "Petition Date"), the Debtors filed their chapter 11 bankruptcy cases with the Court.

8. On February 21, 2019, the Office of the United States Trustee appointed an Official Unsecured Creditors' Committee (the "Committee") in the Debtors' cases, pursuant to 11 U.S.C. § 1102.

**D.     The Auto Liability Injunction Lawsuit and the Bar Date.**

9. All prepetition bodily injury and property damage claims against the Debtors were subject to the automatic stay. Nonetheless, on March 14, 2019, the Debtors commenced an adversary proceeding, styled *New England Motor Freight, Inc., et. al. v. State Farm Mutual*

*Automobile Insurance Company, a/s/o Riquet Simplice, et. al.,* Adv. Pro. No. 19-01119 in this Court (the "Auto Liability Injunction Action"). The purpose of the Auto Liability Injunction Action was to: (i) seek a preliminary injunction under 11 U.S.C. §§ 105(a) and 362(a) enjoining the continuation or commencement of any action against any of the Debtors' employees and/or former employees (collectively, the "Drivers") who could have been individually liable for Auto Liability Claims (as defined in the Auto Liability Injunction Action), and/or (ii) extend the automatic stay to protect the Debtors' estate on account of possible indemnity claims the Drivers potentially possessed against the Debtors if judgment were to be entered against a Driver in any lawsuit.

10. On April 16, 2019, the Court entered a temporary restraining order in the Auto Liability Injunction Action, thereby staying all "Auto Liability Actions" (the "TRO"), and directed the parties to meet and confer regarding a consensual protocol to govern the orderly resolution of all Auto Liability Claims. The Court subsequently extended the TRO a number of times, with the consent of all interested parties, which included the Auto Insurers, the Committee and an ad hoc group of counsel representing holders of Auto Liability Claims.

11. In connection with the Auto Liability Injunction Action, the Debtors, U.S. Fire, Protective, the Committee and the various claimants' counsel engaged in lengthy settlement discussions over a period of many months.

12. On May 1, 2019, the Court entered an Order Establishing Bar Dates and Procedures and Approving the Form and Manner of Notice Thereof (the "Bar Date Order"). See Docket No. 519. Pursuant to the Bar Date Order, the Court established June 18, 2019 as the deadline for the filing of proofs of claim in the Debtors' bankruptcy cases (the "Bar Date"):

> [A]ll persons or entities . . . that assert a claim . . . against the Debtors . . . which arose on or prior to the Petition Date, who do

> not file a proof of such [c]laim . . . in the manner provided for herein so that it is actually received on or before **June 18, 2019 at 5:00 p.m. (prevailing Eastern Time)** (the "**General Bar Date**"). . . . shall not be permitted to (a) vote to accept or reject any plan filed in the chapter 11 cases, (b) participate in any distribution in the chapter 11 cases on account of such [c]laim, or (c) receive further notices regarding such [c]laim.

See id. at ¶ 3.

**E.    The Plan.**

13.    Ultimately, a settlement was reached among the Debtors, U.S. Fire, Protective, the Committee and the various claimants' counsel that had been negotiating a protocol in connection with the Auto Liability Injunction Action.

14.    On November 19, 2019, the Debtors and the Committee filed their Third Amended Joint Combined Plan of Liquidation and Disclosure Statement (the "Plan").  As part of the Plan, the Debtors, U.S. Fire, Protective and the Committee entered into an Auto Liability Claims Protocol Settlement Agreement (the "Protocol").  See Auto Liability Claims Protocol Settlement Agreement, Docket No. 1023-3.  Pursuant to the Protocol, U.S. Fire and Protective retained the right to settle and pay certain bodily injury and property damage claims against one or more of the Debtors relating to auto liability claims that fall within the SIR.  See Third Amended Joint Combined Plan of Liquidation and Disclosure Statement, Docket No. 1023 at 67 and Auto Liability Claims Protocol Settlement Agreement, Docket No. 1023-3 at 3.

15.    As is set forth in the Plan and the Protocol, pursuant to the Protocol, U.S. Fire agreed to, among other things, pay certain bodily injury and property damage claims that accrued during its policy year from the $2,450,000 of LC Proceeds.  See Third Amended Joint Combined Plan of Liquidation and Disclosure Statement, Docket No. 1023 at 37 and Auto Liability Claims Protocol Settlement Agreement, Docket No. 1023-3 at 6-7.

