HEARING DATE: December 8, 2020
TIME: 10:00 a.m.

MAYNARD, O'CONNOR, SMITH & CATALINOTTO, LLP
By: Justin W. Gray, Esq.
**Attorneys for Creditor, Anthony McNeil**
6 Tower Place
Albany, New York 12203
Telephone: (518) 465-3553
Facsimile: (518) 465-5845
E-mail: gray@moscllp.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

---

In re:

**NEW ENGLAND MOTOR FREIGHT, INC.,**
et al.[1]

Debtor.

**OPPOSITION TO OMNIBUS OBJECTION TO CERTAIN AUTO LIABILITY CLAIMS**

Chapter 11

Case No.: 19-12809-JKS

---

**JUSTIN W. GRAY, ESQ.**, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury as follows:

1. I am a partner with the law firm of Maynard, O'Connor, Smith & Catalinotto, LLP, attorneys for Anthony McNeil, a creditor in the above-referenced matter. I make this declaration in opposition to the Liquidating Trustee's Third Omnibus Objection to Certain Auto Liability Claims.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: New England Motor Freight, Inc. (7697); Eastern Freight Ways, Inc. (3461); NEMF World Transport, Inc. (2777); Apex Logistics, Inc. (5347); Jans Leasing Corp. (9009); Carrier Industries, Inc. (9223); Myar, LLC (4357); MyJon, LLC (7305); Hollywood Avenue Solar, LLC (2206); United Express Solar, LLC (1126); and NEMF Logistics, LLC (4666).

{M0975155.1}

2. At all times relevant, Eastern Freight Ways, Inc. ("EFW") operated a trucking business, with a principal place of business in New Jersey, but operating on the highways throughout the United States, including the State of New York.

3. On or about January 12, 2016, at approximately 6:41 AM, Mr. McNeil was operating his vehicle, in a northbound direction, on Interstate I-87, one hundred feet (100') from mile post 103.1, County of Ulster, State of New York.

4. At approximately the same time and place, John Anderson, an employee of EFW, was in the area near Mr. McNeil operating a tractor-trailer owned, leased and/or registered to EFW.

5. At approximately the same time the place, the tractor-trailer owned, leased and/or registered to EFW, and being operated by Mr. Anderson caused a collision with Mr. McNeil causing serious injury and economic loss to Mr. McNeil.

6. On or about November 8, 2017, Mr. McNeil commenced an action in New York Supreme Court (Ulster County) seeking compensation from EMF, Mr. Anderson and others for personal injuries as a result of the aforesaid motor vehicle accident ("State Court Action").

7. EFW and Mr. Anderson subsequently answered the complaint.

8. Discovery in the State Court Action is partially complete, but the case has not been scheduled for trial.

9. At the time of the accident, EFW and Mr. Anderson were insured under policy of insurance issued by Protective Insurance Company, Policy #: X-1964-15, with a $5,000,000 combined single limit per occurrence (hereinafter the "Policy").

10. On or about February 11, 2019, Debtors filed for bankruptcy in this Court.

11. I became involved in the present bankruptcy case on March 12, 2019 when I filed a motion for relief from the automatic stay on behalf of Daniel Rinaldi, who had also been injured in an auto accident involving one of Debtors' truck drivers.

12. Debtors filed an adversary proceeding (#19-12809) and motion on March 21, 2019 seeking to extend the automatic stay to cover Mr. Anderson, as well as other similarly situation drivers employed by Debtors [Adv. Pro. Dkt. No. 1].

13. Mr. McNeil filed a timely proof of claim on April 16, 2019 (Claim No. 165).

14. I was subsequently retained by a handful of other personal injury attorneys to represent their clients, who had also been injured in auto accident involving one of Debtors' truck drivers. My representation included filing proofs of claim and motions for relief from the automatic stay.

15. According to the Federal Motor Carrier Safety Administration ("FMCSA"), as of the date Mr. McNeil was injured, NEMF was not exempt from carrying insurance or a surety bond (i.e., it is not self-insured); had a minimum financial responsibility for bodily injury and property damages ("BIPD") of $1,000,000; was required to have a surety bond; a surety bond was on file; and had BIPD financial responsibility coverage of $1,000,000.

16. NEMF maintained a $1,000,000 surety bond with Protective Insurance Company for the period of April 10, 2012 through May 4, 2018 (Policy/Surety Number: B-13115).

17. In the Adversary Proceeding, Debtors alleged that the Policy is an excess indemnity contract, and that it has a self-insured retention for auto liability claims for its trucking fleet up to the first $500,000 per occurrence [Adv. Pro. Dkt. No. 3].

18. While the Policy is one for excess indemnity, there is a surety bond against which Mr. McNeil may recover should he obtain a judgment against NEMF and Mr. Hamilton.

19. Thereafter, a number of other truck accident tort claimants also filed motions for relief from the automatic stay.

20. On April 16, 2019, a hearing took place in this matter which dealt with, in part, lift-stay motions that had been filed by auto tort claimants.

21. As the Court is well-aware, the April 16, 2019 hearing led to a months-long discussion amongst counsel for the Debtors, auto tort claimants and Debtors' liability insurers (Protective Insurance Company and U.S. Fire & Casualty Insurance Company) regarding how to address the hundreds of pending truck accident lawsuits/claims. I was involved in these negotiations from the very beginning and throughout the entire process.

22. I was retained in July 2019 to represent Mr. McNeil in relation to Debtors' bankruptcy case. By this date, there had been significant progress in the creating of a tort claimant trust and protocol as a mechanism to deal with Debtors' truck accident claims. Based upon my recollection of the discussions, the trust/protocol would be designed to settle/liquidate all truck accident claims – regardless of whether a proof of claim was filed.

