RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Joseph L. Schwartz, Esq. (JS-5525)
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey  07962-1981
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
jschwartz@riker.com

*Counsel to United States Fire Insurance Company*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>NEW ENGLAND MOTOR FREIGHT, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 19-12809 (JKS)<br><br>(Jointly Administered) |

**OBJECTION OF UNITED STATES FIRE INSURANCE COMPANY TO MOTION OF STEPHEN ROSS FOR AN ORDER GRANTING PERMISSION TO PARTICIPATE IN THE AUTO LIABILITY CLAIMS PROTOCOL**

United States Fire Insurance Company ("U.S. Fire"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the motion (the "Motion") filed by Stephen Ross (the "Claimant") seeking permission to participate in the Auto Liability Claims Protocol.  In support of the Objection, U.S. Fire respectfully states as follows:

**PRELIMINARY STATEMENT[1]**

Through the Motion, the Claimant essentially seeks authority to file a proof of claim almost twenty (20) months after the Bar Date and to participate in the Protocol.  In support of this request, the Claimant argues, alternatively, that (i) the Claimant purportedly did not receive notice of either the Debtors' bankruptcy case or of the Bar Date, and (ii) his failure to file

---
[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed herein.

a timely proof of claim was supposedly excusable pursuant to Fed. R. Bankr. P. 9006(b)(1). Both arguments fail.

First, contrary to the Claimant's suggestion, the Claimant received multiple notices in this bankruptcy case. The Claimant received notice of the Debtors' bankruptcy case in March 2019, as set forth in the Notice of Commencement of Bankruptcy Case Affidavit of Service that the Debtors filed with the Court in this case. Further, as set forth in the Bar Date Notice Affidavit of Service, the Claimant was also served with the Bar Date Notice in May 2019. Additionally, in or about February 2020, the Claimant received notice of the Plan, the Confirmation Order and the Protocol. Unfortunately, the Claimant fails to mention any of these facts in his Motion.

Second, the Claimant, who previously filed with the Court a motion for relief from the automatic stay to pursue applicable insurance (Docket No. 1310), fails to provide <u>any</u> explanation as to why, after receiving notice of the bankruptcy case, he waited until February 5, 2021 – almost twenty (20) months after the Bar Date, over a year after the Court entered an Order confirming the Debtors' Plan, and over two (2) months after he filed the stay relief motion – to file the Motion and assert his claim against the Debtors. For these reasons, the Claimant fails to meet the requirements for "excusable neglect" set forth by the United States Supreme Court for the filing of an untimely claim.

As a result, U.S. Fire respectfully requests that the Court deny the Motion.

## BACKGROUND

**A.    The U.S. Fire Excess Indemnity Contract.**

1.     Prior to the Petition Date (defined herein), New England Motor Freight, Inc., along with the other debtors (collectively the "<u>Debtors</u>"), provided logistics services, including

trucking services, in fifteen states. In connection with their business operations, the Debtors procured excess indemnity coverage from both U.S. Fire and from Protective Insurance Co. ("Protective", and together with U.S. Fire, the "Auto Insurers"), relating to different policy years, for, *inter alia,* bodily injury and property damage claims caused by the actions of the Debtors' drivers.

2. Specifically, with respect to U.S. Fire, in or about April 2018, U.S. Fire and the Debtors entered into an Excess Indemnity Contract (the "Excess Indemnity Contract"), wherein U.S. Fire provided excess indemnity coverage to the Debtors for the period from April 10, 2018 through April 10, 2019. Under the Excess Indemnity Contract, U.S. Fire agreed to indemnify the Debtors for, among other things, certain bodily injury and property damage caused by the Debtors and/or their employees for third party claims in excess of the Debtors' self-insured retention of $500,000 (the "SIR") where the Debtors were determined to be responsible for the claims.[2]

**B.    The U.S. Fire Surety Bonds, the Debtors' Indemnity and Collateral Agreement.**

3. In addition to the Excess Indemnity Contract, in or about April 2018, U.S. Fire issued three (3) separate Motor Carrier Public Liability Surety Bonds Under Sections 29 and 30 of the Motor Carrier Act of 1980 to certain of the Debtors (collectively, the "Surety Bonds"). The Surety Bonds require U.S. Fire to provide coverage for, *inter alia*, certain public liability, property damage and environmental restoration claims resulting from final judgments against certain of the Debtors that fall within the SIR.