16. On January 15, 2020, the Court entered an Order confirming the Plan (the "Confirmation Order"). See Docket No. 1123.

17. The effective date of the Plan subsequently occurred on February 3, 2020 (the "Plan Effective Date").

18. Upon the Plan Effective Date, all of the Debtors' assets were transferred to and vested in the post-confirmation Liquidating Trust, which is overseen and administered by a Liquidating Trustee. See Third Amended Joint Combined Plan of Liquidation and Disclosure Statement, Docket No. 1023 at Article VII.A.

F. **The Court's February 18, 2020 Order Allowing Recovery on Late Filed Claim on a Limited Basis.**

19. On February 18, 2020, the Court entered an order granting certain claimants leave to file late proofs of claim in order to recover against insurance proceeds on a limited basis (the "February 18, 2020 Claim Order"). See Docket No. 1182. However, so as to not unfairly prejudice other creditors who had timely filed proofs of claim, the Court expressly added paragraph 2 to its February 18, 2020 Claim Order limiting those claimants' recovery to the LC Proceeds solely to the extent available after U.S. Fire first paid all other expense and allowed claims for which U.S. Fire is liable under the Protocol:

> shall only be entitled to receive distributions on [their] [c]laims on a limited basis. Specifically, the [c]laimants shall file the [c]laims within ten (10) days of entry of this Order. The [c]laimants shall thereafter be entitled to participate in, and shall be bound by the Protocol established under the Plan. U.S. Fire shall only be required to make distributions to the [c]laimants on account of the [c]laims to the extent there are sufficient . . . LC Proceeds available after first paying all other expenses and allowed claims for which U.S. Fire is liable pursuant to the Protocol. To the extent there are insufficient LC proceeds available to pay the [c]laims after payment of all other expenses and allowed claims for which U.S. Fire is liable under the Protocol, the [c]laims shall be deemed disallowed, with prejudice, without further order of the Court.

> Under no circumstance shall the estate or U.S. Fire be personally responsible on account of the [c]laims other than as set forth herein. Further, for the avoidance of any doubt, the only potential source of recovery for the [c]laimants shall be the LC Proceeds and under no circumstances shall the [C]laimants be entitled to assert any claims against, or obtain any recovery from, U.S. Fire or the Debtors' estates generally.

See Docket No. 1182.

**G.    The Claim.**

20.    According to the Claimants, on May 27, 2018, the Claimants were involved in a motor vehicle accident with another vehicle operated by one of the Drivers.

21.    On April 11, 2019, and apparently in violation of the automatic stay, the Claimants commenced a lawsuit against Debtor New England Motor Freight, Inc. in New York Supreme Court alleging personal injuries and seeking compensatory damages.

22.    Thereafter, on November 25, 2019, the Claimants filed Claim No. 1319 with this Court – five (5) months after the expiration of the Bar Date. Additionally, a review of the claims register in this case reflects that on February 18, 2020, the Claimants filed what appears to be an identical claim to Claim No. 1319, which is listed on the claims register as Claim No. 1345 (Claim Nos. 1319 and 1345 are defined collectively herein as the "Claim.").[3]

**H.    The Order Disallowing and Expunging the Claim.**

23.    On April 29, 2020, the Liquidating Trustee filed with the Court his First Omnibus Objection to Certain Late Filed Claims [Docket No. 1245] (the "Claims Objection").

24.    The Claims Objection objected to Claim No. 1319 on the basis that the claim was untimely in that it was filed after the Bar Date.

---

[3] This second claim is not addressed by the Claimants in the Motion.

25. On June 29, 2020, and over the Claimants' objection [Docket No. 1265], the Court granted the Claims Objection, and disallowed and expunged Claim No. 1319. See Order Granting the Liquidating Trustee's First Omnibus Objection to Certain Late Filed Claims [Docket No. 1279].

**OBJECTION**

26. As set forth herein, the Claimants have made no attempt to justify why their Claim should be allowed, let alone meet the "excusable neglect" standard required by Fed. R. Bankr. P. 9006(b)(1), which is defined in the United States Supreme Court's decision in Pioneer Inc. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993). As a result, the Motion must be denied.

27. To the extent the Court is nonetheless inclined to allow the Claim for the sole purpose of recovering against insurance proceeds, U.S. Fire requests that the Court follow its February 18, 2020 Claim Order and limit the Claimants' recovery solely to the LC Proceeds to the extent available after U.S. Fire has first paid all other expenses and allowed claims.