23. I subsequently filed a motion for relief from the automatic stay on behalf of Mr. McNeil.

24. I continued to participate in the trust/protocol conference calls over the next few months. Late in the discussion process, counsel for Protective and U.S. Fire informed counsel for the Debtors and the Liquidating Trustee that they wished to assume administration of <u>all</u> truck accident tort claims. This was subsequently communicated to counsel for the auto tort claimants.

25. Ultimately, an Auto Liability Claims Protocol Settlement Agreement ("Protocol") was executed by Debtors, the Unsecured Creditors' Committee, US Fire and Protective, and included as Exhibit C to Debtors' confirmed plan (see Dkt. No. 1023, 1123).

26. The Protocol clearly requires <u>all</u> auto liability claimants and the aforementioned insurance companies to participate in the mandatory alternative dispute resolution procedures set forth therein. The Protocol <u>does not</u> require an auto liability claimant to have filed a proof of claim (let alone a timely proof of claim) to be subject to its provisions.

27. In addition, the Plan specifically states on Page 54 that "[t]he alternative dispute resolution procedures (the <u>'ADR Procedure'</u>) described in the proposed Auto Liability Claims Protocol Settlement Agreement shall apply to all Holders of Auto Liability Claims <u>whether or not such Holder has filed a Proof of Claim against one or more of the Debtors</u>" (emphasis added).

28. The Protocol provides that "all Holders of Auto Liability Claims shall be deemed to grant a release of Auto Liability Claims in favor of the Debtors, Drivers, the Debtors' Estates, all Estate representatives, the Exculpated Parties, the Released Parties and the Liquidating Trust…

{M0975155.1}  5

29. The Protocol also states that "[n]o holder of an Auto Liability Claim shall be entitled to receive a Distribution from the Liquidating Trust or Consolidated Eastern Debtors on account of such Auto Liability Claim."

30. Finally, *"[f]or the avoidance of doubt, Holders of Auto Liability Claims shall not be deemed to grant any release in favor of the Insurers upon or after the Effective Date, with the Insurers reserving and retaining all rights and defenses."*

## ARGUMENT

31. We ask this Court to deny the Liquidating Trustee's motion (1) as superfluous, and (2) because it is potentially prejudicial to Mr. McNeil's ability to collect from Protective should he obtain a judgment against EFW/its driver in his personal injury case.

32. As a threshold matter, Mr. McNeil does not dispute that he is not entitled to any distributions from the Liquidating Trust or Debtors' estates. This was set forth in the confirmed plan and the protocol. Since the parties agree on this point, the Liquidating Trustee's supposed 'need' to have Mr. McNeil's proof of claim expunged is superfluous.

33. The only reason cited by the Liquidating Trustee to have claims such as Mr. McNeil's expunged is that "[a]ny failure to disallow the Disputed Claims may result in the holders of such Disputed Claims receiving an unwarranted recovery against the Debtor's estates to the detriment of legitimate, allowable claims."

34. Frankly, this assertion is utterly lacking in credibility. The Liquidating Trustee has already taken the time to identify and separate the auto liability claims from other general unsecured claims (see Exhibit A to Omnibus Objection). The Liquidating Trustee, and its counsel, are highly sophisticated entities who have been paid hundreds of

thousands of dollars (or more) in this case to administer the Liquidating Trust. The Liquidating Trustee cannot seriously ask this Court to believe that it is incapable of segregating auto liability claims, who are not entitled to be paid, from the other general unsecured creditors who are entitled to be paid.

35. Our concern is that, should Mr. McNeil's case proceed to trial, and he obtains a judgment against EFW/its driver, Protective will use the lack of a filed proof of claim as a mechanism to deny liability for payment under the applicable judgment bond/insurance policy. This is not a fanciful speculation as Protective asserted for months, with respect to another client of mine in this matter (Benedicto Sorto), that a timely proof of claim was necessary to participate in the Auto Claims Liability Protocol – despite the explicit language therein to the contrary.

36. I am personally aware that counsel/claims administrators of Protective have represented to attorneys' for auto claimants that there is a 'limited pool of funds after which no claims will be settled or paid'. I believe this to be an incorrect statement of fact and law. While the Protective Auto Liability LC Proceeds (as that phrase is defined in the plan/protocol) are limited, this is not a limitation on Protective's liability. The Surety and Excess Indemnity Contacts (as that phrase is defined in the plan/protocol) are on a "per occurrence" basis. These would be the only limitation on the availability of funds to pay claims. In other words, the LC Proceeds merely serve as a pool of funds available to Protective before it must 'dip into its own pocket' to administer, defend, settle, etc. claims.

37. Regardless, the fact that such representations have been/are being made lends credence to our suspicions that Protective would use the lack of a filed proof of

{M0975155.1}                              7

claim as a means to deny payment. Such denial, even if wrongful, could be used to force Mr. McNeil to accept much less than he would rightfully be entitled to when faced with even more litigation.

38. Mr. McNeil should not have to bear the risk of future litigation with Protective on this issue when allowing his proof of claim to remain on record has <u>no impact whatsoever on the other creditors in this case</u>.

## WAIVER OF MEMORANDUM OF LAW

39. Mr. McNeil respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal bases upon which he relies are incorporated herein and the objection/motion does not raise any novel issues of law.

## CONCLUSION

40. In light of the foregoing, Mr. McNeil requests that this Court deny the Liquidating Trustee's motion.

Dated: November 30, 2020         **MAYNARD, O'CONNOR, SMITH & CATALINOTTO, LLP**

By: /s/ *Justin W. Gray*
Justin W. Gray, Esq.
Attorneys for Benedicto Sorto
6 Tower Place
Albany, New York 12203
(518) 465-3553