4. In connection with U.S. Fire's issuance of the Surety Bonds, U.S. Fire also entered into a General Agreement of Indemnity dated April 10, 2018 (the "General Indemnity

---

[2] The Debtors also entered into substantially identical excess indemnity contracts with Protective for claims occurring during prior years.

Agreement") and a Collateral Agreement dated April 10, 2018 (the "Collateral Agreement") with the Debtors, which required the Debtors to indemnify U.S. Fire for, among other things, any payments made by U.S. Fire under the Surety Bonds.

5. In connection with the Collateral Agreement, and as collateral for the Debtors' indemnification obligations under the General Indemnity Agreement, in or about April 2018, the Debtors caused a $2,450,000 letter of credit (the "LC") to be issued in favor of U.S. Fire.

6. After receiving notice that the LC was set to expire in or about early April 2019, U.S. Fire drew down on the LC, and deposited the sum of $2,450,000 of LC proceeds in escrow (the "LC Proceeds").

**C.    The Bankruptcy Case.**

7. On February 11, 2019 (the "Petition Date"), the Debtors filed their chapter 11 bankruptcy cases with the Court.

8. On February 21, 2019, the Office of the United States Trustee appointed an Official Unsecured Creditors' Committee (the "Committee") in the Debtors' cases, pursuant to 11 U.S.C. § 1102.

**D.    The Notice of Commencement of the Bankruptcy Case and Service of the Notice Upon Claimant.**

9. In their bankruptcy schedules that the Debtors caused to be filed with the Court, the Debtors listed the Claimant as a creditor in Schedule E/F of the Debtors' bankruptcy schedules. In particular, in their bankruptcy schedules, the Debtors listed the Claimant's claim as being contingent, unliquidated and disputed. See Schedule E/F, Docket No. 411 at 762.

10. As a result of having been listed as a creditor in the Debtors' schedules, the Debtors caused the Debtors' Notice of Commencement of Bankruptcy Case and 341(a) Meeting of Creditors to be served on the Claimant on March 14, 2019. See Affidavit of Service re:

4

Debtors' Notice of Commencement of Bankruptcy Case and 341(a) Meeting of Creditors (the "Notice of Commencement of Bankruptcy Case Affidavit of Service"), Docket No. 265, Exhibit 2, at page 569.

11. As a result, the Claimant was unquestionably provided with actual and timely notice of the Debtors' bankruptcy case.

E. **The Auto Liability Injunction Lawsuit and the Bar Date.**

12. As a result of the Debtors' bankruptcy filing, all prepetition bodily injury and property damage claims against the Debtors were subject to the automatic stay. Additionally, on March 14, 2019, the Debtors commenced an adversary proceeding, styled *New England Motor Freight, Inc., et. al. v. State Farm Mutual Automobile Insurance Company, a/s/o Riquet Simplice, et. al.,* Adv. Pro. No. 19-01119 in this Court (the "Auto Liability Injunction Action"). The purpose of the Auto Liability Injunction Action was to: (i) seek a preliminary injunction under 11 U.S.C. §§ 105(a) and 362(a) enjoining the continuation or commencement of any action against any of the Debtors' employees and/or former employees (collectively, the "Drivers") who could have been individually liable for Auto Liability Claims (as defined in the Auto Liability Injunction Action), and/or (ii) extend the automatic stay to protect the Debtors' estate on account of possible indemnity claims that the Drivers potentially possessed against the Debtors if judgment were to be entered against a Driver in any lawsuit.

13. On April 16, 2019, the Court entered a temporary restraining order in the Auto Liability Injunction Action, thereby staying all "Auto Liability Actions" (the "TRO"), and directed the parties to meet and confer regarding a consensual protocol to govern the orderly resolution of all Auto Liability Claims. The Court subsequently extended the TRO a number of

times, with the consent of all interested parties, which included the Auto Insurers, the Committee and an ad hoc group of counsel representing holders of Auto Liability Claims.

14. In connection with the Auto Liability Injunction Action, the Debtors, U.S. Fire, Protective, the Committee and the various claimants' counsel engaged in lengthy settlement discussions over a period of many months.