**I.    The Claimants Have Not Met their Burden to Show "Excusable Neglect."**

28. Fed. R. Bankr. P. 3003(c)(2) provides that, "[a]ny creditor . . . whose claim . . . is not scheduled or scheduled as disputed, contingent, or unliquidated **shall** file a proof of claim . . . within the time prescribed by subdivision (c)(3) of this rule." Id. (emphasis added). Fed. R. Bankr. P. 3003(c)(3) states that, upon a showing of "cause," the court may extend the time within which proofs of claim or interest may be filed. See Fed. R. Bankr. P. 3003(c)(3).

29. Fed. R. Bankr. P. 9006(b)(1) permits a court to allow a late-filed claim if the claimant can demonstrate that their failure to file a timely proof of claim was due to "excusable neglect":

> (1) <u>In General</u>. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court **for cause shown** may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) **on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect**.

Fed. R. Bankr. P. 9006(b)(1) (emphasis added).

30. In <u>Pioneer Inc. Services Co. v. Brunswick Associates Ltd. Partnership</u>, 507 U.S. 380 (1993), the Supreme Court set forth the analysis required for a finding of "excusable neglect" for filing a proof of claim out of time under Fed. R. Bankr. P. 9006. In so doing, the Supreme Court identified four (4) factors to consider when determining what constitutes "excusable neglect": (1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within reasonable control of the movant; and (4) whether the movant acted in good faith. See <u>id.</u> at 395.

31. Importantly, courts are clear that the burden falls on the claimant to demonstrate "excusable neglect." See <u>Jones v. Chemetron Corp.</u>, 212 F.3d 199, 205 (3d Cir. 2000) ("The burden of proving excusable neglect lies with the late-claimant."); <u>In re Energy Future Holdings Corp.</u>, 619 B.R. 99, 110 (Bankr. D. Del. 2020) (same).

32. Here, the Claimants have utterly failed to address the excusable neglect standard, as required under Fed. R. Bankr. P. 9006 and <u>Pioneer</u>.

33. As a result, the Motion must be denied.

## II. Alternatively, The Court Should Follow its February 18, 2020 Claim Order Limiting Claimants' Recovery to the Extent that the Court Allows the Claim.

34. Pursuant to the "law of the case doctrine," once "an issue is decided, it will not be relitigated in the same case, except in unusual circumstances." Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 165 (3d Cir. 1982). See also In re G-I Holdings, Inc., 568 B.R. 731, 764 (Bankr. D.N.J. 2017) ("'The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"); In re City of Phila. Litig., 158 F.3d 711, 717–18 (3d Cir. 1998) ("The doctrine is designed to protect traditional ideals such as finality, judicial economy, and jurisprudential integrity.").

35. The Court decided this exact issue – how a late-filed Auto Liability Claim should receive a distribution from insurance proceeds – by entry of the February 18, 2020 Claim Order. Through the February 18, 2020 Claim Order, the Court specifically limited recovery on a late-filed claim to the LC Proceeds, but only to the extent there are sufficient LC Proceeds available after U.S. Fire has first paid all other expense and allowed claims for which U.S. Fire is liable under the Protocol.

36. This limitation is critical because it protects the pool of funds available for distribution on account of timely-filed claims, and it preserves the integrity of the Protocol. As the Court may recall, the Debtors, U.S. Fire, Protective and the Committee worked diligently in arriving at a settlement which ultimately lead to the confirmation of the Plan and approval of the Protocol. Given the fact that the LC Proceeds are finite, it would be prejudicial to now allow the Claimants to diminish the pool of available funds and potentially prejudice other claimants who filed timely claims.

37. If the Court choses to allow the Claim, U.S. Fire submits that the order allowing the Claim should contain the same language contained in Paragraph 2 of the February 18, 2020 Claim Order limiting the Claimants' recovery.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, U.S. Fire respectfully requests that the Court deny the Motion, and provide U.S. Fire with such other and further relief as the Court deems appropriate.

Dated:   November 9, 2020
         Morristown, New Jersey

RIKER DANZIG SCHERER HYLAND
 & PERRETTI LLP

    /s/ Joseph L. Schwartz
Joseph L. Schwartz, Esq.

*Counsel for United States Fire Insurance Company*

5225030v2