15. In connection with these settlement discussions, at U.S. Fire's request, the Debtors filed the appropriate pleadings seeking entry of orders establishing bar dates for both pre- and post-petition claims in these cases with respect to Auto Liability Claims. The setting of bar dates was a very important part of the discussions and negotiations among the parties in connection with the Auto Liability Injunction Action.

F. **The Bar Date Order and Service of the Bar Date Notice Upon Claimant.**

16. On May 1, 2019, the Court entered an Order Establishing Bar Dates and Procedures and Approving the Form and Manner of Notice Thereof (the "Bar Date Order"). See Docket No. 519. Pursuant to the Bar Date Order, the Court established June 18, 2019 as the deadline for the filing of proofs of claim in the Debtors' bankruptcy cases (the "Bar Date"). See id. at ¶ 3.

17. On May 8, 2019, the Debtors caused the Bar Date Notice to be served upon the Claimant. See Affidavit of Service re: Bar Date Notice dated May 10, 2019 (the "Bar Date Notice Affidavit of Service"), Docket No. 561, Exhibit 3 at page 355.

18. As a result, the Claimant was unquestionably provided with actual and timely notice of the Bar Date.

**G.    The Plan.**

19.    Ultimately, a global settlement was reached among the Debtors, U.S. Fire, Protective, the Committee and the various claimants' counsel that had been negotiating a protocol in connection with the Auto Liability Injunction Action.

20.    On November 19, 2019, the Debtors and the Committee filed their Third Amended Joint Combined Plan of Liquidation and Disclosure Statement (the "Plan").  As part of the Plan, the Debtors, U.S. Fire, Protective and the Committee entered into an Auto Liability Claims Protocol Settlement Agreement (the "Protocol").  See Auto Liability Claims Protocol Settlement Agreement, Docket No. 1023-3.

21.    Pursuant to the Protocol, all holders of Auto Liability Claims were required to comply with the Protocol in order to recover on an Auto Liability Claim, with U.S. Fire and Protective, among other things, retaining the right to settle and pay certain bodily injury and property damage claims against one or more of the Debtors through a mandatory process that includes informal discussions, subsequent mandatory mediation and/or subsequent litigation. See Third Amended Joint Combined Plan of Liquidation and Disclosure Statement, Docket No. 1023 at 67 and Auto Liability Claims Protocol Settlement Agreement, Docket No. 1023-3 at 3.

22.    Additionally, and as is set forth in the Plan and the Protocol, pursuant to the Protocol, U.S. Fire agreed to, among other things, pay certain bodily injury and property damage claims that accrued during its policy year from the $2,450,000 of LC Proceeds.  See Third Amended Joint Combined Plan of Liquidation and Disclosure Statement, Docket No. 1023 at 37 and Auto Liability Claims Protocol Settlement Agreement, Docket No. 1023-3 at 6-7.

23.    On January 15, 2020, the Court entered an Order confirming the Plan (the "Confirmation Order").  See Docket No. 1123.

24. The effective date of the Plan subsequently occurred on February 3, 2020 (the "Plan Effective Date").

25. On February 3, 2020, the Debtors caused the Confirmation Order, which referenced the Protocol, to be served on the Claimant. See Affidavit of Service re: Notice of (A) Entry of Order Confirming the Joint Combined Plan and Disclosure Statement; (B) Occurrence of the Effective Date; and (C) Certain Important Deadlines (the "Confirmation Order Affidavit of Service"), Docket No. 1159, Exhibit 1 at page 1372.

26. As a result, the Claimant was unquestionably provided with actual and timely notice of the Confirmation Order and the Protocol.

### H. The Orders Allowing Recovery on Late Filed Claims on a Limited Basis.

27. Since confirmation of the Plan, a number of holders of Auto Liability Claims that failed to file proofs of claim by the Bar Date filed motions with the Court seeking authority to file proofs of claim out of time. With respect to U.S. Fire's policy period, and so as to not unfairly prejudice either U.S. Fire or other creditors who had timely filed proofs of claim, the Court has allowed the filing of certain proof of claims out of time, but only on a limited basis. In particular, the Court has specifically limited those claimants' recovery, if any, to the LC Proceeds only, while effectively subordinating the claims to timely-filed claims, payable solely to the extent LC Proceeds remain available after U.S. Fire first paid all other expenses and previously-allowed Auto Liability Claims. See, e.g. Docket Nos. 1182, 1324.

### I. The Claimant's Motion for Relief From the Automatic Stay to Proceed Against Insurance Proceeds.

28. On November 30, 2020, the Claimant filed with the Court a motion for relief from the automatic stay to proceed in state court against insurance proceeds (the "Stay Relief Motion") [Docket No. 1310].

29.     U.S. Fire filed an objection to the Stay Relief Motion.  See Docket No. 1325.

30.     After recognizing that his Stay Relief Motion had no valid basis, on December 18, 2020, the Claimant voluntarily withdrew the Stay Relief Motion.  See Docket No. 1329.

**J.      The Motion.**

31.     According to the Claimant, on January 7, 2019, the Claimant was involved in an accident involving a vehicle operated by one of the Debtors' Drivers and suffered injuries.  As a result, the Claimant asserted a claim against the Debtors.  It is evident that the Claimant's claim is an Auto Liability Claim under the Plan.

32.     Despite having received notice of the Debtors' bankruptcy case, the Bar Date, the Plan and the Protocol, the Claimant failed to file a proof of claim or otherwise protect his rights.  Now, through the Motion, which the Claimant filed approximately two years after the Petition Date, more than a year-and-a-half after the Bar Date, and more than a year after confirmation of the Plan, the Claimant requests authority to file a late claim and participate in the Protocol.  In fact, the Claimant filed the Motion over two months after filing his baseless Stay Relief Motion.  In support of his request, the Claimant incorrectly represents that he never received notice of the Debtors' bankruptcy case or of the Bar Date.  Alternatively, the Claimant asserts that any neglect on his part in failing to file a timely proof of claim is purportedly excusable.  The Claimant's requests must be denied.

33.     First, in his brief filed in support of the Motion, the Claimant represents that he was never provided notice of the Bar Date.  In contrast, the Claimant's certification in support of the Motion only states that the Claimant did not learn of the Debtors' bankruptcy case until he "was informed by his personal attorney."  See Certification of Stephen Ross in Support of Motion to Participate in Auto Liability Claims Protocol, Docket No. 1347-1, at ¶ 7.  Notably, the

9

Claimant does not state *when* he was advised of the case, nor does he deny receipt of either notice of the case or the Bar Date Notice, both of which were unquestionably mailed by the Debtors.

34. Moreover, the Claimant fails to explain why he waited almost twenty (20) months after the Bar Date to file the Motion.

35. Based on the foregoing, and as set forth below, the Claimant has not satisfied the "excusable neglect" standard set forth by the United States Supreme Court.

**OBJECTION**

**I.    There is Presumption that the Claimant Received Actual Notice of the Bar Date.**

36. As set forth above, the Debtors caused the notice of the commencement of the bankruptcy case, the notice of the Bar Date, the Confirmation Order and the Protocol to be mailed to the Claimant in March 2019, May 2019 and February 2020, respectively. See Notice of Commencement of Bankruptcy Case Affidavit of Service, Exhibit 2, at page 569; see also Bar Date Notice Affidavit of Service, Exhibit 3 at page 355; Confirmation Order Affidavit of Service, Exhibit 1 at page 1372.

37. It is a well-established rule that "the bar date notice is presumed to have been received by the creditor when . . . the debtor offers proof that it was timely and properly mailed by the debtor." In re Grand Union Co., 204 B.R. 864, 870 (Bankr. D. Del. 1997) (citations omitted); see also Peralta, 599 B.R. 759, 763 n. 5 (Bankr. D.N.J. 2019) ("a presumption arises that notice was received where the docket and file indicate that the notice was timely and accurately mailed to creditors.").

38. Importantly, "the presumption is not rebutted by a mere denial of receipt by the creditor." Grand Union Co., 204 B.R. at 870; see also Peralta, 599 B.R. at 763 n. 5 ("A mere

allegation that the notice was not received is insufficient to rebut the presumption."); see also In re Biederman, 165 B.R. 783, 788 (Bankr. D.N.J. 1994) (same).

39. According to the Bar Date Notice Affidavit of Service, the Debtors caused the Bar Date Notice to be served on the Claimant on May 8, 2019.  As a result, the Bar Date Notice is presumed to have been received by the Claimant.

40. Notably, the Claimant has not actually denied receipt of service in his Certification.  Nonetheless, even if he did, his mere denial would be insufficient to rebut the presumption.

41. Therefore, the Claimant's first argument as to why he should be entitled to file a late claim and participate in the Protocol fails.

## II. The Claimant Fails to Satisfy the "Excusable Neglect" Standard Required By Fed. R. Bankr. P. 9006(b)(1).

42. The Claimant argues, in the alternative, that in the event the Court determines that the Claimant received sufficient notice of the Bar Date, his failure to file a timely claim was due to "excusable neglect" and thus, pursuant to Fed. R. Bankr. P. 9006(b)(1), the Claimant should be permitted to file his claim out of time.

43. Fed. R. Bankr. P. 9006(b)(1) provides:

> (1) In General. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court **for cause shown** may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1) (emphasis added).

11

44. In Pioneer Inc. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993), the Supreme Court set forth the analysis required for a finding of "excusable neglect" for filing a proof of claim out of time under Fed. R. Bankr. P. 9006. In so doing, the Supreme Court identified four (4) factors to consider when determining what constitutes "excusable neglect": (1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within reasonable control of the movant; and (4) whether the movant acted in good faith. See id. at 395.

45. Importantly, the Supreme Court also found that clients "must be held accountable for the acts and omissions of their attorneys," determining that the proper focus is whether the neglect was "excusable." Id. at 396-97.

46. In In re Trump Taj Mahal Associates, 156 B.R. 928 (Bankr. D.N.J. 1993), the court held, "[t]he bar date in a Chapter 11 reorganization performs an important purpose; it not only allows the trustee or debtor-in-possession to estimate the debtor's potential liabilities, it is also essential in formulating a viable reorganization plan. Without a final claims deadline, participants in the reorganization process would be hindered by undue caution in their negotiations and in voting on the plan, and . . . the debtors carrying out the provisions of the confirmed plan." Id. at 938.

47. In his Motion, the Claimant fails to provide any reason for the Claimant's lengthy delay, instead focusing almost entirely on the purported prejudice to the Claimant, which is not relevant under Pioneer.

48. Moreover, not only does the Claimant request that the Court allow him to file a late claim and participate in the Protocol, but the Claimant also asserts that the Court should

deviate from the previously-determined "law of the case," or the process by which late-filed claims have been treated in this case to date.

49.  The Debtors, the Committee, and U.S. Fire worked diligently over a period of many months in arriving at a settlement which ultimately lead to the confirmation of the Debtors' Plan and approval of the Protocol.  Without the Bar Date, and the knowledge of the universe of potential claims, which was integral to the settlement reflected in the Protocol, that settlement likely would not have been achieved.

50.  The Claimant, who received notice of the case, the Bar Date, the Plan, the Confirmation Order and the Protocol, now essentially asks the Court to ignore the entire settlement that the parties spent many months negotiating.  This is true despite the fact that the Claimant's delay is extremely lengthy.  Indeed, after waiting more than a year-and-a-half after the Bar Date to file his baseless Stay Relief Motion, which the Claimant later withdrew, for some unexplained reason, the Claimant thereafter waited more than an additional two months to file the instant Motion.

51.  Where a delay is within a claimant's control, and where a claimant has failed to satisfactorily explain the reason for the lengthy delay, courts generally do not allow proofs of claim out of time.  See In re Interstate Grocery Distributions System, Inc., 267 B.R. 907, 913 (Bankr. D.N.J. 2001) (failure to satisfactorily explain a 7.5 month delay resulted in denial of finding of "excusable neglect"); see also Trump Taj Mahal Associates, 156 B.R. at 938 (finding that allowing proofs of claim more than one year after the debtor filed its petition should not be allowed).

52.  For these reasons, under Pioneer, the Claimant has not established excusable neglect.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, U.S. Fire respectfully requests that the Court deny the Motion, and provide U.S. Fire with such other and further relief as the Court deems appropriate.

Dated:    February 23, 2021
           Morristown, New Jersey

                                             RIKER DANZIG SCHERER HYLAND
                                              & PERRETTI LLP

                                               /s/ Joseph L. Schwartz
                                                Joseph L. Schwartz, Esq.

                                             *Counsel for United States Fire Insurance Company*

5251880v1